# United States Court of Appeals
# For the Ninth Circuit

C.A. 16-56057

_____

## Skidmore et al.

*Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Plaintiff-Appellant*

v.

## Led Zeppelin *et al.*

*Defendants-Appellees*

_____

# Appellant's Opening Brief

_____

(Music copyright infringement, on appeal from the final Order dated June 23, 2016 of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California. The case was docketed in the Central District at 15-cv-03462)

_____

## Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Appellant Skidmore*

# Table of Contents

Table of Authorities ................................................................. 7

Introduction .......................................................................... 10

Statement of Jurisdiction ..................................................... 12

Request for Oral Argument ................................................. 12

Statement of Issues Presented for Review ...................... 13

Pertinent Legal Authority .................................................. 13

Statement of the Case ......................................................... 14

Summary of Argument ........................................................ 19

Argument ............................................................................... 28

    1.    The Full Composition of "Taurus" as embodied in the Album Recording Should Have Been Admitted at Trial for the Substantial Similarity Comparison; The Archival Deposit Lead Sheet Does Not Limit the Scope of Protectability in a 1909 Act Musical Work ............................. 28

        a.    Standard of Review ..................................................... 28

        b.    Objection Raised Below ............................................. 28

        c.    Argument - The Trial Court Erroneously Failed to Admit the Sound Recordings of "Taurus", and the Composition Thereof, for the Substantial Similarity Comparison; the Jury Was Made to Compare an Artificial, Inaccurate Version of "Taurus" to "Stairway to Heaven", Resulting in a Defense Verdict of Substantial Similarity .......................................... 29

                i.    The Scope of Protection for Musical Works Under the 1909 Copyright Act Extends to the Compositional Parts of the Work Consistently Played the Same from Performance to Performance ............................. 30

                ii.    The Deposit Copy Lead Sheet Does Not Limit the Scope of Copyright in a Musical Work Created by

Common Law and Defined in 1909 Act, §1(e) ................. 32

iii.   Despite the Case Law and 1909 Act Being Clear that the
Deposit Copy Does Not Limit the Scope of Protection
in a Musical Work, The Court Ruled that Plaintiff
Could only Compare the Exact Notes of the "Taurus"
Deposit Copy to the "Stairway to Heaven" Album Recordings
and Could Not Play Sound Recordings of the Song ........... 37

iv.   At a Minimum the District Court Should Have Ruled
that Composition in the Sound Recording is Admissible
to the Extent Represented in the Deposit Copy ............... 39

v.   The Substantial Similarity Comparison Mandated by
the Trial Court was Completely Artificial and Highly
Prejudicial ...................................................... 40

vi.   The Implications of the District Court's Rulings are
Wide Ranging and Unprecedented ............................ 42

    a.   An Affirmance of the Court's Ruling Means
that A Sound Recording of An Underlying
Song Can Never Be Played to a Jury in a
Copyright Infringement Case ...................................... 42

    b.   Vast Amounts of Musical Expression would
Lose Protection, Exactly the Opposite of the
Purpose of the Copyright Acts, if the Trial
Court's Rulings are Upheld ......................................... 43

    c.   The Copyright Office Does Not Keep the Deposit
Copies Indefinitely; What Happens to those Works
for Which the Deposit Copies Have Been Lost? ......... 44

    d.   Submitting 100% Accurate Deposit Copies of
Musical Works would Have Been
Prohibitively Expensive for Artists ............................ 45

2.   The Trial Court Erroneously Precluded the Sound Recordings of
"Taurus" Despite the Fact that the Court Itself Admitted They were
Relevant to Prove Access, Which was Disputed by Defendants ................ 46

a.    **Standard of Review** …………………………………………… 46

b.    **Objection Raised Below** ………………………………………… 47

c.    **Argument**………………………………………………………… 47

3.    **The Lower Court Failed to Give the Standard, Black-Letter Law Inverse Ratio Rule Instruction and Erroneously Failed to Tell the Jury that the Burden of Proof for Substantial Similarity is Dependent on the Degree of Access Proven** ……………………………… 53

a.    **Standard of Review** ……………………………………………… 53

b.    **Objection Raised Below** ………………………………………… 54

c.    **Argument** ………………………………………………………… 54

4.    **The Court Erroneously Instructed the Jury on How to Perform the Extrinsic Test, Completely Omitting the Crucial Instruction that Combinations of Unprotected Elements are Themselves Afforded Protectability** ………………………………………………… 55

a.    **Standard of Review** …………………………………………… 55

b.    **Objection Raised Below** ………………………………………… 56

c.    **Argument** ………………………………………………………… 56

i.    **Legal Standard** …………………………………………… 57

ii.    **This Basic Instruction Was Not Given Despite Being Requested by Plaintiff and Plaintiff's Musicological Expert Testifying that the Combination of Musical Elements in "Taurus" Gave the Song Protection** ………… 57

5.    **The Trial Court Erroneously Instructed the Jury on Originality and the Scope of Protectability of Musical Elements; The Erroneous Instructions are in Direct Contravention of This Circuit's <u>Swirsky</u> Decision and Constitute Reversible Error** ………………………………………… 59

a.    **Standard of Review** ……………………………………………… 59

b.    **Objection Raised Below** ………………………………………… 59

c.    **Argument** ………………………………………………………… 60

      i.    The Court Seriously Erred when Defining Originality ...... 60

      ii.   The Court Erroneously told the Jury, Without Any Legal Support, that Certain Key Musical Elements in "Taurus" Do Not Have Copyright Protection ............................ 62

6.   **The Trial Court Erroneously Disregarded a Juror's Request to Hear the Requested and Correct of the "Taurus" Deposit Copy During Deliberations** ................................................................ 65

   a.   **Standard of Review** ................................................. 65

   b.   **Objection Raised Below** ......................................... 66

   c.   **Argument**................................................................. 66

7.   **The Trial Court's Order Limiting Plaintiff's Trial Time to 10 Hours Violated Due Process and was Not Even Close to An Adequate Amount of Time to Try this Case** ....................................... 67

   a.   **Standard of Review** ................................................. 67

   b.   **Objection Raised Below** ......................................... 68

   c.   **Argument** .................................................................. 68

      i.    Legal Standard ................................................. 68

      ii.   The Court Imposed Clearly Inadequate, Inflexible Time Limits on Plaintiff which were Highly Unreasonable and Clearly Erroneous................................................. 69

      iii.  The Court's Time Limits were Severely Prejudicial and Especially Harmed Plaintiff's Efforts to Prove Substantial Similarity ......................................... 75

8.   **The Court Committed Reversible Error by Erroneously Refusing to Preclude the Testimony of Defense Musicologist Dr. Ferrara, or Grant a Negative Inference, Because Ferrara Had a Conflict of Interest which was Deliberately Concealed by Defense Counsel** ....................... 78

   a.   **Standard of Review** ................................................. 78

   b.   **Objection Raised Below** ......................................... 78

      **c.**    **Argument** ………………………………………………………… 79

            **i.**    **Legal Standard**…………………………………………… 79

            **ii.**    **Dr. Ferrara's Testimony Should Never Have Been Allowed, or a Negative Inference Granted**…………………………… 80


C ONCLUSION ……………………………………………………… 86

S TATEMENT OF R ELATED C ASES …………………………………… 87

C ERTIFICATE OF C OMPLIANCE …………………………………… 88

TABLE OF AUTHORITIES

## CASES

Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1275 (Fed. Cir. 2000) ...... 28

American Empire Surplus Lines v. Care Centers, 484 F. Supp. 2d 855 (ND Ill. 2007) . 80, 84

Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 276 (6th Cir. 2009) ..... 37, 44

Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 625 (9th Cir.2010) ......................... 54

Campbell Industries v. Gemini, 619 F.2d 24 (9th Cir. 1980).....................................78, 79

Cleveland v. Southern Pac. Co., 436 F.2d 77, 80-81 (9th Cir. 1970) ............... 53, 56, 59, 66

Copperweld Corp. v. Independence Tube Corp., 467 US 752, 762-63 ( 1984)  ............... 34

Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 618 (9th Cir. 2010) ..............31

English Feedlot v Norden Labs., Inc., 833 F.Supp. 1498, 1504 (D. Col. 1993) ................. 79

Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340,
345-46 (1991) ...................................................................................... 60, 61, 64

Flaminio v. Honda Motor Co., 733 F.2d 463 (7th Cir. 1984) ...................................69, 72

Graver Mfg. Co. v. Linde Co., 339 US 605, 607 (1950)  ............................................. 34

Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 206-208 (9th Cir. 1989) .... 28, 46

KnowledgePlex v. Placebase, Inc., No. C 08-4267, 2008 U.S. Dist. LEXIS 103915, at 29–30
(N.D. Cal. Dec. 17, 2008) ........................................................................... 35, 36

MCI Commc'ns Corp. v. American Tel. & Tel. Co., 708 F.2d 1081, 1171 (7th Cir. 1983) 68-70

Mc-Knight v. General Motors Corp., 908 F.2d 104, 115 (7th Cir. 1990) ....................... 69

Murphy v. City of Long Beach, 914 F. 2d 183 (9th Cir. 1990) ........................... 53, 56, 59

Monotype Corp., PLC v. Int'l Typeface Corp., 43 F.3d 443, 451 (9th Cir.1994) ......... 67-69

National Conference of Bar Examiners v. Multistate Legal Studies, 692 F. 2d 478 (7th Cir.
1982)................................................................................................... 32, 33

Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002) .................... 31, 37, 45

Oviatt By and Through Waugh v. Pearce, 954 F. 2d 1470 (9th Cir. 1992) .................. 53, 65

Pinal Creek Group v. Newmont Mining Corp., 312 F. Supp. 2d 1212 (D. Ariz. 2004) ........79

Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157–69 (2010) ............................... 33, 35

Rinker v. County of Napa, 831 F.2d 829, 832 (9th Cir. 1987) ....................... 53, 56, 59, 66

Ruvalcaba v. City of Los Angeles, 64 F. 3d 1323 (9th Cir. 1995) ........................... 28, 46

Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) ............................................................................................................ 78

Scentsy, Inc. v. B.R. Chase, LLC, 942 F. Supp. 2d 1045, 1051 (D. Idaho 2013) ............... 34

Sec'y of Labor v. DeSisto, 929 F.2d 789, 795 (1st Cir. 1991) .......................................67

Sells v. Wamser, 158 F.R.D. 390 (S.D.Ohio 1994) .................................................... 80

Shadow Traffic Network v. Superior Court, 24 Cal. App. 4th 1067, 1084-85 (Court of Appeal 1994) ...............................................................................................................79

Societe Civile Succession Guino v. Renoir, S49 F .3d 1182, 1185 (9th Cir. 2008) ......... 31, 32

Swirsky v. Carey, 376 F.3d 841, 849 (9th Cir. 2004) .............................................. et seq.

Sylvestre v. Oswald, No. 91 Civ. 5060, 1993 U.S. Dist. LEXIS 7002 at *4 (S.D.N.Y. May 18, 1993) ...............................................................................................................35

Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000) ............................ et seq.

Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988) ...................................53, 55, 59, 65

United Housing Foundation, Inc. v. Forman, 421 US 837, 848 (1975) ......................... 34

United States v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir. 1992) ................... 28, 46

US v. Hinkson, 585 F. 3d 1247, 1260 (9th Cir. 2009) ........................................... 28, 46

US v. WR Grace, 504 F.3d 745 (2007) ......................................................... 46, 51-52

Villiarimo v. Aloha Island Air, Inc., 281 F. 3d 1054, 1061 (9th Cir. 2002) ...................... 28

Washingtonian Publ'g Co. v. Pearson, 306 U.S. 30, 41 (1939) ................................35, 44

White-Smith Music Publ'g Co. v. Apollo Co., 209 U.S. 1, 10-11 (1908) ........................ 30

Williams v. Bridgeport Music, Inc., No. LA CV13-06004, 2014 WL 7877773, at *8 (C.D. Cal. Oct. 30, 2014) ............................................................................................ 31

Williams v. Fenix & Scisson, Inc., 608 F.2d 1205, 1209 (9th Cir. 1979) ........................ 78

Woody v. Woody, 127 N.C. App. 626, 492 S.E.2d 382 (1997) .................................... 69

## Statutes and Rules

Copyright Act of 1909, 35 Stat. 1075 (1909) (repealed 1978), §§ 1(e), 12 ................... et seq.

Copyright Act of 1831 (repealed 1909) ................................................................. 30

FRAP 4 ........................................................................................................ 12

Fed. Rule of Evidence 403 ................................................................. 46, 49, 50-53

## Other Authorities

Ninth Circuit Model Instruction 17,16 supp. ......................................................... 54

2 NIMMER ON COPYRIGHT §7.17[A] (2016) .................................................. 32, 44

John E. Rumel, "The Hourglass and Due Process: The Propriety of Time Limits on Civil Trials," University of San Francisco Law Review, at p.253 (Winter 1992) ... 69

## Introduction

This case is a copyright infringement action over the iconic rock and roll song, ""Stairway to Heaven"" by Led Zeppelin. Plaintiff Michael Skidmore alleges that the creator of the famous introduction to ""Stairway to Heaven"" was not Led Zeppelin guitarist Jimmy Page, but actually guitar prodigy Randy California (aka Randy Wolfe) of the band Spirit. The alleged copying by Led Zeppelin was of Mr. Wolfe's composition ""Taurus"," on Spirit's eponymous first album from 1968— which Mr. Page admits to possessing. Plaintiff Michael Skidmore is the trustee of the trust that was created to preserve the late Randy California's memory.

A quick listen to the composition of ""Taurus"" on Spirit's first album and ""Stairway to Heaven"" makes it quite clear that Mr. Page undoubtedly relied upon ""Taurus"" to create the nearly identical introduction to ""Stairway to Heaven"." Led Zeppelin not only opened for Spirit in 1968, played several shows with them, covered a Spirit song, and owned several Spirit albums, but Mr. Page also extensively praised Spirit in interviews before and after he created ""Stairway to Heaven"" in 1971. Despite Led Zeppelin's denials, the jury was unequivocally clear that Led Zeppelin had access to ""Taurus"," one of the key elements in a copyright infringement case.

Yet, the jury did not find that the songs were substantially similar, the other

key element for finding copyright infringement, finding against Plaintiff on the extrinsic analysis test.

The reason for this is because the lower court made several evidentiary errors and also erroneously instructed the jury on how to perform the extrinsic analysis. The most important of these errors was that the trial court refused to let the jury hear the full and complete composition of "Taurus" embodied in the sound recordings that Jimmy Page possessed, instead limiting the comparison to an outline of the "Taurus" composition in the deposit copy lead sheet. The jury was not allowed to compare the complete "Taurus" composition that defendant James Patrick Page possess and allegedly copied, but instead was forced to make an artificial comparison between an inaccurate version of "Taurus" more dissimilar to "Stairway to Heaven". This was highly prejudicial and requires reversal.

Furthermore, although the "Taurus" deposit copy and "Stairway to Heaven" are substantially similar, the trial court gave a series of erroneous instructions on the scope of copyright protection and the extrinsic test which told the jury that virtually none of the protected expression in the "Taurus" was protected and could not be substantially similar to "Stairway to Heaven" as a matter of law.

These errors, and several others, resulted in a trial verdict for the defense on

substantial similarity that was unfounded. The trial verdict should be reversed, vacated, and remanded for a new trial.

## STATEMENT OF JURISDICTION

This appeal arises from a music copyright infringement trial in the Central District of California. Pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., the District Court had federal question jurisdiction over the copyright claims pursuant to 28 U.S.C. § 1331. The Ninth Circuit Court of Appeals has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as Plaintiffs-Appellant are appealing the final order of the District Court entered on June 23, 2016. Appellant's notice of appeal of the final order was timely filed on July 23, 2016, within the 30-day deadline prescribed by FRAP 4.

## REQUEST FOR ORAL ARGUMENT

Appellant affirms that he believes that oral argument would be beneficial to resolving this appeal and the issues raised herein as they are not only complicated but the resulting Appellate court decision could affect many copyrighted works under the 1909 Copyright Act.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Whether the trial court erroneously precluded the composition of "Taurus" as embodied in the sound recordings of "Taurus", artificially limiting the substantial similarity comparison to an outline of "Taurus's" composition submitted to the Copyright Office.

2) Whether the trial court committed reversible error by failing to admit the sound recording of "Taurus" to prove access.

3) Whether the trial court committed reversible error by refusing to give an instruction on the inverse ratio rule without any explanation or justification for the exclusion.

4) Whether the trial court committed reversible error by failing to instruct the jury that combinations and arrangements of unprotectable musical elements are protectable.

5) Whether the trial court committed reversible error by erroneously instructing the jury on originality and the scope of protection for certain musical elements.

6) Whether the trial court erroneously failed to play requested and correct version of the "Taurus" deposit copy for the jury during deliberations.

7) Whether the trial court committed reversible error and violated Plaintiff's due process rights by inflexibly limiting plaintiff's time to present his case to ten hours, inclusive of direct exam, cross exam, and rebuttal.

8) Whether the trial court committed reversible error by erroneously refusing to preclude the testimony of defense musicologist Dr. Lawrence Ferrara who concealed his prior employment by Plaintiff's publisher to analyze "Taurus" and "Stairway to Heaven".

# PERTINENT LEGAL AUTHORITY

The 1909 Copyright Act, specifically sections 1(e) and 12, is attached as an addendum to this brief.

# Statement of the Case

### Writing of "Taurus" and "Stairway to Heaven"

Randy Wolfe was a musical genius. (Excerpt 281). In early 1966, at age 15, his family moved to New York where in June, he met Jimi Hendrix. (Excerpt 283). While playing many shows with Hendrix, Hendrix nicknamed Wolfe "Randy California." (Excerpt 284). Hendrix invited Wolfe to play with The Jimi Hendrix Experience in London, however, Randy's mother thought he was too young so Randy's family moved back to California in September 1966. (Excerpt 285).

In late 1966, Wolfe met a girl named Robin whom he fell in love with and later married. (Excerpt 285-86). Her astrological sign was "Taurus", so Randy named a new song he wrote "Taurus". (Excerpt 286). In late 1966 through the summer of 1967 Wolfe's band Spirit played every week in Hollywood at a club called the Ash Grove. (Excerpt 287-88). One of the songs they played every night was "Taurus". (Excerpt 288). The recordings of Spirit playing the Ash Grove show that the composition of "Taurus" was in a concrete, definite, and final form in early to mid-1967. (Audio Exhibits 32-39).[1] Later in early 1967, Wolfe met a producer named Lou Adler who signed the band to a recording contract on August 29, 1967. (Excerpt 289-

---

[1] All referenced audio exhibits and trial exhibits were submitted by way of a concurrently filed Motion to Transmit to Physical Exhibits.

90). The first Spirit album was released in late 1967. (Excerpt 317). Hollenbeck then filed a copyright for *"Taurus"* that listed Randy California as the author. (Excerpt 2639, 2754). The composition of "Taurus" on the album recording was the same as the earlier shows played at the Ash Grove. As part of the registration packet, a deposit copy lead sheet was transcribed by "B. Hansen." (Trial Exhibit 2058; Excerpt 2642).

The band later embarked that same year on a lengthy tour in support of the album, which features, among other cuts, "Taurus" and another song called "Fresh Garbage." (Excerpt 289). The new group Led Zeppelin, consisting of Page, Plant, bassist John Paul Jones, and drummer John Bonham (now deceased), was at that time just starting. (Excerpt 309). On December 26, 1968, Led Zeppelin performed its first show in the United States in Denver, Colorado. Zeppelin was the opening act that night for Spirit and covered a Spirit song named "Fresh Garbage." (Excerpt 309, 484-87) (Trial Exhibit 313).

Led Zeppelin and Spirit continued to play shows together (Excerpt 314), and even when the members of Led Zeppelin were not performing, they came to Spirit shows to watch. (Excerpt 360-61; Trial Exhibit 321). In interviews at the time, Page expressed his affection for Spirit, their music, and their performances, stating that Spirit struck him on an "emotional level." (Trial Exhibits 157, 160). In homage to

Spirit, Led Zeppelin had been performing the Spirit song *Fresh Garbage* at its own shows even before Zeppelin opened for Spirit on December 26, 1968. (Excerpt 484-87)

Led Zeppelin wrote "Stairway to Heaven" in 1970 and 1971, as part of the unnamed album commonly known as Led Zeppelin IV. (Excerpt 650). Defendants Page and Plant have writing credit for "Stairway to Heaven," which is one of the most successful songs in history. (Excerpt 694). A former Spirit band member, Larry Knight, testified that in 1973 he spoke with defendant Page in 1973 at an after party for a Spirit show, where Page gushed how much he liked the band. (Excerpt 711-12). Knight also testified that he saw Randy California and defendant Page interacting at the after party. (Excerpt 713-14)

### Filing of Lawsuit, Litigation, and Trial

After Randy Wolfe's drowning death in 1997, his mother set up the Randy Craig Wolfe Trust. (Excerpt 293-94). All of Randy California's intellectual property, including his ownership in "Taurus", was transferred to the Trust. (Excerpt 846). After the decision in <u>Petrella v. MGM</u> stating that copyright infringement lawsuits could be filed for infringement within the last three years, the Trust filed suit against Led Zeppelin for infringing Wolfe's song "Taurus" in the famous song "Stairway to Heaven." (Excerpt 2713). The specific musical expression at issue were the iconic

opening notes of "Stairway to Heaven" which Plaintiff alleges are substantially similar to "Stairway to Heaven's" opening notes.

Defendants disputed ownership, access, and substantial similarity, and also alleged several affirmative defenses such as unclean hands and independent creation. (Excerpt 2645, 2681, 1868). After discovery, Defendants filed for summary judgment alleging, *inter alia*, that the songs were not substantially similar, and also that the only protectable expression in Taurus was in the deposit copy lead sheet. (Excerpt 2598). Plaintiff responded in opposition to the motion, noting that his experts had found that the protectable composition in the Taurus copyright was nearly identical to Stairway to Heaven's iconic opening notes. (Excerpt 2412, 2504, 2180, 2199, 2231; Audio Exhibits 7-11 [Taurus/Stairway Comparison], 40-44 [same but temp synced]).

The Court denied summary judgment and found that there were triable issues of fact on ownership, access, and substantial similarity. (Excerpt 117). However, at summary judgment, over Plaintiff's opposition (Excerpt 2436-37), the court stated that the protected composition of "Taurus" was limited to the deposit copy lead sheet of "Taurus." (Excerpt 133).

After motions in limine were filed, the Court further ruled (again over Plaintiff's objections) that only the exact notes on the deposit copy of "Taurus" had

protection under the 1909 Act and that no sound recordings of "Taurus" could be admitted. (Excerpt 73-74, 1865, 1866-67). The Court also precluded any sound recording of "Taurus" to prove access, and also precluded any and all expert testimony on access by comparing the sonic landscapes and production techniques utilized in "Taurus" and "Stairway to Heaven." Id. Plaintiff contended the sound recordings, even if precluded (erroneously) for substantial similarity, nevertheless demonstrated striking similarity for proving access and lack of independent creation. (Excerpt 1831, 2101, 2114).

At trial, the Court imposed rigid, inflexible time limits on the parties, stating that Plaintiff would only be entitled to 10 hours of trial time for all direct, cross, and rebuttal examination---and erroneously refused to meaningfully extend the limits. (Excerpt 89, 1064-65). An approximately five day jury trial then took place. Plaintiff's experts were musicologist Dr. Alexander Stewart (Excerpt 771) and master guitarist Kevin Hanson (Excerpt 726). Defendant's experts were Dr. Lawrence Ferrara (Excerpt 929), and master guitarist Robert Mathes (Excerpt 1090).

Following the trial, the court instructed the jury. (Excerpt 11-44, 1372). Plaintiff's contends that the Court gave several erroneous or inadequate instructions, including a misleading and confusing description of the extrinsic test

and the scope of protection in copyright law. The jury returned a defense verdict, finding that Plaintiff had proven ownership of "Taurus" and that Defendants had in fact had access had access to "Taurus", but that Plaintiff had not satisfied the extrinsic test for substantial similarity. (Excerpt 3-6).

This appeal timely followed.

## Summary of Argument

**1. The Court Erroneously Precluded the Composition of "Taurus" as Embodied in the Sound Recordings of "Taurus", Artificially Limiting the Substantial Similarity Comparison to an Outline of "Taurus's" Composition Submitted to the Copyright Office**

The first reversible error of the trial court was its refusal to allow the jury to consider the actual composition of "Taurus" by Randy California and recordings which evidenced the same. The jury never heard "Taurus" as *Jimmy Page (and the rest of the public) heard the song* in 1967-68 and in which Plaintiff had protection. The jury was made to artificially compare a version of "Taurus" more dissimilar to "Stairway to Heaven" than the complete composition.

The lower court incorrectly held that the composition of "Taurus" was strictly limited to *the exact notes* indicated on a simplistic archival lead sheet of "Taurus" that had been submitted to the Copyright Office in 1967 as part of the registration packet, but which had never been performed or seen by anyone other

than the transcriptionist. The Court precluded any and all evidence regarding the actual album recording and composition of "Taurus" which Defendants had heard and copied and in which Plaintiff had copyright protection.

These rulings were plainly incorrect. For works created prior to the Copyright Act of 1976, and governed by the 1909 Copyright Act, a work had common law copyright protection for its composition in the song's final version at the moment of creation. Upon registration with the Copyright Office, the common law copyright protection then became a federal copyright. The 1909 Copyright Act specifically defines the scope of protectable compositional expression in a musical work as "any system of notation or any form of record in which the thought of an author might be recorded and from which it may be read or reproduced." 1909 Act, § 1(e). This includes piano rolls, recordings, sheet music, and any other form of expression. The 1909 Act was specifically enacted to open up the scope of protected expression beyond merely sheet music. There is no indication that federally registering the common law copyright could in anyway result in the limitation of the scope of the copyright.

The lower court based its decision on an erroneous belief that only written sheet music has compositional protection. The court thus thought that when the 1909 Act required that "complete copy" of the work being copyrighted be

submitted to the Copyright office with the registration application, that such copy delimited the scope of protection in the work. See 1909 Act, § 12. But, nowhere in the case law or the 1909 Act, is it contemplated that this purely archival requirement governs the scope of the composition in the work. The Seventh and Ninth Circuit Courts, who have examined this deposit requirement, both hold that the substantial similarity comparison is not limited to the notes on the deposit copy lead sheet and that sound recordings are admissible to prove that protected expression was copied.

The result at trial was that Plaintiff and his experts were forced to compare a more dissimilar and inaccurate version of "Taurus" to "Stairway to Heaven", instead of the correct and complete composition in the album version of "Taurus" which is practically identical to "Stairway to Heaven". This was highly prejudicial, unprecedented, and requires vacation, reversal and remand.

### 2. The Trial Court Committed Reversible Error by Failing to Admit the Sound Recording of "Taurus" to Prove Access

The court also precluded the sound recordings of "Taurus" to prove access, despite admitting that it was relevant for this purpose. In this case, Led Zeppelin was disputing that they had access to "Taurus" or had ever heard it prior to creating "Stairway to Heaven". Plaintiff presented much evidence of access, including that Led Zeppelin opened for Spirit, extensively praised Spirit, and owned Spirit albums (including one with "Taurus" on it). However, the centerpiece of the access case

was the fact that the sonic landscapes of "Taurus's" album recording and "Stairway to Heaven's" album recording are practically identical and preclude independent creation.

Plaintiff therefore intended to play the "Taurus" album version that Jimmy Page admits to owning for Page, and ask if Page and Plant heard "Taurus" before creating "Stairway to Heaven". It would be up to the jury to evaluate Page and Plant's credibility. Plaintiff also intended to demonstrate through expert testimony that the sonic landscape of the two songs was strikingly similar and precluded independent creation. Yet, the trial court simply refused to let the jury hear the sound recording that Page had listened to and used to create the infringing song "Stairway to Heaven", finding that it would be "unduly prejudicial" to the substantial similarity comparison.

It was Defendants' choice to contest access. Their contest of access made the album recording of "Taurus" relevant. It was not for the court to preclude the jury from hearing this highly relevant evidence, and to prevent expert testimony on this topic, when Plaintiff had to prove this element. This is an example of the Court bending over backwards to preclude evidence that damaged Defendants' case. The court's ruling that the album recording is "unduly prejudicial" to the substantial similarity comparison is a de facto admission that the album version of "Taurus"

that was improperly precluded for both access and substantial similarity was nearly identical to "Stairway to Heaven".

Plaintiff notes that although the jury found that he did prove access, the court's decision to preclude the sound recording prevented Plaintiff from otherwise establishing a higher a degree of access. The degree of access is important under the Inverse Ratio Rule.

### 3. The Court Committed Reversible Error by Refusing to Give an Instruction on the Inverse Ratio Rule Without Any Explanation or Justification for the Exclusion

The lower court's third reversible error was that the trial failed to give an instruction on the Inverse Ratio Rule, which states that the higher degree of access proven by the plaintiff requires the jury to concomitantly lower the burden of proof for the plaintiff on proving substantial similarity.

Plaintiff spent a great deal of its case proving access (and was successful in doing so) relying on the fact that the Inverse Ratio Rule has been the law in the Ninth Circuit for decades. The inverse ratio rule provides that the higher the degree of access proven by Plaintiff lowers Plaintiff's burden to prove substantial similarity.

The failure to give this important instruction enervated a huge part of Plaintiff's trial strategy and was reversible error. It is impossible that the jury reached an informed decision on substantial similarity when it was never instructed by the trial court on how to determine the appropriate burden for substantial similarity.

Access and substantial similarity are inextricably linked, yet the jury was asked to render a verdict without a key instruction that describes this relationship.

### 4. The Trial Court Committed Reversible Error by Failing to Instruct the Jury that Combinations and Arrangements of Unprotectable Musical Elements are Protectable

The Court erroneously told the jury how to conduct the extrinsic substantial similarity test. The jury was never told that combinations of otherwise unprotectable elements can themselves be afforded protection. This is a key concept to understanding the protectability of compositions and the extrinsic test and was a large basis for Plaintiff's expert musicologist's opinion.

Despite Plaintiff *and Defendants* both asking for this standard instruction, the trial court simply failed to give the instruction at all, without explanation. The failure to give this instruction failed to inform the jury about a key copyright concept without which the jury's conclusion, that the extrinsic test was not satisfied, could not have been based on an informed understanding of what expression is protectable and capable of being copied. This was highly prejudicial, reversible error.

### 5. The Court Committed Reversible Error by Erroneously Instructing the Jury on Originality and the Scope of Protection for Certain Musical Elements

The trial court erroneously instructed the jury on originality, stating that if a musical element or device appeared in the prior art, it was unprotectable. This is, in fact, not true under binding Ninth Circuit precedent. As long as the element in

question was independently created by the artist, it is original and protectable.

In addition, the jury was told by the lower court that certain musical elements, such as descending chromatic scales, are not protectable as a matter of law. This was actually incorrect and unsupported by any case law; the expert testimony made it clear that the way the descending chord was used in "Taurus", and copied in "Stairway to Heaven", was in fact unique and protectable.

Thus, the jury was erroneously told that a vast swath of musical expression in "Taurus" was not protected under copyright law as a matter of law. This instruction compounded the court's error in not instructing the jury that combinations and arrangements of protected and unprotected elements are protectable and was reversible error

6. **The Trial Court Erroneously Failed to Play Requested and Correct Version of the "Taurus" Deposit Copy During Deliberations**

The jury requested that Plaintiff's guitar version of the "Taurus" deposit copy be played during deliberations, along with "Stairway to Heaven". Plaintiff argued that the jury obviously meant the bass clef of the "Taurus" deposition, which is similar to "Stairway to Heaven" and was played throughout trial---not the version of the "Taurus" deposit copy which combined the bass and treble clef which Defendants advocated for (the two clefs are supposed to be played separately and this version was only played once during trial). Upon being asked by the court, one

juror told the court that he wanted the bass clef played as Plaintiff had argued, while another stated that it wanted the version Defendants advocated for.

The court erroneously only played the version more favorable to Defendants, after which the jury found in favor of defendants on substantial similarity. This was highly prejudicial reversible error.

### 7. The Trial Court Committed Reversible Error and Violated Plaintiff's Due Process Rights by Inflexibly Limiting Plaintiff's Time to Present His Case to Ten Hours, Inclusive of Direct Exam, Cross Exam, and Rebuttal

The trial court stated at the beginning of the case that it was limiting Plaintiff to ten hours to try the entire case, including direct, cross, and rebuttal witnesses. This extremely short time limit to try a very complicated case is unjustifiable and arbitrary. In this case, nearly every element of the copyright claims were in dispute and there were multiple affirmative defenses to contend with. Plaintiff had the burden of establishing at trial the elements of ownership, access, and substantial similarity, yet was only allotted approximately 5 to 6 hours by the trial court to do so.

Moreover, the Court was incredibly inflexible in adjusting these time limits as necessary, which severely harmed Plaintiff's substantial similarity case in particular. The court allowed Plaintiff's counsel just minutes to cross examine the main defense musicologist, and refused to allow any rebuttal witnesses on substantial similarity. Plaintiff lost this case on substantial similarity.

These extremely short time restrictions are unprecedented in a trial of this complexity, where Defendants contested nearly every element of the claim. Plaintiff is entitled to a sufficient amount of time to carry his burden and dispute Defendants' evidence; a ten hour limitation on a case of this complexity is arbitrary, clearly erroneous, and is reversible error.

### 8. The Trial Court Committed Reversible Error by Erroneously Refusing to Preclude the Testimony of Defense Musicologist Dr. Lawrence Ferrara who Concealed His Prior Employment by Plaintiff's Publisher

The court should have precluded the appearance and testimony of defense expert musicologist Dr. Lawrence Ferrara in its entirety, or granted a negative inference against him. Shortly before the case went to trial, Plaintiff discovered that Defendants and defense counsel were concealing the fact that their lead musicological expert, Dr. Lawrence Ferrara, had previously conducted a musicological analysis of "Taurus" and "Stairway to Heaven" for Plaintiff's publisher and fiduciary. Plaintiff has asked for any and all such information and reports in discovery, but this was never produced or disclosed.

Although Plaintiff both filed a motion for sanctions and raised this objection at trial, the Court improperly failed to preclude Dr. Ferrara's testimony despite the fact that there was an undeniable conflict of interest which was improperly hidden.

# Argument

1. **The Full Composition of "Taurus" as embodied in the Album Recording Should Have Been Admitted at Trial for the Substantial Similarity Comparison; The Archival Deposit Lead Sheet Does Not Limit the Scope of Protectability in a 1909 Act Musical Work**

   a. **Standard of Review**

   Rulings at summary judgment are reviewed *de novo*. Villiarimo v. Aloha Island Air, Inc., 281 F. 3d 1054, 1061 (9th Cir. 2002).

   Erroneous evidentiary rulings can be the basis to reverse a jury verdict and order a new trial. Ruvalcaba v. City of Los Angeles, 64 F. 3d 1323 (9th Cir. 1995) (citing United States v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir. 1992)); see also Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1275 (Fed. Cir. 2000); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 206-208 (9th Cir. 1989).

   Evidentiary rulings based on legal errors are reviewed *de novo*. US v. Hinkson, 585 F. 3d 1247, 1260 (9th Cir. 2009). This erroneous evidentiary ruling is legal in nature and should be reviewed *de novo*.

   b. **Objection Raised Below**

   The trial court ruled over Plaintiff's objection at summary judgment and on motions in limine that only the exact notes on the deposit copy lead sheet constitute the protectable composition of "Taurus". (Excerpt 73, 613-14, 635, 736). The jury

instructions erroneously told the jury "plaintiff has no rights in any sound recording of "Taurus", and claims rights only in the musical composition "Taurus" as transcribed in the deposit copy." (Excerpt 29). Plaintiff opposed this argument and ruling at, inter alia, summary judgment (Excerpt 2149-52, 2436-38, 2516), motions in limine (Excerpt 2115-17, 2122-23, 2095-2097), in the disputed jury instructions (Excerpt 2015-16), and at trial. (Excerpt 597-98, 734-36).

  **c. Argument - The Trial Court Erroneously Failed to Admit the Sound Recordings of "Taurus", and the Composition Thereof, for the Substantial Similarity Comparison; the Jury Was Made to Compare an Artificial, Inaccurate Version of "Taurus" to "Stairway to Heaven", Resulting in a Defense Verdict of Substantial Similarity**

  The Court improperly did not admit the correct and complete composition of "Taurus". The correct and complete composition of "Taurus" was that embodied in the album recording of "Taurus" released to the public in 1967-68. (Excerpt 2122, Audio Exhibit 32 - "Taurus" [submitted by way of Motion to Transmit Physical Exhibit]). This was the version of "Taurus" that Jimmy Page owned, heard from the album, heard live in concert, and copied. (Excerpt 493, 462, 553-56). The composition contained and represented in the "Taurus" album recording (and other live "Taurus" recordings) was the best evidence for the substantial similarity comparison between "Taurus" and "Stairway to Heaven".

However, the trial court erroneously ruled that the only composition of "Taurus" that was admissible for the substantial similarity comparison were the exact notes on the archival deposit copy of "Taurus" submitted to the Copyright Office in 1967 for the song's federal copyright registration. (Excerpt 73, 613-14, 635, 736). The ruling by the court, that only the *exact notes* on the archival lead sheet constituted the protected expression in "Taurus", was clearly erroneous as a matter of law. The Court's ruling was unprecedented and directly contradicts Ninth Circuit precedent.

This was an unduly prejudicial evidentiary ruling which prevented Plaintiff from using the composition of "Taurus" most similar to "Stairway to Heaven".

### i. The Scope of Protection for Musical Works Under the 1909 Copyright Act Extends to the Compositional Parts of the Work Consistently Played the Same from Performance to Performance

The 1909 Act was implemented because Congress believed that limiting copyright protection to sheet music alone was too restrictive with the advent of new ways of recording music such as piano player rolls. Compare Copyright Act of 1909, 35 Stat. 1075 (1909) (repealed 1978) with White-Smith Music Publ'g Co. v. Apollo Co., 209 U.S. 1, 10-11 (1908) (holding that the only musical expression protected under 1831 Copyright Act was sheet music and inviting Congress to expand scope of

protection). Thus, Congress moved to *expand* the scope of copyright protection in the 1909 Act by defining the scope of protection in musical works as:

> any system of notation or any form of record in which the thought of an author might be recorded and from which it may be read or reproduced.

1909 Act, § 1(e). The composition of a musical work is defined as those parts of a work consistently played the same. Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002) ("A musical composition's copyright protects the generic sound that would necessarily result from any performance of the piece.").[2] (See also Excerpt 2122, 2095-99).

"Under the 1909 Act, a work was protected by common law copyright from the moment of its creation." Summary Judgment Opinion (Excerpt 126) (citing Societe Civile Succession Guino v. Renoir, S49 F .3d 1182, 1185 (9th Cir. 2008)). However, common law copyright protection was divested, and federal copyright protection began, when the work was published and/or registered with the Copyright Office. Id. (citing Williams v. Bridgeport Music, Inc., No. LA CV13-06004, 2014 WL 7877773, at *8 (C.D. Cal. Oct. 30, 2014); Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 618 (9th Cir. 2010)).

---

[2] Plaintiff wanted to introduce multiple recordings of "Taurus", both live and in the studio, to illustrate what compositional elements of "Taurus" necessarily resulted from any rendition of the piece, *excluding any performance related aspects which do not deserve protection*. (Excerpt 2095-99 - Declaration of Erik Johnson).

### ii. The Deposit Copy Lead Sheet Does Not Limit the Scope of Copyright in a Musical Work Created by Common Law and Defined in 1909 Act, §1(e)

As part of the registration process another section of the 1909 Act requires that a "complete" copy of the work being copyrighted be submitted with the copyright office. 1909 Act, §12. However, this deposit requirement has always been purely archival in nature and was never intended to affect the scope of copyright protection provided for in §1(e). 2 NIMMER ON COPYRIGHT §7.17[A] (2016). There is no case law anywhere which states that the scope of common law copyright protection that works obtain once created, Societe Civile Succession, S49 F .3d at 1185, could somehow be limited by registering the copyright with the Copyright Office. The very notion is absurd.

The Seventh Circuit noted that the 1976 Copyright Act (substantively identical, in this respect, to the corresponding predecessor sections of the 1909 Act) does not require a deposit copy be submitted for the purpose of disclosing and establishing any claimed scope of copyright protection:

> [the Copyright Act] when viewed as a whole negates the notion that deposit requirements are for the purpose of delineating the scope of a copyright through public disclosure.

National Conference of Bar Examiners v. Multistate Legal Studies, 692 F. 2d 478 (7th Cir. 1982). Indeed, nowhere does the 1909 Act state that the deposit copy

submitted pursuant to §12 governs the scope of copyright protection, nor does any appellate case law. Instead, registration (which includes the deposit copy requirement) is simply a "precondition" to filing a copyright infringement lawsuit. See Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157–69 (2010). It is not substantive.

Ninth Circuit precedent conforms with the Seventh Circuit's National Conference of Bar Examiners opinion that the deposit copy lead sheet does not define the scope of copyright. In Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000), the Ninth Circuit was confronted with what a "complete copy" means for a musical work under the 1909 Act. The Court held that

> Although the 1909 Copyright Act requires the owner to deposit a ``complete copy'' of the work with the copyright office, our definition of a ``complete copy'' is broad and deferential: ``Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement.'' Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984) (citations omitted).

Id. at 486-87. The Ninth Circuit then permitted an extensive analysis in Three Boys Music of the composition of the album recording of the underlying song and this Circuit **did not limit the comparison to the deposit lead sheet or preclude the sound recordings**. Id. at 485-86. In that case the defendants were making a highly similar argument to the one in this case, that the inaccurate/incomplete deposit copy

lead sheet should have controlled the litigation. Id. at 486-87 ("[defendants] claimed that the deposit copy does not include the majority of the musical elements that were part of the infringement claim").

The Ninth Circuit's holding simply noted that when an incomplete or inaccurate deposit copy had been submitted for a nonfraudulent reason, and all the parties were well aware of the underlying work that was alleged to have been copied, it is simply not prejudicial to focus the case on the actual composition of the musical work embodied in the album version of the song, instead of an inaccurate version of the deposit lead sheet. Id. at 486-87. The Three Boys Music approach not only comports with the entire purpose and language of the 1909 Act, but avoids elevating form over substance, something decried by the Supreme Court. See Copperweld Corp. v. Independence Tube Corp., 467 US 752, 762-63 (1984) (disapproving of legal doctrine that "'makes but an artificial distinction' at the expense of substance"); United Housing Foundation, Inc. v. Forman, 421 US 837, 848 (1975); Graver Mfg. Co. v. Linde Co., 339 US 605, 607 (1950).

Numerous other cases confronted with more or less the same question have held that the deposit copy does not control what the work is: Scentsy, Inc. v. B.R. Chase, LLC, 942 F. Supp. 2d 1045, 1051 (D. Idaho 2013), *aff'd in part & rev'd in part on other grounds sub nom.*, Scentsy, Inc. v. Harmony Brands, LLC, 585 F. App'x 621

(9th Cir. 2014); <u>Sylvestre v. Oswald</u>, No. 91 Civ. 5060, 1993 U.S. Dist. LEXIS 7002 at *4 (S.D.N.Y. May 18, 1993); <u>KnowledgePlex v. Placebase, Inc.</u>, No. C 08-4267, 2008 U.S. Dist. LEXIS 103915, at 29–30 (N.D. Cal. Dec. 17, 2008);[3] <u>see also</u> <u>Washingtonian Publ'g Co. v. Pearson</u>, 306 U.S. 30, 41 (1939) ("the requirement for deposit is not for the purpose of a permanent record of copyrighted publications and . . . such record is not indispensable to the existence of the copyright").

The defense expert himself, Dr. Lawrence Ferrara, testified in his deposition that "Stairway to Heaven's" "finished composition" is embodied in the *album recording* of that song not the deposit copy. (Excerpt 1650). Indeed, the trial court allowed the full composition of "Stairway to Heaven" to be played ad nauseam.

Note that deposit copy lead sheets submitted to the Copyright Office are almost always outlines of the registered work and almost never represent the entirety

---

[3] The trial court stated that <u>Three Boy Music</u> and <u>KnowledgePlex</u>'s rulings are distinguishable because the deposit copy requirement is jurisdictional in nature. (Excerpt 132). **First,** this is not accurate. The Supreme Court ruled in <u>Reed Elsevier</u>, 559 U.S. at 157–69 (that registration requirements are not jurisdictional, but simply are preconditions to suit. **Second**, regardless whether the requirement is jurisdictional, a precondition, or substantive, it is a distinction without a difference. There is no reason to distinguish between jurisdictional or substantive reasons what "complete" means under the 1909 Act. Clearly, under the 1909 Act, the common law, and the applicable case law, **the deposit copy was never intended to define the scope of the composition of a copyright. Third,** if the registration deposit requirement is jurisdictional or a precondition, this actually supports Plaintiff's point. A jurisdictional requirement of the 1909 Act should not be used to delimit the scope of copyright protection in a work.

of the protected composition covered by §1(e). (Excerpt 2515-16 - Plaintiff's Expert Report); <u>KnowledgePlex</u>, C 08-4267 JF (RS), 2008 WL 5245484, at *9. For example, the lead sheet deposit copy submitted for "Stairway to Heaven" is significantly incomplete when compared to the actual composition of the song in the album recording. (Excerpt 1649-51). The "Stairway to Heaven" deposit copy does not even include the iconic opening notes, and defense musicological expert Dr. Lawrence Ferrara admitted that the transcription he made of "Stairway to Heaven's" "finished composition" in the album recording was around 11,000 notes, while the "Stairway" deposit copy was just 400. (Excerpt 1649-51).

All of the foregoing illustrates that neither Congress, the courts, nor the music community ever intended or thought that the deposit copy being submitted to the Copyright Office (as a simple prerequisite to obtain federal copyright) in anyway could limit the common law copyright that vested in the song at the time of creation.

### iii. Despite the Case Law and 1909 Act Being Clear that the Deposit Copy Does Not Limit the Scope of Protection in a Musical Work, The Court Ruled that Plaintiff Could only Compare the Exact Notes of the "Taurus" Deposit Copy to the "Stairway to Heaven" Album Recordings and Could Not Play Sound Recordings of the Song

The trial court badly misunderstood basic copyright law principles leading to the erroneous ruling. This is illustrated by how the court chose to instruct the jury on musical compositions:

> A musical composition consists of rhythm, harmony and melody as transcribed in written form. The performance of a musical composition can be recorded, but under the law musical composition and sound recordings are different works with different potential copyrights.

(Excerpt 29). It is flat wrong to state that a musical composition only exists as transcribed in written form and explicitly contradicts 1909 Act, §1(e). There is no case law to support such a statement. It contradicts black letter copyright law and binding Ninth Circuit precedent. Swirsky v. Carey, 376 F.3d 841, 849 (9th Cir. 2004); Three Boys Music, 212 F.3d at 485; see also Newton, 204 F. Supp. 2d at 1259. A protected musical composition can *obviously* exist wholly independent of written sheet music in a piano roll, a sound recording, or a video. Id. In Bridgeport Music, Inc. v. UMG Recordings, Inc., the Sixth Circuit observed that a song's composition could be "embedded in the sound recording," independent of any sheet music. 585 F.3d 267, 276 (6th Cir. 2009).

Because of this failure to understand basic copyright principals, the trial court ruled that the scope of copyright protection in a work is strictly limited to **only the exact notes on the written deposit copy lead sheet**. (Excerpt 73, 613-14, 635, 736) (stating to Plaintiff's expert Kevin Hanson: "You can play notes of the deposit copy only.").

This was the first time in history such a restrictive ruling had been made and there was no support for it in the 1909 Act, the common law, or the case law applying the same. The Court even prevented Plaintiff from presenting evidence on the tempo and genre of "Taurus", clearly protectable compositional elements under the 1909 Act, because they were not written on the deposit copy. (Excerpt 512, 1048-49). All of this can be connected to the court's erroneous belief that a musical composition only exists in written form.

The Court erroneously imported into §12 of the 1909 Act a meaning and purpose it was never intended to have (to limit the scope of copyright), which was instead a task explicitly addressed by §1(e) and the common law. Indeed, in the last century, *no court has ever so limited a copyright infringement substantial similarity comparison* as this court did. The trial court's decisions were based on a thoroughly erroneous view of basic copyright law principles.

### iv. At a Minimum the District Court Should Have Ruled that Composition in the Sound Recording is Admissible to the Extent Represented in the Deposit Copy

After the court erroneously ruled at summary judgment that the deposit copy limited the scope of copyright protection in "Taurus" from the protection it was originally afforded under common law and section 1(e), Plaintiff also argued that the court should adopt the approach of the court in the <u>Williams v. Bridgeport</u> case (Blurred Lines). <u>See</u> (Excerpt 2115-17) [Plaintiff's Response to Defense MIL 3] (citing <u>Williams v. Bridgeport</u>, Order Denying Post-Trial Motions, 13-cv-6004 (Doc. No. 423), at p7. (7/14/2015) ("I think [the Gaye Parties' expert] testimony is going to have to be based on the deposit copy. It's not to say they can't have listened to the sound recording as part of their analysis. They simply can't present to the jury an opinion that says, '[b]ecause I listened to the sound recording, I've reached this conclusion.'")).

The trial court in that case held that as long as there was expert testimony that the composition in the sound recordings were represented in some way in the deposit copy, that the compositions in the recordings were admissible to the extent embodied in the deposit copy. <u>Id.</u> Plaintiff made the same argument as Bridgeport at motions in limine <u>Id.</u> Plaintiff's experts opined that all pertinent elements of "Taurus", especially the guitar melody central to the case, are represented on the

deposit copy and that those compositional elements are also present in the "Taurus" sound recording. (Excerpt 2122-23). Plaintiff's argument was disregarded by the trial court. (Excerpt 73-74).

These incredibly restrictive rulings are clearly a result of the court's erroneous belief that only written sheet music can constitute musical composition. Even if this Circuit holds that the deposit copy can in some way limit the scope of copyright protection, it should reverse the trial verdict because Plaintiff was not allowed to produce evidence of what compositional elements from the "Taurus" album version were embodied and represented in the deposit copy.

### v. The Substantial Similarity Comparison Mandated by the Trial Court was Completely Artificial and Highly Prejudicial

Plaintiff, the experts, and the jury were made to compare a version of "Taurus" which had never been heard or played by anyone (the deposit copy), including Randy Wolfe and defendant Jimmy Page. Consider, how can a defendant copy a work he has not seen and did not have access to? How can a piece of paper the defendant never saw be the basis of the substantial similarity comparison? The district court's ruling creates a nonsensical, artificial comparison.

The artificial, highly prejudicial comparison in this case resulted in a comparison between a version of "Taurus" more dissimilar to "Stairway to Heaven" than the actual composition from the album version of "Taurus",

something noted by both Plaintiff's expert and defense expert Robert Mathes. See Declarations of Experts (Excerpts 2515, 2359, 2192, 2204-07, 2122-23, 2096-99).

Indeed, Plaintiff's experts stated that the compositions of the album versions of both "Taurus" and Stairway are nearly identical. (Excerpts 2515, 2359, 2192). Furthermore, Plaintiff's expert Brian Bricklin took defense expert Mathes's performance of the compositions in the "Taurus" album version and the "Stairway to Heaven" album version and overlaid them on top of each other. Mr. Bricklin observed that the two compositions are indistinguishable and are the same "underlying composition." (Excerpt 2192, Audio Exhibits 45-47 [Submitted by Motion to Transmit Physical Exhibits]). However, due to the trial court's erroneous rulings precluding the "Taurus" sound recordings and compositions, the jury never heard any of this highly probative evidence.

Should the district court's decision be affirmed, in approximately 100% of pre-1976 Act cases the substantial similarity comparison will be between a deposit copy the defendant will have never seen or heard, and the allegedl infringing song. Artists simply do not go into the Copyright Office's archives to see what someone wrote down on paper. They *listen* to the underlying source song that is publicly available. Page admitted that he had never asked the Copyright Office for the lead sheet of "Taurus". (Excerpt 507-08). It is therefore ridiculous and artificial to base the

substantial similarity comparison on the deposit copy that no defendant will have ever seen.

It is important not to lose the forest for the trees. The purpose of the copyright infringement comparison is to protect the rights of creators and originators of original expression by cracking down on those who steal another's work. The artificial comparison the lower court instructed the jury to undertake was not the comparison mandated by law or the underlying purpose of copyright law. The substantial similarity comparison in this trial was artificial, highly prejudicial, and must be redone.

### vi. The Implications of the District Court's Rulings are Wide Ranging and Unprecedented

There are many, many works made prior to the 1976 Act which would be affected by the ruling of this court: that only the exact notes in the deposit copy are protectable.

### A. An Affirmance of the Court's Ruling Means that A Sound Recording of An Underlying Song Can Never Be Played to a Jury in a Copyright Infringement Case

The district court's ruling in effect means that a sound recording of a pre-1978 composition can never be played to the jury in a copyright infringement case and that the only relevant evidence to prove a composition of a 1909 Act song is the deposit copy. ***This is absurd and has never been the law.*** Copyright infringement trials

routinely play the songs in question to the jury and then use experts to identify what parts of the composition of the song are protectable and copied. See Three Boys Music, *supra*. The notion that a recording of the composition at issue cannot be played and instead only the deposit copy must be relied upon is bizarre. It is vital and crucial to the future of copyright law that this Circuit overturn the district court's clearly erroneous ruling and remand for a new, unfettered trial.

### B. Vast Amounts of Musical Expression would Lose Protection, Exactly the Opposite of the Purpose of the Copyright Acts, if the Trial Court's Rulings are Upheld

Many songs were and are not composed on paper and are instead composed on musical instruments. Their lead sheets, made after the songs were composed solely for purpose of registering the copyright, were never intended to represent the totality of the song's protection, only to satisfy the archival function of the Copyright Act.

This was the case of "Taurus", where Randy California composed it on his guitar and did not write the deposit copy lead sheet. (Excerpt 2642 - "Taurus" Deposit Transcribed by "B. Hansen 1967"; Trial Exhibit 2058). This was the case for "Stairway to Heaven", where the song was composed by Led Zeppelin over several different takes without utilizing sheet music. (Excerpt 651-52). This was the case in the Blurred Lines case, again because Marvin Gaye composed music in the

studio. Williams v. Bridgeport, 13-06004, Doc. No. 232-1, at p.15 of 29. This was the case in UMG Recordings, Inc., where the Sixth Circuit observed that the artist wrote the songs in the studio. 585 F.3d at 276.

Affirming the district court's ruling that the deposit copy requirement limits the scope of copyright would divest copyright protection from massive amounts of expression and completely upend a century of case law interpreting the 1909 Act.

### C. The Copyright Office Does Not Keep the Deposit Copies Indefinitely; What Happens to those Works for Which the Deposit Copies Have Been Lost?

If the district court's rulings are affirmed, what happens if the deposit copy no longer exists? The Library of Congress need not add all deposited works to its collection and their retention is purely discretionary, "for the longest period considered practical and desirable by the Register of Copyrights and the Librarian of Congress." Nimmer on Copyright, § 7.17[a] (1981). Moreover, at least one Circuit court has observed that the deposit copy is not indispensable to the existence of the copyright. Pearson, 306 U.S. 30, 41 (1939) ("the requirement for deposit is not for the purpose of a permanent record of copyrighted publications and . . . such record is not indispensable to the existence of the copyright").

If this Circuit affirms the district court's ruling that all protectable expression is embodied in the deposit copy, then what happens to the scope of protectability of

a work when there is no longer a deposit copy? The district court held that ***no other***

***evidence*** was admissible to prove the composition of a song. Plaintiff does not have

an answer to this question, except to note that it has always been up to experts to

discern and ascertain what is the protected compositional expression in a musical

work by looking at the best evidence, usually sound recordings of the song. See Three

Boys Music, *supra*; Newton, *supra*.

### D. Submitting 100% Accurate Deposit Copies of Musical Works would Have Been Prohibitively Expensive for Artists

Retaining someone to score a 100% accurate copy of a sound recording would

be an incredibly expensive endeavor, especially when many artists had little

resources and the deposit copy requirement was widely considered to be an archival

formality. Dr. Ferrara himself charges $395.00 dollars per hour to transcribe songs.

(Excerpt 1034). To accurately transcribe all 11,000 notes of "Stairway to Heaven",

as opposed to just the 400 in the "Stairway to Heaven" deposit copy (Excerpt 2404-

07), defense expert Dr. Ferrara charged thousands of dollars. In fact, it would be so

expensive that it would make copyrighting music nearly impossible for an individual

who was not wealth or did not read and expertly write music.

Thus, an affirmance of the district court's ruling would divest a large body of

work from copyright protection simply because (1) no one understood the deposit

copy requirement to be substantive at that time, and (2) because it would be extremely expensive to score music in such a manner. There is no indication that the 1909 Congress intended musical copyright registration to be reserve for the elite and wealthy.

**2.** **The Trial Court Erroneously Precluded the Sound Recordings of "Taurus" Despite the Fact that the Court Itself Admitted They were Relevant to Prove Access, Which was Disputed by Defendants**

### a. Scope of Review

Erroneous evidentiary rulings can be the basis for a new trial. Ruvalcaba v., 64 F. 3d 1323 (citing 99.66 Acres of Land, 970 F.2d at 658); see also Advanced Display Sys., Inc, 212 F.3d at 1275; Harper House, Inc. v, 889 F.2d at 206-08.

Evidentiary rulings based on the application of facts to law are reviewed *de novo*. Hinkson, 585 F. 3d 1247. Evidentiary ruling solely based in fact are reviewed under an abuse of discretion standard. Ruvalcaba, 64 F. 3d at 1323.  When a court uses the wrong standard to analyze the admissibility of evidence, that is also a legal error reviewed de novo. US v. WR Grace, 504 F.3d 745 (2007). Plaintiff contends that this error was an erroneous evidentiary ruling that is legal in nature and should be reviewed *de novo*.

In a copyright case, the song that the Defendants had access to and allegedly copied must be admitted to prove access. The Court's use of Rule 403 to preclude

the album recording of "Taurus" was erroneous as a matter of law.

### b.    Objection Raised Below

The court initially ruled over Plaintiff's opposition (Excerpt 2118-19, 2104-05, 1536, 1563) that the sound recordings of "Taurus" were not relevant to prove access, and that expert testimony on the similarities of the sonic landscapes/production between "Taurus" and "Stairway to Heaven" to prove access and lack of independent creation was not admissible. (Excerpt 73-74). During trial, the court partially reconsidered and admitted that the sound recording was relevant to access, but did not admit it into evidence or allow expert testimony on the similarities of the production techniques in the two songs. (Excerpt 67-68).

### c.    Argument

The sound recordings of "Taurus" should also have been admitted to prove access, even if they were properly precluded from the substantial similarity comparison (although they were not). The lower court repeatedly refused to permit plaintiff to play the sound recording to the jury, or admit it into evidence, for purposes of establishing access---despite ***admitting that the sound recording was relevant to prove access***.

At the motion in limine stage, and during trial, Plaintiff argued that the sound recordings were admissible so that Plaintiff could ask defendant Page if he had heard

and copied the songs, and also to show that the recordings' sonic landscapes and production techniques were so similar that they precluded independent creation of "Stairway to Heaven":

> the sonic landscape in the sound recording of "Taurus" and its similarity to "Stairway to Heaven", although not copyrightable under the 1909 Act, is evidence that Defendants had access to "Taurus". Even though the Court discounted striking similarity in the summary judgment opinion based *on the compositions of the song*, the fact that the sound recordings of the songs use a nearly identical sonic landscape and techniques—as attested to by Brian Bricklin, Stewart, and Erik Johnson—are admissible to raise the question of fact of whether the similarities between two songs are the result of coincidence or not.

(Excerpt 2118). The trial court erroneously ruled against Plaintiff on this issue at MILs, but during the trial reconsidered. When Plaintiff argued that he should be allowed to play the sound recordings of "Taurus" and ask defendant Page if he ever heard them before, the trial court ruled that the recorded versions of "Taurus" could be played for Page:

> Hearing the performance and testifying whether he [defendant Page] has ever heard it or not, [plaintiff's] counsel's right, that can come in for access . . . .

(Excerpt 67-68). However, despite admitting the clear relevance of the sound recording to access, the Court ruled that the sound recording should not be admitted and refused to let the jury hear the version of "Taurus" that Page copied. The court stated:

> We will play the performance here in court, **not in front of the jury**, but have the witness here, and **then when we bring the jury in, you can ask him**, have we just played the performance for you, have you listened to it, is it similar or not? The Court finds it is much too prejudicial for the jury [under Rule 403] to hear that composition, **so we're not going to allow the jury to hear that composition**, but you can have the witness hear that composition, and then you can ask him questions in front of the jury about it.

(Excerpt 67-68) (emphasis added). This ruling does not make any sense. A trial is put on for the jury. How can the jury evaluate the credibility of defendant Page's answer if it does not have the opportunity to listen to the song that Page is being asked about?[4]

Plaintiff's counsel raised this issue with the Court:

| | |
|---|---|
| MR. KULIK: | I understand the Court's ruling this morning, but how can the jury assess the witness's credibility when you ask him, okay, now -- the question, the ultimate question -- after the jury comes back into the courtroom -- |
| THE COURT: | Okay. |
| MR. KULIK: | -- and Mr. Page is on the stand, for example, and we ask him a question, how can the jury assess his credibility -- |
| THE COURT: | He may not be, then, Counsel. Then my ruling would be, if we don't do it this way, it is much |

---

[4] Note that the Court's ruling that playing the "Taurus" album recording would be unduly prejudicial for the substantial similarity comparison is an admission of sorts that the album recording of "Taurus" is **_nearly identical_** to "Stairway to Heaven". This is nothing less than an inadvertent admission by the Court that the album recording of "Taurus" would have proven that Page had access to "Taurus" and wrote "Stairway to Heaven" using "Taurus".

|  |  |
|---|---|
|  | more prejudicial than it is probative, and it doesn't come in at all. Because there's no question in the Court's mind that that would confuse the jury and they may very well be comparing the production to the infringing -- or alleged infringing composition. |
| MR. KULIK: | But Your Honor, don't you think the production itself can be highly relevant to the question of access? For example, if there are certain elements -- |
| THE COURT: | Counsel, your minute is long gone. We can sit here and debate this forever on it, but there's no question in my mind that it is much more prejudicial under 403, and I'm telling you right now, I would keep out the jury hearing the production. |

(Excerpt 605).

The Court's ruling is incorrect. **First**, playing the album recording outside of the presence of the jury, then asking Page if he had heard the album recording in the presence of the jury, is nonsensical. There is no possible way for the jury to evaluate the truthfulness of Page's answer when they have not heard the recording he is being asked about. The Court's choices contradict the purpose of a *jury* trial.

**Second**, the Court's refusal to allow Plaintiff's experts to analyze the production of the "Taurus" album version and compare it to "Stairway to Heaven", so that access could be established, was erroneous in light of the Court's admission that the sound recording of "Taurus" was relevant to prove access. Note that this

analysis of the production and sonic landscapes of the songs should have been allowed *regardless of whether the sound recordings were admitted or not*. WR Grace, 504 F.3d at 763 (stating that experts "may rely on inadmissible evidence in forming an opinion or delivering testimony"). Plaintiff's experts would have testified that the production and sonic landscape of "Taurus" and "Stairway to Heaven" was so strikingly similar that it precluded independent creation. (Excerpt 2188-92, 2205, 1831 [Bricklin stating "by comparing the sound recordings and sonic landscape, production techniques, and engineering methods, . . . there is no possibility STH was created independently from T."]).

**Third**, the trial court's ruling that the sound recording was relevant to access, but could nevertheless be precluded because it was unduly prejudicial under Fed. RE 403 to the substantial similarity comparison, is unfounded and erroneous as a matter of law. It was also clearly erroneous and abused the court's discretion.

There were, *inter alia*, two elements in dispute at trial: access and substantial similarity. It is the very foundation of copyright law that the ***most*** relevant evidence for access is the song that was allegedly copied by Defendants (and which Jimmy Page admits to possessing). (Excerpt 2188-92, 2205, 1831). In a copyright case, as a matter of law, the court simply cannot keep the jury from hearing the song that was copied and comparing it to the allegedly infringing song *if access is in dispute*. The

Court's ruling essentially tied Plaintiff's hand behind his back to prove a contested element. When the Court improperly analyzes the admissible of evidence governed by one rule of law (plaintiff entitle to prove dispute of access) with an inapplicable Rule 403 analysis, that is an error of law. Cf. WR Grace, 504 F.3d at 765 (holding that preclusion of evidence pursuant to Rule 403 erroneous because Rule 703 should have been used).

Moreover, even if this ruling is viewed under the abuse of discretion standard, it was clearly erroneous. The probative value of using the very song that defendant Page owns, and had access to, to establish access is extraordinarily high under Rule 403. The probative value of admitting the song to prove access far outweighed any confusion that could have affected the substantial similarity comparison. Note that the court issued limiting instructions repeatedly and told the jury: "plaintiff has no rights in any sound recording of "Taurus", and claims rights only in the musical composition "Taurus" as transcribed in the deposit copy." (Excerpt 29). This Circuit is clear that a court cannot preclude probative evidence without taking into account less extreme remedies to correct any prejudice. See WR Grace, 504 F.3d at 765 (stating "the court substantially underestimated the capacity of jury instructions to distinguish these relationships, and the potential efficacy of a limiting instruction"). The preclusion of the sound recordings because of Fed. Rule of Evid.

403 were clearly erroneous, abused the court's discretion, and severely damaged Plaintiff's attempt to prove a high degree of access.

Plaintiff notes that even though Plaintiff did successfully prove that defendants had a reasonable degree of access to "Taurus" at trial, the erroneous preclusion of the sound recordings severely hindered Plaintiff's attempts to prove a *higher degree* of access, which is critically important to the inverse ratio rule addressed immediately *infra*. The jury was deprived of the ability to decide what was mere inspiration and what crossed the line into impermissible copying.

**3. The Lower Court Failed to Give the Standard, Black-Letter Law Inverse Ratio Rule Instruction and Erroneously Failed to Tell the Jury that the Burden of Proof for Substantial Similarity is Dependent on the Degree of Access Proven**

**a. Scope of Review**

"The reviewing court's inquiry is 'whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading.'" Oviatt By and Through Waugh, 954 F. 2d 1470 (quoting Thorsted v. Kelly, 858 F.2d at 573 (9th Cir. 1988)). A new trial has been permitted where the Court's evidentiary rulings and jury instructions are erroneous or inadequate. Murphy, 914 F.2d 183) (stating "erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial"); Rinker v, 831 F.2d at 832 (erroneous instructions); Cleveland, 436 F.2d

at 80-81 (inadequate instructions).

### b.   Objection Raised Below

Plaintiff repeatedly asked for an instruction on the inverse ratio rule, which not even Defendants substantively objected to. (Excerpt 1974-76, 50-51). However, the court refused to give the instruction without explanation.

### c.   Argument

"In the Ninth Circuit, the access and substantial similarity elements of infringement are 'inextricably linked' by an inverse ratio rule." Ninth Circuit Model Instruction 17,16 supp. (quoting Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 625 (9th Cir.2010)). Simply stated the rule provides that the higher degree of access Plaintiff proves, the lower the burden to prove substantial similarity. Id.

Plaintiff based a large portion of his trial strategy on the inverse ratio rule. As access was disputed, and Defendants were claiming independent creation, Plaintiff devoted much trial time to proving a high degree of access, which should have concomitantly lowered Plaintiff's burden to prove substantial similarity.[5]

---

[5] Plaintiff maintains he did show a high degree of access given that Led Zeppelin and defendant Page opened for Spirit, attended their shows, praised them in newspaper interviews, covered their songs, and owned many Spirit albums including the one that "Taurus" is on, but it is impossible to know how much access the jury thought there was.

However, despite Plaintiff repeatedly asking for this instruction, the court pointedly refused to instruct the jury on the inverse ratio rule. (Excerpt 50-51). Defendants did not even dispute that the inverse ratio rule is a legitimate instruction and only quibbled with the wording. (Excerpt 1974-76).

The prejudice that resulted from the failure to give this instruction was high and requires a new trial. **First**, there is no possible way the jury knew the correct standard to apply to substantial similarity, and that access and substantial similarity are inextricably intertwined. The jury's substantial similarity analysis could not have been done correctly without knowing the correct burden to apply. **Second**, Plaintiff contends that he proved a high degree of access and that the jury's verdict would have been different if the jury had known that the more access Plaintiff proved, the burden was concomitantly lowered to prove substantial similarity.

The failure to give this instruction requires a new trial.

### 4. The Court Erroneously Instructed the Jury on How to Perform the Extrinsic Test, Completely Omitting the Crucial Instruction that Combinations of Unprotected Elements are Themselves Afforded Protectability

#### a. Scope of Review

"The reviewing court's inquiry is 'whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading.'" <u>Pearce</u>, 954 F. 2d 1470 (quoting Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988)). A new trial has been permitted

where the Court's evidentiary rulings and jury instructions are erroneous or inadequate. Murphy, 914 F. 2d 183 (stating "erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial"); Rinker, 831 F.2d at 832 (erroneous instructions); Cleveland, 436 F.2d at 80-81 (inadequate instructions).

### b.    Objection Raised Below

Plaintiff's proposed jury instructions specifically and repeatedly asked that that the jury be instructed on this important part of the Extrinsic Test. (Excerpt 1956-57, 1961, 1968).

### c.    Argument - The Jury Instructions Erroneously Described the Extrinsic Test by Omitting that Unprotectable Elements, when Used Together, are Copyrightable

The trial court's instructions failed to tell the jury that the arrangement of unprotectable and protectable elements, if used in combination with each other, can itself be protectable. Such was the case, for instance, in Three Boys Music. See Swirsky, 376 F.3d at 849. Such an instruction is so standard to the extrinsic substantial similarity test that even Defendants proposed an instruction on this point of law. (Excerpt 2032). Nevertheless, the Court inexplicably failed to instruct the jury on this crucial component of the extrinsic test. As a result there is no possible way the jury performed the extrinsic test correctly, especially considering the other

erroneous instructions identified in this appeal. Given that the jury found against

Plaintiff on the extrinsic test, the trial verdict must be vacated.

### i. Legal Standard

The Ninth Circuit has held:

> There is no one magical combination of these factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied.

> For example, in *Three Boys* we upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending.

Swirsky, 376 F.3d at 849.

### ii. This Basic Instruction Was Not Given Despite Being Requested by Plaintiff and Plaintiff's Musicological Expert Testifying that the Combination of Musical Elements in "Taurus" Gave the Song Protection

This instruction is a crucial component of the extrinsic analysis the jury was

supposed to perform. Even Defendants proposed that the jury should have been

given an instruction on this part of the extrinsic test (albeit erroneously modified).

(Excerpt 2032). This is the very core of the analytical extrinsic test and the failure to

tell the jury how to perform the extrinsic test requires that the jury's defense verdict on substantial similarity be overturned.

Plaintiff's expert's opinion were substantially based on the fact that the arrangement of protectable and unprotectable elements is afforded copyright protection. (Excerpt 748, 763, 781-82, 834-36). Dr. Alexander Stewart specifically opined that there were as a combination of five elements in "Taurus" that were protectable and had been copied in "Stairway to Heaven": (1) "minor chromatic line and associated chords," (Trial Exhibit 501-1, 502-1, 503-1) (2) durations of pitches of minor chromatic line, (3) melody placed over the descending chromatic line consisting of combination of arpeggios and two-note pairs (Trial Exhibit 506-1), (4) rhythm of steady 8th note beats, and (5) pitch collection (Trial Exhibit 511-1). (Excerpt 779-80). Dr. Stewart testified that none of the prior art had these five characteristics, and that they were unique "in combination." (Excerpt 780-82) (Trial Exhibit 501-1). Dr. Stewart reaffirmed this point later in his testimony. (Excerpt 835). This was a central element of Plaintiff's substantial similarity case. Yet, the jury was never given an instruction on this basic part of the substantial similarity test.

The Court's failure to give any instruction on this important part of the extrinsic test completely negated Dr. Stewart's opinions and conclusions and was

highly prejudicial. The jury could not have come to the correct conclusion without knowing about this crucial part of the extrinsic test. The failure to give this important instruction was reversible error, especially when taking into account the other erroneous instructions complained of immediately *infra*.

5. **The Trial Court Erroneously Instructed the Jury on Originality and the Scope of Protectability of Musical Elements; The Erroneous Instructions are in Direct Contravention of This Circuit's <u>Swirsky</u> Decision and Constitute Reversible Error**

   a. **Scope of Review**

"The reviewing court's inquiry is 'whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading.'" <u>Pearce</u>, 954 F. 2d 1470 (quoting <u>Thorsted</u>, 858 F.2d at 573)). A new trial has been permitted where the Court's evidentiary rulings and jury instructions are erroneous or inadequate. <u>Murphy</u>, 914 F. 2d 183 (stating "erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial"); <u>Rinker</u>, 831 F.2d at 832 (erroneous instructions); <u>Cleveland</u>, 436 F.2d at 80-81 (inadequate instructions).

   b. **Objection Raised Below**

Plaintiff asked the court to correctly instruct the jury on originality. (Excerpt 1946). Plaintiff also objected to Defendants' incorrect instruction on originality. (Excerpt 2030).

In addition to asking that the jury be correctly instructed on originality, Plaintiff also objected to the entirety of Defendants' proposed instruction on Introduction to a Copyright Claim, which incorrectly told the jury that specific musical elements, like descending chromatic scales and short sequences of notes, can never be afforded copyright protection. (Excerpt 2009). This was not the standard instruction and should not have been given.

### c.    Argument

The court seriously misled the jury on the scope of what can be considered protected expression. Specifically the Court misdefined originality, and baselessly instructed the jury that certain musical elements (such as descending chromatic scales) could never be given protection as a matter of law.

### i.  The Court Seriously Erred when Defining Originality

"Original, as the term is used in copyright, means only that the work was independently created by the author, as opposed to copied from other works, and that it possesses at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345-46 (1991). "In this circuit, the definition of originality is broad, and originality means little more than a prohibition of actual copying." Swirsky, 376 F.3d at 851 (quotation marks omitted).

The trial incorrectly instructed the jury on originality, in contravention of

Feist and Swirsky. Specifically, the erroneous instruction states:

> "An original work may include or incorporate elements taken from prior works or works from the public domain. *However, any elements from prior works or the public domain are not considered original parts and not protected by copyright.*"

(Excerpt 31) (emphasis added). The bolded sentence directly conflicts with Feist and Swirsky. This sentence was a custom addition by defendants and, in addition to being vague and ambiguous, has no support in the law.

Compounding the impact of the erroneous instruction, the Court also deleted at Defendants' behest a standard part of the instruction which accurately described originality for the jury. The deleted section of the standard instruction reads:

> "In copyright law, the 'original' part of a work need not be new or novel."

(Excerpt 2029-30). This deleted section directly comports with Feist and Swirsky. For some unexplained reason the court did not give this part of the instruction, and instead gave a definition at odds with binding Supreme Court and Ninth Circuit precedent.

The prejudice caused by this instruction cannot be overstated. The originality and protectability of the expression in "Taurus", as copied in "Stairway to Heaven", was hotly contested throughout the trial. Dr. Stewart addressed this at length at trial and opined that Randy Wolfe's use of a specific descending chromatic scale in "Taurus" was an original compositional element and was copied in

"Stairway to Heaven". (Excerpt 753, 786-87). On the other hand, defense expert Dr. Lawrence Ferrara testified that because chromatic scales had allegedly been used in the prior art it was unoriginal and not protectable at all (there was no evidence introduced by Defendants that Randy Wolfe had copied this musical element from another work). (Excerpt 963-64). There was therefore a dispute of fact on the originality and protectability of this key compositional element.

Yet, the jury was given a thoroughly erroneous definition of originality. The erroneous instruction essentially told the jury that Dr. Ferrara was correct and Dr. Stewart was wrong and that the descending chromatic scale was not protectable as a matter of law. At a minimum, the custom defense language included by the court, with the deletion of the standard language, was extremely confusing for any juror. As a result there is simply no way the jury could have correctly conducted the extrinsic test analysis.

This instruction on originality was a serious misstatement of the law and requires a reversal of the defense verdict on substantial similarity.

> ## ii. The Court Erroneously told the Jury, Without Any Legal Support, that Certain Key Musical Elements in "Taurus" Do Not Have Copyright Protection

The court's "Introduction to Copyright" instruction incorrectly described what can constitute protected musical elements. The court selected a custom jury

instruction, proffered by Defendants, which erroneously states that copyright law does not ever protect the very musical elements at issue in this case:

> "such as descending chromatic scales, arpeggios or short sequences of three notes."

(Excerpt 28). These are the exact musical elements in dispute in this case and this instruction essentially told the jury, erroneously, that "Taurus" was unprotectable expression. This instruction constitutes reversible error for several reasons.

**First**, the instruction contradicts binding precedent. The Ninth Circuit stated in <u>Swirsky</u>:

> Although it is true that a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example), *__an arrangement of a limited number of notes can garner copyright protection__*.

<u>Swirsky</u>, at 849 (emphases added).

**Second**, as the trial court was well aware, Plaintiff's expert had testified that the notes and chords in "Taurus", and copied in "Stairway to Heaven", were in fact used in a unique way that was protectable:

> MR. MALOFIY:  Okay. Let's go to the minor chromatic line. You identified this as one thing that's unique and memorable. Can you share why the minor chromatic line is used in a unique and memorable way?
>
> DR. STEWART:  You know, the minor chromatic line is something that's been used in music for quite a long time, and like a lot of the building blocks of music, **the**

challenge for any composer is to use it in a new and creative way, an original and creative way.

And I think that in both of these works, ""Taurus"" and "Stairway," the composers -- at least in ""Taurus"," the composer found a way to use it in a way that is unlike other works that use this line.

And one of the things that's very different is instead of going through all six pitches of the chromatic line, all the way to the E ....

So one of the important ways that I think that you see this similarity between these two works is that they both do this very unusual thing. In fact, I don't know any other pieces that do it, and the defense hasn't come up with any that do treat this line the way that they ["Taurus" and Stairway] do.

(Excerpt 786-87) (Trial Exhibit 501-1, 502-1, 503-1). Plaintiff's expert Kevin Hanson also testified the descending chromatic line was used in an original and creative way in "Taurus". (Excerpt 748, 753, 755).

Plainly, any musical element, including a descending chromatic scale or arpeggio, used in an original and creative way, can be protectable---as Plaintiff's experts testified at trial. Note that it is black letter law that copyright protection attaches upon a showing of a modicum of creativity; it is not a high bar. Feist, *supra*; Swirsky, *supra*. Yet, the Court's extremely confusing instruction singled out ***the specific elements at issue in this case*** and falsely told the jury they were not ever protectable. This is unduly prejudicial reversible error.

**Second**, the specific language and examples in this instruction given by the

Court (e.g, the reference to descending chromatic scales being unprotectable) are based only on Copyright Office Compendiums, which have no force of law. (Excerpt 2007-08*)*. In fact, the Compendiums' statement of the law is incorrect. See Swirsky, *supra*.

When the Court's erroneous instructions on originality are looked at in conjunction with the failure to give an instruction telling the jury that a combination of elements can be protectable, **the instructions excluded massive amounts of protected material from the extrinsic test analysis**. The Court basically instructed the jury to rule against Plaintiff on the extrinsic test and the jury instructions therefore constitute highly prejudicial, reversible error.

**6. The Trial Court Erroneously Disregarded a Juror's Request to Hear the Requested and Correct Version of the "Taurus" Deposit Copy During Deliberations**

### a. Scope of Review

"The reviewing court's inquiry is 'whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading.'" Oviatt By and Through Waugh, 954 F. 2d 1470 (9th Cir. 1992) (quoting Thorsted, 858 F.2d 571, 573 (9th Cir.1988)).A new trial has been permitted where the Court's evidentiary rulings and jury instructions are erroneous or inadequate. Murphy, 914 F. 2d 183 (stating "erroneous jury instructions, as well as the failure to give adequate instructions, are

also bases for a new trial"); <u>Rinker</u>, 831 F.2d at 832 (erroneous instructions); <u>Cleveland v</u>, 436 F.2d at 80-81 (inadequate instructions).

### b.    Objection Raised Below

During deliberations, the jury asked to hear the guitar version of "Taurus" and then "Stairway to Heaven." Plaintiff argued to the Court that the jury obviously meant the bass clef version of "Taurus" (Trial Exhibit 527V), as that was what was used throughout trial. (Excerpt 1405-10). Defendants wanted a version of the "Taurus" deposit copy played one time at trial where both the bass and treble clefs were artificially played together on one guitar (which Plaintiff's guitar expert testified would never normally be done as the bass and treble clef lines were "two distinct melodies occurring simultaneously" - Excerpt 739-42) (Trial Exhibit 525V).

When the court asked the jury what version of "Taurus" they wanted played one juror stated the "bass clef," while another stated they wanted 525V. (Excerpt 1411). The Court however only played 525V, the defense favorable and artificial "Taurus" version, for the jury.

### c.    Argument

Plaintiff lost this case on substantial similarity. Before the jury's verdict a note was submitted asking to listen to "Plaintiff's audio of "Taurus" (guitar)." (Excerpt 1496). Plaintiff argued to the Court that the jury was obviously requesting to hear

Trial Exhibit 527V, the bass clef of "Taurus" which was played on the guitar repeatedly throughout trial. (Excerpt 1405-10). The defense argued that the jury wanted to hear a version of the "Taurus" deposit copy which had been played just one time, and which did not accurately reflect how "Taurus" would sound. (Excerpt 739-42) (Trial Exhibit 525V).

When asked, two jurors gave conflicting answers. One juror stated they wanted to hear 527V, the bass clef. (Excerpt 1411). Another stated they wanted to hear the 525V. Id. However, the court then only played the 525V version more favorable to defendants. Shortly thereafter, the jury ruled against Plaintiff on substantial similarity.

This was a highly prejudicial error which requires a new trial. Listening to 527V as compared to "Stairway to Heaven", as compared to 525V as compared to "Stairway to Heaven" makes clear the prejudice.

**7. The Trial Court's Order Limiting Plaintiff's Trial Time to 10 Hours Violated Due Process and was Not Even Close to An Adequate Amount of Time to Try this Case**

### a. Scope of Review

The Ninth Circuit has held that time limits on a trial are reviewed for abuses of discretion. Monotype Corp., PLC v. Int'l Typeface Corp., 43 F.3d 443, 451 (9th Cir.1994); see also Sec'y of Labor v. DeSisto, 929 F.2d 789, 795 (1st Cir. 1991) (citing

MCI Commc'ns Corp. v. American Tel. & Tel. Co., 708 F.2d 1081, 1171 (7th Cir. 1983)).

### b.    Objection Raised Below

Plaintiff's objection to this trial time limits were discussed extensively with the trial court and the trial court repeatedly acknowledged that Plaintiff had preserved his objection. See, e.g., (Excerpt 850).

### c.    Argument

The impossibly short trial time limits allotted by the trial court bore no relation to the time that was actually needed to try this complicated case. Plaintiff does not dispute that courts have the inherent power to set trial time limits; however, the limits in this case were imposed inflexibly and prevented the fair adjudication of this case.

### i.    Legal Standard

"A crowded docket does not justify an infringement on the right to reasonably develop a case." Monotype Corp., 43 F.3d at 451. "[T]he time limits should be sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive." MCI Commc'ns Corp., 708 F.2d at 1171.

Judge Posner noted that "to impose arbitrary limitations, enforce them inflexibly and by these means turn a federal trial into a relay race is to sacrifice too

much of one good-accuracy of factual determination-to obtain another-minimization of the time and expense of litigation." Mc-Knight v. General Motors Corp., 908 F.2d 104, 115 (7th Cir. 1990), *cert. denied*, 111 S. Ct. 1306 (1991); Flaminio v. Honda Motor Co., 733 F.2d 463 (7th Cir. 1984) (discouraging an "unhealthy preoccupation" with the trial clock); see also John E. Rumel, "The Hourglass and Due Process: The Propriety of Time Limits on Civil Trials," University of San Francisco Law Review, at p.253 (Winter 1992).

Precluding a rebuttal witness on a key issue, solely because of time limits, is highly prejudicial and reflects an impermissible inflexibility. Woody v. Woody, 127 N.C. App. 626, 492 S.E.2d 382 (1997).[6] "The objecting party must show there was harm incurred as a result." Monotype Corp., 43 F.3d at 451.

###     ii.    **The Court Imposed Clearly Inadequate, Inflexible Time Limits on Plaintiff which were Highly Unreasonable and Clearly Erroneous**

At the pre-trial conference, the court imposed on Plaintiff and Defendants a ten-hour time limit to conduct direct, cross, and rebuttal examinations. (Excerpt 89-91). The trial court incorrectly assessed the time needed to try this case at the outset of the trial: "even if you spend a couple of hours on copyright and a couple of hours

---

[6] Here, Plaintiff intended to call musicologist Dr. Alexander Stewart on rebuttal to refute defense expert Dr. Ferrara's testimony, but such a request was summarily denied by the trial court, as discussed *infra*.

on access, three or four hours on similarities between the songs, couple hours in damages, you're looking at about ten hours on this case." Pre-Trial Conference Hearing Transcript, at p.5.

Yet, the Court's logic, that Plaintiff's case in chief could be presented in ten hours, does not pass even cursory muster; it does not account for the fact that the ten hour limit also included all cross and rebuttal examination. Thus, in reality, Plaintiff had to attempt to somehow present an incredibly complicated case in chief in 5 or 6 hours.

The Court stated that in 14 years of imposing trial time limits on every case before him, he had adjusted the time limits just one time during the case. (Excerpt 91). This reflects, at the outset, an impermissible inflexibility in the Court's approach to trial time limits disapproved of by the appellate courts. MCI Commc'ns Corp., 708 F.2d at 1171. This inflexibility was borne out at trial when the Court severely limited Plaintiff's time to try the case on the merits.

With all due respect, this was not a slip and fall case. This was a case for which the taking of depositions had spanned the entire United States and the Atlantic, and one in which there were approximately 60,000 pages of discovery. Both sides spent hundreds of thousands of dollars preparing the case for trial. Witnesses testified at trial from all over the United States and the world. It was also a case where every

element was disputed and there were several affirmative defenses. Note that at the outset of the case nearly every element of the copyright claims were in dispute, and Defendants were also advancing multiple affirmative defenses. To allot 5 or six hours for Plaintiff's case in chief was completely unreasonable.

Consider, to make out just a prima facie copyright case Plaintiff needed to establish:

- Ownership of the Copyright and Validity of the Trust
- Song Creation of "Taurus" and "Stairway to Heaven"
- Access (hotly contested, extremely important to prove high degree of access for the inverse ratio rule)
- Substantial Similarity (at least two experts)
- Damages

(Excerpt 1868-1897). In addition, Defendants were making numerous affirmative defenses for which Plaintiff had to present witnesses in its case in chief given the high probability he would not have time for rebuttal or that it would not be allowed, including:

- Independent Creation of "Stairway to Heaven"
- Innocence
- Fair Use
- Unclean Hands

Id. Despite the extensive prima facie case it was incumbent on Plaintiff to make out, the Court essentially kept a countdown on Plaintiff's case in chief, repeatedly

reminding counsel that the clock was ticking on the exceedingly short limits. (Excerpts 567, 849); see also Flaminio, 733 F.2d 463 (decrying "an unhealthy preoccupation with the clock").

The court disapproved of much testimony Plaintiff saw as crucial, and instead took an extremely antiseptic, theoretical view of trial strategy and refused to expand the time limits because of such testimony. (Excerpts 567, 849-51). For instance, Plaintiff introduced testimony from Randy Wolfe's sister, Janet Wolfe, which the Court considered unnecessary. Ms. Wolfe's testimony was presented to establish that (1) "Taurus" was written by Randy Wolfe in 1966, (2) that "Taurus" was played extensively live in the late 1960s (the frequency with which "Taurus" was played live and in concert was a key issue in dispute), (3) to establish that Randy Wolfe was a guitar prodigy recognized by Jimi Hendrix (Defendants had been disparaging Wolfe's stature as a guitarist and the likelihood he could have produced significant music), (4) to establish what happened to Randy Wolfe's estate and intellectual property after he died in 1997, (5) the modification of the Trust over the years, and (6) Mr. Skidmore's validity as Trustee of the Trust. (Excerpt 279-299).

In addition, Led Zeppelin's members denied knowing much of anything about Spirit or its music and said they did not have access to the song. (Excerpt 666, 1216-17, 1231-32). However, contrary to this denial, it was reported in newspaper articles

in early 1971 that defendant Robert Plant was involved in a car accident when returning from a Spirit concert, thus objectively establishing that Plant knew of Spirit and had heard its music before "Stairway to Heaven" was written. (Excerpt 2409) (Trial Exhibit 321). This corroborated testimony by a Sprit's member, Mark Andes, that they played snooker and drank with defendant Plant that evening. (Excerpt 417-18).

The Court disagreed that any of this about Ms. Wolfe or the accident was relevant and explicitly stated on the record that it would not allow Plaintiff any significant additional time to develop its case, or cross examine defense witnesses, because the court thought that Plaintiff had wasted his time with Janet Wolfe and with questions on the accident:

> MR. KULIK:    We don't think ten hours, including cross-examination, in a case like this is fair or reasonable.
>
> ....
>
> THE COURT:    **We have gotten into all kinds of background information and things that really aren't relevant to this case**. And that's okay if you want to do it, but it's not necessary for the presentation of this case.
>
> ....
>
> MR. KULIK:    I just -- I feel that the Court may not be fully grasping some of the subtleties and complexities of the case. I believe -- we've only had two days of testimony.
>
> ....

| THE COURT: | Anyway, so those are the things that -- is it -- how relevant is it that there was a traffic accident and somebody [Robert Plant] got hurt during the traffic accident? ... |
| | So go ahead, counsel. I'm sorry. |
| MR. KULIK: | **You know, the fact that Mr. Plant was in an unfortunate accident on his way back from a Spirit show I think is relevant, Your Honor.** |
| THE COURT: | **Well, I don't.** |
| MR. KULIK: | That Janet Wolfe was able to testify that she attended a lot of shows at which ""Taurus"" was played, we had to lay a foundation for her doing that and -- |
| THE COURT: | **Counsel, you could have done that in one or two questions,** but it just went on and on and on. As I said, this thing could have been presented much more efficiently than it was presented. |
| .... | |
| MR. KULIK: | Your Honor, again, in a case where access is incredibly contested or independent creation is an issue, I just think some of the subtleties may not be clear to the Court. |

(Excerpt 850-53). To be clear, the testimony elicited from Ms. Wolfe was not superfluous, went directly to how "Taurus" was created by Randy Wolfe, and was highly relevant. The testimony regarding Mr. Plant's accident was likely some of the most important evidence of access in the entire case (especially because the sound recording was precluded). The Court was focused more on having the case tried within its arbitrary time limits than on letting Plaintiff try the case on the merits.

It was not as if Plaintiff was given two weeks and did not use that time wisely; he was given just 5-6 hours to put on a case in chief!

### iii. The Court's Time Limits were Severely Prejudicial and Especially Harmed Plaintiff's Efforts to Prove Substantial Similarity

The real harm from the Court's time limits and refusal to extend the limits occurred during Defendants' case in chief, and rebuttal, when it did not allow Plaintiff to fully develop and address substantial similarity. Remember, the jury ruled against Plaintiff on the extrinsic test. It is therefore significant that the trial court severely limited Plaintiff's attempt to cross examine Dr. Ferrara on substantial similarity, and also precluded Plaintiff from calling an expert musicological witness on rebuttal.

The defense musicologist, Dr. Ferrara, had testified at length for Defendants. (Excerpt 929-1038). After just a few minutes on cross examination of Dr. Ferrara, Trial Transcript, at p.1038-57), the Court abruptly stopped the trial and told the jury that Plaintiff's counsel was violating his time limits. Id. at 1057 ("At this time, we have a serious time problem as far as conforming to the Court rules on it."). The Court told Plaintiff's counsel that because Plaintiff had gone over his time limit, he was limiting the rest of Plaintiff's questioning of the most important defense witness to *just two additional minutes*. (Excerpt 1064-65). The Court also informed Plaintiff he would only be entitled to cross examine any other defense witness for just ten minutes. Id. Plaintiff was also told there would be no rebuttal witnesses on substantial

similarity (despite the fact that the defense case in chief was not complete and it was unknown what rebuttal testimony might be needed). Id. It must be noted again that Plaintiff lost the trial on substantial similarity, the very issue where he was precluded, ***because of the court's inflexible time limits***, from crossing the defense musicological expert and presenting a rebuttal witness to refute the defense musicological expert's claims.

This is an astounding restriction given how short the initial time limits were and requires reversal. This caused real prejudice. Despite the Court's prior ruling that no rebuttal witnesses would be allowed (a ruling made before the defense case in chief had even been fully put on), Plaintiff asked the court for permission to put on two rebuttal witnesses, including Plaintiff's musicologist Dr. Alexander Stewart. (Excerpt 1268-69). This was summarily denied. Id. Stewart was going to testify in rebuttal that:

- His opinion was unchanged after reading Dr. Ferrara's testimony and that none of the prior art examples were as similar to "Taurus" and Stairway as "Taurus" and Stairway are to each other

- Dr. Ferrara had failed to address all five characteristics that Dr. Stewart opined were shared by "Taurus" and "Stairway to Heaven".

- Dr. Stewart disagreed with Dr. Ferrara's assessment of his pitch collection. He would have testified that while pitch collections do not by themselves prove substantial similarity, they are highly probative. None of the prior art Dr. Ferrara refers to has the same pitch collection, except one, which means the prior art cannot spell the melodic and harmonic expression shared by "Taurus" and "Stairway to Heaven".

- The one song in the prior art that shares the same pitch collection as "Taurus" and "Stairway to Heaven", To Catch a Shad, occurs in a brief interlude for just a few seconds. Dr. Ferrara focused on this song as being significant.

- To Catch a Shad is in a very different genre than Stairway and "Taurus" (it is folk and jazz) and is also in a different key with different instrumentation.

- Dr. Ferrara's analysis of To Catch a Shad fails to note key and tempo, and he misidentifies a banjo as a guitar. It also fails to accurately transcribe the chromatic line, obscuring that it is different than "Taurus" and "Stairway to Heaven". Shad also has different two note pairs, and a different melody. The only 2 actual similarities out of the 5 Dr. Stewart identified are the steady eighth note rhythms and the pitch collection.

- Dr. Ferrara selectively analyzed the data, and he ignores more than 55% of the notes in the deposit copy.

- Dr. Ferrara's note pair analysis stated that these were the most creative and memorable parts in Stairway. Yet, Dr. Ferrara cannot dispute that most of the note pairs are exactly the same both rhythmically and metrically.

- Dr. Ferrara mentioned a book he published called Keyboard Harmony. It appears it is 30 years old and out of print. In addition, nowhere in Dr. Ferrara's book does he discuss minor chromatic lines.

Plaintiff's counsel would have crossed Dr. Ferrara on substantially the same topics and material had he been permitted the time to do so.

Note that the prior order precluding any rebuttal witnesses was made just part way through the defense case in chief. A trial court must be flexible with time limits under the law and not impose them rigidly. By ruling that rebuttal witnesses were not necessary, before it could even be known what rebuttal was needed to refute the

defense case in chief, the court showed that it was too inflexibly applying its already very short time limits. The time limits abused the Court's discretion and were reversible error as they prohibited Plaintiff from addressing significant aspects of the substantial similarity analysis, the subject he lost on.

**8.    The Court Committed Reversible Error by Erroneously Refusing to Preclude the Testimony of Defense Musicologist Dr. Ferrara, or Grant a Negative Inference, Because Ferrara Had a Conflict of Interest which was Deliberately Concealed by Defense Counsel**

### a.    Scope of Review

It is within a court's discretion to exclude or admit expert testimony. Campbell Industries v. Gemini, 619 F.2d 24 (9th Cir. 1980) (citing Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); Williams v. Fenix & Scisson, Inc., 608 F.2d 1205, 1209 (9th Cir. 1979). Furthermore, a court has the power to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing party. Id. (citing Clark v. Pennsylvania R.R. Co., 328 F.2d at 594-95). Courts should not tolerate flagrant abuses of the discovery process. Id.

### b.    Objection Raised Below

Plaintiff filed an extensive motion for sanctions shortly after learning of the conflict of interest, which was that Dr. Ferrara had been hired by Plaintiff's publisher and fiduciary to perform a musicological analysis of "Taurus" and "Stairway to

Heaven" for potential litigation. (Excerpt 1575). This prior report and analysis for Plaintiff's publisher was never disclosed by Defendants or Dr. Ferrara.

However, when Plaintiff asked for disqualification and/or a negative inference at trial the Court summarily denied the motion without explanation. (Excerpt 927).

### c.    Argument

#### i.  Legal Standard

This Court has the inherent authority to disqualify experts. See Campbell Ind. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980). A "court can disqualify an expert based on the fundamental unfairness such expert's conflict of interest creates." Pinal Creek Group v. Newmont Mining Corp., 312 F. Supp. 2d 1212 (D. Ariz. 2004). "The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process." Koch, 85 F.3d at 1182. (quoting English Feedlot v Norden Labs., Inc., 833 F.Supp. 1498, 1504 (D. Col. 1993)). Conflicts must be affirmatively disclosed. See Shadow Traffic Network v. Superior Court, 24 Cal. App. 4th 1067, 1084-85 (Court of Appeal 1994). When looking at disqualification, there are three main considerations:

> (1) the existence or reasonable expectation of a confidential relationship between the movant and the expert; and (2) whether the movant in fact disclosed confidential information to the expert.... as a third element, the public's interest in preserving judicial integrity and fairness as balanced against the party's right to the assistance of experts who possess specialized knowledge ...

Auto-Kaps, Llc v. Clorox Company, Dist. Court, ED New York 2016 (citations omitted).

Courts, however, have precluded experts based on conflicts of interest even when they did not have the ability to disclose confidential information. Sells v. Wamser, 158 F.R.D. 390 (S.D.Ohio 1994). "Many courts have recognized their inherent power to disqualify experts on the basis of the expert's past relationship with an adversary in the litigation." American Empire Surplus Lines v. Care Centers, 484 F. Supp. 2d 855 (ND Ill. 2007) (precluding expert because "unfair and unseemly to allow an expert to be used in such a way.").

### ii. Dr. Ferrara's Testimony Should Never Have Been Allowed, or a Negative Inference Granted

The Court should never have allowed the defense expert musicologist, Dr. Lawrence Ferrara, to testify. Shortly before trial, during Dr. Ferrara's deposition, Plaintiff discovered that Dr. Ferrara had previously been hired to analyze "Taurus" and "Stairway to Heaven" for Plaintiff's fiduciary and publisher, Hollenbeck Music. What is more, defense counsel and Dr. Ferrara knew about this conflict and deliberately attempted to conceal the conflict from Plaintiff, including by violating their affirmative disclosure obligations under FRCP 26(a), and their discovery obligations to produce Dr. Ferrara's prior invoices for work performed and money

received, and Dr. Ferrara's prior reports, and the facts and information he relied upon and did not rely upon.

During Dr. Ferrara's deposition the witness was asked if he had ever heard the song ""Taurus"" before:

| MR. MALOFIY: | Were you familiar with the work ""Taurus"" prior to becoming involved in this litigation? |
| DR. FERRARA: | No. |
| MR. MALOFIY: | Was your first -- |
| DR. FERRARA: | Actually, not no. I was aware of ""Taurus"" before this litigation. |
| MR. MALOFIY: | Why is that? |
| DR. FERRARA: | I think around three years ago, I was asked to complete an analysis -- it was preliminary -- of the ""Taurus"" studio version, not the ""Taurus"" deposit copy, and ""Stairway to Heaven"." And, so, if the question was ""Taurus"," then the answer is yes. Prior to this the ""Taurus"" deposit copy, the answer would be no. |

(Excerpt 1626). This was news to Plaintiff's counsel as such information had not been disclosed in the Rule 26 disclosures, in any discovery answers, in any of Ferrara's expert reports and declaration, nor by defense counsel.

Plaintiff's counsel inquired whether Ferrara was retained by Lou Adler, the owner of Hollenbeck Music and Plaintiff's fiduciary and publisher. Hollenbeck administers the "Taurus" copyright on Plaintiff's behalf. Ferrara stated, "No." (Excerpt 1627). Plaintiff, however, as this motion explains, **later learned that Ferrara had indeed been hired by entities working on behalf of Adler** as defense

counsel knew.

Defense counsel asserted during the deposition that any conflict had been waived (an impossibility as Plaintiff was not even aware of the conflict before the deposition ***and was the only party that could waive any conflict***), implying that defense counsel indeed knew the company who had hired Ferrara:

| | |
|---|---|
| MR. MALOFIY: | Did you clear any conflicts prior to being retained in this case? |
| MR. ANDERSON: | I already told you any conflict was waived. The question really, Francis, is if you want to keep burning time on this or you want to let him -- |
| MR. MALOFIY: | It's a serious, serious issue. The conflict was waived, you said, Mr. Anderson? |
| MR. ANDERSON: | Waived. |
| MR. MALOFIY: | Waived. |
| MR. ANDERSON: | Waived. |
| MR. MALOFIY: | By who? |
| MR. ANDERSON: | **I am as uncomfortable as him**. |

(Excerpt 1630) (emphasis added).

Eventually, Dr. Ferrara finally revealed his mystery employer as "Rondor Music, which I understand is a division of Universal Music Publishing Group." (Excerpt 1632) Finally, after nearly an hour of filibustering it was revealed that defense counsel had in fact communicated with Rondor and Hollenbeck about Dr. Ferrara's previously undisclosed conflict of interest. (Excerpt 1635).

Rondor/Universal was in fact working for Plaintiff's publisher, Hollenbeck Music (Lou Adler's company). This is known because Hollenbeck Music turned over documents in discovery indicating that it had recently hired Universal/Rondor to attempt to make changes to the "Taurus" copyright. (Excerpt 1712).

Basically, Dr. Ferrara had been previously hired by Plaintiff's publisher to assess the success of a lawsuit against Led Zeppelin over "Stairway to Heaven" and produced a report. Defendants then hired Dr. Ferrara to testify against Plaintiff, despite him having previously worked for Plaintiff's publisher and fiduciary, and concealed all of this from plaintiff--including Ferrara's prior analysis of "Taurus" and "Stairway to Heaven". This unseemly conduct alone should preclude his testimony as against public policy.

Dr. Ferrara was paid over $80,000 and is professional expert for the industry. (Excerpt 1034-35). He hires himself out to the highest bidder, usually the industry. The fact that Dr. Ferrara never disclosed his prior employment and his prior invoices, or how much he was paid, or the content of his analysis goes directly to his biases, the soundness of his opinions, and whether or not there was material for impeachment within his prior reports for Plaintiff's publisher. The failure to disclose this conflict and prior analysis of the very two songs in dispute reflects a lack of candor with the tribunal.

Not only was their an affirmative disclosure obligation of a known conflict under FRCP 26, and basic lawyerly ethics, but Defendants never disclosed any of this information despite repeated discovery requests by Plaintiff directly on point:

> All material and communications you have concerning Lou Adler (including by not limited to his entities such as Hollenbeck Music and Ode Records) . . . regarding "Stairway to Heaven" . . . "Taurus" . . . including after the filing of this lawsuit---this includes communications between Defendants' attorneys and agents and Lou Adler's attorneys and agents.

See, e.g., (Excerpt 1744). Note that defense counsel admitted to communications with Lou Adler's entities and agents about this case, but failed to produce these communications. Plaintiff also requested such things from Dr. Ferrara in his deposition, but they were never disclosed or produced. (Excerpt 1758-59).

The fact that Dr. Ferrara's prior analysis of the two songs in dispute was never disclosed is an extreme violation of Defendants' discovery obligations that goes to the heart of this case. Their failure to turn over this information means that a negative inference must be drawn that the information they withheld would have been damaging to Defendants' case and would have been favorable to Plaintiff's.

Disqualification, given the manifest unseemliness of Defendants and Dr. Ferrara's deception, was warranted. American Empire Surplus Lines, 484 F. Supp. 2d 855. It is entirely possible that Dr. Ferrara concluded in his prior that "Taurus" and "Stairway to Heaven" were similar in key respects, something which would

totally undermine his testimony in court. At a minimum, a negative inference should have been granted.

Plaintiff notes that although the disqualification analysis should normally consider an analysis of what confidences there were or could be breached, Defendants' conduct, in concealing any and all information related to Dr. Ferrara's prior employment with Plaintiff's publisher and of his prior comparison of "Taurus" and "Stairway to Heaven", had made conducting this analysis impossible.

Note that when Plaintiff attempted to cross examine Dr. Ferrara on these issues, he was prevented from doing so by the court on relevance grounds despite the fact that there was no way to know what was in Dr. Ferrara's prior analysis without seeing it:

| MR. MALOFIY: | Sir, in your report, did you ever disclose the fact that you initially looked at the ""Taurus"" sound recording? |
|---|---|
| MR. ANDERSON: | Objection. |
| THE COURT: | Sustained. |

(Excerpt 1044).

Defendants' conduct was nothing less than a deliberate effort to perpetrate a fraud on Plaintiff, one which the court's failure to entertain the sanctions motion and request for preclusion ultimately rewarded. The presumption must be that

Defendants concealed this conflict and prior analysis because it hurt their case.

The failure to preclude Dr. Ferrara or grant a negative inference requires reversal.

# Conclusion

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Honorable Court reverse, vacate, and remand for a new trial, including striking the bill of costs. The issues complained of, both when considered individually and as a whole, demonstrate that there were many serious errors that unduly prejudiced Plaintiff's ability to prove substantial similarity.

*****

*Respectfully submitted,*

Francis Alexander, LLC

/s/ Francis Malofiy

Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Rd. | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Law Firm / Lawyers for Appellant Skidmore*

*/d/ March 15, 2017*

# Statement of Related Cases

There are two related cases:

- The district court denied Defendants' requests for costs and fees and Defendants' appealed at 16-56287.

- In <u>Williams v. Bridgeport Music</u>, (15-56880, 16-55089, 16-55626) there are many of the same legal issues in dispute concerning the admissibility of sound recordings and their compositions as it relates to the deposit copy requirement of the 1909 Act.

# Statement of Length Compliance

See attached form.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing APPELLANT'S OPENING BRIEF and EXCERPTS OF THE RECORD have been served upon all counsel of record via electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

\*\*\*\*\*

Respectfully submitted,

# FRANCIS ALEXANDER, LLC

/s/ Francis Malofiy
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Rd. | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*Law Firm / Lawyers for Appellant Skidmore*

*/d/ March 15, 2017*

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-56057

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated _____
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☒ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is 17634 words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant /s/ Francis Malofiy    Date 03/17/2017

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*