# United States Court of Appeals
# For the Ninth Circuit

## C.A. 16-56057

———————————————

### Skidmore et al.

*Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Plaintiff-Appellant*

v.

### Led Zeppelin *et al.*

*Defendants-Appellees*

———————————————

# Plaintiff-Appellant Michael Skidmore's
# Excerpts of the Record
# Volume I of XI

———————————————

(Music copyright infringement, on appeal from the final Order dated June 23, 2016 of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California. The case was docketed in the Central District at 15-cv-03462)

———————————————

### Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyers for Appellant Skidmore*

## EXCERPTS OF THE RECORD: VOLUME I of XI
(1 – 136)

07/08/2016   Amended Judgment (*Doc. No. 297*) ........................................................ 1

06/23/2016   Verdict Sheet (*Doc. No. 263*)................................................................. 3

06/23/2016   Excerpt of Trial Transcript, Court Failure to Play Bass Clef ................................. 7

06/23/2016   Jury Instructions Given (*Doc. No. 273*)................................................. 11

06/23/2016   Judgment on Verdict (*Doc. No. 262*)....................................................... 45

06/21/2016   Excerpt of Trial Transcript, Court Ruling on Inverse Ratio Instruction................ 46

06/17/2016   Excerpt of Trial Transcript, Court Ruling on Time Limits .................................. 52

06/17/2016   Excerpt of Trial Transcript, Court Ruling Not Precluding Ferrara ...................... 58

06/16/2016   Excerpt of Trial Transcript, Court Ruling on Sound Recording for Access ......... 63

06/14/2016   Excerpt of Trial Transcript, Court Rulings on MILs............................................ 69

06/13/2016   Order to Strike Electronically Filed Documents (*Doc. No. 233*) ......................... 85

04/25/2016   Pretrial Hearing Transcript - MIL Orders and Time Limit (*Doc. No. 205*)........... 86

04/25/2016   Amended Ruling on Def. MIL No. 4 (*Doc. No. 203*) ......................................... 114

04/25/2016   Pretrial Hearing Tentative MIL Orders (*Doc. No. 202*) ..................................... 115

04/08/2016   Order Granting Summary Judgment in Part (*Doc. No. 159*) .............................. 117

## EXCERPTS OF THE RECORD: VOLUME II of XI
(137 – 422)

06/14/2016    Transcript for June 14, AM (*Doc. No. 275*)......................................................... 137

06/14/2016    Transcript for June 14, PM (*Doc. No. 283*) ......................................................... 234

06/15/2016    Transcript for June 15, AM (*Doc. No. 276*)......................................................... 336

## EXCERPTS OF THE RECORD: VOLUME III of XI
(423 – 718)

06/15/2016    Transcript for June 15, PM (Doc. No. 284) ......................................................... 423

06/16/2016    Transcript for June 16, AM (*Doc. No. 277*)......................................................... 587

## EXCERPTS OF THE RECORD: VOLUME IV of XI
(719 – 984)

06/16/2016    Transcript for June 16, PM (*Doc. No. 285*) ......................................................... 719

06/17/2016    Transcript for June 17, AM (*Doc. No. 278*)......................................................... 861

## EXCERPTS OF THE RECORD: VOLUME V of XI
(985 – 1239)

06/17/2016    Transcript for June 17, PM (*Doc. No. 286*) ......................................................... 985

06/21/2016    Transcript for June 21, AM (*Doc. No. 279*)......................................................... 1103

## EXCERPTS OF THE RECORD: VOLUME VI of XI
(1240 – 1539)

06/21/2016    Transcript for June 21, PM (Doc. No. 287) ..................................................... 1240

06/22/2016    Transcript for June 22, AM and PM (*Doc. No. 280*)........................................ 1311

06/23/2016    Transcript for June 23, AM (*Doc. No. 281*)...................................................... 1402

07/08/2016    Amended Judgment (*Doc. No. 297*) ................................................................. 1420

06/23/2016    List of Exhibits and Witnesses (*Doc. No. 272*)................................................ 1422

06/23/2016    Jury Note 2 (*Doc. No. 266*) .............................................................................. 1496

06/23/2016    Verdict Sheet (*Doc. No. 263*)........................................................................... 1497

06/23/2016    Jury Instructions Given (*Doc. No. 273*)........................................................... 1501

06/23/2016    Judgment on Verdict (*Doc. No. 262*)................................................................ 1535

06/15/2016    Plaintiff's Motion to Use Recordings to Prove Access (Doc. No. 244) .......... 1536

## EXCERPTS OF THE RECORD: VOLUME VII of XI
(1540 – 1836)

06/13/2016    Order to Strike Electronically Filed Documents (*Doc. No. 233*) ..................... 1540

06/13/2016    Def. Opposition to Plaintiff Request to Reconsider Ruling Granting
              Def. MIL No. 3 (*Doc. No. 239*) ........................................................................ 1541

06/13/2016    Def. Opposition to Sanctions and Preclusion of Dr. Ferrara (*Doc. No. 234*).... 1545

06/12/2016    Plaintiff Request to Reconsider Ruling Granting
              Def. MIL No. 3 (*Doc. No. 232*) ........................................................................ 1563

06/11/2016    Plt. Motion for Sanctions and Preclusion of Dr. Ferrara (*Doc. No. 230*) ......... 1575

06/07/2016    Excerpts from Decl. of Peter J. Anderson Re: Trial Brief (*Doc. No. 223*) ....... 1773

              Declaration of Dr. Alexander Stewart ............................................................ 1776

              Declaration of Erik Johnson ......................................................................... 1802

              Declaration of Kevin Hanson ....................................................................... 1817

              Declaration of Brian Bricklin ....................................................................... 1823

# EXCERPTS OF THE RECORD: VOLUME VIII of XI
(1837 – 2126)

04/25/2016    Pre-Trial Hearing Transcript (*Doc. No. 205*) ..................................................... 1837

04/25/2016    Amended Ruling on Def. MIL No. 4 (*Doc. No. 203*) ....................................... 1865

04/25/2016    Pre-Trial Hearing Orders (*Doc. No. 202*) ......................................................... 1866

04/24/2016    Notice of Lodging of Pre-Trial Conference Order (*Doc. No. 200*) ................... 1868
              (Exhibit List not Included)

04/23/2016    Excerpts of Plaintiff's Disputed Jury Instructions (*Doc. No. 197*).................... 1898

04/22/2016    Excerpts of Defendants' Disputed Jury Instructions (*Doc. No. 196*) .............. 1983

04/21/2016    Def. Reply in Support of Def. MIL No. 4 (*Doc. No. 184*) ................................ 2063

04/21/2016    Def. Reply in Support of Def. MIL No. 3 (*Doc. No. 183*) ................................ 2072

04/20/2016    Plaintiff Short Expert Narratives and Qualifications (*Doc. No. 180*)................ 2084

04/17/2016    Declaration of Erik Johnson Opposing Def. MILs Nos. 3-4 (*Doc. No. 176*) ... 2093

04/15/2016    Plaintiff Response Opposing Def. MIL No. 4 (*Doc. No. 170*) ......................... 2101

              Declaration of Dr. Stewart Opposing MILs Nos. 3 & 4 (Doc. No. 171-1) ...... 2108

04/15/2016    Plaintiff Response Opposing Def. MIL No. 3 (*Doc. No. 169*) ........................ 2114

# EXCERPTS OF THE RECORD: VOLUME IX of XI
## (2127 – 2411)

04/08/2016    Order Granting Summary Judgment in Part (*Doc. No. 159*) ............................ 2127

03/30/2016    Excerpts of Plt. Response to Def. Evidentiary Objections  (*Doc. No. 154*)..... 2147

Declaration of Brian Bricklin (Doc. No. 154-4) ................................................ 2180

Declaration of Erik Johnson (Doc. No. 154-5).................................................. 2199

Declaration of Kevin Hanson (Doc. No. 154-8)................................................ 2231

03/25/2016    Def. MIL No. 4 to Preclude Plaintiff's Experts (*Doc. No. 137*) ...................... 2243

03/25/2016    Def. MIL No. 3 to Preclude Sound Recordings (*Doc. No. 136*) ...................... 2327

03/14/2016    Excerpts of Def. Reply in Support of Summary Judgment (*Doc. No. 129*) ..... 2339

Response to Plaintiff's Alleged Uncontroverted Facts (Doc. No. 129-5)......... 2354

03/08/2016    Notice of Lodging filed Expert Audio and Video (*Doc. No. 125*) ................. 2391

03/08/2016    Notice of Manual Filing by Plaintiff (*Doc. No. 122*) ....................................... 2397

03/08/2016    Excerpts from Decl. of Francis Malofiy in Opposition to SJ (*Doc. No. 124*) .. 2398

Exhibit 10 - Stairway to Heaven Sheet Music (Doc. No. 124-1) ..................... 2404

Exhibit 13 - Robert Plant Crash Article ........................................................... 2409

Exhibit 18 - Spirit Album .................................................................................. 2411

## EXCERPTS OF THE RECORD: VOLUME X of XI
(2412 – 2680)

03/07/2016   Plaintiff's Opposition to SJ [Notice of Errata] (*Doc. No. 126*)  ....................... 2412

Statement of Genuine Issues by Plaintiff (Doc. No. 118-1)  ............................ 2439

Declaration of Dr. Alexander Stewart (Doc. No. 118-8).................................. 2504

03/07/2016   Declaration of Barry Hansen (Doc. No. 119-1)  ................................................ 2526

02/25/2016   Amended Statement of Uncontroverted Facts (*Doc. No. 105*)  ........................ 2548

02/25/2016   Excerpts of Defendants' Motion for Summary Judgment (*Doc. No. 97*) ......... 2598

Declaration of Peter J. Anderson (*Doc. No. 97-10*)  .......................................... 2629

Exhibit 16 - Taurus Copyright Registration (*Doc. No. 97-11*) .......................... 2638

Exhibit 17 - Taurus Deposit Copy (*Doc. No. 97-11*)........................................ 2642

Exhibit 18 - Stairway to Heaven Deposit Copy (*Doc. No. 97-11*) .................... 2644

05/20/2015   Answer to Amended Complaint by Corporate Defs. (*Doc. No. 69*) ................ 2645

## EXCERPTS OF THE RECORD: VOLUME XI of XI
(2681 – 2922)

05/20/2015   Answer to Amended Complaint by Individual Defs. (*Doc. No. 68*)  ................ 2681

10/08/2014   Amended Complaint (*Doc. No. 31*)  ................................................................. 2713

07/23/2016   Notice of Appeal (*Doc. No. 305*)  ................................................................... 2757

Docket Report for <u>Skidmore v. Zeppelin</u>, 14-cv-5760 (E.D. Pa.) ................... 2890

NOTE: CHANGES MADE BY THE COURT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*,<br><br>        Plaintiff,<br><br>    vs.<br><br>LED ZEPPELIN, *et al.*,<br><br>        Defendants. | Case No. 2:15-cv-03462 RGK (AGRx)<br><br>[~~*PROPOSED*~~] AMENDED JUDGMENT |

## JUDGMENT

The Court having granted the Motion of defendants John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp. for Summary Judgment; the action having been tried before the Court siting with a Jury as to the remaining defendants, James Patrick Page, Robert Anthony Plant, Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company; Led Zeppelin, being a non-juridical entity that was never served; and the issues having been duly tried and the Jury having duly rendered its verdict,

**IT IS ORDERED AND ADJUDGED** that plaintiff Michael Skidmore take nothing; that the action **is closed**; and that defendants James Patrick Page, Robert Anthony Plant, John Paul Jones, Warner/Chappell Music, Inc., Atlantic Recording Corporation, Rhino Entertainment Company and Super Hype Publishing, Inc., and Warner Music Group Corp. recover of the plaintiff their costs of action, taxed in the sum of $_____.

Dated: July 08, 2016

_____
The Honorable R. Gary Klausner
United States District Judge

1

1 | **REDACTED AS TO FOREPERSON'S**
2 | **SIGNATURE**

FILED
CLERK, U.S. DISTRICT COURT

JUN 23 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SKIDMORE,                              )        Case No. CV 15-03462-RGK (AGRx)
                          Plaintiffs,          )
              v.                               )        **VERDICT**
LED ZEPPELIN, et al.,                          )
                          Defendants.          )
_____ )

We, the jury in the above entitled action find as follows:

QUESTION NO. 1: Do you find by a preponderance of the evidence that plaintiff is the owner of a valid copyright in the musical composition Taurus?

Answer:

Yes    X

No    _____

If your answer to Question No. 1 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

If your answer to Question No. 1 is "Yes," please proceed to the next question.

QUESTION NO. 2: Do you find by a preponderance of the evidence that any of the defendants had access to the musical composition Taurus before Stairway to Heaven was created?

Answer:

Yes    X

No    _____

1  If your answer to Question No. 2 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

2

3  If your answer to Question No. 2 is "Yes," please proceed to the next question.

4  QUESTION NO. 3: Please put a checkmark next to each defendant listed below who you find by a preponderance of the evidence had access to the musical composition Taurus before Stairway to Heaven was created:

5

6  Answer:

7  James Patrick Page    _____✓_____

8  Robert Plant    _____✓_____

9

10  QUESTION NO. 4: Do you find by a preponderance of the evidence that original elements of the musical composition Taurus are extrinsically substantially similar to Stairway to Heaven?

11  Answer:

12  Yes    _____

13  No    ___✗_____

14

15  If your answer to Question No. 4 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

16  If your answer to Question No. 4 is "Yes," please proceed to the next question.

17

18  QUESTION NO. 5: Do you find by a preponderance of the evidence that original elements of the musical composition Taurus are intrinsically substantially similar to Stairway to Heaven?

19  Answer:

20  Yes    _____

21  No    _____

22

23  If your answer to Question No. 5 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

24  If your answer to Question No. 5 is "Yes," please proceed to the next question.

25

26

27

28

2

QUESTION NO. 6: Do you find by a preponderance of the evidence that James Patrick Page and Robert Plant independently created Stairway to Heaven?

Answer:

Yes     _____

No     _____

If your answer to Question No. 6 is "Yes," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

If your answer to Question No. 6 is "No," please proceed to the next question.

QUESTION NO. 7: Do you find by a preponderance of the evidence that the portion or portions of the musical composition Taurus that were copied in Stairway to Heaven are commonplace, trivial, or appeared in other works before the musical composition Taurus was created?

Answer:

Yes     _____

No     _____

If your answer to Question No. 7 is "Yes," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

If your answer to Question No. 7 is "No," please proceed to the next question.

QUESTION NO. 8: As to each defendant listed below do you find by a preponderance of the evidence that they infringed the copyright in the musical composition Taurus on or after May 31, 2011:

Answer:

| | | |
|---|---|---|
| James Patrick Page | Yes _____ | No _____ |
| Robert Plant | Yes _____ | No _____ |
| Warner/Chappell Music, Inc. | Yes _____ | No _____ |
| Rhino Entertainment Company | Yes _____ | No _____ |
| Atlantic Recording Corporation | Yes _____ | No _____ |

If your answer is yes to any of the defendants, please proceed to the next question.
If your answer is no to all of the defendants, please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

3

1  QUESTION NO. 9: Do you find by a preponderance of the evidence that any of the defendants
2  received profits that are attributable to his or its infringement of the copyright in the musical
   composition Taurus on or after May 31, 2011?

3  Answer:

4  Yes        _____

5  No         _____

6  If your answer to Question No. 9 is "No," please have this verdict form signed and dated by the
   Presiding Juror and returned to the court clerk.
7
   If your answer to Question No. 9 is "Yes," please proceed to the next question.
8

9  QUESTION NO. 10: For each defendant listed below, please state the profits, if any, that you
   find by a preponderance of the evidence he or it received that are attributable to his or its
10 infringement of the copyright in the musical composition Taurus on or after May 31, 2011?

11 Answer:

12 James Patrick Page              $ _____

13 Robert Plant                    $ _____

14 Warner/Chappell Music, Inc.     $ _____

15 Rhino Entertainment Company     $ _____

16 Atlantic Recording Corporation  $ _____

17

18 Signed this __23__ day of June, 2016 at Los Angeles, California.
19

20                              **REDACTED**

21

22

23

24

25

26

27

28                                       4

1           **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

3     **HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE**

4                 **- - - -**

5

6 **MICHAEL SKIDMORE, AS TRUSTEE FOR** )
   **THE RANDY CRAIG WOLFE TRUST,**    )

7                     )
             **PLAINTIFF,**    )

8                     )
      **vs.**            )    **No. CV 15−03462−RGK**

9                     )
   **LED ZEPPELIN; JAMES PATRICK PAGE;** )

10   **ROBERT ANTHONY PLANT; JOHN PAUL**  )
   **JONES; SUPER HYPE PUBLISHING,**    )

11   **INC.; WARNER MUSIC GROUP CORP.,**  )
   **PARENT OF WARNER/CHAPPELL MUSIC,**  )

12   **INC.; ATLANTIC RECORDING**        )
   **CORPORATION; RHINO ENTERTAINMENT**  )

13   **COMPANY,**                  )
                    )

14             **DEFENDANTS.**     )

15

16        **REPORTER'S TRANSCRIPT OF JURY TRIAL**

17          **DAY 7; PAGES 1296 TO 1313**

18          **THURSDAY, JUNE 23, 2016**

19             **9:27 A.M.**

20          **LOS ANGELES, CALIFORNIA**

21

22     _____

23      **SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR**
      **Official Reporter, U.S. District Court**

24         **255 East Temple Street**
        **Los Angeles, CA  90012**

25           **213.894.5949**

1297

**APPEARANCES OF COUNSEL:**

**FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST:**

        FRANCIS ALEXANDER, LLC
        BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
        280 N. PROVIDENCE ROAD, SUITE 1
        MEDIA, PENNSYLVANIA  19063
        215.500.1000

        KULIK GOTTESMAN & SIEGEL, LLP
        BY:  GLEN L. KULIK, ATTORNEY AT LAW
        15303 VENTURA BOULEVARD, SUITE 1400
        SHERMAN OAKS, CALIFORNIA  91403
        310.557.9200

**FOR DEFENDANT LED ZEPPELIN:**

        PHILLIPS NIZER, LLP
        BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
        666 FIFTH AVENUE
        NEW YORK, NEW YORK  10103
        212.977.9700

**FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:**

        LAW OFFICES OF PETER J. ANDERSON, PC
        BY:  PETER J. ANDERSON, ATTORNEY AT LAW
        100 WILSHIRE BOULEVARD, SUITE 2010
        SANTA MONICA, CALIFORNIA  90401
        310.260.6030

        PHILLIPS NIZER, LLP
        BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
        666 FIFTH AVENUE
        NEW YORK, NEW YORK  10103
        212.977.9700

///

///

///

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1   APPEARANCES OF COUNSEL (CONTINUED):

2

3   FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING
    CORPORATION, RHINO ENTERTAINMENT COMPANY:
4
         LAW OFFICES OF PETER J. ANDERSON, PC
5        BY:  PETER J. ANDERSON, ATTORNEY AT LAW
         100 WILSHIRE BOULEVARD, SUITE 2010
6        SANTA MONICA, CALIFORNIA  90401
         310.260.6030
7

8

9   ALSO PRESENT:

10        NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

11        BRAD COHEN, WARNER MUSIC GROUP

12        SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

13        DAN MORENO, TRIAL TECHNICIAN

14

15

16                      I N D E X

17

18  PROCEEDINGS:                             PAGE:

19   Discussion outside the presence of the jury   1299
     re jury note
20
     Jury note addressed in open court       1304
21
     Verdict                                 1308
22

23

24

25
```

1305

1    And the note says this, that we would like to listen to,

2    No. 1, plaintiff's audio of "Taurus" guitar, and, No. 2,

3    plaintiff's audio of "Stairway to Heaven" guitar.

4    Is that correct?

5    JURY FOREPERSON:  (Nods head up and down.)

6    THE COURT:  Yes?

7    JURY FOREPERSON:  We'd like to listen to them twice.

8    THE COURT:  You'd like to listen to them twice.  Okay.

9    JURY FOREPERSON:  Right.

10    THE COURT:  Okay.  As to the plaintiff's audio of

11    "Taurus" guitar, I've gotta figure out which one you mean.  Do

12    you mean the full playing of the deposit copy or do you mean

13    just the bass clef playing of the deposit copy?

14    JUROR NO. 6:  Bass clef.

15    JURY FOREPERSON:  The full copy.

16    THE COURT:  The full copy.  Okay.  So that's what you

17    want, those two, but you want them played twice?

18    JURY FOREPERSON:  Yes.

19    THE COURT:  Do you want them played twice in sequence,

20    or -- in other words, you want --

21    JURY FOREPERSON:  In sequence.

22    THE COURT:  For instance, do you want "Stairway to

23    Heaven" played twice and then "Taurus" played twice, or do you

24    want "Stairway to Heaven," "Taurus," "Stairway to Heaven" and

25    "Taurus"?



FILED
CLERK, U.S. DISTRICT COURT

JUN 2 3 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SKIDMORE,

                    Plaintiffs,

        v.

LED ZEPPELIN, et al.,

                    Defendants.

Case No. CV 15-03462-RGK (AGRx)

**JURY INSTRUCTIONS**

## Instruction No. 1

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Page 1 of 33

## Instruction No. 2

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Page 2 of 33

# Instruction No. 3

You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

## Instruction No.   4

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits that are admitted into evidence;

3.   any facts to which the lawyers have agreed; and

4.   any facts that I may instruct you to accept as proved.

# Instruction No.  5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## Instruction No. 6

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Page 6 of 33

## Instruction No.  7

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# Instruction No. 8

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

# Instruction No. ♉

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness

said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Page 10 of 33

## Instruction No. 10

    If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

Page 11 of 33

## Instruction No.  11

You have heard testimony from witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Page 12 of 33

## Instruction No. 12

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying information that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Page 13 of 33

## Instruction No. 13

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Page 14 of 33

## INSTRUCTION NO.  14

The jury is instructed that any and all intellectual property of Randy Craig Wolfe, including the song Taurus, is currently owned by the Randy Craig Wolfe Trust, the trustee of which is plaintiff Michael Skidmore.

## Instruction No.  15

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

1. the plaintiff is the owner of a valid copyright; and
2. the defendant copied original elements from the copyrighted work.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

Page 15 of 33

## Instruction No. 16

Plaintiff has filed a claim against Defendants for violation of the United States Copyright Act, which governs this case.  In order for you to undertake your responsibility, you must know what a copyright is, what it protects, and what it does not protect.

Copyright confers certain exclusive rights to the owner of a work including the rights to:

1.  Reproduce or authorize the reproduction of the copyrighted work;

2.  Prepare derivative works based upon the copyrighted work.

3.  Distribute the copyrighted work to the public; and

4.  Perform publicly a copyrighted musical work.

Copyright only protects the author's original expression in a work and does not protect ideas, themes or common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes.

Also, there can be no copyright infringement without actual copying.  If two people independently create two works, no matter how similar, there is no copyright infringement unless the second person copied the first.

Page 16 of 33

## Instruction No.   17

Plaintiff contends that the copyright in the musical composition Taurus is infringed by the song Stairway to Heaven.

It is important that you understand what the copyright in the musical composition Taurus protects and does not protect.

A musical composition consists of rhythm, harmony and melody as transcribed in written form.   The performance of a musical composition can be recorded, but under the law musical compositions and sound recordings are different works with different potential copyrights.

In this case, plaintiff has no rights in any sound recording of Taurus, and claims rights only in the musical composition Taurus as transcribed in the deposit copy.  As a result, plaintiff must base his claim only on original expression contained in the deposit copy of Taurus.

That is, plaintiff must prove that Stairway to Heaven copies original expression in the deposit copy of Taurus.  Plaintiff cannot rely on any claimed similarities between recordings of Taurus and Stairway to Heaven.

Page 17 of 33

## Instruction No. 19

The plaintiff must prove by a preponderance of the evidence that the creators of Stairway to Heaven had access to the musical composition Taurus. You may find that the creators of Stairway to Heaven had access to the musical composition Taurus if the creators of Stairway to Heaven had a reasonable opportunity to hear and/or copy the musical composition Taurus ~~work~~ before Stairway to Heaven was created.

Page 19 of 33

## Instruction No. 20

An original work may include or incorporate elements taken from prior works or works from the public domain.  However, any elements from prior works or the public domain are not considered original parts and not protected by copyright.  Instead, the original part of the plaintiff's work is limited to the part created:

1.  independently by the work's author, that is, the author did not copy it from another work; and

2.  by use of at least some minimal creativity.

Page 20 of 33

# Instruction No. 21

For an unauthorized use of a copyrighted work to constitute copyright infringement, the unauthorized use must copy original material protected by the copyright and must be significant enough to constitute infringement. This means that even if the fact of copying is proven, no legal consequences will follow from that fact unless original material is copied and the copying is substantial.

The copyright that plaintiff sues upon protects only the musical composition Taurus as it was transcribed in the deposit copy that accompanied the registration of the copyright with the United States Copyright Office. That is the work that you must compare to Stairway to Heaven.

To prove substantial similarity between the musical composition Taurus as transcribed and Stairway to Heaven, plaintiff must prove that there is both substantial extrinsic similarity and substantial intrinsic similarity between the two works.

Extrinsic similarity is an objective test and requires that you determine whether the two works are similar in original expression. To do that, you must break the works down into their specific musical elements. You must then disregard all musical elements that are not original to Taurus. Once you have disregarded all musical elements that are not original to Taurus, you must decide whether there are any remaining musical elements that are original to Taurus and also appear in Stairway to Heaven and, if so, whether they are substantial similarities or insubstantial similarities.

If plaintiff does not prove that, applying this first test, Stairway to Heaven is substantially similar to original expression in the musical composition Taurus, your verdict must be for defendants.

Page 21 of 33

If plaintiff does prove that, applying this first test, Stairway to Heaven is substantially similar to original expression in the musical composition Taurus, then you must proceed to a second test for subjective intrinsic similarity.

For that second test, you must decide whether the ordinary, reasonable person would find that the musical composition Taurus as transcribed in the deposit copy, and Stairway to Heaven, are substantially similar in their original expression.  In this second test, you must also disregard all musical elements that are not original to Taurus.

If plaintiff does not prove that, applying this second test, the musical composition Taurus as transcribed in the deposit copy, and Stairway to Heaven, are substantially similar in their original expression, your verdict must be for defendants.

If plaintiff does prove both the first test and second test, then he has proven substantial similarity.

## Instruction No. 22

  If Plaintiff shows Defendants had access to Plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises, that shifts the burden to Defendants to rebut or to show that the alleged infringing work was independently created.

  In determining whether Defendants' song was independently created, you may consider evidence presented by Defendants regarding the manner in which the composers created Defendants' song and any other evidence of the circumstances surrounding the creation of Defendants' song.

## Instruction No.  13

To prevail on a copyright claim, the plaintiff must prove substantial copying of original expression in the copyrighted work.  That also means that trivial or minimal copying of original expression is not an infringement.

A use is trivial or de minimis if:

1.  The allegedly-copied original expression is quantitatively a small portion of the plaintiff's copyrighted work; and

2.  The allegedly-copied original expression is not qualitatively important to plaintiff's copyrighted work.

# Instruction No. 24

If you find that defendants Page and Plant infringed the plaintiff's copyright in Taurus, you must determine whether defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation, and/or Rhino Entertainment Co. vicariously infringed that copyright. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.   the defendant directly benefitted financially from the infringing activity of Page and Plant;

2.   the defendant had the right and ability to supervise and control the infringing activity of Plant and Page ; and

3.   the defendant failed to exercise that right and ability.

If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff if you also find that Plant and Page infringed plaintiff's copyright.  If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendants Warner-Chappell, Atlantic Recording Corporation, and/or Rhino Entertainment Co.

Page 25 of 33

# Instruction No.  25

A defendant may be liable for copyright infringement engaged in by another if they knew or had reason to know of the infringing activity and intentionally induced or[materially contributed to that infringing activity.

If you find that Plant and Page infringed the plaintiff's copyright in Taurus, you must determine whether defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation, and/or Rhino Entertainment Co. contributorily infringed that copyright. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.   the defendant knew or had reason to known of the infringing activity of Plant and Page; and

2.   the defendant intentionally induced or[materially contributed to Plant and Page's infringing activity.

If you find that Plant and Page infringed the plaintiff's copyright and you also find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff.  If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the corporate defendant.

Page 26 of 33

# Instruction No. 26

The copyright owner is entitled to any profits of a defendant attributable to infringements that occurred on or after May 31, 2011. Each defendant's profits, if any, from the alleged infringement must be calculated and awarded separately. Also, you may not award any profits attributable to alleged infringements that occurred before May 31, 2011.

You may make an award of a defendant's profits only if you find that the plaintiff showed a causal relationship between infringement on or after May 31, 2011 and the defendant's gross revenue.

A defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

A defendant's gross revenue is all of the defendant's receipts that plaintiff proves were caused by the use, performance or sale of copies of Stairway to Heaven on or after May 31, 2011. The plaintiff has the burden of proving the defendant's gross revenue, including the causal relationship, by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, production costs, management fees and advance payments incurred at any time in producing the defendant's gross revenue. Each defendant has the burden of proving his or its expenses by a preponderance of the evidence.

Plaintiff is not entitled to recover profits that are attributable to factors other than use of the copyrighted work. The defendant has the burden of proving the portion of the profit, if any, attributable to factors other than the alleged infringement of the copyrighted work. You must exclude from any award of profits all profits that the evidence proves are attributable to factors other than

the portion of the profit, if any, attributable to factors other than the alleged infringement of the copyrighted work.  You must exclude from any award of profits all profits that the evidence proves are attributable to factors other than alleged copying of the musical composition Taurus.  For example, you must exclude profits that are attributable to the other elements and music in Stairway to Heaven, to the lyrics in Stairway to Heaven, to the performances by the members of Led Zeppelin, to the recording of Stairway to Heaven, to the public interest in Led Zeppelin and its members and to the marketing efforts that generated the profits.

Page 28 of 33

## Instruction No.   27

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Page 29 of 33

# Instruction No.  28

Because you must base your verdict only on the evidence received in the
case and on these instructions, I remind you that you must not be exposed to any
other information about the case or to the issues it involves.  Except for
discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else
> communicate with you in any way about the merits of the case or anything
> to do with it.  This includes discussing the case in person, in writing, by
> phone or electronic means, via email, text messaging, or any Internet chat
> room, blog, website or social media application.  This applies to
> communicating with your family members, your employer, the media or
> press, and the people involved in the trial.  If you are asked or approached
> in any way about your jury service or anything about this case, you must
> respond that you have been ordered not to discuss the matter and to report
> the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary
> about the case or anything to do with it; do not do any research, such as
> consulting dictionaries, searching the Internet or using other reference
> materials; and do not make any investigation or in any other way try to
> learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial
based on the same evidence that each party has had an opportunity to address.  A
juror who violates these restrictions jeopardizes the fairness of these proceedings,
and a mistrial could result that would require the entire trial process to start over.

Page 30 of 33

If any juror is exposed to any outside information, please notify the court immediately.

## Instruction No. 29

     If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

# Instruction No. 30

A verdict form has been prepared for you. ▮▮▮▮▮▮▮▮▮▮ After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

Page 33 of 33

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE | **CASE NUMBER** |
| | CV 15-03462-RGK (AGRx) |
| PLAINTIFF(S) | |
| v. | |
| LED ZEPPELIN, et al. | **JUDGMENT ON THE VERDICT FOR DEFENDANT(S)** |
| DEFENDANT(S). | |

This action having been tried before the Court sitting with a jury, the Honorable  R. GARY KLAUSNER           ,
District Judge, presiding; the issues having been duly tried and the jury having duly rendered its verdict.

IT IS ORDERED AND ADJUDGED that the plaintiff(s):

MICHAEL SKIDMORE

take nothing; that the action be dismissed on the merits; and that the defendant(s):

LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; WARNER/CHAPPELL MUSIC. INC.; ATLANTIC

RECORDING CORPORATION; AND RHINO ENTERTAINMENT COMPANY

recover of the plaintiff(s) its costs of action, taxed in the sum of _____.

Clerk, U. S. District Court

Dated: 6/23/16

By  S. Williams
Deputy Clerk

At: Los Angeles, CA

cc:    Counsel of record

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3          HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                           – – –

5

   MICHAEL SKIDMORE, AS TRUSTEE FOR   )
6  THE RANDY CRAIG WOLFE TRUST,       )
                                      )
7                       PLAINTIFF,    )
                                      )
8            vs.                      ) No. CV 15-03462-RGK
                                      )
9  LED ZEPPELIN; JAMES PATRICK PAGE;  )
   ROBERT ANTHONY PLANT; JOHN PAUL    )
10 JONES; SUPER HYPE PUBLISHING,      )
   INC.; WARNER MUSIC GROUP CORP.,    )
11 PARENT OF WARNER/CHAPPELL MUSIC,   )
   INC.; ATLANTIC RECORDING           )
12 CORPORATION; RHINO ENTERTAINMENT   )
   COMPANY,                           )
13                                    )
                        DEFENDANTS.   )
14 _____)

15

16           REPORTER'S TRANSCRIPT OF JURY TRIAL

17                  DAY 5, VOLUME II

18              TUESDAY, JUNE 21, 2016

19                   12:58 P.M.

20             LOS ANGELES, CALIFORNIA

21

22

23           CINDY L. NIRENBERG, CSR 5059, FCRR
                U.S. Official Court Reporter
24              255 East Temple Street
                Los Angeles, CA 90012
25              *www.msfedreporter.com*

2

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE
      RANDY CRAIG WOLFE TRUST:
 4
              FRANCIS ALEXANDER, LLC
 5            BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
                   AJ FLUEHR, ATTORNEY AT LAW
 6            280 N. PROVIDENCE ROAD, SUITE 1
              MEDIA, PENNSYLVANIA  19063
 7            215-500-1000

 8            KULIK GOTTESMAN & SIEGEL, LLP
              BY:  GLEN L. KULIK, ATTORNEY AT LAW
 9            15303 VENTURA BOULEVARD, SUITE 1400
              SHERMAN OAKS, CALIFORNIA  91403
10            310-557-9200

11

12    FOR DEFENDANT LED ZEPPELIN:

13
              PHILLIPS NIZER, LLP
14            BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
              666 FIFTH AVENUE
15            NEW YORK, NEW YORK  10103
              212-977-9700
16

17    FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:

18            LAW OFFICES OF PETER J. ANDERSON, PC
              BY:  PETER J. ANDERSON, ATTORNEY AT LAW
19            100 WILSHIRE BOULEVARD, SUITE 2010
              SANTA MONICA, CALIFORNIA  90401
20            310-260-6030

21            PHILLIPS NIZER, LLP
              BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
22            666 FIFTH AVENUE
              NEW YORK, NEW YORK  10103
23            212-977-9700

24

25
```

1    **APPEARANCES OF COUNSEL (CONTINUED):**

2

3    **FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING**
     **CORPORATION, RHINO ENTERTAINMENT COMPANY:**

4
             LAW OFFICES OF PETER J. ANDERSON, PC
5            BY:  PETER J. ANDERSON, ATTORNEY AT LAW
             100 WILSHIRE BOULEVARD, SUITE 2010
6            SANTA MONICA, CALIFORNIA  90401
             310-260-6030
7

8

9

10   ALSO PRESENT:

11           NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

12           BRAD COHEN, WARNER MUSIC GROUP

13           SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

14           KEVIN SEGAL, TRIAL TECHNICIAN

15           DAN MORENO, TRIAL TECHNICIAN

16

17

18

19

20

21

22

23

24

25

4

```
1                    I N D E X

2

3   DEFENDANTS' WITNESSES:                  PAGE

4   JAMES PATRICK PAGE

5       DIRECT BY MR. ANDERSON (RESUMED)      5

6       CROSS BY MR. MALOFIY                 18

7

8

9   FURTHER PROCEEDINGS                     PAGE

10  DISCUSSION HELD OUTSIDE PRESENCE OF JURY  29

11  DISCUSSION HELD OUTSIDE PRESENCE OF JURY  45

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   front?  What is it dealing with?
 2            MR. KULIK:  We would like the following instruction:
 3            "In 2014, the Supreme Court of the United States made
 4            a ruling that copyright plaintiffs are never barred
 5            by the passage of time from filing a lawsuit and
 6            seeking compensation and credit within the statutory
 7            period starting three years before the suit was
 8            filed."
 9            THE COURT:  Okay.  Why don't you write it up and I'll
10   decide whether or not to give it tomorrow morning.  Okay?
11            MR. MALOFIY:  Thank you.
12            THE COURT:  Be prepared in your argument not to
13   mention it if I don't give it.  Okay?
14            MR. MALOFIY:  Understood.
15            MR. ANDERSON:  And, Your Honor, I think we had a
16   recent filing on this subject and that actually overstates the
17   law.
18            THE COURT:  Okay.
19            MR. MALOFIY:  One last thing, Your Honor.  I
20   apologize.
21            THE COURT:  Yes.
22            MR. MALOFIY:  I note -- I touched on it -- I touched
23   upon it during my questioning of I think one of the experts,
24   but the inverse ratio rule, it's because the greater the proof
25   of access the lesser the proof of substantial similarity.
```

1          Because access is at issue here and it's not conceded

2    and because it is hotly debated, we believe there is a strong

3    showing of access in this case and, because there is a strong

4    showing of access, our bar for substantial similarity is

5    lessened.

6          I'd be happy to argue it to the jury, but I'm not

7    sure how Your Honor would like to handle it because we didn't

8    address it.

9          THE COURT:  That's because we weren't giving that

10   instruction.

11         MR. ANDERSON:  Right.  I think it's --

12         THE COURT:  We're not going to give that instruction.

13         Okay.  Thank you very much.

14         Enjoy your night preparing your argument for

15   tomorrow.  I'm looking forward to it.

16         Thank you, counsel.

17         MR. MALOFIY:  Thank you, Your Honor.

18         MR. ANDERSON:  Thank you, Your Honor.

19         THE CLERK:  All rise.

20     *(Evening recess taken 3:41 P.M.)*

21                          --oOo--

22

23

24

25

849

1                    UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3             HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                              – – –

5

MICHAEL SKIDMORE, AS TRUSTEE FOR    )
6  THE RANDY CRAIG WOLFE TRUST,        )
                                       )
7                      PLAINTIFF,      )
                                       )
8            vs.                       ) No. CV 15–03462–RGK
                                       )
9  LED ZEPPELIN; JAMES PATRICK PAGE;   )
   ROBERT ANTHONY PLANT; JOHN PAUL     )
10 JONES; SUPER HYPE PUBLISHING,       )
   INC.; WARNER MUSIC GROUP CORP.,     )
11 PARENT OF WARNER/CHAPPELL MUSIC,    )
   INC.; ATLANTIC RECORDING            )
12 CORPORATION; RHINO ENTERTAINMENT    )
   COMPANY,                            )
13                                     )
                       DEFENDANTS.     )
14 _____)

15

16              REPORTER'S TRANSCRIPT OF JURY TRIAL

17              DAY 4, VOLUME II, PAGES 849–966

18                  FRIDAY, JUNE 17, 2016

19                        1:01 P.M.

20                  LOS ANGELES, CALIFORNIA

21

22

23              CINDY L. NIRENBERG, CSR 5059, FCRR
                  U.S. Official Court Reporter
24                   255 East Temple Street
                     Los Angeles, CA 90012
25                   *www.msfedreporter.com*

850

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE
     RANDY CRAIG WOLFE TRUST:
 4
          FRANCIS ALEXANDER, LLC
 5        BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
          280 N. PROVIDENCE ROAD, SUITE 1
 6        MEDIA, PENNSYLVANIA  19063
          215-500-1000
 7
          KULIK GOTTESMAN & SIEGEL, LLP
 8        BY:  GLEN L. KULIK, ATTORNEY AT LAW
          15303 VENTURA BOULEVARD, SUITE 1400
 9        SHERMAN OAKS, CALIFORNIA  91403
          310-557-9200
10

11

12   FOR DEFENDANT LED ZEPPELIN:

13        PHILLIPS NIZER, LLP
          BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
14        666 FIFTH AVENUE
          NEW YORK, NEW YORK  10103
15        212-977-9700

16

     FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:
17
          LAW OFFICES OF PETER J. ANDERSON, PC
18        BY:  PETER J. ANDERSON, ATTORNEY AT LAW
          100 WILSHIRE BOULEVARD, SUITE 2010
19        SANTA MONICA, CALIFORNIA  90401
          310-260-6030
20
          PHILLIPS NIZER, LLP
21        BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
          666 FIFTH AVENUE
22        NEW YORK, NEW YORK  10103
          212-977-9700

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**00053**

851

1    **APPEARANCES OF COUNSEL (CONTINUED):**

2

3    **FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING
     CORPORATION, RHINO ENTERTAINMENT COMPANY:**

4
             LAW OFFICES OF PETER J. ANDERSON, PC
5            BY:  PETER J. ANDERSON, ATTORNEY AT LAW
             100 WILSHIRE BOULEVARD, SUITE 2010
6            SANTA MONICA, CALIFORNIA  90401
             310-260-6030
7

8

9

10   ALSO PRESENT:

11           NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

12           BRAD COHEN, WARNER MUSIC GROUP

13           SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

14           KEVIN SEGAL, TRIAL TECHNICIAN

15           DAN MORENO, TRIAL TECHNICIAN

16

17

18

19

20

21

22

23

24

25

```
 1                         I N D E X

 2

 3    DEFENDANTS' WITNESSES:                PAGE

 4    LAWRENCE FERRARA

 5        DIRECT BY MR. ANDERSON (RESUMED)    853

 6        CROSS BY MR. MALOFIY                902

 7        REDIRECT BY MR. ANDERSON            932

 8

 9    JOHN BALDWIN

10        DIRECT BY MR. ANDERSON             935

11        CROSS BY MR. MALOFIY               942

12        REDIRECT BY MR. ANDERSON           953

13

14    ROBERT BALLOU MATHES

15        DIRECT BY MR. ANDERSON             954

16

17

18    FURTHER PROCEEDINGS                  PAGE

19    DISCUSSION HELD IN CHAMBERS            921

20

21                     E X H I B I T S

22    TRIAL EXHIBITS              MARKED  ADMITTED

23    2704                                   917

24    2705                                   918

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

928

1    There were long gaps, as you know, with technology.

2    But not only that, finding evidence -- and I know there's a

3    dispute between the two of you, but that doesn't excuse it --

4    finding evidence, long gaps in presenting the evidence because

5    they couldn't be found or couldn't be identified or the other

6    side hadn't seen it, long gaps of getting witnesses, walking

7    outside the courtroom and trying to find witnesses.

8    There were several times during the case where the

9    plaintiff says, "Can we have a break" -- and that's okay -- "it

10   can be used against my time," which the Court did.

11   But there were a lot of gaps in the case where you

12   could have been presenting evidence that you didn't because we

13   just had a blank courtroom at the time because of the waiting

14   for witnesses or waiting for exhibits.

15   Because the Court finds that it really wasn't done --

16   efficiently presented so far -- and the way you present your

17   case, as I told you before, is completely up to you, but it has

18   to be within the time frames that the Court gave -- and because

19   of the fumbling of exhibits and witnesses and producing

20   evidence and not being presented efficiently, the Court feels

21   that there's really no excuse and no reason to give you more

22   time.

23   Now, that being said, being as lenient as I can and

24   over the objection, I'm sure, if he hasn't made it yet, of

25   defense counsel, I'm going to allow you ten minutes on each

929

```
 1    witness the defendants call for cross-examination.  There will

 2    be no rebuttal witnesses.

 3              MR. MALOFIY:  Understood.  Thank you, Your Honor.

 4              THE COURT:  Okay.  So I'm hoping that will help you

 5    out, because it's just -- I want to make sure that we make it

 6    as fair as possible.  Okay.

 7              MR. ANDERSON:  The defendants --

 8              MR. MALOFIY:  That's fair.

 9              Do I have a few more minutes to finish with --

10              THE COURT:  Two more minutes on this witness and

11    after that ten minutes per witness.

12              MR. MALOFIY:  Thank you, Your Honor.

13              THE COURT:  Okay?  Thank you very much.

14              MR. ANDERSON:  More than fair.

15              THE COURT:  And when you're -- when you're examining

16    the witness, counsel, when you get to 8 minutes, I'll give you

17    notice that you have another 2 minutes left.

18              MR. MALOFIY:  Okay.  Thank you, Your Honor.

19         (The following proceedings were held in open court.)

20              THE COURT:  Okay.  The record will reflect that all

21    members of the jury are in their respective seats in the jury

22    box.  The witness is on the witness stand.

23              And, ladies and gentlemen, I have to fill you in a

24    little bit.  As you have heard -- or at least heard alluded to,

25    there are time limits we gave both sides to present their case
```

1             **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE**

4                 - - - -

5

6    MICHAEL SKIDMORE, AS TRUSTEE FOR  )
    THE RANDY CRAIG WOLFE TRUST,      )

7                       )

8              PLAINTIFF,      )
                   )

        vs.            )   No. CV 15-03462-RGK

9                       )

10   LED ZEPPELIN; JAMES PATRICK PAGE; )
    ROBERT ANTHONY PLANT; JOHN PAUL   )
    JONES; SUPER HYPE PUBLISHING,     )

11   INC.; WARNER MUSIC GROUP CORP.,   )
    PARENT OF WARNER/CHAPPELL MUSIC,  )

12   INC.; ATLANTIC RECORDING          )
    CORPORATION; RHINO ENTERTAINMENT  )

13   COMPANY,                          )
                   )

14            DEFENDANTS.      )

15

16       **REPORTER'S TRANSCRIPT OF JURY TRIAL**

17       **DAY 4, VOLUME 1; PAGES 725 TO 848**

18         **FRIDAY, JUNE 17, 2016**

19            **8:30 A.M.**

20         **LOS ANGELES, CALIFORNIA**

21

22   _____

23       **SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR**
     **Official Reporter, U.S. District Court**

24          **255 East Temple Street**
        **Los Angeles, CA  90012**

25           **213.894.5949**

1  **APPEARANCES OF COUNSEL:**

2

3  **FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE**
   **RANDY CRAIG WOLFE TRUST:**

4
        FRANCIS ALEXANDER, LLC
5       BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
        280 N. PROVIDENCE ROAD, SUITE 1
6       MEDIA, PENNSYLVANIA  19063
        215.500.1000
7
        KULIK GOTTESMAN & SIEGEL, LLP
8       BY:  GLEN L. KULIK, ATTORNEY AT LAW
        15303 VENTURA BOULEVARD, SUITE 1400
9       SHERMAN OAKS, CALIFORNIA  91403
        310.557.9200
10

11 **FOR DEFENDANT LED ZEPPELIN:**

12      PHILLIPS NIZER, LLP
        BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
13      666 FIFTH AVENUE
        NEW YORK, NEW YORK  10103
14      212.977.9700

15

16 **FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:**

        LAW OFFICES OF PETER J. ANDERSON, PC
17      BY:  PETER J. ANDERSON, ATTORNEY AT LAW
        100 WILSHIRE BOULEVARD, SUITE 2010
18      SANTA MONICA, CALIFORNIA  90401
        310.260.6030
19
        PHILLIPS NIZER, LLP
20      BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
        666 FIFTH AVENUE
21      NEW YORK, NEW YORK  10103
        212.977.9700

22

23 ///

24 ///

25 ///

1    **APPEARANCES OF COUNSEL (CONTINUED):**

2

3    **FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING**
     **CORPORATION, RHINO ENTERTAINMENT COMPANY:**

4
            LAW OFFICES OF PETER J. ANDERSON, PC
5           BY:  PETER J. ANDERSON, ATTORNEY AT LAW
            100 WILSHIRE BOULEVARD, SUITE 2010
6           SANTA MONICA, CALIFORNIA  90401
            310.260.6030
7

8

9    **ALSO PRESENT:**

10          NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

11          BRAD COHEN, WARNER MUSIC GROUP

12          SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

13          DAN MORENO, TRIAL TECHNICIAN

14

15

16

17

18

19

20

21

22

23

24

25

728

*I N D E X*

**PLAINTIFF'S WITNESSES:**                                              **PAGE**

**MICHAEL SKIDMORE**
    DIRECT EXAMINATION (CONTINUED) BY MR. MALOFIY     729
    CROSS-EXAMINATION BY MR. ANDERSON               735
    REDIRECT EXAMINATION BY MR. MALOFIY             751

**MICHAEL EINHORN**
    DIRECT EXAMINATION BY MR. MALOFIY               757
    CROSS-EXAMINATION BY MR. ANDERSON               780
    REDIRECT EXAMINATION BY MR. MALOFIY             788

**DEFENDANTS' WITNESSES:**                                             **PAGE**

**LAWRENCE FERRARA**
    DIRECT EXAMINATION BY MR. ANDERSON              794

*E X H I B I T S*

| TRIAL EXHIBIT NUMBER: | MARKED FOR I.D. PAGE: | RECEIVED IN EVIDENCE PAGE: |
| --- | --- | --- |
| 61-A | -- | 806 |
| 451 | -- | 741 |
| 452 | -- | 744 |
| 453 | -- | 746 |
| 454 | -- | 747 |
| 455 | -- | 747 |
| 1XX | -- | 763 |
| 2016 | -- | 738 |
| 2070 | -- | 740 |
| 2092 | -- | 802 |
| 2405 | -- | 802 |
| 3031-00042 | -- | 733 |
| 450-00001 | -- | 730 |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

791

```
 1            MR. MALOFIY:  Oh, Your Honor?

 2            THE COURT:  Yes.

 3            MR. MALOFIY:  If Dr. Ferrara's up next, there's a

 4     serious conflict issue, which we did raise by motion and we

 5     want to discuss with you.

 6            THE COURT:  I don't know who the next witness will be.

 7     Let's find out.

 8            MR. ANDERSON:  Dr. Lawrence Ferrara.

 9            THE COURT:  Okay.

10        And you want what, Counsel?

11            MR. MALOFIY:  We filed an extensive sanctions motion

12     against defendants and Dr. Ferrara.

13            MR. ANDERSON:  Your Honor --

14            MR. MALOFIY:  -- for being --

15            THE COURT:  Okay.  Okay.  Counsel, I understand, and I

16     have your motion.  It's not something that should be coming in

17     in front of the jury.

18            MR. MALOFIY:  I'm sorry.

19            THE COURT:  And your objection is to his testifying?

20            MR. MALOFIY:  Yes.

21            THE COURT:  Overruled.

22            MR. MALOFIY:  As to a negative inference.

23            THE COURT:  Overruled.

24        Let's call -- bring in your next witness.

25        Or denied.  Let's bring in the next witness.
```

<pre>
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3          HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

 4                        - - - -

 5


 6   MICHAEL SKIDMORE, AS TRUSTEE FOR  )
     THE RANDY CRAIG WOLFE TRUST,      )
 7                                     )
                       PLAINTIFF,      )
 8                                     )
         vs.                           )   No. CV 15-03462-RGK
 9                                     )
     LED ZEPPELIN; JAMES PATRICK PAGE; )
10   ROBERT ANTHONY PLANT; JOHN PAUL   )
     JONES; SUPER HYPE PUBLISHING,     )
11   INC.; WARNER MUSIC GROUP CORP.,   )
     PARENT OF WARNER/CHAPPELL MUSIC,  )
12   INC.; ATLANTIC RECORDING          )
     CORPORATION; RHINO ENTERTAINMENT  )
13   COMPANY,                          )
                                       )
14                     DEFENDANTS.     )

15


16            REPORTER'S TRANSCRIPT OF JURY TRIAL

17           DAY 3, VOLUME 1; PAGES 451 TO 582

18              THURSDAY, JUNE 16, 2016

19                    8:17 A.M.

20              LOS ANGELES, CALIFORNIA

21

22   _____

23        SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
           Official Reporter, U.S. District Court
24                 255 East Temple Street
                   Los Angeles, CA  90012
25                    213.894.5949
</pre>

452

```
 1    APPEARANCES OF COUNSEL:

 2


 3    FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE
      RANDY CRAIG WOLFE TRUST:
 4
            FRANCIS ALEXANDER, LLC
 5          BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
            280 N. PROVIDENCE ROAD, SUITE 1
 6          MEDIA, PENNSYLVANIA  19063
            215.500.1000
 7
            KULIK GOTTESMAN & SIEGEL, LLP
 8          BY:  GLEN L. KULIK, ATTORNEY AT LAW
            15303 VENTURA BOULEVARD, SUITE 1400
 9          SHERMAN OAKS, CALIFORNIA  91403
            310.557.9200
10

11    FOR DEFENDANT LED ZEPPELIN:

12          PHILLIPS NIZER, LLP
            BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
13          666 FIFTH AVENUE
            NEW YORK, NEW YORK  10103
14          212.977.9700

15
      FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:
16
            LAW OFFICES OF PETER J. ANDERSON, PC
17          BY:  PETER J. ANDERSON, ATTORNEY AT LAW
            100 WILSHIRE BOULEVARD, SUITE 2010
18          SANTA MONICA, CALIFORNIA  90401
            310.260.6030
19
            PHILLIPS NIZER, LLP
20          BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
            666 FIFTH AVENUE
21          NEW YORK, NEW YORK  10103
            212.977.9700
22

23    ///

24    ///

25    ///
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

453

```
 1   APPEARANCES OF COUNSEL (CONTINUED):

 2

 3   FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING
     CORPORATION, RHINO ENTERTAINMENT COMPANY:
 4
           LAW OFFICES OF PETER J. ANDERSON, PC
 5         BY:  PETER J. ANDERSON, ATTORNEY AT LAW
           100 WILSHIRE BOULEVARD, SUITE 2010
 6         SANTA MONICA, CALIFORNIA  90401
           310.260.6030
 7

 8

 9   ALSO PRESENT:

10         NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

11         BRAD COHEN, WARNER MUSIC GROUP

12         SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

13         DAN MORENO, TRIAL TECHNICIAN

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                        I N D E X

 2

 3   PROCEEDINGS                                    PAGE

 4   Discussion outside the presence of the jury     455

 5   Testimony outside the presence of the jury      470

 6

 7   PLAINTIFF'S WITNESSES:                          PAGE

 8   JAMES PATRICK PAGE

 9     DIRECT EXAMINATION (CONTINUED) BY MR. MALOFIY  476

10     CROSS-EXAMINATION BY MR. ANDERSON              564

11     REDIRECT EXAMINATION BY MR. MALOFIY            569

12     RECROSS-EXAMINATION BY MR. ANDERSON            571

13   LARRY FUZZY KNIGHT

14     DIRECT EXAMINATION BY MR. MALOFIY              572

15     CROSS-EXAMINATION BY MR. ANDERSON              578

16

17

18

19                      E X H I B I T S

20   TRIAL EXHIBIT      MARKED FOR I.D.    RECEIVED IN EVIDENCE
       NUMBER:              PAGE:                 PAGE:
21
       2023-A                --                    508
22
       D040194               538                   --
23
       D39243                546                   557
24

25
```

455

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 16, 2016

 2                          8:17 A.M.

 3                           - - - -

 4       (Outside the presence of the jury:)

 5           THE COURT:  Okay.  Counsel, there are three areas that

 6   I want to talk about that were raised yesterday.

 7           One is, we were asked if we would take judicial notice

 8   that there's been no challenges to the Trust.  I'm not too sure

 9   that defense is even contesting that one way or the other.  But

10   the Court's not going to take judicial notice as to the fact

11   that there's been no challenges to the Trust.  It's very easy

12   to put the trustee on and say have there been any challenges,

13   and he can say no, and that's it, unless they can show there

14   has been some challenges.  So you can handle that through your

15   witnesses, but the Court's not taking judicial notice of all

16   that.  I'm not going to go through all the court records.

17           As to the witness hearing the composition -- take that

18   back.  Hearing the performance and testifying whether he has

19   ever heard it or not, counsel's right, that can come in for

20   access, but it can't come in as to whether or not, in the

21   jury's mind, whether or not that is similar or not similar,

22   because we're not talking about the performance, we're talking

23   about the deposit copy.

24           So this is what you're going to do, if you wish to do it.

25   We will play the performance here in court, not in front of the
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

456

1    jury, but have the witness here, and then when we bring the

2    jury in, you can ask him, have we just played the performance

3    for you, have you listened to it, is it similar or not?

4         (Mr. Malofiy enters the courtroom.)

5         THE COURT:  The Court finds it is much too prejudicial

6    for the jury to hear that composition, so we're not going to

7    allow the jury to hear that composition, but you can have the

8    witness hear that composition, and then you can ask him

9    questions in front of the jury about it.

10        The third area that we wanted to talk about is the

11   deposition.  You mentioned the rule said that you can allow

12   that deposition in.  Give me a quote on where that rule is that

13   you're talking about.  As of now, the default is, is that, no,

14   if there's a live witness here, you have to go through live

15   testimony rather than introducing the deposition, except for

16   impeachment.  But I'll give you a chance to provide the Court

17   with that rule that you said, if there is a rule, saying that

18   it's allowed in even though we have a live witness here in

19   court.

20        So those were the three things we were talking about.

21   I'll give you about five minutes to determine whether or not

22   you want to go ahead and play the composition for the witness

23   and then ask questions after the jury comes back in or not.

24   And let me know.  If so, we'll have to play that right away

25   before we bring the jury in.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1           **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3      **HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE**

4               - - - -

5

6  **MICHAEL SKIDMORE, AS TRUSTEE FOR** )
    **THE RANDY CRAIG WOLFE TRUST,** )

7                  )
            **PLAINTIFF,** )

8                  )
      **vs.**           )   **No. CV 15-03462-RGK**

9                  )
   **LED ZEPPELIN; JAMES PATRICK PAGE;** )

10  **ROBERT ANTHONY PLANT; JOHN PAUL** )
    **JONES; SUPER HYPE PUBLISHING,** )

11  **INC.; WARNER MUSIC GROUP CORP.,** )
    **PARENT OF WARNER/CHAPPELL MUSIC,** )

12  **INC.; ATLANTIC RECORDING** )
    **CORPORATION; RHINO ENTERTAINMENT** )

13  **COMPANY,** )
                  )

14          **DEFENDANTS.** )

15

16      **REPORTER'S TRANSCRIPT OF JURY TRIAL**

17      **DAY 1, VOLUME 1; PAGES 1 TO 97**

18        **TUESDAY, JUNE 14, 2016**

19           **9:04 A.M.**

20        **LOS ANGELES, CALIFORNIA**

21

22     _____

23    **SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR**
     **Official Reporter, U.S. District Court**

24        **255 East Temple Street**
        **Los Angeles, CA  90012**

25         **213.894.5949**

2

**APPEARANCES OF COUNSEL:**


**FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST:**

      FRANCIS ALEXANDER, LLC
      BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
      280 N. PROVIDENCE ROAD, SUITE 1
      MEDIA, PENNSYLVANIA  19063
      215.500.1000

      KULIK GOTTESMAN & SIEGEL, LLP
      BY:  GLEN L. KULIK, ATTORNEY AT LAW
      15303 VENTURA BOULEVARD, SUITE 1400
      SHERMAN OAKS, CALIFORNIA  91403
      310.557.9200


**FOR DEFENDANT LED ZEPPELIN:**

      PHILLIPS NIZER, LLP
      BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
      666 FIFTH AVENUE
      NEW YORK, NEW YORK  10103
      212.977.9700


**FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:**

      LAW OFFICES OF PETER J. ANDERSON, PC
      BY:  PETER J. ANDERSON, ATTORNEY AT LAW
      100 WILSHIRE BOULEVARD, SUITE 2010
      SANTA MONICA, CALIFORNIA  90401
      310.260.6030

      PHILLIPS NIZER, LLP
      BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
      666 FIFTH AVENUE
      NEW YORK, NEW YORK  10103
      212.977.9700


///

///

///

**APPEARANCES OF COUNSEL (CONTINUED):**

**FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY:**

       LAW OFFICES OF PETER J. ANDERSON, PC
       BY:  PETER J. ANDERSON, ATTORNEY AT LAW
       100 WILSHIRE BOULEVARD, SUITE 2010
       SANTA MONICA, CALIFORNIA  90401
       310.260.6030

**ALSO PRESENT:**

       NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

       BRAD COHEN, WARNER MUSIC GROUP

       SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

       KEVIN SEGAL, TRIAL TECHNICIAN

       DAN MORENO, TRIAL TECHNICIAN

*I N D E X*

*PROCEEDINGS:*                                           *PAGE:*

Discussion outside the presence of the            4
prospective jurors

Jury voir dire                                           17

Pre-instructions to the jury                             87

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

4

```
1              LOS ANGELES, CALIFORNIA; TUESDAY, JUNE 14, 2016

2                           9:04 A.M.

3                           -  -  -  -

4         (Outside the presence of the prospective jurors:)

5              THE CLERK:  Calling calendar item No. 1, case

6    No. Civil 15-3462-RGK, Michael Skidmore versus Led Zeppelin,

7    et al.

8          Counsel, please state your appearances.

9              MR. MALOFIY:  Good morning, Your Honor.  May it please

10   the Court, Attorney Francis Malofiy on behalf of plaintiff,

11   Michael Skidmore, as trustee of the Randy Craig Wolfe Trust.

12   Here with me today is local counsel, Mr. Kulik, along with my

13   office, Francis Alexander, LLC, and A.J. Fluehr.

14             THE COURT:  Thank you, Counsel.

15             MR. ANDERSON:  Good morning, Your Honor.  Peter

16   Anderson on behalf of defendants Jimmy Page, Robert Plant,

17   Warner/Chappell Music, Atlantic Recording, and Rhino

18   Entertainment.  Also with me is Helene Freeman of the Phillips

19   Nizer firm, who represents the individual defendants.

20             THE COURT:  Okay.  Thank you, Counsel.

21        This is just pretrial.  We're going to be starting the

22   trial as soon as we get the jury down here, and that's going to

23   be probably quarter of 9:00, but I do want to go -- or excuse

24   me, quarter of 10:00.  I do want to go over a few things with

25   you before we get started, though, just as a reminder.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

5

1    First of all, on the motions in limine, most of those we

2    gave you tentatives on.  Those tentatives are going to be --

3    most of those are going to be permanent.

4    Remember, counsel on both sides, motions in limine are all

5    tentative insofar as they're normally motions on evidentiary

6    issues.  Depending on what comes up during the trial, something

7    may or may not become relevant, and those motions may change,

8    but until they do, those -- the rulings on these motions will

9    be in effect.

10    On the plaintiff's motions in limine, the first motion in

11    limine, as to the validity of the Trust, will be granted.

12    The second motion in limine, as to who owns the copyright,

13    will be denied.

14    The third motion in limine will also be denied.

15    As to the defendants' motions in limine, the first motion

16    in limine will be granted.

17    The second motion in limine will be granted with the --

18    with the caveat that it could -- that the testimony about books

19    and interviews and newspapers, et cetera, might come in for

20    impeachment purposes, but for impeachment purposes only.

21    The third motion in limine will also be granted.  As we

22    know, we're limiting this to the transcripts of the copyright,

23    1967 transcription.

24    The fourth motion in limine has been corrected, but it

25    will be granted, but we have to make sure that the testimony is

6

```
1    not relying on unprotected performance elements, but other than
2    that, it's -- it can come in, but as far as unprotected
3    performance elements, that will be granted.
4        Fifth motion in limine will be granted.
5        Sixth will be granted.
6        Seventh will be granted.
7        Eighth will be granted.
8        Ninth will be granted as to extraterritorial profits, but
9    it will be denied as far as -- excuse me, it will be denied as
10   far as extraterritorial profits, but it will be granted as to
11   the limitation period.
12       The tenth motion in limine will be granted with the
13   exception of Larry Knight.  All the others, it will be granted
14   to, as to, but as to Larry Knight, he can testify.
15       As to motion in limine No. 12, that will be granted or
16   denied, depending.  The Wolfe -- or excuse me, Knight can
17   testify as to observations he made of Wolfe and Jimmy Page in
18   1973.  He can testify as to observations and impressions he had
19   at that time, but he cannot testify as to statements that were
20   made at that time.
21       Number 12 is granted.
22       Number 13, granted.
23       Number 14 is granted.
24       Second thing I wanted to talk to you about is witness
25   list.  I've gotta make sure that every day that you present a
```

7

1   witness list of the witnesses you're going to call that day to

2   the Court.  I don't care if you present it to the other side,

3   but to the Court, in the order that you're going to be calling

4   them, so we know what witnesses are coming up.

5       Make sure that you have enough witnesses available so that

6   you don't run out of time.  As we talked last time we were here

7   for the pretrial, if you run out of time and say, "Well, I need

8   half hour to get my witness in," that's okay, but that comes

9   off the time that we've given you to try the case.  So you

10  always want to make sure that you have witnesses as backups.

11      It should be noted for the parties and also for the --

12  anybody in the audience out there, cell phones are not

13  permitted in the courtroom.  We permit them in the courtroom as

14  long as they've been powered off, but if they're not powered

15  off, and you have a cell phone that is not powered off in your

16  possession, it will be confiscated and not returned to you

17  until the end of the day.  So if you come on in, that's fine,

18  you can bring your cell phone, but power it off.  If you want

19  to use it, just step out in the hallway, power it on and use it

20  there.  But while you're in the courtroom, it's not allowed to

21  have any cell phones or any type of recording, electronic

22  equipment that is powered on in the courtroom.

23      Let me go through -- and we went through this last time.

24  This is just briefly to remind you, because we talked about it

25  a little bit last time, some of the rules of court, just as a

8

1   reminder.  When you make an objection, that's okay, you can

2   make them where you are.  You don't have to go to the podium to

3   make them, but do stand if you're going to make objections.  Do

4   not argue objections.  You can state your reason for the

5   objection and leave it at that.  There are no bench conferences

6   during the trial.  If you have to put anything on the record,

7   we can do that the next time we break as far as the jury is

8   concerned and the jury's out of here.  We can put it on the

9   record at that time.

10      All evidence is presented through the clerk, never

11  directly to the witnesses themselves.

12      Always talk from the lectern.  Don't walk around the

13  courtroom.  We need you to talk from the lectern so that the

14  reporter can hear what you're saying, so that you're in front

15  of the mic all the time.  Remember, the reporter has to

16  transcribe down everything that's said in court.

17      I've told you also last time, almost anything that both

18  sides agree on, as long as it doesn't affect the timing of the

19  court, almost anything you agree on, I'll go along with.  So

20  before you bring something to the Court, talk to each other

21  first of all and see if you can agree on it and work it out

22  before you bring it to the Court.  If you have an issue you

23  have to bring to the Court, almost always I will have you brief

24  that issue so the other attorney has an opportunity to respond

25  to that issue before I decide it.  Very little will be decided

9

```
 1   just from the seat of my pants here in the court where you get
 2   up and say, well, I have this problem or I have this problem.
 3   I'll probably tell you, brief it, let the other side respond to
 4   it, and then I'll make the decision on it.
 5        Also, during the trial, I don't think we have a problem
 6   with this, but never refer to anybody by first name.  Everybody
 7   should have the dignity and respect to be able to be addressed
 8   by their last name.  So if you have somebody, the name is not
 9   Sam or Jim or whatever it is.  Always address them by last
10   name.
11        I talked to you last time about how important it is for
12   the Court to make sure there's civility between the attorneys,
13   and I'm not going to go over that again, because that's the one
14   area that you can really get in trouble on.  But I don't expect
15   any problems.  I expect both sides to be very professional that
16   way.  And if you're not, and if you violate court rules, you'll
17   be corrected and looking at sanctions or looking at contempt,
18   and you may even be corrected in front of the jury.  And we
19   don't want to get into that.  We want a good trial on both
20   sides.
21        I talked to you about time.  Remember that starting
22   tomorrow -- today is kind of strange because we have to bring
23   the jury in and impanel them, so it's going to be a little bit
24   loose that way, but starting tomorrow, we start 8:30 every
25   morning.  Not 8:32 or 8:33.  If you're not here at 8:00
```

10

1  o'clock, when you do get in at 8:31 or 8:32, you're going to

2  find the jury in the box and everybody sitting here in the

3  courtroom waiting for you, and that's an embarrassing

4  situation.  So make sure that you're here right by 8:30.  And

5  as I tell the jury, be here a few minutes early so you don't

6  run into any problems.

7      We go from 8:30 to 11:30, with a break in there.  We break

8  for lunch from 11:30 till 1:00.  We come back at 1:00 and go

9  from 1:00 until 4:00.  So you have a three-hour block in the

10 morning, three-hour block in the afternoon.  We will start

11 right on time at 1:00 and also at 8:30.  We will end right on

12 time also, at 11:30 or 4:00 o'clock.

13     Again, as I said last time, if you're in the middle of a

14 question at 4:00 o'clock, I'll be telling you remember that

15 question, because we're not going to cover it at this time.  At

16 4:00 o'clock, the jury will be able to be released to make any

17 appointments they want or have anybody pick them up that they

18 want.

19     And I've talked to you about time limits, ten hours per

20 side.

21     I think that pretty much covers what we talked at the last

22 pretrial, the last time we were in here.

23     The jury should be coming down about -- about quarter --

24 well, we're going to try for quarter of 10:00, 9:45, and we'll

25 start up at that time.  Okay?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

11

```
1        Yes, Counsel.
2            MR. ANDERSON:  Yes.  May I address a few matters --
3            THE COURT:  Sure.
4            MR. ANDERSON:  -- briefly?
5        Your Honor, on motion in limine No. 4, Your Honor provided
6    plaintiff leave to file, or serve, rather, amended expert
7    reports that --
8            THE COURT:  Right, which was done.
9            MR. ANDERSON:  They were, but we raised in the trial
10   brief that the expert, their amended expert reports still talk
11   about the "Taurus" sound recording.
12           THE COURT:  Sorry?
13           MR. ANDERSON:  They still talk about the "Taurus"
14   sound recording.  They are not limited, as the Court directed,
15   to the "Taurus" deposit copy.
16           THE COURT:  I've already told you what they can
17   testify to.  If they testify to something outside that area, I
18   expect an objection, and if appropriate, it will be sustained
19   by the Court.
20           MR. ANDERSON:  Okay.  Thank you.
21       And we also renewed and will have a pending *Daubert* on the
22   three experts who -- now that we've had the chance to depose
23   them, they each testified they're not musicologists, they don't
24   have graduate degrees, they didn't follow the Ninth Circuit
25   rules.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

12

```
1              THE COURT:  Okay.  Counsel, bring that up when the

2    witnesses are called.  Keep in mind the Court's not real

3    sympathetic to arguments when counsel comes in and says, "Well,

4    we just took this deposition," or, "We just took" -- you had

5    plenty of time for discovery.  Much of this should have been

6    done a long time ago, and if it's not, the Court's not real

7    sympathetic to last-minute motions because of something that's

8    been newly discovered.  But make it at the time that the

9    testimony is offered, and I'll be happy to rule on it.

10             MR. ANDERSON:  Just to clarify, we had to -- there

11   were amended reports.  The Court ordered these people to appear

12   for deposition.  That's why it was last-minute.

13             THE COURT:  Okay.

14             MR. ANDERSON:  The last thing, Your Honor, if I may,

15   the gentleman to my left, Mr. Bricklin, is one of plaintiff's

16   expert witnesses.

17             THE COURT:  Okay.

18             MR. ANDERSON:  My understanding is that, as a witness

19   who is going to testify in the case, that he is properly

20   excluded during the --

21             THE COURT:  Only if that motion's made.  It hasn't

22   been made yet from either side.

23             MR. ANDERSON:  Okay.

24             THE COURT:  If motion is made to exclude witnesses,

25   they'll be excluded, most probably.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

13

```
1          MR. ANDERSON:  Okay.  Thank you.

2          THE COURT:  Unless they're a party to the case.

3          MR. ANDERSON:  He's not a party.  May I make an oral

4   motion to exclude him?

5          THE COURT:  I'm sorry?

6          MR. ANDERSON:  May I make an oral motion to exclude

7   from the courtroom during testimony any witness who is not

8   actually testifying?

9          THE COURT:  Okay.  That will be granted, from both

10  sides.

11         MR. ANDERSON:  Thank you, Your Honor.  And includes

12  Mr. Bricklin?

13         THE COURT:  Counsel, I just said it's granted.

14         MR. ANDERSON:  Thank you, Your Honor.

15         THE COURT:  I don't know if it includes him or not.  I

16  don't know if he's going to be a witness or not.  I just made

17  an order that any witnesses that will be testifying will be

18  excluded while they're not testifying.

19         MR. ANDERSON:  Thank you very much, Your Honor.

20         THE COURT:  Anything else?

21         MR. MALOFIY:  Yes, Your Honor.

22         THE COURT:  Yes.

23         MR. MALOFIY:  There are a couple issues that plaintiff

24  feels necessary to address with the Court for further argument

25  on the motions in limine.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**00081**

14

```
 1        One of the issues --
 2            THE COURT:  Counsel, I've ruled on the motions
 3   in limine.  Those rulings have been made.  Next issue.
 4            MR. MALOFIY:  Yes.
 5            THE COURT:  I'm not revisiting that issue.  We've
 6   given you plenty of time to make your motion, to argue it, to
 7   submit argument to the Court.  I've read those.  Those rulings
 8   have been made.  Next issue.
 9            MR. MALOFIY:  Respectfully, Your Honor, we understand
10   them to be tentative, and for that reason, we did file a
11   further brief, which was --
12            THE COURT:  Counsel, that was stricken, as you know,
13   for not following the court rules on it.  But I did read it,
14   and it would not have changed my opinion on that motion in
15   limine.
16            MR. MALOFIY:  Very well.
17        As it relates to Dr. Ferrara, one of the defendants'
18   experts, Dr. Ferrara is conflicted in this case.  Furthermore,
19   he did a prior analysis of "Stairway to Heaven" and also
20   "Taurus."
21            THE COURT:  What are you going to be requesting?
22            MR. MALOFIY:  We're requesting he's stricken
23   completely from the case or --
24            THE COURT:  Put it in writing, Counsel, have the other
25   side a chance to respond to it, and I'll take a look at it.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

15

```
 1        MR. MALOFIY:  We did file it by motion, and it was
 2   taken off the calendar, the docket, and so I'm raising it by
 3   oral motion respectfully here.
 4        THE COURT:  No, Counsel.  I'm telling you at this
 5   time, make it again.  I'll decide whether to look at it or not.
 6   If it was rejected because it wasn't timely made, it wasn't
 7   timely made.  That's the attorney's problem.
 8        MR. MALOFIY:  I understand that, Your Honor.  Our
 9   position was that it just became -- it just became an issue a
10   week ago, and so --
11        THE COURT:  Bring it up again, and I'll find out
12   whether or not the Court will consider it.  If I do consider
13   it, I will also consider the opposition to it, and I'll make a
14   ruling at that time.  Okay?
15        MR. MALOFIY:  As far as the request for judicial
16   notice, there was an issue as to whether or not the ownership
17   of the copyright "Taurus" is owned by the Trust or someone
18   else.  Defendants made an issue of whether or not the Trust has
19   ownership of the copyright.  We have alleged all along we have.
20   It's never been disputed for 20 years.  We ask for judicial
21   notice of the Ventura County court records, which
22   indicate that --
23        THE COURT:  Is there an objection, Counsel?
24        MR. ANDERSON:  If I may.
25        THE COURT:  No, I'm just asking if there's an
```

16

```
 1    objection to it.
 2          MR. ANDERSON:  Yes, Your Honor, and we filed
 3    opposition --
 4          THE COURT:  If there is, put it in writing, allow the
 5    other side to respond it, and I'll make a ruling on it.
 6          MR. ANDERSON:  Thank you, Your Honor.
 7          THE COURT:  Okay.
 8          MR. MALOFIY:  One other issue.
 9          MR. KULIK:  Your Honor, the Universal Music Group
10    responded to a subpoena this morning and lodged a series of
11    objections, refusing to produce documents that we subpoenaed
12    from them.  How and when can we resolve that issue with the
13    Court?
14          THE COURT:  Just -- anytime you think something is
15    inappropriate or you want a ruling on something, put it in
16    writing, let the other side object to it if they wish, and I'll
17    rule on it.
18          MR. KULIK:  Okay.  Thank you.
19          THE COURT:  I'm just not going to do things
20    spontaneously up here without giving both a chance to take a
21    look at the motions and decide whether or not they want to
22    object or not.  So put it in writing.  I'm more than happy to
23    take a look at it.  Okay?
24          MR. MALOFIY:  Thank you, Your Honor.
25          THE COURT:  Okay.  Anything else?
```

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| MICHAEL SKIDMORE | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | CV 15-03462-RGK (AGRx) |
| v. | |
| LED ZEPPELIN, et al. | **ORDER TO STRIKE ELECTRONICALLY FILED DOCUMENTS** |
| DEFENDANT(S). | |

The Court hereby **ORDERS** the documents listed below be **STRICKEN** for failure to comply with the Local Rules, General Order 10-07 and/or the Court's Case Management Order as indicated:

| 06/11/2016 | / | 230 | / | Motion for Sanctions |
|---|---|---|---|---|
| *Date Filed* | | *Doc. No.* | | *Title of Document* |
| 06/12/2016 | / | 231 | / | Motion for Reconsideration |
| *Date Filed* | | *Doc. No.* | | *Title of Document* |

- ☐ Document submitted in the wrong case
- ☐ Incorrect document is attached to the docket entry
- ☐ Document linked incorrectly to the wrong document/docket entry
- ☐ Incorrect event selected. Correct event is _____
- ☐ Case number is incorrect or missing.
- ☑ Hearing information is missing, incorrect, or not timely
- ☐ Local Rule 7.1-1 No Certification of Interested Parties and/or no copies
- ☐ Case is closed
- ☐ Proposed Document was not submitted as separate attachment
- ☐ Title page is missing
- ☐ Local Rule 56-1 Statement of uncontroverted facts and/or proposed judgment lacking
- ☐ Local Rule 56-2 Statement of genuine disputes of material fact lacking
- ☐ Local Rule 7-19.1 Notice to other parties of ex parte application lacking
- ☐ Local Rule 11-6 Memorandum/brief exceeds 25 pages
- ☐ Local Rule 11-8 Memorandum/brief exceeding 10 pages shall contain table of contents
- ☑ Other Motions are not timely. Memorandum of Points and Authorities on Docket Entry 230 exceed this Court's 20 page limit.

Note: Please refer to the court's Internet website at www.cacd.uscourts.gov for Local Rules, General Order 10-07 and applicable forms.

Dated: 06/13/2016 _____

By: *Gary Klausner* _____

U.S. District Judge / U.S. Magistrate Judge

*cc: Assigned District and/or Magistrate Judge*

```
 1              UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3        HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

 4

 5  MICHAEL SKIDMORE, as Trustee for the: )
    RANDY CRAIG WOLFE TRUST,              )
 6                                        )
                       Plaintiff,         )
 7                                        )
        vs.                               )  CASE NO.
 8                                        )  CV 15-3462-RGK(AGRx)
                                          )
 9  LED ZEPPELIN, et al.,                 )
                                          )
10                     Defendants.        )
    _____)

11

12

13              REPORTER'S TRANSCRIPT OF
                  PRETRIAL CONFERENCE
14              MONDAY, APRIL 25, 2016
                      9:08 A.M.
15              LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22  _____

23         SHAYNA MONTGOMERY, CSR, RPR, CRR
             FEDERAL OFFICIAL COURT REPORTER
24              312 NORTH SPRING STREET
             LOS ANGELES, CALIFORNIA 90012
25                 (213) 894-2665
```

UNITED STATES DISTRICT COURT

```
 1                    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4        FRANCIS ALEXANDER, LLC
          BY:  FRANCIS MALOFIY
 5            Attorney at Law
          280 North Providence Road, Suite 1
 6        Media, Pennsylvania 19063
          (215) 500-1000
 7

 8    FOR THE PLAINTIFF:

 9        KULIK GOTTESMAN & SIEGEL LLP
          BY:  GLEN L. KULIK
10            Attorney at Law
          15303 Ventura Boulevard, Suite 1400
11        Sherman Oaks, California 91403
          (310) 557-9200
12

13    FOR THE DEFENDANTS WARNER/CHAPELL MUSIC, RHINO ENTERTAINMENT
      COMPANY, ATLANTIC RECORDING CORPORATION, ROBERT ANTHONY PLANT
14    AND JAMES PATRICK PAGE:

15        LAW OFFICES OF PETER J. ANDERSON PC
          BY:  PETER J. ANDERSON
16            Attorney at Law
          100 Wilshire Boulevard, Suite 2010
17        Santa Monica, California 90401
          (310) 260-6030
18

19    FOR THE DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT AND
      JOHN PAUL JONES:
20
          PHILLIPS NIZER LLP
21        BY:  HELENE M. FREEMAN
              Attorney at Law
22        666 Fifth Avenue
          New York, New York 10103
23        (212) 977-9700

24

25
```

UNITED STATES DISTRICT COURT

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, APRIL 25, 2016

 2                          9:08 A.M.

 3                           --oOo--

 4          THE COURTROOM DEPUTY:  Calling calendar item number

 5   five, case number Civil 15-3462-RGK, Michael Skidmore vs.

 6   Led Zeppelin, et al.

 7        Counsel, please come forward and state your appearances.

 8          MR. ANDERSON:  Good morning, Your Honor.  Peter

 9   Anderson for defendants Warner/Chapell Music, Rhino

10   Entertainment Company, Atlantic Recording Corporation,

11   Mr. Plant and Mr. Page, and with me is Ms. Freeman.

12          THE COURT:  Okay.

13          MS. FREEMAN:  Helene Freeman, co-counsel for

14   defendants James Patrick Page, Robert Anthony Plant and

15   John Paul Jones.

16          THE COURT:  Okay.  Thank you, counsel.

17          MR. MALOFIY:  May it please the Court, attorney

18   Francis Alexander Malofiy on behalf of plaintiff Michael

19   Skidmore as trustee for the Randy Craig Wolfe Trust, who is

20   here today, and also my co-counsel.

21          MR. KULIK:  Good morning, Your Honor.  I'm Glen

22   Kulik, co-counsel for the plaintiff.

23          THE COURT:  Okay.  Thank you, counsel.

24        Let's talk a little bit about -- why don't you have a

25   seat, we'll be a few minutes.
```

4

1        Let's talk about pretrial.  This is to help you out to

2   decide -- or to understand what's going to happen when you come

3   in in a couple of weeks as far as the trial is concerned.

4        Let me, first of all, start by talking to you about --

5   well, let's get the tough part over first, the part the

6   attorneys never like, and that is, is we set time limits here.

7   I set them off witness statements that -- the joint witness

8   list you've submitted as to what they'll be testifying to and

9   what's significant and what the issues are, and we adhere by

10  those time limits.

11       In this case, for instance, although you've had numerous

12  witnesses, many of them are either repetitive or not necessary.

13  In looking at it -- and let me just give you an example.

14  First, it's on the issue of creation of the song.  We have one,

15  two, three, four, five, six, seven, eight, nine, ten, 11, 12 --

16  12 witnesses on that.  As far as I'm concerned, that's one

17  issue, one witness as far as I'm concerned.  If you want to

18  call two, three, four, that's fine.  You can call as many

19  witnesses as you want, but you're going to be within a time

20  frame.  You know, we have the same thing on experts on

21  similarity.  We've got four, five experts on similarity.  You

22  can call five if you want, or you can call one if you want.

23  That's up to you.  How you put the case on is up to you.

24       But as far as the issues that are involved in this case,

25  it's a much shorter case than you've anticipated.  When you

**UNITED STATES DISTRICT COURT**

5

 1    first came in here, you said 15 days.  I told you at that time

 2    probably about four or five days.  I even think four or five

 3    days may be a little long in this case.  You have basically

 4    four issues or areas that you're going to be going into.

 5    You're going to be going into whether or not there is a valid

 6    copyright on it by the plaintiff.  Number two, you're going to

 7    be looking at whether or not there's similarities in the two.

 8    If there are, then you're going to be looking at access.  If

 9    there is access, similarities and copyright, then you're

10    looking at damages.  You're looking at four areas.

11         So even if you spend a couple of hours on copyright and a

12    couple of hours on access, three or four hours on similarities

13    between the songs, couple hours in damages, you're looking at

14    about ten hours on this case.  It should be able to be

15    presented in ten hours without any problem.  I'm going to

16    double that.  I'm going to give ten hours per side.  So each

17    side will get up to ten hours to try their case.  Now -- and I

18    may or may not review that and revise that on the trial date,

19    but that's what we can count on now, ten hours a side.

20         Let me talk to you about the ten hours.  That comes from

21    any time you're asking questions or any time you're

22    cross-examining, any time you're talking, when there's

23    witnesses on the stand, that's part of the ten hours.  It does

24    not include opening statement.  It does not include closing

25    argument.  I'll give you time limits on those when we get --

6

 1    you know, on the day of the trial.  But keep in mind I will

 2    keep a running tally, kind of a time clock thing, as to

 3    those -- as to your time.  I'll give it to you in terms of

 4    minutes rather than hours.  For instance, what, that's 600

 5    minutes for ten hours, and I'll let you know each day what

 6    you're down to, how much time you have left.

 7         If you use up those ten hours or whatever those time

 8    limits are and the other side hasn't, keep in mind that as

 9    they're asking questions you're not going to be able to

10    cross-examine.  Once you've used your time, you're out.  That's

11    it.  So be very careful that you plan your case accordingly.

12    Make sure that you use your time accordingly.

13         Now, keep in mind nobody's infallible, even this Court,

14    and so sometimes we get that wrong.  And if at the end of the

15    trial or at the end of your time limits I'm convinced that

16    you've used your time efficiently and effectively and the

17    interest of justice calls for more time, I'll give it to you.

18    I'll give you more time if I think you -- caveat, in 14 years

19    since I've been here that's only happened once, so don't count

20    on it, but I will -- I will take that into consideration.

21         So keep in mind that ten hours and plan accordingly.  I

22    know it takes more preparation.  There used to be a great

23    commentator on TV that used to say, "It takes me take me four

24    or five hours to" -- or, excuse me, "It takes me half hour to

25    prepare an hour speech.  It takes me three hours to prepare a

```
 1   ten minute speech" because you have to focus, you have to
 2   figure what exactly has to get in there, et cetera.  So it's
 3   going to be more preparation on you, but it's going to be a
 4   much cleaner case.  It's going to be much more focused.  It's
 5   going to go to the jury without red herrings and things that
 6   are going to confuse them, and it'll be a better trial on
 7   everyone's behalf.
 8        Okay.  Let me talk to you about motions in limine.  On
 9   motions in limine, let me just give you tentatives at this
10   time, and I want you to keep in mind something on motions in
11   limine.  As we know, they're really evidentiary rulings by the
12   Court, and they're tentative evidentiary rulings.  Basically,
13   what it's saying is no, you can't get into that unless the
14   Court changes its mind.  And the reason I tell you that is that
15   during the trial, depending on what evidence comes in,
16   something that we may have said was excluded may become
17   relevant at one time and then you bring it in.
18        So these are tentative rulings that the Court's going to
19   be issuing on these, and this is going to be tentative,
20   tentative rulings because I'm going to -- on the day of the
21   trial, I'm going to most probably say the same reason I gave
22   you today, hold.  But between now and then, I'm going to be
23   looking at a few things and some of them may change, so the
24   motions in limine, the final ruling on the motions in limine
25   will be on the day of trial.
```

8

1      But let me give you -- so that you can prepare the case,

2  let me tell you what the tentatives on this are.  As to the

3  defendants' motions in limine -- and you know what your motions

4  in limine are, so I'm just going to go through by number.  Some

5  of them I'll stop and talk to you about.  If you're confused as

6  to what that motion in limine is, stop me and I'll be happy to

7  explain to you which motion in limine it is.

8      But, for instance, on the defense, on number one

9  concerning Randy Wolfe's statement, that will be granted.

10      Number two concerning the newspaper articles and books, as

11  to the books that'll probably be granted.  As to pages,

12  statements that were made in magazines, that may very well be

13  relevant as far as accessibility, as far as whether or not they

14  saw people talking to each other, et cetera.

15      Number three, motions to exclude the recordings, again

16  this is about composition and protected areas under the

17  composition, not the recording, so that would be granted.

18      Number four, motions to exclude testimony of exhibits

19  of -- excuse me, motions to exclude the testimony and exhibits

20  of the plaintiff's experts, that's a little difficult to

21  explain, but the expert testimony that is based on the

22  composition itself incoming, any expert testimony that's based

23  on the musical composition, the musical performance, would not

24  be admissible.

25      Number five, motions to exclude other claims against

1    Led Zeppelin will be granted.

2         Motions to exclude reports from the historians would be

3    granted.

4         Number seven, motions to exclude levels of wealth will be

5    granted.

6         Number eight, motions to exclude evidence regarding

7    charitable goals of the Trust will be granted.

8         Number nine, motions to exclude reference to

9    extraterritorial revenues and revenues earned outside of the

10   limitation period.  As to province earned outside of the

11   limitation period, that will be granted.  As to territorial

12   limits, that would be denied.

13        Number ten, I'm going to have to give you a little bit

14   more reading on this when you come in for trial.  These are the

15   motions to exclude witnesses that have not been disclosed.  The

16   fact that you put a whole bunch of witnesses' names into

17   hundreds of pages of discovery doesn't necessarily give you

18   notice that these may be potential witnesses.  So the Court's

19   looking at it as whether or not you are on notice that these

20   may be witnesses or not.  Some of them, it looks like, are

21   going to be excluded; some of them may not be.  For instance,

22   one that may not be is Wolfe because I think both sides

23   understand that Wolfe was, you know, a participant in Spirit,

24   et cetera, and may be called as a witness, but I'll give you

25   that on the day of trial more explicitly.

10

```
 1        Number 12 as to alcohol abuse, that will be granted.

 2        Number 13 as to insurance or indemnity agreement, that

 3   will be granted.

 4        Number 14 as to the actual complaint going in front of

 5   jury, that will not happen.  They'll be told what the causes of

 6   action are, but the actual complaint will not be in front of

 7   them.

 8        As to the plaintiff's motions in limine as to the validity

 9   or legitimacy of the Trust, that will be granted.  As to

10   evidence concerning the son of Wolfe and whether or not he owns

11   a copyright or not, that will be denied.  And as to the motion

12   to exclude any experts on damages by the defense, that, I'm

13   assuming, is going to be in rebuttal.  So it'll be denied as

14   far as rebuttal is concerned.

15        Okay.  Now that's on the motions in limine.  Let me talk

16   to you a little bit about what you can expect when you come in

17   for trial.  First of all, I don't know if you have it or not,

18   you'll have to tell me.  Do you have a short statement of the

19   case already filed with the court?

20             MR. ANDERSON:  Not yet.

21             MR. MALOFIY:  No, we do not, Your Honor.

22             THE COURT:  Okay.  What I'd like is -- when I say a

23   short statement, the operative word there is "short."  Maybe a

24   paragraph just to tell the jury what it's about, you know,

25   what -- this is a copyright-type case involving these two
```

**UNITED STATES DISTRICT COURT**

**00095**

 1   songs, et cetera.  But I don't want it argumentative or to go

 2   longer than maybe a paragraph, just something short we can read

 3   to them.

 4        I also want every day an order of the witnesses that you

 5   intend to call that day, and make it for the next maybe two

 6   days so I know when the witnesses are going to be called and

 7   what order they'll be called.  I've got a list of the

 8   witnesses, but I don't know what order you're going to be

 9   calling them in.

10        Number three, voir dire, the Court conducts the voir dire

11   in cases in this court.  We will be bringing in -- well, first

12   of all we're going to pick a jury of eight so we have two

13   extras in case there's any problem.  That means I'm going to

14   give you four peremptory challenges on each side.  We'll be

15   bringing in the jury.  We'll sit 14 up -- it's a six-pack-type

16   thing.  We'll be sitting 14 up there.  The Court will voir dire

17   them.  After I voir dire them -- and by the way, any questions

18   that you would like to ask on voir dire, if you've not already

19   submitted them, you can submit them and the Court will consider

20   those and incorporate them to the extent I feel it's

21   appropriate during my voir dire.

22        The 14 will sit there.  We'll go through the voir dire.

23   After I've done that, we'll meet over here at the side bench,

24   counsel and myself, and we'll go through your challenges,

25   challenges for cause, any of the 14 that we have sat in the

```
 1   box.  Peremptory challenges only as to the first eight.  No
 2   reason to exercise a peremptory challenge before one of the
 3   eight, you know, it doesn't make much sense.  Remember as you
 4   go through that on your peremptory challenges, if you pass on a
 5   peremptory challenge, you do not lose it, which means that we
 6   may end up in a situation where somebody has two or three
 7   peremptory challenges left and the other side doesn't have any.
 8   That's fine, but you remember that if you pass and the other
 9   side passes, you've got your jury.  You can't go back and
10   exercise and begin if both sides pass, but you don't lose it if
11   you pass, is what I'm saying.
12        When we finish the voir dire over here -- excuse me, the
13   challenges over here, I'll take the bench, and I'll excuse.
14   When we get to seven jurors being excused, I'll get -- come
15   back, take the bench, and I'll excuse the seven jurors by just
16   calling their number and excusing them.  They will not know who
17   excused them or why they were excused, whether it's for cause
18   or peremptory or whatever.  We'll just excuse those seven.
19   Then we'll bring another seven in.  We'll go through the same
20   process again, go through the same process as far as challenges
21   until we get a jury of eight that we can sit.
22        I don't know if you have any questions on that process
23   that I've just told you as far as voir dire.
24             MR. ANDERSON:  Not on voir dire, Your Honor.  I do
25   have --
```

```
 1              THE COURT:  Well, we'll get to other matters in a
 2     second.  I just want to make sure voir dire, but --
 3              MR. ANDERSON:  Thank you.
 4              THE COURT:  Save your question, I'll address it.  I
 5     just want to -- on voir dire, any other questions on voir dire?
 6     Okay.
 7         If not, keep in mind something interesting.  That bench
 8     conference we have over there will be the only bench conference
 9     that we'll ever have during the trial.  I don't have bench
10     conferences during a trial.  I'll talk to you maybe a little
11     bit later on it, but if you have objections and you want to be
12     heard on the objections, you bet, but you'll be heard at the
13     next time we make a break.  I'll be ruling on the objection.
14     We'll proceed.  Next time we make a break, you put it on the
15     record and we can either correct it if it has to be corrected
16     or at least preserve the record for later, but we do not break
17     in front of jury for bench conferences.
18         A couple of the procedural things that I just wanted to
19     address -- every court does it a little differently -- in here,
20     any time you make an objection please stand so I know you're
21     making an objection.  Sometimes if you don't stand and, you
22     know, in a very low voice you say, "Objection," I won't even
23     hear it.  So, you know, stand and let me know you're making the
24     objection.  Do not argue objections in court.  You can tell us
25     what the objection is.  "Objection, hearsay."  That's it.  We
```

1   do not argue in front of the jury as to what the objection is,

2   and the other side can say "Not offered for the truth of the

3   matter."  That's fine, but we don't argue further than that.

4       Any time you present evidence to this Court always present

5   it through the clerk.  Never approach a witness directly,

6   always through the clerk and give it to the clerk and she'll

7   take it to the witness.  You know, I don't think it has to be

8   said because I think, you know, we're pretty professional here,

9   but never refer to a witness by first name.  Everybody has the

10  dignity in this court by being referred to by their last name.

11      If -- and this is just to run the case smoothly -- if

12  somebody says, "I want to introduce Exhibit 1 or whatever it is

13  into evidence," I will always wait about three or four seconds,

14  and if I don't hear an objection I'll probably say "Received."

15  The reason I say that is don't feel obligated to get up and

16  constantly say "No objection."  You can if you want, but you

17  don't have to say no objection on it.  If there's no objection

18  within three or four seconds, I'm assuming there's not going to

19  be an objection.

20      When you speak, always speak -- with the exception of

21  making the objection where you could stand where you are --

22  when you speak, always speak from the podium or the lectern,

23  whichever one you want to call it here, because everything has

24  to be on the record.  I've got -- I need you in front of the

25  microphone, and we don't -- like in, you know, some other

```
1    courts or particularly in state courts you have wandering
2    around, talking in front of there, you don't here.  You speak
3    from the lectern and only from the lectern.
4         If you introduce evidence or exhibits that are voluminous,
5    only introduce those pages that have been referred to in the
6    testimony.  If you have a 100-page document and you only refer
7    to three pages, only introduce those three pages, not the
8    entire voluminous document -- document on it.  You will find
9    out that almost anything that the attorneys agree on, the
10   Court -- as long as it doesn't affect the jury and the time
11   limits, the Court will go along with you.  If you want to call
12   witnesses out of order, if you want to do this or that, I'm
13   very big on the attorneys' cooperation in the case and what you
14   decide to do, and if you both agree to do it, I almost always
15   will ride with it.  So before you bring anything to the Court's
16   attention, I really want you to -- the two sides to talk about
17   it, see if you can agree on it.  If you can't, bring it to my
18   attention.  I'll be happy to make the call on it.
19        The one area that somebody asked me the other day about,
20   is there anything that we have to know about the Court's
21   idiosyncrasies, you know, really irritating the Court, and the
22   answer is yeah.  Not a whole lot, but the biggest thing is if
23   there's any lack of civility.  And I don't expect that here,
24   but if there's any lack of civility at all, I wouldn't want to
25   be in your shoes, is all I can say.  I want this jury when they
```

16

```
 1  leave here to be under the impression that both sides are very
 2  professional and both sides respect each other as attorneys and
 3  as lawyers and as officers of the court.
 4      I don't care what you do in the alleys behind court after
 5  session when we're not in session, but when you're in court,
 6  each side is going to show utmost respect to each other.  If
 7  you don't, the Court will come down heavily on you as far as
 8  sanctions, and even sometimes if you don't follow the court
 9  order or you're causing troubles in court, many times it will
10  be to the point where I will correct you and admonish you in
11  front of the jury, and you don't want that to happen.  You
12  know, nobody wants to be admonished in front of the jury.  It
13  looks bad.  There's no reason for that, I don't expect that in
14  this case, but I just wanted to give you a heads up so that
15  nobody's blindsided on it, that civility is a real big thing in
16  this court.
17      Let's see.  Time, let me talk to you a little bit about
18  time and -- I haven't forgotten you, I'm going to get to your
19  question, counsel, in just a second.  Time.  When you come on
20  in the first day you'll come in at nine o'clock, we'll do some
21  logistical things, get things wrapped up.  At quarter of 10:00,
22  we'll have the jury down here.  We'll pick the jury at quarter
23  of 10:00 and proceed at that time.  The first day, because
24  we're starting a little bit late that way, we'll have to adjust
25  depending on voir dire and everything else.
```

**UNITED STATES DISTRICT COURT**

1    Now, the second and remaining days of the jury trial will

2  always be on a schedule, and it'll be from 8:30 in the morning

3  until 11:30.  We'll take a break for lunch until 1:00.  We'll

4  come back at 1:00 and go until 4:00.  That's a three-hour

5  session in the morning, three-hour session in the afternoon.

6  We'll give you a 15-minute break in there to take care of

7  needs, et cetera, but you can set your watch by that.  At 8:30

8  we're going to be starting, and the jurors will know this too,

9  you know, if somebody's missing, even a juror, we'll probably

10  sit here with everyone in court waiting as that person walks

11  in, which will for sure be embarrassing.  We'll start right at

12  8:30.

13    Keep in mind that it's just as important to end on time as

14  it is to start on time.  At four o'clock, if you're in the

15  middle of a question, I'll probably say, "Remember that

16  question.  You can repeat it tomorrow morning, but you're not

17  going to ask it now."  Four o'clock we break.  Jurors who we

18  call in -- you know, and it's never comfortable for them, and

19  they've got families that work here.  They're entitled to know

20  when they're free and when they're not.  They're going to know

21  that at four o'clock they're going to be free, so if they have

22  somebody picking them up, if they have to do some obligation

23  after court, that they can count on that because they will be

24  through at four o'clock, and they can do whatever they want.

25  And, by the way, the same is true for lunch.  11:30 we'll stop;

18

```
 1   at one o'clock we'll start.  So you can almost set your clock
 2   by that.
 3        Now, interesting thing, what happens if you get to quarter
 4   of 4:00 and you've run out of witnesses, and you say, Would you
 5   mind if we end a little bit early rather than late?  Would you
 6   mind if we ended quarter of 4:00?  The answer is no, I don't
 7   mind if you end early, but that 15 minutes is going to come off
 8   your time, so -- just as if you're questioning a witness.  So
 9   you want to make sure you always have backup witnesses so that
10   that doesn't happen.
11        Well, counsel, you know, I've been talking a lot here.
12   I've been going kind of fast, and I don't want to bore you all.
13   You've been in trials before.
14        So let me ask you this:  What questions might you have at
15   this time?  And you said you had one.
16             MR. ANDERSON:  Yes, Your Honor, thank you.
17        On the Motion in Limine Number 3, we, of course,
18   appreciate the Court's ruling that the evidence and the experts
19   will be confined to the transcriptions.  Our concern is
20   several.  One is none of the plaintiff's experts have ever
21   issued --
22             THE COURT:  Counsel, let me help you out.  The
23   motions in limine were briefed fully by both sides.  The
24   Court's made rulings on them.  I'm not opening it up for
25   discussion at this time.  If you have something you want me to
```

**UNITED STATES DISTRICT COURT**

19

```
 1   consider that you haven't put in your moving papers, go ahead
 2   and submit it in the next day or two.  I'll look at it again.
 3   As I said, these are tentative until day of trial.
 4              MR. ANDERSON:  Okay, but, Your Honor, my question is
 5   whether plaintiff can be required at this point to provide the
 6   Rule 26(f) -- the 26 reports for the experts that were never
 7   provided.  And -- so is Your Honor considering that we'll
 8   proceed to trial without either 26 -- Rule 26 reports from
 9   plaintiff's experts on the transcription and depositions of
10   those experts?
11              THE COURT:  The general rule applies, and that is if
12   you have not followed the rules and it's not properly
13   admissible, it's not going to come in, you know.
14              MR. ANDERSON:  That's fine.  Thank you, Your Honor.
15              THE COURT:  Yeah.
16              MR. ANDERSON:  Thank you for the clarification.
17              THE COURT:  Oh, sure.
18              MR. ANDERSON:  I may have misheard, but I think on
19   in Limine Number 10, which seeks the exclusion of Mr. Knight,
20   Mr. Lee and -- both Mr. Lees and others, I believe I heard you
21   refer to Mr. Wolfe as a witness.
22              THE COURT:  Oh, I'm sorry.  No, I'm sorry.
23   Mr. Knight I was referring to.
24              MR. ANDERSON:  Okay.
25              THE COURT:  I misspoke.
```

**UNITED STATES DISTRICT COURT**

**00104**

20

```
 1              MR. ANDERSON:  Thank you, Your Honor.  And --
 2              THE COURT:  Mr. Wolfe would be tough to get in as a
 3    witness.
 4              MR. ANDERSON:  Yes, we tried, Your Honor, but
 5    weren't able to pull that one off.  And then the only other
 6    thing I supposed I should repeat the request for a Daubert
 7    hearing if any of the experts that plaintiff has identified do
 8    get past the Rule 26 issue.
 9              THE COURT:  Well, again, anybody in a case could
10    file any motions they wish to file.  If you want to make them,
11    that's fine, make those motions.  The Court will determine,
12    number one, whether or not they're timely and should be
13    addressed, or we'll rule on them.  So I'm not foreclosing you
14    from making any motions you want.
15              MR. ANDERSON:  Thank you very much, Your Honor.
16              THE COURT:  Counsel, anything for you?
17              MR. MALOFIY:  Yes, Your Honor.
18         May it please the Court, couple questions to address with
19    the Court.  One issue is that in this case, defendants had
20    agreed to personal jurisdiction of this court rather than the
21    court of Philadelphia.  It was transferred from the Eastern
22    District of Philadelphia to this court, and now defendants are
23    refusing to appear in this court in the claims against them.
24    Plaintiff intended to, at all times, bring them in plaintiff's
25    case-in-chief as if on cross, and defendants are telling me,
```

1   defense counsel, that they're outside the power of this court

2   and they won't appear.  If that's the case, plaintiff would be

3   asking for, at the very least, a negative inference or default

4   if they're not going to appear in this court.

5          THE COURT:  Nothing has to be to argued.  He's just

6   saying that that's what he's going to do.

7          MR. ANDERSON:  Thank you, Your Honor.

8          THE COURT:  Anything else?  If you're asking for

9   rulings today, counsel, anything you want, put it in writing

10  and I'll rule on it, and those are things that should be

11  addressed before court because they may not be timely.  So

12  there -- and I appreciate you letting everybody know, myself

13  and counsel know, that this may be something you'll be raising.

14         MR. MALOFIY:  It is an issue also because in

15  preparation for the case --

16         THE COURT:  Okay.

17         MR. MALOFIY:  -- and to be conscience of the Court's

18  calendar, the witnesses -- calendaring of the witnesses as

19  well, if we're going to be using designations, we need to know

20  if they're going to appear.  And if they're not going to

21  appear, we're going to spend quite a bit of time chopping up

22  the videos for time of trial, and that's a concern that we

23  have.  I wanted to raise it with the Court because it deals

24  with calendaring and it deals with scheduling.  That's just

25  something I wanted to make the Court aware of.

**UNITED STATES DISTRICT COURT**

22

```
 1                THE COURT:  I appreciate that, and go ahead and put
 2    it in writing.  I appreciate that, I'm just not going to be
 3    ruling on anything today on it.
 4                MR. MALOFIY:  All right.  Understood.  Thank you,
 5    Your Honor.
 6                THE COURT:  Any time any issue comes up, I want to
 7    make sure that it's in writing in front of the Court and that
 8    the other side has an opportunity to respond to it, and then
 9    I'll make the writing.  A lot of people -- or the ruling.  A
10    lot of people like to bring up things and have them done right
11    here in court, and that's not fair to either side.  So I always
12    want it in writing, and we'll address it.
13                MR. MALOFIY:  Thank you, Your Honor.
14                THE COURT:  But thank you for notifying us.  It's
15    always better to let us know what your plans are.
16                MR. MALOFIY:  Another issue is there was a witness,
17    a Mike Ware, who was actually at the concert in the UK and was
18    at the front row and has a clear and distinct memory of seeing
19    Robert Plant in the front row watching the Spirit show.  Now,
20    he has Parkinson's and he doesn't have a passport, but he said
21    -- and we just found out about him, I believe in the last week,
22    and we disclosed it immediately to the other side.
23        He asked -- he said he would like to testify, but he would
24    be -- if it was possible, to do it telephonically or a video
25    conference or even schedule a deposition, fly out there and a
```

**UNITED STATES DISTRICT COURT**

**00107**

23

```
 1    take a brief deposition of him to be used in this case before
 2    trial.
 3              THE COURT:  Okay.  Well, see what you can work out
 4    with counsel.  If not, make the motion, I'll be happy to rule
 5    on it.
 6              MR. MALOFIY:  Thank you, Your Honor.
 7         Next issue, I believe you had said that each side gets ten
 8    hours, and I wasn't sure if that was in our case-in-chief or --
 9    in our case-in-chief and also for cross-examination.
10              THE COURT:  Any time any testimony is being given.
11              MR. MALOFIY:  Thank you, Your Honor.
12              THE COURT:  It does not include opening statement or
13    closing argument.
14              MR. MALOFIY:  Understood.  Is there any time
15    limitation on the opening statement or closing argument?
16              THE COURT:  Oh, yeah, there will be, but I'll talk
17    to you about it.  What is it normally?  I can tell you right
18    now.  It's normally about a half hour, 45 minutes for opening
19    statement, but I'll tell you on the day of trial for sure.
20              MR. MALOFIY:  All right.  One --
21              THE COURT:  Many times opening statement can be
22    done -- you know, it depends on how -- how complicated the case
23    is, and one of the things everyone knows is you can make a case
24    as complicated as you want or as streamline as you want.  But
25    we'll decide -- I would say probably half hour, in that area.
```

**UNITED STATES DISTRICT COURT**

1   Okay?

2            MR. MALOFIY:  One other issue as it relates to the

3   trial technology, my understanding is -- and from viewing the

4   room, it has monitors and other technology here.  As far as the

5   audio exhibits we intend to play at time of trial, it uses a

6   special program, Pro Tools program, which we would require two

7   laptops.  It's my understanding that your rules only allow one

8   laptop for a trial tech, and my request of this Court is would

9   this Court allow, because this is a case that is very much

10  focused on the audio and things relating to the case, if we

11  could have an additional laptop with a trial audio tech to run

12  that.

13           THE COURT:  Yeah, I may very well consider that, but

14  put it in writing what you want.  If you want an exception to

15  the rules, just let me know.

16           MR. MALOFIY:  Last two things is would we be

17  permitted to bring high fidelity speakers into the courtroom?

18           THE COURT:  Probably not.

19           MR. MALOFIY:  Okay.  As far as --

20           THE COURT:  Let me make sure, just the value of the

21  idea that -- and some cases come in and they say, Well we want

22  the courtroom for five days.  Other things we may be doing to

23  the courtroom, that's why -- that's why when boxes of exhibits

24  are brought in, sometimes the attorneys are upset that they

25  have to take all those boxes home at night.  They say, Well,

25

```
 1    can't we just store them in the courtroom?  This is a courtroom
 2    that has a lot of cases, obviously, not just one.  So I just
 3    want to disavow anybody of the idea that we own the courtroom
 4    for three or four days or five days, whatever it is.
 5        Go ahead -- and as far as the technical equipment, if it's
 6    needed, we allow it in.  Talk to the technicians about it, see
 7    if they can resolve it for you.  If they can't, make a motion
 8    to me, and if it's something that's necessary, yeah, we'll let
 9    it in.
10            MR. MALOFIY:  Last thing, as far as courtroom
11    technology, do you prefer the projection screen -- I believe
12    one's built into this room -- or do you prefer using the
13    monitors?
14            THE COURT:  Monitors.  We do have a projection
15    screen, but they've had so much problems with it.
16            MR. MALOFIY:  Understand.
17            THE COURT:  We have monitors on both sides as you
18    can see.
19            MR. MALOFIY:  As far as setting up, is that
20    something to discuss with you now?
21            THE COURT:  No, that's with the technicians.
22            MR. MALOFIY:  Okay.  Very well, Your Honor.
23        I'm not sure -- I believe that's all the questions I have.
24    I don't know if my co-counsel has additional ones.  May I speak
25    to my co-counsel?
```

26

```
 1                THE COURT:  There's no such thing as an attorney
 2    that doesn't have a question, counsel.  Go ahead.
 3                MR. MALOFIY:  Also, in Limine Motion Number 11,
 4    could you repeat your ruling, Your Honor?  And I apologize.
 5                THE COURT:  Sure, no problem.  Let me get it.
 6    Number 11?
 7                MR. MALOFIY:  Yes, Your Honor.
 8                THE COURT:  That's the one that I coupled with 10.
 9    Probably would allow -- would not exclude and would deny that
10    motion because I think Knight probably is someone that you knew
11    or should have known would be a witness, so I'll probably be
12    denying that, but I want to go over it.  It kind of relates
13    to -- because I believe that that's folded into Number 10 also.
14                MR. MALOFIY:  Understood.
15                THE COURT:  And some of those witnesses in 10, I'm
16    going to be granting the motion; some I may be denying the
17    motion.  It probably will be denied as to Knight.
18                MR. MALOFIY:  Okay.
19                THE COURT:  AKA Wolfe.
20                MR. MALOFIY:  Right, Knight.
21                THE COURT:  Okay.
22                MR. MALOFIY:  Thank you, Your Honor.
23                THE COURT:  Okay.  Thank you, counsel.
24           Anything else from either side?  Okay.  Thank you very
25    much.  We'll see you back in on the trial date.
```

**UNITED STATES DISTRICT COURT**

**00111**

1          MR. ANDERSON:  Thank you, Your Honor.

2          MR. MALOFIY:  Thank you, Your Honor

3          THE COURTROOM DEPUTY:  All rise.  Court is in

4     recess.

5        (The proceedings concluded at 9:38 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2

 3    COUNTY OF LOS ANGELES    )
                               )
 4    STATE OF CALIFORNIA      )

 5

 6              I, SHAYNA MONTGOMERY, Federal Official Realtime

 7    Court Reporter, in and for the United States District Court for

 8    the Central District of California, do hereby certify that

 9    pursuant to Section 753, Title 28, United States Code that the

10    foregoing is a true and correct transcript of the

11    stenographically reported proceedings held in the

12    above-entitled matter and that the transcript page format is in

13    conformance with the regulations of the judicial conference of

14    the United States.

15

16    Date:   April 28, 2016

17

18

19                     /s/ SHAYNA MONTGOMERY

20                     SHAYNA MONTGOMERY, CSR, RPR, CRR
                       Federal Official Court Reporter
21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-3462 RGK (AGRx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | *Michael Skidmore v. Led Zeppelin et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
|---|---|

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       **(IN CHAMBERS) Order re: Amended Ruling on Defendants' Motion in Limine No. 4 (DE 137)**

In its order denying Defendants' motion for summary judgment. This Court held that "Plaintiff's only copyright claim lies in the musical composition of *Taurus*, not the sound recording." (Order Den. Def.s' Mot. Summ. J. 17, ECF No. 159.) In light of this Order, Defendants have filed a Motion in Limine seeking to exclude all of Plaintiff's experts because they analyzed only the *Taurus* sound recording—not the musical composition. Plaintiff acknowledges that its expert reports considered only the *Taurus* sound recording but argues that these reports are admissible because "an expert may refer to the sound recording as long as the expert is clear that the compositional elements in question are represented in some way in the deposit copy." (Pl.'s Opp'n to Def.s' Mot. In Lim. No. 4, ECF No. 170.)

Because the deposit copy of *Taurus* registered with the Copyright Office is sheet music for the piano, Plaintiff's experts naturally relied on the *Taurus* sound recording to determine the melody, rhythm and other protected elements of the musical composition as played on the guitar. In doing so, however, Plaintiff's experts impermissibly analyzed unprotected elements not embodied in the musical composition (e.g., flute, recorder, fretboard positioning). Therefore, Plaintiff's expert reports are inadmissible in their present condition because they considered unprotected elements contained only in the sound recording. If Plaintiff wishes to introduce expert testimony at trial, it must submit reports completely purged of any reliance on the unprotected performance elements in the sound recording. Any comparison analysis must consider *only* the protected elements represented in the musical composition.

Should Plaintiff choose to submit new expert reports, he must do so within **FIVE DAYS** of this order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer _____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-03462-RGK (AGRx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | MICHAEL SKIDMORE v. LED ZEPPELIN, et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
|---|---|

| Sharon L. Williams | Shayna Montgomery | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Francis Maolfiy. Glen Kulik | Peter Anderson, Helene Freeman |

**Proceedings:**      **PRETRIAL CONFERENCE**

Case called.  Court and counsel confer.  Prior to the trial date, the parties shall submit a joint statement of the case.  The joint statement should not exceed one paragraph.  Each day of trial, counsel shall submit to the Court a list of witnesses, in the order they will be called.  Court and counsel confer regarding voir dire, jury impanelment, trial hours, and introducing exhibits.  Time limits for opening statements will be given to counsel on the first day of trial.  The Court informs counsel that it intends to impose time limits of 10 hours per side.

The Court issues tentative rulings on motions in limine:

Defendants' Motion in Limine 1 to exclude testimony about Randy Wolfe's statements (DE 134), is GRANTED.

Defendants' Motion in Limine 2 to exclude newspaper articles and book excerpts (DE 135), is GRANTED with the caveat that Plaintiff may use Page's two statements from the magazine interviews solely for impeachment.

Defendants' Motion in Limine 3 to Exclude Recordings of *Taurus* (DE 136), is GRANTED: the only *Taurus* recordings properly presented to the jury are those that are strictly limited to the *Taurus* musical composition as transcribed in the copyrighted 1967 transcription.

Defendants' Motion in Limine 4 to Exclude testimony and exhibits of Defendant's experts (DE 137), is GRANTED insofar as the expert reports, testimony, or exhibits rely on unprotected performance elements.

Defendants' Motion in Limine 5 to exclude other claims accusing Led Zeppelin of copying (DE 138), is GRANTED.

Defendants' Motion in Limine 6 to exclude report from purported Led Zeppelin historian (DE 139), is GRANTED.

Defendants' Motion in Limine 7 to exclude evidence about the parties' respective levels of wealth, (DE 140) is GRANTED.

Defendants' Motion in Limine 8 to exclude evidence about the charitable goals of the Trust (DE 141), is GRANTED.

Defendants' Motion in Limine 9 to exclude references to extraterritorial revenues and revenue earned outside the limitations period (DE 142), is DENIED as to evidence of extraterritorial profits/GRANTED as to evidence of revenue earned outside the limitations period.

Defendants' Motion in Limine 10 to exclude testimony of undisclosed witnesses (DE 143), the Court continues to deliberate on this motion.

Defendants' Motion in Limine 11 to exclude testimony of Larry Knight (DE 144), the Court continues to deliberate on this motion.

Defendants' Motion in Limine 12 to exclude references to Led Zeppelin members' drug and alcohol use (DE 145), is GRANTED.

Defendants' Motion in Limine 13 to exclude evidence of Defendants' insurance or indemnity agreements (DE 146), is GRANTED.

Defendants' Motion in Limine 14 to exclude the Complaint and FAC from evidence (DE 147), is GRANTED.

Plaintiff's Motion in Limine 1 to exclude evidence about the validity or legitimacy of the Trust (DE 149), is GRANTED as to evidence challenging whether certain legal formalities have been satisfied for the Trust to legally continue operating.

Plaintiff's Motion in Limine 2 to exclude evidence that Randy Wolfe's son, Quinn Wolfe, owns the copyright in *Taurus* as opposed to the Trust (DE 150), is DENIED.

Plaintiff's Motion in Limine 3 to exclude any expert on damages (DE 151), is DENIED to the extent Defendants wish to make arguments about damages based on information already contained in their musicologist's expert reports or testimony from lay witnesses about Defendants' respective revenues and deductible expenses.

**IT IS SO ORDERED.**

|                      | : | 30 |
|----------------------|---|----|
| Initials of Preparer |   | slw |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 15-3462 RGK (AGRx)** | Date | April 8, 2016 |
|---|---|---|---|
| Title | ***Michael Skidmore v. Led Zeppelin et al.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order re: Defendants' Motion for Summary Judgment (DE 97)**

## I.  INTRODUCTION

On May 31, 2014, Michael Skidmore, as trustee for the Randy Craig Wolfe Trust ("Plaintiff") filed suit against Led Zeppelin, James Patrick Page, Robert Anthony Plant, John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp., which is the parent company of Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company ("Defendants"). On October 8, 2014, Plaintiff filed a First Amended Complaint ("FAC"). The FAC claims that Defendants' song, *Stairway to Heaven*, infringes another song, *Taurus*, created by the rock band Spirit. The lawsuit alleges: (1) Copyright Infringement and (2) Violation of the Right of Attribution.

Presently before the Court is Defendants' Motion for Summary Judgment. For the following reasons, the Court **DENIES IN PART and GRANTS IN PART** Defendants' motion.

## II.  FACTUAL BACKGROUND

This case involves the vehemently contested history of two songs: the iconic *Stairway to Heaven* by Led Zeppelin and the lesser-known *Taurus* by the rock band Spirit. Because the surviving band members of each group figure prominently in the ensuing narrative, the Court briefly sets out the cast of relevant figures.

In February 1967, Randy Wolfe (guitarist), Mark Andes (bassist), John Locke (keyboardist), Ed Cassidy (drummer), and Jay Ferguson (vocalist/precussionist) joined to form the band Spirit. Only two surviving members of the original group remain, Andes and Ferguson. Across the Atlantic, another rock group formed in 1968 when Jimmy Page (guitarist), Robert Plant (singer), John Paul Jones (bassist), and John Bonham (drummer) joined to create Led Zeppelin. The three surviving members of Led Zeppelin are Page, Plant, and Jones.

### A.    The Genesis of *Taurus*

On August 29, 1967, Spirit signed its first recording contract with Ode Records. On that same day, Wolfe entered into an exclusive songwriter agreement with Hollenbeck Music. The exclusive songwriter agreement deemed Wolfe a "writer for hire" with full rights of copyright renewal vested in Hollenbeck. Late in 1967, Ode Records released Spirit's first eponymous album, which included an instrumental composition of *Taurus*. (Ferguson Depo. 46:10-19; Andes Depo. 57:16-22, ECF No. 97.)

According to Defendants, *Taurus* was initially composed and recorded in Ode Records' studio after signing the August 1967 recording contracts and exclusive songwriter agreement. In his deposition, Ferguson, Spirit's singer and tambourine player, testified that *Taurus* was recorded for the first Spirit album after the 1967 recording contract with Ode Records. (Ferguson Depo. 197:15-198:1, ECF No. 97.) Spirit's bassist, Andes, also confirmed in deposition testimony that *Taurus* was recorded for Spirit's initial album after the 1967 recording contract. (Andes Depo. 150:18-151:3, ECF No. 97.) Finally, Defendants submit a copyright registration showing that on December 22, 1967, Hollenbeck, as "Copyright Claimant," registered a copyright in the *Taurus* musical composition with the Copyright Office.

Plaintiff offers a competing narrative of *Taurus'* origin. According to declarations from Wolfe's sisters, in late 1966—before the recording contract or the exclusive songwriter agreement—Wolfe wrote *Taurus* for his high school sweetheart who would eventually become his wife. (Andrea Wolfe Decl. ¶¶4-5; Janet Wolfe Decl. ¶¶4-5, ECF No. 118.) Andes and Ferguson also testified that Wolfe created the song *Taurus* before the 1967 recording contract and exclusive songwriter agreement. (Andes Decl. ¶4; Ferguson Decl. ¶4, ECF No. 119.) Furthermore, according to Andes and Wolfe's sisters, Spirit regularly played *Taurus* at the Ash Grove club in Hollywood in early 1967—before the songwriter agreement was executed. (Andrea Wolfe Decl. ¶5; Janet Wolfe Decl. ¶5, ECF No. 118; Andes Depo. 150-156, ECF No. 124.)

### B.    Interaction Between Spirit and Led Zeppelin

In 1968, Ode Records released the second Spirit album, titled *The Family that Plays Together*, and launched a tour to promote the new record. Spirit and Led Zeppelin performed at the same venue on the same day at least three times between 1968 and 1970. The first occasion was on December 26, 1968 when Led Zeppelin, in its United States debut, opened for Spirit in Denver, Colorado ("Denver Festival"). Next, the two bands performed at the Atlanta International Pop Festival ("Atlanta Festival") on July 5, 1969. Finally, the groups both appeared, along with at least ten other bands, at the Seattle Pop Festival ("Seattle Festival") on July 27, 1969.

The parties present conflicting versions of the interaction between Led Zeppelin and Spirit at these three events. The surviving members of Led Zeppelin testified that they never toured with, shared a stage with, or listened to any of Spirit's music during these brief encounters. The surviving Spirit members, on the other hand, recalled conversing with the Led Zeppelin members backstage between sets and performing in succession at two of the festivals.

The two groups also performed at the Texas International Pop Festival in August 1969, although on different days. There is no evidence that members of Led Zeppelin were present when Spirit performed at the Texas Pop Festival, and Spirit's surviving members do not recall performing *Taurus* at the Texas Festival. (Pl.'s SGI Nos. 58-63, ECF No. 118.)

Similarly, Plaintiff submits a promotional poster from the three-day Northern California Folk-Rock Festival in May 1969, which shows that both Spirit and Led Zeppelin would be preforming. (Malofiy Decl. Ex. 12, ECF No. 124.) Beyond that, however, there is no evidence that the two groups

performed on the same day or that Led Zeppelin watched Spirit's performance in Northern California. In fact, Spirit's surviving members do not recall performing *Taurus* at the Northern California festival. (Pl.'s SGI No. 65, ECF No. 118.)

### C. Release of *Stairway to Heaven* and the Intervening Years

The surviving members of Led Zeppelin testified that the band recorded *Stairway to Heaven* between December 1970 and January 1971 entirely in London, England. (Page Decl. ¶4; Plant Decl. ¶4; Jones Decl. ¶3, ECF No. 97.) Plaintiff rebuts with deposition testimony from Page, acknowledging that he and Plant mixed *Stairway to Heaven* at Sunset Studios in Los Angeles, California. (Page Depo. 140-143, ECF No. 124.) Regardless of where the song was mixed, neither party disputes that Led Zeppelin first performed *Stairway to Heaven* in March 1971. The song was first released on the band's untitled fourth album, *Led Zeppelin IV*, in November 1971.

In the intervening years, fans and critics alike noticed the similarity between the two songs. In fact, on April 2, 1991, Wolfe was interviewed in connection with a new album of Spirit recordings titled, *Time Circle*. In the interview, Wolfe was asked about the possibility that Led Zeppelin had copied the opening of *Taurus* for its song *Stairway to Heaven*. Wolfe responded that Led Zeppelin members "used to come up and sit in the front row of all [Spirit's] shows and became friends[,] and if they wanted to use [*Taurus*], that's fine." (Freeman Decl. Ex. 6 at 7, ECF No. 97.) Later in the interview, Wolfe reiterated, "I'll let [Led Zeppelin] have the beginning of *Taurus* for their song without a lawsuit." (Freeman Decl. Ex. 6 at 8, ECF No. 97.)

Wolfe never sued over *Stairway to Heaven* during his lifetime, and he ultimately died in 1997. Wolfe's mother assumed the role as trustee of his trust from 2002 until her death, and she also did not bring suit. Plaintiff in this action became trustee of the Wolfe Trust in 2006. Between 2012-2014, Rhino Entertainment Co. arranged for the re-mastering and re-release of *Stairway to Heaven*. On May 2014, forty-three years after the initial release of *Stairway to Heaven*, Plaintiff initiated the instant action alleging that *Stairway to Heaven* infringed the copyright in *Taurus*.

## III.  EXPERT REPORTS

The parties submit dueling expert reports disputing the similarity between *Taurus* and *Stairway*.

### A.  Plaintiff's Expert Reports

Plaintiff's first expert, Alexander Stewart, prepared a 22-page report comparing recordings of *Taurus* with recordings and sheet music of *Stairway to Heaven*. (Stewart Decl. ¶2, ECF No. 118.) He explains that, for the purposes of the analytic comparison, the only relevant part of *Stairway to Heaven* is the beginning two-minute segment, which contains all the similarities. (Stewart Decl. ¶7, ECF No. 118.) The structural similarities between the two songs are represented below:

| Taurus | Stairway to Heaven |
|---|---|
| 0:00   Intro | 0:00   A (instrumental) |
| 00:45  A | 0:13   A (instrumental) |
| 00:58  A | 0:26   B |
| 1:12   B | 0:53   A (vocal) |
| 1:37   A | 1:06   A (vocal) |

| 1:50 | A | 1:20 | B |
| 2:04 | B | 1:47 | A (vocal) |
| | | 2:00 | A (instrumental) |
| | | 2:14 | End of relevant portion |

As illustrated by the chart, both songs contain repeated "A" sections consisting of a four-measure descending A minor guitar pattern. In both songs, the "A" sections are separated by a longer "B" section, or bridge. (Stewart Decl. ¶5, ECF No. 118.) The two songs do, however, contain three structural differences. First, the version of *Taurus* appearing on the album contains a 45-second introduction; Stewart notes, however, that this introduction does not appear on any live or demo versions of *Taurus*. (Stewart Decl. ¶6, ECF No. 118.) Second, *Taurus* contains two repeated "A" sections (AABAAB) whereas *Stairway to Heaven* contains three repeated "A" sections (AABAABAA). Finally, the "B" section, or bridge, is seven measures in *Taurus* but eight measures in *Stairway to Heaven*. (Stewart Decl. ¶6, ECF No. 118.)

Despite these minor differences, Stewart opines that "[n]early 80% of the pitches of the first eighteen notes match, along with their rhythms and metric placement. The harmonic setting of these "A" sections feature the same chords during the first three measures and an unusual variation on the traditional chromatic descending bass line in the fourth measure." (Stewart Decl. ¶24, ECF No. 118.)

Beyond the core structural and melodic similarities, Stewart opines that the two songs are also similar in instrumentation and orchestration. Stewart explains that "the presence of acoustic guitar, strings, recorder/flute sounds, and harpsichord as well as the noticeable absence of bass and drums (and other instruments characteristic of rock and roll) lend both songs a decidedly 'classical' style, particularly evoking a Renaissance atmosphere." (Stewart Decl. ¶3, ECF No. 118.) Additionally, Stewart notes that live versions of *Taurus* also "feature a similar fingerpicking style in the passage's later appearances." (Stewart Decl. ¶3, ECF No. 118.)

Plaintiff also submits a 31-page expert report prepared by Erik Johnson who also compared both *Taurus* and *Stairway to Heaven*. Johnson transcribed the song *Taurus* from the sound recording and reduced it to its constituent elements: guitar, harpsichord, atmospheric percussion, and strings. (Johnson Decl. ¶11, ECF No. 118.) He also reconstructed *Stairway to Heaven* and recorded each instrument (electric bass, drum set, and electric piano parts) individually. (Johnson Decl. ¶8, ECF No. 118.)

After comparing the reconstructed versions of *Taurus* and *Stairway to Heaven*, Johnson concludes, "If *Stairway to Heaven* is stripped down to the bare elements that received songwriting credit, the listener is left with two parts: [1] an arpeggiated guitar part, the signature element, which is substantially the same as the signature guitar element in *Taurus*; [2] a vocal melody that bears significant resemblance to the harpsichord in *Taurus*, followed by a series of riffs, chord progressions and solos." (Johnson Decl. ¶18, ECF No. 118.)

Plaintiff's final expert report was prepared by Brian Bricklin, who compared audio files of *Taurus* and *Stairway to Heaven*. Bricklin spends the first eight pages of the report explaining the music production and mixing process. He then analyzes the two songs and concludes that "[b]oth songs are presented, in their final commercially released versions, with substantially similar production and mixing techniques." (Bricklin Decl. ¶16, ECF No. 118.) Bricklin points out specific similarities such as "the use of reverb to create a mystic, dreamlike quality [so that] each note of the guitar has a 'whispering tail.'"

### B.    Defendants' Expert Reports

Defendants submit an expert report by Lawrence Ferrara who opines that *Taurus* and *Stairway to Heaven* are not substantially similar. Ferrara attacks Stewart's report because it "relies upon and analyzes and compares performance elements in *Taurus* recordings that are nowhere mentioned in the *Taurus* Transcription. The *Taurus* Transcription does not mention or reflect, for example, performance techniques, instrumentation and orchestration, or tempo (i.e., performance speed)." (Ferrara Decl. ¶6, ECF No. 97.)

After disregarding the unprotected performance elements in Stewart's report, Ferrara explains that the only remaining similarities are the interchanging "A" and "B" sections reflected in Stewart's chart above. (Ferrara Decl. ¶8, ECF No. 97.) Ferrara concludes that these commonalities do not evince a substantial similarity between the two works for several reasons. First, he explains that interchanging "A" and "B" sections have been generic in music for centuries. Next, Ferrara contends that Stewart's analysis focuses only on the first two minutes of each song while disregarding the last six minutes of *Stairway*, which constitutes over 70% of the song. Finally, Ferrara opines that any similarities between the two songs are insubstantial and represent commonplace musical devices. (Ferrara Decl. Ex. 1 at ¶22, ECF No. 97.)

Defendants also provide an expert report prepared by Rob Mathes who performed and recorded the *Taurus* sheet music deposited with the Copyright Office on a steel string acoustic guitar. (Mathes Decl. ¶3, ECF No. 97.) Mathes echoes the conclusions of Ferrara and finds that the two songs are not substantially similar.

## IV.    JUDICIAL STANDARD

### A.    Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)-(b).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324. The materiality of a fact is determined by whether it might influence the outcome of the case based on the contours of the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over such facts amount to genuine issues if a reasonable jury could resolve them in favor of the nonmoving party. *Id.*

### B.    Copyright

"Proof of copyright infringement is often highly circumstantial, particularly in cases involving music. A copyright plaintiff must prove: (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212

F.3d 477, 481 (9th Cir. 2000). Here, Defendants challenge both elements of the copyright test, arguing that Plaintiff does not own the copyright in *Taurus* and cannot demonstrate copying. Additionally, Defendants raise three defenses: abandonment, laches, and defective deposit copy.

## V.   DEFENSES

Defendants assert three defenses: (1) abandonment/waiver, (2) laches, and (3) defective deposit copy. The Court discusses each below.

### A.   Abandonment/Waiver

Defendants contend that Wolfe waived his right to the *Taurus* musical composition. "In copyright, waiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). "To find abandonment, 'the copyright owner must have clearly manifested that intention through some affirmative act.'" *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398 (C.D. Cal. 1990).

On April 2, 1991, Wolfe was interviewed in connection with a new album of Spirit recordings titled, *Time Circle*. In the interview, Wolfe was asked about the possibility that Led Zeppelin had copied the opening of *Taurus* for its song *Stairway to Heaven*. Wolfe responded that Led Zeppelin members "used to come up and sit in the front row of all [Spirit's] shows and became friends[,] and if they wanted to use [*Taurus*], that's fine." (Freeman Decl. Ex. 6 at 7, ECF No. 97.) Later in the interview, Wolfe reiterated, "I'll let [Led Zeppelin] have the beginning of *Taurus* for their song without a lawsuit." (Freeman Decl. Ex. 6 at 8, ECF No. 97.) Defendants submit the original article, audio recordings of the interview, and deposition testimony from the journalist who conducted the interview, and argue that Wolfe's public statement demonstrates abandonment of his right in *Taurus*. (Freeman Decl. Exs. 3-7, ECF No. 97.)

Two district court cases have addressed similar arguments of abandonment premised on a copyright holder's public statements. In *Melchizedek v. Holt*, the copyright holder of several videos was quoted at a workshop saying, "I don't care about copyrights or any of that stuff, that doesn't matter. Forget it, just take it and you'll understand what this is all about by tomorrow." 792 F. Supp. 2d 1042, 1053 (D. Ariz. 2011). The court held that the remark was ambiguous as to which copyrights the plaintiff had supposedly abandoned and concluded that "questions of fact exist as to whether the overt acts . . . are indicative of Plaintiff's intent to abandon copyright protection in the [videos]." *Id.* at 1054.

In *Marya v. Warner/Chappell Music, Inc*, the copyright holder, who owned the lyrics to the famed *Happy Birthday* song, was mentioned in a *Time* magazine article as having "no complaint to make on the use of the words because she long ago resigned herself to the fact that her ditty had become common property of the nation." No. CV134460, 2015 WL 5568497, at *11 (C.D. Cal. Sept. 22, 2015). In addressing whether this quote constituted abandonment, the court held, "A public statement like this, if believed, is an overt act on which a reasonable fact finder could base a finding that Patty abandoned her copyright interest in the lyrics. However, we cannot say that this evidence is sufficient [for] a directed verdict at trial inasmuch as it is not a direct quote from [the copyright holder]." *Id.*

At the outset, the Court notes that both *Marya* and *Melchizedek* are factually distinguishable from the instant case. Unlike the copyright holder in *Melchizedek* who did not specify which work was supposedly abandoned, Wolfe explicitly referred to *Taurus* and Led Zeppelin in his interview. *Marya* is similarly distinguishable because the public statement was paraphrased whereas Wolfe's statement was

a direct quote, according to deposition testimony from the journalist who conducted the interview. (Ruhlmann Depo. 17:17-25, ECF No. 124.) While neither *Marya* nor *Melchizedek* squarely governs the instant case, they provide guidance as to how this Court should approach the issue of abandonment. Both cases stand for the larger proposition that a copyright holder's statement must be viewed in context to determine whether it manifests an intent to abandon rights.

Here, Plaintiff has proffered sufficient evidence to raise a triable issue of fact as to whether Wolfe's statement evinced his intent to abandon rights in *Taurus*. For starters, the journalist who conducted the interview testified that Wolfe never received or reviewed the interview notes before the article was published. (Ruhlmann Depo. 17:17-25, ECF No. 124.) Plaintiff also points to the tenor of the interview, which indicates that Wolfe felt cheated by Led Zeppelin and was merely trying to save face and make light of a bad situation. Additionally, Plaintiff submits several pieces of evidence demonstrating that Wolfe acted in a manner inconsistent with an intent to abandon his rights. First, David Waterbury, Spirit's bass player from 1985 to 1988, testified that Wolfe told him that he was upset about the theft and wanted to sue, but was deterred and intimidated. (Waterbury Decl. ¶¶3-9, ECF No. 118.) Next, Wolfe's longtime friend, Tracy Longo, testified that Wolfe had been contemplating a lawsuit against Led Zeppelin for some time before his death. (Longo Decl. ¶26-27, ECF No. 118.)[1] Finally, Plaintiffs proffer testimony from Linda Mensch, an entertainment attorney in Chicago, Illinois, who testified that Wolfe came to see her in the 1990's to inquire about the possibility of bringing a lawsuit against Led Zeppelin. (Mensch Decl. ¶¶2-6, ECF No. 118.)[2]

In sum, a genuine issue of fact exists as to the abandonment defense, and the Court denies summary judgment on this basis.

## B. Laches

Defendants argue that the copyright claim is barred by laches because Plaintiff delayed bringing suit for over four decades (from the 1971 release of *Stairway to Heaven* until the 2014 filing of the instant action).

This issue is squarely governed by the Supreme Court's recent decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, where the Court held that "[l]aches . . . cannot be invoked to preclude adjudication of a [copyright] claim for damages brought within the three-year [statute of limitations]." 134 S. Ct. 1962, 1967 (2014). In *Petrella*, the Court explained that until 1957, federal copyright law did not include a statute of limitations for civil suits, which required federal courts to resort to the equitable doctrine of laches. *Id.* at 1968. In 1957, Congress enacted a three-year look-back limitations period for

---

[1] Defendants object to this evidence on the basis of hearsay. The objection is overruled. Wolfe's statements of his intent are admissible under the "state-of-mind" exception to the hearsay rule, which allows "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). Of course, Rule 803 allows only a statement of the declarant's state of mind, not "statements as to why [the declarant] held the particular state of mind, or what he might have believed that would have induced the state of mind." *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013).

[2] Defendants object to this evidence as inadmissible under the attorney-client privilege. The objection is overruled. Generally, "the client is the holder of . . . attorney/client privilege and has the right to assert such privilege, but . . . . [i]t is also the law that someone other than the actual client can become the holder of the privilege." *Roberts v. Heim*, 123 F.R.D. 614, 629 (N.D. Cal. 1988). Defendants have failed to show how they could possibly hold Wolfe's attorney-client privilege in this situation; therefore, the Court rejects their argument.

all civil claims arising under the Copyright Act, largely obviating the need for the doctrine of laches. *Id.* at 1973. While the Court held that laches was unavailable as a defense to a copyright action seeking damages, it preserved the role of laches in copyright actions seeking equitable relief. *Id.* at 1977 ("In extraordinary circumstances, however, the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable.").

Here, Plaintiff brought suit within the three-year retrospective statute of limitations, as Defendants released a new, remastered version of *Stairway to Heaven* in 2014. *Id.* at 1969 ("[E]ach infringing act starts a new limitations period."). Regardless of Plaintiff's delay in bringing the action, as long as Defendants have committed an infringing act within the three years preceding suit, laches does not prohibit Plaintiff's claim for damages.

Defendants argue that laches operates to bar Plaintiff's action because the lawsuit is an equitable one and *Petrella* expressly reserved laches as a viable defense to equitable relief. According to Defendants, Wolfe is a beneficial owner, and the relationship between a beneficial owner and a legal owner is an "equitable trust relationship . . . which gives the [beneficial owner] standing to sue for infringement." *Warren*, 328 F.3d at 1144. Defendants seize on this language and argue that because a beneficial owner exists in an "equitable trust relationship," he necessarily brings an "equitable" claim subject to laches. The Court disagrees. Defendants' argument, while semantically convenient, is legally baseless, as they indiscriminately latch onto the word "equitable" even though the word is used in two completely different contexts.

The use of "equitable" to describe the status of a beneficial owner is wholly distinct from the use of "equitable" to describe relief a court may grant under the Copyright Act. To describe the status of a beneficial owner as one in an "equitable trust relationship" is simply to explain that he retains an "equitable" right to bring suit even though he does not hold legal title in a copyright—such a characterization does not even remotely bear on the type of relief, legal or "equitable," that a beneficial owner may pursue. The Supreme Court in *Petrella* was clearly concerned with "equitable" in the sense of the relief awardable, not the manner in which a copyright owner can sue. The language of the opinion bears this out. The Court held that "the consequences of a delay in commencing suit may be of sufficient magnitude to warrant . . . curtailment of the *relief equitably awardable*." 134 S. Ct. at 1977. Moreover, in providing an example of equitable relief that would be precluded by laches, the Supreme Court referred to "injunctive relief" such as "destruction of the work." *Petrella* 134 S. Ct. at 1978. Thus, the *Petrella* court used the term "equitable" as a concept of relief to be contrasted with legal or monetary remedy; the Court did not contemplate "equitable" in the sense that Defendants are invoking it.

Accordingly, the Court rejects this argument and finds that laches does not bar Plaintiff's claim.

### C.   <u>Sufficiency of the Deposit Copy</u>

Defendants contend that Plaintiff has failed to produce a deposit copy of the *Taurus* musical composition that was submitted to the Copyright Office in 1967. Even though Defendants were able to acquire a copy from the Library of Congress, they argue that the copy is defective because it does not bear the official Library of Congress stamp. (Anderson Decl. Exs. 17-18, ECF No. 97.)

The Court disposes of this argument in short order. First, Defendants do not cite any case law holding that a missing seal from the Copyright Office invalidates a deposit copy or prohibits an infringement claim. In fact, the case law points in the opposite direction, as the Ninth Circuit has held that mistakes or omissions on copyright registration material do not invalidate a copyright absent detrimental reliance by the infringer or intentional fraud by the registrant. *Three Boys Music*, 212 F.3d at 486; *KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 084267, 2008 WL 5245484, at *9 (N.D. Cal. Dec.

17, 2008) ("[T]he Ninth Circuit has held that the standard governing the sufficiency of copyright deposits for purposes of maintaining an infringement suit is 'broad and deferential.'").

Here, Defendants have not alleged or proven either detrimental reliance or intentional fraud. Accordingly, the Court rejects this argument.

## VI.   OWNERSHIP

The instant action is brought on behalf of the deceased Randy Wolfe by the trustee of his trust. Defendants contend that neither Wolfe nor his trustee can sue for copyright infringement of *Taurus* because: (1) the song is a work for hire owned by Hollenbeck Music, (2) Wolfe did not comply with statutory formalities to secure his federal copyright interest, and (3) Wolfe failed to timely respond to a discovery request, thereby conceding the work-for-hire issue.

### A.   Work For Hire

"[T]o analyze questions arising from events that occurred before January 1, 1978, such as who is the author of the [work], the 1909 Act applies; for events that occurred after that date, such as registration of the renewal copyright, the 1976 Act applies." *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 971 (9th Cir. 2008). Because *Taurus* was created before 1978 (either in 1966 as Plaintiff contends or in late 1967 as Defendants maintain), the issue is governed by the 1909 Act.

Under the 1909 Act, the author of a work owned the copyright in the work; however, the Act provided that "the word 'author' shall include an employer in the case of works made for hire." 17 U.S.C. § 26 (repealed). While the 1909 Act explicitly carved out a work-for-hire exception, "[n]owhere did the [] Act define what was meant by 'work made for hire' or 'employer.'" *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1136 (C.D. Cal. 2007). "Because the 1909 Act did not define 'employer' or 'works for hire,' the task of shaping these terms fell to the courts. They concluded that the work for hire doctrine codified in [the 1909 Act] referred only to works made by employees in the regular course of their employment." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 744 (1989). Specifically, the Ninth Circuit "evaluated claims that a work was made for hire [under the 1909 Act] by asking whether it was created at the 'instance and expense' of the engaging party." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 877 (9th Cir. 2005).

Neither party disputes that on August 29, 1967, Wolfe entered into an exclusive songwriter agreement with Hollenbeck. The agreement deemed Wolfe a "writer for hire" with "full rights of copyright renewal vested in Hollenbeck." (Anderson Decl. Ex. 11 at ¶11, ECF No. 97.) Hollenbeck also registered a copyright in the *Taurus* musical composition with the Copyright Office on December 22, 1967. The registration lists Hollenbeck as the "Copyright Claimant" and Wolfe as the "Author." (Anderson Decl. Ex. 16, ECF No. 97.) In January 1996, however, Wolfe renewed the *Taurus* registration in his own name without any reference to Hollenbeck. (FAC Ex. 1, ECF No. 31.) Finally, on February 18, 2016, Hollenbeck filed supplementary registrations with the Copyright Office, amending both the December 1967 initial registration and the January 1996 renewal registration to clarify that *Taurus* was a work for hire. (Anderson Decl. Ex. 27, ECF No. 129.)

Defendants argue that *Taurus* is a work for hire based on the August 1967 exclusive songwriter agreement and the December 1967 copyright registration certificate listing Hollenbeck as a "Copyright Claimant." Even though the December 1967 registration does not expressly designate *Taurus* as a "work for hire," Defendants contend that such an inadvertent omission does not invalidate a registration certificate. *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997) ("[I]nadvertent mistakes on registration certificates do not invalidate a copyright . . . unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office."). Moreover,

Defendants maintain that any mistake in listing *Taurus* as a work for hire has been corrected by the supplementary registration, in which Hollenbeck amended the prior registrations to reflect that *Taurus* was a work for hire.

The Court finds that Defendants' reliance on the copyright registration certificates is misplaced. "A copyright certificate establishes prima facie evidence of the validity of a copyright and of the facts in the certificate. The presumption is rebuttable, and does not definitively resolve the ownership issue." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1096 (N.D. Cal. 2002). Here, Plaintiff has proffered sufficient evidence to rebut the presumption created by the registration certificates. For instance, the two surviving members of Spirit testified that Wolfe created the song *Taurus* before the August 1967 exclusive songwriter agreement. (Andes Decl. ¶4; Ferguson Decl. ¶4, ECF No. 119.) Wolfe's sisters corroborate this point; they testified that in late 1966, Wolfe wrote *Taurus* for his high school sweetheart who would eventually become his wife. (Andrea Wolfe Decl. ¶¶4-5; Janet Wolfe Decl. ¶¶4-5, ECF No. 118.) Furthermore, according to Andes and Wolfe's sisters, Spirit regularly played *Taurus* at the Ash Grove club in Hollywood in early 1967—before the songwriter agreement was executed. (Andrea Wolfe Decl. ¶5; Janet Wolfe Decl. ¶5, ECF No. 118; Andes Depo. 150-156, ECF No. 124.)

Plaintiff has marshaled sufficient evidence to create a triable issue of fact as to whether Wolfe composed *Taurus* before or after the exclusive songwriter agreement, a question that bears directly on the issue of whether *Taurus* is a work for hire. Therefore, summary judgment on this basis is improper.

## B.   Failure to Comply with Statutory Formalities

Defendants posit that even if Wolfe had composed and performed *Taurus* live or recorded the song before August 29, 1967, he still does not own the copyright because he failed to comply with statutory requirements.

Under the 1909 Act, a work was protected by common law copyright from the moment of its creation; however, as soon as the work was published, the owner was divested of common law protection. *Societe Civile Succession Guino v. Renoir*, 549 F.3d 1182, 1185 (9th Cir. 2008). At the point of divestiture, federal copyright protection did not attach immediately; rather, the owner was required to secure federal copyright protection in one of two ways: (1) by publishing the work with proper notice or (2) by not publishing the work but registering and depositing necessary copies with the Copyright Office. *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004, 2014 WL 7877773, at *8 (C.D. Cal. Oct. 30, 2014); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 618 (9th Cir. 2010) ("[F]ederal copyright protection attached only upon publication, and even then, only if proper notice, registration, and deposit occurred."). Under the first method of securing federal copyright protection, neither a live performance nor distribution of a recording constitutes publication of a musical composition. *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688-89 (9th Cir. 2000) (explaining that selling or distributing records does not qualify as publication); *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981) ("It has long been held that mere performance or exhibition of a work does not constitute a publication of that work [under the 1909 Act].").

It is undisputed that Wolfe did not personally comply with the statutory formalities. He did not publish copies of *Taurus* with proper notice, nor did he register and deposit copies of the unpublished musical composition with the Copyright Office. Therefore, Defendants maintain, federal copyright protection never actually vested until Hollenbeck registered *Taurus* with a deposit copy in December 1967. Defendants' argument presumes that Hollenbeck must have owned *Taurus* as a work for hire because the song was not registered until December 1967—well after the exclusive songwriter agreement. That is not necessarily so. Assuming Wolfe did, in fact, compose *Taurus* before the August 1967 exclusive songwriter agreement, he acquired common law copyright protection from the moment

of creation. Absent evidence that he somehow lost or transferred his rights, Wolfe continued to own the copyright in *Taurus* when the common law copyright divested and the federal copyright protection attached upon registration in December 1967. The mere fact that Hollenbeck registered *Taurus* and appears as "Copyright Claimant" on the registration certificate does not dispose of Wolfe's ownership claim.

In fact, the evidence in the record provides a plausible explanation as to why Hollenbeck would have registered *Taurus* as a claimant, even if Wolfe had independently created and continued to own the song. In the August 1967 exclusive songwriter agreement, Wolfe assigned his rights in all existing and future musical compositions to Hollenbeck in exchange for royalties.[3] An author who assigns his copyright in a work in exchange for royalties is considered a beneficial owner, while the assignee receiving title is deemed the legal owner of the copyright. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003) (defining a beneficial owner as "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees."). Even under the 1909 Act, a beneficial owner had standing to sue for copyright infringement. *Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987). Assuming *Taurus* was included in the musical compositions that Wolfe assigned to Hollenbeck, Wolfe would have retained ownership as a beneficial owner, and the record company would have held title as legal owner. In such a situation, it would be entirely conceivable that Hollenbeck would register the song with both its name and Wolfe's name on the certificate.

Of course, the Court does not take a position on the events that transpired over forty years ago. Suffice it to say that Plaintiff has proffered sufficient evidence to create a genuine issue of material fact as to the ownership of *Taurus*.

## C.   Untimely Response to Request for Admission

Defendants' final argument is that Plaintiff failed to answer a request for admissions in a timely manner, thereby conceding that *Taurus* is a work for hire. Counsel for Defendants claims that he warned Plaintiff's counsel twice about late responses to requests for admission, and any delay in responding was inexcusable. (Andersen Decl. Ex. 13-14, ECF No. 97.) Plaintiff explains that the trustee of Wolfe's trust had been involved in a serious accident and was unable to verify the answers by the deadline. Given the special circumstances, Plaintiff's counsel mistakenly understood that he had been granted an extension; he subsequently worked with Defendants' counsel to supplement discovery responses and deny that *Taurus* is a work for hire.

"A trial judge has discretion . . . to permit a late response to a request for admissions made pursuant to [Federal Rule of Civil Procedure 36], and thus relieve a party of apparent default." *Am. Gen. Life & Acc. Ins. Co. v. Findley*, No. CV 12-01753, 2013 WL 1120662, at *3 (C.D. Cal. Mar. 15, 2013). In determining whether to permit withdrawal or amendment of an admission, the court considers: (1) whether presentation of the merits will be subserved and (2) whether the non-moving party will suffer prejudice. *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

---

[3] The exclusive songwriter agreement contains a section entitled "Grant of Rights," in which Wolfe agreed to "irrevocably and absolutely assign[], transfer, set[] over and grant[] to [Hollenbeck] . . . the titles, words and music of any and all original musical compositions . . . which are now owned or controlled and which may, during the term hereof, be written, composed, created or conceived by [Wolfe]." (Anderson Decl. Ex. 11 at ¶3, ECF No. 97.) The agreement also includes a section labeled, "Compensation," which specifies that Wolfe would receive royalties. (Anderson Decl. Ex. 11 at ¶7, ECF No. 97.)

"The first half of the test in [Rule 36] is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). Here, upholding Plaintiff's admission as to the work-for-hire issue would eliminate any presentation of the merits, as he would not have any standing to sue for copyright infringement. Therefore, the first prong is satisfied.

The second prong requires the party relying on the deemed admission to prove prejudice. *Conlon* 474 F.3d at 622. The Court finds that Defendants have not carried their burden to show prejudice. For starters, at the time of the late response, Defendants did not file a motion to compel or have the matter deemed admitted by the court. *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) ("A party requesting an admission may, if he feels these requirements have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted."). Defendants chose not to pursue such remedies during discovery.

Beyond their inaction earlier in litigation, Defendants have failed to show any real prejudice. According to Defendants, in reliance on Plaintiff's admission, they chose not to depose certain individuals, like Spirit's producer, about the work-for-hire issue. The Court finds this argument unavailing. Even if Defendants had deposed Spirit's producer and other unnamed potential deponents, they could not conclusively establish that *Taurus* was a work for hire in the face of Plaintiff's contrary evidence. At most, then, Defendants would simply have fortified their position on the work-for-hire issue with additional testimony, but not enough to prevail on summary judgment because of Plaintiff's evidence creating a triable issue of fact.

Accordingly, the Court rejects Defendants' argument that Plaintiff conceded *Taurus* was a work for hire by his untimely response to admissions.

## VII.   COPYING

"Because direct evidence of copying is not available in most cases, plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). Alternatively, "in the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar.'" *Three Boys Music Corp.*, 212 F.3d at 485.

The Court finds that Plaintiff has failed to proffer evidence of striking similarity, but he has successfully created a triable issue of fact as to access and substantial similarity.

### A.   Striking Similarity

"[I]n rare cases, a plaintiff can prove copying even without proof of access if he can show that the two works are not only similar, but are so strikingly similar as to preclude the possibility of independent creation." *Stabile v. Paul Smith Ltd.*, No. CV 14-3749, 2015 WL 5897507, at *9 (C.D. Cal. July 31, 2015). "'[S]triking similarity simply means that in human experience it is virtually impossible that the two works could have been independently created.'" *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005). "To show a striking similarity between works, a plaintiff must produce evidence that the accused work could not possibly have been the result of independent creation." *Seals-McClellan v. Dreamworks, Inc.*, 120 F. App'x 3, 4 (9th Cir. 2004).

Here, Plaintiff's experts opine that *Taurus* and *Stairway to Heaven* bear striking similarity. The Court disagrees. The expert reports point out structural commonalities shared by both songs, but striking similarity is an exceedingly high bar that requires a much greater showing. In fact, Plaintiff's experts

admit that other works use "similar descending minor harmonic patterns." (Stewart Decl. ¶41, ECF No. 118.) Even though the expert also states that *Taurus* and *Stairway to Heaven* "depart from the traditional sequence in similar and significant ways," the fact remains that the primary feature in both works is a common musical structure. (Stewart Decl. ¶9, ECF No. 118.) Thus, the Court cannot definitively say based on the evidence provided that the two works bear a striking similarity.

In the absence of striking similarity, Plaintiff must show: (1) access and (2) substantial similarity to defeat summary judgment on the second element of his copyright claim. As the Court explains below, Plaintiff has demonstrated copying.

**B.     Access**

"To prove access, Plaintiff must show that the Defendants had a 'reasonable opportunity' or 'reasonable possibility' of viewing Plaintiff's work prior to the creation of the infringing work." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1053 (C.D. Cal. 2010). "Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a chain of events linking the plaintiff's work and the defendant's access, or (2) widespread dissemination of the plaintiff's work." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846-47 (9th Cir. 2012)

Defendants contend that Plaintiff has not produced any evidence to show that members of Led Zeppelin had any access to the *Taurus* song. The Court addresses each type of access in turn.

1.     *Direct Evidence of Access*

"Direct access is shown if there is proof that defendant actually viewed, read, or heard the work at issue." *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1149 (C.D. Cal. 2015).

The Court finds that Plaintiff has not proffered sufficient evidence to raise a triable issue of fact that Led Zeppelin members had direct access to *Taurus*. Plaintiff introduces the testimony of Tracy Longo, Wolfe's longtime friend, who recounted a story Wolfe told him: apparently, in 1968 or 1969, Page asked Wolfe to teach him the opening notes for *Taurus*. (Longo Decl. ¶19-21, ECF No. 118.) Plaintiff also submits an interview from April 1970 in which Page stated, "Spirit do some really nice things on albums. They give a really nice atmosphere when they play and I always enjoy seeing them." (Malofiy Decl. Ex. 3, ECF No. 124.) In another interview, this one conducted in November 1972, Page was quoted as saying, "I saw Spirit a couple of times and thought they were very good." (Malofiy Decl. Ex. 4, ECF No. 124.) Finally, Andes testified that Plant attended a Spirit show in February 1970 in Birmingham, England and went out drinking with the Spirit members after the concert. (Andes Depo. 111-118, ECF No. 119.)

The Court discounts Longo's testimony and Page's quoted remarks as they both constitute hearsay that does not fall into any exception. The only remaining testimony is that Plan attended a Spirit concert in 1970. Plaintiff does not provide any evidence that *Taurus* was played at the 1970 concert; therefore, while Plant's presence at the concert may be circumstantial evidence of access, it does not establish direct access.

2.     *Circumstantial Evidence: Wide Dissemination*

"As a general matter, it appears that in order for a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available in the relevant market." *Loomis v. Cornish*, No. CV 12-5525, 2013 WL 6044345, at *10 (C.D. Cal. Nov. 13, 2013); *see, e.g., Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1144 (9th Cir. 2009) (finding that 2,000 copies per year sold did not constitute wide dissemination); *Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981)

*aff'd*, 698 F.2d 966 (9th Cir. 1982) (finding that 2,000 copies sold nationwide and 700 copies sold in southern California did not constitute wide dissemination); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (finding that 17,000 copies sold over thirteen years did not constitute wide dissemination).

The Court finds that Plaintiff has not proffered sufficient evidence to raise a triable issue of fact on the question of widespread dissemination. Neither party disputes that in 1967, Ode Records released Spirit's first eponymous album, which included an instrumental composition of *Taurus*. (Ferguson Depo. 46:10-19; Andes Depo. 57:16-22, ECF No. 97.) Beyond that, however, the record is devoid of any evidence from which a trier of fact can determine whether the song was disseminated widely. Plaintiff does not provide evidence that *Taurus* was played frequently on the radio or released as a single, nor does he submit any evidence attesting to record sales of Spirit's first album.

Instead, Plaintiff submits inadmissible testimony from Mike and Robert Lee, disc jockeys who worked for a Los Angeles radio station in late 1972 and 1973, who stated that *Taurus* was being played on the radio before 1971. (Mike Lee Decl. ¶¶3-4; Robert Lee Decl. ¶3, ECF No. 119.) The Court rejects this testimony, as neither of these witnesses was disclosed to Defendants. (Anderson Decl. ¶8, ECF No. 129.) "A party that fails to disclose witnesses pursuant to FRCP 26 may be prohibited from using that witness to supply evidence during any proceeding, unless that 'failure was substantially justified or is harmless.'" *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912, 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012).

Plaintiff also proffers testimony from Wolfe's sisters who claim that after the release of Spirit's first album, the group embarked on a lengthy tour to promote the record. (Andrea Wolfe Decl. ¶6; Janet Wolfe Decl. ¶7, ECF No. 118.) This testimony is devoid of any detail as to the duration of the tour, the size of the venues, or the number of shows played. Moreover Wolfe's sisters do not have personal knowledge about the extent of the tour, as they did not travel with the band. Therefore, the proffered evidence is entirely too speculative to demonstrate widespread dissemination.

Accordingly, Plaintiff has not proffered sufficient evidence to raise a genuine issue of fact as to access through wide dissemination.

3.    *Circumstantial Evidence: Chain of Events*

The second way a plaintiff can present circumstantial evidence of access is by demonstrating a chain of events between the plaintiff's work and defendant's access to that work. *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010) *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011).

As discussed in the factual section, the record conclusively establishes that Spirit and Led Zeppelin performed at the same festival on the same day three times between 1968 and the release of *Stairway to Heaven* in 1971. The record further demonstrates that at two of these concerts, the Denver Festival and the Atlanta Festival, the two groups performed in succession. The only question, then, is whether this chain of events is sufficient circumstantial evidence to raise a genuine issue of fact about access.

Defendants contend that these three encounters, without more, are not enough for a reasonable juror to find that Led Zeppelin members had access to *Taurus*. For starters, Defendants argue, Spirit rarely played *Taurus* in its performances between 1968 and 1971 because the goal of the tour was to promote its second album by playing new songs and old hits, which did not include *Taurus*. (Ferguson Depo. 53:22-54:21; Andes Depo. 68:7-70:6; ECF No. 97.) As further evidence that *Taurus* was rarely

performed on tour, Defendants submit a set list from a February 1969 live Spirit performance, which
included thirteen songs but no mention of *Taurus*. (Anderson Decl. Ex. 20, ECF No. 97.) When asked
about the set list, Andes confirmed that it represents a "typical set list for Spirit's performances in that
time period." (Andes Depo. 103:18-24, ECF No. 97.) Even if Spirit had performed *Taurus* at any of
these festivals, Defendants maintain, none of the Led Zeppelin members ever shared a stage with or
heard any live performances by Spirit. (Page Decl. ¶¶8, 12-13; Plant Decl. ¶¶6-10; Jones Decl. ¶¶5-10,
ECF No. 97.) According to Page, while the two bands may have preformed in succession on certain
occasions, the process of dismantling and setting up equipment between acts generally took 15-20
minutes, meaning that bands would rarely spend time on stage together. (Page Decl. ¶14-15; Ferguson
Depo. 344:10-347:6, ECF No. 97.)[4]

In retort, Plaintiff argues that Spirit regularly performed *Taurus* as part of its live tour. Wolfe's
sisters testified that Spirit "played *Taurus* at all their shows" because it was Wolfe's "favorite song until
the day he died." (Andrea Wolfe Decl. ¶5-6; Janet Wolfe Decl. ¶5-7, ECF No. 118.) Ferguson testified
that "there were certain songs [Spirit] played religiously every show. '*Taurus*' was not, but it was played
often." (Ferguson Depo. 21:4-20, ECF No. 124.) He also explained that *Taurus* had its own unique role
in Spirit shows because it served as an acoustic palate cleanser amidst the predominantly electronic
music. (Ferguson Depo. 38:1-21, ECF No. 124.) Furthermore, Plaintiff submits evidence that Spirit
crossed paths with Led Zeppelin at these music festivals. Andes testified that a mutual friend briefly
introduced him and Spirit members to Led Zeppelin backstage at the Denver Festival. (Andes Depo.
105:11-108:3, ECF No. 124.) As to the Atlanta Festival, Ferguson testified that he had a "very clear
memory" of Led Zeppelin performing on the same stage right after Spirit played. (Ferguson Depo.
16:16-23, 104:3-6, ECF No. 124.) Andes also recalled meeting and conversing with Plant when Led
Zeppelin was going on stage after Spirit's set at the Atlanta festival. (Andes Depo. 124:17-124:24, ECF
No. 124.)

Beyond the interaction at the festivals, Plaintiff introduces other evidence to create a triable issue
of fact regarding access. First, to impeach Page's testimony that he "has never seen Spirit perform live,"
Plaintiff submits two interview excerpts in which Page admitted that he was a fan of Spirit and had
attended several shows. (Malofiy Decl. Exs. 3-4, ECF No. 124.) Next, Andes testified that Plant
attended a Spirit show in February 1970 in Birmingham, England and went out drinking with the Spirit
members after the concert. (Andes Depo. 111-118, ECF No. 119.) Finally, the surviving members of
Led Zeppelin admitted to performing a bass riff similar to one featured in one of Spirit's hit songs,
*Fresh Garbage*—a song that appears on the same album as *Taurus*. (Page Depo. 388-390, ECF No.
124.) While they admit to playing a similar bass riff, however, the Led Zeppelin members testified that
they heard the song from either the radio or a compilation of assorted American rock songs, not from
Spirit's album. (Page Decl. ¶17, Plant Decl. ¶13, Jones Decl. ¶¶12-13, ECF No. 97.)

Overall, Plaintiff has produced sufficient circumstantial evidence to raise a factual dispute on the
issue of access. He has presented evidence that both bands performed in succession and actually
interacted at two festivals. Moreover, Plaintiff submitted evidence that Spirit would often perform
*Taurus* because it was arguably Wolfe's favorite song. Beyond the two concerts, Plaintiff also proffers
evidence that Led Zeppelin played one of Spirit's songs that appeared on the same album as *Taurus*.
Finally, he presents impeachment evidence to counter Page's declaration that he never saw a Spirit
performance.

### C.  Substantial Similarity

---

[4] Plaintiff disputes this with testimony from Andes that changing equipment between bands would not
take a very long time because each band's material was already set up before the show, meaning that the
only work to be done was to remove the outgoing band's equipment. (Andes 90:19-91:1, ECF No. 124.)

"Although summary judgment is not highly favored on questions of substantial similarity in copyright cases, summary judgment is appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no reasonable juror could find substantial similarity of ideas and expression." *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990).

The parties submit dueling expert reports on the issue of substantial similarity. Defendants attack Plaintiff's expert reports on two bases: (1) the reports improperly consider unprotected performance elements of *Taurus*, and (2) once all the unprotected elements are stripped away, the remaining similarity is nothing more than a common descending bass line not entitled to protection.

### 1.    *Unprotected Performance Elements*

Defendants urge this Court to disregard Plaintiff's expert reports because they improperly consider unprotected performance elements in the sound recordings of *Taurus*. According to Defendants, the only copyrighted work is the musical composition, not the sounds recording, and Plaintiff's experts erred by relying on the performance elements in the sounds recordings to conclude that the two works are substantially similar.

"Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights. . . . Accordingly, the court must first determine what elements of Plaintiff's work are protected by his copyright in the musical composition, as opposed to those protected by the copyright in the sound recording, and 'filter out' the latter." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003). Courts have held that to determine substantial similarity in the context of a musical composition, only elements in the music sheets deposited with the Copyright Office—not elements in the sounds recordings—may be considered. *Williams*, 2014 WL 7877773 at *9-10; *Fahmy v. Jay Z*, No. 207CV05715, 2015 WL 5680299, at *13-14 (C.D. Cal. Sept. 24, 2015).

Plaintiff disputes that his copyright is limited to the music sheet deposited with the Copyright Office. In retort, he invokes *Three Boys Music* to argue that elements reflected in a sound recording, even if not on the deposit sheet, are to be considered by a jury. In *Three Boys Music*, a jury determined that the Michael Bolton song, *Love is a Wonderful Thing*, infringed on an eponymous song by the Isley Brothers. 212 F.3d at 480. Bolton appealed and argued that the Isley Brothers' deposit copy of sheet music varied from the sound recording, and, therefore, the trial court lacked subject matter jurisdiction. *Id.* at 486. The Ninth Circuit rejected this argument and explained, "Although the 1909 Copyright Act requires the owner to deposit a 'complete copy' of the work with the copyright office, our definition of a 'complete copy' is broad and deferential: 'Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement.'" *Id.* Plaintiff seizes on this language and contends that a deposit copy of sheet music does not constitute the entirety of a protected work; rather, additional elements, such as those embodied in a sound recording, may be considered. The Court finds this argument unavailing.

In *Three Boys Music*, the Ninth Circuit did not suggest that a copyright claimant may rely on additional elements in a sound recording to prove infringement of an underlying musical composition. Instead, the court merely reiterated the established proposition that an incomplete deposit copy of sheet music does not invalidate a copyright or strip the court of jurisdiction. The quoted language Plaintiff relies on addressed only subject matter jurisdiction—not the content protected by copyright. *Williams*, 2014 WL 7877773 at *9 (explaining that *Three Boys Music* "address[ed] only subject matter jurisdiction, not the material actually protected by the copyright."). In fact, in *Three Boys Music*, the plaintiff's expert "testified that *the deposit copy included all of the song's essential elements* such as the

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 16 of 20 |

title hook, chorus, and pitches." *Id.* at 486 (emphasis added). Ironically, then, the very case Plaintiff relies on to argue that elements beyond the deposit copy should be considered presents a scenario in which no elements outside the deposit copy were considered.[5]

In the present case, Plaintiff's only copyright claim lies in the musical composition of *Taurus*, not the sound recording. *Dowling v. United States*, 473 U.S. 207, 211, 105 n.4 (1985) ("Congress did not extend federal copyright protection to sound recordings until the Sound Recording Act of 1971 . . . and then only to sound recordings fixed after February 15, 1972."). The Court finds that Plaintiff's experts impermissibly relied on performance elements found in the sound recordings. For example, Stewart opined that *Stairway to Heaven* is substantially similar to recorded versions of *Taurus* based on common "fingerpicking style," "acoustic guitar," "classical instruments such as flute . . . strings and harpsichord," "atmospheric sustained pads," and "fretboard positioning." Similarly, Bricklin focused almost exclusively on the music production and mixing process to conclude that *Taurus* and *Stairway to Heaven* shared a common ethereal ambience created in the production process. By analyzing performance elements in the sound recording of *Taurus*, Plaintiff's experts improperly considered features beyond the scope of the musical composition—such features will be disregarded by this Court.

    2.   *Extrinsic Test*

Once all the unprotected performance elements are stripped away, the only remaining similarity is the core, repeated A-minor descending chromatic bass line structure that marks the first two minutes of each song.

"The substantial-similarity test contains an extrinsic and intrinsic component. At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). "In analyzing musical compositions under the extrinsic test, [the Ninth Circuit has] never announced a uniform set of factors to be used. . . . So long as the plaintiff can demonstrate, through expert testimony that . . . the similarity was 'substantial' and to 'protected elements' of the copyrighted work, the extrinsic test is satisfied." *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004). "[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).

Here, Plaintiff has submitted expert testimony attesting to the substantial similarity of protected elements in *Taurus* and *Stairway to Heaven*. The similarity consists of repeated A-minor descending chromatic bass lines lasting 13 seconds and separated by a bridge of either seven or eight measures. Moreover, the similarity appears in the first two minutes of each song, arguably the most recognizable and important segments of the respective works. Finally, "[n]early 80% of the pitches of the first eighteen notes match, along with their rhythms and metric placement. The harmonic setting of these 'A' sections feature the same chords during the first three measures and an unusual variation on the traditional chromatic descending bass line in the fourth measure." (Stewart Decl. ¶24, ECF No. 118.)

Defendants argue that the descending chromatic bass line is a centuries-old, common musical

---

[5] Plaintiff's reliance on *KnowledgePlex, Inc. v. Placebase, Inc.* is misplaced, as that case merely held that an incomplete deposit does not deprive the court of subject matter jurisdiction. Likewise, Plaintiff improperly relies on *Scentsy, Inc. v. B.R. Chase, LLC*, because that case addressed copyright protection under the 1976 Act. 942 F. Supp. 2d 1045, 1050 (D. Idaho 2013), *aff'd in part, rev'd in part and remanded sub nom. Scentsy, Inc. v. Harmony Brands, LLC*, 585 F. App'x 621 (9th Cir. 2014).

element not entitled to protection, and, therefore, Plaintiff has failed to satisfy the extrinsic test. The Court disagrees. While it is true that a descending chromatic four-chord progression is a common convention that abounds in the music industry, the similarities here transcend this core structure. For example, the descending bass line in both *Taurus* and *Stairway to Heaven* appears at the beginning of both songs, arguably the most recognizable and important segments. *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.") Additionally, the descending bass line is played at the same pitch, repeated twice, and separted by a short bridge in both songs. *Swirsky* 376 F.3d at 851 ("[E]ven an arrangement of a limited number of notes can garner copyright protection.").

The Court finds that Plaintiff has demonstrated "enough similar protectable expression here that the issue of substantial similarity should [proceed to the jury]." *Scentsy, Inc. v. Harmony Brands, LLC*, 585 F. App'x 621, 622 (9th Cir. 2014); *Shaw v. Lindheim*, 919 F.2d 1353, 1360 (9th Cir. 1990) ("Once a court has established that a triable question of objective similarity of expression exists, by analysis of each element of the extrinsic test, its inquiry should proceed no further. What remains is a subjective assessment of the 'concept and feel' of two works . . . a task no more suitable for a judge than for a jury.") Accordingly, the Court denies summary judgment on this ground.

## VIII.   DAMAGES

### A.   Recovery as a Beneficial Owner

Defendants argue that any potential recovery should be reduced by 50% because Plaintiff is suing as a beneficial owner based on his right to royalties under the 1967 exclusive songwriter agreement.  (Anderson Decl. Ex. 11 at ¶11, ECF No. 97.) The exclusive songwriter agreement limited Wolfe to 50% of any recovery, and, therefore, the trust is also limited to half of any damages. *Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 432 (S.D.N.Y. 2009) (explaining that recovery in a copyright case is limited to a co-owner's share of damages); *Nimmer on Copyright* § 12.03 (a joint owner can sue only "for his particular share of damages or profits").

Plaintiff has not opposed this argument in his opposition brief. Therefore, the Court grants summary judgment on this issue and holds that Plaintiff, as a beneficial owner, is entitled to only 50% of the recovery.

### B.   Laches as a Bar to Profits

Defendants argue that four decades of delay have severely prejudiced them in the form of lost documents, fading memories, and deceased witnesses. (Page Decl. ¶21-22, ECF No. 97.) They also claim that they did not know of the claim until shortly before it was filed in 2014, and, as a result, they could not have filed an action for declaratory relief. Therefore, Defendants maintain, laches operates to bar any award of profits.

In *Petrella*, the Supreme Court held that if a plaintiff ultimately prevails on a copyright claim, a district court may consider the plaintiff's delay in commencing suit when "determining appropriate injunctive relief and assessing profits." 134 S. Ct. at 1978. The Court cautioned, however, that courts should closely examine the defendant's alleged reliance on the plaintiff's delay and take into account

> [defendant's] early knowledge of [plaintiff's] claims, the
> protection [defendant] might have achieved through pursuit
> of a declaratory judgment action, the extent to which
> [defendant's] investment was protected by the separate-

accrual rule, the court's authority to order injunctive relief
"on such terms as it may deem reasonable," § 502(a), and
any other considerations that would justify adjusting
injunctive relief or profits.

*Id.* at 1978-79.

Defendants' request is overbroad in light of the passage recited above. The Supreme Court did
not hold that laches operates to categorically bar an award of profits; rather, it explained that an undue
delay in bringing suit may justify adjusting profits. While this Court is sympathetic to Defendants'
reliance on the 40-year delay, the circumstances do not merit an outright exclusion of all profits. Instead,
if there is ultimately a finding of liability, Defendants may renew their request to reduce profits in an
amount commensurate with the delay, and the Court will consider the issue again at that time.

### C.    Extraterritorial Profits

Finally, Defendants contend that Plaintiff's damages should not extend to profits obtained from
the exploitation of *Stairway to Heaven* outside the United States because the Copyright Act has no
extraterritorial reach.

The Ninth Circuit has held that "infringing actions that take place entirely outside the United
States are not actionable" under the Copyright Act. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24
F.3d 1088, 1091 (9th Cir. 1994). An exception exists, however, allowing a plaintiff "to recover damages
flowing from exploitation abroad of the domestic acts of infringement committed by defendants." *Los
Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998).

Defendants contend that the extraterritorial principle applies to limit Plaintiff's profits because
the undisputed evidence demonstrates that *Stairway to Heaven* was created entirely outside the United
States, in London, England. (Page Decl. ¶4; Plant Decl. ¶4; Jones Decl. ¶3, ECF No. 97.) Plaintiff rebuts
with Page's testimony that an early iteration of the song was actually mixed at Sunset Studios in Los
Angeles, California. (Page Depo. 140-143, ECF No. 124.)

Plaintiff has proffered evidence to create a triable issue of fact as to whether extraterritorial
profits are recoverable. Accordingly, the Court denies summary judgment on this issue.

### IX.    REMAINING CLAIMS

### A.    Claims as to John Paul Jones and Hype

Defendants argue that summary judgment is proper as to John Paul Jones, Super Hype
Publishing, Inc., and Warner Music Group Corp. because none of these parties performed or distributed
*Stairway to Heaven* within the three years preceding the instant action. In fact, in the 26(f) report,
Plaintiff conceded that the three-year statute of limitations "precludes relief as to any alleged
infringements prior to May 31, 2011." Plaintiff has not opposed this argument in the opposition brief.
Therefore, the Court grants summary judgment as to John Paul Jones, Super Hype Publishing, Inc., and
Warner Music Group Corp.

### B.    Right of Attribution Claim

Defendants also seek summary judgment on Plaintiff's second claim, labeled "Right of
Attribution—Equitable Relief—Falsification of Rock n' Roll History."

The Court grants summary judgment on this claim. Plaintiff presents an inventive—yet legally baseless—claim creatively termed, "Falsification of Rock n' Roll History." The Court has diligently searched but is unable to locate any cognizable claim to support this theory of liability.

Plaintiff's Right of Attribution also fails, but for different reasons. First, the right of attribution, which arises under the Lanham Act, is limited to producers of actual products, not "to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S. Ct. 2041, 2050, 156 L. Ed. 2d 18 (2003). Second, "[t]he law is clear with respect to the right of attribution under Copyright Act— only works of visual arts may enjoy the right of attribution." *Lahiri v. Universal Music & Video Distribution Corp.*, No. CV 02-8330, 2006 WL 6030551, at *4 (C.D. Cal. Mar. 24, 2006). Third, Plaintiff has not opposed Defendants' motion for partial summary judgement on this claim.

Accordingly, the Court grants summary judgment on the Right of Attribution claim.

## X.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Right of Attribution claim and as to all claims against John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp. The Court also **GRANTS** Defendants' request to limit Plaintiff's damages to 50% of the recovery (his share as a beneficial owner).

The Court **DENIES** Defendants' Motion for Summary Judgment as to the Copyright Infringement claim against the remaining Defendants.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    _____