# United States Court of Appeals
# For the Ninth Circuit

C.A. 16-56057

---

### Skidmore et al.

*Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Plaintiff-Appellant*

v.

### Led Zeppelin et al.

*Defendants-Appellees*

---

# Plaintiff-Appellant Michael Skidmore's
# Excerpts of the Record
# Volume VIII of XI

---

(Music copyright infringement, on appeal from the final Order dated June 23, 2016 of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California.  The case was docketed in the Central District at 15-cv-03462)

---

### Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyers for Appellant Skidmore*

## EXCERPTS OF THE RECORD: VOLUME VIII of XI
### (1837 – 2126)

04/25/2016    Pre-Trial Hearing Transcript (*Doc. No. 205*) ..................................................... 1837

04/25/2016    Amended Ruling on Def. MIL No. 4 (*Doc. No. 203*) ....................................... 1865

04/25/2016    Pre-Trial Hearing Orders (*Doc. No. 202*) ......................................................... 1866

04/24/2016    Notice of Lodging of Pre-Trial Conference Order (*Doc. No. 200*) .................. 1868
(Exhibit List not Included)

04/23/2016    Excerpts of Plaintiff's Disputed Jury Instructions (*Doc. No. 197*).................... 1898

04/22/2016    Excerpts of Defendants' Disputed Jury Instructions (*Doc. No. 196*) .............. 1983

04/21/2016    Def. Reply in Support of Def. MIL No. 4 (*Doc. No. 184*) ................................ 2063

04/21/2016    Def. Reply in Support of Def. MIL No. 3 (*Doc. No. 183*) ................................ 2072

04/20/2016    Plaintiff Short Expert Narratives and Qualifications (*Doc. No. 180*)............... 2084

04/17/2016    Declaration of Erik Johnson Opposing Def. MILs Nos. 3-4 (*Doc. No. 176*) ... 2093

04/15/2016    Plaintiff Response Opposing Def. MIL No. 4 (*Doc. No. 170*) ........................ 2101

              Declaration of Dr. Stewart Opposing MILs Nos. 3 & 4 (Doc. No. 171-1) ...... 2108

04/15/2016    Plaintiff Response Opposing Def. MIL No. 3 (*Doc. No. 169*) ........................ 2114

1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4

5  MICHAEL SKIDMORE, as Trustee for the: )
   RANDY CRAIG WOLFE TRUST,              )
6                                        )
                      Plaintiff,         )
7                                        )
        vs.                              )  CASE NO.
8                                        )  CV 15-3462-RGK(AGRx)
                                         )
9  LED ZEPPELIN, et al.,                 )
                                         )
10                    Defendants.        )
   _____)

11

12

13              REPORTER'S TRANSCRIPT OF
                  PRETRIAL CONFERENCE
14             MONDAY, APRIL 25, 2016
                      9:08 A.M.
15             LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22  _____

23        SHAYNA MONTGOMERY, CSR, RPR, CRR
           FEDERAL OFFICIAL COURT REPORTER
24             312 NORTH SPRING STREET
           LOS ANGELES, CALIFORNIA 90012
25                (213) 894-2665

UNITED STATES DISTRICT COURT

```
 1                        APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4        FRANCIS ALEXANDER, LLC
          BY:  FRANCIS MALOFIY
 5             Attorney at Law
          280 North Providence Road, Suite 1
 6        Media, Pennsylvania 19063
          (215) 500-1000
 7

 8    FOR THE PLAINTIFF:

 9        KULIK GOTTESMAN & SIEGEL LLP
          BY:  GLEN L. KULIK
10             Attorney at Law
          15303 Ventura Boulevard, Suite 1400
11        Sherman Oaks, California 91403
          (310) 557-9200
12

13    FOR THE DEFENDANTS WARNER/CHAPELL MUSIC, RHINO ENTERTAINMENT
      COMPANY, ATLANTIC RECORDING CORPORATION, ROBERT ANTHONY PLANT
14    AND JAMES PATRICK PAGE:

15        LAW OFFICES OF PETER J. ANDERSON PC
          BY:  PETER J. ANDERSON
16             Attorney at Law
          100 Wilshire Boulevard, Suite 2010
17        Santa Monica, California 90401
          (310) 260-6030
18

19    FOR THE DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT AND
      JOHN PAUL JONES:
20
          PHILLIPS NIZER LLP
21        BY:  HELENE M. FREEMAN
               Attorney at Law
22        666 Fifth Avenue
          New York, New York 10103
23        (212) 977-9700

24

25
```

UNITED STATES DISTRICT COURT

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, APRIL 25, 2016

 2                          9:08 A.M.

 3                           --oOo--

 4              THE COURTROOM DEPUTY:  Calling calendar item number

 5    five, case number Civil 15-3462-RGK, Michael Skidmore vs.

 6    Led Zeppelin, et al.

 7         Counsel, please come forward and state your appearances.

 8              MR. ANDERSON:  Good morning, Your Honor.  Peter

 9    Anderson for defendants Warner/Chapell Music, Rhino

10    Entertainment Company, Atlantic Recording Corporation,

11    Mr. Plant and Mr. Page, and with me is Ms. Freeman.

12              THE COURT:  Okay.

13              MS. FREEMAN:  Helene Freeman, co-counsel for

14    defendants James Patrick Page, Robert Anthony Plant and

15    John Paul Jones.

16              THE COURT:  Okay.  Thank you, counsel.

17              MR. MALOFIY:  May it please the Court, attorney

18    Francis Alexander Malofiy on behalf of plaintiff Michael

19    Skidmore as trustee for the Randy Craig Wolfe Trust, who is

20    here today, and also my co-counsel.

21              MR. KULIK:  Good morning, Your Honor.  I'm Glen

22    Kulik, co-counsel for the plaintiff.

23              THE COURT:  Okay.  Thank you, counsel.

24         Let's talk a little bit about -- why don't you have a

25    seat, we'll be a few minutes.
```

4

1        Let's talk about pretrial.  This is to help you out to

2    decide -- or to understand what's going to happen when you come

3    in in a couple of weeks as far as the trial is concerned.

4        Let me, first of all, start by talking to you about --

5    well, let's get the tough part over first, the part the

6    attorneys never like, and that is, is we set time limits here.

7    I set them off witness statements that -- the joint witness

8    list you've submitted as to what they'll be testifying to and

9    what's significant and what the issues are, and we adhere by

10   those time limits.

11       In this case, for instance, although you've had numerous

12   witnesses, many of them are either repetitive or not necessary.

13   In looking at it -- and let me just give you an example.

14   First, it's on the issue of creation of the song.  We have one,

15   two, three, four, five, six, seven, eight, nine, ten, 11, 12 --

16   12 witnesses on that.  As far as I'm concerned, that's one

17   issue, one witness as far as I'm concerned.  If you want to

18   call two, three, four, that's fine.  You can call as many

19   witnesses as you want, but you're going to be within a time

20   frame.  You know, we have the same thing on experts on

21   similarity.  We've got four, five experts on similarity.  You

22   can call five if you want, or you can call one if you want.

23   That's up to you.  How you put the case on is up to you.

24       But as far as the issues that are involved in this case,

25   it's a much shorter case than you've anticipated.  When you

UNITED STATES DISTRICT COURT

1    first came in here, you said 15 days.  I told you at that time

2    probably about four or five days.  I even think four or five

3    days may be a little long in this case.  You have basically

4    four issues or areas that you're going to be going into.

5    You're going to be going into whether or not there is a valid

6    copyright on it by the plaintiff.  Number two, you're going to

7    be looking at whether or not there's similarities in the two.

8    If there are, then you're going to be looking at access.  If

9    there is access, similarities and copyright, then you're

10   looking at damages.  You're looking at four areas.

11        So even if you spend a couple of hours on copyright and a

12   couple of hours on access, three or four hours on similarities

13   between the songs, couple hours in damages, you're looking at

14   about ten hours on this case.  It should be able to be

15   presented in ten hours without any problem.  I'm going to

16   double that.  I'm going to give ten hours per side.  So each

17   side will get up to ten hours to try their case.  Now -- and I

18   may or may not review that and revise that on the trial date,

19   but that's what we can count on now, ten hours a side.

20        Let me talk to you about the ten hours.  That comes from

21   any time you're asking questions or any time you're

22   cross-examining, any time you're talking, when there's

23   witnesses on the stand, that's part of the ten hours.  It does

24   not include opening statement.  It does not include closing

25   argument.  I'll give you time limits on those when we get --

```
 1    you know, on the day of the trial.  But keep in mind I will

 2    keep a running tally, kind of a time clock thing, as to

 3    those -- as to your time.  I'll give it to you in terms of

 4    minutes rather than hours.  For instance, what, that's 600

 5    minutes for ten hours, and I'll let you know each day what

 6    you're down to, how much time you have left.

 7         If you use up those ten hours or whatever those time

 8    limits are and the other side hasn't, keep in mind that as

 9    they're asking questions you're not going to be able to

10    cross-examine.  Once you've used your time, you're out.  That's

11    it.  So be very careful that you plan your case accordingly.

12    Make sure that you use your time accordingly.

13         Now, keep in mind nobody's infallible, even this Court,

14    and so sometimes we get that wrong.  And if at the end of the

15    trial or at the end of your time limits I'm convinced that

16    you've used your time efficiently and effectively and the

17    interest of justice calls for more time, I'll give it to you.

18    I'll give you more time if I think you -- caveat, in 14 years

19    since I've been here that's only happened once, so don't count

20    on it, but I will -- I will take that into consideration.

21         So keep in mind that ten hours and plan accordingly.  I

22    know it takes more preparation.  There used to be a great

23    commentator on TV that used to say, "It takes me take me four

24    or five hours to" -- or, excuse me, "It takes me half hour to

25    prepare an hour speech.  It takes me three hours to prepare a
```

```
 1   ten minute speech" because you have to focus, you have to
 2   figure what exactly has to get in there, et cetera.  So it's
 3   going to be more preparation on you, but it's going to be a
 4   much cleaner case.  It's going to be much more focused.  It's
 5   going to go to the jury without red herrings and things that
 6   are going to confuse them, and it'll be a better trial on
 7   everyone's behalf.
 8        Okay.  Let me talk to you about motions in limine.  On
 9   motions in limine, let me just give you tentatives at this
10   time, and I want you to keep in mind something on motions in
11   limine.  As we know, they're really evidentiary rulings by the
12   Court, and they're tentative evidentiary rulings.  Basically,
13   what it's saying is no, you can't get into that unless the
14   Court changes its mind.  And the reason I tell you that is that
15   during the trial, depending on what evidence comes in,
16   something that we may have said was excluded may become
17   relevant at one time and then you bring it in.
18        So these are tentative rulings that the Court's going to
19   be issuing on these, and this is going to be tentative,
20   tentative rulings because I'm going to -- on the day of the
21   trial, I'm going to most probably say the same reason I gave
22   you today, hold.  But between now and then, I'm going to be
23   looking at a few things and some of them may change, so the
24   motions in limine, the final ruling on the motions in limine
25   will be on the day of trial.
```

1    But let me give you -- so that you can prepare the case,

2    let me tell you what the tentatives on this are.  As to the

3    defendants' motions in limine -- and you know what your motions

4    in limine are, so I'm just going to go through by number.  Some

5    of them I'll stop and talk to you about.  If you're confused as

6    to what that motion in limine is, stop me and I'll be happy to

7    explain to you which motion in limine it is.

8        But, for instance, on the defense, on number one

9    concerning Randy Wolfe's statement, that will be granted.

10       Number two concerning the newspaper articles and books, as

11   to the books that'll probably be granted.  As to pages,

12   statements that were made in magazines, that may very well be

13   relevant as far as accessibility, as far as whether or not they

14   saw people talking to each other, et cetera.

15       Number three, motions to exclude the recordings, again

16   this is about composition and protected areas under the

17   composition, not the recording, so that would be granted.

18       Number four, motions to exclude testimony of exhibits

19   of -- excuse me, motions to exclude the testimony and exhibits

20   of the plaintiff's experts, that's a little difficult to

21   explain, but the expert testimony that is based on the

22   composition itself incoming, any expert testimony that's based

23   on the musical composition, the musical performance, would not

24   be admissible.

25       Number five, motions to exclude other claims against

```
 1    Led Zeppelin will be granted.

 2         Motions to exclude reports from the historians would be

 3    granted.

 4         Number seven, motions to exclude levels of wealth will be

 5    granted.

 6         Number eight, motions to exclude evidence regarding

 7    charitable goals of the Trust will be granted.

 8         Number nine, motions to exclude reference to

 9    extraterritorial revenues and revenues earned outside of the

10    limitation period.  As to province earned outside of the

11    limitation period, that will be granted.  As to territorial

12    limits, that would be denied.

13         Number ten, I'm going to have to give you a little bit

14    more reading on this when you come in for trial.  These are the

15    motions to exclude witnesses that have not been disclosed.  The

16    fact that you put a whole bunch of witnesses' names into

17    hundreds of pages of discovery doesn't necessarily give you

18    notice that these may be potential witnesses.  So the Court's

19    looking at it as whether or not you are on notice that these

20    may be witnesses or not.  Some of them, it looks like, are

21    going to be excluded; some of them may not be.  For instance,

22    one that may not be is Wolfe because I think both sides

23    understand that Wolfe was, you know, a participant in Spirit,

24    et cetera, and may be called as a witness, but I'll give you

25    that on the day of trial more explicitly.
```

```
 1          Number 12 as to alcohol abuse, that will be granted.
 2          Number 13 as to insurance or indemnity agreement, that
 3   will be granted.
 4          Number 14 as to the actual complaint going in front of
 5   jury, that will not happen.  They'll be told what the causes of
 6   action are, but the actual complaint will not be in front of
 7   them.
 8          As to the plaintiff's motions in limine as to the validity
 9   or legitimacy of the Trust, that will be granted.  As to
10   evidence concerning the son of Wolfe and whether or not he owns
11   a copyright or not, that will be denied.  And as to the motion
12   to exclude any experts on damages by the defense, that, I'm
13   assuming, is going to be in rebuttal.  So it'll be denied as
14   far as rebuttal is concerned.
15          Okay.  Now that's on the motions in limine.  Let me talk
16   to you a little bit about what you can expect when you come in
17   for trial.  First of all, I don't know if you have it or not,
18   you'll have to tell me.  Do you have a short statement of the
19   case already filed with the court?
20               MR. ANDERSON:  Not yet.
21               MR. MALOFIY:  No, we do not, Your Honor.
22               THE COURT:  Okay.  What I'd like is -- when I say a
23   short statement, the operative word there is "short."  Maybe a
24   paragraph just to tell the jury what it's about, you know,
25   what -- this is a copyright-type case involving these two
```

**UNITED STATES DISTRICT COURT**

 1    songs, et cetera.  But I don't want it argumentative or to go

 2    longer than maybe a paragraph, just something short we can read

 3    to them.

 4        I also want every day an order of the witnesses that you

 5    intend to call that day, and make it for the next maybe two

 6    days so I know when the witnesses are going to be called and

 7    what order they'll be called.  I've got a list of the

 8    witnesses, but I don't know what order you're going to be

 9    calling them in.

10        Number three, voir dire, the Court conducts the voir dire

11    in cases in this court.  We will be bringing in -- well, first

12    of all we're going to pick a jury of eight so we have two

13    extras in case there's any problem.  That means I'm going to

14    give you four peremptory challenges on each side.  We'll be

15    bringing in the jury.  We'll sit 14 up -- it's a six-pack-type

16    thing.  We'll be sitting 14 up there.  The Court will voir dire

17    them.  After I voir dire them -- and by the way, any questions

18    that you would like to ask on voir dire, if you've not already

19    submitted them, you can submit them and the Court will consider

20    those and incorporate them to the extent I feel it's

21    appropriate during my voir dire.

22        The 14 will sit there.  We'll go through the voir dire.

23    After I've done that, we'll meet over here at the side bench,

24    counsel and myself, and we'll go through your challenges,

25    challenges for cause, any of the 14 that we have sat in the

12

```
 1   box.  Peremptory challenges only as to the first eight.  No
 2   reason to exercise a peremptory challenge before one of the
 3   eight, you know, it doesn't make much sense.  Remember as you
 4   go through that on your peremptory challenges, if you pass on a
 5   peremptory challenge, you do not lose it, which means that we
 6   may end up in a situation where somebody has two or three
 7   peremptory challenges left and the other side doesn't have any.
 8   That's fine, but you remember that if you pass and the other
 9   side passes, you've got your jury.  You can't go back and
10   exercise and begin if both sides pass, but you don't lose it if
11   you pass, is what I'm saying.
12         When we finish the voir dire over here -- excuse me, the
13   challenges over here, I'll take the bench, and I'll excuse.
14   When we get to seven jurors being excused, I'll get -- come
15   back, take the bench, and I'll excuse the seven jurors by just
16   calling their number and excusing them.  They will not know who
17   excused them or why they were excused, whether it's for cause
18   or peremptory or whatever.  We'll just excuse those seven.
19   Then we'll bring another seven in.  We'll go through the same
20   process again, go through the same process as far as challenges
21   until we get a jury of eight that we can sit.
22         I don't know if you have any questions on that process
23   that I've just told you as far as voir dire.
24               MR. ANDERSON:  Not on voir dire, Your Honor.  I do
25   have --
```

13

```
 1              THE COURT:  Well, we'll get to other matters in a
 2    second.  I just want to make sure voir dire, but --
 3              MR. ANDERSON:  Thank you.
 4              THE COURT:  Save your question, I'll address it.  I
 5    just want to -- on voir dire, any other questions on voir dire?
 6    Okay.
 7         If not, keep in mind something interesting.  That bench
 8    conference we have over there will be the only bench conference
 9    that we'll ever have during the trial.  I don't have bench
10    conferences during a trial.  I'll talk to you maybe a little
11    bit later on it, but if you have objections and you want to be
12    heard on the objections, you bet, but you'll be heard at the
13    next time we make a break.  I'll be ruling on the objection.
14    We'll proceed.  Next time we make a break, you put it on the
15    record and we can either correct it if it has to be corrected
16    or at least preserve the record for later, but we do not break
17    in front of jury for bench conferences.
18         A couple of the procedural things that I just wanted to
19    address -- every court does it a little differently -- in here,
20    any time you make an objection please stand so I know you're
21    making an objection.  Sometimes if you don't stand and, you
22    know, in a very low voice you say, "Objection," I won't even
23    hear it.  So, you know, stand and let me know you're making the
24    objection.  Do not argue objections in court.  You can tell us
25    what the objection is.  "Objection, hearsay."  That's it.  We
```

14

1    do not argue in front of the jury as to what the objection is,

2    and the other side can say "Not offered for the truth of the

3    matter."  That's fine, but we don't argue further than that.

4        Any time you present evidence to this Court always present

5    it through the clerk.  Never approach a witness directly,

6    always through the clerk and give it to the clerk and she'll

7    take it to the witness.  You know, I don't think it has to be

8    said because I think, you know, we're pretty professional here,

9    but never refer to a witness by first name.  Everybody has the

10   dignity in this court by being referred to by their last name.

11       If -- and this is just to run the case smoothly -- if

12   somebody says, "I want to introduce Exhibit 1 or whatever it is

13   into evidence," I will always wait about three or four seconds,

14   and if I don't hear an objection I'll probably say "Received."

15   The reason I say that is don't feel obligated to get up and

16   constantly say "No objection."  You can if you want, but you

17   don't have to say no objection on it.  If there's no objection

18   within three or four seconds, I'm assuming there's not going to

19   be an objection.

20       When you speak, always speak -- with the exception of

21   making the objection where you could stand where you are --

22   when you speak, always speak from the podium or the lectern,

23   whichever one you want to call it here, because everything has

24   to be on the record.  I've got -- I need you in front of the

25   microphone, and we don't -- like in, you know, some other

**UNITED STATES DISTRICT COURT**

15

```
 1   courts or particularly in state courts you have wandering
 2   around, talking in front of there, you don't here.  You speak
 3   from the lectern and only from the lectern.
 4        If you introduce evidence or exhibits that are voluminous,
 5   only introduce those pages that have been referred to in the
 6   testimony.  If you have a 100-page document and you only refer
 7   to three pages, only introduce those three pages, not the
 8   entire voluminous document -- document on it.  You will find
 9   out that almost anything that the attorneys agree on, the
10   Court -- as long as it doesn't affect the jury and the time
11   limits, the Court will go along with you.  If you want to call
12   witnesses out of order, if you want to do this or that, I'm
13   very big on the attorneys' cooperation in the case and what you
14   decide to do, and if you both agree to do it, I almost always
15   will ride with it.  So before you bring anything to the Court's
16   attention, I really want you to -- the two sides to talk about
17   it, see if you can agree on it.  If you can't, bring it to my
18   attention.  I'll be happy to make the call on it.
19        The one area that somebody asked me the other day about,
20   is there anything that we have to know about the Court's
21   idiosyncrasies, you know, really irritating the Court, and the
22   answer is yeah.  Not a whole lot, but the biggest thing is if
23   there's any lack of civility.  And I don't expect that here,
24   but if there's any lack of civility at all, I wouldn't want to
25   be in your shoes, is all I can say.  I want this jury when they
```

**UNITED STATES DISTRICT COURT**

16

```
 1   leave here to be under the impression that both sides are very
 2   professional and both sides respect each other as attorneys and
 3   as lawyers and as officers of the court.
 4       I don't care what you do in the alleys behind court after
 5   session when we're not in session, but when you're in court,
 6   each side is going to show utmost respect to each other.  If
 7   you don't, the Court will come down heavily on you as far as
 8   sanctions, and even sometimes if you don't follow the court
 9   order or you're causing troubles in court, many times it will
10   be to the point where I will correct you and admonish you in
11   front of the jury, and you don't want that to happen.  You
12   know, nobody wants to be admonished in front of the jury.  It
13   looks bad.  There's no reason for that, I don't expect that in
14   this case, but I just wanted to give you a heads up so that
15   nobody's blindsided on it, that civility is a real big thing in
16   this court.
17       Let's see.  Time, let me talk to you a little bit about
18   time and -- I haven't forgotten you, I'm going to get to your
19   question, counsel, in just a second.  Time.  When you come on
20   in the first day you'll come in at nine o'clock, we'll do some
21   logistical things, get things wrapped up.  At quarter of 10:00,
22   we'll have the jury down here.  We'll pick the jury at quarter
23   of 10:00 and proceed at that time.  The first day, because
24   we're starting a little bit late that way, we'll have to adjust
25   depending on voir dire and everything else.
```

**UNITED STATES DISTRICT COURT**

 1    Now, the second and remaining days of the jury trial will
 2  always be on a schedule, and it'll be from 8:30 in the morning
 3  until 11:30. We'll take a break for lunch until 1:00. We'll
 4  come back at 1:00 and go until 4:00. That's a three-hour
 5  session in the morning, three-hour session in the afternoon.
 6  We'll give you a 15-minute break in there to take care of
 7  needs, et cetera, but you can set your watch by that. At 8:30
 8  we're going to be starting, and the jurors will know this too,
 9  you know, if somebody's missing, even a juror, we'll probably
10  sit here with everyone in court waiting as that person walks
11  in, which will for sure be embarrassing. We'll start right at
12  8:30.
13    Keep in mind that it's just as important to end on time as
14  it is to start on time. At four o'clock, if you're in the
15  middle of a question, I'll probably say, "Remember that
16  question. You can repeat it tomorrow morning, but you're not
17  going to ask it now." Four o'clock we break. Jurors who we
18  call in -- you know, and it's never comfortable for them, and
19  they've got families that work here. They're entitled to know
20  when they're free and when they're not. They're going to know
21  that at four o'clock they're going to be free, so if they have
22  somebody picking them up, if they have to do some obligation
23  after court, that they can count on that because they will be
24  through at four o'clock, and they can do whatever they want.
25  And, by the way, the same is true for lunch. 11:30 we'll stop;

18

```
 1  at one o'clock we'll start.  So you can almost set your clock
 2  by that.
 3      Now, interesting thing, what happens if you get to quarter
 4  of 4:00 and you've run out of witnesses, and you say, Would you
 5  mind if we end a little bit early rather than late?  Would you
 6  mind if we ended quarter of 4:00?  The answer is no, I don't
 7  mind if you end early, but that 15 minutes is going to come off
 8  your time, so -- just as if you're questioning a witness.  So
 9  you want to make sure you always have backup witnesses so that
10  that doesn't happen.
11      Well, counsel, you know, I've been talking a lot here.
12  I've been going kind of fast, and I don't want to bore you all.
13  You've been in trials before.
14      So let me ask you this:  What questions might you have at
15  this time?  And you said you had one.
16          MR. ANDERSON:  Yes, Your Honor, thank you.
17      On the Motion in Limine Number 3, we, of course,
18  appreciate the Court's ruling that the evidence and the experts
19  will be confined to the transcriptions.  Our concern is
20  several.  One is none of the plaintiff's experts have ever
21  issued --
22          THE COURT:  Counsel, let me help you out.  The
23  motions in limine were briefed fully by both sides.  The
24  Court's made rulings on them.  I'm not opening it up for
25  discussion at this time.  If you have something you want me to
```

**UNITED STATES DISTRICT COURT**

19

```
1    consider that you haven't put in your moving papers, go ahead
2    and submit it in the next day or two.  I'll look at it again.
3    As I said, these are tentative until day of trial.
4              MR. ANDERSON:  Okay, but, Your Honor, my question is
5    whether plaintiff can be required at this point to provide the
6    Rule 26(f) -- the 26 reports for the experts that were never
7    provided.  And -- so is Your Honor considering that we'll
8    proceed to trial without either 26 -- Rule 26 reports from
9    plaintiff's experts on the transcription and depositions of
10   those experts?
11             THE COURT:  The general rule applies, and that is if
12   you have not followed the rules and it's not properly
13   admissible, it's not going to come in, you know.
14             MR. ANDERSON:  That's fine.  Thank you, Your Honor.
15             THE COURT:  Yeah.
16             MR. ANDERSON:  Thank you for the clarification.
17             THE COURT:  Oh, sure.
18             MR. ANDERSON:  I may have misheard, but I think on
19   in Limine Number 10, which seeks the exclusion of Mr. Knight,
20   Mr. Lee and -- both Mr. Lees and others, I believe I heard you
21   refer to Mr. Wolfe as a witness.
22             THE COURT:  Oh, I'm sorry.  No, I'm sorry.
23   Mr. Knight I was referring to.
24             MR. ANDERSON:  Okay.
25             THE COURT:  I misspoke.
```

**UNITED STATES DISTRICT COURT**

20

```
 1              MR. ANDERSON:  Thank you, Your Honor.  And --
 2              THE COURT:  Mr. Wolfe would be tough to get in as a
 3    witness.
 4              MR. ANDERSON:  Yes, we tried, Your Honor, but
 5    weren't able to pull that one off.  And then the only other
 6    thing I supposed I should repeat the request for a Daubert
 7    hearing if any of the experts that plaintiff has identified do
 8    get past the Rule 26 issue.
 9              THE COURT:  Well, again, anybody in a case could
10    file any motions they wish to file.  If you want to make them,
11    that's fine, make those motions.  The Court will determine,
12    number one, whether or not they're timely and should be
13    addressed, or we'll rule on them.  So I'm not foreclosing you
14    from making any motions you want.
15              MR. ANDERSON:  Thank you very much, Your Honor.
16              THE COURT:  Counsel, anything for you?
17              MR. MALOFIY:  Yes, Your Honor.
18         May it please the Court, couple questions to address with
19    the Court.  One issue is that in this case, defendants had
20    agreed to personal jurisdiction of this court rather than the
21    court of Philadelphia.  It was transferred from the Eastern
22    District of Philadelphia to this court, and now defendants are
23    refusing to appear in this court in the claims against them.
24    Plaintiff intended to, at all times, bring them in plaintiff's
25    case-in-chief as if on cross, and defendants are telling me,
```

**UNITED STATES DISTRICT COURT**

1    defense counsel, that they're outside the power of this court

2    and they won't appear.  If that's the case, plaintiff would be

3    asking for, at the very least, a negative inference or default

4    if they're not going to appear in this court.

5              THE COURT:  Nothing has to be to argued.  He's just

6    saying that that's what he's going to do.

7              MR. ANDERSON:  Thank you, Your Honor.

8              THE COURT:  Anything else?  If you're asking for

9    rulings today, counsel, anything you want, put it in writing

10   and I'll rule on it, and those are things that should be

11   addressed before court because they may not be timely.  So

12   there -- and I appreciate you letting everybody know, myself

13   and counsel know, that this may be something you'll be raising.

14             MR. MALOFIY:  It is an issue also because in

15   preparation for the case --

16             THE COURT:  Okay.

17             MR. MALOFIY:  -- and to be conscience of the Court's

18   calendar, the witnesses -- calendaring of the witnesses as

19   well, if we're going to be using designations, we need to know

20   if they're going to appear.  And if they're not going to

21   appear, we're going to spend quite a bit of time chopping up

22   the videos for time of trial, and that's a concern that we

23   have.  I wanted to raise it with the Court because it deals

24   with calendaring and it deals with scheduling.  That's just

25   something I wanted to make the Court aware of.

**UNITED STATES DISTRICT COURT**

22

```
 1              THE COURT:  I appreciate that, and go ahead and put
 2    it in writing.  I appreciate that, I'm just not going to be
 3    ruling on anything today on it.
 4              MR. MALOFIY:  All right.  Understood.  Thank you,
 5    Your Honor.
 6              THE COURT:  Any time any issue comes up, I want to
 7    make sure that it's in writing in front of the Court and that
 8    the other side has an opportunity to respond to it, and then
 9    I'll make the writing.  A lot of people -- or the ruling.  A
10    lot of people like to bring up things and have them done right
11    here in court, and that's not fair to either side.  So I always
12    want it in writing, and we'll address it.
13              MR. MALOFIY:  Thank you, Your Honor.
14              THE COURT:  But thank you for notifying us.  It's
15    always better to let us know what your plans are.
16              MR. MALOFIY:  Another issue is there was a witness,
17    a Mike Ware, who was actually at the concert in the UK and was
18    at the front row and has a clear and distinct memory of seeing
19    Robert Plant in the front row watching the Spirit show.  Now,
20    he has Parkinson's and he doesn't have a passport, but he said
21    -- and we just found out about him, I believe in the last week,
22    and we disclosed it immediately to the other side.
23        He asked -- he said he would like to testify, but he would
24    be -- if it was possible, to do it telephonically or a video
25    conference or even schedule a deposition, fly out there and a
```

**UNITED STATES DISTRICT COURT**

**01858**

23

```
 1    take a brief deposition of him to be used in this case before
 2    trial.
 3              THE COURT:  Okay.  Well, see what you can work out
 4    with counsel.  If not, make the motion, I'll be happy to rule
 5    on it.
 6              MR. MALOFIY:  Thank you, Your Honor.
 7       Next issue, I believe you had said that each side gets ten
 8    hours, and I wasn't sure if that was in our case-in-chief or --
 9    in our case-in-chief and also for cross-examination.
10              THE COURT:  Any time any testimony is being given.
11              MR. MALOFIY:  Thank you, Your Honor.
12              THE COURT:  It does not include opening statement or
13    closing argument.
14              MR. MALOFIY:  Understood.  Is there any time
15    limitation on the opening statement or closing argument?
16              THE COURT:  Oh, yeah, there will be, but I'll talk
17    to you about it.  What is it normally?  I can tell you right
18    now.  It's normally about a half hour, 45 minutes for opening
19    statement, but I'll tell you on the day of trial for sure.
20              MR. MALOFIY:  All right.  One --
21              THE COURT:  Many times opening statement can be
22    done -- you know, it depends on how -- how complicated the case
23    is, and one of the things everyone knows is you can make a case
24    as complicated as you want or as streamline as you want.  But
25    we'll decide -- I would say probably half hour, in that area.
```

**UNITED STATES DISTRICT COURT**

24

1    Okay?

2              MR. MALOFIY:  One other issue as it relates to the

3    trial technology, my understanding is -- and from viewing the

4    room, it has monitors and other technology here.  As far as the

5    audio exhibits we intend to play at time of trial, it uses a

6    special program, Pro Tools program, which we would require two

7    laptops.  It's my understanding that your rules only allow one

8    laptop for a trial tech, and my request of this Court is would

9    this Court allow, because this is a case that is very much

10   focused on the audio and things relating to the case, if we

11   could have an additional laptop with a trial audio tech to run

12   that.

13             THE COURT:  Yeah, I may very well consider that, but

14   put it in writing what you want.  If you want an exception to

15   the rules, just let me know.

16             MR. MALOFIY:  Last two things is would we be

17   permitted to bring high fidelity speakers into the courtroom?

18             THE COURT:  Probably not.

19             MR. MALOFIY:  Okay.  As far as --

20             THE COURT:  Let me make sure, just the value of the

21   idea that -- and some cases come in and they say, Well we want

22   the courtroom for five days.  Other things we may be doing to

23   the courtroom, that's why -- that's why when boxes of exhibits

24   are brought in, sometimes the attorneys are upset that they

25   have to take all those boxes home at night.  They say, Well,

25

1   can't we just store them in the courtroom?  This is a courtroom

2   that has a lot of cases, obviously, not just one.  So I just

3   want to disavow anybody of the idea that we own the courtroom

4   for three or four days or five days, whatever it is.

5        Go ahead -- and as far as the technical equipment, if it's

6   needed, we allow it in.  Talk to the technicians about it, see

7   if they can resolve it for you.  If they can't, make a motion

8   to me, and if it's something that's necessary, yeah, we'll let

9   it in.

10            MR. MALOFIY:  Last thing, as far as courtroom

11  technology, do you prefer the projection screen -- I believe

12  one's built into this room -- or do you prefer using the

13  monitors?

14            THE COURT:  Monitors.  We do have a projection

15  screen, but they've had so much problems with it.

16            MR. MALOFIY:  Understand.

17            THE COURT:  We have monitors on both sides as you

18  can see.

19            MR. MALOFIY:  As far as setting up, is that

20  something to discuss with you now?

21            THE COURT:  No, that's with the technicians.

22            MR. MALOFIY:  Okay.  Very well, Your Honor.

23       I'm not sure -- I believe that's all the questions I have.

24  I don't know if my co-counsel has additional ones.  May I speak

25  to my co-counsel?

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  There's no such thing as an attorney
 2    that doesn't have a question, counsel.  Go ahead.
 3              MR. MALOFIY:  Also, in Limine Motion Number 11,
 4    could you repeat your ruling, Your Honor?  And I apologize.
 5              THE COURT:  Sure, no problem.  Let me get it.
 6    Number 11?
 7              MR. MALOFIY:  Yes, Your Honor.
 8              THE COURT:  That's the one that I coupled with 10.
 9    Probably would allow -- would not exclude and would deny that
10    motion because I think Knight probably is someone that you knew
11    or should have known would be a witness, so I'll probably be
12    denying that, but I want to go over it.  It kind of relates
13    to -- because I believe that that's folded into Number 10 also.
14              MR. MALOFIY:  Understood.
15              THE COURT:  And some of those witnesses in 10, I'm
16    going to be granting the motion; some I may be denying the
17    motion.  It probably will be denied as to Knight.
18              MR. MALOFIY:  Okay.
19              THE COURT:  AKA Wolfe.
20              MR. MALOFIY:  Right, Knight.
21              THE COURT:  Okay.
22              MR. MALOFIY:  Thank you, Your Honor.
23              THE COURT:  Okay.  Thank you, counsel.
24         Anything else from either side?  Okay.  Thank you very
25    much.  We'll see you back in on the trial date.
```

**UNITED STATES DISTRICT COURT**

27

1          MR. ANDERSON:  Thank you, Your Honor.

2          MR. MALOFIY:  Thank you, Your Honor

3          THE COURTROOM DEPUTY:  All rise.  Court is in

4   recess.

5     (The proceedings concluded at 9:38 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**01863**

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3   COUNTY OF LOS ANGELES   )
                             )
 4   STATE OF CALIFORNIA     )

 5

 6          I, SHAYNA MONTGOMERY, Federal Official Realtime

 7   Court Reporter, in and for the United States District Court for

 8   the Central District of California, do hereby certify that

 9   pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date:   April 28, 2016

17

18

19                      /s/ SHAYNA MONTGOMERY
                        _____
20                      SHAYNA MONTGOMERY, CSR, RPR, CRR
                        Federal Official Court Reporter
21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-3462 RGK (AGRx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | *Michael Skidmore v. Led Zeppelin et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
|---|---|

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) Order re: Amended Ruling on Defendants' Motion in Limine No. 4 (DE 137)**

In its order denying Defendants' motion for summary judgment. This Court held that "Plaintiff's only copyright claim lies in the musical composition of *Taurus*, not the sound recording." (Order Den. Def.s' Mot. Summ. J. 17, ECF No. 159.) In light of this Order, Defendants have filed a Motion in Limine seeking to exclude all of Plaintiff's experts because they analyzed only the *Taurus* sound recording—not the musical composition. Plaintiff acknowledges that its expert reports considered only the *Taurus* sound recording but argues that these reports are admissible because "an expert may refer to the sound recording as long as the expert is clear that the compositional elements in question are represented in some way in the deposit copy." (Pl.'s Opp'n to Def.s' Mot. In Lim. No. 4, ECF No. 170.)

Because the deposit copy of *Taurus* registered with the Copyright Office is sheet music for the piano, Plaintiff's experts naturally relied on the *Taurus* sound recording to determine the melody, rhythm and other protected elements of the musical composition as played on the guitar. In doing so, however, Plaintiff's experts impermissibly analyzed unprotected elements not embodied in the musical composition (e.g., flute, recorder, fretboard positioning). Therefore, Plaintiff's expert reports are inadmissible in their present condition because they considered unprotected elements contained only in the sound recording. If Plaintiff wishes to introduce expert testimony at trial, it must submit reports completely purged of any reliance on the unprotected performance elements in the sound recording. Any comparison analysis must consider *only* the protected elements represented in the musical composition.

Should Plaintiff choose to submit new expert reports, he must do so within **FIVE DAYS** of this order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                _____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-03462-RGK (AGRx) | Date | April 25, 2016 |
|----------|------------------------|------|----------------|
| Title | MICHAEL SKIDMORE v. LED ZEPPELIN, et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
|------------------------|------------------------------------------------|

| Sharon L. Williams | Shayna Montgomery | N/A |
|--------------------|-------------------|-----|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| Francis Maolfiy. Glen Kulik | Peter Anderson, Helene Freeman |

**Proceedings:**          **PRETRIAL CONFERENCE**

Case called.  Court and counsel confer.  Prior to the trial date, the parties shall submit a joint statement of the case.  The joint statement should not exceed one paragraph.  Each day of trial, counsel shall submit to the Court a list of witnesses, in the order they will be called.  Court and counsel confer regarding voir dire, jury impanelment, trial hours, and introducing exhibits.  Time limits for opening statements will be given to counsel on the first day of trial.  The Court informs counsel that it intends to impose time limits of 10 hours per side.

The Court issues tentative rulings on motions in limine:

Defendants' Motion in Limine 1 to exclude testimony about Randy Wolfe's statements (DE 134), is GRANTED.

Defendants' Motion in Limine 2 to exclude newspaper articles and book excerpts (DE 135), is GRANTED with the caveat that Plaintiff may use Page's two statements from the magazine interviews solely for impeachment.

Defendants' Motion in Limine 3 to Exclude Recordings of *Taurus* (DE 136), is GRANTED: the only *Taurus* recordings properly presented to the jury are those that are strictly limited to the *Taurus* musical composition as transcribed in the copyrighted 1967 transcription.

Defendants' Motion in Limine 4 to Exclude testimony and exhibits of Defendant's experts (DE 137), is GRANTED insofar as the expert reports, testimony, or exhibits rely on unprotected performance elements.

Defendants' Motion in Limine 5 to exclude other claims accusing Led Zeppelin of copying (DE 138), is GRANTED.

Defendants' Motion in Limine 6 to exclude report from purported Led Zeppelin historian (DE 139), is GRANTED.

Defendants' Motion in Limine 7 to exclude evidence about the parties' respective levels of wealth, (DE 140) is GRANTED.

Defendants' Motion in Limine 8 to exclude evidence about the charitable goals of the Trust (DE 141), is GRANTED.

Defendants' Motion in Limine 9 to exclude references to extraterritorial revenues and revenue earned outside the limitations period (DE 142), is DENIED as to evidence of extraterritorial profits/GRANTED as to evidence of revenue earned outside the limitations period.

Defendants' Motion in Limine 10 to exclude testimony of undisclosed witnesses (DE 143), the Court continues to deliberate on this motion.

Defendants' Motion in Limine 11 to exclude testimony of Larry Knight (DE 144), the Court continues to deliberate on this motion.

Defendants' Motion in Limine 12 to exclude references to Led Zeppelin members' drug and alcohol use (DE 145), is GRANTED.

Defendants' Motion in Limine 13 to exclude evidence of Defendants' insurance or indemnity agreements (DE 146), is GRANTED.

Defendants' Motion in Limine 14 to exclude the Complaint and FAC from evidence (DE 147), is GRANTED.

Plaintiff's Motion in Limine 1 to exclude evidence about the validity or legitimacy of the Trust (DE 149), is GRANTED as to evidence challenging whether certain legal formalities have been satisfied for the Trust to legally continue operating.

Plaintiff's Motion in Limine 2 to exclude evidence that Randy Wolfe's son, Quinn Wolfe, owns the copyright in *Taurus* as opposed to the Trust (DE 150), is DENIED.

Plaintiff's Motion in Limine 3 to exclude any expert on damages (DE 151), is DENIED to the extent Defendants wish to make arguments about damages based on information already contained in their musicologist's expert reports or testimony from lay witnesses about Defendants' respective revenues and deductible expenses.

**IT IS SO ORDERED.**

|                       | :    | 30 |
| --------------------- | ---- | -- |
| Initials of Preparer  | slw  |    |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Rd. | Suite 1
Media, PA 19063
T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com

Glen L. Kulik, Esq.
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T:  (310) 557-9200; F:  (310) 557-0224
E:  gkulik@kgslaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST, | Case No. 15-cv-03462 RGK (AGRx) |
| Plaintiff, | Hon. R. Gary Klausner |
| v. | **NOTICE OF LODGING OF [*PROPOSED*] PRETRIAL CONFERENCE ORDER** |
| LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY, | Date:    April 25, 2016 Time:    9:00 a.m. Room:    850 |
| Defendants. | |

**NOTICE OF LODGING OF [*PROPOSED*]**
**PRETRIAL CONFERENCE ORDER**

PAGE 1 OF 3

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD**:

　　　**PLEASE TAKE NOTICE** that plaintiff Michael Skidmore, Trustee for the Randy Craig Wolfe Trust has lodged with the Court the attached proposed pretrial conference Order.

Respectfully submitted,

Dated: April 24, 2016 　　　　　　　　____/s/ Francis Malofiy____
　　　　　　　　　　　　　　　　　　Francis Alexander Malofiy, Esq.
　　　　　　　　　　　　　　　　　　FRANCIS ALEXANDER, LLC
　　　　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　　　　MICHAEL SKIDMORE,
　　　　　　　　　　　　　　　As Trustee of the Randy Craig Wolfe Trust

　　　　　　　　　　　　　　　　　　Glen Kulik, Esq.
　　　　　　　　　　　　　　　KULIK GOTTESMAN & SIEGEL LLP
　　　　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　　　　MICHAEL SKIDMORE,
　　　　　　　　　　　　　　　As Trustee of the Randy Craig Wolfe Trust

PAGE 2 OF 3

NOTICE OF LODGING OF [*PROPOSED*] PRETRIAL CONFERENCE ORDER

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that the Notice of Lodging of [*Proposed*] Pretrial Conference Order has been served upon counsel by ECF:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones*
*(collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation,*
*and Rhino Entertainment Company; James Patrick Page, Robert Anthony Plant, and John*
*Paul Jones*

*****

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ April 24, 2016*

PAGE 3 OF 3

NOTICE OF LODGING OF [*PROPOSED*] PRETRIAL CONFERENCE ORDER

**01870**

1

2

3

4

5

6

7    **UNITED STATES DISTRICT COURT**

8    **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9
MICHAEL SKIDMORE, as Trustee for          Case No. 15-cv-03462 RGK (AGRx)
10   the RANDY CRAIG WOLFE TRUST,

11                                                     Hon. R. Gary Klausner
                    Plaintiff,
12                                                     **[*PROPOSED*] PRETRIAL**
13          v.                                         **CONFERENCE ORDER**

14   LED ZEPPELIN; JAMES PATRICK
     PAGE; ROBERT ANTHONY PLANT;
15   JOHN PAUL JONES; SUPER HYPE
                                                       Date:     April 25, 2016
16   PUBLISHING, INC.; WARNER MUSIC           Time:     9:00 am
     GROUP CORP., Parent of                   Room:     850
17   WARNER/CHAPPELL MUSIC, INC.;
     ATLANTIC RECORDING
18   CORPORATION; RHINO
19   ENTERTAINMENT COMPANY,

20                  Defendants.

21

22

23

24

25

26

27                                            1
                              PRETRIAL CONFERENCE ORDER
28

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16,

**IT IS ORDERED:**

    **1.**    **The remaining parties are:**

        (a)    Plaintiff Michael Skidmore, suing as Trustee of The Randy Craig Wolfe Trust.

        (b)    Defendants:

            (1)    James Patrick Page;

            (2)    Robert Anthony Plant;

            (3)    Warner/Chappell Music, Inc.;

            (4)    Atlantic Recording Corporation; and

            (5)    Rhino Entertainment Company

Each of these defendants has been served and has appeared.  All other defendants named in the caption of the Amended Complaint and not identified in the preceding paragraph are now dismissed.

    **2.**    **The pleadings which raise the issues are:**

        (a)    Plaintiff's Amended Complaint (Doc. 31);

        (b)    Answer of Mr. Page *et al.* (Doc. 68); and

        **(c)**    Answer of Warner/Chappell Music, Inc., et al. (Doc. 69).

    **3.**    **Federal jurisdiction and venue are invoked upon the grounds:**

This case arises under the copyright laws of the United States, over which Congress has given federal courts exclusive jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

This action was transferred to the Central District of California from the Eastern District of Pennsylvania.

The facts required to establish subject matter jurisdiction and venue are admitted.

**3.     The trial estimate:**

(a)     Plaintiff estimates 21 trial days.

(b)     Defendants estimate that, depending on the Court's rulings on defendants' motions in limine, 10 to 21 trial days.

**4.     The trial is to be a jury trial.**

The parties are directed to comply with the Court's Order for Jury Trial (Doc. 79) as to the submission of proposed jury instructions and any special questions requested to be asked on voir dire.

**5.     The following facts are admitted and require no proof:**

None.

**6.     The following facts, though stipulated, shall be without prejudice to any evidentiary objection:**

None.

**7.     Claims and Defenses:**

**Plaintiff's Claims**

(a)     **Plaintiff plans to pursue the following claims against the following defendants:**

▪   Direct Copyright Infringement – All Defendants (James Patrick Page; Robert Anthony Plant; Warner/Chappell Music, Inc.; Atlantic Recording

3

PRETRIAL CONFERENCE ORDER

**01873**

Corporation; Rhino Entertainment Company)

- ▪ Contributory Infringement – All Defendants (James Patrick Page; Robert Anthony Plant; Warner/Chappell Music, Inc.; Atlantic Recording Corporation; Rhino Entertainment Company)
- ▪ Vicarious Copyright Infringement – All Defendants (James Patrick Page; Robert Anthony Plant; Warner/Chappell Music, Inc.; Atlantic Recording Corporation; Rhino Entertainment Company)
- ▪ Appropriate Equitable Relief if Defendants found liable

### (b)    The elements required to establish Plaintiff s claims are:

- ▪ <u>Direct Copyright Infringement</u>
  1. Plaintiff are the owners of a valid copyright; and
  2. Defendants copied original elements from the copyrighted work.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.4 (2007); 17 U.S.C. § 501(a)-(b).

- ▪ <u>Contributory Infringement</u>
  1. Defendants knew or had reason to know of the infringing activity of Defendants; and
  2. Defendants intentionally induced or materially contributed to the infringing activity.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.21 (2007).

- ▪ <u>Vicarious Copyright Infringement</u>

4

PRETRIAL CONFERENCE ORDER

1.   Defendants profited directly from the infringing activity;

2.   Defendants had the right and ability to supervise or control the infringing activity;

3.   Defendants failed to exercise that right and ability.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.20 (2007).

(c)   **In brief, the key evidence Plaintiff relies on for each of the claims is:**

- Direct Copyright Infringement

1.   Plaintiff is the owner of a valid copyright;

    a. California Superior Court Order

    b. Trust Documents of Randy Craig Wolfe Trust

    c. Testimony of Michael Skidmore

    d. Testimony of Barry Hansen

    e. Royalty Statements

    f. Testimony of Wolfe sisters and Paul Franklin that Randy California wrote Taurus in 1966 and that song was played at Ash Grove venue in early 1967.

    g. Testimony of Mark Andes – bass player and band member in Spirit.

    h. Testimony of Jay Ferguson – vocalist and band member in Spirit.

    i. Recordings of Taurus;

    j. Recordings of Stairway to Heaven.

    k. Comparison audio.

2.   Defendants copied original elements from the copyrighted work.

    a. Access

        i. Published interviews given by defendant Page admitting that

he listened to Spirit's albums and saw live shows, and defendant Page's testimony showing the same.

ii. Interrogatory of Page admitting he possesses the Spirit album with Taurus

iii. News articles which show defendant Plant attended Spirit concerts, and testimony showing same.

iv. Testimony of defendant Page and Plant, and witnesses Andes and Ferguson, that Led Zeppelin opened for Spirit on December 26, 1968, and documentary evidence.

v. Testimony of defendants Page and Plant admitting they played Spirit song "Fresh Garbage" live.

vi. Testimony of Mark Andes and Jay Ferguson, former Spirit members, who will testify that Taurus was played regularly at shows.

vii. Credit changes, interviews, testimony of defendants showing that Led Zeppelin's songwriting process used prior art to create their music.

viii. Testimony of all defendants.

b. Copying

i. The song Taurus, as evidenced by deposit copy, composition, and sound recording.

ii. The song Stairway to Heaven, as evidenced by deposit copy, composition, and sound recording.

iii. Plaintiffs' expert reports of Alexander Stewart, Kevin Hanson, Erik Johnson, and Brian Bricklin.

iv. Expert report of Michael Einhorn for damages, including

6

PRETRIAL CONFERENCE ORDER

1    defendants' discovery production which he analyzes.

2          v.  Credit changes, interviews, testimony of defendants showing

3              that Led Zeppelin's songwriting process used prior art to

4              create their music.

5          vi.  Testimony of all defendants.

6    *See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.4 (2007); 17 U.S.C.

7    § 501(a)-(b).

8    ▪  <u>Contributory Infringement (see above for evidence of access and copying</u>

9       <u>and damages)</u>

10       1.    Defendants knew or had reason to know of the infringing activity; and

11             a.  Testimony of witnesses that similarity of Taurus and Stairway was

12                 common and well known, including Denny Somach

13             b.  The songs Taurus and Stairway to Heaven

14             c.  Credit changes, interviews, testimony of defendants showing that

15                 Led Zeppelin's songwriting process used prior art to create their

16                 music

17       2.    Defendants intentionally induced or materially contributed to the

18             infringing activity.

19             a.  Contracts of Defendants

20             b.  Expert report of Michael Einhorn

21             c.  Testimony of all defendants.

22   *See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.21 (2007).

23

24

25

26

27                                          7

28                              PRETRIAL CONFERENCE ORDER

**01877**

- Vicarious Copyright Infringement
  1. Defendants profited directly from the infringing activity;
     a. Expert Report of Michael Einhorn, and discovery production he analyzed.
  2. Defendants had the right and ability to supervise or control the infringing activity;
     a. Contracts between Defendants
     b. Expert Report of Michael Einhorn
     c. Testimony of all defendants
  3. Defendants failed to exercise that right and ability.
     a. Expert Report of Michael Einhorn
     b. Testimony of all defendants

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.20 (2007

**Defendant(s):**

    **(a)**     **Defendants plan to pursue the following affirmative defenses:**

Second Affirmative Defense: *Stairway to Heaven* was created independently of *Taurus*.

Fifth Affirmative Defense: the alleged infringement, which is disputed, is de minimis.

Sixth Affirmative Defense: the alleged infringement, which is disputed, constitutes fair use.

Warner defendants' Ninth Affirmative Defense/Individual Defendants' Eighth Affirmative Defense: remedies plaintiff seeks are barred by laches.

Warner defendants' Tenth Affirmative Defense/Individual Defendants'

8
PRETRIAL CONFERENCE ORDER

1  Ninth Affirmative Defense: plaintiff's claims are barred by statutes of limitation,

2  including 17 U.S.C. Section 507(b).

3      Warner  defendants'  Seventeenth  Affirmative  Defense/Individual

4  Defendants' Sixteenth Affirmative Defense: plaintiff's claims and/or relief he

5  seeks is barred by the doctrine of unclean hands.

6      Warner  defendants'  Eighteenth  Affirmative  Defense:  any  alleged

7  infringement, which is disputed, was innocent.

8      **(b)     The elements required to establish Defendant's affirmative**

9  **defenses are:**

10  Second Affirmative Defense (independent creation):

11      That *Stairway to* Heaven was created by James Patrick Page and Robert

12  Plant independently of the musical composition *Taurus*.  *Three Boys Music Corp.*

13  *v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001).

14

15  Fifth Affirmative Defense (de minimis):

16      That  the  allegedly  copied  original  material  in  the  musical

17  composition *Taurus* is not a quantitatively significant or qualitatively

18  significant portion of that musical composition as a whole.

19  *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004), *cert. denied* 545 U.S.

20  1114 (2005).

21  Sixth Affirmative Defense (fair use):

22      That the defendant used the copyrighted work in a reasonable way

23  under the circumstances that advances the public interest, considering:

24      1.    the purpose and character of the use, including whether the use

25          is  of  a  commercial  nature  or  is  for  nonprofit  educational

26          purposes;

27

28

2.    the nature of the copyrighted work;

3.    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.    the effect of the use upon the potential market for or value of the copyrighted work.

Manual of Model Jury Instructions for the Ninth Circuit (2007) ("9th Cir. Manual") 17.21; *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013).

Warner defendants' Ninth Affirmative Defense/Individual Defendants' Eighth Affirmative Defense (laches):

1.    Unreasonable delay in the assertion of the claim; and

2.    Prejudice as a result of the delay.

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

Warner defendants' Tenth Affirmative Defense/Individual Defendants' Ninth Affirmative Defense (statute of limitations):

Defendants are insulated from liability for alleged infringements more than three years before plaintiff's filing of this action on May 31, 2014.

17 U.S.C. § 507(b); *Petrella*, 134 S. Ct. at 1969.

Warner defendants' Seventeenth Affirmative Defense/Individual Defendants' Sixteenth Affirmative Defense (plaintiff's unclean hands):

1.    Plaintiff or his predecessors' conduct violated conscience, good faith, or other equitable principles, or he "dirtied his hands" in connection with the copyright he asserts in the musical composition *Taurus*; and

10

PRETRIAL CONFERENCE ORDER

**01880**

2.    this improper conduct relates directly to the subject matter of his claim.

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.09.

Warner defendants' Eighteenth Affirmative Defense (innocent infringement):

1.    the defendant was not aware that its acts constituted infringement of the copyright; and

2.    the defendant had no reason to believe that its acts constituted an infringement of the copyright.

9th Cir. Manual 17.35.

**(c)    In brief, the key evidence Defendant relies on for each affirmative defense is:**

Second Affirmative Defense (independent creation):

The creators of *Stairway to Heaven* never heard *Taurus* before creating *Stairway to Heaven*.  The evidence of the foregoing includes the testimony of Mr. Page, Mr. Plant, Mr. Jones, Mr. Ferguson and Mr. Andes, the handbill for the December 26, 1968 concert in Denver, Colorado, documents and recordings regarding the 1970 rehearsals at Headley Grange, pre-December 1968 recordings on which Mr. Page performed or with which he was familiar and which include elements similar to those plaintiff claims to have been copied from *Taurus*, the testimony and reports of Dr. Ferrara and Mr. Mathes, and the audio recordings submitted, including as to prior art.

Fifth Affirmative Defense (de minimis):

*Taurus* and *Stairway to Heaven* are not substantially similar and no protectable expression in *Taurus* appears in *Stairway to Heaven*.  However, if

1  there were a finding of copying, which is strenuously disputed, any elements of
2  *Taurus* that are protectable and found to appear in *Stairway to Heaven* are
3  quantitatively and qualitatively unimportant.  The evidence establishing the
4  foregoing includes *Taurus* and *Stairway to Heaven* and the testimony and
5  exhibits, including audio exhibits, of Dr. Ferrara and Mr. Mathes.

6        Sixth Affirmative Defense (fair use):

7        *Stairway to Heaven* does not include any expression protected by the
8  *Taurus* copyright.  However, if there were a finding of copying, which is
9  strenuously disputed, any alleged use is a fair use.  *Taurus* is a short instrumental
10 employing public domain material such as a descending chromatic line and
11 arpeggios.  *Stairway to Heaven* is a monumental work that builds and transforms
12 over some eight minutes, with lyrics and substantial material beyond anything
13 heard in the instrumental *Taurus*.  The purpose and character of the alleged use
14 was transformative, adding substantial new material with a further or different
15 purpose or different character, with new expression, meaning or message.  Any
16 elements found to be used were used only incidentally as part of commercial
17 enterprise.  *Taurus* also is not an unpublished work, and any portion found to
18 have been used is quantitatively and qualitatively small.  In addition, *Stairway to
19 Heaven* has had no adverse effect on the potential market for or value of *Taurus*.
20 The evidence establishing the foregoing includes *Taurus* and *Stairway to Heaven*,
21 the testimony of plaintiff, Mr. Andes, Mr. Ferguson and Mr. Adler, and the
22 testimony and exhibits, including audio exhibits, of Dr. Ferrara and Mr. Mathes.

23       Warner defendants' Ninth Affirmative Defense/Individual Defendants'
24 Eighth Affirmative Defense (laches):

25       Plaintiff asserts a forty-five-year-old copyright claim that the Trust's
26 predecessor, Mr. Wolfe, both was aware of and failed to assert from 1971 to his

27

28

1  death in 1997 and which the Trust failed to assert until 2014.  During those more
2  than four decades of delay, numerous witnesses have died, including John
3  Bonham (the fourth member of Led Zeppelin) in 1980,   Peter Grant (Led
4  Zeppelin's personal manager and who attended many of their concerts) in 1995,
5  Mr. Wolfe in 1997, John Locke (another member of Spirit) in 2006, Bernice Pearl
6  (Mr. Wolfe's mother and trustee of the Trust) in 2009, Ed Cassidy (another
7  member of Spirit) in 2012, Andy Johns (the engineer for the recording of
8  recorded *Stairway*) in 2013 and Danny Tucker (Spirit's road manager in 1968-
9  79).   In addition, documents and recordings have been lost or stolen and
10  memories have faded.  Also, substantial monies were spent in connection with the
11  exploitation of *Stairway to Heaven* and albums and other products that include
12  *Stairway to Heaven*.  Further, defendants did not know of the purported claim
13  until shortly before it was filed in 2014 and, as a result, could not have filed an
14  action for declaratory relief.  The evidence establishing the foregoing includes the
15  testimony of Mr. Page, Mr. Plant, Mr. Jones, Mr. Ferguson, Mr. Andes and
16  representatives of the entity defendants, as well as documents such as those
17  relating to the 1980s theft of tapes from Mr. Page's home.

18     Warner defendants' Tenth Affirmative Defense/Individual Defendants'
19  Ninth Affirmative Defense (statute of limitations):

20     Plaintiff filed this action on May 31, 2014.  Complaint (Doc. 1).  Plaintiff
21  has agreed that the Copyright Act's three year statute of limitations "precludes
22  relief as to any alleged infringements prior to May 31, 2011."  Jt. Rule 26(f)
23  Report (Doc. 4) at 4:12-1.

24     Warner defendants' Seventeenth Affirmative Defense/Individual
25  Defendants' Sixteenth Affirmative Defense (plaintiff's unclean hands):

26     Mr. Wolfe died in 1997, unmarried and without a will, with only one heir,

27

28

PRETRIAL CONFERENCE ORDER

his son, Quinn Wolfe.  Quinn was entitled to all of his father's assets.  Cal. Prob. Code § 6402(a).  Quinn was a minor and the majority of his father's assets were placed in the Trust, with his grandmother as trustee, and with the Trust assets ultimately to be distributed to Quinn.  After the creation of the Trust, however, and despite the grandmother's fiduciary obligations to Quinn as his father's sole heir and entitled to receive the assets on the termination of the trust when Quinn turned 22, the grandmother purported to amend the Trust Agreement to disinherit Quinn, who she viewed as a grandson out of wedlock.  Mr. Wolfe's, and therefore Quinn's assets, that the grandmother purported to retain in the Trust even after her death, include Mr. Wolfe's claimed beneficial interest in the *Taurus* copyright upon which plaintiff bases his claim against defendants.  The evidence establishing the foregoing and the Trust's unclean hands includes the Ventura County Superior Court's Orders and files in P 74293 and P 76088, the purported Trust Agreement and Amendments produced by plaintiff, the testimony of Quinn Wolfe, Mary Quinting, Robert Coit, James Cox, David Peterson, Harold Pittman and plaintiff.

    <u>Warner defendants' Eighteenth Affirmative Defense (innocent infringe-ment)</u>:

    While the alleged infringement is disputed, the Warner defendants did not know of the alleged infringement or have any reason to believe there was an infringement.  The evidence establishing the foregoing includes the testimony of plaintiff, the individual defendants and representatives of the entity defendants that no claim was asserted until 2014, and the evidence, including testimony of Dr. Ferrara and Mr. Mathis, as to prior art with the same or similar music, and establishing that the allegedly copied material is not protected by copyright.

14
PRETRIAL CONFERENCE ORDER

**01884**

**8.    In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:**

(a)    Direct Infringement:

(1)    whether defendants infringed a copyright owned by plaintiff; and

(2)    if so, whether plaintiff is entitled to relief and the amount of any such relief.

(b)    Contributory infringement:

(1)    whether defendants are liable for contributory infringement of a copyright owned by plaintiff; and

(2)    if so, whether plaintiff is entitled to relief and the amount of any such relief.

(c)    Vicarious infringement:

(1)    whether defendants are vicariously liable for infringement of a copyright owned by plaintiff; and

(2)    if so, whether plaintiff is entitled to relief and the amount of any such relief.

(d)    Equitable Relief.

**9.    Status of discovery:**

All discovery is complete except:

**Defendants' Position on Discovery:** Defendants contend that they are entitled to depose plaintiff's expert witnesses, while plaintiff contends they are not and has declined to produce them for deposition.  Fed. R. Civ. P. 26(b)(4)(A). Plaintiff's factual recitation to the contrary, set forth below, is incorrect, and the

PRETRIAL CONFERENCE ORDER

1  issue will be addressed in connection with defendants' Motions in Limine Nos. 4

2  and 6.

3        **Plaintiff's Position on Expert Discovery**: Plaintiff contends that

4  Defendants' claims with respect to expert depositions are simply incorrect.

5  Defendants claim that Plaintiff has not provided expert addresses. But Plaintiff's

6  counsel has repeatedly represented that he is authorized to accept service on behalf

7  of the experts. Indeed, Defendants previously served subpoenas on Plaintiff's

8  counsel for the experts ***but then voluntarily withdrew them***. In addition, the expert

9  reports for Stewart, Bricklin, and Johnson all have addresses on the report's

10  themselves.

11        There is, however, a more fundamental problem. Defendants failed to take

12  the depositions of Plaintiff's experts in a timely manner and the discovery deadline

13  has passed. Plaintiff repeatedly raised this issue with defense counsel during

14  discovery. On December 28, 2015, Defense counsel Peter Anderson stated in an

15  email that he knew that to take expert depositions on time, expert disclosures

16  would have to be made early or that the parties would have to request the court to

17  move the deadlines. Plaintiff indeed requested an extension of the discovery

18  deadline, explicitly noting that expert discovery had to be taken. ***Defendants'***

19  ***opposed that motion*** and the deadline passed.

20        The simple fact of the matter is that Defendants chose not to depose the

21  experts in question and opposed any attempt to extend the deadlines—even as it

22  related to expert discovery and depositions. It is now less than the eve of trial and

23  Defendants are claiming that they are entitled to more discovery. The deadline has

24  passed and Defendants can only blame themselves.

25

26

27  16
PRETRIAL CONFERENCE ORDER

28

**10.    Disclosures under F.R.Civ.P. 26(a)(3):**

Plaintiff and defendants filed separate draft exhibit lists on April 4, 2016. (Doc. 158-2 & 156-2).  On April 24, 2016, the parties filed a Joint Exhibit List.

The Joint Exhibit List sets forth the parties' objections and is attached to this Order as Exhibit 1 and incorporated herein by this reference.

Plaintiff's position:

Plaintiff reserves the right to add objections and withdraw exhibits as it is unclear exactly what defenses Defendants intend to advance at trial.  Plaintiff does not agree that that all exhibits will be deemed admitted at trial if no objection is lodged in Exhibit 1.

Defendants' position:

Defendants have confirmed that they are not pursuing at trial their defenses of waiver, abandonment and license and are not pursuing at trial the contention that the *Taurus* musical composition is a work for hire.  Defendants do not believe there is any reason for plaintiff to purport to reserve the right to object.

**11.    Witness lists:**

Plaintiff and defendants filed separate draft witness lists on April 4, 2016. (Doc. 158-1 & 156-1).  On April 24, 2016, the parties filed a Joint Witness List.

Only the witnesses identified in the lists will be permitted to testify (other than solely for rebuttal or impeachment).

**Plaintiff's Objections to Witnesses:** Plaintiff objects to the testimony of Quinn Wolfe and Mary Quinting. Their testimony is wholly irrelevant to this matter. This issue is the subject of two motions in limine filed by Plaintiff. Defendants are attempting to introduce testimony of Quinn Wolfe and Quinting to dispute the validity of the Trust. But Defendants have no standing to advance this

17

PRETRIAL CONFERENCE ORDER

argument, there is no credible dispute that the Trust was validly formed and transferred Randy Craig Wolfe's copyright rights in accordance with an order by the California Superior Court, there is no dispute that Quinn Wolfe and all pertinent parties received proper notice as required by law, and such testimony could only be unduly prejudicial, confuse the issues, and enflame the jury.

Defendants previously filed a motion to compel discovery earlier in the case to attempt to "bust the Trust." The Honorable Alicia Rosenberg denied Defendants' motion finding that the inquiry under the Copyright Act was whether the Trust owned the copyrights in question and that Defendants had not shown how their discovery requests were relevant to the ownership determination. *See* Doc. No. 89, at p.2. The fact of the matter is that Plaintiff has an order from the California Superior Court which explicitly and unequivocally authorizes the Trust to own Randy Wolfe's intellectual property.

**Defendants' position:** defendants contend that while it is correct that plaintiff prevented defendants from pursuing discovery as to the validity of the Trust, their testimony is relevant to the separate issue and defense of unclean hands, as well as other subjects including as to their knowledge as to *Taurus* and *Stairway to Heaven*.

Each party intending to present evidence by way of deposition testimony shall mark such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

Plaintiff's Position:  It is impossible for Plaintiff to know which depositions

1   he intends to present by way of deposition testimony because defense counsel are

2   refusing to accept subpoenas on behalf of their clients: Page, Plant, Jones, and the

3   corporate defendants.

4         To date, defense counsel has refused to confirm that his clients—Jimmy

5   Page and Robert Plant—will appear at trial from the start on May 10. Plaintiff and

6   the Court has every right to know whether in fact Defendants will be at trial, if they

7   will accept service of subpoena through counsel, or appear for Plaintiff's case in

8   chief. This is not only for purposes of efficiency, but also for respect of the Court,

9   the calendar, and other witnesses' schedules. Plaintiff's counsel has attempted to

10   resolve this issue with defense counsel to no avail as defense counsel has indicated

11   that they are not under subpoena power of this Court.

12         Plaintiff believes that defendants are within the subpoena power of the Court

13   and that because the corporate and individual defendants consented to jurisdiction

14   in California, and do regular business there in person, that they are precluded from

15   dodging service of subpoenas to appear and testify at trial, by hiding in the UK

16   behind counsel. Furthermore, Defendants should not be allowed to "game the

17   judicial system" by refusing to appear at trial in Plaintiff's case in chief and then

18   only appear in Defendants case in chief.

19         As counsel was informed, Plaintiff fully intends to have Jimmy Page and

20   Robert Plant testify in Plaintiff's case-in-chief. If they are not going to appear or

21   refuse to appear in Plaintiff's case in chief, then Plaintiff will use the deposition

22   testimony. Many thousands of dollars were spent getting high quality video

23   depositions which were taken in the UK—at Defendants' insistence—for purpose

24   of being used at trial if Defendants refused to appear. Obviously, if Plant and Page

25   fail to appear or refuse to appear—we will be left with no choice but to play the

26   full deposition to the jury.

27

28

19

PRETRIAL CONFERENCE ORDER

Defendants' Position: Plaintiff failed to comply with LR 16-2.7 and did not provide at the 40 day meeting, or at any time, any proposed deposition testimony to be offered at trial.  Defendants have offered to arrange for subpoenas to be accepted by the two corporate witnesses on behalf of, respectively, Warner/Chappell Music, Inc., and Rhino Entertainment Company who are within the Court's subpoena power and raised that the individual defendants, as residents of England, are not within the Court's subpoena power and, accordingly, purporting to accept subpoenas on their behalf would be a nullity.  Also, they will be traveling a considerable distance with an eight-hour time difference. Defendants cannot be the insurer of their safe arrival on the first day of trial when plaintiff might desire.  The depositions plaintiff took are for that purpose, but they are still subject to the rules of evidence and plaintiff cannot simply play all, but was required to designate the portions which he wishes to play and which he contends contain relevant and admissible evidence, allowing defendants to then assert their objections, as provided in LR 16.

**12.   The following law and motion matters and motions in limine, and no others, are pending or contemplated:**

**Plaintiff's Motions in Limine**

Motion In Limine No. 1:  Plaintiff has moved to preclude Defendants from attacking the Randy Craig Wolfe Trust's validity.

Motion In Limine No. 2:  Plaintiff has moved to preclude Defendants from claiming that the Trust stole the inheritance of Quinn Wolfe, Randy Craig Wolfe's son.

Motion In Limine No. 3:  Plaintiff has moved to preclude Defendants from

presenting an expert on damages. They presented no expert for their case in chief or for rebuttal.

**Defendants' Motions in Limine**

Motion *in Limine* No. 1: defendants have moved to exclude evidence and argument as to claimed out-of-court statements of Randy Wolfe, professionally known as Randy California, offered by plaintiff.

Motion *in Limine* No. 2: defendants have moved to exclude evidence and argument as to newspapers and books that purport to attribute statements to defendants or otherwise to establish unproven facts.

Motion *in Limine* No. 3: defendants have moved to exclude evidence and argument as to audio recordings of Spirit performing the musical composition *Taurus* and all other audio recordings of that musical composition other than audio recordings strictly limited to the performance of the 1967 *Taurus* transcription deposited with the Copyright Office in the 1967 registration of the copyright on which plaintiff sues.

Motion *in Limine* No. 4: defendants have moved to exclude the testimony of plaintiff's proffered experts Dr. Alexander Stewart, Erik Johnson, Brian Bricklin and Kevin Hanson.

Motion *in Limine* No. 5: defendants have moved to exclude evidence and argument as to claims and theoretical claims of copying other works and as to settlements of claims.

Motion *in Limine* No. 6: defendants have moved to exclude the testimony of plaintiff's proffered expert Denny Somach.

Motion *in Limine* No. 7: defendants have moved to exclude evidence and argument as to the parties' and Randy Wolfe's wealth or the lack thereof.

PRETRIAL CONFERENCE ORDER

Motion *in Limine* No. 8: defendants have moved to exclude evidence and argument as to plaintiff's and the Randy Craig Wolfe Trust's use of funds and any recovery in this action.

Motion *in Limine* No. 9: defendants have moved to exclude evidence and argument as to pre-May 2011 revenues, including advance payments under pre-May 2011 contracts, and as to revenues from the exploitation of *Stairway to Heaven* outside the United States.

Motion *in Limine* No. 10: defendants have moved to preclude plaintiff from relying upon the witnesses that plaintiff failed to disclose, including Larry Knight, Mike Lee and Robert Lee, and witnesses, including Paul Franklin, Linda Mensch, Terry Lynn Moore and Dave McKenna, that plaintiff failed to disclose until the day of the fact discovery cut-off and for whom plaintiff failed to provide the subject matter of their information, their addresses and their telephone numbers.

Motion *in Limine* No. 11: defendants have moved to exclude testimony and argument that in 1973 Randy Wolfe confronted Jimmy Page.

Motion *in Limine* No. 12: defendants have moved to exclude testimony and argument as to drinking or drug use.

Motion *in Limine* No. 13: defendants have moved to exclude evidence and argument as to insurance coverage or other indemnity rights as to plaintiff's alleged claims.

Motion *in Limine* No. 14: defendants have moved to preclude plaintiff's submission of his Complaint and First Amended Complaint to the jury.

**Plaintiff's Additional Issues:**

**Depositions to be used at Trial:** See above for a more full description of this issue.

**Improper attempt to change copyright registration for Taurus***: Defendants have submitted an application to change the copyright registration for Taurus from Hollenbeck Music submitted to the Copyright Office after the discovery deadline, in the midst of litigation. Plaintiff contends that the attempt to change a copyright in dispute, especially one that is factually incorrect, is highly improper and should not be viewed by the jury.

**Defendants' songwriting process:** Defendants have admitted using prior art to create their songs, and have also admitted that they changed the credits on many of their songs to reflect the authorship of other artists. Defendants have admitted being naïve and irresponsible in taking the music of other artists without attribution. Plaintiff believes he is entitled to introduce evidence of Defendants' songwriting process. This evidence is also relevant to show motive, knowledge, intent, lack of accident, lack of mistake, etc.

**Attorney's Fees and Costs:** Attorney's fees and costs are appropriate in this copyright action for the prevailing party.

## Defendants' Additional Issues:

Defendants contend that plaintiff's requested remedy of defendants' profits from the alleged infringement is an equitable remedy tried to the Court, not the jury.  Defs' Memo. of Contentions of Fact & Law (Doc. 157) at 19-20.

As to "Plaintiff's Additional Issues":

Defendants contend that plaintiff misrepresents both the facts and law, as summarized above.

Defendants contend that plaintiff misrepresents that defendants changed the *Taurus* registrations.  Rather, defendants' counsel received from a non-party, Hollenbeck Music, and within literally minutes provided to plaintiff's counsel,

23

PRETRIAL CONFERENCE ORDER

Hollenbeck Music's corrections to Hollenbeck Music's registrations.

Defendants contend that, with respect to plaintiff's "songwriting process" argument, plaintiff misrepresents the facts and is simply trying to use the euphemism "songwriting process" to taint the jury with unproven allegations of other claims and theoretical claims and settlements, and which are the subject of defendants' Motion in Limine No. 5.   None of plaintiff's "experts" as to "songwriting process" were present when *Stairway to Heaven* was written or recorded or otherwise participated in the process of composition and recording by Led Zeppelin.  They have no personal knowledge, they are merely a means for plaintiff to try to unfairly prejudice the jury and there is no subject that is appropriate for expert testimony under the Federal Rules of Evidence and *Daubert*.  These matters are the subject of defendants Motions in Limine 4 and 6.

As to attorneys' fees, plaintiff contends they are mandatory under 17 U.S.C. § 505 and defendants contend they are discretionary and dispute plaintiff's claim to be entitled to attorneys' fees.


**13.   Bifurcation of the following issues for trial is ordered.**


Plaintiff believes that no bifurcation should occur.


Defendants believe that liability and remedies are properly bifurcated.  Defs' Memo. of Contentions of Fact & Law at 20-21.


14.   The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of

the trial of this cause, unless modified to prevent manifest injustice.

Dated:

_____
**The Honorable R. Gary Klausner**

**Approved as to form and content.**


FRANCIS ALEXANDER, LLC


By___/s/ Francis Malofiy_____
      Francis Malofiy, Esq.
Attorney for Plaintiff
MICHAEL SKIDMORE

Glen Kulik, Esq.
KULIK GOTTESMAN & SIEGEL LLP
Attorney for Plaintiff
MICHAEL SKIDMORE,
As Trustee of the Randy Craig Wolfe Trust


LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation


By____/s/ Peter J. Anderson_____
      Peter J. Anderson, Esq.
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, WARNER/CHAPPELL MUSIC, INC.,

---

25

PRETRIAL CONFERENCE ORDER

**01895**

1  ATLANTIC RECORDING CORP. and RHINO

2  ENTERTAINMENT COMPANY

3

4  Helene M. Freeman, Esq.
   PHILIPS NIZER LLP

5  Attorney for Defendants

6  JAMES PATRICK PAGE and
   ROBERT ANTHONY PLANT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    26
                          PRETRIAL CONFERENCE ORDER
28

**01896**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
PRETRIAL CONFERENCE ORDER

1  Francis Malofiy, Esq.
   Francis Alexander, LLC
2  280 N. Providence Road
   Media, PA 19063
3  T:  (215) 500-1000; F:  (215) 500-1005
   E:  francis@francisalexander.com
4  *Attorney for Plaintiff*

5  Glen L. Kulik, Esq. (SBN 082170)
   Kulik Gottesman & Siegel LLP
6  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
7  T:  (310) 557-9200; F: (310) 557-0224
   E:  gkulik@kgslaw.com
8  *Attorney for Plaintiff*

9            **UNITED STATES DISTRICT COURT**

10       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  MICHAEL SKIDMORE, as Trustee for      Case No. 15-cv-03462 RGK (AGRx)
    the RANDY CRAIG WOLFE TRUST,
12
13              Plaintiff,               Hon. R. Gary Klausner
14
       v.
15                                       **PLAINTIFF'S DISPUTED JURY
    LED ZEPPELIN; JAMES PATRICK          INSTRUCTIONS**
16  PAGE; ROBERT ANTHONY PLANT;
17  JOHN PAUL JONES; SUPER HYPE
    PUBLISHING, INC.; WARNER MUSIC
18  GROUP CORP., Parent of
    WARNER/CHAPPELL MUSIC, INC.;         Pre-trial Conf.:    April 25, 2016
19  ATLANTIC RECORDING               Trial Date:         May 10, 2016
20  CORPORATION; RHINO
    ENTERTAINMENT COMPANY,
21
22              Defendants.
23
24
25
26
27
28

                              1

**01898**

1       Pursuant to the Court's Order for Jury Trial, Plaintiff Michael Skidmore,

2  Trustee for the Randy Craig Wolfe Trust submits the following disputed jury

3  instructions, with defendants' position as to the instructions to which they object.

4       Plaintiff respectfully reserves the right to modify or supplement the following

5  jury instructions and propose additional or different jury instructions.

6  Dated: April 22, 2016

7                         /s/ Francis Malofiy
                         Francis Alexander Malofiy, Esq.
                         FRANCIS ALEXANDER, LLC

8                         Attorney for Plaintiff
                         MICHAEL SKIDMORE,

9                   As Trustee of the Randy Craig Wolfe Trust

10                         Glen L. Kulik, Esq.
                     KULIK GOTTESMAN & SIEGEL LLP

11                         Attorney for Plaintiff
                         MICHAEL SKIDMORE,

12                   As Trustee of the Randy Craig Wolfe Trust

13

14       Approved as to the statements of defendants' objections to plaintiff's proposed

15  jury instructions and verdict forms:

16

17  Dated: April 22, 2016

18                         /s/ Peter J.Anderson

19                         Peter J. Anderson, Esq.
                     LAW OFFICES OF PETER J. ANDERSON
                       A Professional Corporation

20                        Attorney for Defendants
                     JAMES PATRICK PAGE, ROBERT

21                    ANTHONY PLANT, JOHN PAUL JONES,
                    WARNER/CHAPPELL MUSIC, INC.,

22                    SUPER HYPE PUBLISHING, INC.,
                 ATLANTIC RECORDING CORP., RHINO

23                  ENTERTAINMENT COMPANY and
                   WARNER MUSIC GROUP CORP.

24

25                     Helene M. Freeman, Esq.
                     PHILLIPS NIZER LLP

26                    Attorney for Defendants
                   JAMES PATRICK PAGE,

27                  ROBERT ANTHONY PLANT and
                   JOHN PAUL JONES

28

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

**JURY INSTRUCTIONS**

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 3 | CLAIMS AND DEFENSES | 9th Cir. Manual 1.2 (modified) | 1 |
| 17 | DEPOSITION IN LIEU OF LIVE TESTIMONY | 9th Cir. Manual 2.4. | 4 |
| 18 | IMPEACHMENT EVIDENCE - WITNESS | 9th Cir. Manual 2.8. | 7 |
| 20 | LIABILITY OF CORPORATIONS- SCOPE OF AUTHORITY NOT IN ISSUE | 9th Cir. Manual 4.2. | 10 |
| 26 | PRELIMINARY INSTRUCTION- COPYRIGHT | Ninth Circuit Manual of Model Civil Jury Instructions & 17.0 (2007); Act of March 4, 1909 ("1909 Act"), ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v.Dunnahoo,* 637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. | 13 |

i

| No. | Title | Source | Page |
|---|---|---|---|
| | | Nimmer, 1 Nimmer on Copyright, §§ 4.03[A], 4.05[B][4] at 4-35; *Three Boys Music Corp v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985); *Woods v. Bourne Co.,* 60 F. 3d 978, 989 (2d. Cir. 1995); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002). | |
| 27 | COPYRIGHT-DEFINED | Ninth Circuit Manual of Model Civil Jury Instructions § 17.1 (modified); (2007); 17 U.S.C. §§ 101, 304. | 20 |
| 28 | COPYRIGHT-SUBJECT | Ninth Circuit | 23 |

ii

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  | MATTER-GENERALLY | Manual of Model Civil Jury Instructions § 17.2; (2007). |  |
| 29 | COPYRIGHT-SUBJECT MATTER-IDEAS AND EXPRESSION | 9th Cir. Manual 17.3 (modified). | 26 |
| 30 | COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING | 9th Cir. Manual 17.4. | 29 |
| 31 | COPYRIGHT INFRINGEMENT-OWNERSHIP OF VALID COPYRIGHT DEFINITION | Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (modified) (2007), as modified; 17 U.S.C. §§ 101, 304; Act of March 4, 1909 ("1909 Act"), ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. Nimmer,  1 | 32 |

iii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | Nimmer on Copyright,§ 4.05[B][4] at 4-35. | |
| 32 | COPYRIGHT INFRINGEMENT—ORIGINALITY | Ninth Circuit Manual of Model Civil Jury Instruction § 17.13 (2007); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345-46 (1991). | 35 |
| 33 | COPYING-ACCESS AND SUBSTANTIAL SIMILARITY | Ninth Circuit Manual of Model Civil Jury Instructions § 17.16 (2007). | 38 |
| 34 | COPYRIGHT INFRINGEMENT-COPYING-ACCESS DEFINED | Ninth Circuit Manual of Model Civil Jury Instructions § 17.17 (2007). Regarding the evidence necessary to demonstrate access, *see Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-84 (9th Cir.2000) (holding that reasonable | 41 |

iv

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | opportunity is more than a "bare possibility," such as one based on mere speculation or conjecture; reasonable access can be shown by a chain of events connecting plaintiff's work and defendant's access or by plaintiff's work being widely distributed; often widespread dissemination approach is coupled with theory of "subconscious copying" (citing 4 Nimmer & D. Nimmer, NIMMER ON COPYRIGHT, § 13.02[A] (1999)); Art Attacks Ink, LLC, 581 F.3d at 1143-45 (finding no access | |

v

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | shown under chain of events or wide dissemination theories); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059 (9th Cir.1981) (finding access shown by dealings between parties and third party on chain of events theory relating to same subject matter). When the subject matter of dealings between parties and the third party differs, the chain is broken and access is not shown. *See Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 828 (C.D. Cal. 2010) (citing *Meta-Film Assocs. v. MCA*, 586 F. Supp. 1346, 1355 | |

vi

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | (C.D. Cal. 1984)). As to the plaintiff demonstrating that there is a "striking similarity" between works to support an inference of access, *see Three Boys Music.*, 212 F.3d at 483 (holding that in absent of any proof of access, copyright plaintiff can still make out case of infringement by showing that songs were "strikingly similar"). |  |
| 35 | SUBSTANTIAL SIMILARITY—EXTRINSIC TEST; INTRINSIC TEST | Ninth Circuit Manual of Model Civil Jury Instruction§§ 17.18 (modified). (2007); *Swirsky v. Carey,* 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, | 45 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | 2004); *Morris v. Guetta,* 2013 WL 440127, at fn. 6 (C.D. Cal. Feb. 4, 2013) (relying on *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir.1994) (citation omitted)); *Bernal v. Paradigm Talent & Literary Agency,* 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010) (relying on *Berkic v. Crichton,* 761 F.2d 1289, 1292 (9th Cir.1985)); *Newton v. Diamond,* 388 F.3d 1189, 1195 (9th Cir. 2004) (internal citations omitted); *Cavalier v. Random House,* 297 F.3d 815, 824 (9th Cir.2002); *Swirsky v. Carey,* 376 F.3d 841, | |

viii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | 847 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000). | |
| 33 | COPYRIGHT—INDEPENDENT CREATION | *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001). | 50 |
| 34 | COPYRIGHT INFRINGEMENT-COPYING-ACCESS DEFINED | 17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) ("Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence [a]nd the infringer is | 41-42 |

ix

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | insulated from liability for earlier infringements of the same work"); Jt. R. 26(f) Report (Doc. 75) at 4 (confirming agreement "that the Copyright Act's three year statute of limitations precludes relief as to any alleged infringements prior to May 31, 2011"). | |
| 35 | SUBSTANTIAL SIMILARITY | Ninth Circuit Manual of Model Civil Jury Instruction§§ 17.18. (2007); *Swirsky v. Carey,* 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004); *Morris v. Guetta,* 2013 WL 440127, at fn. 6 (C.D. Cal. Feb. 4, 2013) (relying on *Kouf v. Walt Disney Pictures & Television,* | 45-47 |

x

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | 16 F.3d 1042, 1045 (9th Cir.1994) (citation omitted)); *Bernal v. Paradigm Talent & Literary Agency,* 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010) (relying on *Berkic v. Crichton,* 761 F.2d 1289, 1292 (9th Cir.1985)); *Newton v. Diamond,* 388 F.3d 1189, 1195 (9th Cir. 2004) (internal citations omitted); *Cavalier v. Random House,* 297 F.3d 815, 824 (9th Cir.2002); *Swirsky v. Carey,* 376 F.3d 841, 847 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000). | |
| 36 | EXTRINSIC ANALYSIS | *Swirsky v. Carey,* 376 | 50 |

xi

**01911**

| No. | Title | Source | Page |
|---|---|---|---|
| | | F.3d 841, 847-48 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) | |
| 37 | INTRINSIC ANALYSIS | *Bernal v. Paradigm Talent & Literary Agency,* 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010)(relying on *Koufv. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir.1994)); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1445 (9th Cir. 1994); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F. 2d 600, 606 (1st Cir. 1998) | 54 |
| 38 | COMBINATION OF UNPROTECTABLE ELEMENTS | *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F. 2d 600 (1st Cir. 1998); *Apple Camp.,* | 57 |

xii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | 35 F.3d 1435, 1445-6 (9th Cir. 1994); *Dream Games of Arizona, Inc. v. PC Onsite,* 561 F.3d 983, 989 (9th Cir. 2009); *Swirsky v. Carey,* 376 F.3d 841, 845-8 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) (internal citations omitted); *Three Boys Music Corp. v. Bolton,* 212 F. 3d 477,486 (9th Cir. 2000). | |
| 39 | QUALITATIVE/QUANTITATIVE IMPORTANCE | *Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir.1987); *Newton v. Diamond,* 388 F.3d 1189, 1195 (9th Cir. 2004) (internal citations omitted); *Newton v. Diamond,* 204 F. Supp. 2d 1244, 1257 | 60 |

xiii

**01913**

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | (C.D. Cal. 2002); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir. 1936); *Bridgeport Music, Inc. v. UMG Recordings, Inc.,* 585 F.3d 267, 275 (6th Cir. 2009) ("Thus, the copying of a relatively small but qualitatively important or crucial element can be an appropriate basis upon which to find substantial similarity."). |  |
| 40 | COPYRIGHT INFRINGMENT – INVERSE RATIO | Ninth Circuit Manual of Model Civil Jury Instruction § 17.16 Supp. Instruction (2007) (modified); (relying on *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, | 63 |

xiv

| No. | Title | Source | Page |
|---|---|---|---|
| | | 486 (9th Cir.2000); *Swirsky v. Carey,* 376 F.3d 841, 844-45 (9th Cir.2004); *Rice v. Fox Broadcasting Co.,* 330, F.3d 1170, 1178 (9th Cir.2003)); *Metcalf v. Bochco,* 294 F.3d 1069, 1075 (9th Cir. 2002) ("If the trier of fact were to believe that Warren and Bochco actually read the scripts, as alleged by the Metcalfs, it could easily infer that the many similarities between plaintiffs' scripts and defendants' work were the result of copying, not mere coincidence.") | |
| 42 | DE MINIMIS COPYING | *Newton v. Diamond,* 388 F.3d 1189, 1193 (9th Cir. 2004) | 66 |

xv

| No. | Title | Source | Page |
|---|---|---|---|
|  |  | (relying on *Fisher v. Dees,* 794 F.2d 432, 434 n.2 (9th Cir.1986)). |  |
| 43 | INDEPENDENT CREATION | Ninth Circuit Manual of Model Civil Jury Instruction§ 17.16 Supp. Instruction (2007) (modified); *Three Boys Music Corp. v. Bolton,* 212 F. 3d 477, 486 (9th Cir. 2000) | 69 |
| 44 | WAIVER AND ABANDONMENT | *See Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1178 (S.D. Fla. 2006) aff'd, 527 F.3d 1218 (11th Cir. 2008); *Hadady Corp. V. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990). *Marya v. Warner/Chappell Music, Inc.*, 2015 WL | 72 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | 5568497, at *11 (C.D. Cal. Sept. 22, 2015) *Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1053 (D. Ariz. 2011). |  |
| 45 | LIABILITY FOR DISTRIBUTION | *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1384 (C.D. Cal. 1993) (relying on *Sygma Photo News, Inc. v. High Society Magazine, Inc.*,778 F.2d 89, 92 (2d Cir.1985); *Ford Motor Co. v. B & H Supply, Inc.*, 646 F.Supp. 975, 989 (D.Minn.1986); *Columbia Broadcasting Sys., Inc. v. Scorpio Music Distributors, Inc.*, 569 F.Supp. 47, 48-49 (E.D.Pa.1983), | 75 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | *affd without op.*, 738 F.2d 424 (3d Cir.1984)); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 1997 WL 381967, at *3 (C.D. Cal. Mar. 19, 1997) (quoting *Stabilisierungfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 207, 209 USPQ 633, 638 (D.C. Cir. 1981) and relying on 7 Wright & Miller, Federal Practice and Procedure, Civil2d 1614, at 225 (2d ed. 1986); LIABILITY, Black's Law Dictionary (9th ed. 2009). | |

xviii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 49 | COPYRIGHT-DAMAGES-ACTUAL DAMAGES AND DEFENDANTS' PROFITS | Ninth Circuit Manual of Model Civil Jury Instruction§ 17.32, 17.33 (2007); 17 U.S.C. 504(b); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 714 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g,* No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) ("Although *Andreas* does not necessarily set the bar for what is sufficient evidence of a causal nexus, comparing Polar Bear's claim vividly highlights its deficiencies. Missing is the link between | 78-79 |

xix

**01919**

| No. | Title | Source | Page |
|-----|-------|--------|------|
|     |       | the infringement and revenue resulting from sales."); *Oracle Corp. v. SAP AG,* 765 F.3d 1081, 1087 (9th Cir. 2014); *Blizzard Entm't, Inc. v. Reeves,* 2010 WL 4054095, at *I (C.D. Cal. Aug. 10, 2010). |      |
| 50  | APPORTIONMENT | *Business Trade Analysts, Inc. v. Freedonia Group, Inc.,* 887 F.2d 399, 407 (2d. Cir. 1989) (citing *Sheldon v. Metrro-Goldwyn Pictures,* 309 U.S. 390. 401-02 (1940); *Belford v. Scribner,* 144 U.S. 488, 508 (1892); *Callaghan v. Myers,* 128 U.S. 617, 665- 66 (1888); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 86 F.Supp. 399 | 82 |

xx

| No. | Title | Source | Page |
|---|---|---|---|
| | | (S.D.N.Y.1949), *affd as modified,* 191 F.2d 99 (2d Cir.1951). | |
| 51 | WILLFUL INFRINGEMENT | Ninth Circuit Manual of Model Civil Jury Instruction § 17.36 (2007) (modified). ("[A] finding of willfulness can also be made in connection with an assessment of defendant's profits, even though reference to willful infringement is made only in connection with statutory damages." *See, e.g., Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 487 (9th Cir.2000)); *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1335-36 (9th Cir. 1990)("The | 85-86 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | court found the infringements were willful because of 'Mr. Newman's deposition testimony that defendants received the December 26, 1984 notice of termination, failed to account for and pay royalties, yet nevertheless continued to manufacture and distribute phonorecords."'); *Frank Music Corp. v. Metro-GoldwynMayer, Inc.,* 772 F.2d 505, 515 (9th Cir. 1985); *Kamar Int'l, Inc. v. Russ Berrie & Co.,* 752 F.2d 1326, 1331-32 (9th Cir.1984). | |
| 53 | INTERNATIONAL DAMAGES | *Los Angeles News Serv. v. Reuters* | 89 |

xxii

**01922**

| No. | Title | Source | Page |
|---|---|---|---|
|  |  | *Television Intern., Ltd.,* 149 F.3d 987, 990-92 (9th Cir. 1998). |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

xxiii

1

## PLT. JURY INSTRUCTION NO. 26

2

3

### PRELIMINARY INSTRUCTION-COPYRIGHT (MODIFIED)

4

5   Plaintiff claims ownership of the copyright in Taurus and seek damages against

6   the Defendants for copyright infringement. Defendants deny infringing the

7   copyrights. To help you understand the evidence in this case, I will explain some of

8   the legal terms you will hear during this trial.

9

10   ### DEFINITION OF COPYRIGHT

11

12   The owner of a copyright has the right to exclude any other person from

13   reproducing, preparing derivative works, distributing, performing, displaying, or

14   using the work covered by copyright for a specific period of time.

15

16   Copyrighted work can be a musical work.

17

18   Ideas, procedures, processes, systems, methods of operation, concepts,

19   principles or discoveries cannot themselves be copyrighted.

20

21   The copyrighted work must be original. An original work that closely

22   resembles other works can be copyrighted so long as the similarity between the two

23   works is not the result of copying.

24

25   ### HOW COPYRIGHT IS OBTAINED

26

27   The owner of the copyright may register the copyright by delivering to the

28   Copyright Office of the Library of Congress a copy of the copyrighted work before it

13

**01924**

1   has been published, or by publishing the work with proper copyright notice affixed

2   and then delivering to the Copyright Office a copy of the copyrighted work.

3   Publication occurs when copies of the work are sold or offered for sale to the general

4   public with the consent of the copyright owner. After examination and a

5   determination that the material deposited constitutes copyrightable subject matter and

6   that legal and formal requirements are satisfied, the Register of Copyrights registers

7   the work and issues a certificate of registration to the copyright owner.

8           In order to register a Musical Composition with the Copyright Office, the law

9   requires that a copy of the work be deposited with the Copyright Office at the time of

10  application. Prior to 1978, only a visually perceptible copy (a paper copy) of the

11  composition could be deposited with the Copyright Office. Recordings

12  (phonorecords) of a Musical Composition were not permitted.

13          Sheet music or "lead sheets" submitted with the Copyright Office contain

14  elements of the work, but do not reflect the entire Musical Composition and instead,

15  are only a condensed version of a musical composition. The musical composition of a

16  song is that part of the song which does not change from performance to performance.

17          After examination and a determination that the material deposited constitutes

18  copyrightable subject matter and that legal and formal requirements are satisfied, the

19  Register of Copyrights registers the work and issues a certificate of registration to the

20  copyright owner. When an author of musical work dies, his copyright ownership and

21  registration(s) passes to his legal heirs.

22

23                          **PLAINTIFF'S BURDEN OF PROOF**

24          In this case, the Plaintiff contends that the Defendants have infringed the

25  Plaintiff's copyrights. The Plaintiff has the burden of proving by a preponderance of

26  the evidence that the Plaintiff is the owner of the copyrights and that the Defendants

27  copied original elements of the copyrighted work. Preponderance of the evidence

28

14

**01925**

means that you must be persuaded by the evidence that it is more probably true than
not true that the copyrighted work was infringed.

### PROOF OF COPYING

To prove that the Defendants copied the Plaintiff's work, the Plaintiff must
show that the Defendants had access to the Plaintiff's copyrighted work and that there
are substantial similarities between the Defendants' work and the Plaintiff's
copyrighted work. Proof of copying based on substantial similarity may be rebutted if
the Defendants show they independently created the Defendants' work.

### LIABILITY FOR INFRINGEMENT

One who reproduces, prepares derivative works from, distributes, or performs a
copyrighted work without authority from the copyright owner during the term of the
copyright, infringes the copyright.

Copyright may also be infringed by vicariously infringing and contributorily
infringing.

### VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has
profited directly from the infringing activity and the right and ability to supervise the
infringing activity, whether or not the person knew of the infringement.

### CONTRIBUTORY INFRINGEMENT

15

**01926**

1   A person is liable for copyright infringement by another if the person knows or

2   should have known of the infringing activity and induces, causes, or materially

3   contributes to the activity.

4

5   **DEFENSES TO INFRINGEMENT**

6   The defendant contends that there is no copyright infringement. There is no

7   copyright infringement where the defendant independently created the challenged

8   work.

9

10

11   Authority: Ninth Circuit Manual of Model Civil Jury Instructions & 17.0 (2007);

12   Act of March 4, 1909 ("1909 Act"),  ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart*

13   *v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v.Dunnahoo,*

14   637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. Nimmer, 1 Nimmer on

15   Copyright, §§ 4.03[A], 4.05[B][4] at 4-35; *Three Boys Music Corp v. Bolton*, 212

16   F.3d 477, 486 (9th Cir. 2000); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768

17   F.2d 1001, 1019 (9th Cir. 1985); *Woods v. Bourne Co.,* 60 F. 3d 978, 989 (2d. Cir.

18   1995) ("A 'lead sheet' [is] a very simple, hand-written rendering of the lyrics and

19   melody of the composition without harmonies and other embellishments."); *Newton*

20   *v. Diamond*, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002) ("A musical

21   composition's copyright protects the generic sound that would necessarily result

22   from any performance of the piece." In other words, the composition is that part of

23   the song that remains constant from performance to performance.).

24

25

26

27

28

16

1

## DEFENDANTS' OBJECTION

2       Plaintiff's proposed instruction is both factually and legally incorrect.

3       Factually, plaintiff is not the owner of the copyright he sues upon.  As plaintiff

4  has conceded, and appears from the face of the registration and renewal, the

5  copyright is owned by Hollenbeck Music.  Plaintiff's proposed instruction also omits

6  defenses, incorrectly suggesting that defendant's only defense is independent

7  creation.

8       Legally, the copyright in the musical composition *Taurus* is limited to the

9  1967 transcription deposited with the Copyright Office, and the Court has so found.

10  Order (159) on Summary Judgment Motion at 16-17.  Plaintiff's proposed

11  instruction that – "Sheet music or "lead sheets" submitted with the Copyright Office

12  contain elements of the work, but do not reflect the entire Musical Composition and

13  instead, are only a condensed version of a musical composition. The musical

14  composition of a song is that part of the song which does not change from

15  performance to performance." – is an incorrect statement of the law and relies upon

16  *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002), which involved a

17  composition and recording that were both copyrighted under the 1976 Copyright

18  Act.  The copyright in the 1909 Act composition in this action, as the Court has

19  found, is limited to the 1967 transcription deposited with the Copyright Office in

20  1967.

21       Defendants believe that their proposed instruction no. 22 is correct and

22  appropriate.

23

24

25

26

27

28

17

**01928**

1

## **PLAINTIFF'S REPLY**

2

3      Defendants' objections are erroneous. First of all, Defendants proposed

4  instruction is wholly inadequate. It does nothing to explain copyright law to the jury as

5  the standard instruction, and Plaintiff's instruction does. Second, Defendants'

6  misconstrue the nature and scope of the Court's order with respect to the deposit copy.

7  It only found that the composition of Taurus was based on deposit copy submitted to

8  the Copyright Office—not the elements only in the sound recording. ECF 159, at p.16-

9  17. A recent court, <u>Pharrell Williams v. Bridgeport Music</u>, considered this identical

10  issue and sided with Plaintiff's position: that the composition testified to by the experts

11  and used in the substantial similarity comparison must be based on the deposit copy,

12  not appear in identical form. In that case defendants complained in post-trial motions

13  that the sound recording was irrelevant to the expert analysis and also that it should not

14  have been played to the jury because the deposit copy was all that mattered. The court

15  noted that it had previously ***denied*** motions in limine on these precise issues. <u>See</u> Order

16  Denying Post-Trial Motions, 13-cv-6004 (ECF 423), at p7. (7/14/2015). That court held

17  at the motion in limine hearing: "I think [the Gaye Parties' expert] testimony is going

18  to have ***to be based on the deposit copy***. It's not to say they can't have listened to the

19  sound recording as part of their analysis. They simply can't present to the jury an

20  opinion that says, '[b]ecause I listened to the sound recording, I've reached this

21  conclusion.'" <u>See</u> Order Denying Post-Trial Motions, 13-cv-6004 (ECF 423), at p7.

22  (7/14/2015) (alternations in original) (emphasis added). Plaintiff's experts do indeed

23  opine that all pertinent, essential elements of Taurus are represented on the deposit copy

24  and that those protected elements appear in the Taurus sound recording. <u>See, e.g.</u>,

25  Declaration of Alexander Stewart, at ¶8-14 (ECF 169-1); Declaration of Erik Johnson

26  (ECF 176). Indeed, even Defendants' experts admit that the deposit copy contains and

27  represents much of the expression at issue which appear in the recordings of Taurus:

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Paragraph 14:** Moreover, approximately half of the notes in the iterations of the guitar melody in the recordings of "Taurus" in Dr. Stewart's Visual Exhibit C are not in the Taurus Transcription.

Id. (quoting defense expert Ferrara's report).

Defendants' objections to this instruction in reality concern a small minority of the overall instruction (to the extent some additional defenses could be listed, within reason, Plaintiff does not object). Overall, Plaintiff's instruction is far more in line with the standard instruction, as compared to the instruction Defendants (no. 22) have designed from whole cloth. Plaintiff thus respectfully requests that his instruction be accepted by the Court.

19

**PLT. JURY INSTRUCTION NO. 27**

**COPYRIGHT-DEFINED (MODIFIED) (17 U.S.C. § 106)**

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights

(1)     authorize, or make additional copies, or otherwise reproduce the copyrighted work in phonorecords;

(2)     recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

(3)     distribute sound recordings of the copyrighted work to the public by sale or other transfer of ownership; or

(4)     perform publicly a copyrighted musical work.

It is the owner of a copyright who may exercise these exclusive right[s] to copy.  The term "owner" includes the author of the work or a person who has acquired the copyright as an heir of the author.  In general, copyright law protects against production, distribution, and performance of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions § 17.1; (2007); 17 U.S.C. §§ 101, 304.

20

1

## **<u>DEFENDANTS' OBJECTION</u>**

2          Plaintiff is not the owner of the copyright that plaintiff sues upon and this

3    instruction is factually incorrect and misleading.  Further, it refers to matters – such

4    as the various rights of an owner – that are superfluous here.  Defendants believe

5    that their proposed instruction no. 22 is correct and appropriate.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

1

## **PLAINTIFF'S REPLY**

2

3      Defendants' continued insistence that Plaintiff does not own the Taurus

4  copyright is a denial of the objective evidence, applicable law, and court orders.

5  However, their objection is off base, as this instruction does not state that Plaintiff is

6  the owner of the copyright, it merely outlines the rights that an owner of a copyright

7  has.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

**PLT. JURY INSTRUCTION NO. 28**

**COPYRIGHT-SUBJECT MATTER-GENERALLY**
**(17 U.S.C. §102) (MODIFIED)**

The work, "Taurus," involved in this trial is known as a musical work, or musical composition.

You are instructed that a copyright may be obtained in the musical composition, "Taurus."

This work can be protected by the copyright law. Only that part of the works comprised of original works of authorship fixed in any tangible form of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions § 17.2; (2007).

23

**DEFENDANTS' OBJECTION**

This instruction is confusing and misleading, and an incorrect statement of the law, in instructing that the copyright at issue extends to fixed forms in which it is included or embodied – such as sound recordings.  That is an incorrect statement of the law.  Order (159) at 17 ("In the present case, Plaintiff's only copyright claim lies in the musical composition of *Taurus*, not the sound recording); *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK, 2014 WL 7877773, at *9-10 (C.D. Cal. Oct. 30, 2014) (recordings are "not protectable publications under the 1909 Act" and "the lead sheets are deemed to define the scope of [the 1909 Act] copyrighted compositions"); *Fahmy v. Jay Z*, No. 07CV05715-CAS-PJWx, 2015 WL 5680299, at *13-14 (C.D. Cal. Sept. 24, 2015) (same).

This instruction, as worded, also is inapt here, where the case does not involve, for example, a "procedure" or "method of operation."  It is confusing in the context of this case and defendants believe their proposed instructions, including instruction no. 24, are correct and appropriate.

24

**01935**

1

## PLAINTIFF'S REPLY

2

3        Copyright was obtained when the song is first created and common law

4  copyright protection attached. *Societe Civile Succession Guino v. Renoir, S49* F .3d

5  1182, 118S (9th Cir. 2008). When a registration was then filed with the U.S

6  Copyright office, along with a copy of the work, it became protected under federal

7  law. *See* Doc. No. 159, at p.10.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25

**PLT. JURY INSTRUCTION NO. 29**

## COPYRIGHT-SUBJECT MATTER-IDEAS AND EXPRESSION
## (17 U.S.C. § 102(b)) (MODIFIED)

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular [way of expressing] [expression of] an idea can be copyrighted and protected. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries. [In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection because ideas cannot be copyrighted.]

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions § 17.3 (2007).

26

01937

## **DEFENDANTS' OBJECTION**

This instruction is duplicative of defendants' proposed instruction no. 28 and defendants believe their proposed instructions, including no. 22, is correct and appropriate.

27

## **PLAINTIFF'S REPLY**

This instruction is not duplicative of no. 28, or no. 22 of Defendants. Defendants' instruction no. 28 concerns originality, which Plaintiff's instructions also address, while this instruction concerns the basic subject matter of copyright. Moreover, Defendants' instruction no. 28 contains unacceptable language as detailed in Plaintiff's objections.

28

## PLT. JURY INSTRUCTION NO. 30

## COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING (17 U.S.C. § 501(a)–(b))

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

1.  the plaintiff is the owner of a valid copyright; and

2.  the defendant copied original elements from the copyrighted work.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

**Source:** 9th Cir. Manual 17.4.

29

**01940**

## <u>DEFENDANTS' OBJECTION</u>

This instruction is inapt defendants raise defenses and, accordingly, defendants believe that their proposed instruction no. 25 should be used.

30

## **PLAINTIFF'S REPLY**

The purpose of this instruction is to outline the elements of copyright infringement. It is not to explain affirmative defenses. There are separate instructions that explain affirmative defenses and their applicability. This is the standard instruction and there is no reason to modify it.

31

**PLT. JURY INSTRUCTION NO. 31**

**COPYRIGHT INFRINGEMENT-**

**OWNERSHIP OF VALID COPYRIGHT DEFINITION (MODIFIED)**

**(17 U.S.C. §§ 201-205)**

The Plaintiffs are the owner of a valid copyright in the musical composition Taurus if the Plaintiff prove by a preponderance of the evidence that:

1.      Plaintiff's works are original;

2      the Plaintiff acquired the copyright of Randy Craig Wolfe in Taurus when the copyright was transferred to the Trust as authorized by the California Superior Court order; and

3.      the copyright in "Taurus" complies with copyright notice requirements by placing a copyright notice on publicly distributed copies of the works or by registering a copyright in the unpublished works prior to publication.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (2007), as modified; 17 U.S.C. *§ §* 101, 304; Act of March 4, 1909 ("1909 Act"), ch. 320 *§ §* 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. Nimmer,  1 Nimmer on Copyright,*§* 4.05[B][4] at 4-35 .

32

**01943**

1

### **DEFENDANTS' OBJECTION**

2       This instruction is both incorrect factually and misstates the law since sound

3   recordings are not "copies" of the copyrighted 1967 musical composition *Taurus*.

4   *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688-89 (9th Cir. 2000), *cert. denied*

5   531 U.S. 1051 (2000); *Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183,

6   1192 n. 8 (S.D.N.Y. 1973) (under the 1909 Act "[a] phonograph record is not a copy

7   of the musical composition itself"), *aff'd*, 546 F.2d 461 (2d Cir. 1976); 17 U.S.C §

8   303(b).  Defendants believe that their proposed instruction no. 26 is correct and

9   appropriate.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

1

## **PLAINTIFF'S REPLY**

2

3      The instruction Defendants want is inadequate and does not explain that

4  ownership of a copyright may be transferred—the precise issue in this case. It even

5  puzzlingly deletes any language relating to the transfer of the copyright, which is the

6  basis upon which Plaintiff asserts ownership. This instruction makes it clear for the

7  jury the factual determination they need to make concerning the ownership of

8  Taurus. Moreover, Defendants objection to the language concerning public

9  distribution is the standard language and is correct.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

**PLT. JURY INSTRUCTION NO. 32**

**COPYRIGHT INFRINGEMENT-ORIGINALITY (MODIFIED)**

An original work may include or incorporate elements taken from prior works, works from the public domain, or works owned by others, with the owner's permission. The original parts of the Plaintiff's work are the parts created:

(1) independently by the work's author, that is, the author did not copy it from another work; and

(2) by use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. It must only have a non-trivial creative spark. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable. In copyright law, the "original element" of a work need not be new or novel.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.13 (2007); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 345-46 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author, as opposed to copied from other works, and that it possesses at least some minimal degree of creativity." "[O]riginality requires independent creation plus a modicum of creativity.")

35

**01946**

## <u>DEFENDANTS' OBJECTION</u>

Plaintiff's proposed instruction is unclear and potentially confusing, including in this case where plaintiff's claim is based on a supposed selection and arrangement of public domain elements.  Defendants believe that their proposed instruction no. 29 is correct and appropriate.

36

1

## **PLAINTIFF'S REPLY**

2

3      Plaintiff's instruction is taken from the standard instruction. The bottom

4  paragraph added by Plaintiff reflects binding Ninth Circuit precedent and helpfully

5  explains originality. The Ninth Circuit has held:

6
7
8
9
10
11

>      **There is no one magical combination of these factors that
> will automatically substantiate a musical infringement suit**;
> each allegation of infringement will be unique. So long as the
> plaintiff can demonstrate, through expert testimony that
> addresses some or all of these elements and supports its
> employment of them, that the similarity was "substantial" and
> to "protected elements" of the copyrighted work, the extrinsic
> test is satisfied.

12  *Swirsky*, 376 F.3d at 849 (emphasis added). *Swirsky* also stated:

13
14
15
16
17

>      For example, in *Three Boys* we upheld a jury finding of
> substantial similarity based on the combination of five
> otherwise unprotectable elements: (1) the title hook phrase
> (including the lyric, rhythm, and pitch); (2) the shifted cadence;
> (3) the instrumental figures; (4) the verse/chorus relationship;
> and (5) the fade ending.

18  *Id.*

19      In contrast, Defendants' proposed instruction no. 29 incorrectly portrays

20  originality as some high barrier, the opposite of the legal reality. Defendants'

21  instruction also uses confusing legal terms of art that are unnecessary.

22

23

24

25

26

27

28

37

1

**PLT. JURY INSTRUCTION NO. 33**

2

3

**COPYING-ACCESS AND SUBSTANTIAL SIMILARITY (MODIFIED)**

4

5    Instruction 17.4 states that the Plaintiff has the burden of proving that the

6  Defendants copied original elements from the Plaintiff's copyrighted work. The

7  Plaintiff may show the Defendants copied from the work by showing by a

8  preponderance of the evidence that the Defendants had access to the Plaintiff's

9  copyrighted work and that there are substantial similarities between the Defendants'

10  work and original elements of the Plaintiff's work.

11

12

13  Authority: Ninth Circuit Manual of Model Civil Jury Instructions § 17.16 (2007)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38

**<u>DEFENDANTS' OBJECTION</u>**

This instruction is incomplete, and potentially misleading, and does not accurately state the law, which requires, *inter alia*, that the claimed access be reasonable and not speculative. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) ("speculation, conjecture, and inference" insufficient to establish access); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010) ("Reasonable access requires more than a 'bare possibility,' and 'may not be inferred through mere speculation or conjecture'"), *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001).

Defendants believe a single instruction correctly explaining the requirement of access is required to avoid confusion and believe that defendants' instruction no. 31 is correct and appropriate.

39

## PLAINTIFF'S REPLY

Plaintiff's instruction closely mirrors the standard instruction. Defendants do not even propose an instruction that informs the jury that copying involves access and substantial similarity. This is necessary introduction and prefacing as the jury is not comprised of lawyers.

Defendants' referenced instruction only refers to access and is inappropriate.

40

**PLT. JURY INSTRUCTION NO. 34**

**COPYRIGHT INFRINGEMENT- COPYING-ACCESS DEFINED (MODIFIED)**

As part of their burden in Instruction No. __, the Plaintiff must show by a preponderance of the evidence that the Defendants had access to the Plaintiff' work. The Defendants had access to the Plaintiff' work if the Defendants had a reasonable opportunity to hear the Plaintiff work before the Defendants' work was created.

Depending on the evidence at trial of the defendant's access to the allegedly infringed work, the court may instruct the jury about factors that show such access, by adding the following after the last paragraph of this instruction:

Access may be shown by:

[1.] a chain of events connecting the plaintiff's work and the defendant's opportunity to [hear] that work [or]

[2.] the plaintiff's work being widely disseminated] [or]

[3.] a similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions § 17.17 (2007). Regarding the evidence necessary to demonstrate access, *see Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-84 (9th Cir.2000) (holding that reasonable opportunity is more than a "bare possibility," such as one based on mere speculation or conjecture; reasonable access can be shown by a chain of events connecting plaintiff's work and defendant's access or by plaintiff's work being widely distributed; often widespread dissemination approach is coupled with theory of "subconscious copying" (citing 4 Nimmer & D. Nimmer, NIMMER ON

41

**01952**

1    COPYRIGHT, § 13.02[A] (1999)); Art Attacks Ink, LLC, 581 F.3d at 1143-45

2    (finding no access shown under chain of events or wide dissemination theories);

3    *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059 (9th Cir.1981) (finding access

4    shown by dealings between parties and third party on chain of events theory relating

5    to same subject matter). When the subject matter of dealings between parties and the

6    third party differs, the chain is broken and access is not shown. *See Gable v. Nat'l*

7    *Broad. Co.*, 727 F. Supp. 2d 815, 828 (C.D. Cal. 2010) (citing *Meta-Film Assocs. v.*

8    *MCA*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984)).  As to the plaintiff demonstrating

9    that there is a "striking similarity" between works to support an inference of access,

10   *see Three Boys Music.*, 212 F.3d at 483 (holding that in absent of any proof of

11   access, copyright plaintiff can still make out case of infringement by showing that

12   songs were "strikingly similar").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42

1

## **DEFENDANTS' OBJECTION**

2       Plaintiff's proposed instruction is inapt and confusing.  The Court has ruled

3   that plaintiff has not established a triable issue as to access by either direct access or

4   wide dissemination.  Order (159) at 13-14.  Defendants believe that their proposed

5   instruction no. 31 is appropriate for this case.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

43

1

## **PLAINTIFF'S REPLY**

2

3        Defendants' objections are misplaced. While the Court held for purposes of

4  summary judgment that access had not been established by the widespread

5  distribution and striking similarity, Plaintiff intends to introduce testimony in his

6  case in chief at trial that Taurus was in fact widely distributed on the first Spirit

7  album, both in the United States and in Britain. This will create a triable issue of fact

8  for the jury on widespread distribution. In addition, Plaintiff respectfully submits

9  that although the Court held at summary judgment that the compositions of the

10  songs are not strikingly similar that the sound recordings themselves and the

11  production techniques they use are so similar as to preclude independent creation

12  and creation a question of fact as to whether Defendants had access to Taurus.

13  The last paragraph of Defendants' instruction is designed to be unduly prejudicial

14  and the words themselves are largely unsupported by any case law. It attempts to

15  implant in the jury's mind that there is only the "bare possibility" Defendants heard

16  Plaintiff's song and that Plaintiff is relying on speculation. It also baselessly claims

17  that Plaintiff has to present "significant, affirmative, and probative evidence" of

18  access. All of this language is legally erroneous and meaningless.

19        Plaintiff's instruction closely mirrors the standard instruction. The standard is

20  "reasonable possibility." Defendants' proposed instruction could only confuse the

21  jury.

22

23

24

25

26

27

28

44

1
2
3

**PLT. JURY INSTRUCTION NO. 35**

**SUBSTANTIAL SIMILARITY (MODIFIED)**

4    If you determine that there are elements of expression in Defendants' song that

5  are similar to elements of protected expression in Plaintiff's song, you must then

6  determine whether that similarity is substantial. In determining whether there is

7  substantial similarity elements of protected expression in Defendants' song and

8  elements of protected expression in Plaintiff song, you are to apply two separate tests.

9

10    The first test is an objective one called the extrinsic test. Here, the analyses and

11  conclusions of the expert witnesses may be of assistance to you. There is no uniform

12  set of factors for you to analyze. Music is not capable of ready classification into only

13  five or six constituent elements; music is comprised of a large array of elements, some

14  combination of which is protectable by copyright. A combination of individually

15  otherwise unprotected elements can be infringed upon. You can analyze the title hook

16  phrase (including the lyric, rhythm, and pitch); the shifted cadence; the instrumental

17  figures; the verse/chorus relationship; the fade ending; the melody; the harmony; the

18  rhythm; the pitch; the tempo, the phrasing; the structure; the chord progressions; the

19  lyrics; the idea; the phraseology; the "melodic contours"; the pitch; the meter; the

20  timbre; the tone; the spatial organization; the consonance; the dissonance; the accents;

21  the note choice; the combinations; the interplay of instruments; the baselines; and new

22  technological sounds of the musical composition. There is no one magical

23  combination of these factors that will automatically substantiate a musical

24  infringement suit; each allegation of infringement will be unique. So long as Plaintiff

25  can demonstrate, through expert testimony that addresses some or all of these

26  copyrighted elements and supports its employment of them, that the similarity is

27  substantial and to protected elements of the copyrighted work, the objective test is

28  satisfied.

45

1

2   For example, in a similar copyright infringement case, the Court upheld a jury

3 finding of substantial similarity based on the combination of five otherwise

4 unprotectable elements: (1) the title hook phrase (including the lyric, rhythm, and

5 pitch); (2) the shifted cadence; (3) the instrumental figures; ( 4) the verse/chorus

6 relationship; and ( 5) the fade ending.

7

8   The second test is a subjective one, called the intrinsic test. Under the second

9 test, you are to determine whether an ordinary listener would find expression in

10 Defendants' song that is substantially similar to protected expression in Plaintiff's

11 song. Here, you should not take into account the testimony of the expert witnesses.

12 Rather, under this second test you should determine whether an ordinary, reasonable

13 audience would recognize the Plaintiff's and Defendants' work based on the concept

14 and feel of works, or whether any portion copied is qualitatively or quantitatively

15 important to the Plaintiff's work.

16

17   You may only determine that there is substantial similarity of protected

18 expression if you find that Plaintiff has established substantial similarity under both

19 the objective test and the subjective test.

20

21 Authority: Ninth Circuit Manual of Model Civil Jury Instruction§§ 17.18. (2007);

22 *Swirsky v. Carey,* 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g*

23 (Aug. 24, 2004); *Morris v. Guetta,* 2013 WL 440127, at fn. 6 (C.D. Cal. Feb. 4,

24 2013) (relying on *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045

25 (9th Cir.1994) (citation omitted)); *Bernal v. Paradigm Talent & Literary Agency,*

26 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010) (relying on *Berkic v. Crichton,* 761

27 F.2d 1289, 1292 (9th Cir.1985)); *Newton v. Diamond,* 388 F.3d 1189, 1195 (9th Cir.

28 2004) (internal citations omitted); *Cavalier v. Random House,* 297 F.3d 815, 824

1   (9th Cir.2002); *Swirsky v. Carey,* 376 F.3d 841, 847 (9th Cir. 2004), *as amended on*

2   *denial of reh'g* (Aug. 24, 2004); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477,

3   485 (9th Cir. 2000).

47

1

**DEFENDANTS' OBJECTION**

2        This instruction is an incorrect statement of the law and, for example, instructs

3   that copyright can be found or based upon ideas and non-copyrightable elements,

4   and is replete with references to elements that are either not copyrightable, are not

5   applicable (such as "title hook phrase" – there is no such thing here) and not even

6   music or within the *Taurus* composition copyright (such as "the interplay of

7   instruments" and "new technological sounds of the musical composition").

8        Also, instructing the jury to determine similarity based upon "concept and feel

9   of works" is uncertain and conflicts with established law that there is no copyright in

10   concepts, and, with "feel," is an inappropriate measure or test of infringement.  17

11   U.S.C. § 102(b) ("In no case does copyright protection for an original work of

12   authorship extend to any idea, procedure, process, system, method of operation,

13   concept, principle, or discovery, regardless of the form in which it is described,

14   explained, illustrated, or embodied in such work"); U.S. Copyright Office

15   Compendium § 310.4 ("Look and Feel -- The U.S. Copyright Office will not

16   consider the so-called 'look and feel' of a work.  Invoking a work's 'feel' is not a

17   viable substitute for an objective analysis of the work's fixed and creative elements.

18   *See* 4 MELVILLE & DAVID NIMMER, NIMMER ON Copyright §13.03[A][1][c]

19   (2013) (criticizing the use of "feel" as a "wholly amorphous referent" that "merely

20   invites an abdication of analysis").

21        Defendants believe that their proposed instruction no. 32 is correct and

22   appropriate.

23

24

25

26

27

28

48

1

## **PLAINTIFF'S REPLY**

2

3        Plaintiff's instruction closely mirrors the language of the standard instruction.

4  The instruction gives common examples of musical elements. This is completely

5  appropriate. In addition, the "total concept and feel" language is completely

6  appropriate. *See Three Boys*, 212 F.3d at 485 (quoting *Pasillas v. McDonald's Corp.*,

7  927 F.2d 440, 442 (9th Cir.1991)). Defendants' instruction, in contrast, misstates the

8  extrinsic test and tries to alter the intrinsic test to make it more like the extrinsic test.

9  Plaintiff's instruction is more, based on precedential case law, and does not attempt

10  to misstate the law.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

49

# PLT. JURY INSTRUCTION NO. 36

## EXTRINSIC ANALYSIS

In determining whether infringement exists, a note-by-note or measure-by-measure analysis is not necessary. Works do not have to be exactly identical on paper. Furthermore, objective analysis of music under the extrinsic test cannot mean that you may simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that the works are not substantially similar, without regard to other elements of the compositions. To pull the harmonic chord progression, tempo, and key elements out of a song individually, without also looking at them in combination, is to perform an incomplete and distorted musicological analysis. Furthermore, to disregard chord progression, key, tempo, rhythm, and genre is to ignore the fact that a substantial similarity can be found in a combination of elements, even if those elements are individually unprotected. For an accurate analysis, this constellation of elements must be viewed together.

Authority: *Swirsky v. Carey,* 376 F.3d 841, 847-48 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004).

50

**01961**

## DEFENDANTS' OBJECTION

Plaintiff's instruction misstates the law. Rather than prohibiting analytical dissection, the law mandates it. "*Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)( The extrinsic test requires 'analytical dissection of a work and expert testimony'" and "'[a]nalytical dissection' requires breaking the works 'down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity'"), *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001) *& Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *rev'd on other grounds*, 330 F.3d 1170 (9th Cir. 2003).

Defendants believe their proposed instruction no. 32 is correct and appropriate.

51

**01962**

1

# **PLAINTIFF'S REPLY**

2

3          Defendants' objection is incorrect and misconstrues the nature of the

4    analytical dissection that takes place under the extrinsic test, and takes the cases they

5    cite out of context. *Swirksy* states:

6              In analyzing musical compositions under the extrinsic test, we have
7              never announced a uniform set of factors to be used. We will not do
               so now. Music, like software programs and art objects, is not capable
8              of ready classification into only five or six constituent elements;
               music is comprised of a large array of elements, some combination of
9              which is protectable by copyright.[15] For example, in *Three Boys* we
10             upheld a jury finding of substantial similarity based on the
               combination of five otherwise unprotectable elements: (1) the title
11             hook phrase (including the lyric, rhythm, and pitch); (2) the shifted
12             cadence; (3) the instrumental figures; (4) the verse/chorus
               relationship; and (5) the fade ending. *Three Boys,* 212 F.3d at 485.
13             Other courts have taken account of additional components of musical
14             compositions, including melody, harmony, rhythm, pitch, tempo,
               phrasing, structure, chord progressions, and lyrics.*See Ellis v.*
15             *Diffie,* 177 F.3d 503, 506(6th Cir.1999) (noting that the district court
16             had compared idea, phraseology, lyrics, rhythms, chord progressions,
               "melodic contours," structures, and melodies under "ordinary
17             observer" test); *Cottrill v. Spears,* 2003 WL 21223846, at *9 (E.D.Pa.
18             May 22, 2003) (unpublished disposition) (comparing pitch, chord
               progression, meter, and lyrics under extrinsic test); *Tisi v. Patrick,* 97
19             F.Supp.2d 539, 543 (S.D.N.Y.2000) (analyzing structure, melody,
20             harmony, and rhythm under"striking similarity" test); *McKinley v.*
               *Raye,* 1998 WL 119540, at *5 (N.D.Tex. March 10, 1998) (mem.)
21             (analyzing lyrics, melodies, and song structure); *Damiano v. Sony*
22             *Music Entm't, Inc.,* 975 F.Supp. 623, 631 (D.N.J.1996) (analyzing
               instrumentation and melody under the extrinsic test); *Sylvestre v.*
23             *Oswald,* 1993 WL 179101, at *4 (S.D.N.Y. May 18, 1993) (analyzing
24             melody and lyrics under "striking similarity" test); *Intersong-USA v.*
               *CBS, Inc.,* 757 F.Supp. 274, 280 (S.D.N.Y.1991)(analyzing chord
25             progression, structure, pitch, and harmony under substantial
26             similarity[16] test). In addition, commentators have opined that timbre,
               tone, spatial organization, consonance, dissonance, accents, note
27             choice, combinations, interplay of instruments, basslines, and new

28

1   technological sounds can all be elements of a musical
2   composition. *See* Brent, *supra,* at 248-89; Stephanie J. Jones, *Music Copyright in Theory and Practice: An Improved Approach for Determining Substantial Similarity,* 31 Duq. L.Rev. 277, 294-95
3   (1993).

4         There is no one magical combination of these factors that will
5   automatically substantiate a musical infringement suit; each allegation
6   of infringement will be unique. So long as the plaintiff can
    demonstrate, through expert testimony that addresses some or all of
7   these elements and supports its employment of them, that the
    similarity was "substantial" and to "protected elements" of the
8   copyrighted work, the extrinsic test is satisfied.

9   *Swirsky,* 376 F.3d at 849.

10        Plaintiff's instruction is based on precedential case law and should be adopted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

53

**01964**

**PLT. JURY INSTRUCTION NO. 37**

**INTRINSIC ANALYSIS**

In analyzing the "total concept and feel," you are comparing two works to determine if the allegedly infringing and infringed elements are substantially similar. In comparing the works, you must subjectively determine whether a reasonable audience will recognize the allegedly infringing elements of Defendants' work as a derivative of the Plaintiff's work and whether Defendants unlawfully appropriated Plaintiff's *protectable expression* by taking material of substance and value.

Authority: *Bernal v. Paradigm Talent & Literary Agency,* 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010)(relying on *Koufv. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir.1994)); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1445 (9th Cir. 1994); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F. 2d 600, 606 (1st Cir. 1998).

54

## DEFENDANTS' OBJECTION

Plaintiff's instruction and its reference to recognizing a work "as a derivative" is unclear and potentially misleading, and not a complete statement of the law, which requires, *inter alia*, that public domain elements be disregarded and the test limited to original material. *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical elements not protected); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . . can be compared when it comes to the ultimate question of illicit copying"), *cert. denied* 513 U.S. 1184 (1995).

Defendants believe their proposed instruction no. 32 is correct and appropriate.

55

1

## **PLAINTIFF'S REPLY**

2

3      Plaintiff's instruction uses the accepted "total concept and feel" language. See

4  *Three Boys*, 212 F.3d at 485 (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440,

5  442 (9th Cir.1991)). The language in Defendants' proposed instruction essentially

6  attempts to transform the intrinsic test into the extrinsic test, instructing the jury to

7  discard elements of the song. This is highly confusing and legally erroneous.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

56

# PLT. JURY INSTRUCTION NO. 38

## COMBINATION OF UNPROTECTABLE ELEMENTS

You must decide whether Defendants unlawfully infringed upon Plaintiff's protected elements. You may find a combination of unprotectable elements to be protectable. Instruction Nos. _____ and _____ lists examples of some combinations of unprotectable elements that are protectable.

Authority: *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F. 2d 600 (1st Cir. 1998); *Apple Camp.,* 35 F.3d 1435, 1445-6 (9th Cir. 1994); *Dream Games of Arizona, Inc. v. PC Onsite,* 561 F.3d 983, 989 (9th Cir. 2009); *Swirsky v. Carey,* 376 F.3d 841, 845-8 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) (internal citations omitted); *Three Boys Music Corp. v. Bolton,* 212 F. 3d 477,486 (9th Cir. 2000).

57

1

## **DEFENDANTS' OBJECTION**

2     Plaintiff's instruction is contrary to law, which requires a protectable selection

3  and arrangement, rather than just a "combination," and uncertain and potentially

4  misleading.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348

5  (1991) ("selection and arrangement").  Such a copyright is also "thin" and requires

6  near identity of copying.  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A]

7  combination of unprotectable elements is eligible for copyright protection only if

8  those elements are numerous enough and their selection and arrangement original

9  enough that their combination constitutes an original work of authorship").

10    Defendants believe their proposed instruction no. 29 is correct and

11  appropriate.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

58

1

## **PLAINTIFF'S REPLY**

2      Defendants' objection is not legally correct and is not supported by the case

3  law it cites. The Ninth Circuit has held:

> There is no one magical combination of these factors that will
> automatically substantiate a musical infringement suit; each
> allegation of infringement will be unique. So long as the
> plaintiff can demonstrate, through expert testimony that
> addresses some or all of these elements and supports its
> employment of them, that the similarity was "substantial" and
> to "protected elements" of the copyrighted work, the extrinsic
> test is satisfied.

*Swirsky*, 376 F.3d at 849. *Swirsky* also stated:

> For example, in *Three Boys* we upheld a jury finding of
> substantial similarity based on the combination of five
> otherwise unprotectable elements: (1) the title hook phrase
> (including the lyric, rhythm, and pitch); (2) the shifted cadence;
> (3) the instrumental figures; (4) the verse/chorus relationship;
> and (5) the fade ending.

*Id.* Defendants' instruction is not supported by the law.

59

1

# PLT. JURY INSTRUCTION NO. 39

2

3

## QUALITATIVE/QUANTITATIVE IMPORTANCE

4

5        Infringement may also exist where portions copied are individually *either*

6   qualitatively *or* quantitatively important to the allegedly infringed work.

7

8        A portion of an infringed composition is said to be *qualitatively* important to

9   the work if, even though small in size, it is important to the infringed composition.

10  Thus even the copying of a relatively small portion of an composition may support a

11  finding of substantial similarity.

12

13       Quantitative importance is said to exist if Defendants copied a large portion of

14  Taurus into Stairway to Heaven.

15

16       You need not find both quantitative and qualitative importance in order to find

17  infringement. Copying of a qualitative *or* quantitative portion of the allegedly

18  infringed work will suffice.

19

20  Authority: *Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir.1987); *Newton v.*

21  *Diamond,* 388 F.3d 1189, 1195 (9th Cir. 2004) (internal citations omitted); *Newton v.*

22  *Diamond,* 204 F. Supp. 2d 1244, 1257 (C.D. Cal. 2002); *Sheldon v. Metro-Goldwyn*

23  *Pictures Corp.,* 81 F.2d 49, 56 (2d Cir. 1936); *Bridgeport Music, Inc. v. UMG*

24  *Recordings, Inc.,* 585 F.3d 267, 275 (6th Cir. 2009) ("Thus, the copying of a

25  relatively small but qualitatively important or crucial element can be an appropriate

26  basis upon which to find substantial similarity.").

27

28

## **DEFENDANTS' OBJECTION**

Plaintiff's instruction, in characterizing the test for de minimis copying, fails to include that any copying – whether quantitatively or qualitatively important – must be copying of protected expression.  This instruction risk the jury concluding that qualitatively or quantitatively important public domain material – such as the public domain minor line cliché in both works – establishes plaintiff's claim.

Defendants believe their proposed instruction no. 39 is correct and appropriate.

61

1

**PLAINTIFF'S REPLY**

2

3      Defendants seek to improperly convince the factfinder that small portions of

4  larger works cannot be deemed infringement. In fact, very tiny portions of a work

5  are accorded protection and can be copied:

6          A leading case on de minimis infringement in our circuit is *Fisher v.*
           *Dees,* 794 F.2d 432 (9th Cir.1986), where we observed that a use is de
7          minimis only if the average audience would not recognize the
           appropriation. *See id.* at 434 n. 2 ("[A] taking is considered de
8          minimis only if it is so meager and fragmentary that the average
9          audience would not recognize the appropriation.").

10

11  *Newton v. Diamond,* 388 F.3d 1189, 1193 (9th Cir. 2004). The Ninth has also held

12  that:

13         Although it is true that a single musical note would be too small a unit
           to attract copyright protection (one would not want to give the first
14         author a monopoly over the note of B-flat for example), an
           arrangement of a limited number of notes can garner copyright
15         protection. *See Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp.
           741, 744 (S.D.N.Y.1980) (finding that four notes were substantial
16         enough to be protected by copyright); *Santrayll v. Burrell,* 1996 WL
17         134803, at *2 (S.D.N.Y. Mar.25, 1996) (mem.order) (finding that the
           repetition of the word "uh-oh" four times in a distinctive rhythm for
18         one measure is sufficiently original to render it protectable under the
19         copyright laws). This Court has stated that "[e]ven if a copied portion
           be relatively small in proportion to the entire work, if qualitatively
20         important, the finder of fact may properly find substantial
21         similarity." *Baxter v. MCA, Inc.,* 812 F.2d 421, 425(9th Cir.1987).

22

23  *Swirsky,* at 851-52.

24

25

26

27

28

62

1

2

3

# **PLT. JURY INSTRUCTION NO. 40**

## **COPYRIGHT INFRINGMENT – INVERSE RATIO (MODIFIED)**

4

5       The access and substantial similarity elements of infringement are "inextricably

6  linked" by an inverse ratio rule. The inverse ratio rule requires a lower standard of

7  proof of substantial similarity when a high degree of access is shown. If you believe

8  that Defendants' actually heard Plaintiff's copyrighted work and there are substantial

9  similarities between the works, you can infer that the substantial similarities between

10  Plaintiff's copyrighted work and Plaintiffs and Defendants' work are the result of

11  copying, not mere coincidence.

12

13

14  Authority: Ninth Circuit Manual of Model Civil Jury Instruction *§* 17.16 Supp.

15  Instruction (2007); (relying on *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 486

16  (9th Cir.2000); *Swirsky v. Carey,* 376 F.3d 841, 844-45 (9th Cir.2004); *Rice v. Fox*

17  *Broadcasting Co.,* 330, F.3d 1170, 1178 (9th Cir.2003)); *Metcalf v. Bochco,* 294 F.3d

18  1069, 1075 (9th Cir. 2002) ("If the trier of fact were to believe that Warren and

19  Bochco actually read the scripts, as alleged by the Metcalfs, it could easily infer that

20  the many similarities between plaintiffs' scripts and defendants' work were the result

21  of copying, not mere coincidence.")

22

23

24

25

26

27

28

63

**<u>DEFENDANTS' OBJECTION</u>**

Plaintiff's proposed instruction fails to distinguish between probative substantial similarity and substantial similarity as to protectable expression. *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) (no infringement even though access and admitted copying).  The instruction is likely to confuse and mislead the jury.

64

1

## **PLAINTIFF'S REPLY**

2

3       The inverse ratio is intrinsic to the substantial similarity comparison and is

4   basic copyright law. *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 486 (9th

5   Cir.2000); *Swirsky v. Carey,* 376 F.3d 841, 844-45 (9th Cir.2004); *Rice v. Fox*

6   *Broadcasting Co.,* 330, F.3d 1170, 1178 (9th Cir.2003)); *Metcalf v. Bochco,* 294

7   F.3d 1069, 1075 (9th Cir. 2002) ("If the trier of fact were to believe that Warren and

8   Bochco actually read the scripts, as alleged by the Metcalfs, it could easily infer that

9   the many similarities between plaintiffs' scripts and defendants' work were the result

10  of copying, not mere coincidence."). "In the Ninth Circuit, the access and substantial

11  similarity elements of infringement are 'inextricably linked' by an inverse ratio

12  rule." Ninth Circuit Model Instruction 17,16 supp. (quoting *Benay v. Warner Bros.*

13  *Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir.2010)). The jury should be so instructed.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

65

**PLT. JURY INSTRUCTION NO. 42**

**DE MINIMIS COPYING**

     Defendants contend that there is no copyright infringement because Plaintiff copyright infringement claims are barred because any alleged use or copying of Plaintiff's copyrighted material is *de minimis.* Defendants have the burden of proving this defense by a preponderance of the evidence. Infringement is considered *de minimis* if the use is so meager and fragmentary that the average audience would not recognize the appropriation.

Authority: *Newton v. Diamond,* 388 F.3d 1189, 1193 (9th Cir. 2004) (relying on *Fisher v. Dees,* 794 F.2d 432, 434 n.2 (9th Cir.1986)).

66

1

## **DEFENDANTS' OBJECTION**

2   Plaintiff's instruction misstates the law and is an incomplete statement of the

3   law. Although pleaded here as a defense, de minimis copying is the result when

4   copying is established but not substantial. *Newton v. Diamond*, 388 F.3d 1189,

5   1192-93 (9th Cir. 2004) ("For an unauthorized use of a copyrighted work to be

6   actionable, the use must be significant enough to constitute infringement [citation

7   omitted]. This means that even where the fact of copying is conceded, no legal

8   consequences will follow from that fact unless the copying is substantial."). Plaintiff

9   has the burden of proving substantial copying, so the burden lies with plaintiff to

10   prove that any alleged copying of original material was not de minimis.

11   Defendants believe that their proposed instruction no. 39 is correct and

12   appropriate.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

67

1

## PLAINTIFF'S REPLY

2

3       Defendants seek to improperly convince the factfinder that small portions of

4   larger works cannot be deemed infringement. In fact, very tiny portions of a work

5   are accorded protection and can be copied:

6           A leading case on de minimis infringement in our circuit is *Fisher v.*
            *Dees,* 794 F.2d 432 (9th Cir.1986), where we observed that a use is de
7           minimis only if the average audience would not recognize the
            appropriation. *See id.* at 434 n. 2 ("[A] taking is considered de
8           minimis only if it is so meager and fragmentary that the average
9           audience would not recognize the appropriation.").

10

11   *Newton v. Diamond,* 388 F.3d 1189, 1193 (9th Cir. 2004). The Ninth has also held

12   that:

13           Although it is true that a single musical note would be too small a unit
             to attract copyright protection (one would not want to give the first
14           author a monopoly over the note of B-flat for example), an
             arrangement of a limited number of notes can garner copyright
15           protection. *See Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp.
             741, 744 (S.D.N.Y.1980) (finding that four notes were substantial
16           enough to be protected by copyright); *Santrayll v. Burrell,* 1996 WL
17           134803, at *2 (S.D.N.Y. Mar.25, 1996) (mem.order) (finding that the
             repetition of the word "uh-oh" four times in a distinctive rhythm for
18           one measure is sufficiently original to render it protectable under the
             copyright laws). This Court has stated that "[e]ven if a copied portion
19           be relatively small in proportion to the entire work, if qualitatively
20           important, the finder of fact may properly find substantial
             similarity." *Baxter v. MCA, Inc.,* 812 F.2d 421, 425(9th Cir.1987).
21

22   *Swirsky*, at 851-52.

23       Plaintiff's instruction no. 42 quotes precedential case law and is appropriate,

24   to the extent there is even a triable issue of fact that the work appropriated was de

25   minimis.

26

27

28

1

**PLT. JURY INSTRUCTION NO. 43**

2

3

**INDEPENDENT CREATION (MODIFIED)**

4

5    If Plaintiff shows Defendants had access to Plaintiff's work and that there is a

6  substantial similarity between the infringed and infringing works, a presumption of

7  copying arises, that shifts the burden to Defendants to rebut or to show that the

8  alleged infringing work was independently created.

9

10    In determining whether Defendants' song was independently created, you may

11  consider evidence presented by Defendants regarding the manner in which the

12  composers created Defendants' song and any other evidence of the circumstances

13  surrounding the creation of Defendants' song.

14

15

16

17  Authority: Ninth Circuit Manual of Model Civil Jury Instruction§ 17.16 Supp.

18  Instruction (2007); *Three Boys Music Corp. v. Bolton,* 212 F. 3d 477, 486 (9th Cir.

19  2000).

20

21

22

23

24

25

26

27

28

69

## DEFENDANTS' OBJECTION

As the source of this proposed instruction, plaintiff cites to Ninth Circuit Model Civil Instruction 17.16, but that is the instruction for access and substantial similarity and defendants have found not Model instruction for independent creation. Plaintiff's proposed instruction is also incomplete.  Defendants believe that their proposed instruction no. 33 is correct and appropriate.

70

1

## **PLAINTIFF'S REPLY**

2

3      The supplemental instruction to Model Instruction 17.16 states:

4      If the plaintiff shows that the defendant had access to the plaintiff's
       work and that there is a substantial similarity between the infringed
5      and infringing works, a presumption of copying arises shifting the
       burden to the defendant to rebut the presumption or to show that the
6      alleged infringing work was independently created. *Three Boys*
7      *Music*, 212 F.3d at 486 ("By establishing reasonable access and
       substantial similarity, a copyright plaintiff creates a presumption of
8      copying. The burden shifts to the defendant to rebut that presumption
9      through proof of independent creation.").

10

11     Plaintiff's instruction is based on the language of the model instructions. Defendants'
       objection is wrong. In addition, Defendants' instruction no. 33 is unduly prejudical
12     and biased and not based in the model instructions.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

71

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail:  hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DEFENDANTS' DISPUTED JURY INSTRUCTIONS AND SPECIAL VERDICT FORMS |
| LED ZEPPELIN, *et al.*, | |
| Defendants. | Date:  May 10, 2016 |
| | Time: 9:00 a.m. |
| | Courtroom of the Honorable |
| | R. Gary Klausner |
| | United States District Judge |

**01983**

1       Pursuant to the Court's Order for Jury Trial, defendants James Patrick Page,

2   Robert Anthony Plant, Warner/Chappell Music, Inc., Atlantic Recording

3   Corporation and Rhino Entertainment Company submit the following disputed jury

4   instructions and special verdict forms, with plaintiff's position as to the instructions

5   and verdict forms to which he objects.

6       Defendants have raised that *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.

7   Ct. 1962 (2014) and other case law confirms that plaintiff's request for an award of

8   defendants' profits attributable to the alleged infringement is an equitable remedy

9   tried to the Court.  Defs' Memo. of Contentions of Fact & Law (Doc. 157) at 19-20.

10  Defendants provide instructions as to profits solely as a precautionary measure.

11      Defendants also have raised that, in the interest of economy and to avoid jury

12  confusion and prejudice by exposing the jury to evidence of defendants' respective

13  revenues, costs and profits – irrelevant on the issue of liability – liability and

14  remedies are properly bifurcated, with liability tried first.  *Id.* at 20-21.

15      Defendants respectfully reserve the right to modify or supplement the

16  following jury instructions and propose additional or different jury instructions.

17  Dated: April 22, 2016

                                ____/s/ Peter J. Anderson____

                                  Peter J. Anderson, Esq.

                      LAW OFFICES OF PETER J. ANDERSON

                          A Professional Corporation

                          Attorney for Defendants

                      JAMES PATRICK PAGE, ROBERT

                  ANTHONY PLANT, JOHN PAUL JONES,

                      WARNER/CHAPPELL MUSIC, INC.,

                      SUPER HYPE PUBLISHING, INC.,

                  ATLANTIC RECORDING CORP., RHINO

                    ENTERTAINMENT COMPANY and

                      WARNER MUSIC GROUP CORP.

                          Helene M. Freeman, Esq.

                          PHILLIPS NIZER LLP

                        Attorney for Defendants

                        JAMES PATRICK PAGE,

                  ROBERT ANTHONY PLANT and

                      JOHN PAUL JONES

1

1        Approved as to the statements of plaintiff's objections to plaintiff's proposed

2    jury instructions and verdict forms:

3    Dated: April 22, 2016

4                                         /s/ Francis Alexander Malofiy
                                     Francis Alexander Malofiy, Esq.

5                                     FRANCIS ALEXANDER, LLC
                                 Attorney for Plaintiff

6                                     MICHAEL SKIDMORE,
                       As Trustee of the Randy Craig Wolfe Trust

7

8                                     Glen L. Kulik, Esq.
                         KULIK GOTTESMAN & SIEGEL LLP

9                                     Attorney for Plaintiff
                                 MICHAEL SKIDMORE,
                       As Trustee of the Randy Craig Wolfe Trust

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**JURY INSTRUCTIONS**

| No. | Title | Source | Page |
|---|---|---|---|
| | Liability Phase | | |
| 2 | DUTY OF JURY | 9th Cir. Manual 1.1C (modified) | 1 |
| 15 | TAKING NOTES | 9th Cir. Manual 1.15 (modified). | 4 |
| 22 | INTRODUCTION TO COPYRIGHT CLAIM | 3 Kevin F. O'Malley, *et al.*, *Federal Jury Practice & Instructions* § 160.01 (5th ed. 2001); 9th Cir. 17.0 &17.1 (modified); 17 U.S.C. § 106; *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996); Copyright Office Compendium §§ 313.4(B) (three notes not copyrightable), 313.4(C) (same as to "Mi do re sol, sol re mi do") & 802.5(A) (chromatic scales and arpeggios are | 7 |

i

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | "common property musical material" in the public domain); 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 8.01[A] ("absent copying, there can be no infringement of copyright, regardless of the extent of similarity"). | |
| 23 | HOW COPYRIGHT OBTAINED | Copyright Act of 1909, 17 U.S.C. §§ 11-12 (registration by "the deposit, with claim of copyright, of one complete copy of such work if it be a . . . musical, or dramatico-musical composition"); 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] | 11 |

ii

| No. | Title | Source | Page |
|---|---|---|---|
| | | ("Because, under the 1909 Act, copyright protection required . . . the deposit of *copies* . . . , to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form"); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688-89 (9th Cir. 2000) (under the 1909 Act, recordings were not copies of musical compositions), *cert. denied* 531 U.S. 1051 (2000). | |
| 24 | MUSICAL COMPOSITIONS AND SOUND RECORDINGS | *Newton v. Diamond*, 388 F.3d 1189, 1193-95 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 | 14 |

iii

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | (C.D. Cal. 2002), *aff'd* 388 F.3d 1189. |  |
| 25 | COPYRIGHT INFRINGEMENT —ELEMENTS—OWNERSHIP AND COPYING (17 U.S.C. § 501(a)–(b)) | 9th Cir. Manual 17.4 (modified). | 19 |
| 26 | COPYRIGHT INFRINGEMENT —OWNERSHIP OF VALID COPYRIGHT—DEFINITION (17 U.S.C. §§ 201–205) | 9th Cir. Manual 17-5 (modified); Copyright Act of 1909, 17 U.S.C. §§ 11-12 (registration by "the deposit, with claim of copyright, of one complete copy of such work if it be a . . . musical, or dramatico-musical composition"); 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] ("Because, under the 1909 Act, copyright protection required . . . the deposit of *copies* . . . , to claim copyright in a musical | 22 |

iv

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form"). | |
| 27 | BENEFICIAL OWNERSHIP OF COPYRIGHT | *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) ("To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright'" (*quoting* 17 U.S.C. § 501(b)), *cert. denied* 546 U.S. 827 (2005); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1144 (9th Cir.2003) ("Beneficial owners include, 'for example, an author who had parted with | 25 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | legal title to the copyright in exchange for percentage royalties based on sales or license fees'"), *quoting* H.R. Rep. No. 94–1476, at 159. | |
| 28 | COPYRIGHT INFRINGEMENT —ORIGINALITY | 9th Cir. 17.13 (modified); *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . . can be compared when it comes to the ultimate question of illicit | 29 |

vi

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | copying"), *cert. denied* 513 U.S. 1184 (1995). |  |
| 29 | COPYRIGHT—ORIGINALITY IN ARRANGEMENT | *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991); *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship"). | 32 |
| 31 | COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED | 9th Cir. Manual 17.17 (modified); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th | 35 |

vii

**01992**

| No. | Title | Source | Page |
|-----|-------|--------|------|
|  |  | Cir. 2003) |  |
|  |  | ("speculation, |  |
|  |  | conjecture, and |  |
|  |  | inference" insufficient |  |
|  |  | to establish access); |  |
|  |  | *Gable v. Nat'l Broad.* |  |
|  |  | *Co.*, 727 F. Supp. 2d |  |
|  |  | 815, 824 (C.D. Cal. |  |
|  |  | 2010) ("Reasonable |  |
|  |  | access requires more |  |
|  |  | than a 'bare |  |
|  |  | possibility,' and 'may |  |
|  |  | not be inferred |  |
|  |  | through mere |  |
|  |  | speculation or |  |
|  |  | conjecture'"), *quoting* |  |
|  |  | *Three Boys Music* |  |
|  |  | *Corp. v. Bolton*, 212 |  |
|  |  | F.3d 477, 482 (9th |  |
|  |  | Cir. 2000), *cert.* |  |
|  |  | *denied* 531 U.S. 1126 |  |
|  |  | (2001); 3 M. Nimmer |  |
|  |  | & D. Nimmer, |  |
|  |  | *Nimmer on Copyright* |  |
|  |  | § 12.11[D][1] ("even |  |
|  |  | if the two works in |  |
|  |  | question are |  |

viii

**01993**

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | substantially similar, plaintiff still cannot prevail unless it meets its burden "of producing significant, affirmative, and probative evidence to demonstrate that defendant had access to its claimed work"), *quoting Prince Grp., Inc. v. MTS Products*, 967 F. Supp. 121, 127 (S.D.N.Y. 1997). | |
| 32 | SUBSTANTIAL SIMILARITY—EXTRINSIC TEST; INTRINSIC TEST | Comment to 9th Cir. 17.17; Copyright Office Compendium § 310.4; 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] ("for courts to advert to a work's total concept as the essence of its protectible character seems ill-advised in the extreme. Further, | 39 |

ix

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | the addition of 'feel' to the judicial inquiry, being a wholly amorphous referent, merely invites an abdication of analysis"); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004); *Newton v. Diamond*, 388 F.3d 1189, 1194-95 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005); *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003), *cert. denied* 540 U.S. 983 (2003) ("[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th | |

x

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | Cir. 1996); *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical elements not protected); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . . can be compared when it comes to the ultimate question of illicit copying"), *cert. denied* 513 U.S. 1184 (1995); Copyright Office Compendium §§ 313.4(B) (three notes not copyrightable), 313.4(C) (same as to "Mi do re sol, sol re mi do") & 802.5(A) | |

xi

| No. | Title | Source | Page |
|-----|-------|--------|------|
|     |       | (chromatic scales and arpeggios are "common property musical material" in the public domain). |      |
| 33  | COPYRIGHT—INDEPENDENT CREATION | *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001). | 45 |
| 34  | STATUTE OF LIMITATIONS | 17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) ("Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence [a]nd the infringer is insulated from liability for earlier | 49 |

xii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | infringements of the same work"); Jt. R. 26(f) Report (Doc. 75) at 4 (confirming agreement "that the Copyright Act's three year statute of limitations precludes relief as to any alleged infringements prior to May 31, 2011"). | |
| 39 | COPYRIGHT—DE MINIMIS | *Newton v. Diamond*, 388 F.3d 1189, 1192, 1995-96 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005). | 52 |
| 40 | COPYRIGHT—AFFIRMATIVE DEFENSE—FAIR USE (17 U.S.C. § 107) | 9th Cir. Manual 17.21 (modified); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-79 (9th Cir. 2013). | 55 |
| 42 | UNCLEAN HANDS | 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.09; *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, | 60 |

xiii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| | | 173 (9th Cir. 1989); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221-23 (C.D. Cal. 2007). | |
| 48 | COPYRIGHT—DAMAGES—ACTUAL DAMAGES (17 U.S.C. § 504(b)) | 9th Cir. Manual 17.32 (modified); 17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) ("Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence [a]nd the infringer is insulated from liability for earlier infringements of the same work"). | 63 |
| 49 | COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS (17 U.S.C. § 504(b) | 9th Cir. Manual 17.33 (modified); 17 U.S.C. § 504(b). | 69 |

xiv

**01999**

| No. | Title | Source | Page |
|---|---|---|---|
| 52 | COPYRIGHT—DAMAGES— WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2)) | 9th Cir. Manual 17.36. | 70 |

**SPECIAL VERDICT FORM - LIABILITY**      74

**SPECIAL VERDICT FORM - DAMAGES**      83

xv

1

2

3

## JURY INSTRUCTION NO. 2

### DUTY OF JURY

4    Members of the Jury: Now that you have heard all of the evidence [and the

5  arguments of the attorneys], it is my duty to instruct you on the law that applies to

6  this case.

7

8    [Each of you has received a copy of these instructions that you may take with

9  you to the jury room to consult during your deliberations.]

10

11                                    ~~or~~

12

13    ~~[A copy of these instructions will be sent to the jury room for you to consult~~

14  ~~during your deliberations.]~~

15

16    It is your duty to find the facts from all the evidence in the case.  To those

17  facts you will apply the law as I give it to you.  You must follow the law as I give it

18  to you whether you agree with it or not.  And you must not be influenced by any

19  personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you

20  must decide the case solely on the evidence before you. You will recall that you took

21  an oath to do so.

22

23    Please do not read into these instructions or anything that I may say or do or

24  have said or done that I have an opinion regarding the evidence or what your verdict

25  should be.

26

27  **Source:** 9th Cir. Manual 1.1C (modified).

28

1

1

## <u>PLAINTIFF'S OBJECTION</u>

2

3        The jury should not have jury instructions in their possession during

4   deliberations. To the extent the jury as a question it should pose questions to the

5   Court or counsel. The jury is there to listen to the case as presented and explained by

6   the attorneys and witnesses and attempting to interpret the precise wording of

7   instructions in depth will be distracting and not appropriate for lay persons. Plaintiff

8   instead argues that Ninth Circuit Instruction 1.1B should be used.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1
## **DEFENDANTS' REPLY**

2       This is a closing instruction and Manual instruction no. 1.1B is jointly

3   proposed by the parties.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 15

### TAKING NOTES

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

**Source:** 9th Cir. Manual 1.15 (modified).

4

1

## **<u>PLAINTIFF'S OBJECTION</u>**

2

3    It is up to the discretion of the trial judge to allow the taking of notes. <u>See</u>

4 *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir.1993); <u>see also</u> JURY

5 INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON

6 JURY TRIAL PROCEDURES, § 3.4 (2013).

7    The jury should not be permitted to take notes. The jury is there to listen to the

8 case as presented and explained by the attorneys and witnesses and taking notes will

9 distract them from this purpose and from carefully evaluating the evidence as

10 presented. When taking notes, it is very easy to miss important points and nuances

11 and become distracted. The point of a trial is for the jury to listen and take in the

12 evidence and testimony, not transcribe the record. The attorneys are there to use their

13 skill to present their clients' cases and reinforce the factual and legal points. Note

14 taking distracts from this.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1    **<u>DEFENDANTS' REPLY</u>**

2         Defendants believe that jurors are capable of both listening and, if they wish

3    to do so, take notes.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**<u>JURY INSTRUCTION NO. 22</u>**

**INTRODUCTION TO COPYRIGHT CLAIM**

Plaintiff has filed a claim against Defendants for violation of the United States Copyright Act, which governs this case.  In order for you to undertake your responsibility, you must know what a copyright is, what it protects, and what it does not protect.

Copyright confers certain exclusive rights to the owner of a work including the rights to:

1.    Reproduce or authorize the reproduction of the copyrighted work;

2.    Prepare derivative works based upon the copyrighted work.

3.    Distribute the copyrighted work to the public; and

4.    Perform publicly a copyrighted musical work.

Copyright only protects the author's original expression in a work and does not protect ideas, themes or common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes.

Also, there can be no copyright infringement without actual copying.  If two people independently create two works, no matter how similar, there is no copyright infringement unless the second person copied the first.

**Source:** 3 K. F. O'Malley, J.E. Grenig & W.C. Lee, *Federal Jury Practice &*

7

1  *Instructions* § 160.01 (5th ed. 2001); 9th Cir. 17.0 &17.1 (modified); 17 U.S.C. §

2  106; *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996); Copyright Office

3  Compendium §§ 313.4(B) (three notes not copyrightable), 313.4(C) (same as to "Mi

4  do re sol, sol re mi do") & 802.5(A) (chromatic scales and arpeggios are "common

5  property musical material" in the public domain); 2 M. Nimmer & D. Nimmer,

6  *Nimmer on Copyright* § 8.01[A] ("absent copying, there can be no infringement of

7  copyright, regardless of the extent of similarity").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

## PLAINTIFF'S OBJECTION

Defendants have crafted their own instruction instead of utilizing Ninth Circuit Manual 17.0 and 17.1. The standard instruction, of which Plaintiff's Instruction No. 26 makes some slight modifications, is far more preferable. It summarizes the basics of copyright law and outlines the important points the jury's determination will hinge on. Defendants' instruction fails to cover most of this. There is no conceivable reason why instructions that mirror Ninth Circuit Manual 17.0 and 17.1 (such as Plaintiff's Instructions No. 26-27) should not be utilized instead of Defendants' proposed instruction.

Furthermore, Defendants' instruction improperly generalizes the law. "It is well settled that a jury may find a combination of unprotectible elements to be protectible under the extrinsic test because 'the over-all impact and effect indicate substantial appropriation.'" *Three Boys Music Corp.*, 212 F.3d at 485; *see also Radin v. Hunt*, LA CV10-08838 JAK (SSx), at 4 (C.D. Cal. Dec. 15, 2011). The Ninth Circuit has specifically recognized "ideas" as one of these elements. *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004).

9

1

## DEFENDANTS' REPLY

2       The general 9th Circuit Manual instruction is largely inapplicable to, or

3 confusing when applied to, a music case where the plaintiff's claim is based on the

4 alleged selection and arrangement of public domain material.  Further, defendants

5 have proposed a separate specific instruction as to selection and arrangement.

6 Neither does plaintiff suggest that the proposed instruction incorrectly states the law.

7 This instruction, based upon one of the sources identified in the Court's Order for

8 Jury Trial (Doc.79 at 5) is clear, straightforward and correctly states the law.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

1

2

3

## JURY INSTRUCTION NO. 23
## HOW COPYRIGHT OBTAINED

4      Plaintiff claims infringement of a 1967 copyright in the musical composition

5  Taurus.  In the 1960s, copyright was obtained when the owner registered the

6  copyright by delivering to the United States Copyright Office a written transcription,

7  called a deposit copy, of the complete musical composition.

8

9  **Source:** Copyright Act of 1909, 17 U.S.C. §§ 11-12 (registration by "the deposit,

10  with claim of copyright, of one complete copy of such work if it be a . . . musical, or

11  dramatico-musical composition"); 2 M. Nimmer & D. Nimmer, *Nimmer on*

12  *Copyright* § 2.05[A]  ("Because, under the 1909 Act, copyright protection required .

13  . . the deposit of *copies* . . . , to claim copyright in a musical work under the 1909

14  Act, the work had to be reduced to sheet music or other manuscript form"); *ABKCO*

15  *Music, Inc. v. LaVere*, 217 F.3d 684, 688-89 (9th Cir. 2000) (under the 1909 Act,

16  recordings were not copies of musical compositions), *cert. denied* 531 U.S. 1051

17  (2000).

18

19

20

21

22

23

24

25

26

27

28

11

1        **<u>PLAINTIFF'S OBJECTION</u>**

2

3        This instruction is overly simplistic, improperly focuses on attempting to

4    define the composition of the work, and is more argument than instruction.

5        Copyright was obtained when the song is first created and common law

6    copyright protection attached. *Societe Civile Succession Guino v. Renoir, S49* F .3d

7    1182, 118S (9th Cir. 2008). When a registration was then filed with the U.S

8    Copyright office, along with a copy of the work, it became protected under federal

9    law. *See* Doc. No. 159, at p.10. Defendants are attempting bolster their erroneous

10   work for hire argument, that was rejected by the Court in the summary judgment

11   order, by including this instruction. Furthermore, any discussion of the

12   "completeness" of the deposit copy in this instruction is confusing and properly

13   addressed in other, more applicable instructions.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

## DEFENDANTS' REPLY

Plaintiff sues on a federal, statutory copyright, registered with the United States Copyright Office, and not on any claimed common law copyright.  Indeed, any common law copyright in the *Taurus* composition ended when the composition was registered with the Copyright Office in 1967 by deposit of the 1967 *Taurus* transcription.  1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.02; Order (Doc. 159) on Motion for Summary Judgment at 10.  Because plaintiff is suing on the statutory copyright, the instruction on how that copyright was obtained and what was copyrighted is crucial to the jury's understanding of the case, the scope of the allegedly-infringed copyright and the relevance of the 1967 *Taurus* transcription.

Further, the instruction does not relate to the work for hire issue and, in any event, defendants have advised plaintiff that in light of the Court's Order on defendants' summary judgment motion, defendants are not pursuing their work for hire argument in this trial.

The proposed instruction is simple, correct and important, and should be given.

13

**JURY INSTRUCTION NO. 24**

**MUSICAL COMPOSITIONS AND SOUND RECORDINGS**

Plaintiff contends that the copyright in the 1967 musical composition Taurus is infringed by the 1971 song Stairway to Heaven.

It is important that you understand what the copyright in the musical composition Taurus protects and does not protect.

A musical composition consists of rhythm, harmony and melody as transcribed in written form.   The performance of a musical composition can be recorded, but under the law musical compositions and sound recordings are different works with different potential copyrights.

In this case, plaintiff has no rights in any sound recording of Taurus, and claims rights only in the musical composition Taurus as transcribed in the 1967 deposit copy.  As a result, plaintiff must base his claim only on original expression contained in the 1967 deposit copy of Taurus.

That is, plaintiff must prove that Stairway to Heaven copies original expression in the 1967 deposit copy of Taurus.  Plaintiff cannot rely on any claimed similarities between recordings of Taurus and Stairway to Heaven.

**Source:** *Newton v. Diamond*, 388 F.3d 1189, 1193-95 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189.

14

1

## **PLAINTIFF'S OBJECTION**

2

3      This instruction is essentially legal argument by Defendants, not a jury

4  instruction, and also impinges on areas of expert testimony.  It also makes erroneous

5  statements of fact.

6      **First**, Plaintiff contends that Taurus was composed and created in 1966, so it is

7  unduly prejudicial to claim that it is a 1967 composition.  **Second**, Defendants'

8  instruction imprecisely refers to the term "composition" and also argues the notes on

9  the deposit copy are the "complete" protected song—i.e, that the composition is

10  strictly limited to the exact deposit copy. However, what is protected is the musical

11  composition of Taurus that is represented and embodied in the deposit copy—which

12  are often extremely basic lead sheets—which may not be every specific note. A recent

13  court, <u>Pharrell Williams v. Bridgeport Music</u>, considered this identical issue and sided

14  with Plaintiff's position. In that case defendants complained in post-trial motions that

15  the sound recording was irrelevant to the expert analysis and also that it should not

16  have been played to the jury because the deposit copy was all that mattered. The court

17  noted that it had previously ***denied*** motions in limine on these precise issues. <u>See</u>

18  Order Denying Post-Trial Motions, 13-cv-6004 (ECF 423), at p7. (7/14/2015). That

19  court held at the motion in limine hearing: "I think [the Gaye Parties' expert]

20  testimony is going to have ***to be based on the deposit copy***. It's not to say they can't

21  have listened to the sound recording as part of their analysis. They simply can't

22  present to the jury an opinion that says, '[b]ecause I listened to the sound recording,

23  I've reached this conclusion.'" <u>See</u> Order Denying Post-Trial Motions, 13-cv-6004

24  (ECF 423), at p7. (7/14/2015) (alternations in original) (emphasis added). Plaintiff's

25  experts do indeed opine that all pertinent elements of Taurus are represented on the

26  deposit copy and that those protected elements appear in the Taurus sound recording.

27  <u>See, e.g.</u>, Declaration of Alexander Stewart, at ¶8-14 (ECF 169-1). Indeed, even

28  Defendants' experts admit that the deposit copy contains and represents much of the

15

expression at issue which appear in the recordings of Taurus:

> **Paragraph 14:** Moreover, approximately half of the notes in the iterations of the guitar melody in the recordings of "Taurus" in Dr. Stewart's Visual Exhibit C are not in the Taurus Transcription.

Id. (quoting defense expert Ferrara's report).

The Court in Williams further elaborated that as long as the claimant's experts opined that the expression in the sound recording was represented in the deposit copy in some way, that reference to sound recordings by the experts was appropriate. Order Denying Post-Trial Motions, 13-cv-6004 (ECF 423), at p.9. It also held that playing the sound recordings to the jury as part of expert testimony was admissible, as long as the expert opined that the composition in the sound recording was based on the deposit copy. See Order, at p.9. Any disputes about the content of the sound recording itself were questions of fact and weight for the jury, and did not go to admissibility under Fed. RE 702(d). Id. Defendants want to constrict this dispute to a level that is simply not justified by the law. Their insistence that the jury be given an artificial, severely limited comparison of the two songs in question is simply not warranted by fact or law. This instruction thus improperly attempts to plant in the jury's mind that the deposit copy transcription for Taurus is the "complete" composition and that sound recordings are irrelevant.

**Third**, the instruction is confusing the jury because while it is true that the sound recording is not protected, the composition embodied in the sound recording certainly is. The court in Williams further elaborated that as long as the claimant's experts opined that the expression in the sound recording was represented in the deposit copy in some way, that reference to sound recordings by the experts was appropriate. Id. at p.9. It also held that playing the sound recordings to the jury as part of expert testimony was admissible, as long as the expert opined that the composition in the sound recording was based on the deposit copy. See Order, at p.9. Any disputes about the content of the sound recording itself were questions of fact and weight for

16

1    the jury, and did not go to admissibility under Fed. RE 702(d). Id. Defendants

2    essentially want to erroneous jury instructions to bolster their expert testimony. This

3    should be rejected.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

## DEFENDANTS' REPLY

1      Plaintiff's lengthy cut-and-paste from his opposition to a motion *in limine* is

2  both factually and legally incorrect.  Plaintiff sues on a copyright in a 1909 Act

3  composition, and its protection is limited to the 1967 *Taurus* transcription and, as the

4  Court found, plaintiff has no copyright in *Taurus* sound recordings.  Order (159) at

5  17 ("In the present case, Plaintiff's only copyright claim lies in the musical

6  composition of *Taurus*, not the sound recording").  As the Court also ruled, since the

7  performance elements in the sound recordings are not protected by the allegedly-

8  infringed copyright, they cannot be considered.  *Id.*  This instruction, in a clear and

9  straightforward manner, explains the distinction and is consistent with the Court's

10  ruling and the law.

11      As defendants have pointed out elsewhere, plaintiff misstates the relevant

12  ruling in *Williams v. Bridgeport Music* and plaintiff misstates that his experts

13  analyzed and compared the 1967 *Taurus* transcription.  Defs' Reply in support of

14  Defs' Mtn. *in Limine* No. 183 at 3, 4-5.

15      The instruction correctly and clearly distinguishes between the copyrighted

16  1967 *Taurus* transcription and sound recordings and is properly given.

18

### JURY INSTRUCTION NO. 25

### COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING (17 U.S.C. § 501(a)–(b))

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright, unless a defense applies.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

    1.    the plaintiff is the legal or beneficial owner of a valid copyright; and

    2.    the defendant copied original elements from the copyrighted work.

If you find that the plaintiff has proved both of these elements by a preponderance of the evidence, and unless defendants establish one or more affirmative defenses, your verdict should be for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove either of these elements by a preponderance of the evidence, your verdict should be for the defendants.

**Source:** 9th Cir. Manual 17.4 (modified).

19

**02019**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PLAINTIFF'S OBJECTION</u>**

  This instruction imports language about affirmative defenses which is not appropriate in this instruction. This instruction concerns the elements for copyright ownership, not the applicability of affirmative defenses. Plaintiff notes that other instructions more than adequately cover affirmative defenses.

20

1

## **<u>DEFENDANTS' REPLY</u>**

2       Unless modified as defendants propose, this instruction on its face mandates a

3  finding for plaintiff even if a defense applies.  Without the modifications, the jury

4  will have conflicting instructions, with one stating that if it finds copying its verdict

5  should be for plaintiff, with other instructions referring to defenses.  Neither can

6  plaintiff dispute that, even if he were to prove his case, defendants prevail if they

7  establish a defense.

8       This instruction avoids conflicting instructions and potential confusion and is

9  correct.  It should be given.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

**<u>JURY INSTRUCTION NO. 26</u>**

**COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID**

**COPYRIGHT—DEFINITION**

**(17 U.S.C. §§ 201–205)**

~~The plaintiff is the owner of~~There is a valid copyright in <u>the musical composition Taurus</u> [*identify work[s] allegedly infringed*] if the plaintiff proves by a preponderance of the evidence that:

1.  the musical composition Taurus ~~plaintiff's work~~ is original; and

2.  a copyright in that musical composition was registered with the United States Copyright Office; and

3.  at the time of that registration, a written transcription of the musical composition was deposited with the Copyright Office~~the plaintiff [is the author or creator of the work] [received a transfer of the copyright] [received a transfer of the right to [*specify right transferred, e.g., make derivative works, publicly perform the work, etc.*]].~~

**Source:** 9th Cir. Manual 17-5 (modified); Copyright Act of 1909, 17 U.S.C. §§ 11-12 (registration by "the deposit, with claim of copyright, of one complete copy of such work if it be a . . . musical, or dramatico-musical composition"); 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A]  ("Because, under the 1909 Act, copyright protection required . . . the deposit of *copies* . . . , to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form").

22

**02022**

1

## **<u>PLAINTIFF'S OBJECTION</u>**

2

3          This instruction does not do an adequate job of describing the factual basis of

4   ownership and the applicable laws that will determine ownership in this case.

5   Defendants' instruction only establishes that the original owners of the copyright in

6   Taurus would have owned the copyright in Taurus. It puzzlingly deletes any

7   language relating to the transfer of the copyright, which is the basis upon which

8   Plaintiff asserts ownership. Plaintiff respectfully refers the Court to his proposed

9   instruction no. 31 which makes it clear for the jury the factual determination they

10  need to make concerning the ownership of Taurus.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

**DEFENDANTS' REPLY**

The modifications to this Model instruction are appropriate.  The Model
instruction is for a claim brought by the legal owner of a 1976 Copyright Act work,
while plaintiff sues as the beneficial owner of a 1909 Act work.  Neither was the
legal copyright assigned to the Trust.  Without the modifications, the instruction
would be wrong and misleading. Jury instructions must be "supported by law" and
have "foundation in the evidence."  *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.
2009), *quoting Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Further,
defendants have proposed a separate instruction, no. 27, to deal with plaintiff's
claimed acquisition of beneficial ownership of the copyright.

24

**02024**

## JURY INSTRUCTION NO. 27
### BENEFICIAL OWNERSHIP OF COPYRIGHT

Plaintiff does not own the copyright in the Taurus musical composition. Instead, a company called Hollenbeck Music owns the copyright in the musical composition Taurus.  Hollenbeck Music did not join in plaintiff's case against defendants and has never filed a lawsuit claiming that Stairway to Heaven infringes Hollenbeck Music's copyright in Taurus.

Plaintiff contends that he is a beneficial owner of the copyright in Taurus and entitled to sue for infringement even though Hollenbeck Music owns the copyright. To establish that plaintiff is a beneficial owner of the copyright in the musical composition Taurus, plaintiff must prove all of the following:

1.   That Randy Wolfe is the author of the musical composition Taurus;

2.   That Randy Wolfe, as the author of the musical composition Taurus, transferred the copyright in Taurus to Hollenbeck Music in return for the right to receive royalties from the exploitation of the musical composition; and

3.   Plaintiff now owns Randy Wolfe's right to receive royalties from the exploitation of the musical composition.

If you find that the evidence proves by a preponderance of the evidence all four of these facts, then you should find that plaintiff is a beneficial owner of the copyright in the Taurus musical composition and you should then proceed to consider the other issues in the case.

25

1

2       If you find that the evidence does not prove by a preponderance of the

3   evidence all four of these facts, then your verdict must be for defendants.

4

5   **Source:** *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005)

6   ("To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or

7   beneficial owner of an exclusive right under a copyright'" (*quoting* 17 U.S.C. §

8   501(b)), *cert. denied* 546 U.S. 827 (2005);  *Warren v. Fox Family Worldwide, Inc.,*

9   328 F.3d 1136, 1144 (9th Cir.2003) ("Beneficial owners include, 'for example, an

10  author who had parted with legal title to the copyright in exchange for percentage

11  royalties based on sales or license fees'"), *quoting* H.R. Rep. No. 94–1476, at 159.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

1

## **PLAINTIFF'S OBJECTION**

2

3      This instruction is highly prejudicial as worded. It starts with the utterly false

4   and unduly prejudicial admonition: "Plaintiff does not own the copyright in the

5   Taurus musical composition." A beneficial owner of a copyright is just as much an

6   owner of the copyright as any other owner in the eyes of the law. *See Silvers v. Sony*

7   *Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) ("To be entitled to sue for

8   copyright infringement, the plaintiff must be the 'legal or beneficial owner of an

9   exclusive right under a copyright.'" Defendants' proposed instruction is clearly

10  designed to lead the jury to erroneously conclude that Plaintiff is not an owner.

11     Moreover, to the extent an instruction on beneficial ownership is even needed,

12  this one is overly complicated. The instruction should be as simple as: "If you find

13  that the Randy Craig Wolfe Trust is entitled to receive royalties and monies for the

14  exploitation of Taurus, then he is an owner of the Taurus copyright." In particular

15  the sentence, "Plaintiff now owns Randy Wolfe's right to receive royalties from the

16  exploitation of the musical composition" is needlessly confusing and obfuscates the

17  fact that Trust clearly owns the copyrights in Taurus as it receives royalties for the

18  exploitation of the song and was transferred all of Wolfe's ownership interest.

19

20

21

22

23

24

25

26

27

28

27

## DEFENDANTS' REPLY

Plaintiff's resistance to this instruction or his own claim to beneficial ownership is puzzling.  Were the jury not instructed on beneficial ownership and told plaintiff must own the copyright, then defendants would prevail simply by offering the United States Copyright Office registration of the *Taurus* copyright identifying Hollenbeck Music as the owner.  Order (159) at 2 (the "copyright registration show[s] that on December 22, 1967, Hollenbeck, as 'Copyright Claimant,' registered a copyright in the *Taurus* musical composition with the Copyright Office").  Plaintiff's standing in this action is premised not on actual ownership of that copyright, but rather on a beneficial interest.  And the proposed instruction correctly sets forth what plaintiff must prove to establish that interest and standing.  The instruction is correct under the law and appropriate for the facts of this case.  *Clem*, 566 F.3d at 1181.

28

## <u>JURY INSTRUCTION NO. 28</u>
## COPYRIGHT INFRINGEMENT —ORIGINALITY

I previously instructed that plaintiff has the burden of proving that the creators of Stairway to Heaven copied original elements from the 1967 musical composition Taurus.

An original work may include or incorporate elements taken from ~~[prior works]~~ or ~~[works from the public domain]~~ ~~[works owned by others, with the owner's permission]~~.  However, any elements from prior works or the public domain are not considered original parts and not protected by copyright.  Instead, the original part~~[s]~~ of the plaintiff's work ~~[is~~ <u>limited to</u>~~]~~ ~~[are]~~ the part~~[s]~~ created:

1. independently by the ~~[work's]~~ author, that is, the author did not copy it from another work; and

2. by use of at least some minimal creativity.

~~[In copyright law, the "original" part of a work need not be new or novel.]~~

**Source:** 9th Cir. 17.13 (modified); *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . . can be compared when it comes to the ultimate question of illicit copying"), *cert. denied* 513 U.S. 1184 (1995).

29

1

## **PLAINTIFF'S OBJECTION**

2

3        The modifications to this instruction are highly confusing, unduly prejudicial,

4  and even contradict part of the standard instruction which Defendants have struck

5  though at the bottom. Namely, the contention that "any elements from prior works or

6  the public domain are not considered original parts and not protected by copyright"

7  would lead a jury to believe that parts of song that are in some way generally similar

8  to prior art cannot be accorded protection. This narrow interpretation is, of course,

9  not accurate. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S.

10  340, 345-46 (1991). All that is required is that the work cannot have been copied and

11  that it has to have some minimal creativity. Id. The Ninth Circuit has held

12              In this circuit, the definition of originality is broad, and
13              originality means "little more than a prohibition of actual
               copying." *Three Boys*, 212 F.3d at 489(quoting *North Coast*
14              *Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033(9th
               Cir.1992)).
15

16  *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004). Even then, if a work

17  incorporates elements from the public domain or prior art and uses them uniquely in

18  combination with other elements it would still be afforded protection. *Swirsky*, 376

19  F.3d at 849. Plaintiff's instruction No. 32 is far more faithful to the law and less

20  confusing than Defendants' unsupportable modifications and should be favored.

21

22

23

24

25

26

27

28

30

1

### DEFENDANTS' REPLY

2      This instruction is correct under the law and appropriate here.  While the

3  threshold for originality is low, originality must still exist and it is crucial in this case

4  – where plaintiff relies upon public domain elements – that the jury be instructed

5  that public domain elements, alone, are not original.  *Smith v. Jackson*, 84 F.3d

6  1213, 1216, n. 3 (9th Cir. 1996) (public domain musical elements not protected);

7  *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 n. 9 (11th Cir. 2002) ("We

8  have cautioned trial courts in this circuit 'not to be swayed by the fact that two

9  works embody similar or even identical ideas'"; citations omitted), *cert. denied* 539

10  U.S. 903 (2003); 4 *Nimmer on Copyright* § 13.03[B][2] ("When similar works

11  resemble each other only in . . . unprotected aspects, then defendant prevails").

12      As to originality in the selection and arrangement of public domain elements,

13  that is the subject of defendants' proposed instruction no. 29.

14      The instruction is straightforward and correct and covers an important point in

15  this case, and is complimentary to no. 29.

16

17

18

19

20

21

22

23

24

25

26

27

28

31

## <u>JURY INSTRUCTION NO. 29</u>

### COPYRIGHT—ORIGINALITY IN ARRANGEMENT

Commonplace elements are not original and are not protected by a copyright.

An author's arrangement and selection of unprotected elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

A copyright in arrangements and selections is called a "thin" copyright. It does not protect the commonplace elements themselves and, instead, protects only against copying the exact same arrangement and selection. As a result, a copyright in an arrangement and selection of numerous commonplace elements can be infringed only by an identical or nearly-identical arrangement and selection of those same elements.

**Source:** *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 344 (1991); *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship").

32

**02032**

1

## **PLAINTIFF'S OBJECTION**

2

3       This instruction is not warranted and is not legally correct and is not supported

4   by the case law it cites. The Ninth Circuit has held:

5               There is no one magical combination of these factors that will

6               automatically substantiate a musical infringement suit; each
                allegation of infringement will be unique. So long as the

7               plaintiff can demonstrate, through expert testimony that

8               addresses some or all of these elements and supports its
                employment of them, that the similarity was "substantial" and

9               to "protected elements" of the copyrighted work, the extrinsic

10              test is satisfied.

11  *Swirsky*, 376 F.3d at 849. *Swirsky* also stated:

12              For example, in *Three Boys* we upheld a jury finding of

13              substantial similarity based on the combination of five
                otherwise unprotectable elements: (1) the title hook phrase

14              (including the lyric, rhythm, and pitch); (2) the shifted cadence;

15              (3) the instrumental figures; (4) the verse/chorus relationship;
                and (5) the fade ending.

16

17  *Id.*

18      Moreover, this instruction attempts to explain totally unnecessary legal terms

19  of art to the jury, such as "thin copyright."

20

21

22

23

24

25

26

27

28

33

1

## <u>DEFENDANTS' REPLY</u>

2         This instruction is a correct statement of the law in this Circuit.  *Satava v.*
3   *Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ("[A] combination of unprotectable
4   elements is eligible for copyright protection only if those elements are numerous
5   enough and their selection and arrangement original enough that their combination
6   constitutes an original work of authorship").  Plaintiff's reliance on *Swirsky* is
7   misplaced, because while it refers to no "magical" combination to achieve
8   protection, the law is established that numerous elements with original selection and
9   arrangement is required.

10         Also, since plaintiff relies on selection and arrangement it is crucial that the
11   jury be instructed he must prove defendants' work includes an identical or nearly-
12   identical selection and arrangement.  *Satava*, 323 F.3d at 812 (copyright based on
13   selection and arrangement of public domain elements "protects against only virtually
14   identical copying").  Otherwise, the jury would apply the wrong standard in
15   considering the issue of substantial similarity.  The term "thin" copyright is not only
16   used in case law (*id.*), but is a clear and commonsense way of describing that the
17   selection-and-arrangement does not provide broad protection.

18         The instruction is correct and is crucial, and should be given.

19

20

21

22

23

24

25

26

27

28

34

**JURY INSTRUCTION NO. 31**

**COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED**

[As part of ~~its~~ his burden in Instruction 31 [~~insert cross reference to the pertinent instruction e.g., Instruction 17.4~~], the plaintiff must prove by a preponderance of the evidence that the creators of Stairway to Heaven~~[the defendant] [whoever created the work owned by the defendant]~~ had access to the musical composition Taurus ~~plaintiff's work.~~] You may find that the creators of Stairway to Heaven~~defendant~~ had access to the musical composition Taurus~~plaintiff's work~~ if the creators of Stairway to Heaven~~[the defendant]~~ ~~[whoever created the work owned by the defendant]~~ had a reasonable opportunity to ~~[view] [read]~~ [hear and] ~~[copy]~~ the musical composition Taurus~~plaintiff's work~~ before Stairway to Heaven~~the defendant's work~~ was created.

Plaintiff has the burden of proving more than a bare possibility of access and cannot rely on speculation, conjecture or inference.  Instead, he must present significant, affirmative and probative evidence demonstrating that the creators of Stairway to Heaven had access to the musical composition Taurus.

**Source:** 9th Cir. Manual 17.17 (modified); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) ("speculation, conjecture, and inference" insufficient to establish access); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010) ("Reasonable access requires more than a 'bare possibility,' and 'may not be inferred through mere speculation or conjecture'"), *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.11[D][1] ("even if the two works in question are substantially similar, plaintiff still cannot prevail unless it meets its burden "of producing significant, affirmative, and probative evidence to

35

**02035**

1  demonstrate that defendant had access to its claimed work"), *quoting Prince Grp.,*

2  *Inc. v. MTS Products*, 967 F. Supp. 121, 127 (S.D.N.Y. 1997).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36

## **PLAINTIFF'S OBJECTION**

The last paragraph of Defendants' instruction is designed to be unduly prejudicial and the words themselves are largely unsupported by any case law. It attempts to implant in the jury's mind that there is only the "bare possibility" Defendants hear Plaintiff's song and that Plaintiff is relying on speculation. The language of the standard instruction, and the law, support only instructing the jury that Defendants had a "reasonable opportunity" to hear Taurus.

In addition, the instruction is too narrow. While the Court held for purposes of summary judgment that access had not been established by the widespread distribution and striking similarity, Plaintiff intends to introduce testimony in his case in chief at trial that Taurus was in fact widely distributed on the first Spirit album, both in the United States and in Britain. This will create a triable issue of fact for the jury on widespread distribution. In addition, Plaintiff respectfully submits that although the Court held at summary judgment that the compositions of the songs are not strikingly similar that the sound recordings themselves and the production techniques they use are so similar as to preclude independent creation and creation a question of fact as to whether Defendants had access to Taurus.

Plaintiff respectfully submits its instruction no. 34 is a far superior and less confusing instruction and that it will adequately capture what the jury should decide following the introduction of all evidence at trial.

1

## DEFENDANTS' REPLY

2    Plaintiff is simply incorrect that the instruction is not supported by the case

3 law: *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) ("speculation,

4 conjecture, and inference" insufficient to establish access); *Gable v. Nat'l Broad.*

5 *Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010) ("Reasonable access requires more

6 than a 'bare possibility,' and 'may not be inferred through mere speculation or

7 conjecture'"), *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th

8 Cir. 2000), *cert. denied* 531 U.S. 1126 (2001).  There is nothing prejudicial by

9 requiring that plaintiff present more than a bare possibility of access.

10    Further, plaintiff failed to produce, despite discovery requests, any evidence to

11 support other theories of access and the Court ruled there is no triable issue as to the

12 other theories.  Order (159) at 13-14.  He should not be allowed to do an end-run

13 around his failure to produce evidence in discovery by presenting it at trial through

14 third parties.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38

1

2

3

# JURY INSTRUCTION NO. 32

## SUBSTANTIAL SIMILARITY—EXTRINSIC TEST; INTRINSIC TEST

4    For an unauthorized use of a copyrighted work to constitute copyright

5  infringement, the unauthorized use must copy original material protected by the

6  copyright and must be significant enough to constitute infringement.  This means

7  that even if the fact of copying is proven, no legal consequences will follow from

8  that fact unless original material is copied and the copying is substantial.

9

10    The copyright that plaintiff sues upon protects only the musical composition

11  Taurus as it was transcribed in 1967 in the deposit copy that accompanied the

12  registration of the copyright with the United States Copyright Office.  That is the

13  work that you must compare to Stairway to Heaven.

14

15    To prove substantial similarity between the musical composition Taurus as

16  transcribed in 1967 and Stairway to Heaven, plaintiff must prove that there is both

17  substantial extrinsic similarity and substantial intrinsic similarity between the two

18  works.

19

20    Extrinsic similarity is an objective test and requires that you determine

21  whether the two works are similar in original expression.  To do that, you must

22  break the works down into their specific musical elements.  You must then

23  disregard all musical elements that are not original to Taurus.  Examples of

24  musical elements that are not original, and can be used by anyone, are

25  descending chromatic scales, commonplace chords, arpeggios and short

26  sequences of sounds, such as sequences of three notes.  Once you have

27  disregarded all musical elements that are not original to Taurus, you must decide

28  whether there are any remaining musical elements that are original to Taurus and

39

1    also appear in Stairway to Heaven and, if so, whether they are substantial

2    similarities or insubstantial similarities.

3

4        If plaintiff does not prove that, applying this first test, Stairway to Heaven

5    is substantially similar to original expression in the musical composition Taurus,

6    your verdict must be for defendants.

7

8        If plaintiff does prove that, applying this first test, Stairway to Heaven is

9    substantially similar to original expression in the musical composition Taurus,

10   then you must proceed to a second test for subjective intrinsic similarity.

11

12       For that second test, you must decide whether the ordinary, reasonable

13   person would find that~~the total concept and feel of~~ the musical composition Taurus

14   as transcribed in the 1967 deposit copy, and Stairway to Heaven, are substantially

15   similar in their original expression.  In this second test, you must also disregard all

16   musical elements that are not original to Taurus.

17

18       If plaintiff does not prove that, applying this second test, the musical

19   composition Taurus as transcribed in the 1967 deposit copy, and Stairway to

20   Heaven, are substantiallysimilar in their original expression, your verdict must be

21   for defendants.

22

23       If plaintiff does prove both the first test and second test, then he has

24   proven substantial similarity.  If he has also proven that the creators of Stairway

25   to Heaven had access to the musical composition Taurus, then that creates an

26   inference of copying.

27

28   **Source:**  Comment to 9th Cir. 17.17; Copyright Office Compendium § 310.4; 3 M.

40

1    Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] ("for courts to advert
2    to a work's total concept as the essence of its protectible character seems ill-advised
3    in the extreme. Further, the addition of "feel" to the judicial inquiry, being a wholly
4    amorphous referent, merely invites an abdication of analysis"); *Swirsky v. Carey*,
5    376 F.3d 841, 845 (9th Cir. 2004); *Newton v. Diamond*, 388 F.3d 1189, 1194-95 (9th
6    Cir. 2004), *cert. denied* 545 U.S. 1114 (2005); *Satava v. Lowry*, 323 F.3d 805, 811
7    (9th Cir. 2003), *cert. denied* 540 U.S. 983 (2003) ("[E]xpressions that are standard,
8    stock, or common to a particular subject matter or medium are not protectable under
9    copyright law."); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996); *Smith v.*
10   *Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical
11   elements not protected); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,
12   1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . . can be
13   compared when it comes to the ultimate question of illicit copying"), *cert. denied*
14   513 U.S. 1184 (1995); Copyright Office Compendium §§ 313.4(B) (three notes not
15   copyrightable), 313.4(C) (same as to "Mi do re sol, sol re mi do") & 802.5(A)
16   (chromatic scales and arpeggios are "common property musical material" in the
17   public domain).

18
19
20
21
22
23
24
25
26
27
28

41

1                                   **PLAINTIFF'S OBJECTION**

2

3        This instruction cites to 17.17 but it appears to actually mean 17.18. In any

4    case the instruction is legally erroneous, unduly prejudicial, and highly confusing. In

5    particular it gives a completely unwarranted description of the extrinsic test which, if

6    taken literally, would absurdly divest any and all songs of copyright protection.

7        *Swirsky* is worth quoting at length on this point to demonstrate the falsity of

8    Defendants' self-serving instruction:

9           In analyzing musical compositions under the extrinsic test, we have
            never announced a uniform set of factors to be used. We will not do
10          so now. Music, like software programs and art objects, is not capable
            of ready classification into only five or six constituent elements;
11          music is comprised of a large array of elements, some combination of
            which is protectable by copyright.[15] For example, in *Three Boys* we
12
            upheld a jury finding of substantial similarity based on the
13          combination of five otherwise unprotectable elements: (1) the title
            hook phrase (including the lyric, rhythm, and pitch); (2) the shifted
14          cadence; (3) the instrumental figures; (4) the verse/chorus
            relationship; and (5) the fade ending. *Three Boys,* 212 F.3d at 485.
15
            Other courts have taken account of additional components of musical
16          compositions, including melody, harmony, rhythm, pitch, tempo,
            phrasing, structure, chord progressions, and lyrics.*See Ellis v.*
17          *Diffie,* 177 F.3d 503, 506(6th Cir.1999) (noting that the district court
            had compared idea, phraseology, lyrics, rhythms, chord progressions,
18
            "melodic contours," structures, and melodies under "ordinary
19          observer" test); *Cottrill v. Spears,* 2003 WL 21223846, at *9 (E.D.Pa.
            May 22, 2003) (unpublished disposition) (comparing pitch, chord
20          progression, meter, and lyrics under extrinsic test); *Tisi v. Patrick,* 97
            F.Supp.2d 539, 543 (S.D.N.Y.2000) (analyzing structure, melody,
21
            harmony, and rhythm under"striking similarity" test); *McKinley v.*
22          *Raye,* 1998 WL 119540, at *5 (N.D.Tex. March 10, 1998) (mem.)
            (analyzing lyrics, melodies, and song structure); *Damiano v. Sony*
23          *Music Entm't, Inc.,* 975 F.Supp. 623, 631 (D.N.J.1996) (analyzing
24          instrumentation and melody under the extrinsic test); *Sylvestre v.*
            *Oswald,* 1993 WL 179101, at *4 (S.D.N.Y. May 18, 1993) (analyzing
25          melody and lyrics under "striking similarity" test); *Intersong-USA v.*
26          *CBS, Inc.,* 757 F.Supp. 274, 280 (S.D.N.Y.1991)(analyzing chord

27

28

                                          42

1   progression, structure, pitch, and harmony under substantial
2   similarity[16] test). In addition, commentators have opined that timbre,
    tone, spatial organization, consonance, dissonance, accents, note
3   choice, combinations, interplay of instruments, basslines, and new
    technological sounds can all be elements of a musical
4   composition. *See* Brent, *supra,* at 248-89; Stephanie J. Jones, *Music*
5   *Copyright in Theory and Practice: An Improved Approach for*
    *Determining Substantial Similarity,* 31 Duq. L.Rev. 277, 294-95
6   (1993).

7        There is no one magical combination of these factors that will
    automatically substantiate a musical infringement suit; each allegation
8   of infringement will be unique. So long as the plaintiff can
9   demonstrate, through expert testimony that addresses some or all of
    these elements and supports its employment of them, that the
10  similarity was "substantial" and to "protected elements" of the
11  copyrighted work, the extrinsic test is satisfied.

12  *Swirsky*, 376 F.3d at 849.

13       Moreover, the description of the intrinsic test is also incorrect and discards the
14  accepted "total concept and feel" language. *Three Boys*, 212 F.3d at 485(quoting
15  *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir.1991)). The language in
16  Defendants' proposed instruction essentially attempts to transform the intrinsic test
17  into the extrinsic test, instructing the jury to discard elements of the song. This is
18  highly confusing and legally erroneous.
19       Plaintiff requests that his instructions Nos. 35-37 more accurately and
20  dispassionately inform the jury how to conduct the substantial similarity evaluation
21  and determination.
22
23
24
25
26
27
28

43

**02043**

1

## DEFENDANTS' REPLY

2   Plaintiff resists analytical dissection – even though mandated by cases he

3   cites, including *Swirsky* – because of the problems actual analysis and comparison of

4   the 1967 *Taurus* transcription and *Stairway to Heaven* pose for him.  His assertion

5   that this instruction is contrary to law is rebutted by the multiple sources defendants

6   cite for the instruction.  *See, above* at 40-41.  Plaintiff's lengthy quotation of *Swirsky*

7   is also inapt: it discusses not the extrinsic test and its requirement for dissection, but

8   rather musical features that cases have mentioned.  None of that changes that the

9   expert analysis described in defendants' proposed instruction is in fact what is not

10  only appropriate but required.

11  As to the deleted reference to "total concept and feel," while used in some

12  cases it is a misstatement of foundational principals of copyright law and the express

13  language of the copyright act.  17 U.S.C. § 102(b) ("In no case does copyright

14  protection for an original work of authorship extend to any idea, procedure, process,

15  system, method of operation, concept, principle, or discovery, regardless of the form

16  in which it is described, explained, illustrated, or embodied in such work").  The

17  Copyright Office also rejected this test.  U.S. Copyright Office Compendium § 310.4

18  ("Look and Feel -- The U.S. Copyright Office will not consider the so-called 'look

19  and feel' of a work.  Invoking a work's 'feel' is not a viable substitute for an

20  objective analysis of the work's fixed and creative elements. *See* 4 MELVILLE &

21  DAVID NIMMER, NIMMER ON Copyright §13.03[A][1][c] (2013) (criticizing the

22  use of "feel" as a "wholly amorphous referent" that "merely invites an abdication of

23  analysis").

24  The instruction is correct under the law and clear, and should be given.

25

26

27

28

44

## <u>JURY INSTRUCTION NO. 33</u>

## COPYRIGHT—INDEPENDENT CREATION

If you find substantial similarity in original expression between the musical composition Taurus as transcribed in 1967 and Stairway to Heaven and that the defendants that created Stairway to Heaven had access to the musical composition Taurus, you must decide whether defendants have rebutted the inference of copying by evidence that Stairway to Heaven was created independently and without resort to the Taurus musical composition.

The evidence that you can consider in determining whether Stairway to Heaven was independently created includes, but is not limited to:

1.  Testimony and evidence of the defendants who created Stairway to Heaven that they independently created Stairway to Heaven and how they did so;

2.  Testimony and evidence that the defendants who created Stairway to Heaven created or knew of music with similar elements before Taurus was created or before creating Stairway to Heaven;

3.  Testimony and evidence that Randy Wolfe knew of music with similar elements before Taurus was created, so that any similarity with Stairway to Heaven could be the result of Wolfe using the similar elements from earlier works;

4.  Testimony and evidence that the claimed similarities are commonplace or appear in earlier works; and

45

1

2      5.     Testimony and evidence as to the differences between the musical

3             composition Taurus and Stairway to Heaven as a whole.

4

5      If defendants prove Stairway to Heaven was independently created, then your

6  verdict must be for defendants.

7

8  **Source:** *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000), *cert.*

9  *denied* 531 U.S. 1126 (2001).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

46

## PLAINTIFF'S OBJECTION

Defendants have handcrafted this instruction and it reads like an argumentative legal brief. Needless to say, it is highly prejudicial and contains irrelevant portions. Plaintiff is not aware of why Defendants did not rely on the more than adequate language in model instruction 17.16 supplemental section. Defendants' instruction seeks to bullet point the evidence they anticipate presenting at trial. This is not the purpose of a jury instruction. Moreover, the instruction bafflingly refers to Randy California and his familiarity with prior art. This is totally irrelevant to the affirmative defense of independent creation. Plaintiff instead suggests that his neutral instruction no. 43 should be used:

> If Plaintiff shows Defendants had access to Plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises, that shifts the burden to Defendants to rebut or to show that the alleged infringing work was independently created.

> In determining whether Defendants' song was independently created, you may consider evidence presented by Defendants regarding the manner in which the composers created Defendants' song and any other evidence of the circumstances surrounding the creation of Defendants' song.

47

## DEFENDANTS' REPLY

Plaintiff seeks to improperly limit defendants' defense of independent creation to the "manner in which" they created the song and the "circumstances." That, however, is artificial and contrary to law and commonsense, and especially pernicious since plaintiff bases his claim on public domain material and, primarily, a minor line cliché. Plainly, the fact that Page was aware of descending chromatic lines long before *Taurus* was composed is strong proof of independent creation of *Stairway to Heaven* with a descending line.

That claimed similarities are the result of independent creation can also be proven by evidence of two authors' knowledge of works – common sources – with the same alleged similarities. 4 *Nimmer on Copyright* § 13.02[B] ("similarity between the two works may be explained by a common source, or even by coincidental similarity"). Here there is strong and undisputed evidence that both Page and Wolfe knew of earlier works with descending line clichés.

There are many ways of proving independent creation and plaintiff's attempt to shackle defendants in proving their defense must be rejected. The instruction is clear, correct and properly given.

48

**02048**

1

## JURY INSTRUCTION NO. 34

2

### STATUTE OF LIMITATIONS

3

4       All of plaintiff's claims alleging copyright infringement prior to May 31, 2011

5    are barred due to the statute of limitations.

6

7       To find a defendant liable, you must find that he or it committed copyright

8    infringement on or after May 31, 2011.

9

10   **Source:** 17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct.

11   1962, 1969 (2014) ("Under the [Copyright] Act's three-year provision, an

12   infringement is actionable within three years, and only three years, of its occurrence

13   [a]nd the infringer is insulated from liability for earlier infringements of the same

14   work"); Jt. R. 26(f) Report (Doc. 75) at 4 (confirming agreement "that the Copyright

15   Act's three year statute of limitations precludes relief as to any alleged infringements

16   prior to May 31, 2011").

17

18

19

20

21

22

23

24

25

26

27

28

49

1

**<u>PLAINTIFF'S OBJECTION</u>**

2

3        There is no need for a statute of limitations instruction as the testimony on

4   damages will be limited to that time period, subject to Defendants' motion in limine

5   on damages.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

50

1

## DEFENDANTS' REPLY

2         The jury will learn, if it did not already know, that *Stairway to Heaven* was

3    released forty-five years ago and has been successful.  It is important that they also

4    know that plaintiff's claim is limited in time.  Further, this instruction is important to

5    establish that no defendant can be liable unless he or it infringed on or after May 31,

6    2011.  That is a bright line that not only relates to potential damages, but is critical to

7    plaintiff establishing each defendant's liability.

8         The instruction is correct and important and should be given.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51

**JURY INSTRUCTION NO. 39**

**COPYRIGHT—DE MINIMIS**

To prevail on a copyright claim, the plaintiff must prove substantial copying of original expression in the copyrighted work.  That also means that trivial or minimal copying of original expression is not an infringement.

The defendants deny copying the musical composition Taurus, but contend that any copying would be trivial or de minimis.  A use is trivial or de minimis if:

1.    The allegedly-copied original expression is quantitatively a small
      portion of the plaintiff's copyrighted work; and

2.    The allegedly-copied original expression is not qualitatively important
      to plaintiff's copyrighted work.

If you find that plaintiff has not proven substantial copying of original material protected by the *Taurus* composition copyright, your verdict must be for the defendants.

**Source:** *Newton v. Diamond*, 388 F.3d 1189, 1192, 1995-96 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005).

52

**02052**

## <u>PLAINTIFF'S OBJECTION</u>

This instruction is not legally supported and is unduly prejudicial. It seeks to improperly convince the factfinder that small portions of larger works cannot be deemed infringement. In fact, very tiny portions of a work are accorded protection and can be copied:

> A leading case on de minimis infringement in our circuit is *Fisher v. Dees,* 794 F.2d 432 (9th Cir.1986), where we observed that a use is de minimis only if the average audience would not recognize the appropriation. *See id.* at 434 n. 2 ("[A] taking is considered de minimis only if it is so meager and fragmentary that the average audience would not recognize the appropriation.").

*Newton v. Diamond,* 388 F.3d 1189, 1193 (9th Cir. 2004). The Ninth has also held that:

> Although it is true that a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example), an arrangement of a limited number of notes can garner copyright protection. *See Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp. 741, 744 (S.D.N.Y.1980) (finding that four notes were substantial enough to be protected by copyright); *Santrayll v. Burrell,* 1996 WL 134803, at *2 (S.D.N.Y. Mar.25, 1996) (mem.order) (finding that the repetition of the word "uh-oh" four times in a distinctive rhythm for one measure is sufficiently original to render it protectable under the copyright laws). This Court has stated that "[e]ven if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Baxter v. MCA, Inc.,* 812 F.2d 421, 425(9th Cir.1987).

*Swirsky*, at 851-52.

Plaintiff's instruction no. 42 is more appropriate, to the extent there is even a triable issue of fact that the work appropriated was de minimis.

53

1          **DEFENDANTS' REPLY**

2          Plaintiff's objection has no basis in the instruction.  He must prove substantial

3   copying and this instruction explains that he has not done so if the alleged copying

4   of original material is both quantitatively and qualitatively important.  Thus, a small

5   portion that is not qualitatively important is not substantial.  That is the law.

6   *Newton*, 388 F.3d at 1995-96.  The instruction is a correct statement of the law and

7   provides guidance as to what constitutes the required substantial copying of original

8   material.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

54

**02054**

**JURY INSTRUCTION NO. 40**

**COPYRIGHT—AFFIRMATIVE DEFENSE—FAIR USE**

**(17 U.S.C. § 107)**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

The defendants deny copying the musical composition Taurus, but contend that any copying would be a fair use. ~~Defendant contends that defendant made fair use of the copyrighted work for the purpose of [criticism] [comment] [news reporting] [teaching] [scholarship] [research] [*other purpose alleged*].~~  The defendants have~~has~~ the burden of proving this defense by a preponderance of the evidence.  <u>If you find that the defendant has proved by a preponderance of the evidence that the defendant made a fair use of the plaintiff's work, your verdict must be for the defendant.</u>

In determining whether <u>any</u>~~the~~ use made of the work was fair, you should consider the following factors:

1.    the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

2.    the nature of the copyrighted work;

3.    the amount and substantiality of the portion used in relation to the

55

1      copyrighted work as a whole; and

2

3      4.     the effect of the use upon the potential market for or value of the

4             copyrighted work.; and

5      [5.]   [insert any other factor that bears on the issue of fair use].

6

7      The first and fourth factors are generally viewed as the most important factors

8 for you to consider.If you find that the defendant has proved by a preponderance of

9 the evidence that the defendant made a fair use of the plaintiff's work, your verdict

10 should be for the defendant.

11

12     The first factor in the fair use inquiry is "the purpose and character of the

13 use, including whether such use is of a commercial nature or is for nonprofit

14 educational purposes."  The central purpose of this factor is to determine whether

15 the use is transformative.  A transformative use is more likely to be a fair use.  A use

16 is transformative if it resulted in a new work with a further purpose or different

17 character, altering the first work with new expression, meaning or message.

18

19     The second fair use factor is "the nature of the copyrighted work."  If the

20 copyrighted work has already been publicly performed or publicly distributed, then

21 the use is more likely to be a fair use.

22

23     The third fair use factor is how much of the copyrighted work has been used

24 and the importance of that portion to the copyrighted work as a whole.

25

26     The fourth fair use factor is whether and the extent to which the new use

27 negatively affects the value of the copyrighted work.  If the new work is not a

28

56

**02056**

1  substitute for the copyrighted work in the marketplace, this factor weighs in favor of

2  fair use.

3

4  **Source:** 9th Cir. Manual 17.21 (modified); *Seltzer v. Green Day, Inc.*, 725 F.3d

5  1170, 1175-79 (9th Cir. 2013).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

57

1

## **PLAINTIFF'S OBJECTION**

2

3       Plaintiff disputes that there is even a triable issue of fact on fair use. The idea

4   that the appropriation of music, especially in light of Led Zeppelin's proven track

5   record of copying and plagiarizing other artists, to create the greatest and one of the

6   most lucrative rock songs of all time could be fair use is farcical.

7       In addition, the instruction, even if it is included, is far too long and seeks to

8   implant Defendants' position in the jury's mind, not instruct them on the applicable

9   law.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

58

1

### DEFENDANTS' REPLY

2      Plaintiff may not like the defense, but it available under the law and the

3 instruction is a correct statement of that law. *Seltzer v. Green Day, Inc.*, 725 F.3d

4 1170, 1175-79 (9th Cir. 2013). Its length is not inordinate and flows from the fair

5 use factors. The instruction is correct and appropriate and should be given.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

59

1
2
3

## JURY INSTRUCTION NO. 42[1]

### UNCLEAN HANDS

4    The defendants claim as a defense that actions of the plaintiff and his
5   predecessors bar his claims under an equitable doctrine called "unclean hands." To
6   establish this defense, the defendants must prove the following:

7

8    1.    Plaintiff or his predecessors' conduct violated conscience, good faith, or
9          other equitable principles, or he "dirtied his hands" in connection with
10          the copyright he asserts in the musical composition Taurus; and

11

12    2.    this improper conduct relates directly to the subject matter of his claim.

13

14    If the defendants establish these elements, then you must find that the plaintiff
15   has unclean hands.

16

17   **Source:** 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.09; *Dollar Sys.,*
18   *Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *Metro-Goldwyn-*
19   *Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221-23 (C.D. Cal.
20   2007).

21
22
23
24
25
26

---

27   [1]    Since unclean hands is an equitable defense, this defense is determined by the
28   Court, and this instruction is offered in case the Court elects to submit the issue to
     the jury for an advisory verdict.

60

1          **<u>PLAINTIFF'S OBJECTION</u>**

2

3          This defense is not available at trial and is improper.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

61

1

## **DEFENDANTS' REPLY**

2      Plaintiff provides no factual or legal grounds for his bare assertion the defense

3 is not available.  It is a recognized defense and there is foundation for it in the

4 evidence.  *Clem*, 566 F.3d at 1181; *see,* Defs' Oppn. (Doc. 161) to Pltf's Mtn. *in*

5 *Limine* No. 1.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

62

1   Peter J. Anderson, Esq., Cal. Bar No. 88891
    E-Mail: pja@pjanderson.com
2   LAW OFFICES OF PETER J. ANDERSON
    A Professional Corporation
3   100 Wilshire Boulevard, Suite 2010
    Santa Monica, CA 90401
4   Tel: (310) 260-6030
    Fax: (310) 260-6040
5   Attorneys for Defendants
    JAMES PATRICK PAGE, ROBERT ANTHONY
6   PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
    MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7   ATLANTIC RECORDING CORP., RHINO
    ENTERTAINMENT COMPANY and WARNER
8   MUSIC GROUP CORP.

9   Helene Freeman, Esq., admitted *pro hac vice*
    E-Mail: hfreeman@phillipsnizer.com
10  PHILIPS NIZER LLP
    666 Fifth Avenue
11  New York, NY 10103-0084
    Tel: (212) 977-9700
12  Fax: (212) 262-5152
    Attorneys for Defendants
13  JAMES PATRICK PAGE, ROBERT ANTHONY
    PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                   **WESTERN DIVISION**

18  MICHAEL SKIDMORE, *etc.*,          )  Case No. 2:15-cv-03462 RGK
                                        )  (AGRx)
19            Plaintiff,                )
                                        )
20       vs.                           )  DEFENDANTS' REPLY IN
                                        )  SUPPORT OF MOTION *IN LIMINE*
21  LED ZEPPELIN, *et al.*,            )  NO. 4 AND *DAUBERT* MOTION TO
                                        )  EXCLUDE STEWART, JOHNSON,
22            Defendants.              )  BRICKLIN, AND HANSON
                                        )
23  _____)
                                           Date:  May 10, 2016
24                                         Time: 9:00 a.m.

25                                         Courtroom of the Honorable
                                           R. Gary Klausner
26                                         United States District Judge

27

28

**02063**

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

In response to defendants' Motion *in Limine* No. 4 and *Daubert* motion directed to his four experts, Stewart, Johnson, Bricklin and Hanson (Doc. 137), plaintiff does not dispute that his Rule 26 expert disclosures delimit his ability to provide expert testimony and that his expert disclosures did not include any analysis of the copyrighted 1967 *Taurus* transcription.  *Id.* at 4.  Instead, he repeats his response to defendants' Motion *in Limine* No. 3; he claims that – despite the Court's Order on defendants' motion for summary judgment – his experts properly compared the *Taurus* recordings with *Stairway to Heaven*; and he adds conclusory and unproven factual assertions.

As it stands, plaintiff has never provided Rule 26(a)(2) disclosures of an analysis and comparison between the 1967 *Taurus* transcription and *Stairway to Heaven*.  Plaintiff cannot be allowed to call these witnesses at trial in the absence of the required disclosures and, for that reason alone, the Motion is properly granted to avoid manifest unfairness and prejudice.  Further, plaintiff's unsupported arguments as to his experts do not satisfy his burden on the Motion or under *Daubert*.

The motion should be granted.

## 2.    THE TESTIMONY OF STEWART, JOHNSON, BRICKLIN AND HANSON IS PROPERLY EXCLUDED

### (a)    Plaintiff Has Provided No Rule 26(a) Disclosures of Any Expert Analysis Comparing the Copyrighted 1967 *Taurus* Transcription and *Stairway to Heaven*

As defendants showed in their moving papers, and show in their Reply in support of their Motion *in Limine* No. 3, plaintiff never complied with Federal Rule 26 by providing expert disclosures of the analysis and comparison of the copyrighted 1967 *Taurus* transcription, on the one hand, and *Stairway to Heaven*, on the other hand.  *See,* Def's Reply in support of Mtn. *in Limine* No. 3 at 4-5; Scheduling Order

1

1    (Doc. 79) at 3 ("As for the disclosure of expert witnesses and exchange of written

2    reports, the parties must follow Rule 26").

3         As a result, the parties are on the eve of trial without plaintiff ever providing

4    expert disclosures on the issue of substantial similarity with the copyrighted work.

5         And while depositions are no substitute for timely reports and the opportunity

6    to provide reports in rebuttal to those timely reports, plaintiff also refused to produce

7    his experts for deposition, refused to have them accept deposition subpoenas and

8    claims that defendants were required to depose them before the February 11, 2016

9    discovery cut-off even though initial expert disclosures were not due until February

10   10, 2016.  Anderson Decl. at 7-8, ¶¶ 3-7; Fed. R. Civ. P. 26(a)(2)(D), 26(b)(4)(A)

11   ("A party may depose any person who has been identified as an expert whose

12   opinions may be presented at trial.  If Rule 26(a)(2)(B) requires a report from the

13   expert, the deposition may be conducted only after the report is provided.").

14        Allowing plaintiff to call at trial experts who never provided an analysis and

15   comparison of the 1967 *Taurus* transcription – and who to this day reject that it is

16   the proper work to analyze and compare – would dramatically and seriously

17   prejudice defendants.  Plaintiff has had every opportunity to fix the problem he

18   created, and has chosen not to do so and, instead, continues to argue with the Court's

19   ruling that "Plaintiff's only copyright claim lies in the musical composition of

20   *Taurus*, not the sound recording."  Order (Doc. 159) at 17.  The only way to avoid

21   the prejudice to defendants is to exclude plaintiff's experts.

22        **(b)    Plaintiff's Four Witnesses**

23        Although for the reasons stated above defendants' Motion should be granted,

24   defendants also offer the following responses to plaintiff's assertions as to each of

25   the four witnesses.

26        **(1)    Alexander Stewart**

27        Plaintiff argues that the elements Stewart referred to in his report and

28   declaration "are embodied in the deposit copy."  Pltf's Oppn. at 3-4.  But that is

2

1    absurd.  Stewart never provided an analysis or comparison of the copyrighted 1967
2    *Taurus* composition and his report and declaration instead ignore or treat with
3    disdain the 1967 transcription and, as the Court found, "improperly considered
4    features beyond the scope of the musical composition . . . ."  Order (159) at 17.  By
5    definition, he relied on elements not embodied in the 1967 transcription.  To this
6    day, Stewart and plaintiff's other experts have not presented any analysis of the 1967
7    transcription identifying where in that transcription the supposedly substantially
8    similar elements appear and what they are.

9         Plaintiff also argues that under *Swirsky v. Carey*, 376 F.3d 841 (9th Cir.
10   2004), combinations of unprotectable elements may rise to a protected selection and
11   arrangement and the Court found a triable issue as to whether that applies here.
12   Pltf's Oppn. at 4:3-10.   But, that selection and arrangement of unprotectable
13   elements must appear in the copyrighted work – the 1967 transcription – and Stewart
14   relied instead on unprotectable elements of the *Taurus* recordings.   And, out of
15   whole cloth and without an iota of evidentiary support, plaintiff asserts that the 1967
16   transcription "must be played in a 'fingerpicking style' with such positions and
17   fingering."  *Id.* at 4:10-15.

18        Plaintiff argues that Stewart's testimony as to performance elements of the
19   recordings is relevant to access.  *Id.* at 4:16-21.  Stewart, however, did not opine as
20   to access in any report.  Plaintiff also makes no attempt to meet his burden under
21   *Daubert* to prove that testimony from a musicologist is "not only relevant, but
22   reliable," on the entirely different factual question of access.  *Daubert v. Merrell*
23   *Dow Pharm., Inc.*, 509 U.S. 579, 589 (1985).  Indeed, if, as plaintiff asserts, a minor
24   line cliché can only be played on a guitar as plaintiff claims it was played, the
25   claimed "fingerpicking" similarity with *Stairway to Heaven* is meaningless as to
26   access too, since it flows from the public domain cliché.

27        Stewart's testimony and opinions are properly excluded.

28   ///

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**(2)     Erik Johnson**

As with Stewart, plaintiff asserts that the elements Johnson referred to in his report and declaration "are embodied in the deposit copy." Pltf's Oppn. at 4:27-28. He certainly never did so state in any Rule 26 report. Like Stewart, his report ignores the 1967 transcription and his opposition declaration derides Ferrara for analyzing and comparing the 1967 transcription. Again by definition, since Johnson "improperly considered features beyond the scope of the musical composition . . ." (Order (159) at 17), he relied on elements not embodied in the 1967 transcription.

Plaintiff also argues that Johnson's testimony is relevant to access. Plft's Oppn. at 4:23-28. If so, Johnson is duplicative of Stewart and is properly excluded for that reason and to avoid the risk of plaintiff loading his experts in order to outnumber defendants and mislead the jury. Further, Johnson, like Stewart, did not opine as to access in any report. In addition, plaintiff does not try to meet his burden under *Daubert* that any such testimony as to access is not only relevant, but reliable.

Johnson's is also properly excluded under Federal Rule of Evidence 403.

**(3)     Brian Bricklin**

Defendants raised that Bricklin does not claim to have conducted the required musicological analysis and that he relies on the assumption that the members of Led Zepelin infringed, to then back into the "opinion" that their "songwriting process" is to infringe. Defs' Mtn. *in Limine* No. 4 at 7-8. Plaintiff fails to respond to those grounds for the Motion and, accordingly, they are properly deemed conceded.

Plaintiff argues that Bricklin's testimony establishes similar "sonic landscape and techniques" establishing access. Once again, if so then Bricklin is duplicative of Stewart, as well as Johnson. Also, plaintiff does not establish by admissible evidence – rather than bare conclusions – that Bricklin's testimony is both relevant to access and reliable.

Bricklin also is properly excluded under Federal Rule of Evidence 403.

///

4

#### (4)    Kevin Hanson

Hanson also never opined as to the copyrighted 1967 *Taurus* transcription and, in response to defendants' Motion, plaintiff merely repeats that *Taurus* sound recordings are properly part of the substantial similarity analysis.   Pltf's Oppn/. at 5:22-26.   Plaintiff even copies-and-pastes from his response as to Stewart and Johnson, the bare assertion that Hanson "is clear that the elements he is referring to are embodied in the deposit copy." *Id.* at 4:27-28.  In doing so, plaintiff cites to the Johnson declaration generally, rather than anything Hanson purportedly provided. And, the fact remains that Hanson, relying solely on the *Taurus* recordings and never mentioning the 1967 *Taurus* transcription, did not opine as to the relevant copyrighted work.

### 3.    **CONCLUSION**

The deadline for initial expert disclosures, the deadline for rebuttal expert disclosures and the deadline to supplement or correct expert disclosures have all long passed.  Defendants complied with those deadlines.  Plaintiff, however, never provided expert reports analyzing and comparing the copyrighted 1967 *Taurus* transcription and *Stairway to Heaven*.  Plaintiff seeks to force defendants to proceed to trial without the Rule 26 disclosures defendants were entitled to receive and respond to with rebuttal reports.

Further, the reports plaintiff's witnesses did provide are fatally flawed because his witnesses base their opinions on elements not protected by the *Taurus* copyright, elements not protectable at all and unproven assertions about prior claims and theoretical claims as to other songs.  Neither can plaintiff characterize his witnesses as witnesses on access, a subject they did not opine upon and for which plaintiff fails to even try to carry his burden of proving their testimony is reliable.  In addition,

///
///
///

5

**02068**

1  allowing these witnesses would unfairly prejudice defendants, confuse the issues,

2  mislead the jury, unduly delay the trial and waste time.

3      These witnesses are properly excluded.

4  Dated: April 21, 2016

          /s/ Peter J. Anderson
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

6

## REPLY DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1.     I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.     I represent defendants Warner/Chappell Music, Atlantic Recording Corp., Rhino Entertainment Company, James Patrick Page and Robert Plant in this action. This Reply Declaration is submitted in support of their Motion *in Limine* No. 4.

3.     After requesting dates for depositions of plaintiff's expert witnesses and not having heard back from plaintiff's counsel, I wrote Mr. Malofiy on March 25, 2016 and proposed dates and asked whether the witnesses would accept service of their subpoenas.  He did not respond.

4.     On March 28, 2016 I followed up with a Notice of the depositions of plaintiff's expert witnesses and copies of their subpoenas, and asking again if they would accept service of the subpoenas.  In addition, I offered to reschedule the dates if they were not available.  Mr. Malofiy responded by e-mail that "I will get back to you by Wednesday of this week," namely March 30, 2016.

5.     Late the evening of March 30, 2016, I received an e-mail from Mr. Malofiy asserting that "The Discovery Cut-Off Date identified by Judge Klausner's Order was February 11, 2016. See attached Order.  The deadline to conduct discovery and depositions has long passed."

6.     After further exchanges of e-mails – in which I raised, for example, that expert disclosures were due and provided on February 10, 2016, so expert discovery could not have been cut-off on February 11, 2016 – Helene Freeman, Esq., and I spoke with Mr. Malofiy on April 1, 2016 and he said that he contends the February 10, 2016 discovery cut-off applies to expert witnesses; that defendants waived taking depositions of the experts he identified in plaintiff's February 11, 2016 Rule 26

7

**02070**

1 disclosures; that he would not produce his expert witnesses for deposition; that he

2 would "accept" subpoenas on their behalf but would not arrange for them to accept

3 them themselves or confirm his authority to accept them on his behalf; that he would

4 not provide the addresses to serve them; and that even if served the witnesses would

5 not appear.

6      7.     Since I had been unable to serve the subpoenas, and since Mr. Malofiy

7 indicated that in any event plaintiff's experts would not appear for deposition, I took

8 the depositions I noticed off calendar. I had hoped to re-notice them, but Mr.

9 Malofiy adhered to the positions above and that plaintiff's expert witnesses would

10 not appear for deposition.

11     I declare under penalty of perjury that the foregoing is true and correct.

12 Executed on April 21, 2016.

13

14                                 /s/ Peter J. Anderson

15                               PETER J. ANDERSON

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                   **WESTERN DIVISION**

18  MICHAEL SKIDMORE, *etc.*,            ) Case No. 2:15-cv-03462 RGK
                                         ) (AGRx)
19         Plaintiff,                    )
                                         )
20     vs.                               ) DEFENDANTS' REPLY IN
                                         ) SUPPORT OF MOTION *IN LIMINE*
21  LED ZEPPELIN, *et al.*,              ) NO. 3 TO EXCLUDE *TAURUS*
                                         ) AUDIO RECORDINGS
22         Defendants.                   )
                                         )
23  _____ ) Date:  May 10, 2016
                                           Time: 9:00 a.m.
24
                                         Courtroom of the Honorable
25                                          R. Gary Klausner
                                         United States District Judge
26

27

28

                            **02072**

<u>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**1.    INTRODUCTION**

Plaintiff, realizing his copyrighted work simply does not sound like *Stairway to Heaven*, seeks to confuse the jury by playing sound recordings he thinks are similar even though he has no copyright in those sound recordings, they are not the works in issue and they are very different from the copyrighted 1967 transcription of *Taurus*.  As discussed more fully below, each of his arguments fails.

Plaintiff's argument that sound recordings of a 1909 Act composition are properly used for the substantial similarity analysis directly conflicts with the Court's ruling on defendants' summary judgment motion and misstates the ruling in the *Blurred Lines* case that plaintiff relies upon.  His argument that pre-Hollenbeck Music recordings are relevant to prove the *Taurus* composition is not a work for hire is mooted by defendants' decision – which plaintiff ignores – not to pursue the work-for-hire issue.  And, plaintiff's argument that *Taurus* recordings are relevant to access and other issues merely substitutes a euphemism – "sonic landscape" – for the unprotectable performance elements that do not appear in the 1967 transcription but which he desperately wants the jury to hear.

The *Taurus* recordings plaintiff seeks to play – pre-Hollenbeck recordings, the Ode Records release, bootleg recordings and new recordings plaintiff created to highlight the claimed similarities in performance elements – are very different from the copyrighted 1967 composition, are not relevant and would confuse the issues, gravely mislead the jury and present them with the impossible task of ignoring the elements that the law mandates be disregarded.  The only *Taurus* recordings properly presented to the jury are those that are strictly limited to the *Taurus* musical composition as transcribed in the copyrighted 1967 transcription.[1]

---

[1]    On February 25, 2016, defendants submitted a piano and a guitar recording of the *Taurus* composition as transcribed and copyrighted (L. Ferrara Audio Exh. 2, track 1, & Mathis Audio Exh. 3 (Doc. 97-15) and plaintiff concedes they are correct recordings of *Taurus* as transcribed and copyrighted in 1967.

**2.      RECORDINGS OF *TAURUS* ARE PROPERLY EXCLUDED**

    **(a)      The Only Relevant Copyrighted Work Is the *Taurus* Composition as Transcribed in the 1967 Transcription**

        **(1)      The *Taurus* Recordings Are Not Relevant to the Substantial Similarity Comparison**

            ***i.    Plaintiff Ignores the Court's Ruling that His Only Copyright Claim Lies in the 1967 Transcription, Not the Sound Recordings***

Plaintiff is flatly wrong when he argues that the *Taurus* recordings he seeks to play are properly compared to *Stairway to Heaven* in determining whether there is substantial similarity.  Pltf's Oppn. (Doc. 169) at 1-4.

Before plaintiff filed his opposition, the Court confirmed that "Plaintiff's only copyright lies in the musical composition of *Taurus*, not the sound recording" and that, "[b]y analyzing performance elements in the sound recording of *Taurus*, Plaintiff's experts improperly considered features beyond the scope of the musical composition . . . ."  Order (159) at 17.  Yet, plaintiff's opposition treats those rulings as if they do not exist.

Plaintiff asserts defendants have cited no cases establishing that it is improper to compare recordings of a 1909 Act composition with the defendant's work to prove substantial similarity.  Pltf's Oppn. at 2:18-22.  That, however, is the inexorable conclusion from unassailable precedent defendants cited, that a 1909 Act composition copyright is limited to the deposit copy transcription.  Defs' Mtn. *in Limine* No. 3 (Doc. 136) at 3-5.

The Court has confirmed that plaintiff has no rights in the *Taurus* sound recordings and sues on a copyright limited to the 1967 transcription of the *Taurus* musical composition.  Order (159) at 16-17.  It is well-established that "only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, . . . ."  *Apple*

2

1  *Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994), *cert. denied*

2  513 U.S. 1184 (1995).   Since any elements of the copyrighted *Taurus* musical

3  composition protected by copyright are only those set forth in the 1967 *Taurus*

4  transcription, only that transcription – or an audio recording strictly limited to it – is

5  lawfully compared to *Stairway to Heaven*.

6  ### *ii.  Plaintiff Misstates the Blurred Lines Ruling, Which*

7  ### <u>*Granted a Motion in Limine to Exclude Sound Recordings*</u>

8  Plaintiff advises the Court that in the *Blurred Lines* case, *Pharell Williams v.*

9  *Bridgeport Music*, the District Judge denied a motion in limine to exclude sound

10  recordings of performances of the 1909 Act composition.  Pltf's Oppn. at 2:23 to

11  3:2.  Plaintiff confuses different motions in that case and is incorrect: the District

12  Judge <u>granted</u> the motion *in limine* to exclude the sound recordings, limiting the

13  parties to approved recordings strictly limited to the deposit copy.[2]  The post-trial

14  issue that plaintiff refers to was whether the expert had nevertheless gone beyond the

15  compositional elements.

16  Accordingly, the District Judge's exclusion of recordings of the 1909 Act

17  composition, beyond recordings prepared for trial and limited to the transcription of

18  that composition, supports defendants' motion here.

19  *///*

20

---

21  [2]  In that action for declaratory relief of no infringement with a counterclaim for

22  infringement, the parties are inverted from the normal case.  Order 2:13-cv-06004-JAK-AGR (Doc. 226) (January 26, 2015) at 1:

23  "No. 1: to Exclude Evidence of Marvin Gaye Sound Recordings (Dkt. 165):

24  GRANTED; provided, however, Defendants [effectively the plaintiffs] may present modified versions of the sound recordings to Plaintiffs [effectively

25  defendants] for their review and consideration with any remaining dispute to be determined by the Court, and provided, further, that this ruling does not

26  preclude Defendants' experts [effectively plaintiff's experts] from relying on such recordings as a basis for elements of their opinions, as appropriate, with

27  the Court to address such issues upon a proffer by Defendants [effectively plaintiffs] as to such opinion testimony."

28

3

1
2

*iii. Plaintiff's Experts Did Not In Fact Opine as to the 1967
Transcription of* Taurus

3   Remarkably, plaintiff advises the Court – and submits two of his experts'

4   declarations stating – that his experts analyzed the 1967 *Taurus* transcription and

5   opined as to it.  Pltf's Oppn. at 3:7-8 ("Plaintiff's experts do indeed opine that all

6   pertinent elements of Taurus are represented on the deposit copy and that those

7   protected elements appear in the Taurus sound recording"); Johnson Decl. (Exh.

8   175) at 1:17-19; Stewart Decl. (169-1) at 1, ¶ 8.  That is patently false.[3]

9   <u>None of plaintiff's February 10, 2016 initial Rule 26(a)(2) reports even</u>

10  <u>mention the deposit copies.</u>  Anderson Decl. at 10, ¶¶ 3-4, & Defs' Mtn. *in Limine*

11  No. 4 (Doc. 137) at Exh. 1-4; Fed. C. Civ. P. 26(a)(2)(B) (expert disclosures must

12  state what was relied upon).  Instead, they purported to analyze and compare only

13  recordings of *Taurus* to *Stairway to Heaven*.  Plaintiff has the burden of proving

14  substantial similarity in protected expression between the copyrighted 1967 *Taurus*

15  transcription and *Stairway to Heaven*.  *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th

16  Cir. 1996).  <u>Yet, plaintiff's initial reports ignored the 1967 transcription.</u>

17  While it would have been improper for plaintiff to use rebuttal reports to

18  disclose expert reports on an issue he bears the burden of proving, he did not even

19  do that: plaintiff served no rebuttal reports at all.  Anderson Decl. at 10, ¶ 5.  And

20  while it also would have been improper for plaintiff, in the guise of correcting or

21  supplementing reports under Federal Rule of Civil Procedure 26(e)(2), to provide the

22  reports he should have provided on February 10, 2016, he also did not do that.

23  Anderson Decl. at 10, ¶ 6.

24  ///

25
26
27
28

---

[3]  Further, that elements of the copyrighted 1967 *Taurus* transcription "appear in the Taurus sound recording" does not change that the sound recordings are very different from the copyrighted transcription and contain material that is not protected and which the law requires be separated out and disregarded, a task a jury is, to put it mildly, ill-equipped to do.

4

1      As a result, plaintiff has never provided <u>any</u> expert reports purporting to

2 analyze substantial similarity in protected expression between the copyrighted 1967

3 *Taurus* transcription and *Stairway to Heaven*.

4      Plaintiff did file declarations of his experts in opposition to defendants'

5 motion for summary judgment, but his experts' declarations also were limited to the

6 *Taurus* sound recordings.  *See, e.g.,* Order (Doc. 159) at 3 (Stewart compared

7 "recordings of *Taurus*" with *Stairway to Heaven*), at 4 ("Johnson transcribed the

8 song *Taurus* from the sound recording"), & at 4 (Bricklin "compared audio files of

9 *Taurus* and *Stairway to Heaven*).

10      <u>Indeed, in their declarations in opposition to defendants' motion for summary

11 judgment, plaintiff's experts ridiculed the idea that the 1967 copyright is limited to

12 the 1967 *Taurus* transcription</u>.  *See, e.g.,* Stewart Decl. (Doc. 118-8) at 12, ¶ 29

13 (ridiculing Ferrara for not relying on the *Taurus* recording), at 13, ¶ 33 (analyzing

14 the 1967 *Taurus* transcription is "an evasive approach to this case"), at 14, ¶ 38

15 (Ferrara, by analyzing the 1967 *Taurus* transcription, is guilty of "garbage in –

16 garbage out"); Johnson Decl. (Doc. 118-9) at 8, ¶ 21 (comparing the 1967 *Taurus*

17 transcription to *Stairway to Heaven* "is a simple 'apples to oranges' fallacy of

18 comparison"), at 22, ¶ 31 (Ferrara disingenuous in comparing 1967 *Taurus*

19 transcription to *Stairway to Heaven* transcriptions and recordings).

20      Now, after the Court has confirmed that the *Taurus* copyright is limited to the

21 1967 *Taurus* transcription, plaintiff's opposition to the Motion *in Limine* makes it

22 plain that plaintiff merely seeks to evade that ruling.  Their argument is quite simply

23 that notwithstanding that this Court has ruled that the copyright is limited to what is

24 contained in the written deposit copy, their experts disagree.  *See, e.g.,* Johnson

25 Decl. (Doc. 175) at 1, ¶ 5 (Ferrara takes "a narrow – fishbowl approach – of solely

26 considering the deposit copy of Taurus" while Johnson and the other experts take "a

27 holistic approach" in considering the *Taurus* recordings), at 3-4, ¶¶ 11-12, 16-17 (the

28 protected composition is not the transcription, but "that part of the song that remains

5

constant from performance to performance" as evidence in sound recordings over the years);   Stewart Decl. (Doc. 169-1) at 1, ¶ 6 (relying on the 1967 *Taurus* transcription "is artificial and unduly limiting"), at 2, ¶ 14 (Ferrara "artificially narrowed his comparison between Taurus and Stairway to Heaven to just the notes of Taurus on the deposit transcription"), at 3, ¶ 21 (analysis of the 1967 *Taurus* transcription is "an improper overly limited analysis"), at 3, ¶ 22 (the protected compositional elements of *Taurus* are the elements "that in every recording and every performance of Taurus . . . remains unchanged from performance to performance").

The Court has ruled that the copyright on which plaintiff sues is limited to the 1967 *Taurus* transcription.  That is the relevant work to be compared to *Stairway to Heaven*.  Only recordings strictly limited to that transcription should be admissible in evidence and played for the jury.  *See above* at 1 n.1.

### (2)    Since Defendants Are Not Pursuing their Work for Hire Argument, Pre-Hollenbeck Recordings of *Taurus* Are Not Needed to Disprove that Argument

Plaintiff argues that bootleg recordings of *Taurus* before Randy Wolfe entered into the August 29, 1967 Exclusive Songwriter's Agreement with Hollenbeck Music are relevant to prove that the composition predates that Agreement and is not a work for hire.  Pltf's Oppn. at 4-5.  Plaintiff omits, however, that in light of the Court's ruling defendants are not pursuing the work for hire argument.  Anderson Decl. at 10-11, ¶ 7.  As a result, this argument for relevance also fails.

### (3)    *Taurus* Recordings Also Are Not Relevant to Access, Independent Creation or Innocence

Plaintiff states that he plans to play the recording of *Taurus* from Spirit's first album and ask defendants – presumably the individuals – whether they heard it prior to writing *Stairway to Heaven*.  Plt's Oppn. at 5:15-17.  Of course, he did that in deposition and they denied having heard it until this claim was asserted.  He does not

6

1    need to play the recording at trial to ask if they heard it because he can establish they

2    are now familiar with it and then ask if they heard it before writing *Stairway to*

3    *Heaven*.  Neither does this argument support what plaintiff actually plans to do:

4    repeatedly play *Taurus* recordings before the jury, including in questioning his and

5    defendants' experts.

6        Plaintiff next argues that "the sonic landscape" of the *Taurus* recordings is

7    relevant to access because they are supposedly similar.  But, "sonic landscape" is

8    merely plaintiff's euphemism for the unprotected performance elements in the

9    *Taurus* sound recordings.  Pltf's Oppn. at 5:22-27.  Neither is there substance to the

10   argument: that, for example, recordings of the two compositions include

11   "fingerpicking," either a flute or a harpsichord or "reverb" – common in recordings

12   of that era – do not demonstrate access.  That, presumably, is why plaintiff did not

13   make that argument in opposing defendants' motion for summary judgment.

14       Plaintiff seeks, by hook or crook, to play *Taurus* recordings that are different

15   from the relevant copyrighted work, namely the 1967 *Taurus* transcription.  Those

16   recordings are properly excluded.

17   **(b)    Playing Recordings of *Taurus* that Are Very Different from the**

18            **Copyrighted 1967 Transcription Is Certain to Confuse the Issues**

19            **and Mislead the Jury**

20       Even if *Taurus* recordings did have some probative value, it is

21   overwhelmingly counterbalanced by the unfair prejudice and the certainty of

22   confusing the issues, misleading the jury and giving them the impossible task of

23   ignoring what they hear and disregarding the performance elements.  Fed. R. Evid.

24   403.

25       As a matter of law, *Taurus* recordings are not relevant to substantial similarity

26   between the copyrighted 1967 *Taurus* transcription and *Stairway to Heaven*, and

27   plaintiff also fails to establish another basis for relevance of those recordings.

28   ///

7

1    On the other hand, playing the *Taurus* recordings, which are very difference
2 from the copyrighted composition, is certain to cause confusion and mislead the
3 jury, which would be required to identify the sounds and elements that are not in the
4 1967 transcription and – while listening to the recordings plaintiff seeks to play –
5 disregard those materials and elements. And, the jury would then also be required,
6 while listening to those recordings, to determine whether, without the recordings'
7 materials and elements, there is substantial similarity between the 1967 transcription
8 and *Stairway to Heaven*. As defendants previously raised, and plaintiff ignores,
9 Courts have refused to allow the use of such recordings where the only copyrighted
10 work is a transcribed musical composition. *Fahmy v. Jay Z*, No. 07CV05715-CAS-
11 PJWx, 2015 WL 5680299, at *14 (C.D. Cal. Sept. 24, 2015) ("Presenting the sound
12 recordings at trial carries a significant risk of confusing and misleading the jury";
13 motion *in limine* granted); *see, above* at 3 n. 2.

14    Playing *Taurus* recordings will effectively preclude the jury from doing what
15 the law requires: compare only the copyrighted 1967 *Taurus* transcription (as
16 performed strictly limited to the transcribed composition (*see above* at 1 n. 1)) with
17 *Stairway to Heaven*. Allowing plaintiff to play other *Taurus* recordings, which he
18 admits are very different from the copyrighted work, would ensure the actual
19 copyrighted work would be obscured or lost and substantially prejudice defendants.

20    Accordingly, the *Taurus* recordings are also properly excluded under Rule
21 403.

22 **3.     CONCLUSION**

23    The Court has confirmed that the copyright plaintiff sues upon is limited to
24 the copyrighted 1967 *Taurus* transcription. The *Taurus* recordings plaintiff seeks to
25 play at trial are irrelevant. And, to the extent they have any relevance, the probative
26 ///
27 ///
28 ///

8

1 value is plainly outweighed by the certainty that playing the *Taurus* recordings will

2 confuse the issues, mislead the jury and substantially prejudice defendants.

3 Dated: April 21, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

9

## REPLY DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1.     I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.     I represent defendants Warner/Chappell Music, Inc., Atlantic Recording Corp., Rhino Entertainment Company, James Patrick Page and Robert Plant. This Reply Declaration is submitted in support of their Motion *in Limine* No. 3

3.     I am familiar with the Rule 26(a)(2) reports that plaintiff provided on February 10, 2016, which was the deadline for submitting initial expert disclosures. I have reviewed those reports carefully and none of them mention the 1967 *Taurus* transcription or "deposit copy."   Copies of the reports of Messrs. Stewart, Johnson, Bricklin and Hanson, without their respective attachments and exhibits – which also did not mention the 1967 *Taurus* transcription or deposit copy – are attached as Exhibits 1-4 to my March 25, 2016 Declaration attached to defendants Motion *in Limine* No. 4 (Doc. 137).

4.     As a result, none of plaintiff's initial expert disclosures included an analysis or comparison of the 1967 *Taurus* transcription and *Stairway to Heaven*.

5.     The deadline to provide rebuttal disclosures was March 14, 2016. Defendants provided rebuttal reports, but plaintiff did not provide any.

6.     Federal Rule of Civil Procedure 26(e)(2) provides that any additions or changes to expert disclosures must be provided by the time of the parties' Rule 26(a)(3) disclosures are due.  That deadline has passed and plaintiff did not provide any additions or changes to his prior disclosures at that time.

7.     In light of the Court's ruling on defendants' motion for summary judgment, defendants are not pursuing at trial the contention that the *Taurus* musical composition is a work for hire.  Accordingly, for example, I did not include that

///

10

02082

contention in the revised draft of the proposed Pretrial Conference Order that I sent plaintiff last week.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 21, 2016.

_____/s/ Peter J. Anderson_____
PETER J. ANDERSON

11

1  Francis Malofiy, Esquire
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 1
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5
6  Glen L. Kulik, Esq.
   Kulik Gottesman & Siegel LLP
7  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
8  T:  (310) 557-9200; F:  (310) 557-0224
   E:  gkulik@kgslaw.com
9
10
   Attorneys for Plaintiff
11
                **UNITED STATES DISTRICT COURT**
12
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13

14  MICHAEL SKIDMORE, as Trustee for        Case No. 15-cv-03462 RGK (AGRx)
    the RANDY CRAIG WOLFE TRUST,
15                                           Hon. R. Gary Klausner
16              Plaintiff,
                                             **PLAINTIFF'S SHORT EXPERT**
17         v.                                **NARRATIVES AND**
                                             **QUALIFICATIONS**
18  LED ZEPPELIN; JAMES PATRICK
19  PAGE; ROBERT ANTHONY PLANT;
    JOHN PAUL JONES; SUPER HYPE
20  PUBLISHING, INC.; WARNER MUSIC          Date:   May 10, 2016
21  GROUP CORP., Parent of                  Time:   9:00 a.m.
    WARNER/CHAPPELL MUSIC, INC.;            Room:   850
22  ATLANTIC RECORDING
23  CORPORATION; RHINO
    ENTERTAINMENT COMPANY,
24
25              Defendants.
26
27
    **PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS**
28
                          PAGE 1 OF 9

### Alexander Stewart Narrative, Musicologist

**Qualifications:** Dr. Stewart is a Professor of Music, Director of Latin American and Caribbean Studies, and Jazz Studies Coordinator at the University of Vermont. He has contributed to numerous peer reviewed journals and other publications and he is the author of a book published by University of California Press. His work encompasses extensive music transcriptions, musicological analysis, historical research, and other scholarly activities, particularly in popular music. He earned a Ph.D. in Music (Ethnomusicology Concentration) from the Graduate Center of the City University of New York (CUNY) and a Master of Music in Jazz and Commercial Music from Manhattan School of Music. During 2006-7 he was a Fulbright scholar researching traditional and popular music in Mexico. As an active professional musician he has performed with leading musicians in jazz and popular music for more than thirty years. He has provided expert opinions and analysis on music copyright matters for over twelve years, including testimony in trial in Federal District Court, Bridgeport Music v. Universal Music, Nashville TN, Case No. 3:01-780, February 2007 and recently by deposition in *Absent Element v. Daughtry* (Burlington, VT, May 20, 2015).

**Testimony:** Mr. Stewart will testify as a musicologist regarding the similarities between the compositional elements of the works Taurus by Spirit and Stairway to Heaven by Led Zeppelin. His testimony is expected cover the substantial similarities between the songs, including the structure, key, tempo, rhythm, melody, pitch, and other protectable compositional elements. His testimony will cover the significance of the specific parts of the compositions to each song, including the quantitative and qualitative importance of the similarities. His testimony will also analyze the deposit copy of Taurus, as well as the deposit copy compositional elements embodied in the Taurus sound recordings. He will also rebut the testimony of Defendants' experts, including their statements that the expression in Taurus is commonplace, in the prior art, not protected, and/or a "minor line cliché." He will

PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS

rebut the independent creation and innocence defenses of Defendants. Furthermore, he will testify as to the similarities between the sound recordings of Taurus and Stairway to Heaven and how they are not possibly the product of coincidence. He will also testify that the sound recordings of Taurus from before August 29, 1967 are the same composition as in the post-August 1967 sound recordings of Taurus and in the deposit copy.

### Erik Johnson Narrative, Master Session Musician

**Qualifications:** Mr. Johnson is a master musician/session musician. He has been a professor of music on the University level for 17 years, beginning in 1999, the year that he graduated Summa Cum Laude from Temple University's esteemed Esther Boyer College of Music. He has taught music theory, ear training, styles and analysis, improvisation, pedagogy, private lessons and have coached large and small ensembles in multiple genres. He is currently an Adjunct Assistant Professor on the faculty of The University of the Arts where he has been teaching since 2006. He has recorded, performed and toured with world-renowned musicians in the genres of jazz, classical, pop, rock and other styles. His credits include releases on Interscope Records, Blue Note, Argo/Decca, Sony Publishing, and performances on television including "Late Night with Conan O'Brien." He has extensive experience as a musician, recording engineer and producer at premier studios in Philadelphia, New York and Los Angeles.

**Testimony:** Mr. Johnson is a master musician/session musician who participated in the exact recreation and rerecording of both Taurus and Stairway to Heaven. He identified and recreated the electric bass, drum set and electric piano parts as played on the original recording. He also recreated the harpsichord, strings, and percussion for Taurus. He will perform at trial. He will testify regarding how being able to analyze the constituent parts of the songs individually is crucial, especially to show the jury how the song is composed and the similarities between

PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS

**02086**

the songs. He will also testify regarding the compositional elements of Taurus present on the deposit copy and how those elements are displayed in the Taurus sound recordings and recreations. His testimony will furthermore compare the sound recording of Taurus to the sound recording of Stairway to Heaven to establish that the similarities in the sound recordings, even those not protectable, preclude independent creation or innocence defenses. He will also testify regarding how the composition of Taurus from pre August 1967 is the same as the post August 1967 recording and deposit copy transcription. He will also rebut the testimony of Defendants' experts, including their statements that the expression in Taurus is commonplace, not protected, and/or a "minor line cliché," and address their citations to prior art.

### Brian Bricklin Narrative
### Songwriter, Band Member, Producer, Sound Engineer

**Qualifications:** Brian Bricklin is a world class music producer, audio engineer, performing arts school and studio owner, college instructor, musician, band member, song writer and live sound engineer. He is a member of ASCAP, the National Academy of Recording Arts and Sciences and has been elected to the Board of Governors (Grammy Foundation) three times. He is a multi-instrumentalist: guitar, bass, drums, and vocals. He has expert level knowledge of amplification, amp modelers, effects and all forms of processing equipment for instruments and sound reinforcement. Co-founding member of the band Bricklin that was signed to A&M records and recently of the band Martin's Dam, signed to Hybrid/Sire. Writer or co-writer of numerous songs in movies and television advertisements including: "Bill & Ted's Excellent Adventure," MTV/Paramount movie "Election," ABC, NBC, CBS, FOX and ESPN, as well as internationally aired television commercials. He is also a game day audio engineer for the Philadelphia Eagles and Philadelphia Phillies, as well as the Director of

PAGE 4 OF 9

Client Services for Future Sonics Inc. the premier and leading ear monitor manufacturer. He recently testified in a deposition as a production and sound engineering expert for the plaintiff in <u>Marino v. Usher</u> (ED Pa. 2013).

**Testimony:** Mr. Bricklin will opine on the songwriting process utilized by Led Zeppelin, including their use of prior art to create their songs and the similarities of those songs. This will include the musical analysis and comparison of the compositions, sound recordings, and lyrics to establish that Led Zeppelin used the prior art to create their music and that Led Zeppelin's songs contain significant similarities to the prior art. Mr. Bricklin will also testify as a producer and sound engineer regarding recreation of Stairway to Heaven and Taurus, including his role in making sure the recreations are faithful and identical. His testimony will focus on analyzing the non protectable elements, such as the production and creation Stairway to Heaven and Taurus (which was also used to recreate the songs) to demonstrate that the creation of the two songs was not independent. His testimony will rebut independent creation and innocence.

### Kevin Hanson Narrative, Master Session Musician

**Qualifications:** Kevin Hanson is a master guitarist, songwriter, producer, teacher, and university professor at the University of the Arts with 35 years of playing experience and 25 years of teaching experience. He has performed and recorded extensively with both major label and independent bands, toured throughout the US and internationally, and has both studied and taught the guitar on a focused, in-depth level. He has played on hundreds of both major label and independent recordings for 20 years, in genres including rock, jazz, blues, gospel, hip hop, R+B and classical. He teaches university courses on songwriting and on the form and structure of songs something that requires a profound understanding of song composition, arrangement, instrumentation, production and performance.

PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS

**Testimony:** Kevin Hanson is a master session musician who participated in the exact recreations of Taurus and Stairway to Heaven. He played the following instruments in doing so: electric 6 and 12 string guitars, acoustic guitars, and Recorder parts via MIDI. He will perform at trial all relevant compositions and sound recording. He will testify as to the compositional similarities between Taurus and Stairway to Heaven, as well as how the elements of the Taurus deposit transcript and composition manifest themselves in the Taurus sound recordings, and the similarities to Stairway to Heaven. His testimony will focus on the guitar in both songs, especially as it relates to the compositional elements, the interpretation, and the articulation. His testimony will also rebut the claims of independent creation, the claims of Defendants experts regarding the alleged commonality of the elements in Taurus, and he will address Defendants' and their experts' claims with respect to the prior art.

### Denny Somach Narrative, Led Zeppelin Historian

**Qualifications:** He is a published author (Get the Led Out: How Led Zeppelin Became the Biggest Band in the World-Sterling Books), radio producer, syndicator, archivist, and recognized rock historian. He has appeared on the Today Show, CBS Morning Show, Larry King, CNN, the Michael Smerconish Program, the Howard Stern Show and others to discuss Led Zeppelin's history. He has dedicated a good portion of my life to chronicling Led Zeppelin, their music, and its significance. His book, Get the Led Out, contains 26 interviews with notable musicians of the time period, record executives, insiders, and the band members themselves.

**Testimony:** Mr. Somach will testify as a historian to the qualitative importance of Stairway to Heaven to Led Zeppelin's catalogue of music, including the introductory notes of Stairway to Heaven. Mr. Somach will also testify to the widespread knowledge of Led Zeppelin's history of using the music of other artists without credit, as well as the wide spread and well known belief in the music

PAGE 6 OF 9

community that Stairway to Heaven was based on Taurus. This testimony will help establish knowledge and also rebut the defense of independent creation being advanced by Defendants. Moreover, Mr. Somach will testify regarding Mr. Page's statement that he came up with Stairway to Heaven after listening to Mary Poppins, that in his extensive experience as an expert in Led Zeppelin's history that he has never before heard such an assertion.

### Michael Einhorn Narrative, Economist

**Qualifications:** Michael Einhorn has worked as an economist (Ph.D. Yale 1981) since 1997 in the area of media and intellectual property. From 1997 to 2000, he worked as a staff economist at Broadcast Music, Inc. ("BMI"). BMI is a collecting agency that licenses performance rights in music to major broadcasters, including television networks, local stations, cable companies, and radio stations. Negotiating license fees for musical compositions generally involves some means of acknowledging the value of the intellectual property to the user. It also involves institutional knowledge of television, radio, movies, and cable programming. From July 2000 to the present date, he has served as a testifying economist in court cases involving the valuation of the intellectual property owned by musicians, songwriters, music publishers, record labels, artists, photographers, actors, cartoonists, television producers, cable companies, and radio stations. He has testified in many cases, including *Chris Lester v. U2, Apple Computer, and Universal Music* (C.D. Cal., 2009), *Kilter, Inc. v. Avon Corporation,* (S.D.N.Y., 2011), *Rafael Vergara Hermosilla v. The Coca Cola Company*, (S.D. Fl., 2011), *Dan Marino v. Usher, et al.,* (E.D. Pa., 2013), *Lessem v. Taylor,* (S.D.N.Y. 2012).

**Testimony:** Dr. Einhorn will testify to the exploitation of Stairway to Heaven and Led Zeppelin IV, including gross revenues, income streams, and allocation or apportionment of any expenses Defendants attempt to claim. He will testify regarding contracts, publishing revenue, and the relationships of the entities who

PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS

1   exploit Stairway to Heaven and Led Zeppelin IV including the numerous shell
2   companies owned and controlled by the individual defendants and their creative
3   accounting to hide revenues and insulate and isolate the individual defendants from
4   liability. He will also testify to future royalties or monies from exploitation of
5   Stairway to Heaven from income streams, value of deprivation of credit, and
6   quantitative and qualitative values of Stairway to Heaven.

7

8

9

10   DATED:  April 20, 2016          FRANCIS ALEXANDER, LLC

11

12                                   By ___*/s/ Francis Malofiy*_____
13                                      Francis Malofiy
                                        Attorneys for Plaintiff
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAGE 8 OF 9

PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's Short Expert Narratives and Qualifications has been served upon counsel by email:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company; James Patrick Page, Robert Anthony Plant, and John Paul Jones*

*****

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ April 20, 2016*

PAGE 9 OF 9

PLAINTIFF'S SHORT EXPERT NARRATIVES AND QUALIFICATIONS

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6  Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
   15303 Ventura Blvd., Suite 1400
8  Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
   E:  gkulik@kgslaw.com
10 *Attorney for Plaintiff*

11

12                 **UNITED STATES DISTRICT COURT**

13            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14  MICHAEL SKIDMORE, as Trustee for       Case No. 15-cv-03462 RGK (AGRx)
15  the RANDY CRAIG WOLFE TRUST,
                                           Hon. R. Gary Klausner
16                      Plaintiff,
                                           **DECLARATION OF ERIK**
17       v.                                **JOHNSON OPPOSING**
                                           **DEFENDANTS' MOTIONS IN**
18                                         **LIMINE NOS. 3 & 4**
19  LED ZEPPELIN; JAMES PATRICK
    PAGE; ROBERT ANTHONY PLANT;
20  JOHN PAUL JONES; SUPER HYPE
21  PUBLISHING, INC.; WARNER MUSIC
    GROUP CORP., Parent of
22  WARNER/CHAPPELL MUSIC, INC.;
23  ATLANTIC RECORDING
    CORPORATION; RHINO
24  ENTERTAINMENT COMPANY,

25                      Defendants.
26

27

28

**DECLARATION OF ALEXANDER STEWART, Ph.D
OPPOSING DEFENDANTS" MOTIONs IN LIMINE NOS. 3 & 4**

I, Erik Johnson, declare as follows:

1.      I am an Adjunct Assistant Professor of Music at the University of the Arts in Philadelphia, Pennsylvania.

2.      I was retained as an expert in this case to listen to and analyze *Taurus* and *Stairway to Heaven,* to perform both pieces as a master musician and faithfully replicate the original recordings for the purpose of creating multitrack facsimiles. I also created a full transcription of *Taurus* and incorporated by reference the corresponding audio for both *Taurus* and *Stairway to Heaven.*

3.      I submitted an Expert Report in this case along with an Expert Declaration which contained rebuttal of defendants' reports (Ferrara and Mathes). I now submit this Supplemental Declaration produced to answer dispute regarding the deposit copy in Taurus and if after further consideration of defendants expert reports, rebuttals, and declarations if my conclusions or opinions in my reports or declarations change. I can state with conviction that they do not.

4.      I note at the outset that all experts in this case—except Ferrara—analyzed both the deposit copy and the recordings to render a full and complete analysis and opinion. This means that 5 of the six experts involved in this case (on both sides plaintiff and defendant) used the same method where as one defense expert Ferrara used a different method. It should be noted that even defendants experts conflict each other on the proper analysis.

5.      The difference between the methodology used by Dr. Ferrara in coming to his musicological opinions as compared to mine and the other experts in this case, is that Dr. Ferrara had taken a narrow—fishbowl approach—of solely considering the deposit copy of Taurus as compared to the sound recording of Stairway to Heaven. My analysis (and that of the other experts), had taken a holistic approach in considering both the recordings of Taurus along with the deposit copy.

1

6.    Moreover, there is no dispute among the experts that the intro of *Stairway to Heaven* is qualitatively one of the most memorable parts of the composition. Furthermore, Dr. Ferrara in his Expert Report affirms that it is similar to *Taurus*.

> **"Some parts in a musical composition can be more qualitatively valuable than other music in the same composition. For example, if <u>the music in "Stairway" that is similar to "Taurus" includes one or more of the most memorable parts of "Stairway" …"</u>**

(Ferrara Report; Attachment F – Value Assessment; Paragraph 12)

7.    Additionally, Mathes in his Rebuttal Report confirms that I am correct:

> <u>**Johnson is correct that the initial guitar part in Stairway is very significant,**</u> but he is incorrect that it is the most important single element of Stairway to Heaven.

(Mathes Rebuttal Report; Paragraph 14)

8.    The audio attached by Mathes in his Report further indicate that his analysis and comparison of Taurus to Stairway was consistent with Plaintiff's Experts analysis. (Mathes Report; Paragraph 25. Mathes Audio Exhibits to his Report)

9.    Mathes Rebuttal further states that "Stewart says that 80% of the pitches are the same. With the same underlying line cliché, this would be expected." However, it should be noted that the descending melodic line encompasses only a portion of what is substantially similar. The harpsichord part of *Taurus* (as represented in the deposit copy) contains six notes that correspond exactly to the melody of *Stairway to Heaven*. This fact doesn't address the striking similarity of the guitar parts on the recordings. Furthermore, the bass clef part on the deposit copy of Taurus strongly suggests the guitar part which although is not fully represented, is present represented and defined in the deposit copy.

**<u>Composition Is The Part Of The Song Which Remains The Same From Performance To Performance</u>**

DECLARATION OF ERIK JOHNSON OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

10.     "A musical composition's copyright protects the generic sound that would necessarily result from any performance of the piece," <u>Newton v. Diamond</u>, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002)

11.     In other words, the composition is that part of the song that remains constant from performance to performance to performance.

12.     Here, there is no dispute among any musicological expert that the compositional element that remains unchanged from each and every performance of Taurus is the compositional elements embodied in the performance of the guitar.

13.     The compositional elements embodied in the guitar in Taurus are the compositional elements of the song which remain constant from performance to performance to performance.

14.     Please note that I am not suggesting that performance elements are protectable. Rather, what I am saying—and what is undisputed—is that the composition is that part of the song which remains unchanged from each and every performance of Taurus. And, the part of the song which remains unchanged from each and every performance of Taurus—from performance to performance to performance is the composition embodied in the guitar.

15.     Why do we know this? Because we have recordings of Taurus which span roughly 30 years. In each and every performance of Taurus, the compositional element which remains unchanged are the compositional elements embodied in the guitar part.

16.     Here is a list of every recording of Taurus that was produced in discovery and from what I am told known to exist. The list is in chronological form, except that the Taurus Album Recording is listed first:

a.     Taurus – Album Recording (11/10/1967):     Audio Exhibit 32

b.     Taurus – Live at the Ash Grove (7/10/1967): Audio Exhibit 33

c.     Taurus – Live at the Ash Grove (7/31/1967): Audio Exhibit 34

d.     Taurus – Live at the Ash Grove (8/8/1967):  Audio Exhibit 35

e.     Taurus – Demo Recording (8/1967):            Audio Exhibit 36

3

f.      Taurus – Live at Kaleidoscope (4/5/1968):     Audio Exhibit 37

g.      Taurus – Live at The Time Coast (1992):     Audio Exhibit 38

h.      Taurus – Live Acoustic (7/30/1996):     Audio Exhibit 39

17.     In each of the above 8 recordings of Taurus, the composition which remains unchanged—regardless of performance—is the guitar part and the composition embodied therein. This cannot be disputed.

18.     This is true regardless if one listens to the very first recording of Taurus (7/10/1967)(Audio Exhibit 33) or the very last recording of Taurus (1996)(Audio Exhibit 39).

**Individual Performances And Instrumentation Are Not Protectable Compositional Elements Of A Song**

19.     Nothing in my musicological analysis considered or factored the individual performances of Taurus or the instrumentation as these aspects of music are not protectable. For this reason, those aspects were discarded in rendering my opinions.

20.      For example, the Taurus Album Recording (Audio Exhibit 32) contains individual performance aspects and instrumentation that are not—and never were—part of the composition or compositional elements of Taurus.

21.     These separate instruments that make up the Taurus Album Recording (Audio Exhibit 32), which were re-recorded for purposes of this case are as follows:

a.      Acoustic Guitar          (Audio Exhibit 22)

b.      Cello 1                  (Audio Exhibit 23)

c.      Cello 2                  (Audio Exhibit 24)

d.      Cymbal                   (Audio Exhibit 25)

e.      Flute                    (Audio Exhibit 26)

f.      Harpshichord/Piano       (Audio Exhibit 27)

g.      String Bass              (Audio Exhibit 28)

h.      Viola                    (Audio Exhibit 29)

i.      Violins                  (Audio Exhibit 30)

4

22. Many of these instruments are only heard in the Taurus Album Recording (Audio Exhibit 32). For example: Cello 1; Cello 2, Flute; Viola; and Violins.

23. These instruments and the parts that they are playing are "performance elements" not "compositional elements" of the song Taurus. These "performance" and "instrumentation" aspects of Taurus are really nothing more than an orchestral introduction to Taurus and accompaniment for purposes of the Album Recording, which are not protectable.

24. Moreover, the "performance" and "instrumentation" aspects of the Taurus Album Recording and the other recordings of Taurus which are not protectable compositional elements of Taurus are identified below (by striking them out):

| | | |
|---|---|---|
| a. | Acoustic Guitar | (Audio Exhibit 22) |
| b. | ~~Cello 1~~ | ~~(Audio Exhibit 23)~~ |
| c. | ~~Cello 2~~ | ~~(Audio Exhibit 24)~~ |
| d. | ~~Cymbal~~ | ~~(Audio Exhibit 25)~~ |
| e. | ~~Flute~~ | ~~(Audio Exhibit 26)~~ |
| f. | Harpshichord/Piano | (Audio Exhibit 27) |
| g. | String Bass | (Audio Exhibit 28) |
| h. | ~~Viola~~ | ~~(Audio Exhibit 29)~~ |
| i. | ~~Violins~~ | ~~(Audio Exhibit 30)~~ |

25. The only time this orchestral introduction and accompaniment appear is on the Taurus Album Recording. It is not part of the composition of Taurus that must remain unchanged from performance to performance. For that reason, those performance and instrumentation elements must be discarded in coming to a musicological opinion. (I note that I took the liberty to also strike the Cymbal from my analysis even though this can be heard in other performances of Taurus because it too should not be considered part of the composition).

26. This leaves the protectable composition elements of Taurus which are embodied in the:

5

a.      Acoustic Guitar      (Audio Exhibit 22)

b.      Harpshicord/Piano (Audio Exhibit 27)

c.      String Bass          (Audio Exhibit 28)

27.     Regardless if one listens to the Taurus - Album Recording (1968)(Audio Exhibit 32), or the last known performance of Taurus, Taurus – Live Acoustic (7/30/1996), it is the composition of the guitar which is the salient feature, which is represented in the deposit copy.


Executed this 15th day of April, 2016 in Delaware County, Pennsylvania.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


/s/ Erik Johnson_____

Erik Johnson

DECLARATION OF ERIK JOHNSON OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

1    a.    Acoustic Guitar     (Audio Exhibit 22)

2    b.    Harpsicord/Piano (Audio Exhibit 27)

3    c.    String Bass         (Audio Exhibit 28)

4    27.    Regardless if one listens to the Taurus - Album Recording (1968)(Audio

5    Exhibit 32), or the last known performance of Taurus, Taurus – Live Acoustic

6    (7/30/1996), it is the composition of the guitar which is the salient feature, which is

7    represented in the deposit copy.

8

9    Executed this 15th day of April, 2016 in Delaware County, Pennsylvania.

10    I declare under penalty of perjury under the laws of the United States that the

11    foregoing is true and correct.

12

13    /s/ Erik Johnson

14    Erik Johnson

6

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 105
Media, PA 19063
T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T:  (310) 557-9200; F:  (310) 557-0224
E:  gkulik@kgslaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST,<br><br>   Plaintiff,<br><br>  v.<br><br>LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY,<br><br>   Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**RESPONSE OPPOSING DEFENDANTS' MOTION IN LIMINE NO. 3 RE TAURUS SOUND RECORDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  May 10, 2016<br>Time:  9:00 a.m.<br>Courtroom:   850 |

1

## I.    RELIEF SOUGHT

Plaintiff Michael Skidmore, Trustee for the Randy Craig Wolfe Trust ("Skidmore" and "Trust"), seeks the Court's entry of an Order denying Defendants' motion in limine no. 4 claiming that Defendants used the wrong musical analysis.

Defendants' request to limit any and all audio recordings of Taurus when comparing Taurus and Stairway to Heaven is unsupported by the law and is a deliberate attempt to present the jury with a false and artificial comparison of the two works. The audio recordings of Taurus are admissible to prove substantial similarity. Moreover, the audio recordings of Taurus are also critical to proving several other issues, including ownership of the Taurus copyright by Randy Wolfe and his successor the Randy Craig Wolfe Trust.

## III.   ARGUMENT – THE TAURUS AUDIO RECORDINGS ARE ADMISSIBLE AT TRIAL

It should be noted that this motion is similar in many respects to Defendants' Motion in Limine No. 3 and Plaintiff refers the Court to his response in opposition to motion in limine no. 3. That motion argued that using the sound recordings of Taurus was not permitted under the 1909 Act in any way, by experts or at trial. However, this is not the law and Defendants cite no applicable case law to support their position.

A recent court, <u>Pharrell Williams v. Bridgeport Music</u>, considered this identical issue—whether sound recordings could be considered by experts and played at trial—and sided with Plaintiff's position. In that case Defendants complained in post-trial motions that the sound recording was irrelevant to the expert analysis and also that it should not have been played to the jury. The Court noted that it had previously ***denied*** motions in limine on these precise issues. <u>See</u> Order Denying Post-Trial Motions, 13-cv-6004 (Doc. No. 423), at p7. (7/14/2015). That court held at the motion in limine hearing: "I think [the Gaye Parties' expert] testimony is going to have to be based on the deposit copy. It's not to say they can't have listened to the sound recording as part of their analysis. They

1  simply can't present to the jury an opinion that says, '[b]ecause I listened to the sound

2  recording, I've reached this conclusion.'" <u>See</u> Order Denying Post-Trial Motions, 13-cv-

3  6004 (Doc. No. 423), at p7. (7/14/2015) (alternations in original). Plaintiff's experts do

4  indeed opine that all pertinent elements of Taurus are represented on the deposit copy and

5  that those protected elements appear in the Taurus sound recording. <u>See</u> Declaration of

6  Alexander Stewart, at ¶8-14. Indeed, even Defendants' experts admit that the deposit

7  copy contains and represents much of the expression at issue

> **Paragraph 14:** Moreover, approximately half of the notes in the iterations
> of the guitar melody in the recordings of "Taurus" in Dr. Stewart's Visual
> Exhibit C are not in the Taurus Transcription.

<u>Id.</u> (quoting defense expert Ferrara's report).

The Court in <u>Williams</u> further elaborated that as long as the claimant's experts

opined that the expression in the sound recording was represented in the deposit copy in

some way, that reference to sound recordings by the experts was appropriate. <u>Id.</u> at p.9. It

also held that playing the sound recordings to the jury as part of expert testimony was

admissible, as long as the expert opined that the composition in the sound recording was

based on the deposit copy. <u>See</u> Order, at p.9. Any disputes about the content of the sound

recording itself were questions of fact and weight for the jury, and did not go to

admissibility under Fed. RE 702(d). <u>Id.</u>

The fact of the matter is that sound recordings can be played to extent the

composition they contain is represented in the deposit copy of the song, according to the

experts. Here, both Plaintiff's experts and Defendants' experts agree that the Taurus

composition in the recordings is represented in the deposit copy. Thus, for substantial

similarity purposes the audio recordings of Taurus are admissible.

### a. Alexander Stewart

Defendants argue that Stewart's report and declaration is impermissible because it

refers to the sound recording. As noted above and in the response to Defendants' Motion

in Limine No. 3, an expert may refer to the sound recording as long as the expert is clear

that the compositional elements in question are represented in some way in the deposit

1  copy. Stewart is clear that the elements he is referring to are embodied in the deposit
2  copy.

3      Defendants also argue that Stewart fails to disregard non-protectable elements such
4  as chromatic scales, arpeggios, and sequences of pitches. See MIL No. 4, at p.5 (citing
5  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004)). But this is not how the musical
6  expert analysis is done. Swirsky makes it clear that even combinations of unprotected
7  elements are worthy of copyright protection. Swirsky, 376 F.3d at 845. Furthermore, this
8  Court held in summary judgment that as a matter of law a dispute existed as to the
9  protectable elements of Taurus that were copied in Stairway to Heaven. See Court Order
10 (Doc. No. 159), at p.18. Defendants also claim that Stewart's reliance on "fingerpicking
11 style" and "fretboard positioning and fingering" is impermissible because it refers to the
12 sound made by such techniques, not the elements on the deposit copy. But such reference
13 is not impermissible as the notes on the deposit copy necessarily must be played in a
14 "fingerpicking style" with such positions and fingering. Because such a technique comes
15 from the notes on the deposit copy, it may be factored in the analysis.

16     Moreover, as noted in the response to motion in limine no. 3, a comparison of the
17 sound recordings for access and rebutting independent creation is nevertheless valid.
18 Even if there are elements in the sound recordings that do not appear in the deposit copy,
19 the overwhelming musical similarities between the sound recordings, which Stewart
20 opines are so overwhelming preclude independent creation, are nevertheless highly
21 relevant and the proper subject of expert testimony.

22     **b. Erik Johnson**

23     Defendants argue that Johnson's report and declaration, like Stewart, are
24 impermissible because they refer to the sound recording. As noted above and in the
25 response to Defendants' Motion in Limine No. 3, an expert may refer to the sound
26 recording as long as the expert is clear that the compositional elements in question are
27 represented in some way in the deposit copy. Johnson is clear that the elements he is
28 referring to are embodied in the deposit copy. See Johnson Decl.

1    Moreover, as noted in the response to motion in limine no. 3, a comparison of the

2    sound recordings for access and rebutting independent creation is nevertheless valid.

3    Even if there are elements in the sound recordings that do not appear in the deposit copy,

4    the overwhelming musical similarities between the sound recordings, which Stewart

5    opines are so overwhelming preclude independent creation, are nevertheless highly

6    relevant and the proper subject of expert testimony.

7        **c. Brian Bricklin**

8        The sonic and acoustic soundscape in the sound recording of Taurus, although not

9    copyrightable under the 1909 Act, is evidence that Defendants had access to Taurus.

10   Even though Court discounted striking similarity in the summary judgment opinion based

11   *on the compositions of the song*, the fact that the sound recordings of the songs use a

12   nearly identical sonic landscape and techniques—as attested to by Brian Bricklin, Erik

13   Johnson, Stewart, and Hanson—are admissible to raise the question of fact of whether the

14   compositional similarities between two songs are the result of coincidence or not.

15       As noted in the response to motion in limine no. 3, a comparison of the sound

16   recordings for access and rebutting independent creation is nevertheless valid. Even if

17   there are elements in the sound recordings that do not appear in the deposit copy, the

18   overwhelming musical similarities between the sound recordings, which Stewart opines

19   are so overwhelming preclude independent creation, are nevertheless highly relevant and

20   the proper subject of expert testimony.

21       **d. Kevin Hanson**

22       Defendants argue that Hanson's report and declaration are impermissible because

23   they refer to the sound recording. As noted above and in the response to Defendants'

24   Motion in Limine No. 3, an expert may refer to the sound recording as long as the expert

25   is clear that the compositional elements in question are represented in some way in the

26   deposit copy. Hanson is clear that the elements he is referring to are embodied in the

27   deposit copy.

28

---

5

1

### IV.    CONCLUSION

2        Plaintiff respectfully requests the Court deny this motion.

3

4    DATED: April 15, 2016                FRANCIS ALEXANDER LLC

5                                         By ____/s/ Francis Alexander_____

6                                         Francis Malofiy
                                          Attorneys for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's Response Opposing Defendants' Motion in Limine No. 3 Re Taurus Audio Recordings has been served upon counsel by email:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ April 15, 2016*

1

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 105
Media, PA 19063
T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T:  (310) 557-9200; F: (310) 557-0224
E:  gkulik@kgslaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY,<br><br>Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**DECLARATION OF ALEXANDER STEWART OPPOSING DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4** |

## DECLARATION OF ALEXANDER STEWART, Ph.D
## OPPOSING DEFENDANTS" MOTIONs IN LIMINE NOS. 3 & 4

I, Alexander Stewart, Ph.D, declare as follows:

1.     I am Professor of Music and Director at the University of Vermont.

2.     I have been asked to compare the songs "Taurus" (T) by Randy California of the group Spirit and "Stairway To Heaven" (STH) by Jimmy Page and Robert Plant.

3.     In doing so, I prepared an Expert Report, Declaration, and now provide this Declaration to oppose the motions in limine of defendants after summary judgment.

4.     After review of Defendants' Reports and Declarations, I affirm my opinions expressed in my Expert Report and Declaration submitted to the Court.

5.     With careful and further analysis of the Taurus Deposit Copy, I share why my analysis is correct and the opinions stand unchanged.

6.     Defendants have attempted to consider the Deposit Copy of Taurus in a way that is artificial and unduly limiting.

7.     It is my understanding that Randy California, although a talented musician, did not know how to chart or score music. This is not unusual in popular genres and there are countless examples of musicians who are musically "illiterate" (e.g. Johnny Cash, Jimi Hendrix, The Beatles, Elvis Presley, Eric Clapton). There is no dispute that the Deposit Copy transcription of Taurus was not done by Randy California. Additionally, the transcription was completed after the album recording of Taurus for purposes of filing the Copyright and the composition existed in a consistent form for several years before this rendering was completed.

8.     The Deposit Copies of Taurus and Stairway inform my analysis including my Declaration in Opposition to Defendants' Motion for Summary Judgment and my Responses to Dr. Ferrara and Mr. Mathes.

9.     Nothing in the Deposit Copies contradicts or undermines any of my analysis.

10.     The Taurus Deposit Copy reduced the composition to a lead sheet format comprising two staves: one placed in treble clef and the other in bass clef.

1

DECLARATION OF ALEXANDER STEWART OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

11.     The compositional elements of the guitar in the Taurus album recording and other Taurus recordings are represented in the bass clef staff of the Taurus Deposit Copy.

12.     Defense experts Mathes and Ferrara note that the deposit copy could be more complete, something that I also observed in my report.

13.     But, as defense expert Ferrara notes, the bass clef on the deposit copy transcription **contains at least half of the notes of the composed guitar passage**:

> **Paragraph 7:** The similarities between "Taurus" and "Stairway" are limited to three measures in "Stairway" (around 9 seconds in the "Stairway" sound recording) that are iterated six times in "Stairway" for a total of eighteen measures.
>
> **Paragraph 14:** Moreover, approximately half of the notes in the iterations of the guitar melody in the recordings of "Taurus" in Dr. Stewart's Visual Exhibit C are not in the Taurus Transcription.

14.     Ferrara, who has artificially narrowed his comparison between Taurus and Stairway to Heaven to just the notes of Taurus on the deposit transcription, is admitting that the actual deposit copy notes of Taurus indisputably appear in Stairway to Heaven, and further admits that the deposit copy of Taurus embodies much, if not most, of the guitar composition in the Taurus recordings.

15.     Ferrara also implicitly recognizes that a significant portion of Taurus is used in Stairway to Heaven, undercutting the defendants' position. A nine-second piece of music reiterated six times equal almost one minute, 54 seconds. Given that many popular songs clock in around 3 to 3.5 minutes, this is a significant piece of music.

16.     Note that Mathes admits: "**the initial guitar part in Stairway is very significant**, but [it] is incorrect that it is the most important single element of Stairway to Heaven." This contradicts the defense experts' characterizations of this portion of music nothing more than an unprotectable "minor line cliché."

17.     As would be expected in any comprehensive analysis, my report deals with similarities and differences between the two compositions. I have found significant similarities in the signature guitar passages heard in both compositions. My report

compares their pitch sequences, rhythms, harmonies, cadences, and other important compositional elements that are heard in every version of Taurus and in Stairway.

18.    My report also discusses aspects of the performances and recordings of these songs that indicate copying. While certain of these similarities may not by themselves rise to the level of protectable expression, for example: elements of instrumentation, tempo, and style, these similarities clearly support the conclusion that the creators of Stairway copied from Taurus and therefore can be considered probative.

19.    Taken in the aggregate, the substantial and probative similarities combine to force the inevitable conclusion that significant compositional expression in Stairway was taken from Taurus and not created independently.

20.    Dr. Ferrara and I disagree with how much of Taurus is in Stairway. However, even by his own report—which does an analysis solely based upon the Deposit Copy—he admits that: (1) the compositions have similarities; (2) that they comprise a tangible quantitative portion of Stairway to Heaven, and (3) that a qualitative analysis increases the importance of the similarities in Taurus as compared to Stairway to Heaven.

21.    Mr. Mathes actually did the correct analysis, also using the sound recordings of Taurus as an embodiment of the composition, as I did. Plaintiff's experts and one of Defendants' experts admit the sound recording is relevant to the analysis, as based on the deposit copy, while one defense expert has conducted an improper overly limited analysis.

22.    It should be noted that in every recording and every performance of Taurus the compositional element of the song which remains unchanged from performance to performance is the compositional elements of the song embodied in the guitar part. Audio Exhibits 32 to 39.

23.    By basing my analysis on the compositional elements represented in the deposit copy, and not considering performance elements, it is clear to me that Taurus and Stairway to Heaven are substantially similar.

3

DECLARATION OF ALEXANDER STEWART OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

Executed this 15th day of April, 2016 at _Burlington_, Vermont.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Alexander Stewart, Ph.D

DECLARATION OF ALEXANDER STEWART OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

DECLARATION OF ALEXANDER STEWART OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
   15303 Ventura Blvd., Suite 1400
8  Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
   E:  gkulik@kgslaw.com
10 *Attorney for Plaintiff*

11

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 MICHAEL SKIDMORE, as Trustee for        Case No. 15-cv-03462 RGK (AGRx)
15 the RANDY CRAIG WOLFE TRUST,
                                           Hon. R. Gary Klausner
16                  Plaintiff,
                                           **RESPONSE OPPOSING**
17       v.                                **DEFENDANTS' MOTION IN**
                                           **LIMINE NO. 3 RE TAURUS SOUND**
18                                         **RECORDINGS; MEMORANDUM**
19 LED ZEPPELIN; JAMES PATRICK             **OF POINTS AND AUTHORITIES**
   PAGE; ROBERT ANTHONY PLANT;
20 JOHN PAUL JONES; SUPER HYPE
   PUBLISHING, INC.; WARNER MUSIC
21 GROUP CORP., Parent of
22 WARNER/CHAPPELL MUSIC, INC.;            Date:  May 10, 2016
   ATLANTIC RECORDING                      Time:  9:00 a.m.
23 CORPORATION; RHINO                      Courtroom:    850
24 ENTERTAINMENT COMPANY,

25                  Defendants.

26

27

28

                                  1

## I.     RELIEF SOUGHT

Plaintiff Michael Skidmore, Trustee for the Randy Craig Wolfe Trust ("Skidmore" and "Trust"), seeks the Court's entry of an Order denying Defendants' motion in limine no. 3 to preclude Taurus audio recordings.

Defendants' request to limit any and all audio recordings of Taurus when comparing Taurus and Stairway to Heaven is unsupported by the law and is a deliberate attempt to present the jury with a false and artificial comparison of the two works. The audio recordings of Taurus are admissible to prove substantial similarity. Moreover, the audio recordings of Taurus are also critical to proving several other issues, including ownership of the Taurus copyright by Randy Wolfe and his successor the Randy Craig Wolfe Trust as well as access.

## III.    ARGUMENT – THE TAURUS AUDIO RECORDINGS ARE ADMISSIBLE AT TRIAL

### a. THE TAURUS AUDIO RECORDINGS ARE ADMISSIBLE FOR THE SUBSTANTIAL SIMILARITY COMPARISON

Defendants seriously misconstrue the law with respect to whether a sound recording may be played and used at trial in a Copyright case under the 1909 Act. Defendants claim that a sound recording cannot be admitted under the 1909 Act to prove substantial similarity because the "sound recording" itself not copyrighted. ***Defendants do not cite a single case for this proposition.*[1]**

A recent court, <u>Pharrell Williams v. Bridgeport Music</u>, considered this identical issue—whether sound recordings could be considered by experts and played at trial—and sided with Plaintiff's position. In that case Defendants complained in post-trial motions that the sound recording was irrelevant to the expert analysis and also that it should not have been played to the jury. The Court noted that it had previously ***denied*** motions in

---

[1] The only cases cited by Defendants state that the composition of the song is embodied in the deposit copy. That the composition of a song is based on the deposit copy in no way precludes a sound recording which uses that composition.

PLAINTIFF'S RESPONSE OPPOSING DEFS. MIL NO. 3

limine on these precise issues. See Order Denying Post-Trial Motions, 13-cv-6004 (Doc. No. 423), at p7. (7/14/2015). That court held at the motion in limine hearing: "I think [the Gaye Parties' expert] testimony is going to have to be based on the deposit copy. It's not to say they can't have listened to the sound recording as part of their analysis. They simply can't present to the jury an opinion that says, '[b]ecause I listened to the sound recording, I've reached this conclusion.'" See Order Denying Post-Trial Motions, 13-cv-6004 (Doc. No. 423), at p7. (7/14/2015) (alternations in original). Plaintiff's experts do indeed opine that all pertinent elements of Taurus are represented on the deposit copy and that those protected elements appear in the Taurus sound recording. See Declaration of Alexander Stewart, at ¶8-14. Indeed, even Defendants' experts admit that the deposit copy contains and represents much of the expression at issue

> **Paragraph 14:** Moreover, approximately half of the notes in the iterations of the guitar melody in the recordings of "Taurus" in Dr. Stewart's Visual Exhibit C are not in the Taurus Transcription.

Id. (quoting defense expert Ferrara's report).

The Court in Williams further elaborated that as long as the claimant's experts opined that the expression in the sound recording was represented in the deposit copy in some way, that reference to sound recordings by the experts was appropriate. Id. at p.9. It also held that playing the sound recordings to the jury as part of expert testimony was admissible, as long as the expert opined that the composition in the sound recording was based on the deposit copy. See Order, at p.9. Any disputes about the content of the sound recording itself were questions of fact and weight for the jury, and did not go to admissibility under Fed. RE 702(d). Id.

The fact of the matter is that sound recordings can be played to extent the composition they contain is represented in the deposit copy of the song, according to the experts. Here, both Plaintiff's experts and Defendants' experts agree that the Taurus composition is represented in the deposit copy. Thus, for substantial similarity purposes the audio recordings of Taurus are admissible. Defendants are free to present their case to the jury and explain their case to the jury. Moreover, if necessary, appropriate limiting

PLAINTIFF'S RESPONSE OPPOSING DEFS. MIL NO. 3

1   instructions should be sufficient to cure any alleged prejudice to Defendants—although

2   the competing expert testimony and cross examination should be sufficient.

3       Defendants want to constrict this dispute to a level that is simply not justified by

4   the law. Their insistence that the jury be given an artificial, severely limited comparison

5   of the two songs in question is simply not warranted by fact or law.

6       **b. THE TAURUS AUDIO RECORDINGS ARE ADMISSIBLE FOR**

7          **OWNERSHIP AND TO ESTABLISH THAT TAURUS IS NOT A WORK**

8          **FOR HIRE**

9       Defendants are advancing the argument that Taurus is a work for hire. They claim

10  that the composition in question was actually composed after the August 29, 1967,

11  contract was signed and reduced to writing. The Court's Summary Judgment order held

12  that there was a triable issue of fact on this issue and that Defendants were not entitled to

13  summary judgment. See Order Denying Summary Judgment, Doc. No. 159, at p.9-11.

14      Plaintiff thus intends to present evidence to the jury that Taurus was composed in

15  1966, and even played live in 1967, before the work made for hire contract. As such it is

16  preexisting material, accorded common law copyright, that cannot be retroactively

17  deemed made for hire by a later writing. See Order Denying Summary Judgment, Doc.

18  No. 159, at p.9-11. Plaintiff, as the Court observed, is entitled to prove he has a beneficial

19  ownership interest in Taurus by virtue of receiving royalties and having been transferred

20  the Wolfe copyrights after a 2002 California Superior Court order authorizing the

21  transfer.

22      To prove that Plaintiff owns the copyright, Plaintiff will produce testimony of

23  several witnesses that the song was composed for Randy Wolfe's girlfriend, Robin, based

24  on her astrological sign, including Janet Wolfe and Andrea Wolfe. The Wolfe sisters, as

25  well as Mark Andes (bassist), Jay Ferguson (vocals, percussionist), and Barry Hansen

26  (manager), will testify that Spirit often played at clubs in Los Angeles in early to mid-

27  1967, and that Taurus was played at these clubs—before the work for hire contract.

28

Plaintiff also has sound recordings of several of those 1967 shows. As Defendants allege that Taurus was composed after August 29, 1967, Plaintiff will first play the sound recordings of the 1967 shows pre-dating the August 29, 1967 contract. He will then play the audio of the Taurus sound recording on the Spirit album which was made post-August 29, 1967. The jury will thus be shown that the composition of Taurus that Defendants' claim was written after August 1967 was in fact composed well beforehand. Furthermore, Plaintiff's experts also opine that the composition of Taurus in the pre August 1967 sound recordings, and the sound recording post August 1967 contain the same composition. *See* Stewart Decl., at ¶22.

Thus, the Taurus sound recording is admissible to prove authorship, ownership, and rebut Defendants' work made for hire argument.

### c. THE TAURUS RECORDING IS ADMISSIBLE TO PROVE ACCESS, AND REBUT AFFIRMATIVE DEFENSES OF INDEPENDENT CREATION AND INNOCENCE

**First**, when Defendants take the stand, Plaintiff plans on playing Taurus, as distributed on Spirit's debut eponymous album Spirit, and asking them if they heard that song prior to writing Stairway to Heaven. This is a perfectly acceptable question and there is no valid basis on which to prevent the playing of the song and the asking of the question.

**Second**, the sonic landscape in the sound recording of Taurus and its similarity to Stairway to Heaven, although not copyrightable under the 1909 Act, is evidence that Defendants had access to Taurus. Even though the Court discounted striking similarity in the summary judgment opinion based *on the compositions of the song*, the fact that the sound recordings of the songs use a nearly identical sonic landscape and techniques—as attested to by Brian Bricklin, Stewart, and Erik Johnson—are admissible to raise the question of fact of whether the similarities between two songs are the result of coincidence or not.

The fact is that Stairway to Heaven and Taurus share extraordinarily similar sonic

landscapes—as confirmed by Plaintiff's experts—something that simply cannot be the result of coincidence. The testimony of Bricklin, Johnson, and Stewart—master musicians, composers, producers, and musicologists—is admissible under Fed. RE 702 as they are applying accepted musical analysis techniques. Such expert testimony is also proper and necessary to rebut Defendants' affirmative defenses of independent creation and innocence. There is simply no bar under the 1909 Act to using sound recordings when they are being used to prove access and rebut the defense of independent creation.

## IV.   CONCLUSION

Plaintiff respectfully requests the Court deny this motion.

DATED: April 15, 2016                    FRANCIS ALEXANDER LLC

By ___/s/ *Francis Alexander*_____
Francis Malofiy
Attorneys for Plaintiff

PLAINTIFF'S RESPONSE OPPOSING DEFS. MIL NO. 3

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's Response Opposing Defendants' Motion in Limine No. 3 Re Taurus Audio Recordings has been served upon counsel by email:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ April 15, 2016*

1

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
   15303 Ventura Blvd., Suite 1400
8  Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
   E:  gkulik@kgslaw.com
10 *Attorney for Plaintiff*

11
12                **UNITED STATES DISTRICT COURT**

13            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 MICHAEL SKIDMORE, as Trustee for      Case No. 15-cv-03462 RGK (AGRx)
   the RANDY CRAIG WOLFE TRUST,
15                                        Hon. R. Gary Klausner
16                  Plaintiff,
                                          **DECLARATION OF ALEXANDER**
17          v.                            **STEWART OPPOSING**
                                          **DEFENDANTS' MOTIONS IN**
18                                        **LIMINE NOS. 3 & 4**
   LED ZEPPELIN; JAMES PATRICK
19 PAGE; ROBERT ANTHONY PLANT;
   JOHN PAUL JONES; SUPER HYPE
20 PUBLISHING, INC.; WARNER MUSIC
   GROUP CORP., Parent of
21 WARNER/CHAPPELL MUSIC, INC.;
22 ATLANTIC RECORDING
   CORPORATION; RHINO
23 ENTERTAINMENT COMPANY,
24
25                  Defendants.
26
27
28

## DECLARATION OF ALEXANDER STEWART, Ph.D
## OPPOSING DEFENDANTS" MOTIONs IN LIMINE NOS. 3 & 4

I, Alexander Stewart, Ph.D, declare as follows:

1.      I am Professor of Music and Director at the University of Vermont.

2.      I have been asked to compare the songs "Taurus" (T) by Randy California of the group Spirit and "Stairway To Heaven" (STH) by Jimmy Page and Robert Plant.

3.      In doing so, I prepared an Expert Report, Declaration, and now provide this Declaration to oppose the motions in limine of defendants after summary judgment.

4.      After review of Defendants' Reports and Declarations, I affirm my opinions expressed in my Expert Report and Declaration submitted to the Court.

5.      With careful and further analysis of the Taurus Deposit Copy, I share why my analysis is correct and the opinions stand unchanged.

6.      Defendants have attempted to consider the Deposit Copy of Taurus in a way that is artificial and unduly limiting.

7.      It is my understanding that Randy California, although a talented musician, did not know how to chart or score music. This is not unusual in popular genres and there are countless examples of musicians who are musically "illiterate" (e.g. Johnny Cash, Jimi Hendrix, The Beatles, Elvis Presley, Eric Clapton). There is no dispute that the Deposit Copy transcription of Taurus was not done by Randy California. Additionally, the transcription was completed after the album recording of Taurus for purposes of filing the Copyright and the composition existed in a consistent form for several years before this rendering was completed.

8.      The Deposit Copies of Taurus and Stairway inform my analysis including my Declaration in Opposition to Defendants' Motion for Summary Judgment and my Responses to Dr. Ferrara and Mr. Mathes.

9.      Nothing in the Deposit Copies contradicts or undermines any of my analysis.

10.     The Taurus Deposit Copy reduced the composition to a lead sheet format comprising two staves: one placed in treble clef and the other in bass clef.

1

11.    The compositional elements of the guitar in the Taurus album recording and other Taurus recordings are represented in the bass clef staff of the Taurus Deposit Copy.

12.    Defense experts Mathes and Ferrara note that the deposit copy could be more complete, something that I also observed in my report.

13.    But, as defense expert Ferrara notes, the bass clef on the deposit copy transcription **contains at least half of the notes of the composed guitar passage**:

> **Paragraph 7:**  The similarities between "Taurus" and "Stairway" are limited to three measures in "Stairway" (around 9 seconds in the "Stairway" sound recording) that are iterated six times in "Stairway" for a total of eighteen measures.
>
> **Paragraph 14:** Moreover, approximately half of the notes in the iterations of the guitar melody in the recordings of "Taurus" in Dr. Stewart's Visual Exhibit C are not in the Taurus Transcription.

14.    Ferrara, who has artificially narrowed his comparison between Taurus and Stairway to Heaven to just the notes of Taurus on the deposit transcription, is admitting that the actual deposit copy notes of Taurus indisputably appear in Stairway to Heaven, and further admits that the deposit copy of Taurus embodies much, if not most, of the guitar composition in the Taurus recordings.

15.    Ferrara also implicitly recognizes that a significant portion of Taurus is used in Stairway to Heaven, undercutting the defendants' position. A nine-second piece of music reiterated six times equal almost one minute, 54 seconds. Given that many popular songs clock in around 3 to 3.5 minutes, this is a significant piece of music.

16.    Note that Mathes admits: "**the initial guitar part in Stairway is very significant**, but [it] is incorrect that it is the most important single element of Stairway to Heaven." This contradicts the defense experts' characterizations of this portion of music nothing more than an unprotectable "minor line cliché."

17.    As would be expected in any comprehensive analysis, my report deals with similarities and differences between the two compositions. I have found significant similarities in the signature guitar passages heard in both compositions. My report

DECLARATION OF ALEXANDER STEWART OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4

1   compares their pitch sequences, rhythms, harmonies, cadences, and other important

2   compositional elements that are heard in every version of Taurus and in Stairway.

3       18.    My report also discusses aspects of the performances and recordings of these

4   songs that indicate copying. While certain of these similarities may not by themselves

5   rise to the level of protectable expression, for example: elements of instrumentation,

6   tempo, and style, these similarities clearly support the conclusion that the creators of

7   Stairway copied from Taurus and therefore can be considered probative.

8       19.    Taken in the aggregate, the substantial and probative similarities combine to

9   force the inevitable conclusion that significant compositional expression in Stairway was

10   taken from Taurus and not created independently.

11       20.    Dr. Ferrara and I disagree with how much of Taurus is in Stairway.

12   However, even by his own report—which does an analysis solely based upon the

13   Deposit Copy—he admits that: (1) the compositions have similarities; (2) that they

14   comprise a tangible quantitative portion of Stairway to Heaven, and (3) that a qualitative

15   analysis increases the importance of the similarities in Taurus as compared to Stairway

16   to Heaven.

17       21.    Mr. Mathes actually did the correct analysis, also using the sound recordings

18   of Taurus as an embodiment of the composition, as I did. Plaintiff's experts and one of

19   Defendants' experts admit the sound recording is relevant to the analysis, as based on the

20   deposit copy, while one defense expert has conducted an improper overly limited

21   analysis.

22       22.    It should be noted that in every recording and every performance of Taurus

23   the compositional element of the song which remains unchanged from performance to

24   performance is the compositional elements of the song embodied in the guitar part. Audio

25   Exhibits 32 to 39.

26       23.    By basing my analysis on the compositional elements represented in the

27   deposit copy, and not considering performance elements, it is clear to me that Taurus and

28   Stairway to Heaven are substantially similar.

3

1      Executed this 15th day of April, 2016 at  _Burlington_ , Vermont.

3      I declare under penalty of perjury under the laws of the United States that the

4 foregoing is true and correct.

Alexander Stewart, Ph.D

4

**02125**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

DECLARATION OF ALEXANDER STEWART OPPOSING
DEFENDANTS' MOTIONS IN LIMINE NOS. 3 & 4