# Nos. 16-56057 & 16-56287

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

_____

## MICHAEL SKIDMORE,
### AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST
#### PLAINTIFF, APPELLANT AND APPELLEE

vs.

## LED ZEPPELIN, *ET AL.*
#### DEFENDANTS AND APPELLEES
#### AND

## WARNER/CHAPPELL MUSIC, INC.,
#### DEFENDANT, APPELLEE AND APPELLANT

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO. 15-cv-03462 RGK (AGRx)

_____

## SUPPLEMENTAL EXCERPTS OF RECORD – VOL. 3

_____

PETER J. ANDERSON, ESQ.
LAW OFFICES OF PETER J. ANDERSON,
A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD, SUITE 2010
SANTA MONICA, CA 90401
TEL.: (310) 260-6030
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE *ET AL.* AND
DEFENDANT, APPELLEE AND APPELLANT
WARNER/CHAPPELL MUSIC, INC.

HELENE M. FREEMAN, ESQ.
PHILLIPS NIZER LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0084
TEL: (212) 977-9700
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT AND JOHN PAUL JONES

**INDEX**

**Supplemental Excerpts of Record – Volume 3**

| Tab | Date | Document | Dkt. No. | Page |
|-----|------|----------|----------|------|
| 17 | 6/7/16 | Defendants' Trial Brief and Declaration (excerpts) | 223, 223-1 | 571 |
| 18 | 4/21/16 | Defendants' Reply in support of Motion *in Limine* No. 8 *re* use of Trust's funds | 188 | 607 |
| 19 | 4/15/16 | Plaintiff's Opposition to Motion *in Limine* No. 8 *re* use of Trust's funds | 168 | 610 |
| 20 | 3/25/16 | Defendants' Motion *in Limine* No. 8 *re* use of Trust's funds | 141 | 615 |
| 21 | 2/25/16 | Anderson Declaration in support of Defendants' Motion for Summary Judgment (excerpt) | 97-10 | 623 |

# Tab 17

1   Peter J. Anderson, Esq., Cal. Bar No. 88891
    E-Mail: pja@pjanderson.com
2   LAW OFFICES OF PETER J. ANDERSON
    A Professional Corporation
3   100 Wilshire Boulevard, Suite 2010
    Santa Monica, CA 90401
4   Tel: (310) 260-6030
    Fax: (310) 260-6040
5   Attorneys for Defendants
    JAMES PATRICK PAGE, ROBERT ANTHONY
6   PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
    MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7   ATLANTIC RECORDING CORP., RHINO
    ENTERTAINMENT COMPANY and WARNER
8   MUSIC GROUP CORP.

9   Helene Freeman, Esq., admitted *pro hac vice*
    E-Mail:  hfreeman@phillipsnizer.com
10  PHILIPS NIZER LLP
    666 Fifth Avenue
11  New York, NY 10103-0084
    Tel: (212) 977-9700
12  Fax: (212) 262-5152
    Attorneys for Defendants
13  JAMES PATRICK PAGE, ROBERT ANTHONY
    PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                   **WESTERN DIVISION**

18   MICHAEL SKIDMORE, *etc.*,          ) Case No. 2:15-cv-03462 RGK (AGRx)
                                        )
19          Plaintiff,                  )
                                        ) DEFENDANTS' TRIAL BRIEF
20      vs.                             )
                                        )
21   LED ZEPPELIN, *et al.*,            ) Date: June 14, 2016
                                        ) Time: 9:00 a.m.
22          Defendants.                 )
                                        )      Courtroom of the Honorable
23   _____)           R. Gary Klausner
                                                 United States District Judge

24

25

26

27

28

**TABLE OF CONTENTS**

DEFENDANTS' TRIAL BRIEF................................................................1

1.    INTRODUCTION.................................................................1

2.    CLAIMS AND DEFENSES .......................................................1

    (a)    Plaintiff Skidmore's Claims....................................................1

          (1)    Skidmore's Ownership of the Allegedly-Infringed Copyright in the 1967 *Taurus* Deposit Copy................................................1

                *i.  In 1967, Randy Wolfe Assigned All Rights in* Taurus *to Hollenbeck, Which is the Copyright's Registered Owner*........1

                *ii.  Skidmore Sues As Beneficial Owner By Reason of the Royalty Rights Taken from Wolfe's Son, Quinn*........1

                *iii. The Allegedly-Infringed Copyright Protects Only the Original Expression in the 1967* Taurus *Deposit Copy*...........2

                    a.  The 1909 Act Governs and Limits the *Taurus* Copyright to the 1967 Deposit Copy ...........................2

                    b.  The Copyrighted *Taurus* Musical Composition Appears in the 1967 Deposit Copy and Cannot Be Changed by Resort to Uncopyrighted Recordings.........3

          (2)    Skidmore's Obligation to Prove Infringement .............................5

                *i.  Skidmore's Claimed Proof of Access* .......................5

                *ii.  Skidmore's Claimed Proof of Substantial Similarity* ...............6

                    a.  Skidmore Must Prove Substantial Similarity in Protectable Original Material in the *Taurus* Deposit Copy and *Stairway to Heaven*.......................................6

                    b.  The Extrinsic Test – Expert Testimony ........................8

                      c.  The Intrinsic Test – for the Jury.................................8

572

(b)     Defendants' Affirmative Defenses .............................................9

    (c)     Skidmore's Claimed Remedies ...................................................11

    (1)     Because Skidmore Does Not Own the 1967 *Taurus*
            Copyright, His Potential Recovery Is Halved ...........................11

    (2)     The Confidentiality of Financial Information Should Be
            Maintained ...................................................................................11

    (3)     Statutory Damages........................................................................12

    (4)     Actual Damages and Profits ........................................................12

            i.    *Skidmore Must Prove a Causal Connection Between*
                  *the Alleged Infringement and the Actual Damages*
                  *and Profits He Seeks* .....................................................12

            ii.   *Each Defendant's Respective Profits* ...........................12

            a.    Potential Liability for Profits Is Several not Joint .......12

            b.    The Profits Are Reducible by Factors Other than
                  the Alleged Infringing Use..........................................13

            c.    Profits Are an Equitable Remedy Triable to the
                  Court, Not the Jury.......................................................13

            d.    Because Profits Are Triable to the Court, and to
                  Avoid Prejudice, Profits Should Be Bifurcated ..........14

(d)     Depositions Are Properly Not Part of the Public Record ......................14

(e)     Anticipated Evidentiary Issues ............................................................16

    (1)     The Court's April 26, 2016 Rulings on the Parties' Motions
            in Limine......................................................................................16

    (2)     Subsequent Developments Relevant to the Motions in Limine ..16

            i.    *Defendants' Motions in Limine Nos. 3-4 and* Daubert
                  *Motion: Skidmore's Experts and Recordings*........................16

ii

573

b.  Skidmore's New Expert Reports Also Confirm
Johnson, Hanson and Bricklin Are Properly
Excluded as to Substantial Similarity .........................18

c.  Skidmore's Experts Are Properly Excluded as to
Performance Elements Supposedly Proving
Access..........................................................................21

d.  Skidmore's "Mash-Ups" are Irrelevant, Misleading
and Properly Excluded .................................................23

ii.  *Defendants' Motion in Limine No. 10: Witnesses*
*Skidmore Failed to Disclose Pursuant to FRCP 26* ...............24

3.       CONCLUSION ...................................................................25

574

**c. Skidmore's Experts Are Properly Excluded as to Performance Elements Supposedly Proving Access**

As discussed above, Skidmore previously argued unsuccessfully that claimed similarities in the *Taurus* and *Stairway to Heaven* recordings are proof of access. *See, above* 5-6. Even if this argument is considered again, plaintiff's experts fail to support with objective, scientific and reliable analysis their bare assertions that the claimed performance similarities are proof of access. Instead, their assertions are the music equivalent of junk science.

Stewart asserts that the claimed presence of double-time guitar fingerpicking in two recorded live performances of *Taurus* and in *Stairway to Heaven* is proof that the authors of the latter must have had access to the former. Exh. 1 at 21. However, he did no research to determine the extent to which double-time guitar fingerpicking appeared in recorded performances before *Taurus* <u>and</u> he admitted it was common. Stewart Depo. (Exh. 5) at 200:13 to 201:20. He also asserts that the tempo and instrumentation of *Taurus* recordings are similar to *Stairway to Heaven*. Exh. 1 at 22-23. But, he did no research as to whether similar tempo was unique or prevalent before *Taurus* <u>and</u> admitted that the tempo was commonplace before *Taurus*. Stewart Depo. (Exh. 5) at 205:12-15, 207:15 to 208:1. And, while claiming that similar instrumentation in the recordings is proof of access, he testified that the instrumentation in the *Taurus* and *Stairway to Heaven* recordings is different, with the *Taurus* recording using harpsichord, flute and strings, and *Stairway to Heaven* having no harpsichord and no strings, and recorders. Stewart Depo. (Exh. 5) at 208:3-8, 208:24 to 209:1.

For his part, Johnson claims similarity in the recordings' tempo and mood proves access. Exh. 2 at 13-14. But, like Stewart, he did no research and admits that the tempo was common before *Taurus*. Johnson Depo. (Exh. 6) at 173:4-16. In addition, he cannot objectively define "mood" or explain what he means, and did no research to determine the extent to which other works before *Taurus* had a similar

575

1  mood.  *Id.* at 173:17 to 174:12 ("I suppose it's subjective"); *Swirsky*, 376 F.3d at 845

2  (extrinsic test considers similarity "as measured by external, objective criteria").

3       Hanson asserts in his report that in the recordings of *Taurus* and *Stairway to*

4  *Heaven* the guitar is "played at a nearly identical positon on the guitar fretboard" and

5  "begin on the same strings in the same position with the same fingerings."  Exh. 3 at

6  4.  But, Hanson testified that since a child he played it the same way and, in the

7  nature of a guitar, it is the easiest way to play it.  Hanson Depo. (Exh. 7) at 56:5-24.

8       Bricklin claims that recordings of both *Taurus* and *Stairway to Heaven*

9  employ reverb.  Exh. 4.  Aside from the fact he is incorrect, he offers no research or

10  analysis as to the extent of the use of reverb prior to *Taurus* and, indeed, Stewart

11  admits it was commonplace.  Stewart Depo. (Exh. 5) at 193:23 to 194:13.

12       A putative expert's assertions, unsupported by objective analysis and research

13  are not relevant and certainly not reliable.  *Daubert*, 43 F.3d at 1319 ("We've been

14  presented with only the experts' qualifications, their conclusions and their

15  assurances of reliability.  Under *Daubert*, that's not enough."); *Nebraska Plastics*,

16  408 F.3d at 416 ("if the expert's opinion is so fundamentally unsupported that it can

17  offer no assistance to the jury, it must be excluded").

18       The scrutiny properly accorded these assertions as to non-protectable elements

19  being proof of copying is heightened by the fact that they are not the result of any

20  research before litigation, but rather are provided solely for the purpose of trying to

21  create a ground to avoid the Court's ruling in this case that the jury will only hear

22  the *Taurus* deposit copy.  *Daubert*, 43 F.3d at 1317 (it is a "significant fact" that

23  experts "developed their opinions expressly for purposes of testifying" rather than

24  "naturally and directly out of research they have conducted independent of the

25  litigation").  Here, "none of the experts based his testimony on preexisting or

26  independent research."  *Id.*

27       Even if there were some relevance to these putative experts' assertions as to

28  the admittedly-unprotected *Taurus* sound recordings, any probative value is far

576

1   outweighed by the confusion and prejudice that will result if the Court allows their

2   testimony and use of the *Taurus* sound recordings.  Accordingly, their testimony

3   also is properly excluded under Federal Rule of Evidence 403.

4       Plaintiff's attempt to use conclusory, unscientific and unreliable "expert"

5   assertions to reinsert the *Taurus* recordings into this case and confuse the jury,

6   should be rejected and the new expert reports and testimony excluded.

7                          **d. Skidmore's "Mash-Ups" are Irrelevant, Misleading**

8                                     **and Properly Excluded**

9       Plaintiff's recreated recordings of the *Taurus* recording and *Stairway to*

10  *Heaven* in its entirety, as well as plaintiff's recordings superimposing the *Taurus*

11  recording over *Stairway to Heaven* – so-called "mash-ups" – are within the Court's

12  prior rulings and properly excluded.  Plaintiff now also offers new recordings that

13  purport to superimpose performances of the *Taurus* deposit copy, *Stairway to*

14  *Heaven* and in some instances the *Taurus* recordings over each other, so that they

15  are heard simultaneously.  These new mash-ups also are properly excluded.

16      Under both the extrinsic and intrinsic test, the comparison is between the

17  plaintiff's work and the defendant's work.  Plaintiff's mash-ups of *Taurus* and

18  *Stairway to Heaven* are neither composition.  Instead, the mash-ups are new works

19  created by plaintiff, including by manipulating them digitally to, *e.g.*, match their

20  tempo.  Further, completely different songs can be "mashed" to create a recording

21  that suggests similarity where none exists.[7]  Mash-ups are a parlor trick, are not a

22  generally accepted forensic musicological practice and their use has been criticized.

23

24  _____
    [7]   *See, e.g.*:

25  https://www.youtube.com/watch?v=rH5Qr-fq1IY (Elvis Presley's *Burning Love* and
    Van Halen's *Jump*);

26  https://www.youtube.com/watch?v=D3YhCvARXSA (The Beatles' *Let It Be* and
    Bob Marley's *No Woman, No Cry*); and

27  https://www.youtube.com/watch?v=U13xOvDa19U (The Bee Gees' *Stayin' Alive*

28  and Pink Floyd's *Another Brick In The Wall Pt. II*).

577

1   *See, e.g.,* D. Begault, H. Heisse & C. Peltier, *Forensic Musicology – An Overview* at

2   3 ("perceived similarity results as a result of the *technique*, and not the *inherent*

3   *similarity* between the two music examples in question" (emphasis in original),

4   Anderson Decl. at 2, ¶ 11, Exh. 8); *Cottrill v. Spears*, No. CIV.A. 02-3646, 2003

5   WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004)

6   (rejecting plaintiff's mash-ups; "it is clear to the Court that the comparison offered

7   by Plaintiffs' CD is unhelpful under the extrinsic test and only further demonstrates

8   the necessity to dissect the works in question in order to discern the protectible

9   similarities from the similarities common to songs of this particular genre").

10           Plaintiff's mash-ups are properly excluded.

11                   ii.     **Defendants' Motion in Limine No. 10: Witnesses**

12                           **Skidmore Failed to Disclose Pursuant to FRCP 26**

13          The Court has taken under consideration defendants' Motion in Limine No. 10

14   for an order precluding plaintiff from calling, other than for impeachment, witnesses

15   that he did not timely disclose pursuant to Federal Rule of Civil Procedure 26.[8]

16   Since then, plaintiff has submitted his witness list with another witness he never

17   disclosed: Penny A. Castle, Universal Music Group.

18          In addition, plaintiff has issued trial subpoenas for others he never disclosed

19   and has improperly directed to corporate entities – such as various Universal entities

20   and Rondor Music International – that he also never disclosed.  His trial subpoenas

21   ///

22   ///

23   _____

24   [8]     While Rule 26(a)(1)(A)-(B) excludes witnesses and documents to be used

25   "solely for impeachment," impeachment witnesses and documents must be disclosed
     in response to discovery.  For example, defendants' discovery sought plaintiff's

26   production of all newspapers, articles, interviews, recordings and other documents
     purporting to quote Led Zeppelin's band members as to, *e.g.*, *Taurus*, Spirit or

27   *Stairway to Heaven*.  Defs' RFP Nos. 44-47.  To the extent plaintiff failed to
     produce any such documents, he is precluded from using them even as

28   impeachment. Fed. R. Civ. P. 37(c)(1).

578

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail: hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15                    **UNITED STATES DISTRICT COURT**

16                    **CENTRAL DISTRICT OF CALIFORNIA**

17                         **WESTERN DIVISION**

| | |
|---|---|
| 18  MICHAEL SKIDMORE, *etc.*, | )  Case No. 2:15-cv-03462 RGK (AGRx) |
| 19           Plaintiff, | ) |
| 20     vs. | )  DECLARATION *RE* DOCUMENTS CITED IN DEFENDANTS' TRIAL BRIEF |
| 21  LED ZEPPELIN, *et al.*, | ) |
| 22           Defendants. | )  Date: June 14, 2016 |
| 23  _____ | )  Time: 9:00 a.m. |
| 24 |      Courtroom of the Honorable R. Gary Klausner United States District Judge |

25

26

27

28

579

## DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1.    I am an attorney admitted to practice before this Court and all Courts of the State of California. I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.    I represent defendants James Patrick Page, Robert Plant, Warner/Chappell Music, Inc., Atlantic Recording Corp. and Rhino Entertainment Company in this action. This Declaration is submitted to provide recent documents cited in defendants' Trial Brief.

3.    Attached to this Declaration as Exhibit 1 is a true and correct copy of Dr. Alexander Stewart's new report provided by plaintiff on May 2, 2016.

4.    Attached to this Declaration as Exhibit 2 is a true and correct copy of Erik Johnson's new report provided by plaintiff on May 2, 2016.

5.    Attached to this Declaration as Exhibit 3 is a true and correct copy of Kevin Hanson's new report provided by plaintiff on May 2, 2016.

6.    Attached to this Declaration as Exhibit 4 is a true and correct copy of Brian Bricklin's new report provided by plaintiff on May 2, 2016.

7.    On May 17, 2016, I took the deposition of Dr. Alexander Stewart. As of the filing of defendants' Trial Brief, I have not received any changes or corrections to the transcript of his deposition. Attached to this Declaration as Exhibit 5 are true and correct copies of pages from the transcript of his deposition and which contain the testimony cited in defendants' Trial Brief. Exhibit 2058 referenced at page 142 of his transcript is the 1967 *Taurus* deposit copy.

8.    On May 18, 2016, I took the deposition of Erik Johnson. As of the filing of defendants' Trial Brief, I have not received any changes or corrections to the transcript of his deposition. Attached to this Declaration as Exhibit 6 are true and correct copies of pages from the transcript of his deposition and which contain the testimony cited in defendants' Trial Brief.

580

9.    On May 18, 2016, I took the deposition of Kevin Hanson.  As of the filing of defendants' Trial Brief, I have not received any changes or corrections to the transcript of his deposition.  Attached to this Declaration as Exhibit 7 are true and correct copies of pages from the transcript of his deposition and which contain the testimony cited in defendants' Trial Brief.

10.    The deposition of Brian Bricklin was noticed and a subpoena issued for May 18, 2016, but that morning plaintiff's counsel told me that Mr. Bricklin had been hospitalized and could not appear for his deposition.

11.    Attached to this Declaration as Exhibit 8 is a true and correct copy of D. Begault, H. Heisse & C. Peltier, *Forensic Musicology – An Overview*, cited in defendants' Trial Brief.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 7, 2016.

_____/s/ Peter J. Anderson_____
PETER J. ANDERSON

Case: 16-56057, 06/02/2017, ID: 10457933, DktEntry: 32-3, Page 15 of 82

# EXHIBIT 5

Case 2:15-cv-03462-RGK-AGR Document 223-3 Filed 06/07/16 Page 60 of 123 Page ID #:5856

Case 16-56057, 06/02/2017, ID: 10457933, DktEntry: 32-3, Page 16 of 82

Stewart, Ph.D., Alexander - 5/17/2016                Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 1

```
               UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
                     WESTERN DIVISION
     -----------------------------
     MICHAEL SKIDMORE, etc.,        )
               Plaintiff,           )
                                    ) CIVIL ACTION NO.
          V.                        ) 2:15-cv-03462 RGK (AGRx)
                                    )
     LED ZEPPELIN, et al.,          )
               Defendants.          )
     -----------------------------


                    VIDEOTAPED DEPOSITION
                          - of -
                 ALEXANDER STEWART, Ph.D.


          taken on behalf of the Defendants on Tuesday,
          May 17, 2016, at the offices of Court Reporters
          Associates, 148 College Street, 2nd Floor,
          Burlington, Vermont, commencing at 9:14 AM.


     APPEARANCES:
     ON BEHALF OF THE PLAINTIFF:
          FRANCIS A. MALOFIY, ESQ.
          Francis Alexander, LLC
          280 North Providence Road, Suite 1
          Media, PA 19063
          (215) 500-1000 | francis@francisalexander.com

     ON BEHALF OF THE DEFENDANTS:
          PETER J. ANDERSON, ESQ.
          Law Offices of Peter J. Anderson, P.C.
          100 Wilshire Boulevard, Suite 2010
          Santa Monica, CA 90401
          (310) 260-6030 | pja@pjanderson.com


     VIDEO TECHNICIAN:  MARY DOUD
     COURT REPORTER:  JOHANNA MASSÉ, RMR, CRR
```

Stewart, Ph.D., Alexander - 5/17/2016                Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 6

| | | |
|---|---|---|
| 09:16:19 | 1 | MR. MALOFIY:  All right. |
| 09:16:20 | 2 | MR. ANDERSON:  Just normal, like what we |
| 09:16:22 | 3 | always do, what we've done in every deposition. |
| 09:16:23 | 4 | MR. MALOFIY:  We usually say objections to |
| 09:16:25 | 5 | form are reserved. |
| 09:16:25 | 6 | MR. ANDERSON:  No, we've never in this case. |
| 09:16:27 | 7 | MR. MALOFIY:  Oh, all right.  I will agree to |
| 09:16:29 | 8 | disagree, but go ahead. |
| 09:16:30 | 9 | THE VIDEOGRAPHER:  The court reporter will now |
| 09:16:31 | 10 | swear in the witness, please. |
| 09:16:31 | 11 | ALEXANDER STEWART, Ph.D., |
| 09:16:31 | 12 | having been first duly sworn, testified as follows: |
| 09:16:42 | 13 | EXAMINATION |
| 09:16:42 | 14 | BY MR. ANDERSON: |
| 09:16:42 | 15 | Q.   Good morning, Dr. Stewart.  My name, again, is |
| 09:16:44 | 16 | Peter Anderson, and I represent the remaining |
| 09:16:47 | 17 | defendants in this action. |
| 09:16:50 | 18 | You've had your deposition taken before? |
| 09:16:51 | 19 | A.   Yes. |
| 09:16:52 | 20 | Q.   On how many occasions? |
| 09:16:55 | 21 | A.   Just an estimate, maybe half dozen, maybe |
| 09:16:59 | 22 | eight. |
| 09:17:02 | 23 | Q.   When was the last time you had a deposition? |
| 09:17:05 | 24 | A.   It was right here about -- you know, I don't |
| 09:17:15 | 25 | remember the date.  Six months ago, maybe, or -- within |

Stewart, Ph.D., Alexander - 5/17/2016          Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 193

14:21:19   1          Q.    Is that a result of the instrumentation?

14:21:21   2              MR. MALOFIY:  If you need to refer to your

14:21:22   3     report and take a minute, please do so.

14:21:24   4              THE WITNESS:  Um-hum.

14:21:25   5          A.    That is related to instrumentation, yes.

14:21:26   6          Q.    Okay.  So anything else other than things that

14:21:33   7     are related to those three items that I've identified?

14:21:35   8          A.    Could you name them again?

14:21:37   9          Q.    Double-time finger picking, tempo, and

14:21:40  10     instrumentation.

14:21:41  11          A.    All right.  Well, you keep saying you're going

14:21:49  12     to come back to the details, but it's the details that

14:21:51  13     are really significant.

14:21:52  14          Q.    Trust me, I'm going to come back to the

14:21:54  15     details.

14:21:55  16          A.    All right.

14:21:55  17          Q.    Just trying to parse this out.

14:21:56  18          A.    I think that that's it, but there might be --

14:21:59  19     if I take the time to read all through this, I might

14:22:02  20     find that I also mention something else, but let's --

14:22:03  21     can we just assume that you're correct and proceed to

14:22:05  22     the details?

14:22:06  23          Q.    Thank you, sir.  Is there reverb in any of the

14:22:10  24     recordings of Taurus?

14:22:14  25          A.    I believe so.

EXHIBIT 5
64

585

Stewart, Ph.D., Alexander - 5/17/2016          Michael Skidmore, etc. v. Led Zeppelin, et al.

14:22:16  1     Q.   Do you think reverb is -- is there reverb in
14:22:21  2  Stairway to Heaven?
14:22:21  3     A.   Probably.  I'm not an engineer, but I'd be
14:22:24  4  surprised if there weren't.
14:22:25  5     Q.   Reverb was common in the 1960s and '70s in
14:22:29  6  popular music?
14:22:30  7     A.   Or using echo in one way or another.
14:22:32  8  Sometimes they had actual echo chambers in recording
14:22:35  9  studios.
14:22:35  10     Q.   Right.  So basically you could accomplish it
14:22:40  11  in two different technical ways but the same thing, the
14:22:45  12  sense of depth?
14:22:45  13     A.   Yeah.
14:22:47  14     Q.   And is it correct that there's nothing in the
14:22:52  15  Taurus -- well, strike that.
14:22:55  16          Double-time finger picking is a performance
14:22:57  17  element that's not depicted in the Taurus deposit copy,
14:23:00  18  correct?
14:23:00  19     A.   Correct.
14:23:01  20     Q.   And tempo is a performance element that's not
14:23:06  21  depicted in the Taurus deposit copy, right?
14:23:07  22     A.   Correct.
14:23:08  23     Q.   And instrumentation is a performance element
14:23:12  24  not depicted in the Taurus deposit copy, right?
14:23:14  25     A.   That's correct.

Stewart, Ph.D., Alexander - 5/17/2016                    Michael Skidmore, etc. v. Led Zeppelin, et al.

| | | |
|---|---|---|
| 14:30:09 | 1 | so then I'm going to say -- okay.  Then I'm okay with |
| 14:30:12 | 2 | that clarification. |
| 14:30:13 | 3 | Q.    Sir? |
| 14:30:14 | 4 | A.    I would have to get back to you with any |
| 14:30:16 | 5 | specific citations of sources, but, yes, I've read this |
| 14:30:20 | 6 | in scholarly works dealing with music copyright. |
| 14:30:25 | 7 | Q.    And you can't identify any of them? |
| 14:30:27 | 8 | A.    No.  Of course not. |
| 14:30:28 | 9 | MR. MALOFIY:  Objection. |
| 14:30:28 | 10 | A.    There are many dozens of such works that I've |
| 14:30:30 | 11 | read. |
| 14:30:30 | 12 | MR. MALOFIY:  Vague and ambiguous. |
| 14:30:35 | 13 | Q.    Do you agree that finger picking is -- was a |
| 14:30:37 | 14 | commonplace way of playing acoustic guitar before |
| 14:30:40 | 15 | Taurus? |
| 14:30:40 | 16 | A.    Yes. |
| 14:30:43 | 17 | Q.    Do you agree that Jimmy Page finger-picked |
| 14:30:49 | 18 | acoustic guitars before Taurus? |
| 14:30:51 | 19 | A.    Yes. |
| 14:30:51 | 20 | Q.    Did you do any research to determine the |
| 14:30:55 | 21 | extent to which finger picking was commonplace prior to |
| 14:30:59 | 22 | Taurus? |
| 14:30:59 | 23 | A.    I don't think I need to.  It's -- |
| 14:31:03 | 24 | Q.    You knew it? |
| 14:31:03 | 25 | A.    It was common. |

EXHIBIT 5
66

587

Case 2:15-cv-03462-RGK-AGR Document 223-3 Filed 06/07/16 Page 73 of 123 Page ID #:5863

Stewart, Ph.D., Alexander - 5/17/2016          Michael Skidmore, etc. v. Led Zeppelin, et al.

14:31:04  1      Q.    Okay.   What is double-time?

14:31:05  2      A.    Double-time means playing with the rhythmic

14:31:13  3  density twice as fast, so in this case it would be from

14:31:16  4  eighth notes to sixteenth notes.

14:31:19  5      Q.    Do you also agree that double-time was

14:31:22  6  commonplace before Taurus?

14:31:23  7      A.    Oh, yes.

14:31:23  8      Q.    And do you agree that Jimmy Page played

14:31:27  9  double-time finger-style acoustic guitar before Taurus?

14:31:33  10     A.    Did he do it in a situation exactly the same

14:31:35  11  like he did here?   I don't know.

14:31:38  12     Q.    Are you -- do you agree -- setting aside your

14:31:41  13  qualifications, do you agree that Jimmy Page played

14:31:44  14  double-time finger-style acoustic guitar before Taurus?

14:31:47  15     A.    Most likely.

14:31:50  16     Q.    Did you do any research to determine the

14:31:53  17  extent to which double-time finger style was a

14:31:56  18  commonplace way of playing acoustic guitar before

14:31:59  19  Taurus?

14:31:59  20     A.    I don't think it's necessary.

14:32:02  21     Q.    And why?

14:32:02  22     A.    Because it is common and it's also in the

14:32:05  23  George Harrison case common to use grace notes, but the

14:32:08  24  grace note was in exactly the same place in the melody

14:32:11  25  of My Sweet Lord as in The Chiffons' song.   And what

EXHIBIT 5
67

588

Stewart, Ph.D., Alexander - 5/17/2016                    Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 205

| | | |
|---|---|---|
| 14:35:55 | 1 | they heard that, yeah. |
| 14:35:57 | 2 | Q.   Okay.  That's -- |
| 14:35:58 | 3 | A.   The fact that it happens in the same place. |
| 14:36:00 | 4 | MR. ANDERSON:  Yeah.  Move to strike as |
| 14:36:01 | 5 | nonresponsive. |
| 14:36:02 | 6 | Q.   That's fine, sir, but my question to you is, |
| 14:36:04 | 7 | Is it correct that your theory of access by reference |
| 14:36:08 | 8 | to double-time finger picking isn't based on the |
| 14:36:11 | 9 | creators of Stairway to Heaven hearing the studio |
| 14:36:15 | 10 | recording of Taurus? |
| 14:36:17 | 11 | A.   Okay.  Yes. |
| 14:36:18 | 12 | Q.   Thank you.  On tempo, do you agree that a |
| 14:36:27 | 13 | tempo of 72 to 73 beats per minute is -- was |
| 14:36:31 | 14 | commonplace in music in the 1960s? |
| 14:36:34 | 15 | A.   Throughout musical eternity, really. |
| 14:36:38 | 16 | Q.   Do you agree that Jimmy Page performed songs |
| 14:36:45 | 17 | that had 72 to 73 beats per minute before Taurus? |
| 14:36:48 | 18 | A.   I don't know, but probably. |
| 14:36:52 | 19 | Q.   Did you do any research to determine the |
| 14:36:55 | 20 | extent to which 72 to 73 beats per minute was a |
| 14:36:58 | 21 | commonplace tempo before Taurus? |
| 14:37:00 | 22 | A.   Yeah.  My -- my conclusions are not based on |
| 14:37:04 | 23 | the prevalence of this.  It's based on the fact that |
| 14:37:09 | 24 | you have substantial musical similarity, most of which |
| 14:37:11 | 25 | we have not even discussed today, and then you have |

Stewart, Ph.D., Alexander - 5/17/2016          Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 207

| Time | Line | |
|---|---|---|
| 14:38:26 | 1 | MR. ANDERSON:  He's not answering the |
| 14:38:27 | 2 | question. |
| 14:38:27 | 3 | MR. MALOFIY:  He did, and then he elaborated. |
| 14:38:29 | 4 | MR. ANDERSON:  All right.  Fine. |
| 14:38:30 | 5 | Q.   Go ahead. |
| 14:38:30 | 6 | MR. MALOFIY:  Hold on a second.  I have to |
| 14:38:31 | 7 | protect the record.  You asked him two times.  He |
| 14:38:33 | 8 | answered fully.  You want a yes or no.  He can't answer |
| 14:38:36 | 9 | with a yes or no.  He elaborated on it.  There's |
| 14:38:38 | 10 | nothing wrong or improper there.  It's been asked and |
| 14:38:41 | 11 | answered.  I have my objection.  If you want to ask him |
| 14:38:42 | 12 | the same question again and waste time, that's fine. |
| 14:38:44 | 13 | Ask him the same question again; you'll get the same |
| 14:38:46 | 14 | answer. |
| 14:38:47 | 15 | Q.   Sir, can you answer the question, please?  Did |
| 14:38:48 | 16 | you do any research to determine the extent to which 72 |
| 14:38:51 | 17 | to 73 beats per minute was a commonplace tempo before |
| 14:38:54 | 18 | Taurus? |
| 14:38:55 | 19 | MR. MALOFIY:  Objection.  Asked and answered |
| 14:38:56 | 20 | now for the third time. |
| 14:38:57 | 21 | A.   This research would be ridiculous and un- -- |
| 14:39:00 | 22 | irrelevant and unnecessary, and so no, I did not do it. |
| 14:39:03 | 23 | Q.   And it would be ridiculous because beat -- |
| 14:39:08 | 24 | works with tempos of 72 to 73 beats per minute were |
| 14:39:11 | 25 | commonplace before Taurus, right? |

EXHIBIT 5
69

590

Stewart, Ph.D., Alexander - 5/17/2016          Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 208

| | | |
|---|---|---|
| 14:39:14 | 1 | A.   Of course. |
| 14:39:15 | 2 |      MR. MALOFIY:  Objection.  Asked and answered. |
| 14:39:16 | 3 |      Q.   Thank you.  And your opinion as to the |
| 14:39:22 | 4 | similarity of instrumentation notes the presence of a |
| 14:39:25 | 5 | harpsichord, flute, strings, and acoustic guitar in |
| 14:39:28 | 6 | Taurus recordings and acoustic guitar and recorder in |
| 14:39:33 | 7 | Stairway to Heaven, correct? |
| 14:39:33 | 8 |      A.   Sounds right. |
| 14:39:34 | 9 |      Q.   And it's correct that there's no harpsichord |
| 14:39:37 | 10 | or flute in Stairway to Heaven? |
| 14:39:39 | 11 |      A.   There's recorder, which is a type of flute. |
| 14:39:42 | 12 |      Q.   Is a recorder a type of flute? |
| 14:39:43 | 13 |      A.   Yes.  It's an end-blown flute. |
| 14:39:47 | 14 |      Q.   Do they have a different sound? |
| 14:39:48 | 15 |      A.   Somewhat. |
| 14:39:51 | 16 |      Q.   What's the difference? |
| 14:39:56 | 17 |      A.   Well, they're -- since they're made of wood, |
| 14:39:58 | 18 | they have somewhat of a more woody timbre, but then |
| 14:40:02 | 19 | flutes sometimes are made -- side-blown flutes are |
| 14:40:04 | 20 | sometimes made of wood also. |
| 14:40:06 | 21 |      Q.   Is there a wood flute performed in recordings |
| 14:40:09 | 22 | of Taurus, to your knowledge? |
| 14:40:10 | 23 |      A.   Not to my knowledge. |
| 14:40:12 | 24 |      Q.   Is it correct there's no harpsichord in |
| 14:40:15 | 25 | Stairway to Heaven? |

EXHIBIT 5
70

591

Stewart, Ph.D., Alexander - 5/17/2016          Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 209

14:40:16   1        A.   I believe not, no.

14:40:22   2        Q.   And I believe you referred to a quasi

14:40:25   3   classical tone; am I correct?

14:40:27   4        A.   Yes.

14:40:28   5        Q.   What did you mean by "quasi classical"?

14:40:30   6        A.   I mean that these are instruments that are

14:40:32   7   strongly suggestive of classical music, particularly

14:40:36   8   from the Baroque or Renaissance era.

14:40:39   9        Q.   In 1960s popular music, were harpsichords

14:40:42  10   used?

14:40:43  11        A.   Occasionally.

14:40:44  12        Q.   What about flutes, strings, and acoustic

14:40:48  13   guitars?

14:40:48  14             MR. MALOFIY:   Objection.   Compound.

14:40:49  15             If you need to, break it up.

14:40:50  16        A.   Occasionally.   But the point here is that

14:40:53  17   these instruments evoked this style that is shared by

14:41:02  18   both of these works.

14:41:03  19        Q.   Did you do any research to determine the

14:41:05  20   extent to which songs prior to Taurus had, as you refer

14:41:09  21   to it, a quasi classical feel?

14:41:10  22        A.   It would not be necessary to make the point

14:41:12  23   I'm making about a probative similarity.

14:41:15  24        Q.   Okay.

14:41:15  25        A.   I mean, when you have --

EXHIBIT 5
71

592

Case 16-56057, 06/02/2017, ID: 10457933, DktEntry: 32-3, Page 26 of 82
Case 2:15-cv-03462-RGK-AGR Document 223-13 Filed 06/07/16 Page 78 of 123 Page ID #:5868
Stewart, Ph.D., Alexander - 5/17/2016                Michael Skidmore, etc. v. Led Zeppelin, et al.

Page 364

C E R T I F I C A T E


I, Johanna Massé, Court Reporter and Notary
Public, do hereby certify that the foregoing pages,
numbered 4 through 362, inclusive, are a true and
accurate transcription of my stenographic notes of the
Deposition of Alexander Stewart, Ph.D., who was first
duly sworn by me, taken before me on Tuesday, May 17,
2016, commencing at 9:14 AM, in the matter of Michael
Skidmore, etc. v. Led Zeppelin, et al., Civil Action
No. 2:15-cv-03462 RGK (AGRx), as to which a transcript
was duly ordered.

I further certify that I am neither attorney
nor counsel for, nor related to or employed by any of
the parties to the action in which this transcript was
produced, and further that I am not a relative or
employee of any attorney or counsel employed in this
case, nor am I financially interested in this action.


_____
JOHANNA MASSÉ, RMR, CRR
Comm. expires:  2/10/19

EXHIBIT 5
72

593

# EXHIBIT 6

ERIK JOHNSON                                                    May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                                 1

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                        - - -

4

5   MICHAEL SKIDMORE, etc. :  CIVIL ACTION

6                          :  NO. 2:15-cv-03462
                              RGK (AGRx)
7                          :

8       V.                 :

9                          :

10  LED ZEPPELIN, et al.   :

11

12

13                       - - -

14        Videotaped Deposition of ERIK JOHNSON,
    taken pursuant to notice, at the offices of
15  Esquire Deposition Solutions, 1835 Market
    Street, Suite 2600, Philadelphia,
16  Pennsylvania, commencing at approximately
    9:45 a.m., on May 18, 2016, before Michelle
17  Palamarchuk, RPR, RMR and Notary Public in
    and for the Commonwealth of Pennsylvania.

18

19                       - - -

20          ESQUIRE DEPOSITION SOLUTIONS
           1835 Market Street, Suite 2600
21        Philadelphia, Pennsylvania 19103
               (215) 988-9191

22

23

24

ERIK JOHNSON                                                          May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                                       16

```
 1              you to ask for a read and sign just
 2              to confirm on the record that you
 3              want to read and sign, read the
 4              transcript and sign the transcript
 5              before it's final.
 6                   THE WITNESS:  Oh, okay.
 7                   MR. MALOFIY:  Do you want to
 8              state that?
 9                   THE WITNESS:  I would like to
10              read and sign the transcript before
11              it's submitted.
12                   MR. ANDERSON:  I don't know what
13              the "submitted" means, but you do
14              have the right to elect to read and
15              sign the transcript, so that's been
16              noted on the record.
17   BY MR. ANDERSON:
18      Q.   Have you ever testified at a trial?
19      A.   I have not.
20      Q.   Have you ever testified in an
21   arbitration?
22      A.   I have not.
23      Q.   Have you ever been designated as an
24   expert witness in any case other than in this
```

ESQUIRE

**EXHIBIT 6**
**75**

ERIK JOHNSON                                          May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                      17

```
 1   case?
 2       A.   Not before this case.
 3       Q.   Have you ever been -- have you been
 4   designated as an expert witness after you
 5   were designated in this case?
 6       A.   I have not.
 7       Q.   Are you producing any documents in
 8   response to the subpoena directed to you?
 9       A.   I am not.
10       Q.   Have you seen the subpoena before?
11       A.   Yes, I have.
12       Q.   When?
13       A.   About a week ago, approximately,
14   within the last week.
15            MR. ANDERSON:  Do you remember
16            the last exhibit number yesterday?
17            Was it 2203?
18            MR. MALOFIY:  I can
19            double-check.  I'm not sure.
20            MR. ANDERSON:  Why don't we go
21            with 2220?
22            MR. MALOFIY:  No.  We had 22.
23            Remember?
24            MR. ANDERSON:  Oh, she went to
```

ESQUIRE

597

**EXHIBIT 6**
**76**

ERIK JOHNSON                                      May 18, 2016
SKIDMORE vs. LED ZEPPELIN                              173

```
 1      Q.    Is there a tempo indicated on the

 2   Taurus deposit copy?

 3      A.    No, there is not.

 4      Q.    Did you do any research to determine

 5   whether musical compositions prior to Taurus

 6   had the same or similar tempos to the tempos

 7   that you've ascribed to Taurus and the tempo

 8   of Stairway to Heaven?

 9      A.    Specifically, no.

10      Q.    Do you agree that there are musical

11   compositions prior to Taurus that had similar

12   tempos?

13      A.    I'm quite sure.  I mean, to be fair,

14   there are compositions at many tempos, many

15   of which have the same tempo but they often

16   have very little else in common.

17      Q.    You identified mood.  What did you

18   mean by mood?

19      A.    I suppose it's subjective.  I guess

20   what I mean is because of the flavors of the

21   acoustic guitar performed the way it is in

22   both compositions and the other ancillary

23   instruments, the way that they coalesce as a

24   whole gives a certain, I guess it has a
```

ESQUIRE

**EXHIBIT 6**
**90**

Case 2:15-cv-03462-RGK-AGR  Document 223-3  Filed 06/07/16  Page 98 of 123  Page ID
#:5888

1    pseudo-renaissance kind of flavor to it.  Of

2    course, I mean that colloquially.

3          But there's just a certain kind of

4    mood and tone that emerges from it.  And even

5    if I can't identify exactly what that mood

6    is, I know that they're both the same mood,

7    in my estimation.

8       Q.   Did you do any research to determine

9    the extent to which compositions prior to,

10   and recordings prior to Taurus had a similar

11   mood?

12      A.   No, I did not.

13      Q.   Are you aware of any compositions

14   prior to Taurus that had a similar mood?

15      A.   Off the top of my head, no.

16      Q.   Would you say that Ruby Tuesday has a

17   similar mood?

18      A.   Not in my estimation.

19      Q.   Would you say that -- just a second.

20   Do you know the Beach Boys song God Only

21   Knows?

22      A.   Yes, I do.

23      Q.   Do you believe that has a similar

24   pseudo-renaissance feel?

ESQUIRE
S O L U T I O N S

EXHIBIT 6
91

Case 16-56057, 06/02/2017, ID: 10457933, DktEntry: 32-3, Page 33 of 82

ERIK JOHNSON                                              May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                          190

```
 1            just like their music.  I always

 2            have.  Why?  I'm not sure.  I always

 3            liked Led Zeppelin.

 4   BY MR. ANDERSON:

 5      Q.   What is it about their music that you

 6   admire?

 7      A.   The musicianship, riff writing, I

 8   like the way the albums sound.

 9      Q.   Have you finished your answer?

10      A.   Yes.

11      Q.   Okay.  Sorry.  I didn't know.  I

12   didn't want to cut you off.

13            When you say "the way the album

14   sounds," you're talking about the production

15   values?

16      A.   Yes, that's correct.

17      Q.   And is it correct that there are no

18   instruments indicated on the Taurus deposit

19   copy?

20      A.   Yes, that's correct.

21      Q.   In that same paragraph you refer to

22   revelations of their unauthorized borrowing.

23            And, again, I'm not instructing you.

24   But just out of caution, I'm cautioning you
```



**EXHIBIT 6**
**92**

*800.211.DEPO (3376)*
*EsquireSolutions.com*
600

ERIK JOHNSON                                          May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                      249

```
 1
 2                C E R T I F I C A T I O N
 3                         - - -
 4
 5     I, Michelle Palamarchuk, Registered
 6   Professional Reporter and Notary Public, do
 7   hereby certify that the foregoing transcript
 8   is a true and accurate transcription of the
 9   deposition proceedings, that the witness was
10   first sworn by me at the time, place and on
11   the date hereinbefore set forth.
12
13
14            Michelle Palamarchuk, RPR, RMR
15
16        (The foregoing certification of this
17   transcript does not apply to any reproduction
18   of the same by any means unless under the
19   direct control and/or supervision of the
20   certifying reporter)
21
22
23
24
```

# EXHIBIT 7

KEVIN HANSON                                                    May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                                  1

```
 1

 2          IN THE UNITED STATES DISTRICT COURT

 3           FOR THE CENTRAL DISTRICT OF CALIFORNIA

 4                        - - -

 5

 6   MICHAEL SKIDMORE, etc. :   CIVIL ACTION

 7                           :   NO. 2:15-cv-03462
                                 RGK (AGRx)
 8                           :

 9        V.                 :

10                           :

11   LED ZEPPELIN, et al.   :

12

13                        - - -

14          Videotaped Deposition of KEVIN HANSON,
     taken pursuant to notice, at the offices of
15   Esquire Deposition Solutions, 1835 Market
     Street, Suite 2600, Philadelphia,
16   Pennsylvania, commencing at approximately
     3:20 p.m., on May 18, 2016, before Michelle
17   Palamarchuk, RPR, RMR and Notary Public in
     and for the Commonwealth of Pennsylvania.
18

19                        - - -

20          ESQUIRE DEPOSITION SOLUTIONS
            1835 Market Street, Suite 2600
21          Philadelphia, Pennsylvania 19103
                 (215) 988-9191
22

23

24
```



**EXHIBIT 7**
**96**

1   musicological terms, if you can describe it

2   from a theoretical standpoint, from a

3   standpoint of how it ends up sounding, the

4   overall feel of it.

5        Q.   Have you ever played Stairway to

6   Heaven before becoming involved in this case?

7        A.   Oh, yes, since I was 11 years old.

8        Q.   At any point did you ever play it

9   with the same fingering that you believe

10  Jimmy Page used?

11       A.   I think we play the same -- I think I

12  play it like Jimmy Page plays it.  I'm almost

13  certain.

14       Q.   And that's the same fingering that

15  you believe Randy California played?

16       A.   Yes; on the right hand in terms of

17  the notes that are similar that occur at the

18  same time.

19       Q.   Are there features, elements, or

20  characteristics of a guitar that lend itself

21  to playing those notes with that fingering?

22       A.   Yes, there are.  It would probably be

23  the easiest place to play those, to play

24  those two wrists separately.



EXHIBIT 7
104

KEVIN HANSON                                    May 18, 2016
SKIDMORE vs. LED ZEPPELIN                              62

 1  in Stairway to Heaven?

 2      A.   Yes.

 3      Q.   Is there a descending chromatic line

 4  in the Taurus deposit copy?

 5      A.   Yes, there is.

 6      Q.   Is there a minor line cliché in both

 7  of the compositions?

 8      A.   I would hesitate to use that term,

 9  especially in Taurus because, because of the

10  way that it's broken up -- well, let me

11  correct that.

12          In the, if you were to break up

13  Taurus, the guitar part, into treble and bass

14  clef, yes, you would have the descending

15  chromatic line.

16      Q.   Does the Taurus deposit copy indicate

17  or identify any instruments to play the

18  composition?

19      A.   It does not.

20      Q.   Does it indicate tempo?

21      A.   No, it doesn't.

22      Q.   Does it indicate melody?

23      A.   Yes --

24      Q.   Does it --



**EXHIBIT 7**
**105**

800.211.DEPO (3376)
EsquireSolutions.com

605

KEVIN HANSON                                                        May 18, 2016
SKIDMORE vs. LED ZEPPELIN                                                   151

```
 1

 2              C E R T I F I C A T I O N

 3                      - - -

 4

 5      I, Michelle Palamarchuk, Registered

 6   Professional Reporter and Notary Public, do

 7   hereby certify that the foregoing transcript

 8   is a true and accurate transcription of the

 9   deposition proceedings, that the witness was

10   first sworn by me at the time, place and on

11   the date hereinbefore set forth.

12

13

14           Michelle Palamarchuk, RPR, RMR

15

16      (The foregoing certification of this

17   transcript does not apply to any reproduction

18   of the same by any means unless under the

19   direct control and/or supervision of the

20   certifying reporter)

21

22

23

24
```



**EXHIBIT 7**
**111**

800.211.DEPO (3376)
EsquireSolutions.com
606

Tab 18

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15                **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17                        **WESTERN DIVISION**

18  MICHAEL SKIDMORE, *etc.*,            )  Case No. 2:15-cv-03462 RGK (AGRx)
                                         )
19              Plaintiff,               )
                                         )  DEFENDANTS' REPLY IN
20        vs.                            )  SUPPORT OF MOTION *IN LIMINE*
                                         )  NO. 8 TO EXCLUDE EVIDENCE
21  LED ZEPPELIN, *et al.*,              )  AND ARGUMENT AS TO
                                         )  TRUST'S USE OF FUNDS
22              Defendants.              )
                                         )
23  _____)  Date:  May 10, 2016
                                            Time: 9:00 a.m.
24
                                            Courtroom of the Honorable
25                                          R. Gary Klausner
                                            United States District Judge
26

27

28

                                                            607

## **REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

1

2   Plaintiff acknowledges that he successfully prevented defendants from doing

3   discovery as to his allegations that he and the Trust use the Trust's funds to "buy

4   children in need musical instruments" and will use any recovery in this action for

5   that purpose. FAC (Doc. 31) at 4 n. 1 & at 12, ¶ 63. Surprisingly, plaintiff contends

6   that because he blocked that discovery, he can now put on evidence within that

7   discovery. But he cannot have it both ways. Defs' Mtn. *in Limine* No. 8 (Doc. 181)

8   at 3-5.

9   In response to defendants' additional argument that the use of Trust funds also

10  is not relevant, plaintiff refers to "some public criticism" of plaintiff's motives.

11  Pltf's Oppn. (Doc. 168) at 2. Not only is that unproven, public comments are not the

12  touchstone for what is relevant on plaintiff's claims.

13  Plaintiff also argues that the use of Trust funds is relevant to defendants'

14  defenses of waiver, abandonment and license. Pltf's Oppn. at 2-3. It is not clear,

15  and plaintiff does not explain, how the use of Trust funds is relevant to those

16  defenses, but that is moot because defendants are not pursuing those defenses at

17  trial.

18  And, even if the evidence were relevant, evidence and argument that the Trust

19  uses its funds to buy musical instruments for needy children and will use any

20  recovery awarded by the jury for that purpose, is unduly prejudicial and properly

21  excluded under Federal Rule of Evidence 403. Defs' Mtn. *in Limine* No. 8 at 6.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

608

1        Accordingly, evidence and argument as to plaintiff's and the Trust's use of

2    funds is properly excluded.

3    Dated: April 21, 2016

                 _____/s/ Peter J. Anderson_____
                 Peter J. Anderson, Esq.
       LAW OFFICES OF PETER J. ANDERSON
           A Professional Corporation
           Attorney for Defendants
     JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
    WARNER/CHAPPELL MUSIC, INC.,
     SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and
    WARNER MUSIC GROUP CORP.

           Helene M. Freeman, Esq.
          PHILLIPS NIZER LLP
        Attorney for Defendants
      JAMES PATRICK PAGE,
   ROBERT ANTHONY PLANT and
     JOHN PAUL JONES

2

609

Tab 19

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
4  T: (215) 500-1000; F: (215) 500-1005
   E: francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T: (310) 557-9200; F: (310) 557-0224
10 E: gkulik@kgslaw.com
   *Attorney for Plaintiff*

11

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 MICHAEL SKIDMORE, as Trustee for      Case No. 15-cv-03462 RGK (AGRx)
15 the RANDY CRAIG WOLFE TRUST,
                                          Hon. R. Gary Klausner
16              Plaintiff,
                                          **PLAINTIFF'S OPPOSITION TO**
17      v.                                **DEFENDANTS' MOTION IN**
                                          **LIMINE NO. 8 TO EXCLUDE**
18                                        **EVIDENCE AND ARGUMENT AS**
19 LED ZEPPELIN; JAMES PATRICK           **TO TRUST'S USE OF FUNDS**
   PAGE; ROBERT ANTHONY PLANT;
20 JOHN PAUL JONES; SUPER HYPE           Trial:        April 25, 2016
   PUBLISHING, INC.; WARNER MUSIC        Time:         9:00 a.m.
21 GROUP CORP., Parent of                Courtroom:    850
22 WARNER/CHAPPELL MUSIC, INC.;          Pretrial Conf: May 10, 2016
   ATLANTIC RECORDING
23 CORPORATION; RHINO
24 ENTERTAINMENT COMPANY,

25              Defendants.

26

27

28

Given the inescapable conclusion that Defendants Jimmy Page and Robert Plant copied *Taurus* in order to compose the first 2 ½ minutes of *Stairway to Heaven,* Defendants spent much of their time in discovery trying to prove that the Plaintiff Trust lacked standing to bring this case. Plaintiff produced voluminous evidence to establish the legality and standing of the Trust, but in their zeal to harass Plaintiff, Defendants kept pressing for more irrelevant information such as, for example, a detailed disclosure of every dime the Trust earned and spent during the years it has been in effect. Plaintiff finally drew a line, and Defendants filed a motion to compel. The Magistrate Judge agreed with Plaintiff and denied the motion. Now, even though the Magistrate Judge ruled that the further information and documentation was wholly irrelevant, Defendants move to exclude relevant evidence in order to circumvent the Magistrate Judge's ruling and punish Plaintiff for exercising his right to refuse to answer capricious, burdensome and overbroad discovery requests.

The Randy Craig Wolfe Trust ("Trust") was established by court order on February 19, 2002. The Trust owns 100% of the interests in Randy Wolfe's ("Randy") intellectual property. The sole beneficiary of the Trust is the Ventura County School District for the purpose of buying children in need musical instruments. Although Plaintiff has provided Defendants with the 2012 court order establishing the Trust, Defendants have doubted the validity of the Trust from the outset of this case.

To prove their unfounded suspicions, Defendants harassed Plaintiffs with overbroad and burdensome discovery requests. Plaintiff exercised his rights and refused to respond. Ultimately, the Magistrate Judge agreed with Plaintiff and held Defendants' discovery requests were "overbroad" and "[dis]proportional to the needs of the case." ECF 89, p. 1-2.

Ignoring the ruling of the Magistrate Judge, Defendants now move this Court to exclude evidence as to the use of funds by the Trust on the basis that Plaintiff "refused to submit to discovery." ECF 141, p. 4. Defendants contend that Plaintiff should be barred from presenting evidence that the purpose of the Trust is to "buy children in need musical

1

1   instruments" because of purported discovery violations. ECF 141. Specifically,

2   Defendants argue that "[b]ecause Plaintiff refused to submit to discovery as to the Trust's

3   use of its funds and whether it is a charitable organization, plaintiff is properly precluded

4   from offering testimony and argument as to the Trust's supposed use of its funds for

5   charitable purpose." ECF 141, p. 4.

6       Clearly absent from Defendants' motion is the order issued by the Magistrate

7   Judge holding the discovery in question (the same one Defendants now contend provide

8   the basis for the exclusion) was "overbroad" and "[dis]proportional to the needs of the

9   case." ECF 89, p. 1-2. As evidenced by the Magistrate Judge's Order, Plaintiff's

10  position was not unreasonable. Thus, Defendants' contention that Plaintiff's purported

11  "refusal to submit to discovery" warrants the requested exclusion is simply baseless.

12      Additionally, Defendants make a secondary argument that the evidence/testimony

13  is prejudicial and irrelevant. ECF 141, p. 5-6. This is the exact opposite position

14  Defendants asserted to the Magistrate Judge less than three months ago. *Id.* Such

15  posturing should not be tolerated.

16      On the internet and in the press, there has been some public criticism based on the

17  assumption that this suit is motivated by selfish family members and former band

18  members who are just trying to extort money from Led Zeppelin. Randy's sisters and

19  former band members will indeed testify in the trial, but not one of them has any

20  financial interest in the outcome of this case. The jury may be tempted to assume – as

21  some members of the public have assumed – that they have a pecuniary interest in the

22  case and that is the sole reason they brought the case. These could impact their

23  credibility. To be fair to the Plaintiff and the witnesses, and so there is no juror confusion,

24  it must be disclosed who is and who is not a beneficiary of the Trust. This is especially

25  true since it is anticipated that Defendants will indeed, at trial, seek to disparage the Trust

26  and establish it is not a proper Plaintiff.

27      Additionally, this evidence is also relevant to rebut Defendants' affirmative

28  defenses of waiver, abandonment and license. It is expected that Defendants will contend

2

– just as they did in their summary judgment motion – that Randy was "fine" with Led Zeppelin using *Taurus* and this suit goes against his wishes and is solely motivated by Randy's family members pecuniary interests.   Plaintiff should be entitled to defend against these false theories and present evidence to rebut Defendants' affirmative defenses.

For these reasons, the motion should be denied.

Dated:  April 15, 2016                    FRANCIS ALEXANDER, LLC


                                         */s/ Francis Alexander Malofiy*
                                         Francis Alexander Malofiy, Esq.
                                         Attorney for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS
MOTION IN LIMINE NO. 8

613

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's Response to Defendants' MIL No. 8 has been served upon counsel by electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones*
*(collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp.,*
*Warner/Chappell Music, Inc., Atlantic Recording Corporation, and*
*Rhino Entertainment Company*

**\*\*\*\*\***

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 105
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com
*/d/ April 15, 2016*

4

Tab 20

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail: hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | ) Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | ) |
| vs. | ) DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND ARGUMENT AS TO TRUST'S USE OF FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT |
| LED ZEPPELIN, *et al.*, | ) |
| Defendants. | ) |

Date: May 10, 2016
Time: 9:00 a.m.

Courtroom of the Honorable
R. Gary Klausner
United States District Judge

615

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 10, 2016, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 850 of the above-entitled District Court, located at 255 East Temple Street, Los Angeles, California, defendants James Patrick Page, Robert Anthony Plant, John Paul Jones, Warner/Chappell Music, Inc., Super Hype Publishing, Inc., Atlantic Recording Corporation, Rhino Entertainment Company and Warner Music Group Inc., will move the above-entitled Court, the Honorable R. Gary Klausner, United States District Judge presiding, for an Order excluding all evidence and argument as to plaintiff's and the Randy Craig Wolfe Trust's use of funds and any recovery in this action.

This Motion is brought on the grounds that, as stated more fully in the accompanying Memorandum of Points and Authorities, plaintiff's and the Randy Craig Wolfe Trust's use of funds and any recovery in this action is irrelevant, inadmissible and precluded because plaintiff refused to submit to discovery as to plaintiff's use of the Trust's funds, and testimony and argument as to the Trust's use of funds and any recovery also would confuse issues, mislead the jury, prejudice defendants and result in undue delay and wasted trial time.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed with this Notice of Motion and Motion, the pleadings and papers on file in this action, the matters of which this Court may take judicial notice, and such additional matters and oral argument as may be offered in support of the Motion.

///
///
///
///
///
///

616

1    The Motions are made following the conference with plaintiff's counsel

2  pursuant to Local Rule 7-3, which took place on March 22, 2016.

3  Dated: March 25, 2016

_____/s/ Peter J. Anderson_____

Peter J. Anderson, Esq.

LAW OFFICES OF PETER J. ANDERSON

A Professional Corporation

Attorney for Defendants

JAMES PATRICK PAGE, ROBERT

ANTHONY PLANT, JOHN PAUL JONES,

WARNER/CHAPPELL MUSIC, INC.,

SUPER HYPE PUBLISHING, INC.,

ATLANTIC RECORDING CORP., RHINO

ENTERTAINMENT COMPANY and

WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.

PHILLIPS NIZER LLP

Attorney for Defendants

JAMES PATRICK PAGE,

ROBERT ANTHONY PLANT and

JOHN PAUL JONES

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

617

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Plaintiff sues as the claimed trustee of the Randy Craig Wolfe Trust, which plaintiff alleges uses its funds to "buy children in need musical instruments" and will use any recovery in this action for that purpose.  FAC (Doc. 31) at 4 n. 1 & at 12, ¶ 63.  Plaintiff, however, refused to comply with discovery as to the Trust's use of its funds and refused to even state whether, as required by the trust documents he produced, the Trust is qualified under federal income tax law as a charitable organization.  Not only is testimony and argument as to matters he withheld from discovery properly precluded, but this testimony and argument is not relevant and highly prejudicial.

Accordingly, testimony and argument as to plaintiff's claimed use of its funds and planned use of any recovery should be excluded.

### 2. EVIDENCE AND ARGUMENT AS TO THE TRUST'S USE OF FUNDS, INCLUDING ANY RECOVERY, SHOULD BE EXCLUDED

#### (a) Plaintiff Successfully Blocked Discovery into His Alleged Use of Trust Funds

Plaintiff, in his verified Complaint and First Amended Complaint, stated under oath that he uses the Trust's funds to buy instruments for needy children and would use any recovery in this action for that purpose.  Plaintiff also produced what he contends are the 2002 Court Order that created the Trust, the Trust Agreement and the Amendments to it, including a Fifth last Amendment dated May 13, 2008 and which requires that the Trust become qualified under federal income tax law as a charitable organization and use its receipts to provide musical instruments to school children.  *See,* Joint Stip. *re* Def. Motion to Compel (Doc. 86-1) at 1:17-22 & 4:4-10, & Appln. to Seal (Doc. 84) at Exh. 1 (under seal).

Accordingly, defendants served discovery as to plaintiff's use of the Trust's funds and as to whether the Trust did in fact become qualified under federal income

618

tax law as a charitable organization.  Joint Stip. *re* Def. Motion to Compel at 1-2, 2-3, 8, 11.  Plaintiff, however, refused to comply with that discovery, even subject to the Protective Order in this case, and the Magistrate Judge declined to require compliance.  Order (Doc. 89).  At his deposition, plaintiff refused to testify beyond general assertions as to the use of Trust funds and refused outright to say whether the Trust is in fact a charitable organization as required by the Fifth Trust Amendment.  Anderson Decl. at 8, ¶ 3, & 1.

Because plaintiff refused to submit to discovery as to the Trust's use of its funds and whether it is a charitable organization, plaintiff is properly precluded from offering testimony and argument as to the Trust's supposed use of its funds for charitable purposes.

The Court has "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1557 (9th Cir. 1996), *quoting Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).  These inherent powers include "the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial" and "the power to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing party."  *Lewis*, 87 F.3d at 1557, *quoting Unigard*, 982 F.2d at 368.

Allowing plaintiff to testify as to matters he specifically and successfully withheld from discovery would be contrary to "a fair and orderly trial" and "would unfairly prejudice [the] opposing part[ies]."  *Id.*  Moreover, it appears likely that his refusal to permit discovery while providing only self-serving generalities is in bad faith: his refusal to allow discovery even though he raised the issues himself, strongly suggests that the truth is the Trust's funds are not in fact used as he represents and that the Trust is not a charitable organization as required by the Fifth

///

4

**619**

1  Amendment to the Trust Agreement.  Otherwise, there was no reason for plaintiff to
2  resist so strenuously discovery as to his claimed use of Trust funds.

3       Accordingly, plaintiff should be precluded from offering testimony or
4  argument as to the claimed use of Trust funds and planned use of any recovery.

5       **(b)**     **Plaintiff's Claimed Use of Trust Funds and Plan for Using any**
6                   **Recovery to Buy Instruments for Needy Children are Not Relevant**

7       Neither are plaintiff's claimed but unproven use of Trust funds for charitable
8  purposes and his planned use of any recovery for charitable purposes, relevant to his
9  claims.

10      Plaintiff's past or future use of Trust funds is not an element, or relevant to an
11 element, of his claims for copyright infringement.  *Feist Publns, Inc. v. Rural Tel.*
12 *Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must
13 be proven: (1) ownership of a valid copyright, and (2) copying of constituent
14 elements of the work that are original").  He also alleges a count for "Right of
15 Attribution – Equitable Relief – Falsification of Rock n' Roll History," but that is
16 not a recognized claim[1] and, in any event, he does not include the Trust's use of
17 funds as a supposed element of that claim.  FAC (Doc. 31) at 29-30, ¶¶ 196-202.  If
18 plaintiff's use of Trust funds is relevant at all, it is relevant to defendants' ability to
19 impeach plaintiff's sworn statements in his pleadings and relevant to defendants'
20 defenses, such as unclean hands.   But, plaintiff has kept this evidence from
21 defendants.  *See, above* at 3-4.

22      Accordingly, testimony and argument as to the Trust's use of its funds,
23 including any recovery in this action, should be excluded as not relevant.

24 ///

25 ///

---

26 [1]     *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164,
27 1178 (E.D. Cal. 2006) ("it is well established that the right to attribution is not a
   protected right under the Copyright Act"); *Sybersound Records, Inc. v. UAV Corp.*,
28 517 F.3d 1137, 1144 (9th Cir. 2008) (misstating credit is not actionable).

620

| | |
|---|---|
| 1 | **(c)**     **Evidence and Argument that Plaintiff Uses and Will Use Trust** |
| 2 | **Funds for Charitable Purposes Is also Properly Excluded Under** |
| 3 | **Federal Rule of Evidence 403** |

4       Testimony and argument as to plaintiff's past use of Trust funds for charitable

5 purposes and plaintiff's supposed plan to use any recovery for charitable purposes,

6 has no probative value and any probative value is substantially outweighed by the

7 danger of undue prejudice.  Fed. R. Evid. 403; *United States v. McFall*, 558 F.3d

8 951, 963-64 (9th Cir. 2009).

9       Plaintiff's unproven assertions that he uses Trust funds for the charitable

10 purpose of buying musical instruments for needy children, and will use any recovery

11 for that purpose, are not relevant and have zero probative value in this case.

12       On the other hand, plaintiff seeks to prejudice the jury by contrasting plaintiff,

13 supposedly dedicated to charitable use of funds – which uses he refuses to

14 document, even subject to the Protective Order in this case – against corporate

15 defendants and well-known musical artists and songwriters, and falsely suggest to

16 the jury that the jury would simply be transferring money to a charitable

17 organization.  Not only would that testimony and argument unfairly prejudice

18 defendants, but it will confuse the issues, mislead the jury and waste trial time and

19 delay the case.

20       For these additional reasons, testimony and argument as to the Trust's use of

21 its funds and any recovery in this action should be excluded under Rule 403.

22 **3.**    **CONCLUSION**

23       Testimony and argument as to plaintiff's use of the Trust's funds, including

24 any recovery in this action, is properly precluded because plaintiff refused discovery

25 ///

26 ///

27 ///

28 ///

621

1    on the issues, also is not relevant and, in addition, is unduly prejudicial, and should

2    be excluded.

3    Dated: March 25, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

7

622

Tab 21

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15                **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17                     **WESTERN DIVISION**

18 MICHAEL SKIDMORE, *etc.*,        )   Case No. 2:15-cv-03462 RGK (AGRx)
                                    )
19          Plaintiff,             )
                                    )   DECLARATION OF PETER J.
20    vs.                          )   ANDERSON IN SUPPORT OF
                                    )   MOTION FOR SUMMARY
21 LED ZEPPELIN, *et al.*,          )   JUDGMENT OR, IN THE
                                    )   ALTERNATIVE, PARTIAL
22          Defendants.            )   SUMMARY JUDGMENT
                                    )
23 _____)   Date:  March 28, 2016
                                        Time: 9:00 a.m.
24
                                        Courtroom of the Honorable
25                                           R. Gary Klausner
                                        United States District Judge
26

27

28

                                                                    623

1              **<u>DECLARATION OF PETER J. ANDERSON</u>**

2        I, Peter J. Anderson, declare and state:

3        1.    I am an attorney admitted to practice before this Court and all Courts of

4 the State of California. I have personal knowledge of the following facts and could

5 competently testify to these facts if called upon to do so.

6        2.    I represent defendants Warner/Chappell Music, Inc., Syperhype

7 Publishing, Inc., Atlantic Recording Corp., Rhino Entertainment Company, James

8 Patrick Page, Robert Plant and John Paul Jones in this action. This Declaration is

9 submitted in support of their Motion for Summary Judgment or, in the alternative,

10 Partial Summary Judgment.

11        3.    I took the deposition of Jay A. Ferguson on January 13, 2016, in this

12 action. Mr. Ferguson provided corrections to the transcript of his deposition.

13 Attached to this Declaration as Exhibit 8 are true and correct copies of pages from

14 the transcript of Mr. Ferguson's deposition and which contain the testimony cited in

15 support of defendants' Motion.

16        4.    I took the deposition of Mark Christopher Andes on January 15, 2016,

17 in this action. Mr. Andes has not provided corrections to the transcript of his

18 deposition. Attached to this Declaration as Exhibit 9 are true and correct copies of

19 pages from the transcript of Mr. Andes' deposition and which contain the testimony

20 cited in support of defendants' Motion.

21        5.    Attached to this Declaration as Exhibit 10 is a true and correct copy of

22 deposition exhibit 347 in this action.

23        6.    Attached to this Declaration as Exhibit 11 is a true and correct copy of

24 the August 29, 1967 Exclusive Songwriter Agreement produced by plaintiff in this

25 action.

26        7.    I am familiar with the documents produced by plaintiff in this action

27 and the deposition testimony in this action, and plaintiff has not produced any

28 ///

624

19.     No evidence has been produced in this action that *Taurus* was played on the radio, let alone that it was played on the radio prior to the 1971 release of the album *Led Zeppelin IV*, which includes *Stairway to Heaven*.

20.     No evidence has been produced in this action as to the extent of sales or other distribution of the first Spirit album prior to the 1971 release of the album *Led Zeppelin IV*.

21.     Attached to this Declaration as Exhibit 20 is a true and correct copy of deposition exhibit 352 in this action.

22.     Plaintiff produced in this action a multiple-page listing of dates and venues where plaintiff contends Spirit performed live from February 5, 1967 to December 31, 1971, and plaintiff claims to have designated that listing as "CONFIDENTIAL" under the Stipulated Protective Order in this action.  I have reviewed it carefully and count at least 175 listed Spirit performances that plaintiff contends occurred from December 1968 through December 1971.

23.     Attached to this Declaration as Exhibit 21 is a true and correct copy of deposition exhibits 306 to 312 in this action, without the CDs that are photocopied in the exhibits.

24.     No evidence has been produced in this action that Led Zeppelin's members were present at the Santa Monica, California, Civic Auditorium or the Anaheim, California, Convention Center when Spirit performed.

25.     No evidence has been produced in this action that prior to December 26, 1968, Led Zeppelin and Spirit ever performed at the same venue on the same day.

26.     Attached to this Declaration as Exhibit 22 is a true and correct copy of deposition exhibit 320 in this action.

27.     Attached to this Declaration as Exhibit 23 is a true and correct copy of deposition exhibit 313 in this action.

///

625

28.    Attached to this Declaration as Exhibit 24 is a true and correct copy of deposition exhibit 317 in this action.

29.    Attached to this Declaration as Exhibit 25 is a true and correct copy of excerpts from volume 2 of the book, *Atlantic Records, A Discography*, and which, by reference to the dated recording sessions preceding and following it, indicates that the recording of the album *Cartoone* occurred in early December 1968.

30.    No evidence has been produced in this action that Randy Wolfe, professionally known as Randy California, ever sued over the alleged copying of *Taurus* in *Stairway to Heaven*.

31.    No evidence has been produced in this action that Bernice Pearl, individually or on behalf of The Randy Craig Wolfe Trust, ever sued over the alleged copying of *Taurus* in *Stairway to Heaven*.

32.    At three minutes to midnight, Pacific Time, on February 10, 2014, plaintiff's counsel e-mailed to me and other counsel plaintiff's initial expert disclosures, including the report of his musicologist, Alexander Stewart.  A true and correct copy of that Report, without its exhibits and attachments, is attached as Exhibit 2 to the accompanying Declaration of Dr. Lawrence Ferrara.

33.    Neither Alexander Stewart's nor any other expert report submitted by plaintiff, mentions the musical transcription of *Taurus* that would have accompanied Hollenbeck Music's 1967 application to register a copyright in the *Taurus* musical composition.

34.    Neither Alexander Stewart's report nor any other expert report submitted by plaintiff, is based upon the musical transcription of *Taurus* that would have accompanied Hollenbeck Music's 1967 application to register a copyright in the *Taurus* musical composition.

35.    I attended the February 4, 2015 hearing in this action on defendants' motion to dismiss or transfer, before this action was transferred to this Court. Attached to this Declaration as Exhibit 26 are true and correct copies of pages from

626

1  the Reporter's Transcript of that hearing and which are cited in support of
2  defendants' Motion.

3       36.  In the course of this action, I have produced to plaintiff's counsel
4  documents, designated as confidential under the Protective Order in this case,
5  establishing that in 2012-14 and at substantial cost, Rhino Entertainment Co., with
6  the assistance of other defendants, arranged for the remastering and re-release of Led
7  Zeppelin recordings, including the *Led Zeppelin IV* album and *Stairway to Heaven*,
8  and plaintiff's counsel has not disputed the foregoing.

9       37.  No evidence has been produced in this action that John Paul Jones,
10  Super Hype Publishing, Inc., or Warner Music Group Corp. performed or distributed
11  *Stairway to Heaven* within the three years preceding plaintiff's filing of this action,
12  if at all.

13       I declare under penalty of perjury that the foregoing is true and correct.
14  Executed on February 25, 2016.

15

16                                  /s/ Peter J. Anderson
17                                  PETER J. ANDERSON

18

19

20

21

22

23

24

25

26

27

28

627

# EXHIBIT 20

RETURN WITH ME NOW TO THOSE THRILLING DAYS OF YESTERDAY........

TO THE FEBRUARY 1, 1969 PRE- "GROUNDHOG DAY" EXTRAVAGANZA

IN DETROIT, AS **SPIRIT** PLAYS THE LEGENDARY "GRANDE BALLROOM"!!!

(OPENING ACT: JETHRO TULL)

WHILE THE IMAGES AND SOUND MAY BE SUBSTANDARD, I HOPE THE

GOOD MEMORIES WILL MORE THAN MAKE UP FOR IT!!

THE SET LIST

1. FOG  (2:50)

2. ALL THE SAME  (5:04)

3. FRESH GARBAGE  (4:37)

4. APPLE ORCHARD  (3:39)

5. MECHANICAL WORLD  (6:11) (CUT)

6. AREN'T YOU GLAD  (2:59) (CUT)
   NOTE: FROM INFERIOR SOURCE TO REST

7. UNCLE JACK  (3:00)

8. NEW DOPE IN TOWN  (2:46)

9. IT SHALL BE  (3:17)

10. POOR RICHARD  (2:07)

11. DARLIN' IF  (4:59)

12. I GOT A LINE ON YOU  (1:42) (CUT)

13. ELIJAH  (22:22) (CUT)

TOTAL  (65:42)

BROUGHT TO YOU IN LIVING MONO BY BRUCE PATES "PRODUCTIONS"!!
HAPPY HOLIDAYS!!!!

**EXHIBIT 20**
**226**

EXHIBIT  352
WIT: Andes
DATE: 1-15-16
DAYNA HESTER, CSR 9970

629

# EXHIBIT 21

SPIRIT

1. NATURE'S WAY
2. IT'S ALL THE SAME
3. FRESH GARBAGE
4. PRELUDE: NOTHING TO HIDE
5. MR. SKIN
6. STREET WORM
7. FOG/DRUM SOLO
8. MECHANICAL WORLD
9. I GOT A LINE ON YOU

# SPIRIT

"THE FORUM"

LOS ANGELES, CA

December 12, 1970

Opening for THE
MOODY BLUES

**EXHIBIT 21**
227

EXHIBIT 306
WIT: Ferguson
DATE: 12-1-16
DAYNA HESTER, CSR 9970

631

52X 700 MB Data
80 min Music

Spirit

The Forum

CD-R

# SPIRIT

"MAMMOTH GARDENS"

DENVER, CO

JUNE 5 OR 6, 1970

## SPIRIT

1. THE DECISION (?)
2. SWEET STELLA BABY
3. 1984
4. IT'S ALL THE SAME
5. FRESH GARBAGE
6. UNKNOWN INSTRUMENTAL
7. JEALOUS
8. IT SHALL BE
9. POOR RICHARD
10. GROUNDHOG (CUT)





EXHIBIT 307
WIT: Ferguson
DATE: 1-13-16
DAYNA HESTER, CSR 9970

**EXHIBIT 21**
**228**

632

# SPIRIT

UNKNOWN VENUE

CINCINNATI, OH

LATE 1970

OPENING FOR ??

## SPIRIT

1. PRELUDE: NOTHING TO HIDE
2. MR. SKIN
3. IT'S ALL THE SAME
4. FRESH GARBAGE
5. STREET WORM
6. FOG/ DRUM SOLO
7. MECHANICAL WORLD
8. I GOT A LINE ON YOU



EXHIBIT 308
WIT: Ferguson
DATE: 1-13-16
DAYNA HESTER, CSR 9970



**EXHIBIT 21**
**229**

633

# SPIRIT

"WHISKY A GO GO"

HOLLYWOOD, CA

OCT. 31 OR

NOV. 1 OR 2, 1968

### SPIRIT

1. IT'S ALL THE SAME
2. FRESH GARBAGE
3. NEW DOPE IN TOWN
4. APPLE ORCHARD
5. WATER WOMAN
6. TUNJI



EXHIBIT 309
WIT: Ferguson
DATE: 1-13-16
DAYNA HESTER, CSR 9970



**EXHIBIT 21**
230

634

# SPIRIT

**"GRANDE BALLROOM"**

DETROIT, MI

FEB. 1, 1969

## SPIRIT

1. FOG  (2:50)
2. ALL THE SAME  (5:04)
3. FRESH GARBAGE  (4:37)
4. APPLE ORCHARD  (3:39)
5. MECHANICAL WORLD  (6:11) (CUT)
6. AREN'T YOU GLAD  (2:59) (CUT)
7. UNCLE JACK  (3:00)
8. NEW DOPE IN TOWN  (2:46)
9. IT SHALL BE  (3:17)
10. POOR RICHARD  (2:07)
11. DARLIN' IF  (4:59)
12. I GOT A LINE ON YOU (1:42) (CUT)
13. ELIJAH  (22:22) (CUT)

TOTAL TIME  (65:42)

EXHIBIT 310
WIT: Ferguson
DATE: 1-13-16
DAYNA HESTER, CSR 9970



**EXHIBIT 21**
**231**

635

# SPIRIT

"CIVIC CENTER"

BALTIMORE, MD

OCTOBER 3 ,1969

OPENING FOR
IRON BUTTERFLY

SPIRIT

1. IT'S ALL THE SAME
2. FRESH GARBAGE
3. JEALOUS
4. GROUNDHOG (MOSTLY CUT)
5. DARK EYED WOMAN (CUT)
6. UNKNOWN SONG
   SOUNDS LIKE EITHER JAY OR
   RANDY INTRODUCES IT AS
   SOMETHING THEY WROTE WITH
   JOHN, BUT IT'S NOT UNDERSTANDABLE.
   STARTS OUT LIKE A JOHN INST.,
   THEN 1-2, IT'S GOES COUNTRY!
7. MECHANCIAL WORLD
8. I GOT A LINE ON YOU (CUT)
TRACK ONE - VOLUME RISES AT APPROX.
50 SEC., AND DROPS FOR 15 SEC. AT 4 MIN.



EXHIBIT 311
WIT: Ferguson
DATE: 1-13-16
DAYNA HESTER, CSR 9970



**EXHIBIT 21**
232

636

# SPIRIT

"CENTER ARENA"

SEATTLE, WA

MAY 22, 1970

APPEARING IN THE MIDDLE SLOT
WITH STEPPENWOLF HEADLINING,
AND BLUES IMAGE OPENING.

## SPIRIT

1. SWEET STELLA BABY
2. 1984
3. IT'S ALL THE SAME
4. FRESH GARBAGE
5. UNKNOWN INSTRUMENTAL
6. JEALOUS
7. IT SHALL BE
8. POOR RICHARD
9. MR. SKIN
10. POLICEMAN'S BALL
11. AREN'T YOU GLAD
12. DRUM SOLO
13. MECHANICAL WORLD
14. I GOT A LINE ON YOU



EXHIBIT 312
WIT: Ferguson
DATE: 1-13-16
DAYNA HESTER, CSR 9970



**EXHIBIT 21**
233

637

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

```
MICHAEL SKIDMORE          :   CIVIL ACTION
As Trustee for the        :   NO. 14-CV-3089
Randy Craig Wolfe Trust   :
                          :
          Plaintiff       :
                          :
     vs.                  :   Philadelphia, Pennsylvania
                          :        February 4, 2015
LED ZEPPELIN, et al.      :
                          :
          Defendants      :   ORAL ARGUMENTS HEARING
```
- - - - - - - - - - - - - - - - - - - - - - - - - - -

- - -

BEFORE THE HONORABLE JUAN R. SANCHEZ
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiff:      FRANCIS MALOFIY, ESQUIRE
                        FRANCIS ALEXANDER, LLC
                        280 North Providence Road
                        Suite 105
                        Media, Pennsylvania  19063

For the Defendants:     PETER J. ANDERSON, ESQUIRE
                        100 Wilshire Blvd., Suite 2010
                        Santa Monica, California  90401
                        For Super Hype Publishing, Inc.

                        HELENE M. FREEMAN, ESQUIRE
                        PHILLIPS NIZER, LLP
                        666 Fifth Avenue
                        New York, New York  10103
                        For James Patrick Page, Robert A.
                        Plant and John P. Jones

                        MATTHEW S. OLESH, ESQUIRE
                        FOX ROTHSCHILD, LLP
                        2000 Market Street, 20th Floor
                        Philadelphia, Pennsylvania  19103
                        For James Patrick Page

- - -

**EXHIBIT 26**
**242**

638

1   commercial purposes as far as advertisers and things like that.

2   And they've kept a close guard on the song, itself.

3         But there's multiple revenue streams, not just ticket

4   sales, CDs sales, tape sales, merchandising, even when it's

5   played on the radio, but there's all sorts of streams of

6   infringing time done, where -- ah --

7         THE COURT:  But it seems to me, that most of -- you --

8   you keep throwing these infringing acts all relating to sales.

9   But I want to know, specifically, what is the song, the

10  performance, what in specific --

11        MR. MALOFIY:  Well, I think as --

12        THE COURT:  -- is the infringement act?

13        MR. MALOFIY:  -- I think with this case, it's a

14  copyright case, so it's an issue of the authorship of the song,

15  itself.  Here, a copyright determines ownership.

16        And I know there was some argument that, oh, whether or

17  not -- ah -- Mr. Randy C. Wolfe or his trust is -- is an owner.

18  He's by virtue of the Copyright Act, a beneficial owner and he's

19  intended to bring these causes of action.  And that's a very

20  important point to not overlook, is that, because he is a

21  beneficial owner, he can bring these causes of action.

22        The fact that the song's composition was improperly

23  used -- as we alleged as plaintiff -- it means that, not only is

24  the sale of the CD infringing, but also the underlying

25  composition, because the underlying composition was used to

**EXHIBIT 26**
**243**

639

68

1    witness?

2              MR. MALOFIY:  Paits would be a fact witness.

3              THE COURT:  And what would he testify about?

4              MR. MALOFIY:  About historical aspects of the band,

5    being there, collecting their history, knowing about what was

6    played, when was it played.  Ah, what songs -- ah -- when things

7    were written.  He was very much a part of the band all the way

8    through day one till today.

9              THE COURT:  Why are the trust books and records in

10   Philadelphia?

11             MR. MALOFIY:  Well, there's two reasons, they're both

12   in Philadelphia and in Massachusetts, because the trust is -- it

13   operates out of Massachusetts, it operates on the East Coast.

14             Because of that and because I also represent the trust,

15   I have, of course, had to go through, before filing the

16   complaint, all the trust documents to make sure that everything

17   is -- is -- is -- ah -- there's no issues with the trust and that

18   the claim could be validly brought as a beneficial owner.

19             THE COURT:  Very well.

20             You argue that California law is irrelevant to this

21   action --

22             MR. MALOFIY:  Yes.

23             THE COURT:  -- copyright action.

24             They seem to be suggesting that because Randy Craig

25   Wolfe's claim of ownership of the copyright to "Taurus" depends

**EXHIBIT 26**
**244**

640

1   on the invalidity of the agreements, he signed with Hollenbeck

2   Music and/or Records, California may play some role in the case,

3   that seems to be their position.

4          My question is, if an issue is raised in this case as

5   to who owns the copyright to "Taurus", is that issue governed by

6   part of -- in part -- by California law and -- and if so,

7   explain?

8          MR. MALOFIY:  No, I don't think so at all, it's all by

9   copyright law, ah, who owns the authorship of -- of "Taurus"

10   would be copyright law.

11          That the trust -- and it's undisputed that the trust is

12   the beneficial owner and has all of the copyrights, a hundred

13   percent of the copyrights, a hundred percent of all interests --

14   intellectual property -- of Randy Wolfe.

15          Here, an argument was made that, oh, because Hollenbeck

16   Music or -- ah -- Lou Adler is in California, that this is an

17   issue.  I don't see this as an issue at all.  It might change

18   plaintiff's damages in the end.  And that would be worked out

19   between myself or plaintiff and also, Hollenbeck Music.

20          But to be fair, because Hollenbeck Music and Lou Adler

21   had an interest -- or have an interest -- in the song, because

22   they do, it gets split, the revenue, ah, because of that what I

23   had done as I was required to do by law, is cert -- send them a

24   certified mailing showing him the complaint, showing him the

25   allegations.  And I wrote a letter to him, parsing out the

**EXHIBIT 26**
245

641

1    issues.

2            And I spoke to his associate, Howard Frank even before

3    the filing of the lawsuit.  And I spoke to -- and I -- I

4    corresponded with his -- with him -- and his -- ah -- music

5    group.

6            And they have not claimed that there is any issue with

7    -- they have not claimed that Pennsylvania is in -- that it's

8    inconvenient.  They have not claimed that even -- have not even

9    raised any motion, petition or filing with the Court as to the

10   complaint or any of the allegations in the complaint.

11           So, from the perspective of Hollenbeck Music and Lou

12   Adler, he's done nothing to address the complaint or even claimed

13   that this is an inconvenient forum or this is not a proper forum

14   or that the allegations are untrue or even as an -- having an

15   interest in the potential song -- or excuse me -- interest in the

16   song, "Taurus" and a potential interest in the song, Led Zeppelin

17   -- excuse me -- "Stairway to Heaven", he has not filed anything

18   with this Court.

19           So, the representations of counsel about, this issue is

20   really a non-issue, whatsoever.  And it was an issue, it would

21   have been raised by that individual.

22           That's --

23           THE COURT:  Very well.

24           MR. MALOFIY:  -- that's the best way, I can address

25   that issue.

**EXHIBIT 26**
246

642

1          But no, it's not an issue here before us, whatsoever.

2     Plaintiff has full standing as a beneficial owner to bring this

3     claim.  And absolutely, is the author of "Taurus" --

4               THE COURT:  Right.  If --

5               MR. MALOFIY:  -- undisputed.

6               THE COURT:  -- if I find personal jurisdiction in

7     lacking as to all defendants, does the plaintiff -- is the

8     plaintiff asking me to dismiss the case or transfer it as to all

9     defendants -- dismiss or transfer?

10              MR. MALOFIY:  Ah, we would --

11              THE COURT:  If I find personal --

12              MR. MALOFIY:  -- we would ask -- we would ask two

13    things.

14          One is jurisdictional discovery, two would be, I think,

15    if the Court -- and this is, you know, I believe that clearly

16    plaintiff believes that there is jurisdiction here -- if the

17    Court finds -- finds differently, then it's plaintiff's position

18    that, well, California is definitely not the appropriate forum,

19    it would be New York --

20              THE COURT:  All right.

21              MR. MALOFIY:  -- because New York is closer to -- ah --

22    closer to Boston, Massachusetts, closer to the trustee.  And it

23    wouldn't put the plaintiff out of litigation.  But also it's the

24    headquarters of the defendants, where they've litigated before

25    and where they were -- where personal jurisdiction was found for

**EXHIBIT 26**
**247**

643

90

```
1              THE COURT:  Thank you.

2              ESR OPERATOR:  All rise.

3              (Adjourned in this matter at 3:46 p.m.)

4                              *  *  *
```

I N D E X

| DEFENDANT EXHIBITS | IDENTIFIED | EVIDENCE |
|---|---|---|
| D-1    Jimmy Page Book | 87 | – |
| D-2    Led Zeppelin CDs | 88 | – |

*  *  *


C E R T I F I C A T E

        I do hereby certify that the foregoing is a correct
transcript of the electronic-sound recording of the
proceedings in the above-entitled matter.


_____              Date: February 8, 2014
Gail Drummond
28 8th Avenue
Haddon Heights, New Jersey  08035
(856) 546-6270

**EXHIBIT 26**
**248**

644

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2017, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that at least one of the counsel for each participant in the case is a registered CM/ECF user.

Dated: June 2, 2017                      _____/s/ Peter J. Anderson_____
                                          PETER J. ANDERSON