# United States Court of Appeals
# For the Ninth Circuit

## No. 16-56057; 16-56287

---

### Skidmore et al.

*Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Plaintiff-Appellant/Cross Appellee*

v.

### Led Zeppelin et al.

*Defendants-Appellees*

and

### Warner/Chappell Music, Inc.
*Defendant, Cross Appellant*

---

# Skidmore's Combined Reply Brief and Opening Brief Responding to Defendant's Costs and Fees Appeal

---

(Music copyright infringement, on appeal from the final Order dated June 23, 2016 of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California.  The case was docketed in the Central District at 15-cv-03462)

---

**Francis Alexander, LLC**
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Michael Skidmore*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................. 5

INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................... 7

REQUEST FOR ORAL ARGUMENT .................................... 12

PART I - ARGUMENT ON REPLY ................................... 13

    1.    The 1909 Copyright Act and the Case Law Do Not Limit the Scope of a Musical Copyright's Composition to Written Sheet Music ............... 13

        a.    Plaintiff's Opening Argument and Defendants' Response ............... 13

        b.    Plaintiff's Reply on Why Recordings of a Song May Be Used to Establish the Composition of Songs and Why The 1909 Copyright Act Does Not Limit the Protected Composition of a Song to Sheet Music ............................................. 17

            i.    Defendants' Response Fails to Explain why Recordings of a Song Cannot be Used to Establish the Composition of the Song Under the 1909 Act ......................... 17

            ii.    Plaintiff Has Clearly Shown Why Sections 11-12 Do Not Control or Define the Scope of Protected Expression in a Musical Composition ............... 21

        c.    The Ninth Circuit and Sixth Circuit Have Previously Ruled That Album Recordings May Be Used to Establish the Composition of a Song Copyrighted under the 1909 Act .................. 24

        d.    Plaintiff and Future Litigants Will Suffer Severe Consequences if the Lower Court's Decision Restricting the Substantial Similarity Comparison is Affirmed ................................ 28

    2.    The Court Should have Permitted Plaintiff to Present Expert Testimony that the Composition in the "Taurus" Album Recording was Embodied in the Deposit Sheet Music Composition of "Taurus", as the Plaintiff was Allowed to Do in Williams ...................... 29

    3.    Plaintiff Demonstrated in His Opening Brief Through Expert Testimony, Expert Reports, and Audio Exhibits that the Album Composition of "Taurus" was "Identical" to "Stairway to Heaven" Whereas the Deposit Copy was Merely "Substantially Similar" ........................... 31

    4.    Plaintiff Has Never Attempted to Claim a Sound Recording Copyright Exists or was Copied; Defendants' Argument to the

Contrary is Nonsensical .................................................................... 36

5.  Plaintiff Proved a High Degree of Access at Trial and Requested an
    Inverse Ratio Rule Instruction; The Lower Court Erroneously Refused
    to Give the Instruction and Caused Plaintiff Severe Prejudice ................. 38

    a.  The Jury Found that Defendants had Access to "Taurus" Because
        Plaintiff Proved a High Degree of Access with both Direct
        and Circumstantial Evidence ......................................................... 39

    b.  There is No Case Which Limits the Applicability of an Inverse Ratio Rule
        Jury Instruction to Cases with "High Degrees" of Access ................ 41

6.  Plaintiff Explicitly Complied with Central District L.R. 51, the
    Prescribed Method for Preserving Exceptions to Jury Instructions, and
    the Trial Court Acknowledged that All Exceptions and Objections
    were Preserved; Defendants' Argument that Plaintiff Waived these
    Objections is Disingenuous .................................................................. 43

7.  Plaintiff Did Not Waive Any Claim of Error Regarding the Court's
    Failure to Instruct the Jury that Combinations and Arrangements of
    Musical Elements are Copyrightable; This Erroneous Omission was
    Highly Prejudicial ............................................................................... 45

8.  The Originality Instruction Given by the Court was Inadequate, Not
    Legally Correct, and Severely Harmed Plaintiff's Case; Plaintiff Did
    Not Waive this Objection as Defendants Erroneously Claim .................... 49

    a.  Plaintiff Suffered Severe Harm Due to the Incorrect
        Instruction on Originality ............................................................. 49

    b.  Plaintiff Did Not Waive any Objection to the Erroneous
        Originality Instruction and In Fact Explicitly Preserved that
        Objection in Writing ................................................................... 50

9.  During Jury Deliberations the Jury's Final Question was to Hear
    Plaintiff's Audio of "Taurus"—The Court Ordered An Irrelevant
    Version of "Taurus" To Be Played, Which Seriously Prejudiced
    Plaintiff By Ending the Case; Plaintiff Specifically Objected and
    Did Not Waive this Error .................................................................... 53

10. The Ten-Hour Time Limit Placed on Plaintiff Severely Hindered His
    Ability to Prove Substantial Similarity and Abused the Court's
    Discretion; This Objection was Explicitly Preserved and Not Waived ....... 56

11.     Dr. Lawrence Ferrara's Testimony Should Have Been Precluded for Failing to Disclose that He Had Been Previously Hired by Plaintiff's Publisher to Compare "Taurus" and "Stairway to Heaven" ................... 59

PART II - PLAINTIFF'S RESPONSE BRIEF TO DEFENDANT'S COSTS AND FEES APPEAL ........................................................................ 63

1.     Defendant Erroneously and Disingenuously Claims the Trial Court Failed to Consider the Purpose of the Copyright Act when Denying their Costs and Fees Motion ................................................. 63

2.     The District Court's Opinion was Correct and Did Not Abuse Its Discretion ........................................................................ 65

3.     Defendants Spuriously Argue that the Trial Court Erred Because, In their Mind, the Musical Expression in "Taurus" was Unprotected and the Lawsuit was Unreasonable; This Argument Fails Because Defendants Failed to Preserve this Claim of Error and are Improperly Asking this Circuit to Resolve a Dispute of Fact between Musical Experts ........................................................................ 69

        a.     The Court Properly Found that there was a Dispute of Fact Between the Opposing Experts Over the Protectability of "Taurus" and its Substantial Similarity to "Stairway to Heaven" ................. 70

        b.     Defendants Ignore that There Were Novel Issues of Law At Play Which Precluded a Finding that Plaintiff's Lawsuit was Unreasonable or Frivolous ................................... 72

        c.     Defendant Waived any Reasonableness/Frivolousness Argument by Failing to Appeal the Underlying Rulings, Failing to Develop this Point in the Costs and Fees Motion, and By Failing to Develop this Argument in its Opening Brief ........ 75

4.     Defendant's Litigation Misconduct Argument Does Not Make Sense ....... 78

CONCLUSION .......................................................................... 81

STATEMENT OF RELATED CASES .................................................. 82

CERTIFICATE OF COMPLIANCE .................................................. 83

# Table of Authorities

## Cases

ABKCO Music, Inc. v. LaVere, 217 F. 3d 684 (9th Cir. 2000) ............................... 17, 19

Berkla v. Corel Corp., 302 F.3d 909, 922 (9th Cir. 2002) ...........................................65

Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 276
(6th Cir. 2009) ..................................................................... 1, 20-28, 37

Chaidez v. US, 133 S. Ct. 1103, 1108 (2013) ........................................... 80

Chambers v. Mississippi, 410 US 284, 304 (1973) .................................................76-77

Fantasy, Inc. v. Fogerty, 94 F.3d 553, 558 (9th Cir. 1996) ........................................ 66

Fogerty v. Fantasy, Inc., 510 US 517, 526 (1994) ................................................. 64-66

Goldstein v. California, 412 US 546 (1973) .............................................. 14, 20-23, 37

Inhale, Inc. v. Starbuzz Tobacco, Inc., 75 F.3d 1038, 1042-43 (9th Cir. 2014) .................67

Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners, 921
F.2d 122, 124-25, n. 1 (7th Cir.1990) ...................................................................77

Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1989 (2016) .................65, 69, 79-80

Lieb v. Topstone Indus., 788 F.2d 151, 156 (3d. Cir. 1986) ........................................ 66

Los Angeles Memorial Coliseum Com'n v. NFL, 726 F. 2d 1381, 1398 (9th Cir. 1984).. 48, 50

Lotus Development Corp. v. Borland International, 140 F.3d 70, 75 (1st Cir. 1998)............67

Montclair v. Ramsdell, 107 U. S. 147, 152 (1883) .................................................... 23

Monotype Corp., PLC v. Int'l Typeface Corp., 43 F.3d 443, 451 (9th Cir.1994) .............. 80

National Conference of Bar Examiners v. Multistate Legal Studies, 692 F. 478 (7th Cir.
1982).......................................................................................... 17, 21, 22

Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002) ..........................24, 38

Perfect 10, Inc. v. Visa Int'l Ass'n, Inc., 2005 WL 2007932 at *4
(N.D. Cal. Aug. 12, 2005) .............................................................................67

<u>Perfect 10, Inc. v. Ccbill LLC</u>, 488 F.3d 1102, 1120 (9th Cir. 2007) ................................ 67

<u>Rice v. Fox Broadcasting Co.</u>, 330 F. 3d 1170 (9th Cir. 2003) ................................... 41, 42

<u>Seltzer v. Green Day</u>, 725 F.3d 1170, 1180 (9th Cir. 1980) ............................... 65-67, 70

<u>Smith v. Marsh</u>, 194 F.3d 1045, 1052 (9th Cir. 1999) ................................................. 78

<u>Smith v. Barry</u>, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) ..................... 76

<u>SOFA Entm't, Inc. v. Dodger Prods., Inc.</u>, 709 F.3d 1273, 1280 (9th Cir. 2013) .......... 70-75

<u>Swirsky v. Carey</u>, 376 F.3d 841, 849 (9th Cir. 2004) ............................................. et seq.

<u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477 (9th Cir. 2000) ........................... et seq.

<u>United States v. Menasche</u>, 348 US 528, 538-39 (1955) ............................................ 23

<u>US v. WR Grace</u>, 504 F.3d 745 (2007) ................................................................. 21

<u>Viva Video, Inc. v. Cabrera</u>, 9 Fed.Appx. 77, 80 (C.A.2 2001) ..................................... 79

<u>Washingtonian Publ'g Co. v. Pearson</u>, 306 U.S. 30, 41 (1939) ................................... 15

<u>White-Smith Music Publ'g Co. v. Apollo Co.</u>, 209 U.S. 1, 10-11 (1908) .................... 14, 29

## Statutes and Rules

Copyright Act of 1909, 35 Stat. 1075 (1909) (repealed 1978), §§ 1(e), 3, 11, 12 ................ et seq.

Copyright Act of 1831 (repealed 1909) ...................................................... 13, 14, 18

FRCP 51 ................................................................................................. 43

FRCP 61 ................................................................................................. 80

Fed. Rule of Evidence 403 ............................................................................ 20

FRAP 3 .................................................................................................. 76

Central Dist. Of Cali. L.R. 51 ................................................................. 43-45, 51-52

# Introduction and Summary of Arguments

Plaintiff-Appellant[1], Michael Skidmore, submits this Combined Reply Brief and Opening Brief Responding to Defendant's Costs and Fees Appeal.

- Part I – is Plaintiff Reply Brief in support of his appeal of the jury verdict in favor of Defendants and against Plaintiff.
- Part II – is Plaintiff Response Brief opposing Defendant Warner/Chappell's claim that the trial court erred in denying the defendant its attorney's fees and costs.

**First,** Plaintiff Skidmore's primary argument on appeal is that a recording of a song, which contains and embodies the composition of the song, is admissible to prove the protected composition of a musical work under the 1909 Copyright Act. Plaintiff also argues that nothing in the 1909 Act limits the **scope of protected expression** in a musical copyright to sheet music alone. In the underlying case, the district court limited the substantial similarity comparison to between the incomplete deposit copy sheet music of "Taurus" and "Stairway to Heaven"—to the exclusion of all other evidence of the composition in the original, full "Taurus" album composition which was owned and possessed by Defendant James Patrick Page in his record collection.

---

[1] For purposes of clarity, because this Brief is both a Plaintiff-Appellant's Reply Brief and a Plaintiff-Cross Appellee's Response Brief to Defendant-Appellant's Appeal, counsel has chosen to primarily identify the parties according to their respective position in the district court: "Plaintiff" or "Defendant."

Plaintiff's Reply demonstrates that Defendants' argument claiming that the district court was correct to limit the scope of protected expression to only the exact notes on the deposit copy lead sheet—to the exclusion of all other relevant and competent evidence such as the "Taurus" album composition and recording—is an egregious error of substantive and evidentiary law that warrants reversal. There is **no case in 108 years** since 1909 Act became law which holds that the deposit copy lead sheet substantively governs the scope of protected scope of expression in a musical work (except the Central District of California <u>Williams v. Bridgeport</u> case in 2014, a ruling which is currently on appeal). Further, there is no case in history that has held that a recording of a song—which contains a copy of the song's composition—cannot be used as evidence to establish the composition of a musical work under the 1909 Act.

Plaintiff's Reply further demonstrates that Defendant's Response is fundamentally flawed in alleging that no harm resulted from the use of the incomplete deposit copy composition versus the complete album composition of "Taurus" that was kept in defendant Jimmy Page's record collection. Plaintiff demonstrated severe prejudice in the opening brief by identifying the key compositional element shared by "Taurus" and "Stairway to Heaven" (guitar melody) which only partially appears in the "Taurus" deposit copy lead sheet; by

presenting recordings of all the compositions at issue to this circuit for comparison; and by presenting Plaintiff's expert opinions that the composition of the album version of "Taurus" is "identical" to "Stairway to Heaven," while the deposit copy is merely "substantially similar."

Lastly, contrary to Defendants' silly, unsupported, and blatantly false argument that Plaintiff is attempting to sue over a "sound recording copyright," Plaintiff has ***never*** made nor lodged a claim over any "sound recording copyright."

**Second,** Plaintiff correctly argues that the Court's failure to give an inverse ratio rule instruction was reversible error—especially in light of the fact that Plaintiff proved direct access and presented abundant evidence at trial to support this factual position. It was highly prejudicial that the jury did not know that Plaintiff's burden to prove substantial similarity should have been lowered by the amount of access he could prove. Defendants' response claims that the court properly declined to give an inverse ratio instruction because it was necessary for Plaintiff to provide a "high degree" of access—*something Plaintiff did.* Plaintiff's reply details how he proved a high degree of access with direct and circumstantial evidence, namely demonstrating that defendant James Patrick Page owns "Taurus" in his record collection. Furthermore, there is no legal requirement that there must be a "high degree" of access proven before an inverse ratio instruction is given; it should be given

whenever there is a triable issue of fact on access and substantial similarity.

**Third**, Plaintiff argues that the court failed to instruct the jury on the protectability of combinations of musical elements, and also misdefined originality in the jury instructions. Plaintiff argues that these errors seriously prejudiced his case because the Court erroneously instructed the jury that much of his experts' testimony on what was protectable in "Taurus", and similar to "Stairway to Heaven," could be disregarded. Defendants disingenuously respond that Plaintiff waived the issues and that he suffered no harmful error. Plaintiff's reply clearly demonstrates that he preserved his claims of error by complying with L.R. 51 and the Court's on-the-record verbal instructions. Moreover, Plaintiff detailed the exact expert testimony and musical elements that were undermined by the Court's deficient instructions.

## <u>Plaintiff's Response in Opposition to Defendant's Cost and Fees Appeal</u>

An award or denial of costs and fees is reviewed for an abuse of discretion. Here, Defendant Warner/Chappell has not identified any valid reasons why the Court's decision to deny costs and fees was an abuse of discretion or that any errors, if committed, constitute harmful error. The trial court denied Defendant's motion because this was a "hard-fought" case indisputably "motivated by a desire to recognize Randy California's musical contribution." Supp. Excerpt 7.

**First,** Defendant erroneously and disingenuously claims that the trial court failed to consider the purpose of the Copyright Act when denying its costs and fees motion. This contradicts the fact that the Court analyzed every factor under the Fogerty test (and also took into account additional considerations suggested by Defendants), which is designed to help courts evaluate whether litigation comported with the Copyright Act's goals. Moreover, the trial court's opinion explicitly stated that it was rendered "in light of the Copyright Act's essential goals."

**Second,** the district court was correct in its denial of its award of costs and fees as the opinion was well reasoned, legally correct, and did not abuse its discretion. Defendant spuriously argues that Plaintiff's lawsuit was frivolous and objectively unreasonable on substantial similarity. The district court's opinion, however, explained that Plaintiff's substantial similarity arguments were reasonable and that this was the reason the court **denied Defendants' summary judgment motion** and allowed a jury trial in the first place. In addition, **Defendants' waived this issue** at every stage of the litigation. Defendants did not appeal the summary judgment ruling which they now claim was incorrect, which held that there was a dispute of fact for the jury on substantial similarity. That summary judgment ruling is law of the case and cannot be disturbed. Moreover, Defendant never made or developed these

arguments in its motion for costs and fees; Defendant cannot make an argument to this Circuit they did not develop below.

**Third**, Defendants wrongly claim that the Court somehow erred in weighing the argument that Plaintiff's counsel, not Plaintiff, had allegedly committed litigation misconduct. What Defendant ignores is that the Court counted this factor in favor of Defendant (which Plaintiff vehemently disagrees with), but ***still found*** that fees were ***not*** appropriate. The Supreme Court and Ninth Circuit have explicitly held that a district court may weigh a broad range of considerations when determining whether assessing costs and fees are warranted and that there is no precise formula to be followed. Here, the district court's opinion methodically steps through each of Defendant's arguments and reasonably concludes that an award of costs and fees does not satisfy the goals of the Copyright Act. There was no abuse of discretion.

## Request for Oral Argument

Plaintiff-Appellant respectfully requests oral argument from this Honorable Court and affirms that he believes that oral argument would prove helpful in resolving these appeals and the issues raised herein because they are not only complicated, but the resulting appellate court decision could affect many copyrighted works under the 1909 Copyright Act and future litigants.

Plaintiff observes that oral argument is scheduled for <u>Williams v. Bridgeport Music</u> (15-56880) on October 7, 2017. As the deposit copy issue is front-and-center, and the main issue on appeal in both matters, and because a decision in the <u>Williams</u> case will have a substantial effect on Plaintiff's appeal and on copyright law moving forward, Plaintiff respectfully requests that this Circuit withhold its decision on <u>Williams</u> until oral argument has been heard on both cases.

## Part I - Reply Arguments

**1.** **The 1909 Copyright Act and the Case Law Do Not Limit the Scope of a Musical Copyright's Composition to Written Sheet Music**

### a. **Plaintiff's Opening Argument and Defendants' Response**

Plaintiff's opening brief advocated that the 1909 Copyright Act does not limit the scope of protected musical expression in a work to only written sheet music. Plt. Brief, at p.28-42. Plaintiff's brief explained that a musical work under the 1909 Act first obtained common law copyright protection the moment it was created and then became a federal copyright once published or registered. <u>Id.</u> at 31. Plaintiff also provided key background showing that the 1909 Act was enacted in a push by Congress to expand the protections of musical works beyond sheet music. <u>Id.</u> at p.30-31.

The Supreme Court ruled in 1908 that the 1831 Copyright Act only allowed

an author to protect from copying a musical composition placed in sheet music, not musical compositions placed on piano rolls. See White-Smith Music Publ'g Co. v. Apollo Co., 209 U.S. 1, 10-11 (1908) (holding that the only musical expression protected under 1831 Copyright Act was sheet music and inviting Congress to expand scope of protection). It should be noted that in 1831 there was no way, other than sheet music, to fix a musical composition in tangible form, nor was there any real way to introduce evidence of a song's musical composition other than sheet music.[2]

Thus, given the advancements in technology since 1831, in 1909 Congress accepted the Supreme Court's invitation and made it clear in section 1(e) of the 1909 Copyright Act that an author would be able to protect a musical composition fixed by mechanical reproduction (like piano roll or record), in addition to sheet music:

> [a musical composition may be fixed in] any system of notation or any form of record in which the thought of an author might be recorded and from which it may be read or reproduced.

1909 Act, § 1(e).

This meant the author/owner could now protect compositions contained on piano rolls and records from copying, as well as sheet music. Goldstein v. California, 412 US 546 (1973) (stating that "under § 1 (e), records and piano rolls were to be

---

[2] The piano roll was not invented until, at the earliest, 1863, and the phonograph/gramophone was not invented until 1877.

considered as 'copies' of the original composition they were capable of reproducing"). Consequently, it necessarily follows that because piano rolls and recordings are copies of musical compositions, they are evidence of a song's composition. See Plt. Brief, at p.37.

All of this indicates that Congress intended, and the Courts understood, that the scope of copyright protection in a musical composition was not limited to sheet music under the 1909 Act. Many, many songs, including "Taurus" and "Stairway to Heaven", were composed under the 1909 Act independent of sheet music. Id.

As an archival and record keeping requirement for songs being copyrighted, the 1909 Act required a sheet music copy be deposited with the copyright office. 1909 Copyright Act, at §11-12. The Supreme Court stated in 1939 that the deposit copy requirement under the 1909 Act is not connected to the "subject matter of protected works" and that "the requirement for deposit is not for the purpose of a permanent record of copyright publications and . . . such a record is not indispensable to the existence of the copyright." See Washingtonian Publ'g Co. v. Pearson, 306 U.S. 30, 39-41 (1939).

No court has ever held that sections 11-12 of the 1909 Act substantively define the scope of protected expression in a musical work (except two Central District of Cali. courts in 2014 (Williams) and 2016 (this case), and both decisions are being

appealed). Moreover, no court has ever held or observed that the scope of common law protection a copyright acquired upon creation could be somehow limited by federal registration. See 1909 Act, §3.

The district court nevertheless erroneously held that under the 1909 Act only the written deposit copy controlled the scope of protection of the composition in a song—to the exclusion of all other evidence of the song's composition. (Excerpt 73-74, 1865, 1866-67).

Plaintiff demonstrated in the opening brief on pages 37-38 that, contrary to the District Court's decision, that there are several appellate cases from across the nation, including the Ninth Circuit, where the Circuit courts have allowed the protected composition of a song copyrighted under the 1909 Act to be established by reference to recordings of the song which contain a copy of the underlying musical composition. The defendants in those cases contended that only the written deposit lead sheet should be used. See Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000); Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 276 (6th Cir. 2009) (observing that deposit copy sheet music could be disregarded when the song's composition was "embedded in the sound recording" and the composition was created long before the deposit copy lead sheet); see also Pearson, 306 U.S. at 39-41; National Conference of Bar Examiners v. Multistate Legal Studies, 692 F. 2d

478 (7th Cir. 1982).

Defendants contend in response, in support of the trial court's erroneous decisions, that only the deposit copy sheet music is protectable composition under the 1909 Act because sections 11-12 state that a "complete" copy of the song should be submitted to the Copyright Office. Def. Brief, at p.43. Defendants also contend that the cases presented by Plaintiff showing that sections 11-12 do not prohibit recordings from being admissible to prove the composition of a song are distinguishable, specifically Three Boys Music, because they allegedly are only about jurisdiction. Def. Brief at p.45-46, 50. Defendants further claim that Plaintiff has not demonstrated that the incomplete composition on the deposit copy differs from the full album composition of "Taurus" owned by Jimmy Page. Id. at 36.

**b.  Plaintiff's Reply on Why Recordings of a Song May Be Used to Establish the Composition of Songs and Why The 1909 Copyright Act Does Not Limit the Protected Composition of a Song to Sheet Music**

**i.  Defendants' Response Fails to Explain why Recordings of a Song Cannot be Used to Establish the Composition of the Song Under the 1909 Act**

Plaintiff made the point on page 31 of his opening brief that "Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme." See ABKCO Music, Inc. v. LaVere, 217 F. 3d

684 (9th Cir. 2000). The full "Taurus" composition was created and in a final concrete form independent of sheet music in 1966 and was soon after included on Spirit's first album (which defendant Page owns). <u>See</u> Excerpt 2515; Excerpt 286; Audio Exhibits 32-39; Plaintiff's Brief at p.14. The deposit lead sheet of Taurus was later created in 1967 when the song was registered with the Copyright Office. Excerpt 2642.

There is no indication, anywhere, that the copyright protection an original composition received under common law, such as a musical composition placed on a record, was limited or circumscribed by conversion to federal copyright. In fact, the 1909 Act specifically states that "the copyright provided by this Act shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope such copyright." <u>See</u> 1909 Act, §3. The very idea that common law copyright could be shrunk by federal copyright is risible.

Defendants maintain in their response that section 1(e) only identified new technical forms in which compositions could be reproduced and protected, not that it expanded the scope of copyright protection. Def. Brief at, p.38-39. But this misses the point. When the 1831 Act was enacted, which preceded the 1909 Act, there was no way to fix or prove a musical composition—other than in or with sheet music.

Before the 1909 Act, the Supreme Court had taken the view that mechanical reproductions like piano rolls "did not constitute a 'copy' of a copyrighted musical composition because they were not written or printed in tangible form." ABKCO, 217 F. 3d at 688. Specifically, the Supreme Court believed "A musical composition is an intellectual creation which first exists in the mind of the composer; he may play it for the first time upon an instrument. It is not susceptible of being copied until it had been put in a form which others can see and read," which in its view was only sheet music not piano rolls. See White-Smith Music, 209 U.S. at 17. Thus, persons were free to reproduce the rolls and the author could do nothing because only compositions on sheet music were protected.

With the 1909 Act, Congress expanded the rights of authors/owners to prohibit the unauthorized copying of compositions included on records and piano rolls. Section 1(e) specifically states that an original musical composition can exist in "***any system of notation or any form of record*** in which the thought of an author might be recorded and from which it may be read or reproduced," making it clear that evidence of the content of a musical composition can and will extend beyond sheet music. 1909 Act, §1(e) (emphasis added). The 1909 Act thus made it clear that original compositions of songs could be embodied in mechanical records. See Goldstein, 412 U.S. at 564 (stating that records and piano rolls were to be considered

"'copies' of the original composition they were capable of reproducing.").

By acknowledging technological progression and providing that copies of musical composition could be embodied in mechanical reproductions like records, Congress definitively moved copyright law beyond sheet music. Note that many, many compositions were written under the 1909 Act completely independent of sheet music, including "Taurus" and "Stairway to Heaven." UMG Recordings, 585 F.3d at 276. Nothing in the act or case law states that a recording is not evidence of a song's composition, nor do they state the scope of composition is limited to sheet music.

**Logically, evidence of a musical composition can come from anywhere, especially a mechanical reproduction which contains a copy of the composition**. See Goldstein, 412 U.S. at 564. Indeed, the courts have routinely allowed recordings of songs, which contain the compositions of the songs, to prove the compositions of the songs. See Three Boys Music, *supra*; UMG Recordings, 585 F.3d at 276.[3]

---

[3] Defendants attempt to argue that it was proper to preclude the album recording because it could confuse and mislead the jury under FRE 403. Def. Brief at p.52-53. But the court *legally* erred when it precluded any evidence of "Taurus's" composition outside the deposit copy as inadmissible; it was not an evidentiary determination at the court's discretion. Whether the actual "Taurus" album recording itself should be played to the jury, as opposed to a re-recording of only the compositional elements in the "Taurus" album version, is a FRE 403 question to be addressed on remand. Moreover, the composition of "Taurus" in the recordings could have been admitted without admitting the actual sound recordings themselves.

Defendants are forced to admit that should a deposit copy be lost, then a court could use a recording to establish the composition of a song. See Def. Brief, at p.54. Yet, Defendants fail to acknowledge that if a recording is a copy of a song's composition in some instances, it must be considered evidence of a song's composition in other instances.[4] They cannot pick or chose.

> ## ii. Plaintiff Has Clearly Shown Why Sections 11-12 Do Not Control or Define the Scope of Protected Expression in a Musical Composition

Defendants argue that archival sections 11-12, which require a "complete" copy of a song to be submitted to the Copyright Office, control the substantive scope

---

US v. WR Grace, 504 F.3d 745, 763 (2007) (stating that experts "may rely on inadmissible evidence in forming an opinion or delivering testimony").

[4] Defendants claim that the deposit copy is "best evidence" of a song's composition and that recordings are secondary evidence. Def. Brief, at p.54. Setting aside that Defendants cite no case law for this proposition whatsoever, this argument begs the question in multiple respects. **First**, nothing in the 1909 Act or the century of following case law says that the deposit copy is best evidence of a song's composition. Many cases contradict such a notion. See Three Boys Music, *supra*; UMG Recording, *supra*; National Conference of Bar Examiners, *supra*. **Second**, the Supreme Court has held that a musical composition fixed in a record under section 1(e) is indeed a copy of a song's composition, placing it at least on equal status with the deposit copy. See Goldstein, *supra*. **Third**, the deposit copy is usually not complete as Plaintiff's expert observed (Excerpt 2516, 1788) and therefore may **not** be the best evidence a song's composition, especially when the song was composed without sheet music and the defendant did not hear the deposit copy—which is exactly the situation in this case. Jimmy Page indisputably only had access to the "Taurus" album recording, which contains the full composition of "Taurus"; he did not hear or see the incomplete deposit copy sitting in the Copyright Office.

of copyright protection under the 1909 Act. Def. Brief, at p.43. Defendants argue, and the District Court held, that because sections 11-12 state that a complete copy of a song must be submitted, that therefore this is the only protected expression in a song. Def. Brief, at p.43. However, Defendants never explain how sections 11-12, which have always been read by the courts as an non-substantive, jurisdictional, and archival requirement, can be read in a substantive manner.

**First**, Defendants have not cited any cases whatsoever where sections 11-12 are treated as having anything other than a jurisdictional and/or archival effect. Plt. Brief at p.35 n.3. This is a glaring omission. There are no cases (except the lower court's decision and the Williams decision in 2016 and 2014) where sections 11-12 are held to have any bearing on the **substantive** scope of protected expression in a music composition copyright. In contrast, there are many cases where the deposit copy has not limited the scope of protected expression in a musical composition. See Three Boys Music, 212 F.3d at 486-87; Bridgeport Music, Inc., 585 F.3d at 276 (observing that a song's composition could be "embedded in the sound recording," independent of any sheet music); see also Pearson, 306 U.S. at 39-41; National Conference of Bar Examiners, 692 F. 2d at 487.

**Second**, to hold that sections 11-12 define the scope of copyright protection in a work effectively negates the language in section 1(e). It is a basic premise of

statutory interpretation that a statute must be read to give effect to all sections the law. United States v. Menasche, 348 US 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute,' Montclair v. Ramsdell, 107 U. S. 147, 152, rather than to emasculate an entire section, as the Government′s interpretation requires."). Section 1(e), taking into account the advances in technology, states that a copy of original musical composition can exist in "any system of notation." Given the advances in technology many musical works were written and fixed under the 1909 Act independent of sheet music. See, e.g., UMG Recordings, *supra*. To limit the scope of composition to a deposit copy contradicts the basic purpose of section 1(e) to recognize the changing technology.

The Supreme Court has held that musical compositions, which section 1(e) authorizes to be mechanically fixed on a record, are protected copies of the song's composition. Goldstein, *supra*. Yet, the District Court's holding is stating that these mechanical reproductions are in fact not copies of the compositions because it believes that the only protected musical composition is on the deposit copy sheet music. This is an impermissible contradiction.

If a mechanical reproduction like a piano roll or recording contains a protected copy of the musical composition at issue, then it inexorably follows that the roll or recording is also admissible evidence of the protected expression in the musical

composition.

### c. The Ninth Circuit and Sixth Circuit Have Previously Ruled That Album Recordings May Be Used to Establish the Composition of a Song Copyrighted under the 1909 Act

Plaintiff noted in the opening brief that the Ninth Circuit has already de facto ruled that when a music composition copyright was challenged over an incomplete deposit copy that recordings may be used to establish the composition of the song. Three Boys Music, 212 F.3d at 486-87.[5] Other circuits have also made similar rulings. UMG Recordings, 585 F.3d at 276 (observing that a deposit lead sheet does not control scope of protected expression when the song's composition was "embedded in the sound recording" independent of any sheet music).

Defendants, and the lower court, claim that because the defendant in Three Boys Music made no objection to recordings being used to establish the composition

---

[5] Defendants claim that Plaintiff wants an amalgam of recorded versions of "Taurus" admitted to prove the song's composition. Def. Brief, at p.42. But this is not true; all of these recordings show that "Taurus" has *just one real composition*. Plaintiff wants to use the album composition, which Jimmy Page admitted he owned, plus several other live recordings, to prove to the jury what the protected composition of "Taurus" was, i.e., those parts of the song that appear consistently every time the song is played. See Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002); Plaintiff Brief at p.14, 29 (stating that recordings show "Taurus" in concrete and final form in early 1967, before deposit sheet music created and submitted to Copyright Office); Excerpt 2515 (stating that early 1967 live recordings of "Taurus" show composition already finalized; that composition was later fixed in the album version).

of the songs, and because the case was focused on jurisdiction, that the result must be different in this case. Def. Brief, at p.50; Excerpt 132. But this conclusory assertion is never developed—because it does not make sense.

**First**, Defendants tellingly ignore UMG Recordings, which explicitly addressed and easily rejected Defendants' position that the deposit sheet music limits or defines the scope of protected expression in a musical composition copyright.

**Second**, the defendant in Three Boys Music posed exactly the same objection/argument Defendants now raise:

> Bolton and Goldmark argue that in 1964 the Isley Brothers deposited sheet music ("deposit copy") of "Love is a Wonderful Thing" that differed from the recorded version of the song. Furthermore, **they claimed that the deposit copy does not include the majority of the musical elements that were part of the infringement claim**.

See Three Boys, 212 F.3d at 486 (emphasis added). The Court observed that:

> Although the 1909 Copyright Act requires the owner to deposit a ``complete copy'' of the work with the copyright office, our definition of a ``complete copy'' is broad and deferential: ``Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement.'' Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984) (citations omitted).

Id. at 486-87.

The Ninth Circuit then allowed the recording of "Love is a Wonderful Thing" to be admitted *as evidence of the musical composition of the song*; this recording was used by the expert musicologists on both sides to compare the songs. The fact of the matter is that in over 100 years of application of the 1909 Act, no one has seriously believed that sections 11-12 can restrict the substantial similarity comparison despite several defendants attempting to unsuccessfully raise the issue.

Setting aside that Three Boys Music is more proof that the deposit copy requirement has never been contemplated as substantive as opposed to jurisdictional by litigants or the courts, why should the jurisdictional analysis of the completeness of the deposit copy differ from the substantive analysis? Why should a recording of a song's composition not be used as evidence to establish the song's composition?

Plaintiff argued this to the district court at summary judgment and in the opening brief. Excerpt 2437 (stating "If the differences [between deposit copy and recorded version of "Taurus"] do not result in prejudice and are not the result of fraudulent intent, then the consideration of the composition in the sound recording is appropriate. Here, there is no prejudice and no fraud." [citation omitted]); Plt. Brief at p.35 n.3 (stating "regardless whether the requirement is jurisdictional, a precondition, or substantive, it is a distinction without a difference). Defendants have never explained why the deposit copy analysis in Three Boys Music should not

be applied here.

If there was no prejudice to Defendants—and Defendants have presented no evidence they would be prejudiced in any way by the consideration of the composition in the album recording of "Taurus" (which Jimmy Paged owned) as opposed to a deposit copy Page admittedly never knew existed—then the compositions as reflected on the "Taurus" album recording should have been admitted after a finding that Defendants suffered no prejudice.

Defendants also argue that <u>Three Boys Music</u> differs because the plaintiff's expert in that case testified that some of the elements in the recorded composition were embodied the deposit copy; Defendants claim Plaintiff has not presented such evidence. Def. Brief, at p.50. Defendants ignore that Plaintiff's experts in this case presented that **same exact opinion** to the Court repeatedly, (<u>see, e.g.</u>, Excerpt 2122-23, 2099, 1788, 2516), but were nevertheless precluded from offering any testimony about anything other than the exact notes on the deposit copy. (Excerpt 73, 613-14, 635, 736). Plaintiff explicitly asked the district court to allow such testimony, and raised this issue in his opening brief. Plt. Brief, at p.39.

### d. Plaintiff and Future Litigants Will Suffer Severe Consequences if the Lower Court's Decision Restricting the Substantial Similarity Comparison is Affirmed

Entirely undisputed by Defendants is that under the district court's ruling no recording could ever be admitted as part of a 1909 Copyright Act case to establish a song's composition. This means that every music infringement case would only analyze a dusty deposit copy that no one had ever heard, instead of the actual song the defendants listened to and allegedly copied. The comparison would be reduced to something artificial and pointless. This consequence illustrates the absurdity of restricting the comparison of 1909 Act musical composition to only the deposit copy transcription.

Moreover, if this was truly the law for 108 years, then why in <u>Three Boys Music</u> and <u>UMG Recordings</u> did the comparison utilize recordings? If this is the law, then why in 108 years of case law is there no indication that any litigant argued and no court held that a recording of song's composition is inadmissible to prove a song's composition in a music copyright case?

The answer is because it is ridiculous to believe that a recording of a song, which is a copy of the composition of a song, cannot be used to prove the composition of a song. The extreme rigidity in the lower court's opinion was not even adopted by

the Williams court, the only other court in history to tie (erroneously) the scope of copyright protection to the deposit copy.

**2.     The Court Should have Permitted Plaintiff to Present Expert Testimony that the Composition in the "Taurus" Album Recording was Embodied in the Deposit Sheet Music Composition of "Taurus," as the Plaintiff was Allowed to Do in Williams**

Plaintiff explicitly asked the district court, if it was going to find that sections 11-12 were substantive, to adopt the approach of the Williams court (Blurred Lines). (Excerpt 2102-04).

The Williams court—the only other court in history to apply the deposit copy requirement substantively—found that the recordings of the composition released to the public were in fact evidence that could establish the composition of the song, as long as experts testified that the compositions in the recordings were connected to and embodied in the deposit copy. Williams v. Bridgeport, Order Denying Post-Trial Motions, 13-cv-6004 (Doc. No. 423), at p7. (7/14/2015) ("I think [the Gaye Parties' expert] testimony is going to have to be based on the deposit copy. It's not to say they can't have listened to the sound recording as part of their analysis. They simply can't present to the jury an opinion that says, '[b]ecause I listened to the sound recording, I've reached this conclusion.'"). Namely, that evidence consisted of testimony by the plaintiff's experts that the compositional elements in the sound recording were embodied in the deposit copy, even if not with every note.

As Plaintiff argued in his opening brief, he should have been allowed to present such testimony in accordance with Williams—if the district court was going to hold that the deposit copy requirement was substantive. See Plaintiff's Brief at p.30, 40. Plaintiff's experts opined that compositional expression from the "Taurus" Album recording was embodied in the deposit sheet music, (Excerpt 2122-23, 2099, 734-36), but were nevertheless precluded from offering any testimony about anything other than ***the exact notes on the deposit copy***. Excerpt 735-36 (the Court stated when Plaintiff's expert tried to play the album composition of "Taurus" embodied on the deposit lead sheet, "You can play notes of the deposit copy only" and that any and all notes not on the deposit copy "are not protected"); Excerpt 73, 613-14, 635.

Defendants' only response in their opening brief is to weakly claim that the Williams' court's opinion is "suspect" and that Plaintiff did not present any such expert evidence. Def. 50-51. However, Plaintiff did present such expert evidence (Excerpts 2122-23, 2099, 2109-10, 1788), and indeed even submitted arguments to the court explicitly using such evidence. (Excerpt 2115-16). Dr. Alexander Stewart stated that lead sheets are usually incomplete, "the 'missing' notes [in the deposit copy] are not really missing and can be easily referenced in the numerous recordings of ["Taurus"]," and "any competent performer might be expected to fill in the missing parts." See Excerpt 1788.

Moreover, Defendants' statement that the Williams's court's opinion is "suspect" lacks self-awareness. The position advocated for by Defendants, and accepted by the lower court in this case (that all evidence of a song's composition other than the deposit copy must be excluded), has never been endorsed by a court in the 108 years since the 1909 Act became law.

**3.** **Plaintiff Demonstrated in His Opening Brief Through Expert Testimony, Expert Reports, and Audio Exhibits that the Album Composition of "Taurus" was "Identical" to "Stairway to Heaven" Whereas the Deposit Copy was Merely "Substantially Similar"**

Defendants argue that Plaintiff has not provided evidence to this court that the album recording of "Taurus" and the deposit copy differed compositionally and that Plaintiff has not shown that any prejudice was suffered by excluding the full composition of "Taurus" present in the album recording. This is not only erroneous, because Plaintiff took great care to preserve this issue, but it also fails to take into account that the District Court refused to allow Plaintiff to place such evidence on the record when it held that only the exact notes of the deposit copy were admissible.

**First**, Plaintiff identified the exact compositional element omitted by the deposit copy, the guitar melody, in his opening brief: "Plaintiff's experts opined that all pertinent elements of 'Taurus,' **especially the guitar melody central to the case**, are represented on the deposit copy and those compositional elements are also

present in the '"Taurus"' sound recording." Plaintiff's Brief, at p.39 (emphasis added) (citing to Dr. Stewart's report at Excerpt 2122-23). The guitar melody only partially appears on the deposit copy. Dr. Stewart observed, in the report cited by Plaintiff's opening brief, that defense expert Dr. Ferrara agreed with him that only half the notes in the guitar melody appear on the deposit copy of "Taurus". Excerpt 2123.[6] This report alone was cited at least five times in Plaintiff's opening brief.

**Second**, in Plaintiff's opening brief he provided this Circuit with the deposit copy of "Taurus," a recording of the deposit copy being played on guitar, a recording of the composition in the album version of "Taurus", and the composition in the album version of "Stairway to Heaven". See Plaintiff's Brief at p.14, 17 (citing Audio Exhibits 7-11 ["Taurus"/Stairway Comparison], 40-44 [same but temp synced], and 32-39 [Ash Grove Concerts of "Taurus"]);[7] see also Trial Exhibit 527V; Audio

---

[6] Dr. Alexander Stewart also submitted a different report, which in Part I analyzed the deposit copy of "Taurus" versus "Stairway to Heaven" (See Excerpt 1776), and then in Part II analyzed the composition in the "Taurus" album recording/deposit copy versus "Stairway to Heaven". (See Excerpt 1788). Stewart explicitly analyzed the compositional differences between each version of "Taurus", namely the "prominent guitar melody in section A that is only partially represented in the '"Taurus"' deposit copy lead sheet." See Excerpt 1788. Stewart's conclusion regarding the "Taurus" album version's composition was that "During the first 18 notes [the] basic melodic sequence is virtually the same" as compared to "Stairway to Heaven", and that the songs are so striking similar it precludes "the possibility of coincidence or independent creation." (See Excerpt 1789, 1791). He did not offer such a strong opinion in his conclusion regarding the deposit copy. See Excerpt 1787.

Exhibit 12, 22, 40-44. These exhibits were physically transmitted to the Circuit Court. This Circuit can listen to the songs for themselves and easily determine that the deposit copy of "Taurus" is far more dissimilar to "Stairway to Heaven" than the album version of "Taurus" which is identical. See the fourth point in this section for an even more detailed explanation.

**Third**, Plaintiff also identified for this Circuit the reports of Plaintiff's experts which explicitly stated that the "Taurus" album composition and "Stairway to Heaven" were identical, (Excerpts 2515, 2359, 2192), an opinion they ***never*** stated concerning the deposit copy. See Plaintiff's Brief, at p.17 (citing Excerpt 2412, 2504, 2180, 2199, 2231). Furthermore, Plaintiff's expert Brian Bricklin took defense expert Mathes's performance of the compositions in the ""Taurus"" album version and his performance of the composition in the "Stairway to Heaven" album version and overlaid them on top of each other. Mr. Bricklin observed that the two compositions, played by the ***defense expert***, are indistinguishable and are the same "underlying composition." See Plaintiff's Brief, at p.41 (Excerpt 2192, Audio Exhibits 45-47 [Submitted by Motion to Transmit Physical Exhibits]).[8] Again, this is not the case

---

[8] Defendants' response claims that Plaintiff's expert said that the deposit copy was more similar to Stairway than the album version. Def. Brief at p.57. This is nonsense and takes one sentence of an extensive report out of context. The expert said the deposit copy contained certain elements that strengthen the claim of copying, not that the "Taurus" album composition was less similar to Stairway than the

with the deposit copy. The fact that Plaintiff could not show the jury that the true and full composition of "Taurus" is identical to "Stairway to Heaven", and was instead forced to use the less similar, incomplete deposit copy, was devastatingly prejudicial.

**Fourth**, the Trial Court erroneously precluded the Plaintiff from playing for the jury the album composition recording of Taurus in comparison of Stairway to Heaven. Plaintiff's experts submitted many re-recordings at summary judgment comparing the Taurus album composition to Stairway to Heaven which were precluded by the Court's orders. See 2521-25; 2181; Transmitted Audio Exhibits.

The relevant sections to compare of the Stairway to Heaven and Taurus album recordings, which clearly indicate the strikingly similar musical compositions, are the first 25 seconds of Stairway to Heaven (Audio Exhibit 7) as compared Taurus (Audio Exhibit 8) starting at 45 seconds to 1 minute, 13 seconds). See Excerpt 2505-06 (Stewart comparing musical expressions in Audio Exhibits 7 and 8); Excerpt 2182, 2191 (Bricklin comparing musical expression in Audio Exhibits 7 and 8). Plaintiff was not allowed show this comparison to the jury and this seriously prejudiced and undermined Plaintiff's case.

---

incomplete deposit copy. The report explicitly notes that that if the album composition is used for the comparison instead of the deposit copy, "Taurus" is strikingly similar to "Stairway to Heaven". (Excerpt 1789, 1791).

Audio Exhibit 7:   Stairway to Heaven (0-25 seconds)
Audio Exhibit 8:   Taurus (45 seconds – 1 minute, 13 seconds)

The Trial Court also refused to allow Plaintiff to use demonstrative Audio Exhibits which isolated the relevant musical expression of the acoustic guitar melody in both Stairway to Heaven and the Taurus album composition so that a comparison of the relevant expression could be conducted by the experts and the jury.

Audio Exhibit 9 is a re-creation of the isolated guitar melody and relevant musical expression of Stairway to Heaven. Audio Exhibit 10 is a similar re-creation of the isolated guitar melody and relevant musical expression in Taurus. Audio Exhibit 11 is Audio Exhibit 9 and 10 and it isolates the musical expression at issue in both songs—the guitar melody—and plays them together for comparison purposes. This comparison shows that it is without question that the musical expression at issue—the guitar melody—was substantially similar, strikingly similar, and are identical. Plaintiff was seriously prejudiced in the Court not allowing Plaintiff to play this for the jury.

Other similar comparisons which Plaintiff was precluded from playing are Audio Exhibits 40-44, all similarly comparing the relevant expression at issue which was isolated for the benefit of the jury.

Audio Exhibit 9:    8 measures of the acoustic guitar of Stairway, repeated.
Audio Exhibit 10:  8 measures of the acoustic guitar of Taurus, repeated.
Audio Exhibit 11:  Audio Exhibit 9 and 10 played together.

The Trial Court also refused to allow Plaintiff from introducing any of the isolated acoustic guitar re-recordings of either Stairway to Heaven (Audio Exhibit 12) or Taurus album recordings (Audio Exhibit 22). These tracks were highly relevant because they isolated the relevant guitar passage in question. Plaintiff was severely prejudiced in that the jury was not afforded the opportunity to compare the musical expression at issue in isolation:

> Audio Exhibit 12: Acoustic Guitar [Stairway Re-Recording]
> Audio Exhibit 22: Acoustic Guitar [Taurus Re-Recording]

**Fifth**, the Court itself held that using the composition of the album recording at trial was highly prejudicial and should be precluded, an irrefutable indication that the album composition of "Taurus" was far more similar to "Stairway to Heaven" than the deposit copy of "Taurus". See Excerpt 605. Moreover, Defendants would not have fought so hard to preclude the "Taurus" album version if it did not contain more similarity to "Stairway to Heaven" than the deposit copy.

The notion that Plaintiff has not given this Circuit enough basis in the record to conclude that restricting the comparison to the "Taurus" deposit copy was reversible, harmful error beggars belief.

### 4. Plaintiff Has Never Attempted to Claim a Sound Recording Copyright Exists or was Copied; Defendants' Argument to the Contrary is Nonsensical

Defendants make the straw man argument that the 1909 Act did not permit

sound recordings to be copyrighted. Def. Brief at, p.37. Defendants also argue Plaintiff's appeal must fail because Congress did not "extend the right of copyright to the mechanical reproductions themselves," which would more or less be what is known today as a sound recording copyright under the 1976 Act. Def. Brief at, p.39.

But Plaintiff does not dispute that the mechanical reproductions themselves, such as sound recordings, are not protectable under the 1909 Act. Plaintiff is focused on the musical ***compositions* embodied in** the recordings. Defendants are arguing against a straw man. Plaintiff's sole argument has always been that the composition of songs under the 1909 Act can be established by referring to recordings in which that composition is embodied, and that the composition of the song is not limited by sections 11-12. Indeed, the Supreme Court has long acknowledged that section 1(e) of the 1909 Act's purpose was to make it clear that copies of original musical composition could exist in mechanical recordings. See Goldstein, *supra*. Furthermore, many songs under the 1909 Act, like "Taurus" and "Stairway to Heaven", were composed on the guitar and recorded well before deposit lead sheets were created and submitted for a subsequent registration. See UMG Recordings, *supra*.

The inescapable conclusion avoided by Defendants is that if a record is capable of containing original musical composition, and a song can be composed independent

of sheet music, then the protected musical composition of a song indeed extends beyond only the sheet music deposited with the copyright office.

The 1909 Act in no way prohibited the use of recordings to prove the protected compositional elements of a song, nor have Defendants identified a single case from 1909 onwards which precludes the use of recordings to prove the composition of a copyright under the 1909 Act. The composition of a song are simply those elements of the song that always appear each time the song is played. Newton v. Diamond, *supra*.

Defendants are ignoring that every recording of a song contains the song's underlying composition. Merely using a recording to prove the composition of a song is not the same as claiming that the sound recording itself is copyrighted or has been infringed.

**5. Plaintiff Proved a High Degree of Access at Trial and Requested an Inverse Ratio Rule Instruction; The Lower Court Erroneously Refused to Give the Instruction and Caused Plaintiff Severe Prejudice**

Defendants claim that the District Court did not have to give an inverse ratio instruction because Plaintiff had not presented any evidence of a "high degree" of access. Not only is the contention that Plaintiff did not present a high degree of access inaccurate—Plaintiff presented undisputed evidence of direct access—but Defendants have to torture the case law to arrive at the conclusion that an inverse

ratio instruction is only given when there is a "high degree" of access.

### a. The Jury Found that Defendants had Access to "Taurus" Because Plaintiff Proved a High Degree of Access with both Direct and Circumstantial Evidence

There was undisputed evidence of a high degree of access in the record. The jury found that there was access—over Defendants' vehement (if not very credible) denials. Why did the jury find Defendants had access to "Taurus?"

**First**, there was direct access: at trial it came out that defendant Page owned or possessed five Spirit albums, including the one that contained "Taurus". Excerpt 495-97. **Second**, not only did Page own the critical album, but Led Zeppelin covered a Spirit song named Fresh Garbage, which was off the same side of the Spirit album that also had "Taurus" on it. Excerpt 537.

**Third**, Spirit was the only rock band that Led Zeppelin ever covered. Excerpts 1230-31. **Fourth**, Led Zeppelin opened for Spirit during their first US show on December 26, 1968, in Denver. Excerpt 309. Mark Andes testified that Spirit played "Taurus" at that show. Excerpt 404-05. Yet, defendant Page incredibly claimed he was never aware that Spirit played that show—despite the fact that Led Zeppelin was covering Spirit's song at the time. Excerpt 554-55 ("I didn't know they were on the bill."). **Fifth**, Mr. Page, however, told the Richmond News Leader in 1969, just a few months after the Denver show, that Led Zeppelin had played with Spirit on

Led Zeppelin's first US tour:

> Page reflected on Zeppelin's success. "It's kind of funny. On our first tour around, we played second fiddle to other groups. Last time we were the second group and Spirit was the Third. Now we've each gone up one notch."

(Trial Exhibit 100158). Defendant Page's testimony that he did not know Spirit was at the Denver show does not appear to have been candid.

**Sixth**, there were several other moments that called into question defendant Page's candor, such as where he categorically told the jury that he had never seen the band Spirit play a live show. Excerpt 531 (Q: "You don't remember seeing Spirit live?" A: "I didn't see Spirit live."). Defendant Page was clear that this was not a question of memory. But, again, Page's past words from an April 1970 interview—before "Stairway to Heaven" was written—showed that Page had in fact attended many Spirit shows:

> Spirit do some really nice things on albums. They give a really nice atmosphere when they play and I always enjoy seeing them.

(Trial Exhibit 159). **Seventh**, Page again reaffirmed this in a 1972 interview when he said, "I saw Spirit a couple of times and thought they were very good" and that they struck him on an "emotional level." (Trial Exhibit 157). **Eighth**, this is not to mention that an eyewitness, former Spirit bass player Larry Knight, testified at trial that Page attended a Spirit show in 1973, had spoken to him at the after party, and that Page had also met Randy Wolfe at that party. Excerpt 711-12.

**Ninth**, Defendant Plant's testimony was also less than candid regarding his familiarity with Spirit. He claimed he did not remember attending a Spirit show in 1970 in Birmingham, England, but also claimed that he would have been in the back of the club not paying attention to the music with friends. Excerpt 1212-1216. Yet, an eyewitness came forward, Michael Ware, who testified that he saw Robert Plant in the front row of the Spirit show enjoying himself immensely. **Tenth**, this is not to mention that Mark Andes has a vivid and distinct memory of playing snooker and hanging out with Plant and many of the members of Spirit that night after the show. Excerpt 415. After the show, Mr. Plant left the bar and was involved in a serious car accident, which fixed that night in Mr. Andes's memory. Excerpt 418.

Plainly, the jury found that there was access because of the direct access in the record: **Jimmy Page admitted that he owned the album and song in question, "Taurus," in his record collection**. This alone establishes a high degree of access.

### b. There is No Case Which Limits the Applicability of an Inverse Ratio Rule Jury Instruction to Cases with "High Degrees" of Access

As a matter of law, the inverse ratio instruction is a basic component of copyright law and was required to be given. Defendants claim it should only be given in cases of high degrees of access and cite to just one case, Rice v. Fox Broadcasting Co., 330 F. 3d 1170 (9th Cir. 2003), for this rule. See Def. Brief, at p.60. Yet, Rice

does not stand for this proposition.

**First**, Rice was a decision of this Circuit reviewing the dismissal of a dramatic work copyright case at summary judgment. It did not deal with jury instructions for a music copyright case after the trial court had already held there were triable issues of fact for the jury. **Second**, Rice held that, even construing all facts in the plaintiff's favor, that the only evidence of access was "purely" speculative and inferential. See Rice, 330 F. 3d at 1179. The plaintiff invoked the inverse ratio rule to try to save the case. This Circuit held that "Rice's evidence as to proof of access is insufficient to trigger the inverse ratio rule." Id. at 1178. In rejecting Rice's argument, this Circuit held that the rule was not "triggered" ***not*** because a "high degree" of access was lacking, but because ***there was no evidence of access*** even when construing every fact in the plaintiff's favor. Id. at 1178-79.

A holding only applies to those circumstances before the court issuing the opinion; the nostrum that the Ninth Circuit held in Rice that a jury instruction on the inverse ratio rule is only proper when high access is present—when there was *no* evidence of access present in Rice and the case was dismissed at summary judgment—is a borderline frivolous position.

The failure to give an inverse ratio instruction in this case prevented the jury from properly conducting the substantial similarity comparison. When there is a

dispute of fact on access and substantial similarity, this is an appropriate jury instruction. Either on an individual basis, or in combination with the other incorrect or omitted jury instructions, the failure to give this instruction constituted highly prejudicial reversible error.

**6.** **Plaintiff Explicitly Complied with Central District L.R. 51, the Prescribed Method for Preserving Exceptions to Jury Instructions, and the Trial Court Acknowledged that All Exceptions and Objections were Preserved; Defendants' Argument that Plaintiff Waived these Objections are Disingenuous**

Defendants have generally claimed that Plaintiff failed to preserve claims of error for several erroneous or omitted jury instructions. Def. Brief at p.63-64 (stating that Plaintiff is attempting to "sandbag" the trial court). Plaintiff addresses the general waiver argument by Defendants in this section, and then addresses the specific claims of waiver in the following sections.

Defendants claim that Plaintiff was required to lodge an oral objection to these instructions after the Court finalized the instructions—even though Plaintiff had lodged written objections and proposed instructions. Excerpt 1898-1982, 1983-2063. In doing so, Plaintiff followed the exact instructions provided by the Central District of California in L.R. 51 to comply with FRCP 51 "preserving a claim or error," and also the Court's oral instructions at trial.[9]

---

[9] The district court local rules require that the parties confer before submitting jury instructions. <u>See</u> L.R. 51-1. The parties came up with a list of joint jury

**First**, Plaintiff served and filed his proposed jury instructions (Excerpts 1898-1982) and written objections to Defendants' proposed instructions (Excerpts 1983-2062) pursuant to L.R. 51-1 and L.R. 51-5. This method for preserving claims of error, provided for by the Central District of California Local Rules, is well known by defense counsel.

**Second**, the District Court made it explicitly clear when orally delivering the instructions to the parties on the record that it had considered all proposed instructions and objections and that it would not entertain any oral argument or objections:

> THE COURT: Counsel, I'm going to be talking about the instructions that the Court is going to be giving, and a little preparation on this so that you'll understand. **This is not to discuss with counsel what instructions are going to be given and which aren't. Both sides have fully briefed this on the instructions, their objections, their replies, et cetera, that I am confident that I can just come out and give the**

---

instructions they agreed on. For those instructions that the parties did not agree on, Plaintiff submitted proposed jury instructions and Defendants submitted objections pursuant to L.R. 51-1 (stating "each party shall submit separately those proposed instructions as to which all parties do not agree"). Excerpt 1898-1982. Pursuant to L.R. 51-1 and 5, Defendants also submitted proposed instructions and Plaintiff submitted objections. Excerpt 1898-1982, 1983-2063. The objections submitted by Plaintiff were submitted pursuant to L.R. 51-5, which states "Objections shall be filed and served on or before the first day of trial unless the Court permits oral objections." L.R. 51 specifically provides that the submission of proposed instructions and written objections is the correct process for "preserving a claim of error." Moreover, the court did not allow oral objections. Excerpt 1284-85.

> **instructions**, but I want to let you know what they are so you can use them in your [closing] argument.

See Excerpt 1284-85 (emphasis added). How can Defendants make such a plainly disingenuous waiver argument to this Circuit? They know for a fact that the Court had assured the parties on the record that it would **not allow oral objections**, that there was no waiver, and that the Court had fully considered the written L.R. 51 documents.

There was plainly no waiver because Plaintiff explicitly complied with the Court's instructions for preserving errors; such a claim is belied by the record.

**7.    Plaintiff Did Not Waive Any Claim of Error Regarding the Court's Failure to Instruct the Jury that Combinations and Arrangements of Musical Elements are Copyrightable; This Erroneous Omission was Highly Prejudicial**

Defendants claim in their response brief that Plaintiff never preserved a claim of error that the Court should have instructed the jury that combinations of unprotectable musical elements are themselves protectable. Def. Brief, at p.30-31, 63. Defendants' argument is false and is designed to mislead this Circuit.

Plaintiff made this argument to the Court repeatedly in his proposed instructions (and also objections to Defendants' instructions):

**PLT. JURY INSTRUCTION NO. 35**

**SUBSTANTIAL SIMILARITY (MODIFIED)**

. . . .

The first test is an objective one called the extrinsic test. Here, the analyses and conclusions of the expert witnesses may be of assistance to you. There is no uniform set of factors for you to analyze. Music is not capable of ready classification into only five or six constituent elements; **music is comprised of a large array of elements, some combination of which is protectable by copyright**. **A combination of individually otherwise unprotected elements can be infringed upon**. . . . There is no one magical combination of these factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as Plaintiff can demonstrate, through expert testimony that addresses some or all of these copyrighted elements and supports its employment of them, that the similarity is substantial and to protected elements of the copyrighted work, the objective test is satisfied.

See, e.g., Excerpt 1956-57 (emphases added); see also Excerpts 1948, 1961, 1963, 1968 ("Plt. Jury Instruction No. 38 Combination of Unprotectable Elements"), 1970, 1973,

As Plaintiff's opening brief observed, Defendants had actually also requested a similar instruction on combinations of unprotectable elements, see Excerpt 2032.[10] Plaintiff objected to Defendants' proposed instruction because *it did not go far enough* in describing the protectability of combinations of musical elements as delineated by Swirsky v. Carey, 376 F.3d 841, 849 (9th Cir. 2004). See Excerpt 2033.

Defendants replied to the objection and agreed with Plaintiff that "**since**

---

[10] The correct description was included in Plaintiff's proposed instruction at Excerpt 1956-57). Thus, Plaintiff made doubly sure in both his proposed instructions and in his objections that the Court was well aware of his position.

**plaintiff relies on selection and arrangement it is crucial that the jury be instructed**” on the protectability of combinations of musical elements (albeit with Defendants’ defective version). <u>See</u> Excerpt 2034. Yet, Defendants now disingenuously argue in their brief that “Skidmore Neither Claimed nor Presented Evidence of a Copyrightable Selection and Arrangement.” Def. Brief, at p.64.

Moreover, the failure to give this instruction was harmful, reversible error. This instruction provides the conceptual basis for a jury to determine what expression is protected and what is not protected. All music is an arrangement of protected and unprotected elements which, in combination, can be protected. <u>Swirsky</u>, *supra*. Without this instruction, the jury cannot even begin making the predicate determination about what constitutes protected expression before *then* conducting the extrinsic substantial similarity comparison to determine if protected expression was copied. The Court’s instruction not only failed to tell the jury how to do its job, but it also implicitly told the jury that combinations of elements are not protectable thereby negating much Plaintiff’s expert’s testimony.

Defendants’ response brief repeatedly claims that Plaintiff introduced no evidence that protectable combinations and arrangements were copied, but this conclusory assertion is wrong given that Dr. Stewart testified extensively that a protectable arrangement in “Taurus” was copied by “Stairway to Heaven” (as

explained in the opening brief):

> Plaintiff's expert's opinion were substantially based on the fact that the arrangement of protectable and unprotectable elements is afforded copyright protection. (Excerpt 748, 763, 781-82, 834-36). Dr. Alexander Stewart specifically opined that there were as a combination of five elements in "Taurus" that were protectable and had been copied in "Stairway to Heaven"

See Plaintiff Brief, at 58. The brief then went on to explicitly list the five elements which comprised Dr. Stewart's opinion.

The Ninth Circuit states "The question, then, is whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to insure that the jury fully understood the issues." Los Angeles Memorial Coliseum Com'n v. NFL, 726 F. 2d 1381, 1398 (9th Cir. 1984). It is without question that if the jury does not know how to determine what expression is protectable, and thus does not know how to conduct the extrinsic substantial similarity test, that the Court could not have given adequate instructions on the extrinsic substantial similarity test—the key element in any copyright case. This error was especially prejudicial when considered with the failure to give the inverse ratio instruction and the erroneous definition of originality.

The failure to give this instruction, which was requested by all parties, was therefore reversible error both individually and in combination with the other jury instruction errors.

**8.    The Originality Instruction Given by the Court was Inadequate, Not Legally Correct, and Severely Harmed Plaintiff's Case; Plaintiff Did Not Waive this Objection as Defendants Erroneously Claim**

**a.    Plaintiff Suffered Severe Harm Due to the Incorrect Instruction on Originality**

Defendants' response brief conclusorily asserts that Plaintiff suffered no harm from the incorrect originality instruction, but does not develop this assertion in anyway. Def. Brief at p.70. As Plaintiff's opening brief argued, this instruction was highly prejudicial because originality was hotly contested during the trial. Plt. Brief, at 59-65. For instance, Plaintiff's experts, including Dr. Stewart, argued that Randy Wolfe's particular use of a descending chromatic scale in "Taurus" was original (Excerpt 753, 786-87), while defense expert Ferrara argued that it was not because types of descending chromatic scales appeared elsewhere in the prior art (Excerpt 963-64). Notably, no evidence was introduced by Defendants that Randy Wolfe had copied any of the musical expression in "Taurus" from anything in the prior art. Thus, it was undisputed as a matter of law (regardless of Ferrara's statements) that Randy Wolfe's expression in "Taurus" was original because it was not copied.

However, despite there being no facts in evidence to dispute that "Taurus" was original uncopied expression, the Defense/Court instruction on originality erroneously told the jury that the descending chromatic scale, as a matter of law, was not original because types of descending chromatic scales have appeared in the prior

art. It is hard to imagine a more direct and obvious example of prejudicial error emanating from an incorrect jury instruction.

The Ninth Circuit states "The question, then, is whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to insure that the jury fully understood the issues." <u>Los Angeles Memorial Coliseum</u>, 726 F. 2d at 1398. Here, the Court failed to accurately explain to the jury when expression is "original" and "protectable," thus preventing the jury from accurately conducting the extrinsic test. Note that, in conjunction with the failure to give an instruction on combination and arrangement, the court's jury instructions made it impossible for the jury to adequately analyze the evidence and determine what was protectable expression in "Taurus" and what was not. The court's errors, moreover, always skewed toward divesting "Taurus" of protection for the expression contained in the song, thereby heavily damaging Plaintiff's case.

Plainly, the errors made by failing to include an inverse ratio burden instruction, failing to include a combination and arrangement instruction, and misstating originality made it impossible for the jury to conduct their task correctly.

### b. Plaintiff Did Not Waive any Objection to the Erroneous Originality Instruction and In Fact Explicitly Preserved that Objection in Writing

Defendants' claim of wavier is based solely on its erroneous contention that

Plaintiff, after already submitting proposed instructions and objecting to Defendants' proposed instruction that was adopted by the court, was required to yet again object orally. As noted above, Plaintiff complied with L.R. 51's instructions on how to preserve a claim of error for jury instructions and the District Court explicitly stated that all written proposed instructions and objections had been considered and that oral objections would not be permitted. <u>See</u> Excerpt 1284-85.

Defendants made the following unsupported modifications to the standard instruction: they added language which read "any elements from prior works or the public domain are not considered original parts and not protected by copyright" and they deleted language which read "the 'original' part of a work need not be new or novel." Excerpt 2029.

In the written proposed instructions and objections Plaintiff asked the court to correctly instruct the jury on originality, (Excerpt 1946), and Plaintiff also specifically objected to Defendants' "unsupported modifications" of the originality instruction (which were adopted by the Court). (Excerpt 2030). As can be seen from Plaintiff's written objection to Defendants' Proposed Instruction No. 28, reproduced here in full, Plaintiff objected explicitly to the ***exact modification and deletion made by Defendants and adopted by the Court***:

> The modifications to this instruction are highly confusing, unduly prejudicial, **and even contradict part of the standard**

**instruction which Defendants have struck though at the bottom**. Namely, **the contention that "<u>any elements from prior works or the public domain are not considered original parts and not protected by copyright</u>" would lead a jury to believe that parts of song that are in some way generally similar to prior art cannot be accorded protection.** This narrow interpretation is, of course, not accurate. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 345-46 (1991). All that is required is that the work cannot have been copied and that it has to have some minimal creativity. Id. The Ninth Circuit has held

> In this circuit, the definition of originality is broad, and originality means "little more than a prohibition of actual copying." *Three Boys*, 212 F.3d at 489(quoting *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033(9th Cir.1992)).

*Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004). Even then, if a work incorporates elements from the public domain or prior art and uses them uniquely in combination with other elements it would still be afforded protection. *Swirsky*, 376 F.3d at 849. Plaintiff's instruction No. 32 is far more faithful to the law and less confusing than Defendants' unsupportable modifications and should be favored.

See Excerpt 2030 (bold added). The notion that Plaintiff's objection was not before the Court, or that the court was sandbagged in any way, is a falsehood. Plaintiff explicitly complied with L.R. 51 and the Court's verbal instructions at trial.

Defendants attempt to claim that the District Court's language in the disputed instruction was actually legally correct because, in their view, it is accurate to state that: "elements from prior works or the public domain are not considered original parts and not protected by copyright." Def. Brief at p.69-70. But this is the whole

point of Plaintiff's claim of error: this is not the legal definition of originality, which focuses only on whether the work was created independently. This addition would leave jurors hopelessly confused about how to address musical elements used in prior works but that were not copied. It is certain that the erroneous addition would lead any reasonable juror to wrongly conclude that much original expression was not protected merely because it may have appeared in the prior art.

Compounding this error, Defendants and the court removed a key part of the standard instruction which reads: "the 'original' part of a work need not be new or novel." Plaintiff's objection notes that removing this sentence is unjustifiable, especially with the erroneous addition. Defendants removed this sentence solely because it contradicted the erroneous addition by Defendants.

That the Court chose to give the jury this legally unsupportable modified instruction, which directly contradicts the standard instruction on originality, is plain reversible error.

**9. During Jury Deliberations the Jury's Final Question was to Hear Plaintiff's Audio of "Taurus"—The Court Ordered An Irrelevant Version of "Taurus" To Be Played, Which Seriously Prejudiced Plaintiff By Ending the Case; Plaintiff Specifically Objected and Did Not Waive this Error**

During deliberations, the jury's final question before rendering a verdict in favor of Defendants, was to hear: "plaintiff's audio of 'Taurus' guitar." Excerpt

1405. During the trial Plaintiff's guitar expert, Kevin Hanson, had played the bass clef of "Taurus" many times and this was plainly the version being requested by the jury. See Excerpt 738, 743, 757, 758, 1066; Trial Exhibit 527V.

Plaintiff explicitly argued to the court that the jury obviously meant the bass clef version which they had heard many times. (Excerpt 1405-10) ("The "Taurus" deposit that we played over and over in court was 527V, and that was Mr. Hanson playing the "Taurus" deposit copy bass clef, and that's what we used in this court as an audio exhibit through the trial and also the comparison."). Defendants, however, argued that the jury wanted to hear a version of the "Taurus" deposit copy that Hanson had never addressed in his testimony at trial and that had been played one time for a fact witness on the first day of trial for a couple of seconds. See Trial Exhibit 525V. Plaintiff's counsel forgot that this exhibit had even been used.

The Court should have never let the 525V version be played, and it should have disregarded Defendants' arguments, because this version was not relevant to the substantial similarity comparison or the jury's question. Plaintiff's expert Kevin Hanson testified that the "Taurus" deposit copy as written would never have been played with the treble[11] and bass clef together (as on 525V), and that the bass and

---

[11] The bass clef was the relevant guitar melody being compared to "Stairway to Heaven". The treble clef was a harpsichord accompaniment never meant to be played on guitar with the bass clef.

treble clefs would have to be played separately as on 527V, something that was not even disputed by Defendants' experts. See Excerpt 753-54. The bass clef on 527V is the guitar melody and compositional expression alleged to have been infringed by "Stairway to Heaven". The 527V version obscures, distorts, and confuses for the jury the relevant guitar melody comparison at issue.

The Court asked the jury what version it wanted to hear and disregarded one juror stating that the jury wanted to hear the correct bass clef version, in favor of the other juror stating it wanted to hear the other version. The Court played the erroneous exhibit 527V. Excerpt 1411. Plaintiff did everything he could to preserve this error, explaining repeatedly that 525V was not part of the comparison, but the Court played the wrong version over Plaintiff's objection. At the very least the Court should have also played the version that Plaintiff advocated for and one juror asked for. There was no waiver as Defendants are claiming.

Defendants advocated for a version of "Taurus" which was not analyzed by the experts for the jury, which did not compare the relevant guitar melody at issue, and which is barely even possible to play on guitar in the first place. After the incorrect version of "Taurus" was played for the jury, they immediately came back within minutes and returned a defense verdict. The prejudice to Plaintiff's case caused by playing this version cannot be overstated. It effectively ended the case

within minutes.

Plaintiff notes that should the Court reverse the jury verdict on another basis, this claim of error would be moot.

**10.  The Ten-Hour Time Limit Placed on Plaintiff Severely Hindered His Ability to Prove Substantial Similarity and Abused the Court's Discretion; This Objection was Explicitly Preserved and Not Waived**

Defendants attempt to claim that Plaintiff did not timely object to the time limits imposed by the Court, Def. Brief at p.73-74, but this is a frivolous argument, the same as Defendants' argument that Plaintiff failed to preserve objections to the erroneous jury instructions. The Court itself acknowledged that Plaintiff preserved this objection at trial:

> MR. KULIK:  Your Honor, just for the record, you have been very, very clear and we all understand exactly what you're saying. But for the record, obviously, we have to interpose our objection.
>
> THE COURT:  I understand.
>
> MR. KULIK:  We don't think ten hours, including cross-examination, in a case like this is fair or reasonable.
>
> THE COURT:  **I understand that, counsel, and that position is on the record and I appreciate that you have to put that on the record**.

See Excerpt 850 (emphasis added).[12]

---

[12] Defendants claim that Plaintiff should have objected at the pre-trial conference when the time limits were first announced. However, at this point the motions in limine were not decided, the logistics of witness availability and testimony had not been determined, and the elements and defenses in dispute had not been finalized; it

Defendants further maintain that Plaintiff's counsel—when the Court was castigating Plaintiff's counsel for going over the ten hour time limit—agreed that the time limits were "fair." Def. Brief at p.73-74. This is an absurd falsehood, devoid of context, which ignores the Court's explicit statement (just a minute or two before the quote highlighted by Defendants) that the objection was in fact preserved:

> THE COURT: And I know there is an objection and I want to give -- counsel, I want to give you the chance to put your objection on the record.
>
> MR. MALOFIY: The objection is that when this case opened up, there was many issues to be covered because there was an issue of access, which was hotly disputed. There was the issue of ownership. There was also the issue of the validity of the Trust, unclean hands, and those issues made it absolutely necessary to spend time on that, to establish that the trustee was proper, that the Trust was valid, that the ownership was owned by the Trust. . . . It's our position that ten hours is very difficult to put on a complicated case, and we're doing the best we can. . . . The case-in-chief, we did get in in ten hours. I'm doing the best we can.

See Excerpt 1057-59. This objection was not made in a vacuum, but followed and built on Mr. Kulik's objection to the Court's time limits earlier in the trial. See

---

would have been impossible for Plaintiff to make an informed objection at this point in time. Furthermore, Defendants have presented no case law to this Circuit establishing that time limits must be objected to at a pre-trial conference. Requiring plaintiff to object to a time limit, before being given even a moment to evaluate the adequacy of the limit, has no basis in logic or law.

Excerpt 850.

The truth is that Plaintiff's counsel was supplicating himself before the Court, asking for any additional time to cross examine defense witnesses, so that Defendants' case in chief would not go in unrebutted—an alarming notion to be sure. Thus, when the Court gave Plaintiff a meagre ten minutes to cross examine each witness in this complicated, contested trial Plaintiff counsel's only recourse was to state "that's fair" so he could get the time. However, this statement was only made given that the Court has already acknowledged that Plaintiff had preserved his vigorous objection to the time limits. It should be noted that the Court did not permit Plaintiff any actual time to finish cross examining the main defense expert witness, Dr. Ferrara, on substantial similarity. See Excerpt 1065.

Plaintiff took great care to preserve this argument at all stages, as acknowledged by the lower court at all stages. The complexity of this case, and what plaintiff needed to prove, makes 10 hours of total trial time manifestly unreasonable and the minor additional time provided inflexible. The Court's restriction of cross examination of Lawrence Ferrara (with whom Plaintiff was not provided with sufficient time to cross examine), the defenses' expert witnesses, and the categorical summary refusal to allow expert rebuttal testimony, are particularly egregious errors which severely harmed Plaintiff's case.

11.  **Dr. Lawrence Ferrara's Testimony Should Have Been Precluded for Failing to Disclose that He Had Been Previously Hired by Plaintiff's Publisher to Compare "Taurus" and "Stairway to Heaven"**

Defendants claim that Plaintiff failed to preserve this objection to Dr. Ferrara's testimony because the court struck the motion for sanctions on timeliness grounds.[13] Def. Brief, at p.77.

Again, Defendants disingenuously ignore the lower court's own words which make clear the objection was preserved. The lower court was very clear at trial that the motion to preclude Dr. Ferrara's testimony was in fact before the court and that he was "overruling" plaintiff's objections to Ferrara testifying and as to a negative inference:

| | |
|---|---|
| THE COURT: | I don't know who the next witness will be. Let's find out. |
| MR. ANDERSON: | Dr. Lawrence Ferrara. |
| THE COURT: | Okay. And you want what, Counsel? |
| MR. MALOFIY: | We filed an extensive sanctions motion against defendants and Dr. Ferrara. |
| MR. ANDERSON: | Your Honor -- |
| MR. MALOFIY: | -- for being -- |
| THE COURT: | Okay. Okay. Counsel, I understand, and **I have your motion**. It's not something that should be coming in in front of the jury. |
| MR. MALOFIY: | I'm sorry. |
| THE COURT: | **And your objection is to his testifying?** |

---

[13] Plaintiff notes that the Court's attempt to procedurally strike his initial motion for sanctions was based on timeliness, because the motion was filed after the motion deadline. Yet, the issues described in the motion only arose *after* the motion deadline and thus it was impossible to file the motion before the deadline.

| MR. MALOFIY: | **Yes.** |
| THE COURT: | **Overruled.** |
| MR. MALOFIY: | **As to a negative inference.** |
| THE COURT: | **Overruled.** |

<u>See</u> Excerpt 927.

On the merits of the issue, it is undisputed that Dr. Ferrara previously compared "Stairway to Heaven" and "Taurus," a fact which was never previously disclosed in discovery by Defendants nor was any documentation turned over concerning this revelation—despite numerous and voluminous applicable requests. This is a monumental and deliberate omission.

Defendants have never produced a single piece of evidence regarding this evaluation, involving Ferrara's retention, consultation, or recommendations. This is extremely troubling. Furthermore, Defendants also colluded during the litigation to attempt to falsely change the "Taurus" copyright to revoke Plaintiff's ownership, and hid the fact that Dr. Ferrara had a conflict of interest as described in Plaintiff's appeal. <u>See</u> Supp. Excerpts 37-38. This attempt to falsely change the copyright, while litigation was pending, was illegal. <u>Id.</u>

Defendants attempt to argue that Ferrara stated that he gave his consultation "by telephone" and that there are no written records, but their citation of Excerpt 1632-33 does not establish such a fact. Ferrara only stated, in vague and ambiguous terms, that "most often" he usually only gives a preliminary analysis over the

telephone. See Excerpt 1633. However, despite a request from Plaintiff's counsel to "let's not talk about most scenarios" and instead to talk about the scenario "Before us right now," Ferrara did not specify his actions in this case. Id. Moreover, when Plaintiff's counsel pressed Ferrara if there were written communications concerning his prior undisclosed analysis of "Taurus" and "Stairway to Heaven" he coyly stated, "I don't recall," indicating that they most likely exist and were not produced. Excerpt 1634 (Q: "Do you have any communications by and between this individual about your analysis?" A. "No that I recall not -- I just don't recall.").

Plaintiff notes that Defendants disingenuously attempt to claim that Plaintiff's publisher, Hollenbeck Music, never consulted Dr. Ferrara about "Stairway to Heaven" and "Taurus," and that instead a company named Rondor (a division of Universal Music) did so. Def. Brief, at p.78. What Defendants omit, as is their wont and habit, is that Hollenbeck Music had retained Universal to administer its copyright interests, even filing documents with the copyright office concerning "Taurus." See Excerpts 1711-12 (copyright form stating that Universal Music is acting as an agent for Hollenbeck Music with respect to "Taurus").

The bottom line is that Defendants' expert previously analyzed the songs in question, at the behest of Plaintiff's publisher, but never provided or disclosed any documents concerning this interaction. The failure to disclose this conflict of

interest, and the failure to comply with discovery requests, is highly prejudicial and should have resulted in sanctions against Ferrara and Defendants including Ferrara preclusion. The fact that the Court summarily brushed aside Defendants' unconscionable litigation tactics is reversible error.

*****

# Part II - Plaintiff's Response Brief to Defendant's Costs and Fees Appeal

Defendant Warner/Chappell's argument that the Court's decision denying costs and fees should be reversed is based on three meritless contentions: (1) that the Court did not consider "whether its ruling furthered the purposes of the Copyright Act," (2) that Plaintiff's lawsuit was unreasonable because the expression at issue was allegedly in the public domain, and (3) that the Court did not give enough weight to the allegations that Plaintiff committed litigation misconduct.

Defendant's conclusory arguments all fail; indeed, this appeal is plainly frivolous and the Court did not abuse its discretion in denying costs and fees. Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 665 (9th Cir. 2017) (stating that district court only abuses its discretion when decision "based on inaccurate view of the law or a clearly erroneous finding of fact"). The trial court denied Defendant's motion because this was a "hard-fought" case indisputably "motivated by a desire to recognize Randy California's musical contribution." Supp. Excerpt 7.

1. **Defendant Erroneously and Disingenuously Claims the Trial Court Failed to Consider the Purpose of the Copyright Act when Denying their Costs and Fees Motion**

The trial court explicitly considered the purpose of the Copyright Act in denying Defendant's costs and fees motion, contrary to Defendants' argument in this appeal.

A hallmark of Defendants' waiver arguments in the substantive appeal is their predilection for conclusorily asserting a claim of error was waived by Plaintiff, while omitting from their brief any mention that the trial court had in fact explicitly stated on the record that Plaintiff's objection was preserved. This is, obviously, not legitimate argumentation and wastes Plaintiff and this Circuit's time.

Defendant now continues to use such illegitimate argumentation in its costs and fees appeal. The factors in <u>Fogerty</u> were explicitly created and meant to help the trial courts evaluate whether an award of fees would advance the purposes of the Copyright Act. <u>See</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 US 517, 526 (1994) (stating that Supreme Court's factors based upon "the policies served by the Copyright Act"). Yet, at the very beginning of Defendant's opening appellate brief they state:

> The District Court—**without considering whether its ruling furthered the purposes of the Copyright Act**—identified the following *Fogerty* factors: "(1) 'the degree of success obtained on the claim'; (2) 'frivolousness'; (3) 'motivation'; (4) 'objective reasonableness of factual and legal arguments'; and (5) 'need for compensation and deterrence.'"

<u>See</u> Def. Opening Brief, at p.83 (emphasis added).

**First**, this argument is invalid because, as noted, the factors in <u>Fogerty</u> were explicitly created and meant to help the trial courts evaluate whether an award of fees would advance the purposes of the Copyright Act. The district court undertook a detailed look at the <u>Fogerty</u> factors, and other considerations at Defendants'

request, yet, in its discretion, did not find that costs and fees were warranted for the purposes of the Copyright Act.

**Second**, contrary to Defendant's argument, the trial court explicitly stated that the entire opinion on costs and fees had taken into account the goals of the Copyright Act:

> "Viewing 'all the circumstances of [this] case on their own terms, ***in light of the Copyright Act's essential goals***,' this Court concludes that attorney's fees are not appropriate."

Supp. Excerpt 7 (emphasis added) (quoting <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 136 S. Ct. 1979, 1989 (2016)). Defendant's argument that the Court's opinion ignored and did not consider the goals of the Copyright Act is wrong and should be rejected.

## 2. The District Court's Opinion was Correct and Did Not Abuse Its Discretion

### a. Legal Standard

"The Supreme Court has adopted the 'evenhanded' approach to the award of attorney's fees in copyright cases." <u>Berkla v. Corel Corp.</u>, 302 F.3d 909, 922 (9th Cir. 2002) (quoting <u>Fogerty v. Fantasy, Inc.</u>, 510 US 517, 534 (1994)). "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." <u>Fogerty</u>, 510 U.S. at 534; <u>see also</u> <u>Seltzer v. Green Day</u>, 725 F.3d 1170, 1180 (9th Cir. 1980)

(citing Fogerty, 510 U.S. at 533) (noting that "the Supreme Court rejected the so-called British Rule where the loser pays; rather, attorney's fees are left up to the discretion of the district court").

In exercising their discretion, "courts deciding whether to award attorney's fees can look to five non-exclusive factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." Seltzer, 725 F.3d at 1180-81. These five "Lieb factors" are nonexclusive.[14] Fantasy, Inc. v. Fogerty, 94 F.3d 553, 558 (9th Cir. 1996). "[C]ourts may not rely on the Lieb factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." Id. at 558. "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." Fogerty, 510 U.S. at 524.

"Granting attorneys' fees is disfavored when a plaintiff pursues an action in good faith in an unsettled area of law and the parties have *alike financial resources*."[15]

---

[14] The Lieb (or Fogerty) factors are found in Lieb v. Topstone Indus., 788 F.2d 151, 156 (3d. Cir. 1986).

[15] Defendant is a multi-billion dollar entertainment company while Plaintiff is a charitable trust that provides what little funds it has to buy instruments for school children.

<u>Perfect 10, Inc. v. Visa Int'l Ass'n, Inc.</u>, 2005 WL 2007932 at *4 (N.D. Cal. Aug. 12, 2005) (emphasis added) (citing <u>Lotus Development Corp. v. Borland International</u>, 140 F.3d 70, 75 (1st Cir. 1998)).

In <u>Seltzer</u>, the Ninth Circuit vacated the district court's award of fees to the prevailing defendant where the plaintiff was not objectively unreasonable, and it was a "close and difficult case." 725 F.3d at 1181. Frivolousness, bad faith motivation, and objective unreasonableness are important factors. Courts consistently award fees where the losing party's contentions were frivolous or objectively unreasonable[16] and deny fees where the losing party's contentions were not frivolous or objectively unreasonable.[17]

### b.    Application - The District Court's Costs and Fees Opinion was Well Reasoned, Legally Correct, and Did Not Abuse Its Discretion

The district court's opinion was detailed and well-reasoned. There is no reason to disturb that opinion and find that the Court abused its discretion. The Court took into account the non-exclusive <u>Fogerty</u> factors, and all other factors and considerations suggested by Defendant. Those considerations were: degree of success, frivolousness, motivation, objective reasonableness of factual and legal

---

[16] <u>See, e.g.</u>, <u>Inhale, Inc. v. Starbuzz Tobacco, Inc.</u>, 75 F.3d 1038, 1042-43 (9th Cir. 2014) (awarding fees where the plaintiff's claims were frivolous).

[17] <u>See, e.g.</u>, <u>Perfect 10, Inc. v. Ccbill LLC</u>, 488 F.3d 1102, 1120 (9th Cir. 2007) (affirming denial of fees where the plaintiff's claims were not objectively unreasonable or frivolous).

arguments, the need for compensation and deterrence, and also alleged litigation misconduct.

The court found that:

> Overall, two factors (litigation misconduct and degree of success) swing solidly in Defendant's direction, and a third factor (need for compensation) slightly favors Defendant. On the other hand, three factors (motivation, frivolousness, and objective reasonableness) weigh strongly in Plaintiff's favor.

Court Opinion, at p.4.

The court stated, regarding the lack of frivolousness and unreasonableness, that:

> Plaintiff survived a motion for summary judgment, meaning that this Court considered the merits of the claim and determined that sufficient evidence existed to proceed to trial. . . . Accordingly, because Plaintiff's claim was not frivolous or objectively unreasonable, these two factors militate against an award of attorney's fees.

See Court Opinion, at p.2. Note that these two factors are arguably the most important as they speak directly to whether the goals of the Copyright Act were served by the litigation. The Court stated as to motivation that there was no evidence of improper motive:

> Throughout the course of litigation, Plaintiff has maintained that the purpose of the lawsuit was to secure credit for Randy California, the author of *"Taurus"*, whose musical composition was allegedly stolen by Defendants. . . .
>
> **Defendant, however, has failed to provide any evidence that**

**Plaintiff harbored nefarious motives in bringing this suit.** . . .

Therefore, the motivation factor weighs in favor of Plaintiff and militates against granting fees.

See Court Opinion at p.3 (emphasis added).

Thus, after weighing all the considerations that it was asked to by Defendants, the district court found that an award of fees would not be appropriate:

> Once the media hype and tangential distractions are stripped away, **what remains is an objectively reasonable claim motivated by a desire to recognize Randy California's musical contribution**. . . . Viewing "all the circumstances of [this] case on their own terms, in light of the Copyright Act's essential goals," this Court concludes that attorney's fees are not appropriate. *Kirtsaeng*, 136 S. Ct. at 1989.

See Court Opinion at p.5.

Defendants have raised no reason in this appeal explaining how the district court could have possibly abused its discretion.

3.    **Defendants Spuriously Argue that the Trial Court Erred Because, In their Mind, the Musical Expression in "Taurus" was Unprotected and the Lawsuit was Unreasonable; This Argument Fails Because Defendants Failed to Preserve this Claim of Error and are Improperly Asking this Circuit to Resolve a Dispute of Fact between Musical Experts**

Defendants argue in their opening brief that Plaintiff's song, "Taurus," only consists of unprotected expression. Def. Brief, at p.84-86. Defendants therefore argue that Plaintiff's lawsuit is unreasonable and that the Court's opinion denying costs and fees, which found that Plaintiff's lawsuit was reasonable, should be

reversed. These arguments are factually and legally incorrect, fail to take into account the novel issues of law present, and have been, in any case, waived.

That a party lost does not, in itself, show that its claim was objectively unreasonable. <u>Seltzer</u>, 725 F.3d at 1181. Rather, "a claim is objectively unreasonable when the party advancing it 'should have known from the outset that its chances of success in the case were ***slim to none***.'" <u>Giganews, Inc.</u>, 2015 WL 1746484 at *11 (emphasis added) (quoting <u>SOFA Entm't, Inc. v. Dodger Prods., Inc.</u>, 709 F.3d 1273, 1280 (9th Cir. 2013)). In <u>Seltzer</u>, the Ninth Circuit held that the plaintiff was not objectively unreasonable where it was a close and difficult case, and the defendant's transformative fair use "was far from obvious." <u>Id.</u> ("There is simply no reason to believe that *Seltzer* 'should have known from the outset that [his] chance of success in this case was slim to none[.]'") (citing <u>SOFA Entm't</u>, 709 F.3d at 1280).

### a. The Court Properly Found that there was a Dispute of Fact Between the Opposing Experts Over the Protectability of "Taurus" and its Substantial Similarity to "Stairway to Heaven"

Plaintiff's expert musicologist Dr. Alexander Stewart (and all of Plaintiff's experts) testified that "Taurus" consists of five elements which individually and in combination constituted protected expression; he testified that this protected expression was copied in "Stairway to Heaven". <u>See</u> Excerpt 834-36. Dr. Stewart also testified that the unique combination of musical elements in "Taurus" is found

nowhere in the prior art as of 1971 except in "Taurus" and "Stairway to Heaven". Id. The defense expert, Dr. Lawrence, disagreed and thought that "Taurus"'s expression was not protected.

The district court, having evaluated Plaintiff's expert's and defense expert's contentions at summary judgment, at motions in limine, and at trial, repeatedly rejected the defense argument that there was no triable issue of fact for the jury on substantial similarity. The district court explicitly noted this in its opinion denying costs and fees, observing "the jury did not determine that Plaintiff's claim impermissibly relied on public domain elements or performance aspects of the musical composition." Supp. Excerpt 4.[18]

Defendant now comes to this Circuit essentially asking it to evaluate and credit its expert Dr. Ferrara over Dr. Stewart (without even developing the argument) on substantial similarity and whether Dr. Stewart's opinion has merit. It is simply not the role of an appellate court to make findings of fact such as this. This issue was a dispute of fact for the jury, as the district court held repeatedly. There was no abuse of discretion in the trial court finding that this lawsuit was reasonable

---

[18] Defendants try to claim that because summary judgment was granted for three defendants that therefore a fee award is appropriate. Def. Brief, at p.85. The dismissal of these three defendants does not affect the overall reasonableness of the lawsuit or the other factors, they did not ask for costs and fees, and, in any case, such a contention was not argued below and is waived.

and not frivolous given there were legitimate disputes of fact on substantial similarity.

Defendants also ridiculously argue "as a matter of law, the jury's verdict that the works are not extrinsically substantially similar necessarily means it found Skidmore's claimed similarities are not protected expression." See Def. Brief at p.84. This does not make sense. The jury's verdict did not state that Skidmore's claimed similarities were not protected expression; it stated that that the expression Plaintiff claimed was copied was not similar enough under the extrinsic test (Plaintiff, of course, contends in his appeal the Court improperly instructed the jury on what to compare and how to perform the test).

### b. Defendants Ignore that There Were Novel Issues of Law At Play Which Precluded a Finding that Plaintiff's Lawsuit was Unreasonable or Frivolous

Defendants ignore that novel issues of law were at play which substantially affected this case, and which warranted denying fees. "A claim is objectively unreasonable when the party advancing it 'should have known from the outset that its chances of success in the case were *slim to none*.'" Giganews, Inc., 2015 WL 1746484 at *11 (emphasis added) (quoting SOFA, 709 F.3d at 1280).

There is no indication whatsoever that Plaintiff should have known from the outset that he would not prevail on substantial similarity, much less that his chances

were slim to none. Indeed, the Court concluded in denying summary judgment that reasonable minds could differ on the subject—even when restricting the substantial similarity comparison to strictly the notes on the deposit transcription of "Taurus". See Excerpt 2144; Supp. Excerpt 4, 7.

Plaintiff also notes that the Court's rulings on the scope of protected expression with respect to the deposit copy are completely novel; these holdings are new issues that have not been significantly litigated.[19] Plaintiff reasonably relied on the Williams v. Bridgeport Music case decided in the Central District of California in 2014, see Excerpt 2115-16, which held that it was permissible to look at the composition contained within the recording of a song as long as it was represented in some way in the deposit copy. See Williams v. Bridgeport Music, 13-cv-6004 (April 12, 2016) (ECF No. 554), at p.5.[20] The Blurred Lines court allowed the experts to interpret the deposit copy and create re-recordings of the composition in the album recording; those re-recordings focused only on the protectable compositional elements in the album recordings which were represented/embodied in the deposit

---

[19] Indeed, prior courts have permitted the sound recordings to be played in cases applying the 1909 Act.

[20] Plaintiff it should be noted always made clear that his argument regard the Williams case was made in the alternative given that his argument that the deposit copy does not control the scope of the musical composition under the 1909 Act was denied.

copy (excluding performance elements). Id. These re-recordings were admissible in the Williams case and resulted in a verdict for the claimant. It should be noted that Plaintiff tried to introduce such re-recordings in this case but they were ruled inadmissible.

The lower court did not agree with the Williams court, and instead restricted the comparison to solely the exact notes in the deposit copy of "Taurus." Excerpt 734-35. The lower court's ruling was the only time in history that a court has precluded recordings of the song at issue from being played in music copyright infringement case. Indeed, Plaintiff's substantive appeal argues this limitation is plain reversible error.

Setting aside Plaintiff's disagreement with that ruling, there was no way for Plaintiff to know that this would be the ruling of the Court on that critical issue when this suit was filed. SOFA Entm't., 709 F.3d at 1280 (stating objective unreasonableness is determined if a party knew that at the "outset that its chances of success in the case were slim to none").

Plaintiff also had no way of knowing that the Court would select the jury instructions that it did, which had a large effect on the outcome of the case. The Court, for instance, completely excluded any instruction on the inverse ratio rule, on the protectability of combinations and arrangements of musical elements, and

misdefined originality. <u>See</u> Plaintiff Brief, at p.53, 55, 59 [incorporated here by reference]

Defendants' claims of frivolousness and objective unreasonableness are baseless and use hindsight to make it seem like their prevailing in this case on substantial similarity was inevitable. The fact of the matter is that there is nothing in the record that shows that Plaintiff "should have known from the outset that its chances of success in the case were slim to none." <u>SOFA Entm't.</u>, 709 F.3d at 1280.

### c. Defendant Waived any Reasonableness/Frivolousness Argument by Failing to Appeal the Underlying Rulings, Failing to Develop this Point in the Costs and Fees Motion, and By Failing to Develop this Argument in its Opening Brief

Defendant has waived every aspect of the reasonableness and frivolousness argument many times over.

**First**, Defendant is essentially arguing that there is no evidence to support a substantial similarity comparison, that summary judgment should have been granted in their favor, and that therefore this lawsuit was unreasonable. Def. Brief, at p.86 ("Summary judgment should have been granted to all defendants."). But the Court ruled that there was a triable issue of fact on substantial similarity and rejected their summary judgment motion. <u>See generally</u> Excerpt 117.

Because Defendant never appealed that summary judgment order, it is law of the case and cannot be disputed here. FRAP 3(c)(1)(B) (requiring that a notice of

appeal "designate the judgment, order, or part therefore being appealed"). The notice of appeal only states:

> **PLEASE TAKE NOTICE** that defendant Warner/Chappell Music, Inc., hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order (Document 312) entered in this action on August 8, 2016, **denying defendant Warner/Chappell Music, Inc.'s Motion for Award of Attorneys' Fees and Motion for Award of Additional Costs**. A copy of the foregoing Order and the Representation Statement required by Circuit Rule 3-2 are attached to this Notice of Appeal.

 See Def. Notice of Appeal (first emphasis in original); see also Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (notice afforded by a document determines the document's sufficiency as a notice of appeal).

Defendant also failed to even raise in their costs and fees motion in the lower court that the summary judgment order was erroneous, which is a waiver of the issue. Chambers v. Mississippi, 410 US 284, 304 (1973) (stating "questions not raised in the trial court cannot be raised for the first time on appeal").

As the Court itself noted in its opinion denying costs and fees:

> Defendant maintains that the lawsuit was frivolous and objectively unreasonable from its inception because Plaintiff "relied on public domain material and performance elements not protected by the *"Taurus"* copyright." (Def.'s Reply ISO Mot. Atty. Fees 8:10-11, ECF No. 306.) The Court disagrees. **Plaintiff survived a motion for summary judgment, meaning that this Court considered the merits of the claim and determined that sufficient evidence existed to proceed to trial**.

Supp. Excerpt 4 (emphasis added). The Trial Court told Defendant it would have to appeal the summary opinion and other adverse orders on this issue which are the law of the case—even then, Defendant did not do so.

As far as this costs and fees appeal is concerned, the summary judgment order is final and cannot be disturbed.

**Second**, Defendant waived this argument because their underlying motion for costs and fees only conclusorily applied this unprotectability argument *in a single sentence;* in addition, as noted above, that motion did not challenge the summary judgment and trial orders of the district court. See Def. Fees Brief at p.13-14; Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners, 921 F.2d 122, 124-25, n. 1 (7th Cir.1990) (holding that "[a]rguments raised in the District Court in a 'perfunctory and underdeveloped ... manner' are waived on appeal," where the party's "argument to the District Court on this issue consisted of a single, poorly worded statement"").

Defendant cannot now argue the district court failed to take into account arguments that Defendants never properly raised below. Chambers, 410 US at 304 (stating "questions not raised in the trial court cannot be raised for the first time on appeal").

**Third**, this argument was further waived because Defendant's opening brief

fails to develop its argument on unprotectability and why, exactly, the court's summary judgment opinion was wrong. <u>Smith v. Marsh</u>, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

By claiming that Plaintiff's expert's opinion was unreasonable and frivolous, yet failing to actually develop *why*, Defendant has waived the issue.

## 4. Defendant's Litigation Misconduct Argument Does Not Make Sense

Defendant bases a large part of its fee request, and appeal, on alleged litigation misconduct that they think Plaintiff committed. Plaintiff denies that any litigation misconduct occurred and also notes that Plaintiff himself was in any case blameless as Defendants made the accusations against his attorneys, not him. Plaintiff refers this Circuit to his brief opposing costs and fees which details his side of the story. <u>See</u> Supp. Excerpts 38-44. Plaintiff notes that no sanctions were ordered, and that Defendants acted in a thoroughly underhanded manner which far eclipsed anything they accused Plaintiff's counsel of.[21]

---

[21] Plaintiff refers this Circuit to his underlying brief opposing the costs and fees motion where he details how Defendants frivolously contested access and ownership. <u>See</u> Supp. Excerpts 29-33. Furthermore, Defendants also colluded during the litigation to attempt to falsely change the "Taurus" copyright to revoke Plaintiff's ownership, and hid the fact that Dr. Ferrara had a conflict of interest as described in Plaintiff's appeal. <u>See</u> Supp. Excerpts 37-38. The district court did not

However, crucially, the district court counted this factor in Defendant's favor, *but still found against awarding costs and fees*. In light of the fact that the Court duly considered everything placed before it by Defendant, there is simply no reason to believe that any abuse of discretion took place on the part of the trial judge.

Defendant, lacking any real basis for an appeal on this issue, complains that the trial judge treated "litigation misconduct" as a "sixth <u>Fogerty</u> factor," when according to Defendants it should have somehow been considered as an "independent basis." <u>See</u> Def. Brief, at p.89.

However, Defendant cites no case law to support their confusing position and its argument in fact contradicts the <u>Kirtsaeng</u> case they rely on. The Supreme Court has held that the five Fogerty Factors are non-exclusive guidelines and that a trial court has "broad discretion" to "take into account a range of considerations." <u>Kirtsaeng</u>, 136 S. Ct. at 1985, 1988-89. One of those considerations is litigation misconduct:

> For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses. <u>See, e.g.</u>, <u>Viva Video, Inc. v. Cabrera</u>, 9 Fed.Appx. 77, 80 (C.A.2 2001). . . . **Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals**.

---

mention or consider this evidence in denying the fees, although it is further support for denial of fees.

Id. at 1988-89 (emphasis added).

Contrary to Defendant's position, the Supreme Court could not have been clearer in Kirtsaeng that the considerations in Fogerty, including alleged misconduct, are to be considered in relation to each other "in light of the Copyright Act's essential goals." Id. at 1989. Moreover, "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." See Fogerty, 510 US at 534 (quotation marks omitted). No one consideration is to be dispositive, contrary to Defendant's argument. Defendant's position, that the district court somehow erroneously evaluated litigation misconduct under Kirtsaeng by evaluating all the considerations, is baseless.

Moreover, even if the alleged misconduct had been somehow been considered incorrectly, Defendant does not establish or explain how such an alleged error would have changed the Court's cost and fees decision. Defendant's failure to establish harmful error constitutes a waiver of this critical issue. See Chaidez v. US, 133 S. Ct. 1103, 1108 (2013) (stating failure to allege or establish prejudice requires denial of appeal); Monotype Corp. PLC v. Int'l Typeface Corp., 43 F.3d 443, 451 (9th Cir. 1994) (stating that litigant must establish that lower decision harmed it); FRCP 61.

# Conclusion

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Honorable Court reverse and vacate the judgment, and remand for a new trial; and also strike the judgment for the bill of costs. The issues complained of, both when considered individually, and as a whole, demonstrate that there were many serious errors that unduly prejudiced Plaintiff's ability to prove substantial similarity. Plaintiff-Appellee also respectfully requests that the cost and fees appeal by Defendant Warner/Chappell be denied as moot if Plaintiff's appeal is successful— or that the appeal be denied as meritless.

*****

*Respectfully submitted,*

Francis Alexander, llc

/s/ Francis Malofiy
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Rd. | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Law Firm / Lawyers for Michael Skidmore*

*/d/ August 16, 2017*

# Statement of Related Cases

There is one related case:

- In <u>Williams v. Bridgeport Music</u>, (15-56880, 16-55089, 16-55626) there are many of the same legal issues in dispute concerning the admissibility of sound recordings and their compositions as it relates to the deposit copy requirement of the 1909 Act.

# Statement of Length Compliance

See attached form.

# Certificate of Service

I hereby certify that a true and correct copy of the foregoing Appellant's Combined Reply Brief and Opening Brief Responding to Defendant's Costs and Fees Appeal have been served upon all counsel of record via electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

*Respectfully submitted,*

Francis Alexander, LLC
/s/ Francis Malofiy
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Rd. | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com
*Law Firm / Lawyers for Michael Skidmore*

*/d/ August 16, 2017*

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-56057; 16-56287

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☒ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [17,746] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [/s/ Francis Malofiy] Date [8/16/2017]

("s/" plus typed name is acceptable for electronically-filed documents)