# Nos. 16-56057 & 16-56287

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

MICHAEL SKIDMORE,
AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST
PLAINTIFF, APPELLANT AND APPELLEE

vs.

LED ZEPPELIN, *ET AL.*
DEFENDANTS AND APPELLEES
AND
WARNER/CHAPPELL MUSIC, INC.,
DEFENDANT, APPELLEE AND APPELLANT

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO.15-cv-03462 RGK (AGRx)

## FURTHER EXCERPTS OF RECORD

PETER J. ANDERSON, ESQ.
LAW OFFICES OF PETER J. ANDERSON,
A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD, SUITE 2010
SANTA MONICA, CA 90401
TEL.: (310) 260-6030
ATTORNEY FOR DEFENDANT, APPELLEE AND
APPELLANT WARNER/CHAPPELL MUSIC, INC.,
AND DEFENDANTS AND APPELLEES

# INDEX

## Further Excerpts of Record

| Tab | Date | Document | Dkt. No. | Page |
|---|---|---|---|---|
| 22 | 3/14/16 | Reply Declaration of Dr. Lawrence Ferrara in support of Motion for Summary Judgment (excerpt) | 129-1 | 645 |
| 23 | 7/25/16 | Reply Declaration of Anderson in support of Warner/Chappell's Motion for Attorneys' Fees (excerpt) | 306-1 | 651 |

i

# Tab 22

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail: hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15 **UNITED STATES DISTRICT COURT**

16 **CENTRAL DISTRICT OF CALIFORNIA**

17 **WESTERN DIVISION**

| | |
|---|---|
| 18  MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| 19          Plaintiff, | |
| 20     vs. | REPLY DECLARATION OF DR. LAWRENCE FERRARA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT |
| 21  LED ZEPPELIN, *et al.*, | |
| 22          Defendants. | |
| 23 | Date: March 28, 2016<br>Time: 9:00 a.m. |
| 24 | |
| 25 | Courtroom of the Honorable<br>R. Gary Klausner<br>United States District Judge |
| 26 | |

27

28

645

# REPLY DECLARATION OF DR. LAWRENCE FERRARA

I, Dr. Lawrence Ferrara, declare and state:

1. I am over the age of 18 and have personal knowledge of the following facts and could competently testify to the following facts if called upon to do so.

2. I am a pianist, a music theorist and a Full Professor of Music and the Director Emeritus of all studies in Music and the Performing Arts in New York University's Steinhardt School.

3. This Declaration is submitted in reply to the Declarations of Dr. Alexander Stewart, Erik Johnson and Brian Bricklin. I will summarize principal problems with those Declarations and, for a more detailed rebuttal, I respectfully refer the Court to my Rebuttal Report attached as Exhibit 3 to this Declaration.

**Dr. Alexander Stewart**

4. Dr. Stewart's Declaration, like his February 10, 2016 Report attached as Exhibit 2 to my February 23, 2016 Declaration in this action, does not analyze the transcription of the "Taurus" musical composition stamped, "Dec 22, 1967" and "Eu 35222" (the "Taurus Transcription") or compare the Taurus Transcription to "Stairway to Heaven" ("Stairway").

5. In his Declaration at page 12, paragraph 29, Dr. Stewart states that my Report did not include a transcription of "Taurus". That, of course, is not true: I analyzed, and included as Visual Exhibit A to my Report, the Taurus Transcription. In his Declaration at page 13, paragraph 33, Dr. Stewart states that my analysis is "evasive" because I analyzed the Taurus Transcription rather than recordings of performances of "Taurus". However, I analyzed the Taurus Transcription because it is my understanding that it is the deposit copy and therefore the copyrighted work. Indeed, I did the same in my analysis of the sheet music deposit copy on behalf of defendants in the Newton v. Diamond case. Also, at page 16, paragraph 48 in his Declaration, Dr. Stewart states that Tracks 6, 7, and 8 on Audio Exhibit A to my Report dated February 10, 2016 are not respectively "Walkin' My Baby Back

1

646

# EXHIBIT 3

**LAWRENCE FERRARA, Ph.D.**
**d/b/a LAWRENCE FERRARA, INC.**
**MUSIC ANALYSIS**

**REBUTTALS TO THE REPORTS AND/OR DECLARATIONS OF**

**DR. ALEXANDER STEWART, MR. ERIK JOHNSON, AND MR. BRIAN BRICKLIN**

**REGARDING**

**"TAURUS" BY RANDY CALIFORNIA**

**And**

**"STAIRWAY TO HEAVEN" BY JIMMY PAGE & ROBERT PLANT**

## I. INTRODUCTION

1. After being asked to perform a comparative musicological analysis of the musical compositions in (1) "Taurus" written by Randy California and (2) "Stairway to Heaven" written by Jimmy Page and Robert Plant (hereafter "Stairway"), I prepared and submitted a Report dated February 10, 2016 (hereafter "the Ferrara Report"). The Ferrara Report, including its Audio Exhibit 1, were made a part of and incorporated in my Declaration dated February 23, 2016 (hereafter "the Ferrara Declaration") attached to Defendants' Motion for Summary Judgment.

2. I received and reviewed the Report dated February 10, 2016, by Dr. Alexander Stewart, in this action, (hereafter "the Stewart Report") and the Declaration of Alexander Stewart in Opposition to Defendants' Motion for Summary Judgment, (hereafter "the Stewart Declaration"). I also reviewed the Declarations of Erik Johnson and Brian Bricklin in Opposition to Defendants' Motion for Summary Judgment, (hereafter respectively "the Johnson Declaration" and "the Bricklin Declaration"). I begin with a response to the Stewart Report.

3. The Stewart Report does not mention the transcription of the "Taurus" musical composition stamped, "Dec 22, 1967" and "Eu 35222" (the "Taurus

1

648

II. B. 3.   THE HARMONIC SIMILARITY RESULTS FROM A DESCENDING LINE CHORD PROGRESSION COMMONLY FOUND IN MUSICAL WORKS THAT PREDATE THE "TAURUS STUDIO VERSION"

10. Similarities in the four-measure chord progressions in the "Taurus Studio Version" and "Stairway" are found in chord progressions in popular music prior to the "Taurus Studio Version", used in classical music as early as the 17th century, and so common that they are sometimes referred to as a "minor line cliché". The lowest notes in the first three measures in the chord progressions under analysis in the "Taurus Studio Version" and "Stairway" move down the chromatic scale.[5]  This is illustrated in Musical Example 1 immediately below in which the guitar part in the first four measures of Section A in the "Taurus Studio Version" is written over the guitar part in the first four measures of "Stairway" in a comparative transcription. Chord symbols (e.g., "Am") are listed above the measures. Such a comparative transcription of the four-measure guitar parts is absent in the Stewart Report. Dr. Stewart admits that the "four-measure passage" contains a descending chromatic bass line, which has been used by many composers through the ages [the Stewart Declaration at pp. 5-6, ¶ 9]. He states that composers have used this "foundational pattern" of "six pitches" in "original and creative ways", but the only new way he identifies in which the "Taurus" recordings and "Stairway" use this "foundational pattern" is to cut it short by one pitch.  [Id. At p. 6, ¶ 10] I do not understand how, and do not agree that, using five-sixths of a "foundation pattern" that is centuries old and common in popular music, is an "original and creative" use.  For example, I understand that "Mary Had a Little Lamb" is in the public domain, and I do not see how using five-sixths of "Mary Had a Little Lamb" is original musical expression. Also, as stated in the Ferrara Declaration at page 3, paragraph 10, other popular songs have ended this "foundational pattern" one pitch short".

11. In Musical Example 1, the notes in the descending chromatic scale are highlighted in red in the first three measures of the four-measure chord progressions in the "Taurus Studio Version" and "Stairway". This descending chromatic scale, a

---

[5]   A "chromatic scale" is a scale in which each pitch is separated from its neighbors by a semitone, the smallest interval in the Western tonal system.  See "scale" in *The Harvard Dictionary of Music*, p. 757.

5

649

musical building block, starts on scale degree 1 (an "a" pitch) and descends in half steps (i.e., chromatically) to scale degree 6 (an "f" pitch).[6]

### MUSICAL EXAMPLE 1

Four-measure guitar parts
Measures 1-4 in Section A in **The "Taurus Studio Version"**
Measures 1-4 in **"Stairway"**



"Dido's Lament"

12.  A chromatic descending scale (or descending line) within a chord progression is common.[7] A very famous example is the chromatic descending line

---

[6] I disagree with many of the notes in the transcription of "Stairway" attached as Visual Exhibit B to the Stewart Report. Among these include the incorrect duration of the notes in the descending chromatic scale. Dr. Stewart transcribes these notes as eighth notes but they are clearly half notes, which are four times longer than eighth notes, as per my transcription attached as **Rebuttal Visual Exhibit C**. Also, I disagree with many of the notes in the transcription of the "Taurus Studio Version" attached as Visual Exhibit C to the Stewart Report, as per my transcription attached as **Rebuttal Visual Exhibit B**.

# Tab 23

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*,<br><br>Plaintiff,<br><br>vs.<br><br>LED ZEPPELIN, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-03462 RGK (AGRx)<br><br>REPLY DECLARATION OF PETER J. ANDERSON IN SUPPORT OF DEFENDANT WARNER/CHAPPELL'S MOTION FOR AWARD OF ATTORNEYS' FEES<br><br>Date: August 8, 2016<br>Time: 9:00 a.m.<br><br>Courtroom of the Honorable<br>R. Gary Klausner<br>United States District Court |

651

# REPLY DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1. I am an attorney admitted to practice before this Court and all Courts of the State of California. I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2. In this action, I represent defendants James Patrick Page, Robert Plant, John Paul Jones, Warner/Chappell Music, Inc. ("Warner/Chappell"), Atlantic Recording Corporation, Rhino Entertainment Company and Warner Music Group Corp. This Reply Declaration is submitted in support of Warner/Chappell's Motion for the award of attorneys' fees.

3. Attached to this Reply Declaration as Exhibit 7 are true and correct copies of pages from the Reporter's Transcript I obtained using PACER, of the trial in *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK, 2014 WL 7877773, that defendants quoted in their Trial Brief in this action (Doc. 223 at 3 n. 1), and where the district judge in *Williams* preliminarily instructed the jury in that action as follows:

> "The works claimed by the Gaye parties in this case are the musical compositions *Got To Give It Up* and *After The Dance*. <u>At the time the copyright in each of these works was separately obtained and registered, only sheet music could be filed by a copyright owner with the copyright office.</u> Sheet music is paper on which notes, lyrics and other musical elements are written in a notation understandable to musicians.
>
> "Recordings of musical compositions could not be filed with the copyright office at that time. Therefore, <u>although sound recordings of *Got To Give It Up* and *After The Dance* were made and released commercially, those particular recordings are not at issue in this case, will not be produced into evidence and will not be played for you during the trial. Instead, you will hear testimony from one or more witnesses from</u>

1      <u>each side about what each thinks is shown on the sheet music for each</u>
2      <u>composition.</u>
3          "<u>You will also hear recorded versions of each work that each side</u>
4      <u>has prepared based on what each side contends is shown in the sheet</u>
5      <u>music that was filed with the copyright office</u> . . . .
6          "<u>You may also hear one or more witnesses use keyboards to play</u>
7      <u>what each says appears on the sheet music.</u>"
8  Rptr's Trans. Trial Proc. Feb. 24, 2015 at 20:8 to 21:7 (emphasis added).
9      4.     Attached to this Reply Declaration as Exhibit 8 is a true and correct
10 copy of pages from the Reporter's Transcript of plaintiff's trial testimony in this
11 action.  Attached to this Reply Declaration as Exhibit 9 is a true and correct copy of
12 portions of the transcript of the deposition of plaintiff in this action.
13     5.     In the depositions taken after the Court's April 25, 2016 tentative
14 rulings granting defendants' motions in limine, I cautioned plaintiff's witnesses that
15 the Court had tentatively ruled testimony as to certain subjects could not be
16 presented to the Jury.  My reason for cautioning those witnesses was to ensure a
17 witness did not innocently volunteer testimony that was precluded and, in case
18 plaintiff's counsel coached a witness to volunteer precluded testimony, to confirm
19 the witness was warned beforehand.  When I provided those cautions in the
20 depositions, plaintiff's counsel, Mr. Malofiy objected and undertook to advise his
21 witnesses of the Court's rulings.  For example, attached to this Declaration as
22 Exhibit 10 is a true and correct copy of portions of the transcript of the deposition of
23 plaintiff's witness, Brian Bricklin, in this action.
24     6.     In opposition to Warner/Chappell's Motion for attorneys' fees, plaintiff
25 submits the Declaration of his counsel, Mr. Fluehr, that the reason plaintiff displayed
26 to the Jury a cropped version of the photograph they produced shortly before trial, is
27 that printing the photograph from Getty's website results in the photograph being
28 cropped to delete two people, including the one to whom Mr. Plant was speaking.

1  However, the photograph that plaintiff produced shortly before trial is labeled "Getty
2  Images," so plaintiff presumably printed it out from the Getty website, and it was not
3  cropped.  Attached to this Declaration as Exhibit 11 is a true and correct copy of the
4  June 9, 2016 e-mail I received from plaintiff's local counsel and the uncropped
5  photograph that was attached to that e-mail.  I have visited the Getty website and,
6  first, the Getty website displays the photograph in its entirety and without cropping.
7  Attached to this Reply Declaration as Exhibit 12 is a true and correct copy of the
8  Getty website's page displaying the photograph.  As a result, even if Mr. Fleuhr's
9  statement is accepted at face value, he could and should have seen that the
10 photograph he sought to print showed five people (with Mr. Plant speaking to
11 someone other than Mr. Andes) while the photograph he printed showed only three
12 (with the person with whom Mr. Plant was speaking deleted.  In addition, I printed
13 out the photograph from Getty's website and, contrary to Mr. Fleuhr's statement, the
14 entire, uncropped photograph was printed.  Attached to this Reply Declaration as
15 Exhibit 13 is a true and correct copy of the photograph as printed from Getty's
16 website.

17       7.    In his opposition, plaintiff argues that there was no reasonable basis for
18 defendants to question the validity of the Randy Craig Wolfe Trust.  However, in
19 discovery plaintiff produced Trust documents showing that the Trust Agreement's
20 last amendment provides that upon the death of plaintiff's co-trustee, Bernice Pearl,
21 the Trust would continue to exist only if it became qualified under federal income
22 tax law as a charitable organization and used its receipts to provide musical
23 instruments to school children. The testimony in this case was that Ms. Pearl died in
24 2009.  Plaintiff failed to produce in discovery any proof that the Trust's condition
25 for continued existence – qualification as a charity and distribution of Trust funds
26 for a particular purpose – ever occurred.  But, defendants' motion (Doc. 83, 87) to
27 compel documents as to whether the Trust is really a charity and really uses its funds
28 for the specified purposes, was opposed by plaintiff and denied by the Magistrate

1 Judge. Order (Doc. 89). In light of the plaintiff's successful refusal to engage in
2 discovery on the subject, defendants confirmed that they could not challenge the
3 Trust's existence. *See, e.g.,* Defs' Oppn. to Pltf's MIL # 1 (Doc. 160) at 1:14 to 2:6:

4 "From plaintiff's motion [in limine no. 1], however, it appears he
5 actually seeks to prevent defendants from raising that an amendment to
6 the Trust Agreement conditions the Trust's continued existence on its
7 qualification as a charitable organization under federal tax law and its use
8 of Trust funds to buy musical instruments for needy children. As plaintiff
9 raises, he successfully resisted defendants' discovery directed to whether
10 the Trust's trustees complied with those conditions. Further, the
11 Magistrate Judge ruled that defendants lack grounds to challenge whether
12 those conditions had been met. Order (Doc. 89) at 2. Given that ruling
13 and since plaintiff has not produced the requested information and
14 documents, defendants cannot challenge whether the conditions were
15 met. And, since plaintiff successfully argued that satisfying the
16 conditions is not a requirement for the Trust's continued existence, and
17 refused discovery on the issue, neither can plaintiff claim a need to prove
18 the conditions were met. As a result, to the extent plaintiff seeks to
19 preclude evidence or argument as to those conditions, the motion is
20 moot."

21 8. In his opposition, plaintiff argues that there was no reasonable basis for
22 defendants to question the Trust's standing to sue. However, the plaintiff would
23 lack standing if, for failure to satisfy the Trust Agreement's express condition
24 described in the preceding paragraph, the Trust did not continue to exist. Also, there
25 was a separate reason to question the Trust's standing: in discovery plaintiff failed to
26 timely respond to Federal Rule of Civil Procedure 36 requests for admission and, as
27 a result, was deemed to have admitted that the *Taurus* musical composition is a work
28 for hire. In addition, the recordings plaintiff produced and which he claimed were

4

public performances of *Taurus* differed from both the *Taurus* deposit copy and the commercially released recording of *Taurus*, and Mr. Ferguson testified in deposition that the compositions were works in progress. Accordingly, and including on the basis of plaintiff's own failure to respond to discovery after multiple warnings, defendants raised in their summary judgment motion that, plaintiff lacked standing to sue. *See,* Defs' Memo. *re* Summary Judgment (Doc. at 97-1) at 5-6. Further, once the Court relieved plaintiff of his deemed admission, defendants did not pursue the work for hire argument.

9. In his opposition, plaintiff argues that there was no reasonable basis for defendants to question the Trust's acquisition of Randy Wolfe's claimed rights in the *Taurus* musical composition. However:

(a) Plaintiff conceded that Quinn was Wolfe's sole heir;

(b) When Ms. Pearl petitioned the Superior Court for approval of the creation of the Trust, the proposed Trust Agreement she presented included that all of Mr. Wolfe's assets – including any interest he had in the *Taurus* musical composition – were to be distributed <u>to Quinn</u> when he reached 22 years of age;

(c) The Superior Court's Order granting her petition made other changes, but did not change that when Quinn reached 22 years of age the Trust was to terminate and its assets were to be distributed <u>to Quinn</u>;

(d) The Trust Agreement that Ms. Pearl actually signed, however, changed the provision requiring distribution to Quinn when he turned 22 years of age, to distribution to Quinn when Ms. Pearl died;

(e) Further, Ms. Pearl then amended the Trust Agreement to disinherit Quinn altogether and provide that the Trust assets instead would go to Ms. Pearl's brother and then, by other amendments, to others, but never to Quinn; and

(f) Plaintiff testified that he understood that Ms. Pearl

5

656

1     disinherited Quinn because he was Wolfe's "illegitimate son" since
2     Wolfe had never married Quinn's mother.

3 *See,* Trial Exh. 2016, 450-55; Defs' Offer of Proof (Doc. 253) at 1, 6. Defendants
4 contended that the evidence establishes defendants' unclean hands defense. Defs'
5 Memo. of Contentions of Fact & Law (Doc. 157) at 9, 14.

6     10. In his opposition, plaintiff argues that there was no reasonable basis for
7 defendants to contend that Wolfe abandoned the claim that *Stairway to Heaven*
8 copied *Taurus*. However, in including waiver and abandonment as alternate grounds
9 for summary judgment, defendants relied on Wolfe's own recorded 1991 statements
10 that he was not bothered by the similarity between *Taurus* and *Stairway*, that "if they
11 wanted to use" *Taurus* "that's fine," "I'll let them have the beginning of Taurus for
12 their song without a lawsuit" and he was "letting them off the hook." Freeman Decl.
13 (Doc. 97-8) at 1-2, ¶¶ 3, 6, Exh. 6 at 29-30.

14     11. In his opposition, plaintiff asserts that defendants had no reasonable
15 basis to challenge plaintiff's claim of access. However, and for example, plaintiff's
16 own witnesses, the surviving members of Spirit, testifed that at the relevant time
17 they were publicly performing their new songs and hit songs, which did not include
18 *Taurus*, that *Taurus* was never released as a single and that they never saw any
19 member of Led Zeppelin present when *Taurus* was performed. Also, while Mr.
20 Page presently has Spirit albums in his record collection, he knew only their more
21 successful albums, which did not include *Taurus*, and his record collection includes
22 records given to him, left at his house and remaining from his daughter's collection.

23     12. In his opposition, plaintiff asserts that defendants "apparently worked
24 with Hollenbeck Music" to cause it to file with the Copyright Office forms
25 correcting the registration and renewal of copyright in the *Taurus* musical
26 composition. Plaintiff's assertion is incorrect. In the course of discovery, I directed
27 a subpoena to Hollenbeck Music and it produced documents, including the corrected
28 registration and renewal. I was not aware that corrected forms would be filed and

6

657

1 learned of them only after they were produced to me.

2     13. In his opposition, plaintiff asserts that I purported to waive a supposed
3 conflict that Dr. Ferrara had in serving as defendants' expert in this case. Again,
4 plaintiff's assertion is incorrect. Rather, Universal Music Publishing and Rondor
5 International, who had previously consulted Dr. Ferrara, waived any objection they
6 had to Dr. Ferrara being engaged by defendants. I also note that although plaintiff
7 now refers to Hollenbeck Music as "Plaintiff's publisher," plaintiff produced no
8 publishing agreement between Hollenbeck Music or any other company, on the one
9 hand, and either plaintiff or Mr. Wolfe. Despite multiple requests for production
10 directed to plaintiff in this case and which would have included any such agreement,
11 the only agreement that plaintiff produced is the August 29, 1967 Exclusive
12 Songwriter's and Composer's Agreement between Mr. Wolfe and Hollenbeck Music
13 (Trial Exhibit 2070), which provides that Mr. Wolfe's compositions are owned by
14 Hollenbeck Music, either as works for hire or by assignment for both the initial and
15 renewal terms of copyright.

16     14. Helene M. Freeman and her firm, Philips Nizer, have served as personal
17 counsel to Mr. Page, Mr. Plant and Mr. Jones throughout the pendency of this action
18 and shared with me responsibility for their defense. Ms. Freeman has actively
19 participated in their defense, from the filing of this action through discovery and
20 trial. However, Mr. Page, Mr. Plant and Mr. Jones are not seeking recovery of her
21 and her firm's attorneys' fees and costs. As a result, recovery of only a portion of
22 the attorneys' fees and costs incurred in the successful defense of this action –
23 namely the portion incurred by Warner/Chappell – is sought.

24     15. In his opposition, plaintiff asserts that the Jury deliberated for six hours
25 before reaching a verdict. Actually, however, the Jury quickly requested the trial
26 exhibits but, due to the problems with plaintiff's exhibits, the Court's clerks took
27 over four hours working in counsel's presence and with counsel to gather the trial
28 exhibits, which the Jury did not receive before the Court ended their deliberations at

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2017, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that at least one of the counsel for each participant in the case is a registered CM/ECF user.

Dated: November 9, 2017          /s/ Peter J. Anderson
                                    PETER J. ANDERSON