# Nos. 16-56057 & 16-56287

DATE OF DECISION: SEPTEMBER 28, 2018

JUDGES PAEZ AND IKUTA AND DISTRICT JUDGE VITALIANO

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

## MICHAEL SKIDMORE,
## AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST

PLAINTIFF, APPELLANT AND APPELLEE

VS.

## LED ZEPPELIN, ET AL.

DEFENDANTS AND APPELLEES

AND

## WARNER/CHAPPELL MUSIC, INC.,

DEFENDANT, APPELLEE AND APPELLANT

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO.15-cv-03462 RGK (AGRx)

## PETITION FOR PANEL REHEARING AND REHEARING EN BANC

PETER J. ANDERSON, ESQ.
LAW OFFICES OF PETER J. ANDERSON, A P.C.
100 WILSHIRE BOULEVARD, SUITE 2010
SANTA MONICA, CA 90401
TEL.: (310) 260-6030
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE ET AL. AND
DEFENDANT, APPELLEE AND APPELLANT
WARNER/CHAPPELL MUSIC, INC.

HELENE M. FREEMAN, ESQ.
PHILLIPS NIZER LLP
485 LEXINGTON AVENUE, 14TH FLOOR
NEW YORK, NY 10017
TEL: (212) 977-9700
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT AND JOHN PAUL JONES

# **TABLE OF CONTENTS**

INTRODUCTION AND RULE 35(B) STATEMENT ..............................................1

STATEMENT OF THE CASE..................................................................2

ARGUMENT ..................................................................................4

1. THE PANEL ERRED IN FINDING REVERSIBLE ERROR IN THE
   JURY INSTRUCTIONS ..................................................................4

    (a)    The Omission of a Selection-and-Arrangement Instruction Does
   Not Warrant Another Trial.............................................................4

        (1)    Plaintiff Invited and Waived the Claimed Error.........................4

        (2)    The Evidence at Trial Fell Short of *an Arrangement* of
   Selected Elements .......................................................6

    (b)    The Jury Instructions on Originality Correctly State the Law and
   Were within the District Court's Discretion .........................................7

        (1)    Copyright Does Not Protect Musical Scales, Arpeggios or
   Short Sequences of Three Notes—Here, "Do-Re-Mi"..............7

        (2)    Public Domain Elements Do Not Become Protected When
   Included in a Work....................................................9

        (3)    The District Court Acted within Its Discretion in Omitting
   the Model Instruction's Optional "New or Novel"
   Language...............................................................11

    (c)    More Probably than Not, the Result Would Be the Same .................12

2. THE PANEL DECISION FAILS TO PROVIDE THE REQUIRED
   DEFERENCE TO THE DISTRICT COURT'S FRE 403 RULING ...........13

3.  THE EN BANC COURT SHOULD CONFIRM THAT THE
    REQUIRED STANDARD OF SIMILARITY DEPENDS ON THE
    CLAIMED SIMILARITY AND NOT THE GENRE OF THE WORK ......15

4.  THE EN BANC COURT SHOULD JOIN ITS SISTER CIRCUITS IN
    REJECTING THE INVERSE-RATIO RULE ...............................................17

5.  THE PANEL DECISION RAISES ISSUES OF EXCEPTIONAL
    IMPORTANCE AND, IF NOT REHEARD, WILL HAVE
    DRAMATICALLY ADVERSE EFFECTS ................................................19

CONCLUSION ...............................................................................................20

CERTIFICATE OF COMPLIANCE....................................................................22

CERTIFICATE OF SERVICE ...........................................................................23

ADDENDUM 1 ..............................................................................................24

    *Taurus* Deposit Copy..............................................................................24

ADDENDUM 2 ..............................................................................................26

    Transcription of the first four measures
    of *Taurus* and *Stairway to Heaven* .............................................................26

ADDENDUM 3 ..............................................................................................28

    9th Cir. Model Civil Instruction 17.13 .......................................................28

ADDENDUM 4 ..............................................................................................31

    Slip Opinion...........................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987) ...........................................19

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) ...............16

*Arc Music Corp. v. Lee*, 296 F.2d 186 (2d Cir. 1961) ...................................... 18, 19

*Beal v. Paramount Pictures Corp.*, 20 F.3d 454 (11th Cir. 1994) ..........................19

*C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014) ...............................................5

*Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983 (9th Cir. 2009)............7

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) .................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340
    (1991)........................................................................... 9, 10, 11, 16, 19

*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768 (9th Cir. 2018)........................15

*Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525 (9th Cir. 1987).................16

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) .............7

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ...................................4

*Johnson v. Gordon*, 409 F.3d 12 (1st Cir. 2005) .......................................................8

*Lambert v. Ackerley,* 180 F.3d 997 (9th Cir. 1999) (en banc)................................12

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936
    (9th Cir. 2011) ..........................................................................11

*Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904 (9th Cir. 2010) ............................15

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002),
    *aff'd,* 388 F.3d 1189 (9th Cir. 2004) ....................................................8

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) ...............................................14

*Peters v. West*, 692 F.3d 629 (7th Cir. 2012)...........................................................19

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) .......................... 16, 18, 20

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ............................................6

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) ............................................. 7, 8, 15

iii

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) ................................................................17

*Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881 (9th Cir. 2005)
  (en banc) ...............................................................................................17

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996)........................................8

*Sophia & Chloe, Inc. v. Brighton Collectibles, LLC*, 708 F. App'x 460
  (9th Cir. 2018) ......................................................................................16

*Stewart v. Abend*, 495 U.S. 207 (1990) ...................................................10

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) .....................................8, 9

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000)............18

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) ................17

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000)..........................14

*United States v. Layton*, 767 F.2d 549 (9th Cir. 1985)............................14

*Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018).....................................16

**STATUTES**

17 U.S.C. § 103 .........................................................................................10

**OTHER AUTHORITIES**

Compendium of U.S. Copyright Office Practices (3d ed. 2014) ........................8

*Exploding the "Inverse Ratio Rule,"* D. Aronoff,
  55 *J. Copyright Soc'y U.S.A.* 125 (2007-08).......................................18

Federal Rule of Civil Procedure 51, advisory committee's note
  (2003 amendment)..................................................................................5

Harvard Dictionary of Music (Don Michael Randel ed., 4th ed. 2003) ..........14

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976).............................10

**RULES**

Federal Rule of Civil Procedure 51 ...........................................................5

Federal Rule of Evidence 403....................................................................13

**TREATISES**

M. NIMMER, NIMMER ON COPYRIGHT (1976)............................................................17

M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT (2018)....................................19

WILLIAM F. PATRY, PATRY ON COPYRIGHT (2018) ...................................................19

## <u>INTRODUCTION AND RULE 35(B) STATEMENT</u>

After a five-day trial, a unanimous jury found no substantial similarity under this Circuit's extrinsic test, between the opening measures of *Stairway to Heaven* and an instrumental composition titled *Taurus*, rejecting plaintiff's forty-seven-year-old copyright infringement claim. Plaintiff made no post-trial motions and concedes substantial evidence supports the verdict.

The panel decision, however, concludes the district court erred in its jury instructions, vacates the judgment and remands for another trial.

Respectfully, the decision errs in faulting the district court for omitting a selection-and-arrangement instruction even though plaintiff objected to the district court giving it, and for instructing—correctly—that copyright does not protect public domain elements. The decision also errs because more probably than not the verdict would have been the same. The errors warrant en banc review because if left uncorrected they allow a jury to find infringement based on very different uses of public domain material and will cause widespread confusion in copyright cases in this Circuit.

En banc review also is necessary to confirm the required standard—substantial similarity or virtual identity—for selection-and-arrangement claims and to resolve a Circuit split as to this Court's inverse-ratio rule. These issues have

extraordinary importance to the creators of music, movies and other works and to the courts in this Circuit that must apply copyright law.

## STATEMENT OF THE CASE

Nearly a half-century after the 1971 release of *Stairway to Heaven*, plaintiff sued alleging *Stairway to Heaven*'s first two-and-a-half measures infringe a copyright in the *Taurus* sheet music. Addendum 1. Both compositions start with chords that plaintiff's two experts testified at trial are commonplace and both employ a musical device or idea that plaintiff's expert also testified is commonplace, an arpeggio, *i.e.*, "breaking" chords so their constituent pitches are heard separately rather than simultaneously. IV–ER–765:4-7, 831:2-12, 831:13-832:2. It is undisputed the "broken" chords' pitches are played in a different order in *Taurus* and *Stairway to Heaven* and, as a result, their melodies are different. IV–ER–815:17-816:5; Answering & Opening Brief ("AOB") at 25. However, their melodies' lowest pitches are a descending chromatic scale—that is, the white and black keys of a piano played in order, right to left. Addendum 2.

Plaintiff's musicologist admitted *Taurus* and *Stairway to Heaven* are very different compositions. IV–ER–826:16-827:18. While he testified the "combination" of a descending chromatic scale and other commonplace elements

2

is unique (IV–ER–781:4-12), he admitted the elements are used differently (IV–ER–814:7-821:18). AOB at 18-21, 22-27, 65.

The district court instructed the jury that "[a]n original work may include or incorporate elements taken from prior works or…the public domain," which includes descending chromatic scales, arpeggios and short sequences of three notes, but the author's contributions having "at least some minimal creativity" are protected. I–ER–31. Prior to trial, defendants proposed a selection-and-arrangement instruction, but plaintiff objected to it, and plaintiff proposed an instruction that copyright lies in "combinations" of unprotected elements, but he did not object at trial when the district court omitted it.

Faced with evidence that plaintiff relied on commonplace elements used differently in *Taurus* and *Stairway to Heaven*, the eight-person jury found no substantial similarity under the extrinsic test, and judgment was entered for defendants.

The panel decision vacates the judgment on the grounds of instructional error. The decision finds an evidentiary ruling as to access harmless, but concludes the district court abused its discretion. The decision also directs the district court to consider instructing the jury on the inverse-ratio rule at the retrial.

## ARGUMENT

## 1. THE PANEL ERRED IN FINDING REVERSIBLE ERROR IN THE JURY INSTRUCTIONS

### (a) The Omission of a Selection-and-Arrangement Instruction Does Not Warrant Another Trial

The panel decision concludes the district court erred by not instructing the jury that the selection and arrangement of unprotectable elements can be protectable. Slip op. at 14-18. However, plaintiff invited and waived the claimed error and the evidence did not justify the instruction.

### (1) Plaintiff Invited and Waived the Claimed Error

Three months before trial, defendants proposed a selection-and-arrangement instruction, but plaintiff objected to the district court giving it. VIII–ER–2032-34. Plaintiff cannot "invite the district court to err and then complain of that very error." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 386 (9th Cir. 2010).

Also three months before trial, plaintiff proposed an instruction that the jury "may find a combination of unprotectable elements to be protectable." VIII–ER–1968. That is not a proper selection-and-arrangement instruction; the district court never rejected it on the record; and plaintiff never objected at trial when the district court omitted it. VI–ER–1283-1309, 1392:3-1393:8. That is a clear waiver because a party may assign as error failure to give an instruction only "if that party

properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected." Fed. R. Civ. P. 51(d)(1)(B), & advisory committee's note (2003 amendment) (requiring objection to omission of previously proposed instruction avoids inadvertent omissions).

The panel decision found no waiver because at the conclusion of evidence and before identifying the instructions it intended to give, the district court stated it did not want oral objections. Slip op. at 16. The record shows that although the district court stated it did not want to "discuss" instructions (VI–ER–1284:21-1285:4), the district court proceeded to engage in extensive discussions with counsel, permitting plaintiff to argue the instructions (VI–ER–1292:24-1294:7, 1302:6-1304:9), propose a new one (VI–ER–1307:22-1308:11) and raise the omission of an inverse-ratio rule instruction (VI–ER–1308:22-1309:10). Plaintiff could also have raised the omission of a selection-and-arrangement instruction—if he truly wanted one. *See below* at 6-7.

Plaintiff invited and waived the claimed error, which is not reviewable under the strict plain error standard in civil cases. *C.B. v. City of Sonora*, 769 F.3d 1005, 1018-19 (9th Cir. 2014).

### (2)   The Evidence at Trial Fell Short of *an Arrangement* of Selected Elements

A selection-and-arrangement instruction was not warranted because plaintiff's experts admitted the commonplace elements in *Taurus* and *Stairway to Heaven* are used differently, rather than creating the same arrangement or pattern. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1179 (9th Cir. 2003).  That is why plaintiff insisted the jury hear his guitarist's recording of *Taurus*' bass clef with the descending chromatic scale, and not the treble clef with its commonplace elements organized differently.  AOB at 71; Addendum 1.

The panel decision states defendants' objections to plaintiff's proposed instructions conceded plaintiff relied at trial on a selection-and-arrangement theory.  Slip op. at 16.  Defendants' objections predated the trial by three months, so they could not have conceded the evidence plaintiff adduced at trial.  VIII–ER–1968-69.

The decision dismisses as "split[ting] hairs" that plaintiff's expert claimed a "combination" of unprotected elements rather than a selection and arrangement. Slip op. at 16-17.  But a case the decision cites as referring to "combination," confirms "a combination of unprotectable elements is eligible for copyright protection <u>only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of</u>

authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). That is why plaintiff's "combination" fell short and he objected to a selection-and-arrangement instruction. VIII–ER–2032-34.

Because plaintiff relied on the presence of unprotected elements used differently, a selection-and-arrangement instruction was not warranted.

**(b)** **The Jury Instructions on Originality Correctly State the Law and Were within the District Court's Discretion**

**(1)** **Copyright Does Not Protect Musical Scales, Arpeggios or Short Sequences of Three Notes—Here, "Do-Re-Mi"**

The panel decision erred in rejecting jury instruction no. 16 that copyright does not protect "common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes." Slip op. at 19 n. 6, 20.

This Circuit mandates an instruction identifying the unprotected elements everyone is free to use. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 206, 207-08 (9th Cir. 1989) (identifying unprotected elements "protect[s] legitimate activity"); *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009). The unprotected elements here include descending chromatic scales, arpeggios and a short sequence of three notes, namely "Do-Re-Mi."

The chromatic scale is one of Western music's two principal scales and plaintiff's expert admitted it is commonplace and predates *Taurus*. IV–ER–

7

788:19-789:14; *Satava*, 323 F.3d at 811 ("expressions that are standard, stock, or common to a particular subject matter or medium are not protectable"); *Johnson v. Gordon*, 409 F.3d 12, 21-22 (1st Cir. 2005) (descending scale is commonplace); COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 802.5(A) (3d ed. 2014) (chromatic scale is public domain).

An arpeggio is the musical device or idea of playing a chord's notes separately. Plaintiff's expert testified arpeggios are common in 1960s music. IV–ER–831:2-22; *Smith v. Jackson*, 84 F.3d 1213, 1216 n. 3 (9th Cir. 1996) ("common or trite" musical elements not protected); COMPENDIUM § 802.5(A) (arpeggios are public domain).

A short sequence of three notes falls far short of the seven notes this Court has stated might in theory be protected. *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004); *see also Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253-56 (C.D. Cal. 2002) (three notes not protectable), *aff'd,* 388 F.3d 1189 (9th Cir. 2004) (copying de minimis; "no reasonable juror could find [three note sequence] a significant portion of the composition as a whole"); COMPENDIUM § 313.4(B) (three-note sequence not copyrightable). Moreover, plaintiff's only claimed three-note similarity here is "Do-Re-Mi" (AOB at 17-21, 27), which is too short for protection <u>and</u> part of an unprotected scale.

8

The panel decision states instruction no. 16 "runs contrary to our conclusion in *Swirsky* that a limited number of notes can be protected by copyright." Slip op. at 20. However, *Swirsky* referred to the possible protection of "an arrangement of a limited number of notes," in that case, seven. *Swirsky*, 376 F.3d at 851. There is no original arrangement in repeating the descending notes of a musical scale, in the idea of breaking chords or in the notes, "Do-Re-Mi."

The decision states plaintiff's expert testified *Taurus* uses the descending chromatic scale in an original manner. Slip op. at 20-21. But he claimed originality in using five rather than six notes of the unprotected scale. AOB at 68-69. Moreover, even using unprotected elements in an original way does not protect the unprotected elements. *See below* at 9-10.

The jury was properly instructed that these elements are unprotected.

### (2) Public Domain Elements Do Not Become Protected When Included in a Work

The panel decision also erred in rejecting the district court's instruction no. 20 that "elements from prior works or the public domain are not considered original parts and not protected by copyright." Slip op. at 19 n. 7, 21-22.

It is axiomatic that incorporating public domain elements in a work "has no effect one way or the other on the…public domain status of the preexisting material." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359 (1991),

9

*quoting* H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 57 (1976). An author "may receive protection only for his original additions to" public domain material. *Stewart v. Abend*, 495 U.S. 207, 234-35 (1990); 17 U.S.C. § 103(b). Otherwise, each time an unprotected element is used it would be pulled from the public domain and belong to the user.

At dramatic odds with these fundamental principles, the panel decision states instruction no. 20 "misleadingly suggests that public domain elements such as basic musical structures are not copyrightable, even when they are arranged or modified in a creative, original way." Slip op. at 22-23 (instructions created false "impression that public domain elements are not protected by copyright in any circumstances") & at 15 ("some of" claimed similarities, which are all unprotectable (AOB at 18-21), "were protected"). However, public domain elements are never, under any circumstances, protected by copyright.

The decision states originality only requires independent creation and a minimal amount of creativity. Slip op. at 22. But public domain elements are not original to the author of a work that incorporates them. *Feist*, 499 U.S. at 347.

The decision directly conflicts with fundamental copyright law.

### (3)   The District Court Acted within Its Discretion in Omitting the Model Instruction's Optional "New or Novel" Language

The jury was instructed that infringement is the copying "of original elements of a copyrighted work" and the original elements are those the author created independently and "by use of at least some minimal creativity." I–ER–27, 31; slip op. at 19 n. 7.  That correctly states the law.  *Feist*, 499 U.S. at 348.

The panel decision faults the district court for omitting from a Model Jury Instruction that the author's contribution "need not be new or novel." Slip op. at 19, *quoting* 9th Cir. Model Jury Instruction 17.13.  The Model Instruction brackets that language, identifying it as optional.  *Id.*; Addendum 3.  And plaintiff's opening statement (II–ER–258-60), experts (IV–ER–755:6-21, 776:5-9, 781:4-12, 786:9-787:7, 788:19-789:14, 802:19-24, 811:12-813:2, 17-22) and closing (VI–ER–1316:1-1317:23, 1336:1-24, 1338:24-1339:3) all claimed *Taurus*' use of unprotected elements is novel or unique.  Since plaintiff tried his case on the theory novelty was present, there was no need to instruct that novelty is unnecessary. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Also, the language is redundant of the instruction that the author's contribution need only have "some minimal creativity."

The district court had discretion to omit from a Model Instruction redundant optional language inapplicable to plaintiff's theory. *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 941, 943 (9th Cir. 2011).

### (c)   **More Probably than Not, the Result Would Be the Same**

The panel decision also erred because the record as a whole confirms that more probably than not, the jury would have reached the same verdict. *Lambert v. Ackerley,* 180 F.3d 997, 1008 (9th Cir. 1999) (en banc).

Plaintiff's experts admitted that descending chromatic scales (IV–ER–762:3-15, 827:21-828:13), arpeggios (IV–ER–831:13-22) and other public domain elements they cited (IV–ER–764:8-10, 765:4-7, 815:2-6, 821:13-21, 831:2-12) predate *Taurus*.  They claimed, and plaintiff argued in opening and closing, that *Taurus'* "combination" of those elements is novel or unique.  The jury was instructed original works may include elements from prior works or the public domain and, while those elements are not protected, copyright does "protect the author's original expression in a work," which need only have "some minimal creativity."  I–ER–28, 31.  On those instructions and had the jury believed plaintiff's experts, they would have found for plaintiff.  But, for good reason, they believed defendants' expert.  IV–ER–942:24-983:11; V–ER–989:21-1031:2; AOB at 22-27.

Omitting the instruction that descending chromatic scales and arpeggios are unprotected would not have changed the outcome. Plaintiff's experts testified those elements predate *Taurus*, so they are excluded from protection by the instructions that originality is in the author's original expression. I–ER–28, 31. Also, adding a selection-and-arrangement instruction would only have raised the bar beyond plaintiff's reach by requiring an original arrangement of sufficiently numerous elements used in a virtually identical way.

More probably than not, the result would have been the same without the claimed errors.

## 2. THE PANEL DECISION FAILS TO PROVIDE THE REQUIRED DEFERENCE TO THE DISTRICT COURT'S FRE 403 RULING

At trial, the district court excluded recordings of the band Spirit performing *Taurus* because those recordings are not the copyrighted work. I–ER–115. On the issue of access, however, the district court allowed plaintiff to play the recordings for Mr. Page without the jury present and then question him in the jury's presence as to when he first heard them. That ruling was based on the district court's factual finding that any probative value of playing the recordings in the jury's presence was outweighed by the likelihood of confusion. Fed. R. Evid. 403; III–ER–591:17-592:9, 596:25-597:10.

The panel decision concludes the district court abused its discretion because the jury did not see Mr. Page listening to the recordings, and the panel considers the risk of jury confusion low. Slip op. at 33-34. However, "[t]he Rule 403 weighing process—that of balancing the probative value of the proffered evidence against its potential for unfair prejudice or confusion of the issues—is primarily for the district court to perform." *United States v. Layton*, 767 F.2d 549, 553 (9th Cir. 1985). Accordingly, district court Rule 403 rulings are entitled to considerable deference. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).

The panel decision fails to provide that deference to the district court's ruling, which was reasonable and well-founded. In the presence of the jury, plaintiff questioned Mr. Page at length as to when he first heard Spirit's recordings. III–ER–479:25-504:25. Any probative value of also watching him listen to the recordings is speculative at best. Indeed, the jury found access without having watched him listen. On the other hand, the risk the recordings would confuse the jury is very real. The versions of *Taurus* that Spirit performed in the studio and concerts differ from the copyrighted *Taurus* composition, and the recordings include unprotected performance elements present in rock recordings of the time (*Newton v. Diamond*, 388 F.3d 1189, 1193-94 (9th Cir. 2004)), including acoustic guitars, which share a sonic similarity—timbre or "tone color"—even when

playing different compositions (HARVARD DICTIONARY OF MUSIC 893, 899 (Don Michael Randel ed., 4th ed. 2003).

The panel decision erred in finding an abuse of discretion.

3. **THE EN BANC COURT SHOULD CONFIRM THAT THE REQUIRED STANDARD OF SIMILARITY DEPENDS ON THE CLAIMED SIMILARITY AND NOT THE GENRE OF THE WORK**

A foundational question in every copyright case is whether substantial similarity or virtual identity is required. En banc review is necessary to confirm this foundational question is determined by the nature of the claimed similarity, not the nature of the plaintiff's work.

"Given that others may freely copy a work's ideas (and other unprotectable elements)," the applicable standard is determined by "the breadth of the possible expression." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). A "wide range of expression" triggers the substantial similarity standard, while a "narrow range of expression" triggers virtual identity. *Id.* The relevant "breadth of possible expression" is in the allegedly copied material. *Id.* at 914-16 (virtual identity where claimed similarities "constrained" expression; substantial similarity where claimed similarities permit "wide range of expression").

Although there is a vast range of possible drawings, sculptures, photographs, video games and even computer interfaces, this Court has consistently required

virtual identity when the claimed similarity is the selection and arrangement of unprotected elements. *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 776 (9th Cir. 2018) (pen-and-ink drawing); *Satava*, 323 F.3d at 812 (sculpture); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (photograph); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (computer interface); *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) (video bingo game); *see also Feist*, 499 U.S. at 348-49 (compilations protected against copying "precise words used").

But in *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018), the panel majority rejected virtual identity as the standard, stating "[m]usical compositions are not confined to a narrow range of expression." *Id.* at 1120. The dissent noted the error. *Id.* at 1141 (Nguyen, J., dissenting) (majority incorrectly relied on "protected category as a whole"); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120 (broad range of expression in plaintiff's photograph as a whole; substantial similarity applies) & 1128 (Owens, J., concurring in part, dissenting in part) (narrow range of expression in allegedly copied grand-jeté pose; virtual identity required) (9th Cir. 2018); *Sophia & Chloe, Inc. v. Brighton Collectibles, LLC*, 708 F. App'x 460, 461 (9th Cir. 2018) (while "there are numerous ways to design an earring,…the relevant question [is] whether there are many or few ways

to design a teardrop-shaped earring incorporating the henna symbol for the word 'kiss' and the shape of the Buddha"; virtual identity required).

En banc review is necessary to confirm that the nature of the claimed similarity, not the type of work, determines the required standard.

## 4. THE EN BANC COURT SHOULD JOIN ITS SISTER CIRCUITS IN REJECTING THE INVERSE-RATIO RULE

The panel decision directs the district court on remand to consider instructing the jury on this Circuit's inverse-ratio rule. Slip op. at 24. That rule has been questioned by this Court and rejected by the Second and other Circuits, and en banc review is warranted. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc) (circuit splits are "particularly troublesome in the realm of copyright").

Copying is usually proven circumstantially by either (1) "striking similarity" precluding the possibility of independent creation or (2) a reasonable opportunity to copy—"access"—plus substantial similarity. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984, 987-88 (9th Cir. 2017). The fact that striking similarity triggers an inference of copying without evidence of access, led to the suggestion of an inverse relationship between similarity and access, so that the more proof of one reduces the proof of the other required to infer copying. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172

17

(9th Cir. 1977), *citing* 2 M. NIMMER, NIMMER ON COPYRIGHT § 143.4 at 610-11 (1976) (inverse-ratio rule "would seem to have some limited validity"). But that suggestion does not withstand scrutiny and the rule only invites confusion.

Striking similarity and access-plus-substantial similarity are not on a continuum, they are distinct. Striking similarity exists only if the possibility of independent creation is precluded. Access-plus-substantial similarity exists only if both access and substantial similarity are present. "To say that stronger evidence of access…reduces the plaintiff's quantum of proof of probative similarities is a non sequitur because once both 'access' and 'probative similarity' evidence have been introduced, an inference of actual copying is thereby created." *Exploding the "Inverse Ratio Rule,"* D. Aronoff, 55 *J. Copyright Soc'y U.S.A.* 125, 141 (2007-08). The rule is not only unnecessary, but applied inconsistently. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000) ("We have never held…a weak showing of access requires a stronger showing of substantial similarity").

Further, the rule's "logical outcome…is obviously that proof of actual access will render a showing of similarities entirely unnecessary." *Arc Music Corp. v. Lee*, 296 F.2d 186, 187 (2d Cir. 1961). That is so because without the rule, "the similarities…just need to be similarities one would not expect to arise if the two works had been created independently." *Rentmeester*, 883 F.3d at 1117. The

18

inverse-ratio rule, by lowering that standard, allows an inference of copying without similarities suggesting copying.

"There is nothing positive that can be said about a rule that lacks any clarity …[and] confuses fundamental principles of infringement analysis…." 3 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 9:91 (2018). It is no wonder other Circuits reject it. *Arc Music*, 296 F.2d at 187 (inverse-ratio rule is "a superficially attractive apophthegm which upon examination confuses more than it clarifies"); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir. 1994); *Peters v. West*, 692 F.3d 629, 634-35 (7th Cir. 2012); *see also Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir. 1987) (noting criticism of rule); 4 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 13.03[D] (2018) (rule a "flawed proposition" with "a checkered application in the Ninth Circuit").

The inverse-ratio rule is logically flawed, unnecessary, incapable of being coherently applied and rejected by sister Circuits. It should be reviewed en banc.

## 5. THE PANEL DECISION RAISES ISSUES OF EXCEPTIONAL IMPORTANCE AND, IF NOT REHEARD, WILL HAVE DRAMATICALLY ADVERSE EFFECTS

The issues presented have exceptional importance not only to music, but all creative endeavors, and en banc review is necessary to avoid the widespread confusion the panel decision will create.

19

Since *Feist*, it has become commonplace for plaintiffs to rely on the presence of public domain elements in music, movies or other works, and claim an original selection and arrangement.  Under the panel decision, the mere presence of public domain elements constitutes a selection and arrangement and extends protection to those elements.  At best, the decision will cause confusion and unpredictability throughout the Circuit.  At worst, it will cause jurors to find infringement just because the same unprotected elements are present, upsetting the "delicate balance" between protecting authors of original material and the freedom to use public domain elements.  *Rentmeester*, 883 F.3d at 1124.

In addition, en banc review is necessary to confirm that the applicable standard—substantial similarity or virtual identity—is determined by the nature of the claimed expression copied and not by the nature of the works.  En banc review also is required to resolve a Circuit split by revisiting the inverse-ratio rule.

These issues are vitally important and warrant rehearing en banc.

## CONCLUSION

Rehearing should be granted.

Respectfully submitted,

Dated: October 26, 2018         /s/ Peter J. Anderson
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP

## **CERTIFICATE OF COMPLIANCE**

This Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(c)(2) and Circuit Rule 40(a)(1), because this Petition is in a proportionally spaced typeface of 14 points and contains 4,200 words, excluding the parts of the Petition exempted by Rule 32(a)(7)(B)(iii).

Dated: October 26, 2018           _____ /s/ Peter J. Anderson _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed this Petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System on October 26, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

Dated: October 26, 2018                    _____/s/ Peter J. Anderson_____

# ADDENDUM 1

## *Taurus* Deposit Copy

## Trial Exh. DX2058



# <u>ADDENDUM 2</u>

**Transcription of the first four measures**

**of *Taurus* and *Stairway to Heaven***

## Transcription of the first four measures
### of *Taurus* and *Stairway to Heaven*

**Top two lines** = Section A in "Taurus" with note values halved

**Lower two lines** = Measures 1-4 in "Stairway"



Exh. 2092-3 at 2; (red pitches are the descending chromatic scale); IV–ER–949:10-950:10.

27

# ADDENDUM 3

## 9th Cir. Model Civil Instruction 17.13

# MANUAL OF
# MODEL CIVIL
# JURY INSTRUCTIONS

## FOR THE
## DISTRICT COURTS OF THE
## NINTH CIRCUIT

Prepared by the
Ninth Circuit
Jury Instructions Committee

———————————

## 2007 Edition

*Last updated 3/2016*

## 17.13  COPYRIGHT INFRINGEMENT—ORIGINALITY

An original work may include or incorporate elements taken from [prior works] [works from the public domain] [works owned by others, with the owner's permission].  The original part[s] of the plaintiff's work [is] [are] the part[s] created:

1.  independently by the [work's] author, that is, the author did not copy it from another work; and

2.  by use of at least some minimal creativity.

[In copyright law, the "original" part of a work need not be new or novel.]

### Comment

The test in this instruction was set forth in *Urantia Foundation v. Maaherra,* 114 F.3d 955, 958-59 (9th Cir.1997) (holding that selection and arrangement of "greater being's" revelations was not so mechanical as to lack originality).  *See also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.").  Originality is often a fact question for the jury.  *See N. Coast Indus. v. Jason Maxwell, Inc*., 972 F.2d 1031, 1034 (9th Cir.1992) (holding that whether placement of geometric shapes was original was question for jury); *see also Swirsky v. Carey,* 376 F.3d 841, 851 (9th Cir.2004) (holding that whether musical composition was original was to be determined by trier of fact).

For copyright purposes, the required level of originality is "minimal," and "sweat of the brow" in creation is "wholly irrelevant." *CDN, Inc. v. Kapes,* 197 F.3d 1256, 1259-61 (9th Cir.1999).  The circuit has recognized "originality" in a variety of works, including in: a price list that reflected selection and weighing of price date, *see id.*; a musical composition with the same pitch and sequence as another work, but with a nonidentical meter, tempo or key, *see Swirsky,* 376 F.3d at 851; and a picture, based on its subject, posture, background, lighting, or perspective, *see United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir.1978).

When a work embodies the minimum of creativity necessary for copyright, it is said to have "thin" copyright protection.  *See, e.g., Satava v. Lowry*, 323 F.3d 805, 810-12 (9th Cir.2003).  A thin copyright would only protect against "virtually identical copying." *Id.*; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915 (9th Cir.2010) (noting "thin" copyright protection for  "expression of an attractive young, female fashion doll with exaggerated

369

proportions"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir.1994) (holding that "thin" copyright in graphical user interface protected against only "virtually identical copying").

# <u>ADDENDUM 4</u>

## Slip Opinion

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

MICHAEL SKIDMORE, AS TRUSTEE
FOR THE RANDY CRAIG WOLFE
TRUST,

        *Plaintiff-Appellant*,

v.

LED ZEPPELIN; JAMES PATRICK
PAGE; ROBERT ANTHONY PLANT;
JOHN PAUL JONES; SUPER HYPE
PUBLISHING, INC.; WARNER MUSIC
GROUP CORPORATION; WARNER
CHAPPELL MUSIC, INC.; ATLANTIC
RECORDING CORPORATION; RHINO
ENTERTAINMENT COMPANY,

        *Defendants-Appellees*.

</td>
<td>

No. 16-56057

D.C. No.
2:15-cv-03462-
RGK-AGR

</td>
</tr>
</table>

2                SKIDMORE V. LED ZEPPELIN

| | |
|---|---|
| MICHAEL SKIDMORE, AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST, <br>             *Plaintiff-Appellee*, <br><br> v. <br><br> WARNER/CHAPPELL MUSIC, INC, <br>             *Defendant-Appellant,* <br><br> and <br><br> LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORPORATION, ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY, <br>             *Defendants*. | No. 16-56287 <br><br> D.C. No. 2:15-cv-03462-RGK-AGR <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 12, 2018
San Francisco, California

Filed September 28, 2018

Before:  Richard A. Paez and Sandra S. Ikuta, Circuit
Judges, and Eric N. Vitaliano,[*] District Judge.

Opinion by Judge Paez

## SUMMARY[**]

### Copyright

The panel vacated in part the district court's judgment after a jury trial in favor of the defendants and remanded for a new trial in a copyright infringement suit alleging that Led Zeppelin copied "Stairway to Heaven" from the song "Taurus," written by Spirit band member Randy Wolfe.

The jury found that plaintiff Michael Skidmore owned the copyright to "Taurus," that defendants had access to "Taurus," and that the two songs were not substantially similar under the extrinsic test.

The panel held that certain of the district court's jury instructions were erroneous and prejudicial. First, in connection with the extrinsic test for substantial similarity, the district court prejudicially erred by failing to instruct the jury that the selection and arrangement of unprotectable musical elements are protectable. Second, the district court prejudicially erred in its instructions on originality. The

---

[*] The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 16-56057, 09/26/2018, ID: 11028248, DktEntry: 69-1, Page 4 of 37

panel concluded that the district court did not err in failing to instruct the jury on the inverse ratio rule, but such an instruction might be appropriate on remand.

The panel further held that the scope of copyright protection for an unpublished musical work under the Copyright Act of 1909 is defined by the deposit copy because copyright protection under the 1909 Act did not attach until either publication or registration. Therefore, the district court correctly ruled that sound recordings of "Taurus" as performed by Spirit could not be used to prove substantial similarity.

Addressing evidentiary issues, the panel held that the district court abused its discretion by not allowing recordings of "Taurus" to be played for the purpose of demonstrating access. The district court did not abuse its discretion by failing to exclude expert testimony on the basis of a conflict of interest.

In light of its disposition, the panel vacated the district court's denial of defendants' motions for attorneys' fees and costs and remanded those issues as well.

## COUNSEL

Francis Malofiy (argued) and Alfred Joseph Fluehr, Francis Alexander LLC, Media, Pennsylvania, for Plaintiff-Appellant.

Peter J. Anderson (argued), Law Offices of Peter J. Anderson, Santa Monica, California; Helens M. Freeman,

Phillips Nizer LLP, New York, New York; for Defendants-
Appellees.

## OPINION

PAEZ, Circuit Judge:

This copyright case involves a claim that Led Zeppelin
copied key portions of its timeless hit "Stairway to Heaven"
from the song "Taurus," which was written by Spirit band
member Randy Wolfe. Years after Wolfe's death, the
trustee of the Randy Craig Wolfe Trust, Michael Skidmore,
brought this suit for copyright infringement against Led
Zeppelin, James Patrick Page, Robert Anthony Plant, John
Paul Jones, Super Hype Publishing, and the Warner Music
Group Corporation as parent of Warner/Chappell Music,
Inc., Atlantic Recording Corporation, and Rhino
Entertainment Co. (collectively, "Defendants"). The case
proceeded to a jury trial, and the jury returned a verdict in
favor of Defendants. Skidmore appeals, raising a host of
alleged trial errors and challenging the district court's
determination that for unpublished works under the
Copyright Act of 1909 ("1909 Act"), the scope of the
copyright is defined by the deposit copy. We hold that
several of the district court's jury instructions were
erroneous and prejudicial. We therefore vacate the amended
judgment in part and remand for a new trial. For the benefit
of the parties and the district court on remand, we also
address whether the scope of copyright protection for an
unpublished work under the 1909 Act is defined by the
deposit copy. We hold that it is. We also address several
other evidentiary issues raised by Skidmore that are likely to
arise again on remand. Finally, in light of our disposition,

we vacate the denial of Defendants' motions for attorneys' fees and costs and remand those issues as well.

## I.

### A.

Randy Wolfe, nicknamed Randy California by Jimi Hendrix, was a musician and a member of the band Spirit. He wrote the song "Taurus" in late 1966. Spirit signed a recording contract in August 1967, and its first album *Spirit*—which included "Taurus"—was released in late 1967 or early 1968. Hollenbeck Music ("Hollenbeck") filed the copyright for Taurus in December 1967 and listed Randy Wolfe as the author. As part of the copyright registration packet, "Taurus" was transcribed into sheet music that was deposited with the Copyright Office ("Taurus deposit copy").

The band Led Zeppelin, formed in 1968, consisted of Jimmy Page, Robert Plant, John Paul Jones, and John Bonham. Spirit and Led Zeppelin's paths crossed several times in the late 1960s and early 1970s. On tour, Led Zeppelin would occasionally perform a cover of another Spirit song, "Fresh Garbage." Spirit and Led Zeppelin both performed at a concert in Denver in 1968 and at the Atlanta International Pop Festival, the Seattle Pop Festival, and the Texas Pop Festival in 1969. There is no direct evidence that Led Zeppelin band members listened to Spirit's performances on any of these dates, although members of Spirit testified that they conversed with Led Zeppelin members, and one Spirit band member testified that Spirit had played "Taurus" the night both bands performed in Denver. Additionally, there was evidence at trial that Robert Plant attended a February 1970 Spirit performance. Jimmy Page testified that he currently owns a copy of the album

*Spirit*, but he was unable to clarify when he had obtained that copy. In late 1971, Led Zeppelin released its fourth album, an untitled album known as "Led Zeppelin IV." One of the tracks on the album is the timeless classic "Stairway to Heaven," which was written by Jimmy Page and Robert Plant.

Randy Wolfe passed away in 1997, and his mother established the Randy Craig Wolfe Trust (the "Trust"). All of Wolfe's intellectual property rights were transferred to the Trust, including his ownership interest in "Taurus."[1] His mother was the trustee or co-trustee until her death in 2009, after which time Skidmore became the trustee. Immediately after the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967–68 (2014), which clarified that laches is not a defense where copyright infringement is ongoing, Skidmore filed this suit on behalf of the Trust alleging that "Stairway to Heaven" infringed the copyright in "Taurus."

**B.**

Skidmore initially filed his complaint in the Eastern District of Pennsylvania, but the case was subsequently transferred to the Central District of California. *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 589–90 (E.D. Pa. 2015). Skidmore alleged direct, contributory, and vicarious copyright infringement. He also alleged a claim titled "Right of Attribution—Equitable Relief—Falsification of Rock n' Roll History." With regard to copyright infringement,

---

[1] Ownership of the Taurus copyright was one of the disputed issues at trial, but the jury found that Skidmore "is the owner of a valid copyright in Taurus." The Defendants do not challenge that finding on appeal.

Skidmore alleged that the opening notes of "Stairway to Heaven" are substantially similar to those in "Taurus." The Defendants disputed ownership, substantial similarity, and access. They also alleged a number of affirmative defenses including unclean hands, laches, and independent creation.

After discovery, Defendants moved for summary judgment, which the district court granted in part and denied in part. Specifically, the district court granted summary judgment to John Paul Jones, Super Hype Publishing, and Warner Music Group ("summary judgment defendants"), as they had not performed or distributed "Stairway to Heaven" in the three-year statute of limitations period preceding the filing of the complaint. Additionally, the district court granted summary judgment to Defendants on Skidmore's "Right of Attribution—Equitable Relief—Falsification of Rock n' Roll History" claim, as the district court "had diligently searched but [was] unable to locate any cognizable claim to support this [Falsification of Rock n' Roll History] theory of liability."

Because the 1909 Act governed the scope of the copyright Wolfe obtained in "Taurus," the district court further concluded that the protectable copyright was the musical composition transcribed in the deposit copy of "Taurus" and not the sound recordings. The district court therefore concluded that to prove substantial similarity between "Taurus" and "Stairway to Heaven," Skidmore would have to rely on the "Taurus" deposit copy rather than a sound recording. The district court also found that there were triable issues of fact relating to ownership, access, substantial similarity, and damages that could only be resolved at trial.

At a pretrial conference in April 2016, after reviewing summaries of each witnesses' proposed testimony, the

district court decided to allot each side ten hours to present its case.  The district court also tentatively granted Defendants' motion in limine to exclude recordings of Spirit performing "Taurus" as well as expert testimony based on those recordings, again concluding that the 1967 deposit copy should be the baseline when considering substantial similarity.  Before trial, the district court filed an order confirming its prior tentative rulings on the motions in limine.

As part of expert discovery, Skidmore's attorney deposed Dr. Lawrence Ferrara, Defendants' expert musicologist.  During the deposition it came to light that in 2013 Dr. Ferrara had done a comparison of the "Taurus" and "Stairway to Heaven" recordings for Rondor Music ("Rondor"), a subsidiary of Universal Music Publishing Group.[2]  Dr. Ferrara testified that when he was approached by Defendants' counsel, he informed them that he had already completed an analysis for Rondor.  Defendants' counsel consulted with Rondor, which waived any conflict and consented to Dr. Ferrara being retained as an expert witness for Defendants.  Throughout the deposition, Skidmore's counsel objected and requested copies of Dr. Ferrara's communications with Rondor and Universal.  After the deposition, Skidmore filed a Motion for Sanctions and to Preclude Dr. Ferrara from testifying at trial.  The district court denied Skidmore's motion because it was improperly noticed, over the page limit, and untimely.

---

[2] Skidmore presented evidence that Universal Music was working for Hollenbeck, the publisher of Spirit's music.  Skidmore alleged during the deposition that because of this connection, Hollenbeck owed fiduciary duties to Skidmore.

A five-day jury trial ensued. While questioning Jimmy
Page, Skidmore's counsel requested that several sound
recordings of Spirit performing "Taurus" be played so that
he could ask Page whether he had ever heard any of the
recordings. When Defendants objected, Skidmore's counsel
explained that the recordings were offered to prove access,
rather than substantial similarity. The district court
determined that although the sound recordings were relevant
to prove access, it would be too prejudicial for the jury to
hear the recordings. To avoid any prejudice, the district court
had Page listen to the recordings outside the presence of the
jury and then allowed Skidmore's counsel to question him
about them in the presence of the jury. Page eventually
testified that he presently had an album containing "Taurus"
in his collection, but while testifying he did not admit to
having heard any recordings of "Taurus" prior to composing
"Stairway to Heaven."

Also of note, Kevin Hanson, Skidmore's master
guitarist, performed the "Taurus" deposit copy as he
interpreted it, and played recordings of his performances of
the beginning notes of the "Taurus" deposit copy and
"Stairway to Heaven." The "Taurus" recording Hanson
played for the jury during his testimony, however, only
contained the bass clef and excluded the treble clef, which
contained additional notes.

During the cross-examination of Dr. Ferrara, Skidmore
used up the last of his ten hours of allotted trial time. The
district court found that Skidmore had not made effective use
of his time for a variety of reasons, but granted Skidmore
two additional minutes to finish cross-examining Dr. Ferrara
and ten minutes to cross-examine each remaining witness.
Skidmore was not allowed to call rebuttal witnesses.

During jury deliberations, the jury asked to hear Skidmore's recording of Hanson playing both "Taurus" and "Stairway to Heaven." The district court asked if the jury would like to hear the deposit-copy version of "Taurus" or the version of "Taurus" with only the bass clef. One juror responded with "bass clef" but the jury foreperson responded with "the full copy." The district court directed that the full deposit-copy version be played and asked if that answered the jury's question, to which the foreperson replied "thank you." The other juror did not object to hearing the full copy rather than the bass clef version.

The jury ultimately returned a verdict for Defendants. The jury found that Skidmore owned the copyright to "Taurus," that Defendants had access to "Taurus," but that the two songs were not substantially similar under the extrinsic test.[3] Following the verdict, the district court entered an amended judgment in favor of all Defendants. Skidmore did not file any post-judgment motions challenging the verdict, but timely appealed from the amended judgment.[4] In this appeal, Skidmore challenges (1) various jury instructions, (2) the district court's ruling that substantial similarity must be proven using the copyright

---

[3] The extrinsic test is one of two tests used to determine if an allegedly infringing work is substantially similar to a copyrighted work. This test objectively compares the protected areas of a work. *See, infra* p. 13; *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).

[4] Skidmore appeals from the amended judgment, which listed all defendants, but none of his arguments implicate the summary judgment defendants. Defendants argue that this waives any challenge to the summary judgment order as it relates to those defendants. We agree. *See, e.g., Classic Concepts, Inc. v. Linen Source, Inc.*, 716 F.3d 1282, 1285 (9th Cir. 2013). Accordingly, we do not address any of the claims against the summary judgment defendants, and we do not disturb the amended judgment as it relates to those defendants.

deposit copy, (3) the district court's ruling that sound recordings could not be played to prove access, (4) the district court's decision not to exclude or sanction Dr. Ferrara, (5) the fact that the full version of "Taurus" rather than the bass clef version was played in response to the jury's request, and (6) the imposition of strict time limits as a violation of due process.

Following entry of the amended judgment, Warner/Chappell filed a motion for attorneys' fees and a motion for costs. The district court denied these motions. Warner/Chappell timely cross-appealed, and we consolidated the two appeals.

## II.

We begin with a discussion of the elements that Skidmore must establish to prevail on his copyright infringement claim.

In order to prove copyright infringement, a plaintiff must show "(1) that he owns a valid copyright in his [work], and (2) that [the defendants] copied protected aspects of the [work's] expression." *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citing *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)). In this appeal, the parties do not contest that Skidmore owns a valid copyright in "Taurus," so our analysis turns on the second issue.

Whether Defendants copied protected expression contains two separate and distinct components: "copying" and "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117. A plaintiff must be able to demonstrate that a defendant copied his work, as independent creation is a complete defense to copyright infringement. *See Feist*

*Publ'ns*, 499 U.S. at 345–46; *see also Rentmeester*, 883 F.3d at 1117. In cases such as this one where there is no direct evidence of copying, the plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Rentmeester*, 883 F.3d at 1117. "When a high degree of access is shown," a lower amount of similarity is needed to prove copying. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (citation omitted). "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently." *Rentmeester*, 883 F.3d at 1117.

To prove "unlawful appropriation" a higher showing of substantial similarity is needed. *Id.* The works must share *substantial* similarities and those similarities must involve parts of the plaintiff's work that are original and therefore protected by copyright. *Id.* To determine whether an allegedly infringing work is substantially similar to the original work, we employ the extrinsic and intrinsic tests. The extrinsic test is an objective comparison of protected areas of a work. This is accomplished by "breaking the works down into their constituent elements, and comparing those elements" to determine whether they are substantially similar. *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). Only elements that are protected by copyright are compared under the extrinsic test. *Id.* The intrinsic test is concerned with a subjective comparison of the works, as it asks "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (citation omitted).

### III.

We turn first to Skidmore's argument that the district court failed to properly instruct the jury on the elements of his copyright infringement claim as discussed above and whether the court's alleged errors were prejudicial. Skidmore argues: (1) that the district court erred by failing to give an instruction that selection and arrangement of otherwise unprotectable musical elements are protectable; (2) that the district court's jury instructions on originality and protectable musical elements were erroneous; and (3) that the district court erred in failing to give an inverse ratio rule instruction. We address each of these in turn.

We review for abuse of discretion the district court's formulation of jury instructions and review de novo whether the instructions misstate the law. *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 941 (9th Cir. 2011). As a general matter, prejudicial error in jury instructions occurs when "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) (quoting *In re Asbestos Cases*, 847 F.2d 523, 524 (9th Cir. 1998)) (alteration in original)). "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Id.* at 805 (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206–07 (9th Cir. 1992)).

### A.

Skidmore argues that the district court's failure to instruct the jury that the selection and arrangement of unprotectable musical elements are protectable is reversible error. Each side had included a version of such an instruction in their proposed jury instructions. The district

court, however, did not include either instruction in its final version of the instructions nor did it modify any of the substantive instructions to include this point. We conclude that the district court erred by failing to instruct the jury on this issue and that the error was prejudicial.

We are concerned here with the extrinsic test for substantial similarity, as the jury decided that there was no extrinsic substantial similarity and failed to reach the intrinsic test. In the musical context, the extrinsic test can be difficult to administer. *See Swirsky*, 376 F.3d at 848. Although individual elements of a song, such as notes or a scale, may not be protectable, "music is comprised of a large array of elements, some combination of which is protectable by copyright." *Id.* at 849. For example, we have "upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements." *Id.* (citing *Three Boys*, 212 F.3d at 485). In other circumstances, we have recognized that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (citations omitted). The copyright in an arrangement of public domain elements extends only to the originality contributed by the author to the arrangement. *Id.* at 811–12; *see also Feist Publ'ns*, 499 U.S. at 345. Thus, there can be copyright protection on the basis of a sufficiently original combination of otherwise non-protectable music elements. The district court's failure to so instruct the jury was especially problematic in this case, because Skidmore's expert, Dr. Stewart, testified that there was extrinsic substantial similarity based on the combination of five elements—some of which were protectable and some of which were in the public domain.

Case: 16-56057, 09/26/2018, ID: 11026241, DktEntry: 73-1, Page 16 of 37

Although Defendants requested an instruction on selection and arrangement, they argue that the district court's failure to give such an instruction does not warrant reversal. First, Defendants argue that Skidmore waived any objection to the court's failure to give such an instruction, in part because Skidmore did not voice any objection when the district court was reading the final jury instructions to counsel. This argument is baseless. Although Skidmore's counsel transcribed and assembled the jury instructions as directed by the district court, the court specifically stated that it did not want any oral objections to its final jury instructions, as the parties had already submitted separate instructions and written objections to the other side's proposed instructions. Skidmore proposed an instruction on selection and arrangement as did the Defendants and each side objected to the other side's proposed instruction as required by Local Rule 51-1, 5. *See, e.g.*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016).

Next, Defendants contend that Skidmore did not argue or present evidence of a copyrightable selection and arrangement of otherwise unprotectable elements. When objecting to one of Skidmore's jury instructions, however, Defendants expressly stated that Skidmore relied on a selection and arrangement theory in his argument for infringement. On appeal, Defendants maintain that Skidmore instead relied on the similarity of a "combination" of elements present in "Taurus" and "Stairway to Heaven." Defendants' refined argument splits hairs and contradicts their earlier position. Whether or not the words "selection and arrangement" were used at trial is irrelevant because it is clear that this legal theory formed the basis of Skidmore's infringement claim. Indeed, the fact that Defendants recognized this argument at trial undermines their contrary argument here. Additionally, many selection and

Case: 16-56057, 09/26/2018, ID: 11024291, DktEntry: 73-1, Page 1 of 37

arrangement cases also refer to a "combination" of musical elements, further undermining Defendants' proffered distinction. *See Swirsky*, 376 F.3d at 849; *Satava*, 323 F.3d at 811. As both sides recognized in their proposed jury instructions, a selection and arrangement instruction was appropriate and necessary given the basis for Skidmore's infringement claim.

Defendants also argue that any error is harmless, because the jury would likely have reached the same verdict even if it had been instructed on selection and arrangement. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). We disagree. Without a selection and arrangement instruction, the jury instructions severely undermined Skidmore's argument for extrinsic similarity, which is exactly what the jury found lacking. Given that nothing else in the instructions alerted the jury that the selection and arrangement of unprotectable elements could be copyrightable, "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton*, 270 F.3d at 802 (alteration in original) (quotations omitted). Indeed, as discussed further below, other instructions when considered in the absence of a selection and arrangement instruction imply that selection and arrangement of public domain material is not copyrightable. For instance, Jury Instruction No. 20, which instructed the jury that "any elements from . . . the public domain are not considered original parts and not protected by copyright," suggests that no combination of these elements can be protected by copyright precisely because the court omitted a selection and arrangement instruction. The district court's failure to instruct the jury on selection and

arrangement was therefore prejudicial given Skidmore's theory of infringement.[5]  *Id.*

## B.

Skidmore also argues that the district court erred in two ways in its formulation of the jury instructions on originality. First, Skidmore contends that Jury Instruction No. 16 erroneously stated that copyright does not protect "chromatic scales, arpeggios or short sequences of three notes."[6]  Second, Skidmore argues that Jury Instruction No.

---

[5] Each side proposed its own selection and arrangement instruction and objected to the language of the other party's proposed instruction. We leave it to the district court on remand to determine which version of the proposed instructions to adopt, given applicable precedent on the issue.  *See, e.g.*, *Feist Publ'ns*, 499 U.S. at 345; *Swirsky*, 376 F.3d at 848; *Satava*, 323 F.3d at 811; *Three Boys*, 212 F.3d at 485.

[6] In full, Jury Instruction No. 16 reads as follows:

> Plaintiff has filed a claim against Defendants for violation of the United States Copyright Act, which governs this case.  In order for you to undertake your responsibility, you must know what a copyright is, what it protects, and what it does not protect.

> Copyright confers certain exclusive rights to the owner of a work including the rights to:

> 1. Reproduce or authorize the reproduction of the copyrighted work;

> 2. Prepare derivative works based upon the copyrighted work.

> 3. Distribute the copyrighted work to the public; and

20 on originality should not have instructed the jury that "[h]owever, any elements from prior works or the public domain are not considered original parts and not protected by copyright," and should have included the admonition from the Ninth Circuit Model Jury Instruction 17.13 that "[i]n copyright law, the 'original' part of a work need not be new or novel."[7]  Defendants argue that Skidmore waived a challenge to these jury instructions for the same reason he waived a challenge to the lack of a selection and arrangement

---

> 4.  Perform publicly a copyrighted musical work.
>
> Copyright only protects the author's original expression in a work and does not protect ideas, themes or common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes.
>
> Also, there can be no copyright infringement without actual copying.  If two people independently create two works, no matter how similar, there is no copyright infringement unless the second person copied the first.

[7] Jury Instruction No. 20 reads:

> An original work may include or incorporate elements taken from prior works or works from the public domain.  However, any elements from prior works or the public domain are not considered original parts and not protected by copyright.  Instead, the original part of the plaintiff's work is limited to the part created:
>
> 1.  independently by the work's author, that is, the author did not copy it from another work; and
>
> 2.  by use of at least some minimal creativity.

instruction.  For the reasons discussed above, this argument fails.  We further conclude that the district court erred in its instructions on originality.

There is a low bar for originality in copyright.  *See Swirsky*, 376 F.3d at 851 ("[O]riginality means little more than a prohibition of actual copying.") (internal quotations omitted).  Copyright extends to parts of a work created (1) independently, i.e., not copied from another's work and (2) which contain minimal creativity.  *See Feist Publ'ns*, 499 U.S. at 348.  Most basic musical elements are not copyrightable.  *See Smith v. Jackson*, 84 F.3d 1213, 1216 n.3 (9th Cir. 1996) (explaining that "common or trite" musical elements are not protected); *Satava*, 323 F.3d at 811 (holding that expressions that are common to a subject matter or medium are not protectable); *Swirsky*, 376 F.3d at 851 (acknowledging that a single musical note lacks copyright protection).  In *Swirsky*, however, we recognized that while "a single musical note would be too small a unit to attract copyright protection . . . an arrangement of a limited number of notes can garner copyright protection."  *Id.*  We therefore concluded that seven notes could be sufficient to garner copyright protection.  *See id.* at 852.

Jury Instruction No. 16 included an instruction that "common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes" are not protected by copyright.  This instruction runs contrary to our conclusion in *Swirsky* that a limited number of notes can be protected by copyright.  *See id.* at 851.  When considered in the absence of a selection and arrangement instruction, Jury Instruction No. 16 could have led the jury to believe that even if a series of three notes or a descending chromatic scale were used in combination with other elements in an original manner, it would not warrant copyright protection.  *See*

*Swinton*, 270 F.3d at 802.  This error was not harmless as it undercut testimony by Skidmore's expert that Led Zeppelin copied a chromatic scale that had been used in an original manner.  *See Clem*, 566 F.3d at 1182 (an error in a jury instruction is harmless if "it is more probable than not that the jury would have reached the same verdict had it been properly instructed" (citation omitted)).

Similarly, Jury Instruction No. 20 omitted parts of the test for originality and added misleading language.  Under *Feist Publications*, originality requires that a work not be copied and that it be produced with a minimal degree of creativity.  499 U.S. at 348.  The original part of a work does not need to be new or novel, as long as it is not copied.  *Id.* The district court, however, omitted Skidmore's requested instruction—drawn from Ninth Circuit Model Instruction 17.13—that "the 'original' part of a work need not be new or novel." [8]  Additionally, Jury Instruction No. 20 stated that "any elements from prior works or the public domain are not considered original parts and not protectable by copyright." While this statement is not literally incorrect, it misleadingly

---

[8] At the time of trial, Ninth Circuit Model Instruction 17.13 provided that:

> An original work may include or incorporate elements taken from works owned by others, with the owner's permission.  The original parts of the plaintiff's work are the parts created:
>
> 1.  independently by the work's author, that is, the author did not copy it from another work; and
>
> 2.  by use of at least some minimal creativity.
>
> In copyright law, the "original" part of a work need not be new or novel.

suggests that public domain elements such as basic musical structures are not copyrightable even when they are arranged or modified in a creative, original way. *See Swirsky*, 376 F.3d at 852. Ninth Circuit Model Instruction 17.13 avoids this problem by not including this misleading statement.

Nowhere did the jury instructions include any statements clarifying that the selection and arrangement of public domain elements could be considered original. Jury Instruction No. 20 compounded the errors of that omission by furthering an impression that public domain elements are not protected by copyright in any circumstances. This is in tension with the principle that an original element of a work need not be new; rather, it need only be created independently and arranged in a creative way. *See Feist Publ'ns*, 499 U.S. at 345, 349; *see also Swirsky*, 376 F.3d at 849. Jury Instruction Nos. 16 and 20 in combination likely led the jury to believe that public domain elements—such as a chromatic scale or a series of three notes—were not protectable, even where there was a modification or selection and arrangement that may have rendered them original. Skidmore's expert testified that "Taurus" contained certain public domain elements—such as chromatic scales—that were modified in an original way, but the jury instructions as a whole likely would have led the jury to believe that such evidence could not establish the basis of a cognizable copyright claim. Similarly, the instructions undermined Skidmore's expert's testimony that "Taurus" and "Stairway to Heaven" were similar because of the combination of otherwise unprotectable elements.

In sum, we conclude that the district court's originality jury instructions erroneously instructed the jury that public domain elements are not copyrightable, even if they are

modified in an original manner or included as part of a selection and arrangement. We further conclude that these instructions were prejudicial as they undermined the heart of Skidmore's argument that "Taurus" and "Stairway to Heaven" were extrinsically substantially similar. *Clem*, 566 F.3d at 1182. Because the district court erred both in the formulation of the originality jury instructions and in withholding a selection and arrangement instruction, we vacate the judgment and remand for a new trial.

## C.

Skidmore also argues that the district court erred by not including a jury instruction on the inverse ratio rule. Under the "inverse ratio rule," a lower standard of proof of substantial similarity is required "when a high degree of access is shown." *Rice*, 330 F.3d at 1178 (citation omitted). We recently clarified the framework underlying the inverse ratio rule. *See Rentmeester*, 883 F.3d at 1124–25. This rule "assists only in proving copying, not in proving unlawful appropriation." *Id.* at 1124. Even if a plaintiff proves that a defendant copied his work, the plaintiff must still show that the copying "amounts to unlawful appropriation." *Id.*; *see also Peters v. West*, 692 F.3d 629, 635 (7th Cir. 2012). "The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown." *Rentmeester*, 883 F.3d at 1124; *see also Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 372 n.11 (5th Cir. 2004).

Unlike in *Rentmeester*, where the parties did not contest that copying had occurred, Skidmore must prove both unlawful appropriation and copying to prevail. 883 F.3d at 1124. While an inverse ratio rule jury instruction may have been helpful to Skidmore in proving copying, the jury verdict form makes clear that the jury did not decide whether

Led Zeppelin had copied parts of "Taurus." Rather, the jury ended its deliberations after deciding that "Taurus" and "Stairway to Heaven" were not substantially similar under the extrinsic test. Substantial similarity under the extrinsic and intrinsic test goes to unlawful appropriation, rather than copying. *Id.* at 1117. The jury found that under the extrinsic test, any similarity was not substantial. Therefore, there was not unlawful appropriation under *Rentmeester. See id.* Because the jury did not reach the question of copying, the inverse ratio rule was not relevant, and any error in not including it was harmless.

Because we are remanding for a new trial, however, we note that in a case like this one where copying is in question and there is substantial evidence of access, an inverse ratio rule jury instruction may be appropriate. *See Rice*, 330 F.3d at 1178 (declining to apply the inverse ratio rule at the summary judgment stage because the claims of access were "based on speculation, conjecture, and inference which are far less than the 'high degree of access' required for application of the inverse ratio rule"); *see also Swirsky*, 376 F.3d at 844 ( applying the inverse ration rule because access was conceded); *Metcalf v. Bocho*, 294 F.3d 1069, 1075 (9th Cir. 2002) (same); *Shaw v. Lindheim*, 919 F.2d 1353, 1361–62 (9th Cir. 1990) (same). Here, there was substantial evidence of access, and indeed, the jury found that both James Page and Robert Plant had access to "Taurus." On remand, the district court should reconsider whether an inverse ratio rule instruction is warranted unless it determines, as a matter of law, that Skidmore's "evidence as to proof of access is insufficient to trigger the inverse ratio rule." *Rice*, 330 F.3d at 1178.

**IV.**

Because we are remanding for a new trial, we address three of Skidmore's additional assignments of error that will continue to be relevant on remand. First, we address whether the district court erred by holding that the deposit copy of "Taurus," rather than a sound recording, defined the scope of the protectable copyright. We hold that there was no error in the district court's ruling. Next, we analyze whether the district court abused its discretion by not allowing recordings of "Taurus" to be played for the purpose of demonstrating access; we conclude that it did. Finally, we examine whether the district court abused its discretion in not excluding Dr. Ferrara's testimony due to an alleged conflict of interest. We hold that the district court's ruling was well within its discretion.

**A.**

Skidmore argues that the district court erred in concluding that the deposit copy of "Taurus" defines the scope of the protected copyright under the 1909 Act and that sound recordings of "Taurus" as performed by Spirit could not be used to prove substantial similarity. Because the copyright of "Taurus" was registered in 1967, the 1909 Act applies. *See Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 876 (9th Cir. 2005) (considering infringement claims under the 1909 Act because the copyrighted work "was published before the January 1, 1978, effective date of the 1976 Copyright Act"). We review de novo legal questions such as the appropriate scope of copyright protection. *See Rentmeester*, 883 F.3d at 1116.

The scope of copyright protection for musical works has been in flux throughout the different versions of the Copyright Act. In 1831, the Copyright Act of 1790 was

Case: 16-56057, 09/26/2018, ID: 11024591, DktEntry: 73-1, Page 26 of 37

amended and copyright protection was extended to musical compositions for the first time. Copyright Act of 1831, 4 Stat. 436 (1831) (repealed 1909). Musical protection under the 1831 Act only extended to the sheet music itself. *See Goldstein v. California*, 412 U.S. 546, 564 (1973). Around the turn of the twentieth century, devices called piano player rolls were invented, which allowed songs to be recreated mechanically on a piano. *See White-Smith Music Publ'g Co. v. Apollo Co.*, 209 U.S. 1, 10–11 (1908). In its 1908 *White-Smith* opinion, the Court held that the only protected musical expression under the Copyright Act of 1831 was sheet music, and that infringement could only occur by duplicating the sheet music. *Id.* at 17. Therefore, the makers of piano player rolls did not infringe the copyrights of musical composers. *Id.*

Congress promptly enacted the Copyright Act of 1909. Copyright Act of 1909, 35 Stat. 1075 (1909) (repealed 1978) (the "1909 Act"). In this 1909 iteration, Congress made clear that the scope of protection "[t]o print, reprint, publish, copy, and vend the copyrighted work" under § 1(a) extended to "any arrangement or setting of [the musical composition] or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced." 1909 Act § 1(e).

"Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme." *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000) (quoting *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950, 952 (9th Cir. 1995), *superseded by statute on other grounds*, 17 U.S.C. § 303(b) (1997)). A work could receive federal

copyright protection either through registration and submission of a deposit copy, 1909 Act § 10, or through publication, *id.* § 9. Distributing phonorecords did not constitute publication under the 1909 Act, so musical compositions were only published if the sheet music were also published.[9] *ABKCO*, 217 F.3d at 688. Additionally, the Copyright Office did not accept sound recordings as deposit copies under the 1909 Act. *See* M. Nimmer & D. Nimmer, 1 Nimmer on Copyright § 2.05[A] (2017).

In 1972, Congress extended copyright protection to sound recordings as separate copyrightable works from musical compositions. 17 U.S.C. § 102(a)(7). The Copyright Act was again amended in 1976 and this amendment allowed musical composers to submit a recording rather than sheet music as the deposit copy for a musical composition. 17 U.S.C. §§ 407, 408 (1976).

Skidmore argues that under the 1909 Act, a deposit copy is purely archival in nature, whereas Defendants argue that for unpublished works, the deposit copy defines the scope of the copyright. This is an issue of first impression in our circuit as well as our sister circuits. One district court considered the issue prior to this case and concluded that for unpublished works under the 1909 Act, the deposit copy defines the scope of the copyright. *See Williams v. Bridgeport Music*, 2014 WL 7877773, at *6–10 (C.D. Cal.

---

[9] We held in *La Cienega* that the sale and distribution of sound recordings in phonorecords constituted a publication. 53 F.3d at 953. After that decision, Congress passed a law stating that the distribution of phonorecords before 1978 did not count as publication. 17 U.S.C. § 303(b). We subsequently held in *ABKCO* that *La Cienega* was an incorrect statement of law and that § 303 retroactively applied. *See ABKCO*, 217 F.3d at 691–92.

Oct. 30, 2014).  On appeal, we declined to reach the issue.
*Williams v. Gaye*, 895 F.3d 1106, 1121 (9th Cir. 2018).

Skidmore argues that the express purpose of the 1909
Act was to overturn *White-Smith* and extend copyright
protection beyond sheet music.  Specifically, Skidmore
relies on § 1(e), which extended copyright protection to "any
system of notation or any form of record in which the
thought of an author may be recorded."  § 1(e).  But, as
Defendants point out, this actually defines the forms an
infringing copy can take, rather than the scope of what can
be copyrighted.  § 1(a), (e).  Therefore, although the 1909
Act clearly extended copyright law to protect against
infringement beyond mere reproduction of the sheet
music—in contravention of *White-Smith*—it did not clearly
state that copyrighted works could be anything other than
published sheet music or the musical composition
transcribed in the deposit copy.  Indeed, "in order to claim
copyright in a musical work under the 1909 Act, the work
had to be reduced to sheet music or other manuscript form."
Nimmer on Copyright § 2.05[A] at 2–62 (2017).

Skidmore also cites to a host of cases to support his
argument, but these cases are distinguishable.  Skidmore
relies primarily on *Three Boys*, 212 F.3d at 486–87.  In *Three
Boys*, appellants argued that because the deposit copy was
incomplete—contrary to the 1909 Act's requirement that a
"complete copy" be deposited—subject matter jurisdiction
did not exist.  *Id.* at 486.  In response, we observed that an
expert had testified that the essential elements of the musical
composition were intact in the deposit copy; therefore we
declined to overturn the jury's finding that the deposit copy
was "complete" because there was no intent to defraud and
any inaccuracies in the deposit copy were minor.  *Id.* at 486–
87.  Since *Three Boys* dealt with whether the deposit copy

adequately satisfied the "complete copy" statutory requirement, it is not directly on point. Nonetheless, Skidmore argues that we should extrapolate from language in *Three Boys* that the expert "even played the deposit copy" to conclude that a recording was also played, and that the recording was used for purposes of evaluating substantial similarity. *Id.* While the evidentiary presentation in *Three Boys* may support Skidmore's claim that typically sound recordings have been used in infringement trials under the 1909 Act, our resolution of the "complete copy" issue did not create binding precedent that copyright protection extended to sound recordings under the 1909 Act. *Id.*

Skidmore also relies on three other cases to support his argument that copyright protection under the 1909 Act extends beyond sheet music, none of which are helpful. One of the cases cited by Skidmore concludes that a copyright obtained via publication is not invalidated by failure to deposit promptly a copy. *Washingtonian Pub. Co. v. Pearson*, 306 U.S. 30, 41–42 (1939). The deposit copy carries less importance for published works, however, so this conclusion is not particularly instructive. 2 *Nimmer on Copyright* § 7.17[A] (citing 17 U.S.C. § 704(d) for the proposition that either the original or a copy of the deposit copy must be kept for unpublished works). Unlike for unpublished works, a deposit copy is not necessary to secure copyright in published works. 1909 Act § 9.

The other two cases both deal with copyright issues under the 1976 Act. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 276 (6th Cir. 2009); *Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 482–83 (7th Cir. 1982). Neither of these cases help us determine whether the deposit copy for unpublished works defines the scope of copyright protection

under the 1909 Act.  The 1976 Act includes a provision providing that federal copyright protection attaches upon fixation of a work to any tangible medium, which can include a sound recording.  17 U.S.C. § 102(a).  This provision, however, was not a part of the 1909 Act.  As a result, although it makes sense in the context of the 1976 Act to look at a recording for evidence of what the composition includes because federal copyright protection attaches when the work is recorded, it makes significantly less sense to do so for the 1909 Act.

The cases Defendants offer in support of their argument are also not directly on point.  Some do not pertain to the 1909 Act, which is problematic for the reasons discussed above.  *See, e.g.*, *White-Smith*, 209 U.S. at 15–16; *Merrell v. Tice*, 104 U.S. 557, 558 (1881).  More persuasive are the cases that, in the context of discussing the current copyright scheme, opined that one of the purposes of the deposit requirement is to provide "sufficient material to identify the work in which the registrant claims a copyright."  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–63 (1st Cir. 1994); *see also Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d. 514, 520 (S.D.N.Y. 2005).  These cases support Defendants' contention that the deposit copy defines the scope of the copyright, but as in *Three Boys* the ultimate holding in these cases was that minor errors in the deposit copy do not invalidate a copyright.  *See Data Gen. Corp.*, 36 F.3d at 1163.

As further support for their position, Defendants contend that the treatment of deposit copies under the 1909 Act supports their argument that for unpublished works, the deposit copy defines the scope of the copyright.  The 1909 Act prohibits the destruction of the deposit copies of

unpublished works without notice to the copyright owner. *See* 1909 Act §§ 59–60; Report of the Register on the General Revision of the U.S. Copyright Law at 81 (1961). Additionally, the Register of Copyright's policy is to retain access to unpublished works for the full copyright term. *See* Report of the Register on the General Revision of the U.S. Copyright Law at 80–82 (1961).[10]

We are persuaded that for unpublished musical works under the 1909 Act, the deposit copy defines the scope of the copyright. Overall, the structure of the 1909 Act demonstrates that the deposit copy encompasses the scope of the copyright for unpublished works, as the deposit copy must be filed not only to register the copyright, but for the copyright to even exist. The 1909 Act states that "copyright may also be had of the works of an author of which copies are not reproduced for sale, *by the deposit*, with claim of copyright, of one complete copy of such work." 1909 Act § 11 (emphasis added). Because the 1909 Act makes the existence of copyright dependent on the deposit copy, it makes sense that the deposit copy also defines the scope of the copyright. It was not until the 1976 Act that common law copyright was federalized and copyright attached at the creation of the work. Recognizing the importance of deposit copies for unpublished works, Congress and the Register of Copyrights have taken care to ensure the preservation of deposit copies. 1909 Act §§ 59–60; Report of the Register on the General Revision of the U.S. Copyright Law at 80–82 (1961). Similarly, even under later versions of the Copyright

---

[10] In the 1976 Act, Congress prohibited the destruction of deposit copies of unpublished works during the copyright term unless a reproduction had been made. 17 U.S.C. § 704(d). *See* H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 172 (1976) (recognizing "the unique value and irreplaceable nature of unpublished deposits").

Act, the purpose of deposit copies has been described as providing a way "to identify the work in which the registrant claims a copyright." *Data Gen. Corp.*, 36 F.3d at 1161–62. Given that copyright protection under the 1909 Act did not attach until either publication or registration, we conclude that for unpublished works the deposit copy defines the scope of the copyright.

Skidmore puts forth three policy arguments, but they do not alter our conclusion as they do not override the weight of the 1909 Act's statutory scheme and legislative history. First, Skidmore argues that it is challenging to compare a sound recording of the infringing work to a deposit copy of the infringed work. While many copyrighted works, such as books, can be easily formatted to satisfy the deposit copy requirement, musical works are not as well reflected in deposit copies. This makes the intrinsic test for substantial similarity especially challenging when comparing a deposit copy to a sound recording, as the intrinsic test is concerned with the general "total concept and feel" of a work. *See Three Boys*, 212 F.3d at 485. Second, Skidmore argues that our conclusion is biased against musicians who do not read music and could not possibly have written the deposit copies of their own songs. It is not uncommon for musicians who are composing songs to not know how to read music. Skidmore argues that for musicians who do not read music it would be overly time consuming and expensive to make accurate deposit copy sheet music going forward. For new works, however, sound recordings can be deposited as the deposit copy, so we are not overly concerned with the costs of transcribing deposit copies for new compositions. *See* 17 U.S.C. §§ 407, 408. Finally, Skidmore raises the question of whether a copyright claim would be provable if a deposit copy were lost or destroyed. These policy arguments do not undermine the statutory framework that

Case: 16-56057, 09/28/2018, ID: 11028248, DktEntry: 69-1, Page 33 of 37

leads us to conclude that the deposit copy defines the scope of a copyrighted work for unpublished musical works under the 1909 Act.[11]

## B.

Skidmore argues that the district court erred by failing to allow recordings of "Taurus" to be played to prove access. This was an evidentiary ruling, which we review for abuse of discretion. *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009). Although Skidmore's counsel was permitted to play recordings for Page outside the presence of the jury, who was then questioned about them in front of the jury, Skidmore argues that the jury could not assess Page's credibility without observing him listening to the recordings and then answering questions about the recordings.

As the jury ultimately found that both Plant and Page had access to "Taurus," any error in precluding the recordings was harmless. *See United States v. Edwards*, 235 F.3d 1173, 1178–79 (9th Cir. 2000) (stating that an evidentiary ruling is reversed only if the error "more likely than not affected the verdict"). As this issue will likely arise again at retrial, we address whether the district court abused its discretion.

The district court excluded the sound recordings under Federal Rule of Evidence 403, finding that "its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. Here, the district court abused its discretion in finding that it would be unduly prejudicial for

---

[11] We leave open the possibility that where the deposit copy has been lost or destroyed, an original sound recording may be used as evidence of the scope of the copyright under the 1909 Act.

the jury to listen to the sound recordings in order to assess Page's access to "Taurus." The district court acknowledged that the recordings were relevant to whether Page had access to "Taurus," as Page would have heard and allegedly copied a recording of "Taurus." The district court was concerned, however, that allowing the jury to hear the recordings would confuse them.

Skidmore argues that by not allowing the jury to observe Page listening to the recordings of "Taurus," the effect of the court's ruling was to decrease the probative value of Skidmore's questioning of Page. Although the jury could still draw conclusions and inferences from Page's demeanor during his testimony, allowing the jury to observe Page listening to the recordings would have enabled them to evaluate his demeanor while listening to the recordings, as well as when answering questions. Limiting the probative value of observation was not proper here, as the risk of unfair prejudice or jury confusion was relatively small and could have been reduced further with a proper admonition. For example, the district court could have instructed the jury that the recordings were limited to the issue of access and that they were not to be used to judge substantial similarity. *See United States v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007) (providing that "the court substantially underestimated the . . . potential efficacy of a limiting instruction"). Given the probative value of the information and the relatively low risk of unfair prejudice, we conclude that the district court abused its discretion in excluding the evidence. *See* Fed. R. Evid. 403.

## C.

Skidmore also argues that the district court abused its discretion by failing to disqualify Defendants' expert Dr. Ferrara or to give a negative inference instruction to the jury

because he previously had been hired by Rondor to compare "Stairway to Heaven" to the original recording of "Taurus." District courts have "broad discretion" in making evidentiary rulings, including whether to allow expert testimony. *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). We thus review for abuse of discretion the district court's decision to allow expert testimony. *See id.*

The district court did not abuse its discretion when it denied Skidmore's request for sanctions against Dr. Ferrara and excluded his testimony. Skidmore's motion was rejected as untimely and improperly filed. Even if the motion had been timely filed, the district court did not err in denying the motion because there was no conflict that merited monetary sanctions or exclusion of Dr. Ferrara's testimony. Skidmore argues that Dr. Ferrara effectively switched sides in this case. We have held that when an expert switches sides, the party moving for disqualification must show that the expert in question has confidential information from the first client. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). Here, even if Dr. Ferrara switched sides, there was no showing that Dr. Ferrara had confidential information. Rondor retained Dr. Ferrara to obtain his opinion on two publicly available songs, and he volunteered to share his conclusion with Skidmore. While he did not produce a report from this prior consultation, he did testify that he believed he communicated his opinion telephonically to Rondor rather than in a written report.

Additionally, there is no evidence presented that Dr. Ferrara did switch sides. Rondor does not have an interest in this case, nor does Universal Music, and Rondor waived any potential conflict that might arise from having Dr. Ferrara testify as an expert for Defendants. Skidmore

contends that Universal Music was working for Hollenbeck, which owed a fiduciary duty to Skidmore as a publisher of Spirit's music. He presents no evidence, however, that Hollenbeck owed a fiduciary duty to Skidmore. *See Cafferty v. Scotti Bros. Records, Inc.*, 969 F. Supp. 193, 205 (S.D.N.Y. 1997) ("In the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law." (citation omitted)). On remand, in light of the current record, there is no basis for excluding Dr. Ferrara's testimony, giving an adverse jury instruction, or imposing monetary sanctions.

## V.

Defendants cross-appeal the district court's denial of their motions for attorneys' fees and costs. In light of our disposition, we vacate the district court's denial of attorneys' fees and costs under 17 U.S.C. § 505. In the event Defendants' prevail on remand, they may renew their motions.

## VI.

Given our disposition, we need not address the remaining arguments raised by the parties. To be clear, we do not consider whether the district court abused its discretion in determining which version of "Taurus" to play in response to the jury's request during jury deliberations. And, we do not address whether the district court's imposition of time limits violated due process. We note, however, that strict time limits are generally disfavored at trial. *See Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994). Given the complex nature of this case, we are troubled by the strict imposition of time limits and the relative inflexibility of the district court once Skidmore ran out of time. On remand, if the district court

again imposes time limits for the retrial it should ensure that each side has adequate time to present its witnesses and arguments.

## VII.

We vacate the amended judgment in part and remand for a new trial against Defendants because of the deficiencies in the jury instructions on originality and the district court's failure to include a selection and arrangement jury instruction. Additionally, although harmless in this instance, we conclude that the district court abused its discretion by not allowing the sound recordings of "Taurus" to be played to prove access. Further, at any retrial, the district court should reconsider whether an inverse ratio jury instruction is warranted. The district court did not err, however, in limiting the copyright of "Taurus" to its deposit copy or in allowing Dr. Ferrara to testify. Finally, we vacate the order denying Defendants' motions for attorneys' fees and costs. Given our disposition, there is no need to address the remaining issues raised by Skidmore.

**VACATED in part and REMANDED for a new trial.**

Appellant shall recover his costs on appeal.