# United States Court of Appeals For the Ninth Circuit

## C.A. 16-56057

_____

### Skidmore et al. v. Led Zeppelin *et al.*

Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Appellant.

_____

## Appellant's Petition for Limited Panel Rehearing/Rehearing En Banc

_____

(Music copyright infringement, from the September 28, 2018 panel opinion reversing in part, affirming in part orders of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California. The case was docketed in the Central District at 15- cv-03462)

_____

### Francis Alexander, LLC

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Appellant Skidmore*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... 3

INTRODUCTION ........................................................................ 4

REASONS FOR REHEARING ........................................................... 6

QUESTIONS PRESENTED FOR REVIEW .......................................... 9

FACTS ..................................................................................... 10

ARGUMENT ............................................................................. 12

I.    The Panel Erred in Holding that the Registered Deposit Copy
      Determines the Scope of a Song's Composition under
      the 1909 Copyright Act; In Fact, The Common Law Defined the Scope
      of the Composition and Registration was Just a Jurisdictional
      Requirement ..................................................................... 12

      a.    Federal Registration with a Deposit Copy Did Not Create a
            Copyright under the 1909 Act, Nor Did it Delineate the
            Scope of Copyright Protection; Registration Gave a Preexisting
            Common Law Copyright Federal Protections and Jurisdiction ........ 12

      b.    The Composition of an Unpublished Song Under the 1909 Act is
            Proven by the Musical Elements Which Existed at Its Creation
            Before Federal Registration; the Existing Composition/Copyright
            was Not Shrunken By Registration ......................................... 17

II.   The Panel Failed to Consider the Dire Consequences of its Decision,
      Including the Seismic Disenfranchisement of almost all authors of
      Pre-1978 Jazz, Folk, Blues, and Rock and Roll ...................................... 18

CONCLUSION ........................................................................... 21

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

ABKCO Music, Inc. v. LaVere, 217 F.3d 684, 688 (9th Cir. 2000) ................... 5, 7-8, 13-16

Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 276 (6th Cir. 2009) ....... 18, 19

Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 618 (9th Cir. 2010) ..........8, 13, 17

Goldstein v. California, 412 US 546 (1973) ............................................................. 18

In re Osborne, 76 F. 3d 306, 309 (9th Cir. 1996) ............................................. 8, 15, 18

Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002) ............................... 17

Societe Civile Succession Guino v. Renoir, S49 F .3d 1182, 1185 (9th Cir. 2008) .........8, 13, 17

Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000) ............................... 16

Whitman v. American Trucking Assns., Inc., 531 U.S. 457 (2001) ............................... 15

Williams v. Bridgeport Music, Inc., No. LA CV13-06004, at *15 of 29
(C.D. Cal. Oct. 30, 2014) ................................................................. 16, 19

Williams v. Gaye, 895 F.3d 1106, 1121 (9th Cir. 2018) ................................................ 9

## STATUTES AND RULES

Copyright Act of 1909 (repealed 1978), §§ 2, 11 ................................................. et seq.

Copyright Act of 1976, § 301 ................................................................. et seq.

## OTHER AUTHORITIES

2 NIMMER ON COPYRIGHT §7.17[A] (2016) ...................................................... 15

# Introduction

The opinion of the panel entered on September 28, 2018, is, in almost all respects, a well-reasoned and thorough analysis of the facts and law. There is no question that the trial court committed reversible error when it erroneously instructed the jury on what is protectable arrangement and on originality. There is also no question that the trial court erred in not letting the jury hear the very sound recording of "Taurus" that defendant Jimmy Page owned and is alleged to have copied to create "Stairway to Heaven."

However, on one issue, appellant Michael Skidmore respectfully contends the panel clearly erred: the panel's finding that the deposit copy lead sheet defines the scope of "Taurus's" composition under the 1909 Copyright Act because the federal registration deposit *created* the song's copyright. <u>See</u> Panel Opinion, at p.31. The panel failed to realize that ***the common law defined the existence and scope of a copyright under the 1909 Act***, and conferred copyright protection from the moment a work was created, *before* registration. This legal error, once corrected, demonstrates that the deposit copy could never have been intended to outline the scope of a song's composition.

No court has ever—in over a century—read such an understanding into the 1909 Act, nor did Congress even define the scope of copyright in the 1909 Act. As

noted, under the 1909 Act the existence and scope of a copyright was determined at **common law**, which provided that a composition gained copyright protection from the "***moment of its creation.***" <u>ABKCO Music, Inc. v. LaVere</u>, 217 F.3d 684, 688 (9th Cir. 2000). Registration was not substantive, but simply gave a work federal jurisdiction and protection. The Act deliberately did not define the scope of copyright because this task was *already done* by the common law which predated the Act. It was only in 1976 that the common law was abolished, and that the scope and existence of copyright became federally defined in section 301.

This is not a harmless error. The panel has, perhaps unintentionally, endorsed a seismic disenfranchisement of songwriters; its opinion will essentially ***revoke copyright protection for almost all musical compositions created before 1978***— including "Stairway to Heaven." The panel's discussion of what it terms "policy" considerations fails to grasp the far reaching implications of its holding.

Nearly every song composed from 1909 to 1978, excepting classical music, was composed on instruments, not sheet music. The lead sheets submitted to the Copyright Office are complete enough to identify the songs, but almost never consist of all the notes in the musical compositions; they are also often inaccurate. In effect, ***most blues, jazz, folk, and rock and roll music composed before 1978 is now no longer copyrighted due to the panel's ruling***. This will be devastating to songwriters who

have owned their music for decades, only to be told in 2018 for the first time that they do not actually own most of their music created half a century ago under the 1909 Act.

Consider, the "Stairway to Heaven" deposit copy does not contain the famous opening notes at issue in this lawsuit; the deposited lead sheet is, in its totality, just 400 notes—even though the full composition of the recorded song actually contains 11,000. In essence, what the panel has ruled is that 3.6% of "Stairway to Heaven" is copyrighted, and that the rest may be freely copied.

Stare decisis is adhered to so that courts carefully evaluate their decisions before disturbing settled matters and do not cavalierly disrupt the status quo without due consideration. Here, Plaintiff-Appellant respectfully contends that the panel has erred and should revisit this one aspect of its decision and/or that the Circuit *en banc* should do so. This Circuit should reverse the trial court and hold that the protected composition of an unpublished song under the 1909 Act is that which can be proven existed at the time the song was created, before it was federally registered.

## Reasons for Rehearing

Panel or en banc rehearing is appropriate when there is a need to maintain uniformity of decisions, or the proceeding involves a question of exceptional importance. See FRAP 35(a). Both reasons are manifestly present in this appeal.

**First,** the panel's decision on the deposit copy issue is clearly erroneous for the reasons discussed throughout this petition. The panel held that registration with a deposit initially created the copyright under the 1909 Copyright Act and therefore defined the scope of the copyright. The panel's decision fails to realize the role that common law copyright played in the 1909 Act scheme (which was part common law and part federal, as opposed to the all-federal 1976 Act). See 1909 Copyright Act, § 2. Works had protection under the common law from the *moment of creation*, and later registration merely conferred federal protections and jurisdiction on the work. ABKCO Music, Inc. v. LaVere, 217 F.3d 684, 688 (9th Cir. 2000). **Registration did not alter the existing scope of the copyright**, nor did Congress ever say that it did.

The text of the 1909 Act does not even address the scope of copyright, precisely because it was already addressed and established by the common law. The absence of any language defining the scope of copyright in the 1909 Act clearly indicates the legislative intent to rely on the *then-existing* common copyright scheme which already defined the existence and scope of copyright—a system which was not abolished by Congress for another 70 years. The panel's holding is contrary to the entire statutory scheme as intended by Congress in 1909, and 110 years of case law from the Circuit and Supreme Courts. Simply put, if the deposit copy determined the scope of copyright under the 1909 Act, then someone would have realized it before 2018.

**Second**, the panel forthrightly observes that its deposit copy holding is one of *first impression in the entire nation*, and is one that has undeniable national implications. The decision's construction of the deposit copy requirement in the 1909 Copyright Act, as currently formulated, will have the effect of divesting thousands of iconic musical works of copyright protection and will usher in the seismic disenfranchisement of songwriters.

**Third**, the panel's decision that there was no copyright in an unpublished work until it was federally registered not only fails to realize the role the common law played in copyright law under the 1909 Act, but it inadvertently overrules several Ninth Circuit decisions which all clearly observe that the existence and scope of copyright was determined by common law. See ABKCO, 217 F.3d at 688; Societe Civile Succession Guino v. Renoir, S49 F .3d 1182, 1185 (9th Cir. 2008); Cosmetic Ideas, Inc. v. IAC/lnteractivecorp., 606 F.3d 612, 618 (9th Cir. 2010). A panel of this Circuit cannot overrule a prior panel decision, which can only be done by this Circuit sitting *en banc*. See In re Osborne, 76 F. 3d 306, 309 (9th Cir. 1996).

**Fourth,** another panel of this court, although declining to rule on this issue, stated that it was highly skeptical of the argument that an appellate court could, for first time since 1909, hold that the deposit sheet controls the scope of a song's composition:

To our knowledge, [appellee's position that the deposit copy controls the scope of a song's composition] *had not found support in case law* until the district court's ruling.

See Williams v. Gaye, 895 F.3d 1106, 1121 (9th Cir. 2018) (Blurred Lines case) (emphasis added). The Blurred Lines's panel's skepticism of the position adopted by the instant panel's holding indicates substantial disagreement among the judges of this Circuit on this novel issue of first impression, demonstrating that review *en banc* is necessary and appropriate.

# Questions Presented

**Question 1**: Whether the panel erred in concluding that under the 1909 Copyright Act the deposit lead sheet of a song determines the scope of the composition of a musical work, instead of the common law?

    **Answer**: *Yes*. The panel based its decision on the erroneous proposition that a song had no copyright under the 1909 Act until a deposit lead sheet was submitted to the Copyright Office for registration. The panel's conclusion contradicts another portion of the opinion which correctly observes that, under the 1909 Act, a song had common law copyright protection from the "moment of its creation." Federal registration of the song *did not shrink the scope* of the protected composition that an author already had, it simply gave the owner federal protections and jurisdiction.

**Question 2**: Whether the panel failed to adequately consider the seismic disenfranchisement of songwriters before coming to its decision?

    **Answer**: *Yes*. Under the panel's decision virtually every unpublished song written before 1978 will effectively no longer be copyrighted. By way of example, "Stairway to Heaven's" deposit lead sheet does not contain the iconic opening notes, and includes only 400 notes out of the 11,000 in the song.

The panel's decision means that just 3.6% of "Stairway to Heaven" is copyrighted; the fate will be identical for almost every other blues, folk, jazz, gospel, and rock and roll composition created before the 1976 Copyright Act.

# Facts

In late 1966 through the summer of 1967 Randy Wolfe's band Spirit played every week in Hollywood at a club called the Ash Grove. (Excerpt 287-88). Wolfe was professionally known by the nickname Jimmy Hendrix gave him, Randy California. One of the songs Spirit played every night was "Taurus". (Excerpt 288). The recordings of Spirit playing the Ash Grove show that the composition of "Taurus" was in a concrete, definite, and final form in early to mid-1967. (Audio Exhibits 32-39).[1] Later in early 1967, Wolfe met a producer named Lou Adler who signed the band to a recording contract on August 29, 1967. (Excerpt 289-90). The first Spirit album was released in late 1967. (Excerpt 317). Hollenbeck then filed a copyright for "Taurus" that listed Randy California as the author. (Excerpt 2639, 2754). The composition of "Taurus" on the album recording was the same as the earlier shows played at the Ash Grove in 1966-1967. As part of the registration

---

[1] All referenced audio exhibits and trial exhibits were already submitted by way of a Motion to Transmit Physical Exhibits.

packet, an incomplete deposit copy lead sheet was later transcribed by "B. Hansen," not by Randy California or any other member of the band. (Trial Exhibit 2058; Excerpt 2642).

It is alleged that Led Zeppelin, and defendants Jimmy Page and Robert Plant, copied "Taurus" to create the beginning to "Stairway to Heaven." A jury found that Page and Plant had access to "Taurus" because Page and/or Plant owned the eponymous *Spirit* album that included "Taurus," owned many Spirit albums, heard "Taurus" live in concert, opened for Spirit, covered Spirit songs, and were friends with the members of Spirit. (Excerpts 495-97, 537, 1230-31, 404-05, 554-55, 531, 159, 157, 711-12, 1212-16, 415, 418; Trial Exhibit 100158); Skidmore Reply, at p.39-41.

In addition to finding that defendants Jimmy Page and Robert Plant had access to "Taurus," the jury also found that the works were not substantially similar. The panel decision (attached as an addendum) reversed and vacated the defense jury verdict on substantial similarity.

This petition for rehearing asks for review of only the panel's holding that the deposit lead sheet allegedly defines the composition of an unpublished song under the 1909 Act. It is Mr. Skidmore's contention that it does not, and that common law defined the existence and scope of the copyright.

# Argument

I. The Panel Erred in Holding that the Registered Deposit Copy Determines the Scope of a Song's Composition under the 1909 Copyright Act; In Fact, The Common Law Defined the Scope of the Composition and Registration was Just a Jurisdictional Requirement

### a. Federal Registration with a Deposit Copy Did Not Create a Copyright under the 1909 Act, Nor Did it Delineate the Scope of Copyright Protection; Registration Gave a Preexisting Common Law Copyright Federal Protections and Jurisdiction

The panel ruled that the deposit lead sheet, which must be submitted with an unpublished song when registered under the 1909 Act, determines the scope of the composition of the song. See Panel Opinion, at p.25-33. The holding was:

> Overall, the structure of the 1909 Act demonstrates that the deposit copy encompasses the scope of the copyright for unpublished works, as the deposit copy must be filed not only to register the copyright, ***but for the copyright to even exist***.

See Panel Opinion, at p.31 (emphasis added).

The critical issue upon which the panel's decision hinges is the incorrect notion that registration with a deposit copy allegedly confers the existence of copyright under the 1909 Act for an unpublished work, and that but for that deposit no copyright exists. Id.

The panel contrasted the 1909 Act with the 1976 Copyright Act, observing that under the 1976 Act copyright protection instead attaches at the moment a work is fixed in a tangible medium, without any registration with a deposit. See Opinion,

at p.30. Thus, the panel opined that the deposit is not essential to the existence of an unpublished copyright under the 1976 Act, but is under the 1909 Act. Id. at 31.

The panel's holding is wrong and badly mischaracterizes the copyright scheme under the 1909 Act—even expressly contradicting other portions of its own opinion—by ignoring the integral role played by common law copyright. The 1909 Act was designed to work in tandem with the then-existing common law copyright scheme, which already defined the existence and scope of copyright. See 1909 Act, § 2.[2] It is for this reason that the 1909 Act does not define the scope of copyright, because Congress already intended that the common law *continue* to do so.

The panel's own opinion quotes the ABKCO case, without realizing that an unpublished musical composition gained *common law* copyright protection from the "moment of its creation," which could be federalized with registration:

> Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it ***received protection*** under the federal copyright scheme." ABKCO Music, Inc. v. LaVere, 217 F.3d 684, 688 (9th Cir. 2000).

See Panel Opinion, at p.26 (emphasis added); see also Societe Civile Succession Guino v. Renoir, S49 F .3d 1182, 1185 (9th Cir. 2008); Cosmetic Ideas, Inc. v.

---

[2] "That nothing in this Act shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor." Id.

IAC/Interactivecorp., 606 F.3d 612, 618 (9th Cir. 2010). It is wholly incorrect as a matter of law for the panel to hold that copyright in an unpublished musical work under the 1909 Act did not exist until a deposit lead sheet was registered with the federal government.

Note the language of this Circuit under ABKCO, which makes it clear that a **preexisting copyright** simply "**received**" federal protection and jurisdiction with registration. See also Skidmore Opening Brief, at p.20, 31-32 (stating "Upon registration with the Copyright Office, the common law copyright protection then became a federal copyright.").[3]

Nothing about federal registration **modified** or **limited** the composition of the already existing copyright, which had existed at common law from the "moment of its creation." See also Skidmore Opening Brief, at p.20, 31-32 ("There is no indication that federally registering the common law copyright could in anyway result in the limitation of the scope of the copyright."). The scope of copyright is not addressed in the 1909 Act because it was understood that the common law already governed this.

Indeed, section 2 of the 1909 Act expressly states that the Act does not "annul or limit" the rights of an *"author or proprietor of an unpublished work, at common*

---

[3] Appellant expressly noted these facts and law in his opening brief, but, respectfully, contends that it was overlooked by the panel.

*law or in equity.* " <u>Id.</u> (emphasis added).

It is pure error for the panel to hold that the copyright in "Taurus" did not exist prior to 1909 Act deposit registration, and that therefore the deposit must delineate the composition. The panel's error not only mischaracterizes the objective history of the 1909 Act, but inadvertently overrules <u>ABKCO</u> and its sister cases (not to mention 110 years of settled law). A panel may not overrule the decision of another panel, which can only be done by this Circuit sitting in *en banc*. <u>See</u> <u>In re Osborne</u>, 76 F. 3d 306, 309 (9th Cir. 1996).

There is no evidence, no statutory text, and no reason to believe that Congress ever intended that an author converting his common law copyright to a federal copyright by registration could possibly shrink/modify the scope of his already existing copyright. 2 NIMMER ON COPYRIGHT §7.17[A] (2016). If Congress had intended to use the 1909 Act to change the ability of the common law to determine the existence and scope of copyright, then it would have plainly said so; *it did not*, leaving the common law scheme in place. <u>See</u> <u>Whitman v. American Trucking Assns., Inc.</u>, 531 U.S. 457 (2001) (stating that when Congress intends to alter "fundamental details" of a statutory/regulatory scheme it does not do so ambiguously).[4]

---

[4] Indeed, the very fact that the Congress later passed the 1976 Act, which included a provision preempting all common law copyright in favor of federal jurisdiction,

Of course, the fact that registration of an unpublished work merely conferred federal jurisdiction and protections on an existing common law copyright also demonstrates that the "complete" deposit requirement in section 11 of the 1909 Act is a ***jurisdictional*** requirement intended to make sure that the song in question is sufficiently identifiable—which is exactly what the Ninth Circuit held in <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477 (9th Cir. 2000). Consider that it was never even a question in <u>Three Boys Music</u> if the deposit in any way substantively controlled the scope of copyright in a composition, because that was never the deposit copy's purpose.[5]

The deposit was ***never*** meant to delineate the scope of an unpublished composition—only to identify the song to secure federal protections and jurisdiction, see <u>ABKCO</u>, *supra*—which is why there are no court opinions in 110 years which endorse such a point of view.[6]

---

indicates quite clearly that common law copyright was essential to understanding and interpreting the 1909 Act. <u>See</u> 1976 Copyright Act, 17 U.S.C. § 301.

[5] Although the lead sheet for "Taurus" is admittedly incomplete (like "Stairway to Heaven" and every other rock song), the deposit does not determine the song's compositional scope. The deposit is, however, more than sufficient to identify the song as "Taurus," for purposes of the 1909 Act's jurisdictional requirement. <u>See</u> <u>Three Boys Music</u>, *supra*.

[6] Note that even if the deposit does control the scope of the copyright, there is no reason why the scope analysis should differ from the jurisdictional analysis in <u>Three Boys Music</u>. If the deposit copy is sufficient to identify the song, then inaccuracies in the transcription should not limit the substantial similarity comparison. This was

### b. The Composition of an Unpublished Song Under the 1909 Act is Proven by the Musical Elements Which Existed at Its Creation Before Federal Registration; the Existing Composition/Copyright was Not Modified By Registration

As this Circuit has held repeatedly under the 1909 Act scheme, an unpublished song had copyright protection for its entire composition from the *"moment of its creation."* See Panel Opinion, at p.26; see also Societe Civile, S49 F .3d at 1185; Cosmetic Ideas, 606 F.3d at 618.

How then, one might ask, is the composition of a song proven at the time of its creation? The answer is that it is proven with evidence, just the same as any other element or allegation at trial.

A composition is nothing more than those musical elements which appear every time the song is played/performed. See Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002); Skidmore Opening Brief, at p.31.

The evidence in this case, for instance, shows that "Taurus" by Randy California was created and had common law copyright by early 1967. This is proven by witness testimony and contemporaneous audio, which confirms the same. (Excerpt 287-88; Audio Exhibits 32-39). Contemporaneous audio shows that the composition of "Taurus" stayed the same every time California and his band Spirit

---

the holding of the district court in Williams v. Bridgeport Music, Inc., No. LA CV13-06004, 2014 WL 7877773, at *15 of 29 (C.D. Cal. Oct. 30, 2014).

played the song in 1966 and 1967. (Audio Exhibits 32-39). Only *after* the composition of ''Taurus'' was finalized and also was recorded for the album (and had common law copyright protection), was the deposit lead sheet written and federal registration filed. (Excerpt 2639, 2754, 2642; Trial Exhibit 2058).[7]

The copyright similarity comparison should be between the composition the defendant actually heard (which is almost always the full composition as the plaintiff songwriter actually created it) and not some dusty deposit lead sheet sitting on a shelf at the Library of Congress that no one, including Jimmy Page, Robert Plant, and even Randy California, had ever seen.

## II. The Panel Failed to Consider the Dire Consequences of its Decision, Including the Seismic Disenfranchisement of almost all authors of Pre-1978 Jazz, Folk, Blues, Gospel, and Rock and Roll Music

Stare decisis is a well-known term that is actually an abbreviation of a longer term ''*stare decisis et non quieta movere*.'' This means ''to stand by and adhere to decisions and not disturb what is settled.'' In re Osborne, 76 F. 3d at 309.

The purpose of stare decisis is to make sure that the courts carefully consider

---

[7] This audio is unimpeachable evidence of ''Taurus's'' composition when created. See Skidmore Reply Brief, at p.14-15, 43 (citing Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 276 (6th Cir. 2009) (observing that a song's composition is necessarily ''embedded in the sound recording'' of the song); Goldstein v. California, 412 US 546 (1973) (stating that ''under § 1 (e), records and piano rolls were to be considered as 'copies' of the original composition they were capable of reproducing'')).

the effects of their decision before disturbing the status quo. Id. Here, in this case, no appellate court in 110 years since the 1909 Act came into existence had ruled that the deposit copy jurisdictional requirement actually controlled the scope of protected composition in a work.

The panel failed to heed stare decisis in upending what was a settled matter. The panel also failed to consider the dire implications of its ruling.

As is well known, and supported by the evidentiary record in this case, virtually every folk, blues, jazz, gospel, rock and roll, and disco musical work composed before the 1976 Copyright Act were composed on instruments (not on sheet music) and were thus unpublished. (Excerpt 2642, 651-52; Trial Exhibit 2058); Williams v. Bridgeport Music, Inc., No. LA CV13-06004, 2014 WL 7877773, at *15 of 29 (C.D. Cal. Oct. 30, 2014); UMG Recordings, 585 F.3d at 276. The incomplete deposit lead sheets submitted for registration were jotted down long after the compositions were created by corporate types to satisfy a legal, jurisdictional formality. (Excerpt 1788).

This is what happened with ''Taurus,'' and it is also what happened with ''Stairway to Heaven.'' (Trial Exhibit 2058; Excerpt 2642; 651-52). ''Stairway'' was composed on instruments, not paper. This story is the same for virtually the United States' entire catalogue of music composed before 1978, excepting classical

music. Skidmore Opening Brief, at p.43.

Looking at "Stairway to Heaven" itself is instructive. For this case, the defense expert Dr. Lawrence Ferrara scored the entire "Stairway to Heaven" composition found on the *Led Zeppelin IV* album version of the song. (Excerpt 2404-07). This is the version the public knows, and over which Led Zeppelin zealously guards its copyright. Dr. Ferrara's score included 11,000 notes. Id. Yet, just 400 notes are found on the deposit lead sheet. Id. The lead sheet does not contain, in any respect, the opening notes at issue in this case.

In effect, 3.6% of "Stairway to Heaven" is copyrighted under the panel's decision, which does not include the song's most iconic notes. The panel's decision means that just infinitesimal bits of the composition of songs composed before 1978 have copyright. The panel's decision creates a discordant copyright scheme, never intended by Congress, where small bits of well-known songs would actually be protected by federal copyright.

When this absurd result is considered, it becomes obvious that the scope of protected composition in a copyright was determined by common law, and the federal registration of an unpublished work under the 1909 Act simply conferred federal jurisdiction and protections.

# Conclusion

Plaintiff-Appellant respectfully requests a panel hearing/rehearing en banc limited to whether the deposit copy outlines the scope of a work's composition under the 1909 Copyright Act.

*****

*Respectfully submitted,*
Francis Alexander, llc
/s/ Francis Malofiy
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Rd. | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com
*Law Firm / Lawyers for Michael Skidmore*

*/d/ October 26, 2018*

# Certificate of Service

I hereby certify that a true and correct copy of the foregoing Appellant's Petition for a Limited Panel Rehearing/Rehearing *En Banc* have been served upon all counsel of record via electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

*Respectfully submitted,*

Francis Alexander, llc
/s/ Francis Malofiy
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Rd. | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*Law Firm / Lawyers for Michael Skidmore*

*/d/ October 26, 2018*

**Form 11.**     **Certificate of Compliance Pursuant to**
               **9th Circuit Rules 35-4 and 40-1 for Case Number** <u>16-56057</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the back of each copy of the petition or answer.*

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition (check applicable option):

☒ Contains   <u>4,155</u>   words (petitions and answers must not exceed 4,200 words), and is prepared in a format, type face, and type style that complies with Fed. R. App. P. 32(a)(4)-(6).

**or**

☐ Is in compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

Signature of Attorney or    /s/ Francis Malofiy, Esquire      Date   10/26/2018
Unrepresented Litigant

("s/" plus typed name is acceptable for electronically-filed documents)

# ADDENDUM

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL SKIDMORE, AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST, | No. 16-56057 |
| *Plaintiff-Appellant,* | D.C. No. 2:15-cv-03462-RGK-AGR |
| v. | |
| LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORPORATION; WARNER CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY, | |
| *Defendants-Appellees.* | |

2                SKIDMORE V. LED ZEPPELIN

---

| | |
|---|---|
| MICHAEL SKIDMORE, AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST, | No. 16-56287 |
| *Plaintiff-Appellee*, | D.C. No. 2:15-cv-03462-RGK-AGR |
| v. | |
| WARNER/CHAPPELL MUSIC, INC, | OPINION |
| *Defendant-Appellant,* | |
| and | |
| LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORPORATION, ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 12, 2018
San Francisco, California

Filed September 28, 2018

Before:  Richard A. Paez and Sandra S. Ikuta, Circuit
Judges, and Eric N. Vitaliano,[*] District Judge.

Opinion by Judge Paez

## SUMMARY[**]

### Copyright

The panel vacated in part the district court's judgment after a jury trial in favor of the defendants and remanded for a new trial in a copyright infringement suit alleging that Led Zeppelin copied "Stairway to Heaven" from the song "Taurus," written by Spirit band member Randy Wolfe.

The jury found that plaintiff Michael Skidmore owned the copyright to "Taurus," that defendants had access to "Taurus," and that the two songs were not substantially similar under the extrinsic test.

The panel held that certain of the district court's jury instructions were erroneous and prejudicial.  First, in connection with the extrinsic test for substantial similarity, the district court prejudicially erred by failing to instruct the jury that the selection and arrangement of unprotectable musical elements are protectable.  Second, the district court prejudicially erred in its instructions on originality.  The

---

[*] The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

panel concluded that the district court did not err in failing to instruct the jury on the inverse ratio rule, but such an instruction might be appropriate on remand.

The panel further held that the scope of copyright protection for an unpublished musical work under the Copyright Act of 1909 is defined by the deposit copy because copyright protection under the 1909 Act did not attach until either publication or registration. Therefore, the district court correctly ruled that sound recordings of "Taurus" as performed by Spirit could not be used to prove substantial similarity.

Addressing evidentiary issues, the panel held that the district court abused its discretion by not allowing recordings of "Taurus" to be played for the purpose of demonstrating access. The district court did not abuse its discretion by failing to exclude expert testimony on the basis of a conflict of interest.

In light of its disposition, the panel vacated the district court's denial of defendants' motions for attorneys' fees and costs and remanded those issues as well.

## COUNSEL

Francis Malofiy (argued) and Alfred Joseph Fluehr, Francis Alexander LLC, Media, Pennsylvania, for Plaintiff-Appellant.

Peter J. Anderson (argued), Law Offices of Peter J. Anderson, Santa Monica, California; Helens M. Freeman,

Phillips Nizer LLP, New York, New York; for Defendants-Appellees.

## OPINION

PAEZ, Circuit Judge:

This copyright case involves a claim that Led Zeppelin copied key portions of its timeless hit "Stairway to Heaven" from the song "Taurus," which was written by Spirit band member Randy Wolfe. Years after Wolfe's death, the trustee of the Randy Craig Wolfe Trust, Michael Skidmore, brought this suit for copyright infringement against Led Zeppelin, James Patrick Page, Robert Anthony Plant, John Paul Jones, Super Hype Publishing, and the Warner Music Group Corporation as parent of Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Co. (collectively, "Defendants"). The case proceeded to a jury trial, and the jury returned a verdict in favor of Defendants. Skidmore appeals, raising a host of alleged trial errors and challenging the district court's determination that for unpublished works under the Copyright Act of 1909 ("1909 Act"), the scope of the copyright is defined by the deposit copy. We hold that several of the district court's jury instructions were erroneous and prejudicial. We therefore vacate the amended judgment in part and remand for a new trial. For the benefit of the parties and the district court on remand, we also address whether the scope of copyright protection for an unpublished work under the 1909 Act is defined by the deposit copy. We hold that it is. We also address several other evidentiary issues raised by Skidmore that are likely to arise again on remand. Finally, in light of our disposition,

we vacate the denial of Defendants' motions for attorneys'
fees and costs and remand those issues as well.

## I.

### A.

Randy Wolfe, nicknamed Randy California by Jimi
Hendrix, was a musician and a member of the band Spirit.
He wrote the song "Taurus" in late 1966. Spirit signed a
recording contract in August 1967, and its first album
*Spirit*—which included "Taurus"—was released in late 1967
or early 1968. Hollenbeck Music ("Hollenbeck") filed the
copyright for Taurus in December 1967 and listed Randy
Wolfe as the author. As part of the copyright registration
packet, "Taurus" was transcribed into sheet music that was
deposited with the Copyright Office ("Taurus deposit
copy").

The band Led Zeppelin, formed in 1968, consisted of
Jimmy Page, Robert Plant, John Paul Jones, and John
Bonham. Spirit and Led Zeppelin's paths crossed several
times in the late 1960s and early 1970s. On tour, Led
Zeppelin would occasionally perform a cover of another
Spirit song, "Fresh Garbage." Spirit and Led Zeppelin both
performed at a concert in Denver in 1968 and at the Atlanta
International Pop Festival, the Seattle Pop Festival, and the
Texas Pop Festival in 1969. There is no direct evidence that
Led Zeppelin band members listened to Spirit's
performances on any of these dates, although members of
Spirit testified that they conversed with Led Zeppelin
members, and one Spirit band member testified that Spirit
had played "Taurus" the night both bands performed in
Denver. Additionally, there was evidence at trial that Robert
Plant attended a February 1970 Spirit performance. Jimmy
Page testified that he currently owns a copy of the album

*Spirit*, but he was unable to clarify when he had obtained that copy. In late 1971, Led Zeppelin released its fourth album, an untitled album known as "Led Zeppelin IV." One of the tracks on the album is the timeless classic "Stairway to Heaven," which was written by Jimmy Page and Robert Plant.

Randy Wolfe passed away in 1997, and his mother established the Randy Craig Wolfe Trust (the "Trust"). All of Wolfe's intellectual property rights were transferred to the Trust, including his ownership interest in "Taurus."[1] His mother was the trustee or co-trustee until her death in 2009, after which time Skidmore became the trustee. Immediately after the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967–68 (2014), which clarified that laches is not a defense where copyright infringement is ongoing, Skidmore filed this suit on behalf of the Trust alleging that "Stairway to Heaven" infringed the copyright in "Taurus."

### B.

Skidmore initially filed his complaint in the Eastern District of Pennsylvania, but the case was subsequently transferred to the Central District of California. *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 589–90 (E.D. Pa. 2015). Skidmore alleged direct, contributory, and vicarious copyright infringement. He also alleged a claim titled "Right of Attribution—Equitable Relief—Falsification of Rock n' Roll History." With regard to copyright infringement,

---

[1] Ownership of the Taurus copyright was one of the disputed issues at trial, but the jury found that Skidmore "is the owner of a valid copyright in Taurus." The Defendants do not challenge that finding on appeal.

Skidmore alleged that the opening notes of "Stairway to Heaven" are substantially similar to those in "Taurus." The Defendants disputed ownership, substantial similarity, and access. They also alleged a number of affirmative defenses including unclean hands, laches, and independent creation.

After discovery, Defendants moved for summary judgment, which the district court granted in part and denied in part. Specifically, the district court granted summary judgment to John Paul Jones, Super Hype Publishing, and Warner Music Group ("summary judgment defendants"), as they had not performed or distributed "Stairway to Heaven" in the three-year statute of limitations period preceding the filing of the complaint. Additionally, the district court granted summary judgment to Defendants on Skidmore's "Right of Attribution—Equitable Relief—Falsification of Rock n' Roll History" claim, as the district court "had diligently searched but [was] unable to locate any cognizable claim to support this [Falsification of Rock n' Roll History] theory of liability."

Because the 1909 Act governed the scope of the copyright Wolfe obtained in "Taurus," the district court further concluded that the protectable copyright was the musical composition transcribed in the deposit copy of "Taurus" and not the sound recordings. The district court therefore concluded that to prove substantial similarity between "Taurus" and "Stairway to Heaven," Skidmore would have to rely on the "Taurus" deposit copy rather than a sound recording. The district court also found that there were triable issues of fact relating to ownership, access, substantial similarity, and damages that could only be resolved at trial.

At a pretrial conference in April 2016, after reviewing summaries of each witnesses' proposed testimony, the

Case: 16-56057, 09/28/2018, ID: 11028164, DktEntry: 69-1, Page 9 of 37

district court decided to allot each side ten hours to present its case. The district court also tentatively granted Defendants' motion in limine to exclude recordings of Spirit performing "Taurus" as well as expert testimony based on those recordings, again concluding that the 1967 deposit copy should be the baseline when considering substantial similarity. Before trial, the district court filed an order confirming its prior tentative rulings on the motions in limine.

As part of expert discovery, Skidmore's attorney deposed Dr. Lawrence Ferrara, Defendants' expert musicologist. During the deposition it came to light that in 2013 Dr. Ferrara had done a comparison of the "Taurus" and "Stairway to Heaven" recordings for Rondor Music ("Rondor"), a subsidiary of Universal Music Publishing Group.[2] Dr. Ferrara testified that when he was approached by Defendants' counsel, he informed them that he had already completed an analysis for Rondor. Defendants' counsel consulted with Rondor, which waived any conflict and consented to Dr. Ferrara being retained as an expert witness for Defendants. Throughout the deposition, Skidmore's counsel objected and requested copies of Dr. Ferrara's communications with Rondor and Universal. After the deposition, Skidmore filed a Motion for Sanctions and to Preclude Dr. Ferrara from testifying at trial. The district court denied Skidmore's motion because it was improperly noticed, over the page limit, and untimely.

---

[2] Skidmore presented evidence that Universal Music was working for Hollenbeck, the publisher of Spirit's music. Skidmore alleged during the deposition that because of this connection, Hollenbeck owed fiduciary duties to Skidmore.

A five-day jury trial ensued.  While questioning Jimmy Page, Skidmore's counsel requested that several sound recordings of Spirit performing "Taurus" be played so that he could ask Page whether he had ever heard any of the recordings.  When Defendants objected, Skidmore's counsel explained that the recordings were offered to prove access, rather than substantial similarity.  The district court determined that although the sound recordings were relevant to prove access, it would be too prejudicial for the jury to hear the recordings. To avoid any prejudice, the district court had Page listen to the recordings outside the presence of the jury and then allowed Skidmore's counsel to question him about them in the presence of the jury.  Page eventually testified that he presently had an album containing "Taurus" in his collection, but while testifying he did not admit to having heard any recordings of "Taurus" prior to composing "Stairway to Heaven."

Also of note, Kevin Hanson, Skidmore's master guitarist, performed the "Taurus" deposit copy as he interpreted it, and played recordings of his performances of the beginning notes of the "Taurus" deposit copy and "Stairway to Heaven."  The "Taurus" recording Hanson played for the jury during his testimony, however, only contained the bass clef and excluded the treble clef, which contained additional notes.

During the cross-examination of Dr. Ferrara, Skidmore used up the last of his ten hours of allotted trial time.  The district court found that Skidmore had not made effective use of his time for a variety of reasons, but granted Skidmore two additional minutes to finish cross-examining Dr. Ferrara and ten minutes to cross-examine each remaining witness. Skidmore was not allowed to call rebuttal witnesses.

Case: 16-56057, 09/26/2018, ID: 11023158, DktEntry: 69-1, Page 12 of 37

During jury deliberations, the jury asked to hear Skidmore's recording of Hanson playing both "Taurus" and "Stairway to Heaven." The district court asked if the jury would like to hear the deposit-copy version of "Taurus" or the version of "Taurus" with only the bass clef. One juror responded with "bass clef" but the jury foreperson responded with "the full copy." The district court directed that the full deposit-copy version be played and asked if that answered the jury's question, to which the foreperson replied "thank you." The other juror did not object to hearing the full copy rather than the bass clef version.

The jury ultimately returned a verdict for Defendants. The jury found that Skidmore owned the copyright to "Taurus," that Defendants had access to "Taurus," but that the two songs were not substantially similar under the extrinsic test.[3] Following the verdict, the district court entered an amended judgment in favor of all Defendants. Skidmore did not file any post-judgment motions challenging the verdict, but timely appealed from the amended judgment.[4] In this appeal, Skidmore challenges (1) various jury instructions, (2) the district court's ruling that substantial similarity must be proven using the copyright

---

[3] The extrinsic test is one of two tests used to determine if an allegedly infringing work is substantially similar to a copyrighted work. This test objectively compares the protected areas of a work. *See, infra* p. 13; *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).

[4] Skidmore appeals from the amended judgment, which listed all defendants, but none of his arguments implicate the summary judgment defendants. Defendants argue that this waives any challenge to the summary judgment order as it relates to those defendants. We agree. *See, e.g., Classic Concepts, Inc. v. Linen Source, Inc.*, 716 F.3d 1282, 1285 (9th Cir. 2013). Accordingly, we do not address any of the claims against the summary judgment defendants, and we do not disturb the amended judgment as it relates to those defendants.

Case: 16-56057, 09/28/2018, ID: 11023248, DktEntry: 69-1, Page 12 of 37

12           Skidmore v. Led Zeppelin

deposit copy, (3) the district court's ruling that sound recordings could not be played to prove access, (4) the district court's decision not to exclude or sanction Dr. Ferrara, (5) the fact that the full version of "Taurus" rather than the bass clef version was played in response to the jury's request, and (6) the imposition of strict time limits as a violation of due process.

Following entry of the amended judgment, Warner/Chappell filed a motion for attorneys' fees and a motion for costs. The district court denied these motions. Warner/Chappell timely cross-appealed, and we consolidated the two appeals.

## II.

We begin with a discussion of the elements that Skidmore must establish to prevail on his copyright infringement claim.

In order to prove copyright infringement, a plaintiff must show "(1) that he owns a valid copyright in his [work], and (2) that [the defendants] copied protected aspects of the [work's] expression." *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citing *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)). In this appeal, the parties do not contest that Skidmore owns a valid copyright in "Taurus," so our analysis turns on the second issue.

Whether Defendants copied protected expression contains two separate and distinct components: "copying" and "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117. A plaintiff must be able to demonstrate that a defendant copied his work, as independent creation is a complete defense to copyright infringement. *See Feist*

*Publ'ns*, 499 U.S. at 345–46; *see also Rentmeester*, 883 F.3d at 1117. In cases such as this one where there is no direct evidence of copying, the plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Rentmeester*, 883 F.3d at 1117. "When a high degree of access is shown," a lower amount of similarity is needed to prove copying. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (citation omitted). "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently." *Rentmeester*, 883 F.3d at 1117.

To prove "unlawful appropriation" a higher showing of substantial similarity is needed. *Id.* The works must share *substantial* similarities and those similarities must involve parts of the plaintiff's work that are original and therefore protected by copyright. *Id.* To determine whether an allegedly infringing work is substantially similar to the original work, we employ the extrinsic and intrinsic tests. The extrinsic test is an objective comparison of protected areas of a work. This is accomplished by "breaking the works down into their constituent elements, and comparing those elements" to determine whether they are substantially similar. *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). Only elements that are protected by copyright are compared under the extrinsic test. *Id.* The intrinsic test is concerned with a subjective comparison of the works, as it asks "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (citation omitted).

### III.

We turn first to Skidmore's argument that the district court failed to properly instruct the jury on the elements of his copyright infringement claim as discussed above and whether the court's alleged errors were prejudicial. Skidmore argues: (1) that the district court erred by failing to give an instruction that selection and arrangement of otherwise unprotectable musical elements are protectable; (2) that the district court's jury instructions on originality and protectable musical elements were erroneous; and (3) that the district court erred in failing to give an inverse ratio rule instruction. We address each of these in turn.

We review for abuse of discretion the district court's formulation of jury instructions and review de novo whether the instructions misstate the law. *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 941 (9th Cir. 2011). As a general matter, prejudicial error in jury instructions occurs when "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) (quoting *In re Asbestos Cases*, 847 F.2d 523, 524 (9th Cir. 1998)) (alteration in original)). "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Id.* at 805 (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206–07 (9th Cir. 1992)).

### A.

Skidmore argues that the district court's failure to instruct the jury that the selection and arrangement of unprotectable musical elements are protectable is reversible error. Each side had included a version of such instruction in their proposed jury instructions. The district

Case: 16-56057, 09/26/2018, ID: 11023264, DktEntry: 64-1, Page 15 of 37

court, however, did not include either instruction in its final version of the instructions nor did it modify any of the substantive instructions to include this point.  We conclude that the district court erred by failing to instruct the jury on this issue and that the error was prejudicial.

We are concerned here with the extrinsic test for substantial similarity, as the jury decided that there was no extrinsic substantial similarity and failed to reach the intrinsic test.  In the musical context, the extrinsic test can be difficult to administer.  *See Swirsky*, 376 F.3d at 848.  Although individual elements of a song, such as notes or a scale, may not be protectable, "music is comprised of a large array of elements, some combination of which is protectable by copyright." *Id.* at 849.  For example, we have "upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements." *Id.* (citing *Three Boys*, 212 F.3d at 485).  In other circumstances, we have recognized that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (citations omitted).  The copyright in an arrangement of public domain elements extends only to the originality contributed by the author to the arrangement.  *Id.* at 811–12; *see also Feist Publ'ns*, 499 U.S. at 345.  Thus, there can be copyright protection on the basis of a sufficiently original combination of otherwise non-protectable music elements.  The district court's failure to so instruct the jury was especially problematic in this case, because Skidmore's expert, Dr. Stewart, testified that there was extrinsic substantial similarity based on the combination of five elements—some of which were protectable and some of which were in the public domain.

Although Defendants requested an instruction on selection and arrangement, they argue that the district court's failure to give such an instruction does not warrant reversal. First, Defendants argue that Skidmore waived any objection to the court's failure to give such an instruction, in part because Skidmore did not voice any objection when the district court was reading the final jury instructions to counsel. This argument is baseless. Although Skidmore's counsel transcribed and assembled the jury instructions as directed by the district court, the court specifically stated that it did not want any oral objections to its final jury instructions, as the parties had already submitted separate instructions and written objections to the other side's proposed instructions. Skidmore proposed an instruction on selection and arrangement as did the Defendants and each side objected to the other side's proposed instruction as required by Local Rule 51-1, 5. *See, e.g.*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016).

Next, Defendants contend that Skidmore did not argue or present evidence of a copyrightable selection and arrangement of otherwise unprotectable elements. When objecting to one of Skidmore's jury instructions, however, Defendants expressly stated that Skidmore relied on a selection and arrangement theory in his argument for infringement. On appeal, Defendants maintain that Skidmore instead relied on the similarity of a "combination" of elements present in "Taurus" and "Stairway to Heaven." Defendants' refined argument splits hairs and contradicts their earlier position. Whether or not the words "selection and arrangement" were used at trial is irrelevant because it is clear that this legal theory formed the basis of Skidmore's infringement claim. Indeed, the fact that Defendants recognized this argument at trial undermines their contrary argument here. Additionally, many selection and

Case: 16-56057, 09/26/2018, ID: 11032164, DktEntry: 69-1, Page 17 of 37

arrangement cases also refer to a "combination" of musical elements, further undermining Defendants' proffered distinction. *See Swirsky*, 376 F.3d at 849; *Satava*, 323 F.3d at 811. As both sides recognized in their proposed jury instructions, a selection and arrangement instruction was appropriate and necessary given the basis for Skidmore's infringement claim.

Defendants also argue that any error is harmless, because the jury would likely have reached the same verdict even if it had been instructed on selection and arrangement. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). We disagree. Without a selection and arrangement instruction, the jury instructions severely undermined Skidmore's argument for extrinsic similarity, which is exactly what the jury found lacking. Given that nothing else in the instructions alerted the jury that the selection and arrangement of unprotectable elements could be copyrightable, "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton*, 270 F.3d at 802 (alteration in original) (quotations omitted). Indeed, as discussed further below, other instructions when considered in the absence of a selection and arrangement instruction imply that selection and arrangement of public domain material is not copyrightable. For instance, Jury Instruction No. 20, which instructed the jury that "any elements from . . . the public domain are not considered original parts and not protected by copyright," suggests that no combination of these elements can be protected by copyright precisely because the court omitted a selection and arrangement instruction. The district court's failure to instruct the jury on selection and

arrangement was therefore prejudicial given Skidmore's theory of infringement.[5]  *Id.*

## B.

Skidmore also argues that the district court erred in two ways in its formulation of the jury instructions on originality. First, Skidmore contends that Jury Instruction No. 16 erroneously stated that copyright does not protect "chromatic scales, arpeggios or short sequences of three notes."[6]  Second, Skidmore argues that Jury Instruction No.

---

[5] Each side proposed its own selection and arrangement instruction and objected to the language of the other party's proposed instruction. We leave it to the district court on remand to determine which version of the proposed instructions to adopt, given applicable precedent on the issue.  *See, e.g.*, *Feist Publ'ns*, 499 U.S. at 345; *Swirsky*, 376 F.3d at 848; *Satava*, 323 F.3d at 811; *Three Boys*, 212 F.3d at 485.

[6] In full, Jury Instruction No. 16 reads as follows:

Plaintiff has filed a claim against Defendants for violation of the United States Copyright Act, which governs this case.  In order for you to undertake your responsibility, you must know what a copyright is, what it protects, and what it does not protect.

Copyright confers certain exclusive rights to the owner of a work including the rights to:

1.  Reproduce or authorize the reproduction of the copyrighted work;

2.  Prepare derivative works based upon the copyrighted work.

3.  Distribute the copyrighted work to the public; and

20 on originality should not have instructed the jury that "[h]owever, any elements from prior works or the public domain are not considered original parts and not protected by copyright," and should have included the admonition from the Ninth Circuit Model Jury Instruction 17.13 that "[i]n copyright law, the 'original' part of a work need not be new or novel."[7]  Defendants argue that Skidmore waived a challenge to these jury instructions for the same reason he waived a challenge to the lack of a selection and arrangement

---

    4.   Perform publicly a copyrighted musical work.

    Copyright only protects the author's original expression in a work and does not protect ideas, themes or common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes.

    Also, there can be no copyright infringement without actual copying.  If two people independently create two works, no matter how similar, there is no copyright infringement unless the second person copied the first.

[7] Jury Instruction No. 20 reads:

An original work may include or incorporate elements taken from prior works or works from the public domain.  However, any elements from prior works or the public domain are not considered original parts and not protected by copyright.  Instead, the original part of the plaintiff's work is limited to the part created:

    1.   independently by the work's author, that is, the author did not copy it from another work; and

    2.   by use of at least some minimal creativity.

instruction. For the reasons discussed above, this argument fails. We further conclude that the district court erred in its instructions on originality.

There is a low bar for originality in copyright. *See Swirsky*, 376 F.3d at 851 ("[O]riginality means little more than a prohibition of actual copying.") (internal quotations omitted). Copyright extends to parts of a work created (1) independently, i.e., not copied from another's work and (2) which contain minimal creativity. *See Feist Publ'ns*, 499 U.S. at 348. Most basic musical elements are not copyrightable. *See Smith v. Jackson*, 84 F.3d 1213, 1216 n.3 (9th Cir. 1996) (explaining that "common or trite" musical elements are not protected); *Satava*, 323 F.3d at 811 (holding that expressions that are common to a subject matter or medium are not protectable); *Swirsky*, 376 F.3d at 851 (acknowledging that a single musical note lacks copyright protection). In *Swirsky*, however, we recognized that while "a single musical note would be too small a unit to attract copyright protection . . . an arrangement of a limited number of notes can garner copyright protection." *Id.* We therefore concluded that seven notes could be sufficient to garner copyright protection. *See id.* at 852.

Jury Instruction No. 16 included an instruction that "common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes" are not protected by copyright. This instruction runs contrary to our conclusion in *Swirsky* that a limited number of notes can be protected by copyright. *See id.* at 851. When considered in the absence of a selection and arrangement instruction, Jury Instruction No. 16 could have led the jury to believe that even if a series of three notes or a descending chromatic scale were used in combination with other elements in an original manner, it would not warrant copyright protection. *See*

Case: 16-56057, 09/26/2018, ID: 11026164, DktEntry: 74, Page 45 of 61
Case: 16-56057, 09/28/2018, ID: 11026158, DktEntry: 69-1, Page 21 of 37

SKIDMORE V. LED ZEPPELIN                21

*Swinton*, 270 F.3d at 802.  This error was not harmless as it undercut testimony by Skidmore's expert that Led Zeppelin copied a chromatic scale that had been used in an original manner.  *See Clem*, 566 F.3d at 1182 (an error in a jury instruction is harmless if "it is more probable than not that the jury would have reached the same verdict had it been properly instructed" (citation omitted)).

Similarly, Jury Instruction No. 20 omitted parts of the test for originality and added misleading language.  Under *Feist Publications*, originality requires that a work not be copied and that it be produced with a minimal degree of creativity.  499 U.S. at 348.  The original part of a work does not need to be new or novel, as long as it is not copied.  *Id.* The district court, however, omitted Skidmore's requested instruction—drawn from Ninth Circuit Model Instruction 17.13—that "the 'original' part of a work need not be new or novel." [8]  Additionally, Jury Instruction No. 20 stated that "any elements from prior works or the public domain are not considered original parts and not protectable by copyright." While this statement is not literally incorrect, it misleadingly

---

[8] At the time of trial, Ninth Circuit Model Instruction 17.13 provided that:

> An original work may include or incorporate elements taken from works owned by others, with the owner's permission.  The original parts of the plaintiff's work are the parts created:
>
> 1.   independently by the work's author, that is, the author did not copy it from another work; and
>
> 2.   by use of at least some minimal creativity.
>
> In copyright law, the "original" part of a work need not be new or novel.

suggests that public domain elements such as basic musical structures are not copyrightable even when they are arranged or modified in a creative, original way. *See Swirsky*, 376 F.3d at 852. Ninth Circuit Model Instruction 17.13 avoids this problem by not including this misleading statement.

Nowhere did the jury instructions include any statements clarifying that the selection and arrangement of public domain elements could be considered original. Jury Instruction No. 20 compounded the errors of that omission by furthering an impression that public domain elements are not protected by copyright in any circumstances. This is in tension with the principle that an original element of a work need not be new; rather, it need only be created independently and arranged in a creative way. *See Feist Publ'ns*, 499 U.S. at 345, 349; *see also Swirsky*, 376 F.3d at 849. Jury Instruction Nos. 16 and 20 in combination likely led the jury to believe that public domain elements—such as a chromatic scale or a series of three notes—were not protectable, even where there was a modification or selection and arrangement that may have rendered them original. Skidmore's expert testified that "Taurus" contained certain public domain elements—such as chromatic scales—that were modified in an original way, but the jury instructions as a whole likely would have led the jury to believe that such evidence could not establish the basis of a cognizable copyright claim. Similarly, the instructions undermined Skidmore's expert's testimony that "Taurus" and "Stairway to Heaven" were similar because of the combination of otherwise unprotectable elements.

In sum, we conclude that the district court's originality jury instructions erroneously instructed the jury that public domain elements are not copyrightable, even if they are

modified in an original manner or included as part of a selection and arrangement. We further conclude that these instructions were prejudicial as they undermined the heart of Skidmore's argument that "Taurus" and "Stairway to Heaven" were extrinsically substantially similar. *Clem*, 566 F.3d at 1182. Because the district court erred both in the formulation of the originality jury instructions and in withholding a selection and arrangement instruction, we vacate the judgment and remand for a new trial.

## C.

Skidmore also argues that the district court erred by not including a jury instruction on the inverse ratio rule. Under the "inverse ratio rule," a lower standard of proof of substantial similarity is required "when a high degree of access is shown." *Rice*, 330 F.3d at 1178 (citation omitted). We recently clarified the framework underlying the inverse ratio rule. *See Rentmeester*, 883 F.3d at 1124–25. This rule "assists only in proving copying, not in proving unlawful appropriation." *Id.* at 1124. Even if a plaintiff proves that a defendant copied his work, the plaintiff must still show that the copying "amounts to unlawful appropriation." *Id.*; *see also Peters v. West*, 692 F.3d 629, 635 (7th Cir. 2012). "The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown." *Rentmeester*, 883 F.3d at 1124; *see also Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 372 n.11 (5th Cir. 2004).

Unlike in *Rentmeester*, where the parties did not contest that copying had occurred, Skidmore must prove both unlawful appropriation and copying to prevail. 883 F.3d at 1124. While an inverse ratio rule jury instruction may have been helpful to Skidmore in proving copying, the jury verdict form makes clear that the jury did not decide whether

Led Zeppelin had copied parts of "Taurus." Rather, the jury ended its deliberations after deciding that "Taurus" and "Stairway to Heaven" were not substantially similar under the extrinsic test. Substantial similarity under the extrinsic and intrinsic test goes to unlawful appropriation, rather than copying. *Id.* at 1117. The jury found that under the extrinsic test, any similarity was not substantial. Therefore, there was not unlawful appropriation under *Rentmeester. See id.* Because the jury did not reach the question of copying, the inverse ratio rule was not relevant, and any error in not including it was harmless.

Because we are remanding for a new trial, however, we note that in a case like this one where copying is in question and there is substantial evidence of access, an inverse ratio rule jury instruction may be appropriate. *See Rice*, 330 F.3d at 1178 (declining to apply the inverse ratio rule at the summary judgment stage because the claims of access were "based on speculation, conjecture, and inference which are far less than the 'high degree of access' required for application of the inverse ratio rule"); *see also Swirsky*, 376 F.3d at 844 ( applying the inverse ration rule because access was conceded); *Metcalf v. Bocho*, 294 F.3d 1069, 1075 (9th Cir. 2002) (same); *Shaw v. Lindheim*, 919 F.2d 1353, 1361–62 (9th Cir. 1990) (same). Here, there was substantial evidence of access, and indeed, the jury found that both James Page and Robert Plant had access to "Taurus." On remand, the district court should reconsider whether an inverse ratio rule instruction is warranted unless it determines, as a matter of law, that Skidmore's "evidence as to proof of access is insufficient to trigger the inverse ratio rule." *Rice*, 330 F.3d at 1178.

## IV.

Because we are remanding for a new trial, we address three of Skidmore's additional assignments of error that will continue to be relevant on remand. First, we address whether the district court erred by holding that the deposit copy of "Taurus," rather than a sound recording, defined the scope of the protectable copyright. We hold that there was no error in the district court's ruling. Next, we analyze whether the district court abused its discretion by not allowing recordings of "Taurus" to be played for the purpose of demonstrating access; we conclude that it did. Finally, we examine whether the district court abused its discretion in not excluding Dr. Ferrara's testimony due to an alleged conflict of interest. We hold that the district court's ruling was well within its discretion.

## A.

Skidmore argues that the district court erred in concluding that the deposit copy of "Taurus" defines the scope of the protected copyright under the 1909 Act and that sound recordings of "Taurus" as performed by Spirit could not be used to prove substantial similarity. Because the copyright of "Taurus" was registered in 1967, the 1909 Act applies. *See Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 876 (9th Cir. 2005) (considering infringement claims under the 1909 Act because the copyrighted work "was published before the January 1, 1978, effective date of the 1976 Copyright Act"). We review de novo legal questions such as the appropriate scope of copyright protection. *See Rentmeester*, 883 F.3d at 1116.

The scope of copyright protection for musical works has been in flux throughout the different versions of the Copyright Act. In 1831, the Copyright Act of 1790 was

amended and copyright protection was extended to musical compositions for the first time. Copyright Act of 1831, 4 Stat. 436 (1831) (repealed 1909). Musical protection under the 1831 Act only extended to the sheet music itself. *See Goldstein v. California*, 412 U.S. 546, 564 (1973). Around the turn of the twentieth century, devices called piano player rolls were invented, which allowed songs to be recreated mechanically on a piano. *See White-Smith Music Publ'g Co. v. Apollo Co.*, 209 U.S. 1, 10–11 (1908). In its 1908 *White-Smith* opinion, the Court held that the only protected musical expression under the Copyright Act of 1831 was sheet music, and that infringement could only occur by duplicating the sheet music. *Id.* at 17. Therefore, the makers of piano player rolls did not infringe the copyrights of musical composers. *Id.*

Congress promptly enacted the Copyright Act of 1909. Copyright Act of 1909, 35 Stat. 1075 (1909) (repealed 1978) (the "1909 Act"). In this 1909 iteration, Congress made clear that the scope of protection "[t]o print, reprint, publish, copy, and vend the copyrighted work" under § 1(a) extended to "any arrangement or setting of [the musical composition] or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced." 1909 Act § 1(e).

"Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme." *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000) (quoting *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950, 952 (9th Cir. 1995), *superseded by statute on other grounds*, 17 U.S.C. § 303(b) (1997)). A work could receive federal

copyright protection either through registration and submission of a deposit copy, 1909 Act § 10, or through publication, *id.* § 9. Distributing phonorecords did not constitute publication under the 1909 Act, so musical compositions were only published if the sheet music were also published.[9] *ABKCO*, 217 F.3d at 688. Additionally, the Copyright Office did not accept sound recordings as deposit copies under the 1909 Act. *See* M. Nimmer & D. Nimmer, 1 Nimmer on Copyright § 2.05[A] (2017).

In 1972, Congress extended copyright protection to sound recordings as separate copyrightable works from musical compositions. 17 U.S.C. § 102(a)(7). The Copyright Act was again amended in 1976 and this amendment allowed musical composers to submit a recording rather than sheet music as the deposit copy for a musical composition. 17 U.S.C. §§ 407, 408 (1976).

Skidmore argues that under the 1909 Act, a deposit copy is purely archival in nature, whereas Defendants argue that for unpublished works, the deposit copy defines the scope of the copyright. This is an issue of first impression in our circuit as well as our sister circuits. One district court considered the issue prior to this case and concluded that for unpublished works under the 1909 Act, the deposit copy defines the scope of the copyright. *See Williams v. Bridgeport Music*, 2014 WL 7877773, at *6–10 (C.D. Cal.

---

[9] We held in *La Cienega* that the sale and distribution of sound recordings in phonorecords constituted a publication. 53 F.3d at 953. After that decision, Congress passed a law stating that the distribution of phonorecords before 1978 did not count as publication. 17 U.S.C. § 303(b). We subsequently held in *ABKCO* that *La Cienega* was an incorrect statement of law and that § 303 retroactively applied. *See ABKCO*, 217 F.3d at 691–92.

Oct. 30, 2014). On appeal, we declined to reach the issue. *Williams v. Gaye*, 895 F.3d 1106, 1121 (9th Cir. 2018).

Skidmore argues that the express purpose of the 1909 Act was to overturn *White-Smith* and extend copyright protection beyond sheet music. Specifically, Skidmore relies on § 1(e), which extended copyright protection to "any system of notation or any form of record in which the thought of an author may be recorded." § 1(e). But, as Defendants point out, this actually defines the forms an infringing copy can take, rather than the scope of what can be copyrighted. § 1(a), (e). Therefore, although the 1909 Act clearly extended copyright law to protect against infringement beyond mere reproduction of the sheet music—in contravention of *White-Smith*—it did not clearly state that copyrighted works could be anything other than published sheet music or the musical composition transcribed in the deposit copy. Indeed, "in order to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form." Nimmer on Copyright § 2.05[A] at 2–62 (2017).

Skidmore also cites to a host of cases to support his argument, but these cases are distinguishable. Skidmore relies primarily on *Three Boys*, 212 F.3d at 486–87. In *Three Boys*, appellants argued that because the deposit copy was incomplete—contrary to the 1909 Act's requirement that a "complete copy" be deposited—subject matter jurisdiction did not exist. *Id.* at 486. In response, we observed that an expert had testified that the essential elements of the musical composition were intact in the deposit copy; therefore we declined to overturn the jury's finding that the deposit copy was "complete" because there was no intent to defraud and any inaccuracies in the deposit copy were minor. *Id.* at 486–87. Since *Three Boys* dealt with whether the deposit copy

Case: 16-56057, 09/26/2018, ID: 11023248, DktEntry: 69-1, Page 29 of 37

adequately satisfied the "complete copy" statutory requirement, it is not directly on point. Nonetheless, Skidmore argues that we should extrapolate from language in *Three Boys* that the expert "even played the deposit copy" to conclude that a recording was also played, and that the recording was used for purposes of evaluating substantial similarity. *Id.* While the evidentiary presentation in *Three Boys* may support Skidmore's claim that typically sound recordings have been used in infringement trials under the 1909 Act, our resolution of the "complete copy" issue did not create binding precedent that copyright protection extended to sound recordings under the 1909 Act. *Id.*

Skidmore also relies on three other cases to support his argument that copyright protection under the 1909 Act extends beyond sheet music, none of which are helpful. One of the cases cited by Skidmore concludes that a copyright obtained via publication is not invalidated by failure to deposit promptly a copy. *Washingtonian Pub. Co. v. Pearson*, 306 U.S. 30, 41–42 (1939). The deposit copy carries less importance for published works, however, so this conclusion is not particularly instructive. 2 *Nimmer on Copyright* § 7.17[A] (citing 17 U.S.C. § 704(d) for the proposition that either the original or a copy of the deposit copy must be kept for unpublished works). Unlike for unpublished works, a deposit copy is not necessary to secure copyright in published works. 1909 Act § 9.

The other two cases both deal with copyright issues under the 1976 Act. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 276 (6th Cir. 2009); *Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 482–83 (7th Cir. 1982). Neither of these cases help us determine whether the deposit copy for unpublished works defines the scope of copyright protection

Case: 16-56057, 09/28/2018, ID: 11023258, DktEntry: 69-1, Page 30 of 37

under the 1909 Act.  The 1976 Act includes a provision
providing that federal copyright protection attaches upon
fixation of a work to any tangible medium, which can
include a sound recording.  17 U.S.C. § 102(a).  This
provision, however, was not a part of the 1909 Act.  As a
result, although it makes sense in the context of the 1976 Act
to look at a recording for evidence of what the composition
includes because federal copyright protection attaches when
the work is recorded, it makes significantly less sense to do
so for the 1909 Act.

The cases Defendants offer in support of their argument
are also not directly on point.  Some do not pertain to the
1909 Act, which is problematic for the reasons discussed
above.  *See, e.g.*, *White-Smith*, 209 U.S. at 15–16; *Merrell v.
Tice*, 104 U.S. 557, 558 (1881).  More persuasive are the
cases that, in the context of discussing the current copyright
scheme, opined that one of the purposes of the deposit
requirement is to provide "sufficient material to identify the
work in which the registrant claims a copyright."  *Data Gen.
Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–
63 (1st Cir. 1994); *see also Nicholls v. Tufenkian
Import/Export Ventures, Inc.*, 367 F. Supp. 2d. 514, 520
(S.D.N.Y. 2005).  These cases support Defendants'
contention that the deposit copy defines the scope of the
copyright, but as in *Three Boys* the ultimate holding in these
cases was that minor errors in the deposit copy do not
invalidate a copyright.  *See Data Gen. Corp.*, 36 F.3d at
1163.

As further support for their position, Defendants contend
that the treatment of deposit copies under the 1909 Act
supports their argument that for unpublished works, the
deposit copy defines the scope of the copyright.  The 1909
Act prohibits the destruction of the deposit copies of

unpublished works without notice to the copyright owner. *See* 1909 Act §§ 59–60; Report of the Register on the General Revision of the U.S. Copyright Law at 81 (1961). Additionally, the Register of Copyright's policy is to retain access to unpublished works for the full copyright term. *See* Report of the Register on the General Revision of the U.S. Copyright Law at 80–82 (1961).[10]

We are persuaded that for unpublished musical works under the 1909 Act, the deposit copy defines the scope of the copyright. Overall, the structure of the 1909 Act demonstrates that the deposit copy encompasses the scope of the copyright for unpublished works, as the deposit copy must be filed not only to register the copyright, but for the copyright to even exist. The 1909 Act states that "copyright may also be had of the works of an author of which copies are not reproduced for sale, *by the deposit*, with claim of copyright, of one complete copy of such work." 1909 Act § 11 (emphasis added). Because the 1909 Act makes the existence of copyright dependent on the deposit copy, it makes sense that the deposit copy also defines the scope of the copyright. It was not until the 1976 Act that common law copyright was federalized and copyright attached at the creation of the work. Recognizing the importance of deposit copies for unpublished works, Congress and the Register of Copyrights have taken care to ensure the preservation of deposit copies. 1909 Act §§ 59–60; Report of the Register on the General Revision of the U.S. Copyright Law at 80–82 (1961). Similarly, even under later versions of the Copyright

---

[10] In the 1976 Act, Congress prohibited the destruction of deposit copies of unpublished works during the copyright term unless a reproduction had been made. 17 U.S.C. § 704(d). *See* H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 172 (1976) (recognizing "the unique value and irreplaceable nature of unpublished deposits").

Act, the purpose of deposit copies has been described as providing a way "to identify the work in which the registrant claims a copyright." *Data Gen. Corp.*, 36 F.3d at 1161–62. Given that copyright protection under the 1909 Act did not attach until either publication or registration, we conclude that for unpublished works the deposit copy defines the scope of the copyright.

Skidmore puts forth three policy arguments, but they do not alter our conclusion as they do not override the weight of the 1909 Act's statutory scheme and legislative history. First, Skidmore argues that it is challenging to compare a sound recording of the infringing work to a deposit copy of the infringed work. While many copyrighted works, such as books, can be easily formatted to satisfy the deposit copy requirement, musical works are not as well reflected in deposit copies. This makes the intrinsic test for substantial similarity especially challenging when comparing a deposit copy to a sound recording, as the intrinsic test is concerned with the general "total concept and feel" of a work. *See Three Boys*, 212 F.3d at 485. Second, Skidmore argues that our conclusion is biased against musicians who do not read music and could not possibly have written the deposit copies of their own songs. It is not uncommon for musicians who are composing songs to not know how to read music. Skidmore argues that for musicians who do not read music it would be overly time consuming and expensive to make accurate deposit copy sheet music going forward. For new works, however, sound recordings can be deposited as the deposit copy, so we are not overly concerned with the costs of transcribing deposit copies for new compositions. *See* 17 U.S.C. §§ 407, 408. Finally, Skidmore raises the question of whether a copyright claim would be provable if a deposit copy were lost or destroyed. These policy arguments do not undermine the statutory framework that

Case: 16-56057, 09/26/2018, ID: 11023264, DktEntry: 69-1, Page 33 of 37

leads us to conclude that the deposit copy defines the scope of a copyrighted work for unpublished musical works under the 1909 Act.[11]

## B.

Skidmore argues that the district court erred by failing to allow recordings of "Taurus" to be played to prove access. This was an evidentiary ruling, which we review for abuse of discretion. *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009). Although Skidmore's counsel was permitted to play recordings for Page outside the presence of the jury, who was then questioned about them in front of the jury, Skidmore argues that the jury could not assess Page's credibility without observing him listening to the recordings and then answering questions about the recordings.

As the jury ultimately found that both Plant and Page had access to "Taurus," any error in precluding the recordings was harmless. *See United States v. Edwards*, 235 F.3d 1173, 1178–79 (9th Cir. 2000) (stating that an evidentiary ruling is reversed only if the error "more likely than not affected the verdict"). As this issue will likely arise again at retrial, we address whether the district court abused its discretion.

The district court excluded the sound recordings under Federal Rule of Evidence 403, finding that "its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. Here, the district court abused its discretion in finding that it would be unduly prejudicial for

---

[11] We leave open the possibility that where the deposit copy has been lost or destroyed, an original sound recording may be used as evidence of the scope of the copyright under the 1909 Act.

the jury to listen to the sound recordings in order to assess Page's access to "Taurus." The district court acknowledged that the recordings were relevant to whether Page had access to "Taurus," as Page would have heard and allegedly copied a recording of "Taurus." The district court was concerned, however, that allowing the jury to hear the recordings would confuse them.

Skidmore argues that by not allowing the jury to observe Page listening to the recordings of "Taurus," the effect of the court's ruling was to decrease the probative value of Skidmore's questioning of Page. Although the jury could still draw conclusions and inferences from Page's demeanor during his testimony, allowing the jury to observe Page listening to the recordings would have enabled them to evaluate his demeanor while listening to the recordings, as well as when answering questions. Limiting the probative value of observation was not proper here, as the risk of unfair prejudice or jury confusion was relatively small and could have been reduced further with a proper admonition. For example, the district court could have instructed the jury that the recordings were limited to the issue of access and that they were not to be used to judge substantial similarity. *See United States v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007) (providing that "the court substantially underestimated the . . . potential efficacy of a limiting instruction"). Given the probative value of the information and the relatively low risk of unfair prejudice, we conclude that the district court abused its discretion in excluding the evidence. *See* Fed. R. Evid. 403.

## C.

Skidmore also argues that the district court abused its discretion by failing to disqualify Defendants' expert Dr. Ferrara or to give a negative inference instruction to the jury

Case: 16-56057, 09/26/2018, ID: 11023258, DktEntry: 64-1, Page 35 of 37

because he previously had been hired by Rondor to compare "Stairway to Heaven" to the original recording of "Taurus." District courts have "broad discretion" in making evidentiary rulings, including whether to allow expert testimony. *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). We thus review for abuse of discretion the district court's decision to allow expert testimony. *See id.*

The district court did not abuse its discretion when it denied Skidmore's request for sanctions against Dr. Ferrara and excluded his testimony. Skidmore's motion was rejected as untimely and improperly filed. Even if the motion had been timely filed, the district court did not err in denying the motion because there was no conflict that merited monetary sanctions or exclusion of Dr. Ferrara's testimony. Skidmore argues that Dr. Ferrara effectively switched sides in this case. We have held that when an expert switches sides, the party moving for disqualification must show that the expert in question has confidential information from the first client. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). Here, even if Dr. Ferrara switched sides, there was no showing that Dr. Ferrara had confidential information. Rondor retained Dr. Ferrara to obtain his opinion on two publicly available songs, and he volunteered to share his conclusion with Skidmore. While he did not produce a report from this prior consultation, he did testify that he believed he communicated his opinion telephonically to Rondor rather than in a written report.

Additionally, there is no evidence presented that Dr. Ferrara did switch sides. Rondor does not have an interest in this case, nor does Universal Music, and Rondor waived any potential conflict that might arise from having Dr. Ferrara testify as an expert for Defendants. Skidmore

contends that Universal Music was working for Hollenbeck, which owed a fiduciary duty to Skidmore as a publisher of Spirit's music. He presents no evidence, however, that Hollenbeck owed a fiduciary duty to Skidmore. *See Cafferty v. Scotti Bros. Records, Inc.*, 969 F. Supp. 193, 205 (S.D.N.Y. 1997) ("In the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law." (citation omitted)). On remand, in light of the current record, there is no basis for excluding Dr. Ferrara's testimony, giving an adverse jury instruction, or imposing monetary sanctions.

## V.

Defendants cross-appeal the district court's denial of their motions for attorneys' fees and costs. In light of our disposition, we vacate the district court's denial of attorneys' fees and costs under 17 U.S.C. § 505. In the event Defendants' prevail on remand, they may renew their motions.

## VI.

Given our disposition, we need not address the remaining arguments raised by the parties. To be clear, we do not consider whether the district court abused its discretion in determining which version of "Taurus" to play in response to the jury's request during jury deliberations. And, we do not address whether the district court's imposition of time limits violated due process. We note, however, that strict time limits are generally disfavored at trial. *See Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994). Given the complex nature of this case, we are troubled by the strict imposition of time limits and the relative inflexibility of the district court once Skidmore ran out of time. On remand, if the district court

Case: 16-56057, 09/28/2018, ID: 11028248, DktEntry: 69-1, Page 37 of 37

again imposes time limits for the retrial it should ensure that each side has adequate time to present its witnesses and arguments.

## VII.

We vacate the amended judgment in part and remand for a new trial against Defendants because of the deficiencies in the jury instructions on originality and the district court's failure to include a selection and arrangement jury instruction. Additionally, although harmless in this instance, we conclude that the district court abused its discretion by not allowing the sound recordings of "Taurus" to be played to prove access. Further, at any retrial, the district court should reconsider whether an inverse ratio jury instruction is warranted. The district court did not err, however, in limiting the copyright of "Taurus" to its deposit copy or in allowing Dr. Ferrara to testify. Finally, we vacate the order denying Defendants' motions for attorneys' fees and costs. Given our disposition, there is no need to address the remaining issues raised by Skidmore.

**VACATED in part and REMANDED for a new trial.**

Appellant shall recover his costs on appeal.