**CA Nos. 16-56057 & 16-56287**
DATE OF DECISION: SEPTEMBER 28, 2018
JUDGES PAEZ AND IKUTA AND DISTRICT JUDGE VITALIANO

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――――――――――――――――

MIKE SKIDMORE,
AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST
*Plaintiff-Appellant-Appellee*

v.

LED ZEPPELIN, ET AL.,
*Defendants-Appellees*
AND
WARNER/CHAPPELL MUSIC, INC.,
*Defendant-Appellee-Appellant*

―――――――――――――――――――――

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE
CASE NO. 15-CV-03462-RGK (AGRx)

―――――――――――――――

**BRIEF OF AMICI CURIAE 123 SONGWRITERS, COMPOSERS, MUSICIANS, AND PRODUCERS, ALONG WITH NSAI AND SONA, IN SUPPORT OF PETITION OF DEFENDANTS FOR PANEL REHEARING AND REHEARING EN BANC**

―――――――――――――――

Edwin F. McPherson
Tracy B. Rane
**McPHERSON RANE LLP**
1801 Century Park East, 24th Floor
Los Angeles, California 90067-2326
(310) 553-8833
emcpherson@mcphersonrane.com
trane@mcphersonrane.com
***Attorneys for Amici Curiae***

**This Brief Is Filed On Behalf Of The Following Songwriters, Composers, Musicians, And Producers (Affiliations Are Listed For Identification Purposes Only):**

Harvey Mason Jr.

Mike Shinoda
(**Linkin Park**)

Jason Mraz

Bishop Briggs

Nashville Songwriters
Association
International (NSAI)
(Over 4,000 members)

Songwriters of North
America (SONA)
(Over 500 members)

Nancy Wilson
(**Heart**)

Geoff Bywater

Sean Lennon

Maynard James Keenan
Danny Carey
Justin Chancellor
(**Tool, et al.**)

Carina Round
Jeff Friedl
Matt McJunkins
Mat Mitchell
(**Puscifer, et al.**)

Billy Howerdel
(**A Perfect Circle, et al.**)

Eddie Money

Curt Smith
Roland Orzabal
(**Tears for Fears**)

James Iha
(**Smashing Pumpkins**)

Tim Alexander
Les Claypool
(**Primus**)

Rob Halford
(**Judas Priest**)

Rick Nowels

Nile Rodgers

Brian Welch
James Shaffer
Jonathon Davis
(**Korn**)

Brett Gurewitz
(**Bad Religion**)

Karen Fairchild
(**Little Big Town**)

Savan Kotecha

Charlie Midnight

Jeff Trott

Carla Azar
(**Autolux**)

Greg Edwards
(**Autolux/Failure**)

Kellii Scott
Ken Andrews
(**Failure**)

Brian McPherson

Serban Ghenea

Alex Ghenea

Justin Raisen

DallasK

Siedah Garrett

Bob Ezrin

Claudia Brant

Chris Briggs

Ross Golan

Matt Adell

Cliff Calabro

Ricardo Lemvo

Greg Wells

Nicole Fox

Nash Overstreet

Mark Beaven

Adam Anders

Busbee

John Woold

Lulu Pantin

Michael Eames

Erica Nuri Taylor

Shea Taylor

Pam Sheyne

Kenny McPherson

Andre Lindal

Matthew Puckett

Jason Evigan

Aton Ben-Horin

Spencer Bastien

Jeff Fenster

Aloe Blacc

Marty James

Michelle Lewis

Max Martin

Dina LaPolt

Dallas Davidson

Lindy Robbins

Jonas Jeberg

Al Shuckburgh

Darrell Brown

Laurent Edwards

DJ Frank E

Brett James

Bonnie McKee

Nick Gatfield

Jesse Kirshbaum

Laurent Hubert

Pete Giberga

Richard James Burgess, PhD

Dr. Owen J. Lee

Johan Karlsson

Rami Yahcoub

Michael Rosenblatt

Mike Simpson
(**Dust Brothers**)

Phil Greiss

Jintae Ko

Toby Gad

Al Jones

Merck Mercuriadis

Terius "The-Dream" Nash

Anais Aida Kane

Itaal Shur

Josh Kear

Charles Biederman

John Ryan

Jesse Frasure

ii

| | | |
|---|---|---|
| KoOol.kOjAk | Tom Douglas | Britt Burton |
| Megan Wood | Alan Melina | Kevin Randolph |
| T D Ruth | Jamie Lynn Vessels | Evan Kidd Bogart |
| Troy Verges | Suzette Toledano | Lucas Keller |
| Nicolle Galyon | Stefan Skarbek | Austin Bisnow |
| Maureen Baker | Tomas Ericsson | Billy Mann |
| Alan Okuye | | |

# TABLE OF CONTENTS

**PAGE**

I.    **STATEMENT OF COMPLIANCE WITH RULE 29(a)(4)(E).** . . . . . . . 1

II.    **CONSENT OF THE PARTIES.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    **INTEREST OF THE AMICI CURIAE.** . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.    **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

V.    **ARGUMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    **BY HOLDING THAT COMMONPLACE ELEMENTS IN SONGS ARE NOW PROTECTED BY COPYRIGHT, THE PANEL HAS CREATED SIGNIFICANT CONFUSION, AS WELL AS A SIGNIFICANT RISK OF STIFLING CREATIVITY AND CAUSING EXCESSIVE AND UNWARRANTED LITIGATION..** . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    **A *Selection And Arrangement* Of Random Unprotected Elements Does Not Garner Copyright Protection Unless It Is Original, And Even Then Such Protection Will Be *Thin*, And Infringement Found Only When The *Selection And Arrangement* In Each Work Is Virtually Identical..** . . . 5

        2.    **The Panel Is Correct That The Instruction That "Common Musical Elements, Such as Descending Chromatic Scales, Arpeggios or Short Sequences of Three Notes Are Not Protected by Copyright" Is Literally Correct – And There Should Not Be A Reversal For Giving It..** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    **THE PANEL'S MANDATE THAT THE JURY HEAR THE SOUND RECORDING OF A SONG WRITTEN PRIOR TO FEBRUARY 15, 1972 WHILE ASSESSING THE CREDIBILITY OF TESTIMONY CONCERNING *ACCESS* IS NOT ONLY ENTIRELY PREJUDICIAL; IT CANNOT REALISTICALLY**

iv

**BEAR ON CREDIBILITY**.... . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    1.    **Allowing The Jury To Hear A Sound Recording Of A Pre-1972 Song For Any Purpose Would Be Extremely Prejudicial**... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    2.    **Playing The Sound Recording To The Jury And The Jury's Observation Of The Defendant Is Not Probative In Any Way Of Access Or The Defendant's Credibility Concerning His *Lack* Of Access**. . . . . . . . . . . **15**

  C.    **IN CONTRAST TO CASES INVOLVING BOOKS AND FILMS, SUMMARY JUDGMENT IS ELUSIVE IN COPYRIGHT CASES THAT INVOLVE MUSIC**... . . . . . . . . . . **17**

  D.    **COPYRIGHT LAW SHOULD PROTECT ORIGINAL MUSIC, WITHOUT STIFLING CREATIVITY**.. . . . . . . . . . . **19**

**VI.**    **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

**VII.**    **CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . **21**

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Darrell v. Joe Morris Music Co.*,
113 F.2d 80 (2nd Cir. 1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9, 10

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gaste v. Kaiserman*,
863 F.2d 1061 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Metcalf v. Bochco*,
294 F.3d 1069 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

*Skidmore v. Led Zeppelin*,
2018 U.S. App. LEXIS 27680 (9th Cir. 2018). . . . . . . . . . . . . . . . . 10, 12, 13, 14

*Twentieth Century Music Corp. v. Aiken*,
422 U.S. 151, 156 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## OTHER AUTHORITIES

M. Nimmer & D. Nimmer, 1 NIMMER ON COPYRIGHT, § 2.05[A] (2017). . . . . . . 13

M. Nimmer & D. Nimmer, 4 NIMMER ON COPYRIGHT, § 13.03[A][4] (2018). . . . . 8

R. Mendelsohn, *Will the "Blurred Lines" Decision Stifle Creativity?*,
    http://blogtrans.megatrax.com/will-the-blurred-lines-decision-stifle-
    creativity/. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I.  STATEMENT OF COMPLIANCE WITH RULE 29(a)(4)(E)

Counsel for the parties did not author this brief.  No party has contributed any money to fund the preparation or submission of this brief.

## II.  CONSENT OF THE PARTIES

Plaintiff Skidmore has refused to consent to the filing of this brief.  Amici submit this brief in conjunction with a Motion for Leave.

## III.  INTEREST OF THE AMICI CURIAE

Amici represent songwriters, composers, musicians, and producers who create music in many different genres that is protected under U.S. copyright law. That music entertains and enriches the lives of countless people, in the United States and around the world.  Amici will therefore undoubtedly be affected by, and consequently have a significant interest in, the outcome of this critically important case.

## IV.  INTRODUCTION

A case like this, particularly one that is brought almost 50 years after an alleged infringement, when it is inconceivable that anyone in the free world is not familiar with "Stairway to Heaven," affect many, many more people than the

1

parties in the case.  In fact, the panel appears to have gone out of its way in its opinion to make policy decisions that have less to do with this case and much more to do with future cases.  This is a decision that truly does impact (adversely) every songwriter and musician.

The panel has made three significant rulings concerning the propriety of certain jury instructions, and one ruling concerning the propriety of playing an otherwise irrelevant sound recording to the jury in order to assess credibility.  If left to stand, these rulings will likely stifle the creativity of Amici and other present and future songwriters, and will adversely impact the entire music industry in general.  Moreover, the rulings are certain to create a significant risk of future unwarranted and excessive copyright infringement claims.

First, the panel held that the district court erred by failing to instruct the jury that the selection and arrangement of unprotectable music elements is protectable.  Significantly, however, during the trial, no evidence was presented by Plaintiff or his expert that demonstrated that any "selection and arrangement" at issue in Plaintiff's work "Taurus" consisted of a single compilation of common musical elements that were arranged in an original way.  Rather, the purported selection and arrangement that was presented was simply a combination of random, unprotected elements.

By making this ruling, the panel has necessarily determined – or at least given credence to the argument – that the arrangement and selection that was presented by Skidmore rose to the level of an original work. By so ruling, the panel has drastically expanded the basis for finding copyright infringement in music cases. Indeed, the end result of this ruling is that trivial and commonplace similarities between two songs may be considered to constitute the basis for a finding of infringement.

Second, the panel has ruled that, because the jury was not instructed that a selection and arrangement could be protected, it was erroneous to instruct the jury that "common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes," and "elements from the public domain" are not protected by copyright.

This ruling is in direct contravention to established copyright law, which provides that such elements, which are the basic building blocks of musical composition, are not protected. At the very minimum, these rulings are certain to cause substantial confusion among songwriters, who only have twelve notes with which to work in the first place; songwriters need at least some certainty as to what basic elements of music are free for all to use.

Third, the panel definitively held that, for music that was created prior to February 15, 1972, it is only the *deposit copy* of the work, and not the *sound*

*recording*, that constitutes the relevant work at issue in a copyright infringement case. The panel then completely eviscerated the import of its own holding by finding that the otherwise irrelevant sound recording should be played to the defendant, in front of the jury, for the purpose of evaluating the defendant's credibility concerning his lack of *access*.

Of course, once a jury hears the sound recording for purposes of access, it will necessarily be unable to "unhear" and disregard the sound recording for purposes of determining substantial similarity. Such a ruling will cause substantial prejudice to every songwriter defendant who disputes access to a song that falls under the 1909 Act.

In addition to causing substantial prejudice, the underlying premise of this ruling is erroneous. Playing the sound recording to the defendant in the jury's presence cannot possibly be probative to the issue of access. The *access* that is at issue in this case is not the access that the members of Led Zeppelin have to "Taurus" now; it is their access to "Taurus" before they wrote "Stairway to Heaven." There is simply no relevance whatsoever to the reaction of the members of Led Zeppelin to hearing a sound recording of "Taurus" (perhaps for the thousandth time) in a courtroom in 2016 to whether or not they had "access" to the recording 46 years before when they wrote "Stairway to Heaven."

In sum, the panel's decision extends copyright protection to public domain elements. Such an extension is certain to result in excessive and ultimately unwarranted copyright litigation in the music community. The decision will also substantially stifle creativity, and cause significant confusion among songwriters and future songwriters.

## V. ARGUMENT

**A.** **BY HOLDING THAT COMMONPLACE ELEMENTS IN SONGS ARE NOW PROTECTED BY COPYRIGHT, THE PANEL HAS CREATED SIGNIFICANT CONFUSION, AS WELL AS A SIGNIFICANT RISK OF STIFLING CREATIVITY AND CAUSING EXCESSIVE AND UNWARRANTED LITIGATION.**

**1.** **A _Selection And Arrangement_ Of Random Unprotected Elements Does Not Garner Copyright Protection Unless It Is Original, And Even Then Such Protection Will Be _Thin_, And Infringement Will Be Found Only When The _Selection And Arrangement_ In Each Work Is Virtually Identical.**

The panel ruled that it was reversible error for the district court not to provide the jury with an instruction stating that the selection and arrangement of

unprotectable music elements is protectable. By making this ruling, the panel necessarily found – or at least gave credence to the argument – that the random, unprotected elements that appear in "Taurus" were sufficient to constitute a selection and arrangement that is protected by copyright.

It is hardly a novel concept that a selection and arrangement of otherwise unprotected elements that is original can be subject to copyright protection.[1] However, there was no evidence presented at the Led Zeppelin trial that the otherwise unprotected elements that appeared in "Taurus" were presented in such an original pattern or compilation as to garner copyright protection.

Instead, the "evidence" of the purported "selection and arrangement" in "Taurus" that also appeared in "Stairway To Heaven" merely consisted of random similarities of commonplace elements, such as the existence of a descending chromatic scale and two-pitch sequences in different melodies that were scattered throughout the beginning of the songs. After filtering out the generic elements or musical commonplaces identified in "Taurus" under the extrinsic test, what remains are two completely different songs.

---

[1] A "compilation," defined in the Copyright Act, is deemed original, and hence protected by copyright, if the author has independently and with at least a minimal degree of creativity made choices as to "which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).

More specifically, both songs start with chords that, according to both sides' experts, are "commonplace." In fact, both songs include an "arpeggio," which means "breaking" chords so their constituent pitches are heard separately rather than simultaneously, which, again, both sides' experts agree is "commonplace."

Both experts also agree that these "broken" chords' pitches are played in a different order in "Taurus" than in "Stairway to Heaven," which makes the two songs' melodies different. In fact, the two songs' melodies' lowest pitches are a descending chromatic scale, which is nothing more than the white and black keys of a piano, played in order, right to left.[2] This is not original.

Even assuming that Skidmore had identified the existence of an original pattern of commonplace musical elements in "Taurus" that could be subject to copyright protection, because the work embodies (at best) the minimum of creativity necessary for any protection, the protection is "thin." *See Satava v. Lowry*, 323 F.3d 805, 810-12 (9th Cir.), *cert. den.*, 540 U.S. 983 (2003).

Moreover, to prove infringement of a *selection and arrangement*, the copying has to be <u>virtually identical</u>. *See id.* (copyright only protects against "virtually identical copying."); *see also*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. at 349 (requiring the "same selection and arrangement" to demonstrate

---

[2]Skidmore's musicologist admitted that: "certainly there are numerous songs that use chromatic scales, and that "songs commonly include a descending chromatic scale.

infringement of a compilation); *see also*, M. Nimmer & D. Nimmer, 4 NIMMER ON COPYRIGHT, § 13.03[A][4] (2018) ("More similarity is required when less protectable matter is at issue."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) (holding that "the appropriate standard for illicit copying [of works comprised of only unprotectable or licensed elements] is virtual identity.") Plaintiff made no showing of any identical copying of a pattern of music in this case.

By ruling that the jury should have been instructed that the selection and arrangement of the otherwise unprotectable music elements is protectable under these circumstances, the panel is necessarily adding copyright protection where none existed before, *i.e,* to the unprotected elements themselves (*e.g.*, descending chromatic scale; commonplace eighth notes) that appear in "Taurus," rather than to some *original* selection and arrangement of those elements.

This is contrary to established copyright law. *See e.g.*, *Feist*, 499 U.S. at 342 ("A compilation is not copyrightable *per se,* but is copyrightable only if its facts have been 'selected, coordinated, or arranged *in such a way* that the resulting work as a whole constitutes an original work of authorship'"); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1179 (9th Cir. 2003) (rejecting *selection and arrangement* argument because works lacked the "same pattern of generic similarities").

As discussed in *Satava v. Lowry*, *supra*:

> [I]t is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection . . . [A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

*Id.* at 811 (citing *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002); *Apple Computer, Inc.*, 35 F.3d at 1446; *Feist*, 499 U.S. at 358 ("[T]he principle focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection.").

2. **The Panel Is Correct That The Instruction That "Common Musical Elements, Such as Descending Chromatic Scales, Arpeggios or Short Sequences of Three Notes Are Not Protected by Copyright" Is Literally Correct – And There Should Not Be A Reversal For Giving It.**

The panel also erroneously held that it was prejudicial to include a jury instruction that stated that "common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes" are not protected by copyright. The panel's rationale was that, when such an instruction is considered in the absence of a *selection and arrangement* instruction, it "could have led the

9

jury to believe that even if a series of three notes or a descending chromatic scale were used in combination with the other elements in an original manner, it would not warrant copyright protection."  However, they were <u>not</u> so used in this case.

Similarly, the panel held that it was erroneous to instruct the jury that "any elements from prior works or the public domain are not considered original parts and not protectable by Copyright."  Although the panel acknowledged that this instruction was not "literally incorrect,[3]" the panel went on to state that: "it misleadingly suggests that public domain elements such as basic musical structures are not copyrightable even when they are arranged or modified in a creative way." *Skidmore v. Led Zeppelin*, 2018 U.S. App. LEXIS 27680 at *29 (9th Cir. 2018).

Significantly, however, although facts and elements in the public domain, as well as commonplace elements, if arranged in an original manner, *may* qualify for (thin) copyright protection, the component parts themselves do not become protected by copyright simply by virtue of their combination into a larger whole. *See Feist*, 499 U.S. at 363.  Indeed, by their very definition, elements that are in the "public domain," and "scenes a faire," are free for all to use.  *See*, *Satava v. Lowry*, *supra*. 323 F.3d at 812.

---

[3]If the instruction is not "literally incorrect," it is difficult to understand how giving the instruction can constitute reversible error.

At a minimum, the panel's decision, if left unchanged, will cause substantial confusion. Any artist who reads the opinion may very well fear that the (very common) use of any "descending chromatic scales, arpeggios or short sequences of three notes," or any elements in the "public domain," could form the basis of an infringement action.

The end result of the panel's rulings on these jury instructions, if left standing, is that full copyright protection will be afforded to *musical* works (unlike other works) in the Ninth Circuit (and no other circuit) based simply on the fact that the works contain the basic building blocks of musical composition, even when they are not arranged in any original way.

This is especially problematic, because in *music*, unlike film, books, etc., there is a "limited number of notes and chords available to composers" (*Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2nd Cir. 1988)), and composers are therefore much more restricted in their options.[4]

---

[4]As Judge Learned Hand wrote: "It must be remembered that while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear. Recurrence is not therefore an inevitable badge of plagiarism." *Darrell v. Joe Morris Music Co.*, 113 F.2d 80 (2nd Cir. 1940).

**B.** **THE PANEL'S MANDATE THAT THE JURY HEAR THE SOUND RECORDING OF A SONG WRITTEN PRIOR TO FEBRUARY 15, 1972 WHILE ASSESSING THE CREDIBILITY OF TESTIMONY CONCERNING *ACCESS* IS NOT ONLY ENTIRELY PREJUDICIAL; IT CANNOT REALISTICALLY BEAR ON CREDIBILITY.**

**1.** **Allowing The Jury To Hear A Sound Recording Of A Pre-1972 Song For Any Purpose Would Be Extremely Prejudicial.**

The district court in this case had to decide whether it was the deposit copy of "Taurus" (the sheet music deposited with the U.S. Copyright Office with the copyright registration) or the sound recording of "Taurus" that defined the scope of the copyright. The district court ruled decidedly in favor of using the deposit copy, and precluded Skidmore from playing the sound recording for the jury. This was the correct decision.

Because the copyright of "Taurus" was registered in 1967, the 1909 Copyright Act applied. Under the 1909 Act, a work could receive federal copyright protection either through registration and submission of a deposit copy, or through publication with the required notice of copyright." *Skidmore v. Led*

12

*Zeppelin*, 2018 U.S. App. LEXIS 27680 at *31. However, sound recordings did not receive federal copyright protection until 1972.

Distributing "phonorecords" did not constitute "publication" under the 1909 Act; therefore, musical compositions were only "published" if the sheet music was also published. *Id*. Additionally, the Copyright Office did not accept sound recordings as deposit copies under the 1909 Act. *See id.* (citing M. Nimmer and D. Nimmer, 1 NIMMER ON COPYRIGHT, § 2.05[A] (2017)).

Nevertheless, Skidmore argued in this case that, under the 1909 Act, the deposit copy is purely archival in nature, and his proof of copyright infringement should not be limited to the deposit copy. He also made three policy arguments, all of which were rebuffed by the district court and the panel, which held that "under the 1909 Act, the deposit copy defines the scope of the copyright." *Id.* at *36.

It is therefore clear that, with respect to a copyright infringement claim for a song that is governed by the 1909 Copyright Act and written prior to February 15, 1972, the protectable copyright at issue is the deposit copy of the composition, and not the sound recording. As such – and the panel agrees – at trial, a jury should only be able to hear a rendition of the sheet music that was registered with the Copyright Office – the actual *deposit copy* – and not the actual sound recording of

the song, *for the purposes of determining substantial similarity* (and therefore copyright infringement.

Ironically, however, after making it clear in this case that "Stairway to Heaven" could only be compared to the deposit copy of "Taurus," and <u>not</u> to the *sound recording*, the panel then completely emasculated its own ruling by holding that the district court abused its discretion by refusing to allow the jury to hear the sound recording in connection with assessing the defendant's credibility in testifying about *access*.

More specifically, the panel held that the jury should have been present when the sound recording of "Taurus" was played for Jimmy Page. According to the panel, the jury should be allowed to observe Jimmy Page listening to the "Taurus" sound recording, which would have enabled them to "evaluate his demeanor while listening to the recordings, as well as when answering questions." *Skidmore, supra*, at *40.

By holding that the sound recording can be played in front of the jury in order to assess credibility, the panel has improperly expanded the scope and breadth of the copyright at issue. In determining whether a defendant is liable for infringement, a jury is not going to be able to ignore or "unhear" the sound recording that it just heard for the purpose of assessing credibility, when it is deciding the issue of substantial similarity.

There is no doubt that the jury will be consciously or subconsciously comparing the two sound recordings to determine substantial similarity, and the defendant will not be allowed to defend himself by presenting expert testimony about the lack of substantial similarity between the two sound recordings. Accordingly, allowing a plaintiff to play the sound recording to the jury for the purposes of determining credibility on the issue of access is a complete windfall for the plaintiff, but is extremely prejudicial to defendants.

> ### 2. Playing The Sound Recording To The Jury And The Jury's Observation Of The Defendant Is Not Probative In Any Way Of Access Or The Defendant's Credibility Concerning His *Lack* Of Access.

In addition to the prejudicial nature of the mandate to play the sound recording for the jury on the issue of access, there is no probative value whatsoever in such an exercise. "Taurus" was recorded and released in November of 1967. "Stairway to Heaven" was written in approximately November of 1970. Because the members of Led Zeppelin denied having "access" to "Taurus" when they wrote "Stairway to Heaven," access is definitely an issue in the case (to establish "copying"). However, the only "access" at issue in this case is whether the members of Led Zeppelin had access to "Taurus" between November of 1967,

when it was released, and November of 1970, when they wrote "Stairway to Heaven."

Clearly, it is irrelevant whether or not Led Zeppelin had access to "Taurus" in the almost five decades after 1970, including at the time of trial. It is inconceivable that the defendants – even if they did not hear the sound recording for the prior four decades – did not listen to the recording during the litigation, and prior to the time of trial. In fact, at the very least, by the time of the trial, every defendant would have heard the sound recording multiple times while conducting discovery and preparing for trial.

Accordingly, the only thing that playing the sound recording to the defendant in front of the jury would demonstrate is how the defendant reacts to hearing a sound recording that he or she necessarily may have heard a thousand times prior to the trial. It certainly does not provide any evidence whatsoever that any such defendant heard the song at any time prior to the creation of the allegedly-infringing work, which is the <u>only</u> relevant time period for purposes of access in a copyright infringement case.

This mandate also will not have any realistic bearing on any of the defendants' credibility regarding their testimony concerning *lack* of access. Notwithstanding the district court's observation that the defendants' reactions to hearing "Taurus" were relevant, there truly is no relevance whatsoever to a

defendant's reaction to hearing a song for the thousandth time, 46 years after an allegedly-infringing song is written – and any minimal relevance would certainly be outweighed by the extreme prejudice to the defendants.

In light of the foregoing, if the panel's decision stands, artists and songwriters who are sued for copyright infringement in cases that involve songs that were written prior to 1972 will be at an extreme disadvantage, and suffer severe prejudice, because the plaintiff will be able to play the otherwise unprotected sound recording to the jury under the guise of proving (somehow) that the defendant had access to the song when he or she wrote the allegedly-infringing song.

**C.** **IN CONTRAST TO CASES INVOLVING BOOKS AND FILMS, SUMMARY JUDGMENT IS ELUSIVE IN COPYRIGHT CASES THAT INVOLVE MUSIC.**

The defendants in this case filed a motion for summary judgment that was heard and denied by the district court in this case, as so many are in music cases in the Ninth Circuit. Because music composition is a unique language, it is much more difficult to separate the frivolous from the meritorious. This is because experts can create confusion by simply citing to the existence of unprotected

elements, and then claim that the works are similar because they contain these elements.

In the world of film, television, and books, the language is easily understood. The courts can easily analyze the plot, mood, pace, characters and sequence of events that appear in such works and filter out all of the scènes à faire, such as a car chase in an action movie or a magician pulling a rabbit out of a hat. In other words, with respect to films, television shows, and books, the Court can easily digest the expert opinions and weed out the protectable elements from the unprotectable elements, because the "language" spoken by the experts in such cases is one that the judge understands and can articulate freely.

In contrast, musicologists speak a language that is often foreign to judges (and juries), and therefore confuse judges into denying summary judgment motions whenever two musicologists disagree. The unfortunate result is that summary judgment is very difficult to obtain in cases involving music, and a defendant is often forced to go to trial even when the works do not share any substantial similarities of protectable expression.

Under established copyright law, one has to identify and filter out public domain elements, and compare the protectable material that is left. However, the panel decision frustrates and conflicts with that law by mandating that a defendant cannot identify for the jury – and implicitly the disctrict court cannot exclude on a

motion for summary judgment – the public domain elements such as the common use of notes of a musical scale. This is entirely unfair, not only to the members of Led Zeppelin, but to *all* songwriters.

### D. COPYRIGHT LAW SHOULD PROTECT ORIGINAL MUSIC, WITHOUT STIFLING CREATIVITY.

To be clear, Amici are grateful for the laws that protect their own creations. No conscientious songwriter wants to copy someone else's music; nor do they want someone else to copy theirs. However the "ultimate aim" of the Copyright Act is "to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975), and Amici applaud and appreciate that endeavor.

However, Amici also understand that, like the music that was created before them, their own music will serve as building blocks for future songwriters, who will create their own music. As discussed in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994): ". . . copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work."

Finally, as written by composer Ron Mendelsohn, owner of production music company Megatrax: "All musical works, indeed all creative works, are born

from a spark of inspiration. It is essential for musicians and composers to be able to find this spark anywhere and everywhere without having to constantly look over their shoulders and worry about being sued. To extinguish this spark, to replace it with fear, is to stifle creativity and deprive society of the next generation of great artists and new music . . . ." http://blogtrans.me gatrax.com/will-the-blurred-lines-decision-stifle-creativity/.

## VI. CONCLUSION

Based upon the foregoing, Amici respectfully request that this Court enter an Order granting the Petition of Defendants for Panel Rehearing and Rehearing *En Banc*.

Dated: November 5, 2018

Edwin F. McPherson
Tracy B. Rane
**McPHERSON RANE LLP**

By:  /s/ Edwin F. McPherson
      EDWIN F. McPHERSON
      Attorneys for Amici Curiae

## VII.  CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 4,197 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Word Perfect 14-point Times New Roman font.

Dated: November 5, 2018

Edwin F. McPherson
Tracy B. Rane
**McPHERSON RANE LLP**

By:  /s/ Edwin F. McPherson
EDWIN F. McPHERSON
Attorneys for Amici Curiae

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit, by using the appellate CM/ECF system on November 5, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 5, 2018      /s/ Edwin F. McPherson
EDWIN F. McPHERSON