Nos. 16-56057 & 16-56287

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust,
*Plaintiff, Appellant and Appellee,*
v.
Led Zeppelin *et al.*,
*Defendants and Appellees*, and
Warner/Chappell Music, Inc.,
*Defendant, Appellee and Appellant.*

---

On Appeal from the United States District Court
for the Central District of California
The Honorable R. Gary Klausner
No. 15-cv-03462 RGK (AGRx)

---

**Brief *Amici Curiae* of**
**the Recording Industry Association of America and**
**the National Music Publishers Association**
**in Support of the Petition for Rehearing En Banc**

---

Danielle M. Aguirre
Erich C. Carey
Nat'l Music Publishers' Ass'n
975 F St. NW #375
Washington, DC 20004
(202) 393-6672
daguirre@nmpa.org
ecarey@nmpa.org
*Counsel for NMPA*

Eugene Volokh
Mayer Brown LLP
350 S. Grand Ave. #2500
Los Angeles, CA 90071
(310) 206-3926
evolokh@mayerbrown.com
*Counsel for RIAA*

## RULE 26.1 DISCLOSURE STATEMENT

The Recording Industry Association of America and National Music Publishers Association have no parent corporation, are not publicly traded, and no publicly held company owns 10% or more of their stock.

Defendants have consented to the filing of this *amici* brief, but plaintiffs have declined to consent.

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statement.................................................i

Table of Contents................................................................ii

Table of Authorities ........................................................ iii

Interest of *Amici Curiae* ..................................................1

Summary of Argument........................................................2

Argument .........................................................................6

I.  This Court should reconsider the inverse-ratio rule .........................6

II.  This Court should correct the precedent set by the panel allowing findings of infringement based on use of public domain elements ...............................................11

III. This Court should correct the dangerous precedent that the panel opinion sets in applying Rule 403 ...........................14

Conclusion........................................................................18

Statement of Related Cases .................................................20

Certificate of Compliance ...................................................21

Certificate of Service ........................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amini Innovation Corp. v. Anthony California, Inc.*,
439 F.3d 1365 (Fed. Cir. 2006) ........................................................... 10

*Arc Music Corp. v. Lee*,
296 F.2d 186 (2d Cir. 1961) ............................................................ 3, 8

*Baxter v. MCA, Inc.*,
812 F.2d 421 (9th Cir. 1987) .......................................................... 6, 7

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) .......................................................... 3, 9

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010), *abrogated as to other
matters, Axiom Foods, Inc. v. Acerchem Int'l*, 874 F.3d
1064 (9th Cir. 2017) .............................................................................. 10

*Columbia Pictures Television v. Krypton Broadcasting*,
106 F.3d 284 (9th Cir. 1997), *rev'd on unrelated grounds
sub nom. Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998) .............................................................................. 10

*Dream Custom Homes, Inc. v. Modern Day Construction, Inc.*,
476 F. App'x 190 (11th Cir. 2012) ......................................................... 9

*Edmunds v. Deppisch*,
313 F.3d 997 (7th Cir. 2002) ................................................................ 16

*Ellis v. Diffie*, 177 F.3d 503 (6th Cir.1999) ............................................ 9

*Ets-Hokin v. Skyy Spirits, Inc.*,
323 F.3d 763 (9th Cir. 2003) ................................................................ 13

*Janes v. Wal-Mart, Inc.*,
279 F.3d 883 (9th Cir. 2002) ................................................................ 14

iii

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*,
676 F. 3d 841 (9th Cir. 2012) ................................................................. 6

*Morales v. Artuz*,
281 F.3d 55 (2d Cir. 2002) ..................................................................... 16

*Peters v. West*,
692 F.3d 629 (7th Cir. 2012) ............................................................... 3, 8

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ......................................................... 13, 14

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .......................................................... 13, 14

*Stromback v. New Line Cinema*,
384 F.3d 283 (6th Cir. 2004) ................................................................. 9

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ............................................................... 13

*Ty, Inc. v. GMA Accessories, Inc.*,
132 F.3d 1167 (7th Cir. 1997) ........................................................... 8, 9

*United States v. Edwards*,
622 F.3d 1215 (9th Cir. 2010) (Gould, J., joined by Bybee,
Callahan & Bea, JJ., dissenting from denial of en banc) .................. 16

*United States v. Layton*,
767 F.2d 549 (9th Cir. 1985) ............................................................... 15

*United States v. Pickering*,
794 F.3d 802 (7th Cir. 2015) ............................................................... 16

**Rules**

9th Cir. R. 35-1 ....................................................................................... 3

Fed. R. App. P. 35(a) ............................................................................... 3

Fed. R. Evid. 403 ................................................................... 5, 14, 17, 18

**Other Authorities**

Michael M. O'Hear, *Appellate Review of Sentences: Reconsidering Deference*, 51 Wm. & Mary L.Rev. 2123, 2141-49 (2010) ....................................................................... 16

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313.4(C), (2017), https://www.copyright.gov/comp3/docs/compendium.pdf .................. 12

# INTEREST OF *AMICI CURIAE*[1]

The Recording Industry Association of America (RIAA) is a non-profit trade association founded in 1952 to represent the American recording industry. RIAA's record company members create, manufacture, or distribute about 85% of all authorized sound recordings produced and sold in the United States.

Founded in 1917, the National Music Publishers' Association (NMPA) is the principal trade association representing the U.S. music publishing and songwriting industry. Its membership consists of hundreds of music publishers who own or administer the vast majority of musical compositions licensed for commercial use in the United States.

Both the RIAA and the NMPA, and their many members, have a shared interest in maintaining strong but not excessive copyright protection, and in helping copyright law develop in ways that clarify the law's boundaries.

---

[1] No party or party's counsel has wholly or partly authored this brief, or contributed money intended to fund preparing or submitting the brief. No person other than *amici* has contributed money intended to fund preparing or submitting the brief.

1

## SUMMARY OF ARGUMENT

Composers need copyright protection so they can profit from their music, and have an incentive to create more music. But they also need copyright law to let them create new music incorporating ideas from the vast cultural library of past musical works. Serious composers hear thousands of compositions throughout their lifetimes, and inevitably create new compositions using underlying musical structures and fragments that may share common elements with pre-existing works: the same set of possible notes, motifs, chords, musical fragments, and the like.

Copyright law thus needs to carefully calibrate and balance its rules to prevent *both* over- and underprotection. Composers' intellectual property must be protected, but new songs incorporating new artistic *expression* influenced by unprotected, pre-existing thematic *ideas* must also be allowed. The panel opinion badly overprotects, and in doing so is inconsistent with other federal appeals court decisions that have addressed the same issues. This question, furthermore, is of exceptional importance to the music publishing and songwriting industries, as it affects the permissible scope of

authorship for nearly all newly created works that employ a common set of musical elements. This Court should rehear the case en banc to address this issue, bring music copyright law back into proper balance, and better align copyright law in the Ninth Circuit with the law in other circuits. *See* Fed. R. App. P. 35(a); 9th Cir. R. 35-1.

1. This Court should reconsider the "inverse ratio" rule, under which "a lower standard of proof of substantial similarity is required 'when a high degree of access is shown,'" slip op. at 23. As the Second, Seventh, and Eleventh Circuits have recognized, this rule "confuses more than it clarifies." *Arc Music Corp. v. Lee*, 296 F.2d 186, 187 (2d Cir. 1961); *see also Peters v. West*, 692 F.3d 629 (7th Cir. 2012); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir. 1994). It is thus unsuitable in a jury instruction, and the circuit split on the matter leads to copyright cases being unduly influenced by accidents of venue.

The inverse ratio rule is also both vague and logically unsound. The "striking similarity" principle correctly recognizes that striking similarity can raise its own inference of access, and can thus make

up for limited evidence of access. But the converse is not true: Even a striking degree of access (and there is no such striking degree here) does not raise any inference of similarity, and thus cannot make up for limited evidence of similarity.

2. This Court should also correct the precedent set by the panel allowing findings of infringement based on the use of uncopyrightable elements. Most compositions share some elements with past compositions—sequences of three notes, motifs, standard rhythmic passages, arpeggios, chromatic scales, and the like. Likewise, all compositions share some elements of "selection and arrangement" defined in a broad sense. The universe of notes and scales is sharply limited. Nearly every time a composer chooses to include a sequence of a few notes, an arpeggio, or a chromatic scale in a composition, some other composer will have most likely "selected" the same elements at some level of generality.

To keep every work from infringing—and to keep authors from being able to claim ownership of otherwise unprotected elements— this Court has stressed that selection and arrangement is infringed

only when there is virtual identity between two works, not loose resemblance. The same principle should be recognized for music.

3. This Court should also correct the precedent set by the panel on Rule 403—a decision that will otherwise be cited far outside copyright cases, and that will become the go-to precedent for any litigant in any case, civil or criminal, who wants to argue that a judge erred in excluding some hypothetically indirectly relevant piece of evidence.

Judge Klausner made a perfectly sensible evidentiary judgment. The jury was not supposed to consider the recordings of *Taurus*, as performed by Spirit, in evaluating whether *Taurus* and *Stairway to Heaven* were substantially similar. Slip op. at 25, 31, 34. And the jury was going to get vanishingly little probative information by watching Page while he listened to *Taurus* being played. If it is an abuse of discretion to exclude such tenuously linked evidence here, litigants could—and doubtless will—make virtually the same argument anywhere.

# ARGUMENT

## I.  This Court should reconsider the inverse-ratio rule

To prove the historical fact of copying, in the absence of direct evidence, a plaintiff can show "(1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F. 3d 841, 846 (9th Cir. 2012). This sort of circumstantial inference simply reflects common experience.

Likewise, the "striking similarity" principle also reflects common experience: Even without "evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). When two works are very similar indeed, then a reasonable jury can infer that there must have been some access, since the striking similarity makes it unlikely that the works were truly independently created.

But no such common experience justifies the view that "a lower standard of proof of substantial similarity is required 'when a high

degree of access is shown,'" slip op. at 23. Even the strongest evidence of access would not make up for an inadequate degree of similarity.

Indeed, while as a practical matter few composers create works that are strikingly similar to older ones, nearly all composers enjoy a striking level of access to a vast range of works: They hear them online, on the radio, at concerts, at home, and elsewhere. Indeed, they may hear them without ever seeking them out—played as mood music in elevators, supermarkets, and restaurants, or as incidental music in a film or in a television or radio commercial. Yet even if hearing the songs this way counts as a "high degree of access" (itself a vague concept that juries would have a difficult time applying), that should not allow the creators of new works to be sued under a "lower standard of proof of substantial similarity," *id.*

Other circuit courts have recognized this principle. Most prominently, the Second Circuit, which has decided many music composition cases, expressly rejected the inverse ratio rule, calling it a "superficially attractive" rule that nonetheless "upon examination

7

confuses more than it clarifies." *Arc Music*, 296 F.2d at 187. "[A]ccess will not supply [the] lack [of similarity], and an undue stress upon that one feature can only confuse and even conceal this basic requirement." *Id.* at 188. Because of this, the Second Circuit held that an instruction simply stating, "to find for the plaintiff you must find that by a fair preponderance of the evidence that the similarities between the compositions and the access inferred are sufficient to reasonably base a finding of copying," *id.* at 187—an instruction much like the one given here, I ER 30—was superior.

Likewise, the Seventh Circuit, in an opinion by Judge Easterbrook, held,

> [W]e have never endorsed . . . the idea that a "high degree of access" justifies a "lower standard of proof" for similarity. . . . This issue [of access] is independent of the question whether an alleged infringer breached his duty not to copy another's work. Once a plaintiff establishes that a defendant could have copied her work, she must separately prove—regardless of how good or restricted the opportunity was—that the allegedly infringing work is indeed a copy of her original.

*Peters*, 692 F.3d at 635. In the process, the court cited Judge Posner's opinion in *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997), which stressed that, though "copying entails access"—and thus the striking similarity doctrine is sound ("[i]f . . .

two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately")—the reverse is not so: "access does not entail copying." *Id.*

The Eleventh Circuit has taken the same view. *See Beal*, 20 F.3d at 460 ("the inverse-ratio rule has never been applied in this Circuit"); *Dream Custom Homes, Inc. v. Modern Day Construction, Inc.*, 476 F. App'x 190, 192 (11th Cir. 2012) ("the inverse-ratio rule is not the law of this circuit"). The Sixth Circuit is the only other circuit that appears to have endorsed the inverse-ratio rule, but it did so without analysis. *Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004), stated in dicta that, "In *Ellis [v. Diffie*, 177 F.3d 503, 507 (6th Cir. 1999)], we observed that in some cases the relationship between the degree of proof required for similarity and access may be inversely proportional: where the similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa." But *Ellis* itself did not hold that strong evidence of access can relax the need to show substantial similarity; it simply said that "[s]ome case law" favors the striking similarity rule. 177 F.3d

9

at 507. To be fair, the Eleventh Circuit's analysis was as cursory as the Sixth Circuit's, but the Second and Seventh Circuit's analysis was considerably more detailed. (The Federal Circuit has applied the inverse ratio rule, *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1368-39 (Fed. Cir. 2006), but only because it was obligated to follow this Circuit's decisions, *id.* at 1368, given that the case came to the Federal Circuit from the Central District of California.)

This split among the circuits creates inconsistency and unfairness. "This circuit interprets [the copyright venue] provision to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction," *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010), *abrogated as to other matters, Axiom Foods, Inc. v. Acerchem Int'l*, 874 F.3d 1064, 1070 (9th Cir. 2017). This includes specific jurisdiction. *Columbia Pictures Television v. Krypton Broadcasting*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on unrelated grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 342 (1998). Thus, some composers, whether or not they

10

reside in the Circuit, may be sued under this Court's more plaintiff-friendly rule; others will be sued under the Second, Seventh, or Eleventh Circuit's more defendant-friendly rule; the result is neither fair to litigants, nor conducive to creativity and to the public interest.

Whether defendant copied plaintiff's work, as opposed to independently creating a new work, is a factual question. As a factual matter, a showing that defendant could have copied plaintiff's work (access) and that the works are quite similar (substantial similarity) can show copying by a preponderance of the evidence. A further instruction on what to do when there is a high level of access is not necessary for the jury to fairly decide the question of copying—and, as the other circuits recognize, is more distracting than useful.

## II. This Court should correct the precedent set by the panel allowing findings of infringement based on use of public domain elements

Composers are limited to a finite number of notes. These notes can only be combined in a limited number of ways. No composer

may be allowed to claim ownership rights over short common combinations of notes so as to avoid others using the same short phrase or motif.

This is why Jury Instruction No. 16 was entirely correct in saying that "[c]opyright . . . does not protect . . . common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes," I ER 28. Even those "short musical phrases" that are "novel or distinctive" are not protected by copyright, U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313.4(C), at 300 (2017), https://www.copyright.gov/comp3/docs/compendium.pdf, which is even more true of cliché short sequences. Just as "[m]i do re sol, sol re mi do" is not protected against copying, *id.*, neither is "do re mi."

The panel opinion concluded that the instruction nonetheless erred, on the theory that such common elements could still be protected if "used in combination with other elements in an original manner," slip op. at 20, as a form of creative "selection and arrangement," *id.* But all compositions will share some elements of "selection and arrangement," defined in a broad sense, with some earlier

12

compositions. To prevent nearly every new composition being at risk for liability, copyright claims based on "original contributions to ideas already in the public domain," *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), are seen as involving a "thin copyright that protects against only virtually identical copying." *Id.* at 812; *see also Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrines, subtracting the unoriginal elements, Ets-Hokin is left with . . . a 'thin' copyright, which protects against only virtually identical copying."); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1128-29 (9th Cir. 2018). This Court has long recognized this principle in claims involving visual art that allegedly creatively combines public domain elements, as with the sculptures in *Satava* or the photographs in *Ets-Hokin* and *Rentmeester*. The same should apply to music.

Under this principle, genuinely creative contributions will remain protected. For instance, though do-re-mi is clearly in the public domain, *Swirsky v. Carey*, for instance, concluded that whether a particular (and far less common) selection of seven notes was copyrightable was a question for the jury. 376 F.3d 841, 852 (9th

Cir. 2004). Yet that just means that copying those seven notes virtually identically might be an infringement. No such virtual identical copying of an extended musical sequence was shown here.

Judge Klausner's instructions were thus consistent with this Court's approach in cases such as *Satava* and *Rentmeester*, and consistent with the need to protect creativity—both by securing creators' rights to protection for their protectable expression, and securing the right to create using the same unprotectable expression that others have used before. The panel opinion is not consistent with this approach, and thus threatens to stifle creativity and spur needless litigation.

## III.  This Court should correct the dangerous precedent that the panel opinion sets in applying Rule 403

District courts must routinely decide when to exclude marginally relevant evidence that is substantially likelier to mislead jurors than to inform them. That is true in the music industry cases that especially interest *amici*, but of course in other cases as well. Limiting instructions, while sometimes unavoidable, are often of limited use and thus may "not adequately protect" a litigant. *Janes v. Wal-Mart, Inc.*, 279 F.3d 883, 886 (9th Cir. 2002). Because of this,

14

"[t]he question of whether the prejudicial and distracting effects of evidence can be adequately moderated by a cautionary instruction is committed to the discretion of the district court." *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

Here, for instance, the panel agreed with Judge Klausner that the jury should not be allowed to determine substantial similarity by comparing *Stairway to Heaven* to Spirit's sound recording of *Taurus*. Slip op. at 25, 31, 34. Unsurprisingly, Judge Klausner concluded that, because of this, it was better for the jury not to hear the sound recording at all, especially since hearing the sound recording would do vanishingly little to help the jury determine anything else (such as access). Instead, Page was told to listen to the recording outside the presence of the jury, and was then questioned about his past access to the recording in front of the jury. Slip op. at 33.

The panel rejected this judgment call on the grounds that "allowing the jury to observe Page listening to the recordings would have enabled them to evaluate his demeanor while listening to the recordings." Slip op. at 34. But is this really so?

15

Imagine Page sitting there, relistening to the recording of *Taurus* (which he had already recently heard when preparing for the trial, III ER 502). The jurors are watching his demeanor, an unusual thing for people to do when they are listening to a song together with someone. What would they be looking for on his face that would in any way bear on the question whether he had heard the song nearly 50 years before, in 1967 to 1971? Is there some supposedly tell-tale facial expression that captures the reaction, "Yes, I had heard that song back then"?

There is an "emerging consensus in the legal and social science literature that people generally do a poor job in evaluating demeanor evidence." Michael M. O'Hear, *Appellate Review of Sentences: Reconsidering Deference*, 51 Wm. & Mary L.Rev. 2123, 2141-49 (2010), cited favorably in *United States v. Edwards*, 622 F.3d 1215, 1217 (9th Cir. 2010) (Gould, J., joined by Bybee, Callahan & Bea, JJ., dissenting from denial of en banc); *see also Morales v. Artuz*, 281 F.3d 55, 61 n.3 (2d Cir. 2002); *United States v. Pickering*, 794 F.3d 802, 805 (7th Cir. 2015); *Edmunds v. Deppisch*, 313 F.3d 997, 1000 (7th Cir. 2002). But at least when it comes to evaluating

whether a speaker is lying, laypeople have a good deal of life experience in judging the speaker's demeanor. Perhaps the witness's refusal to make eye contact with the questioner might offer some clues, or the witness's seeming nervousness; or so at least our legal system concludes. Certainly the witness's reactions when being cross-examined are often seen as an important indicator of whether the witness is telling the truth.

But most jurors have no such life experience in evaluating the demeanor of musicians who are listening to music. Whether Page is paying rapt attention, or looking bored, or shaking his head, or tapping his fingers as he is relistening to *Taurus* in a 2010s courtroom has no bearing—except as a basis for the sheerest of conjecture—on the legally relevant question, which is whether he first heard the song before or after 1971.

If a trial judge's Rule 403 balancing is viewed as mistaken because of such a hypothetical, even fanciful, chain of inference, then the same argument could be made as to virtually any such decision in virtually any such case. And if it could be made, it will be made,

as zealous advocates come up with comparably tenuous theories explaining why the evidence in their case was wrongly excluded. This Court should step in to correct this dangerous precedent.

## CONCLUSION

This case strikes at the heart of the creative process, and thus at the core of the copyright law's attempts to protect the creative rights both of past authors and of present ones. Authors, including composers, must and should use unprotectable elements created by those creators coming before them. The panel decision, however, makes that especially perilous.

The panel decision perpetuates one mistaken doctrine—the inverse ratio rule—that unduly jeopardizes the rights of creators. It creates a new mistaken precedent, by allowing liability for the use of basic musical elements that have long been seen as unprotectable. And it causes damage far beyond copyright law, by rejecting a district judge's sound exercise of his discretion under Rule 403, and thus setting an erroneous precedent that will be cited in myriad future appeals. This Court should grant rehearing en banc to reconsider these decisions.

18

Respectfully Submitted,

s/ <u>Eugene Volokh</u>
Attorney for *Amicus Curiae* RIAA

s/ <u>Erich C. Carey</u>
Attorney for *Amicus Curiae* NMPA

## STATEMENT OF RELATED CASES

There are no related cases covered by 9th Cir. R. 28-2.6.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,403 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook.

Dated: November 5, 2018

s/ Eugene Volokh
Attorney for *Amicus Curiae* RIAA

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief *Amici Curiae* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 5, 2018.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: November 5, 2018

s/ <u>Eugene Volokh</u>
Attorney for *Amicus Curiae* RIAA