# Nos. 16-56057 & 16-56287

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

## MICHAEL SKIDMORE,
### AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST
PLAINTIFF, APPELLANT AND APPELLEE

vs.

## LED ZEPPELIN, *ET AL.*
### DEFENDANTS AND APPELLEES
AND

## WARNER/CHAPPELL MUSIC, INC.,
### DEFENDANT, APPELLEE AND APPELLANT

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO. 15-cv-03462 RGK (AGRx)

## DEFENDANTS' COMBINED REPLY TO PLAINTIFF'S RESPONSES TO AMICUS CURIAE BRIEFS

PETER J. ANDERSON, ESQ.
DAVIS WRIGHT TREMAINE LLP
865 SOUTH FIGUEROA, SUITE 2400
LOS ANGELES, CA 90017-2566
TEL.: (213) 633-6800
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE *ET AL.* AND
DEFENDANT, APPELLEE AND APPELLANT
WARNER/CHAPPELL MUSIC, INC.

HELENE M. FREEMAN, ESQ.
PHILLIPS NIZER LLP
485 LEXINGTON AVENUE, 14TH FLOOR
NEW YORK, NY 10017
TEL: (212) 977-9700
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT AND JOHN PAUL JONES

# **TABLE OF CONTENTS**

**Page**

1.  INTRODUCTION ........................................................................ 1

2.  THE AMICI SUPPORTING THE JUDGMENT BELOW ARE
    CORRECT THAT *STAIRWAY TO HEAVEN* DOES NOT COPY
    PROTECTED EXPRESSION IN *TAURUS* ..................................... 1

    (a)  By Disclaiming Reliance on a Selection-and-Arrangement
         Theory, Plaintiff Undercuts the Ground on which the Panel
         Reversed ............................................................................. 1

    (b)  The Amici Properly Compare *Stairway to Heaven* to the *Taurus*
         Deposit Copy, Not to Recordings of Different Versions of
         *Taurus* ............................................................................... 3

    (c)  The Amici Are Correct that It Is Imperative that This Court
         Clarify This Circuit's Decisions as to Selections and
         Arrangements ...................................................................... 4

         (1)  The Amici Are Correct that there Must Be an Original
              Selection and Arrangement, Not Just a Combination ................ 6

         (2)  The Amici Are Correct that the Trial Evidence Does Not
              Support Copying of a Protected Selection and
              Arrangement .................................................................... 8

         (3)  The Amici Are Correct that Virtual Identity Is Required
              and Is Absent Here ........................................................... 12

3.  THE AMICI ALSO ARE CORRECT THAT THE *TAURUS* SHEET
    MUSIC IS THE WORK PROTECTED BY THE COPYRIGHT ON
    WHICH PLAINTIFF SUES ......................................................... 13

    (a)  Plaintiff Still Cites No Case that Copyright in the Deposited
         Copy of a Work Protects Other Versions of that Work ..................... 13

    (b)  Plaintiff's Argument that the 1909 Act Federalized Common
         Law Copyright Is Frivolous .................................................. 14

i

(c) The Copyright Office's Views as to the Historical Interpretation of Copyright Law Mandate Rejection of Plaintiff's Theory ............... 17

(d) The Amici Confirm the Prejudice of Plaintiff's Attempt to Rely on Studio and Bootleg Recordings of Different Versions of *Taurus* .................................................................................. 20

4. PLAINTIFF FAILS TO RESPOND TO THE AMICI'S ARGUMENT FOR ABANDONMENT OF THE INVERSE RATIO RULE ..................... 22

5. CONCLUSION ............................................................................. 22

**ADDENDUM**

Exhibit 501

Exhibit 2705

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batjac Prods. Inc. v. GoodTimes Home Video Corp.*,
   160 F.3d 1223 (9th Cir. 1998) ...................................................15, 17

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
   585 F.3d 267 (6th Cir. 2009) ............................................................14

*Brownstein v. Lindsay*,
   742 F.3d 55 (3d Cir. 2014) ...............................................................19

*Caliga v. Inter Ocean Newspaper Co.*,
   215 U.S. 182 (1909)...........................................................................17

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003)...........................................................................15

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)........................................................................4, 6

*Film Corp. v. Doyal*,
   286 U.S. 123 (1932)...........................................................................15

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019).........................................................................17

*Gaste v. Kaiserman*,
   863 F.2d 1061 (2d Cir. 1988) ...........................................................13

*Goldstein v. California*,
   412 U.S. 546 (1973)...........................................................................16

*Lorillard v. Pons*,
   434 U.S. 575 (1978)...........................................................................17

*Marascalco v. Fantasy, Inc.*,
   953 F.2d 469 (9th Cir. 1991) ............................................................17

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) ............................................................17

*Merrell v. Tice*,
  104 U.S. 557 (1881) ...........................................................................18

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ................................................................6

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ...........................................4, 6, 7, 11, 21

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ......................................................4, 7, 14

*Twin Books Corp. v. Walt Disney Co.*,
  83 F.3d 1162 (9th Cir. 1996) ..............................................................16

*Weitzenkorn v. Lesser*,
  40 Cal. 2d 778, 256 P.2d 947 (1953) ..................................................16

*Wheaton v. Peters*,
  33 U.S. (8 Pet.) 591 (1834) ................................................................15

*White-Smith Music Pub. Co. v. Apollo Co.*,
  209 U.S. 1 (1908) ...............................................................................17

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) ...................................................4, 5, 6, 13

## Statutes

17 U.S.C.
  § 3 (1909 Act) ......................................................................................3
  § 7 (1909 Act) ..................................................................................3, 14
  § 12 (1909 Act) ................................................................................3, 18
  § 101 .....................................................................................................4
  § 103(b) ............................................................................................3, 14
  § 408(b)(1) ...........................................................................................18
  § 410(a) ...............................................................................................17

California Civil Code § 980 (amended 1947) ...........................................16

**Constitutional Provisions**

U.S. Constitution, Article I, § 8, cl. 8 ....................................................................15

**Other Authorities**

COMPENDIUM OF COPYRIGHT OFFICE PRACTICES (1st ed. 1973)..............................18

Jamie Lund, *An Empirical Examination of the Lay Listener Test in
    Music Composition Copyright Infringement*, 11 Va. Sports Ent.
    L.J. 137 (2012)..................................................................................................21

M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT (2019)....................................16

1. **<u>Introduction</u>**

After a six-day jury trial marred only by plaintiff's litigation misconduct (1–SER–6), the eight-person jury unanimously found that although Mr. Page and Mr. Plant had a reasonable opportunity to hear *Taurus*, *Stairway to Heaven* and *Taurus* are not substantially similar under the extrinsic test (1–ER–4). In plaintiff's Responses to multiple amicus curiae briefs supporting affirmance of the judgment of non-infringement, plaintiff tries everything from challenging the integrity of some Amici and disclaiming reliance on a selection-and-arrangement theory to recklessly misstating the law and evidence. The Amici supporting affirmance of the judgment below (the "Amici") are correct that the judgment below should be affirmed.

2. **<u>The Amici Supporting the Judgment Below Are Correct that *Stairway to Heaven* Does Not Copy Protected Expression in *Taurus*</u>**

(a) **By Disclaiming Reliance on a Selection-and-Arrangement Theory, Plaintiff Undercuts the Ground on which the Panel Reversed**

Plaintiff argues that the Amici miss the mark by discussing the requirements for selection-and-arrangement claims because, although his case is "bolstered" by selection and arrangement, the claimed "similarity is not a selection and arrangement." Pltf's Response (Dkt. Entry 136) to IP Professors & Musicologists Briefs at 18, & at 9; Pltf's proposed Response (Dkt. Entry 149) to U.S., Songwriters, & RIAA & NMPA Briefs at 21. Yet the panel decision reversed the judgment on the ground that plaintiff—who never mentioned selection and arrangement at trial—

tried the case on a selection-and-arrangement theory and that the evidence warranted giving a selection-and-arrangement jury instruction. Now, faced with the possibility of having to satisfy the virtual identity standard applicable to selections and arrangements, plaintiff hedges, just as he hedged at trial by objecting to defendants' selection-and-arrangement jury instruction and remaining silent when the District Court omitted one. Defs' Petition (Doc. Entry 73) at 4-5. Plaintiff's denial of reliance on a selection-and-arrangement theory confirms that he suffered no harm from the absence of the jury instruction.

Further, without a selection-and-arrangement claim, plaintiff is left with a traditional claim based on melody, rhythm, and harmony. While he disagrees with the jury's verdict, he has never disputed that it is supported by the evidence at trial that *Stairway to Heaven* and *Taurus* are not substantially similar under the extrinsic test. That evidence included his own expert's testimony that *Stairway to Heaven* and *Taurus* are very different compositions and defendants' expert's testimony that there are no musicologically significant similarities in melody, rhythm, or harmony between the works as a whole or between the first two bars that plaintiff claims are similar. Answering & Opening Brief ("AOB"; Dkt. Entry 29) at 17-27.

Because plaintiff confirms he does not rely on a selection-and-arrangement theory and because substantial evidence supports the jury's verdict, the Amici are correct that the judgment of non-infringement should be affirmed.

**(b)** **The Amici Properly Compare *Stairway to Heaven* to the *Taurus* Deposit Copy, Not to Recordings of Different Versions of *Taurus***

Plaintiff argues that the Amici fail to consider his expert's testimony that there is a "note for note" identical eighteen-note sequence in *Stairway to Heaven* and studio and bootleg recordings of Spirit performing *Taurus*. Pltf's Response to IP Professors & Musicologists Briefs at 8-9, 25; Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 5, 21. He cites his expert's report but that report states instead that "[m]ost of the similarities occur during the first 18 notes," and also confirms that besides the shared descending chromatic scale or "minor line cliché," the notes are different and in a different order. VII–ER–1789, chart & ¶ 28; *see, also* Warner/Chappell Reply Brief (Dkt. Entry 51) at 15. In fact, plaintiff's expert concluded that relying on the *Taurus* deposit copy rather than Spirit's recorded performances of *Taurus* results in a stronger claim. VII–ER–1777-1778.

In any event, plaintiff sued on the copyright registered with the Copyright Office in the sheet music deposited as a "complete copy" of the work in which federal copyright was claimed. 17 U.S.C. § 12 (1909 Act); *see below* at 13-21. Different versions of that composition are not protected, if protected at all, by that registered copyright. 17 U.S.C. §§ 3 & 7 (1909 Act); 17 U.S.C. § 103(b); U.S. Amicus Brief (Dkt. Entry 129) at 14-15. As a result, the Amici properly considered the *Taurus* deposit copy as the work whose copyright was allegedly infringed.

3

**(c)** **The Amici Are Correct that it Is Imperative that this Court Clarify this Circuit's Decisions as to Selections and Arrangements**

Historically, claims of infringement of the copyrights in musical compositions have focused on similarities in lyrics and melody. IP Professors Brief (Dkt. Entry 106-1) at 12-18. Lacking, as here, comprehensive similarity in protected expression throughout two compositions or even in a discrete portion of those works, litigants have turned to a selection-and-arrangement theory that originated for works compiling facts, with limited originality, rather than musical or other creative works, with overall or pervasive originality. 17 U.S.C. § 101 ("A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work, as a whole, constitutes an original work of authorship."); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). Unable to point to copying of protected lyrics or melody, litigants have instead argued that two compositions share some unprotected elements and, on that basis, claim infringement of a protected selection and arrangement. *See*, *e.g.*, *Williams v. Gaye*, 895 F.3d 1106, 1137 (9th Cir. 2018); *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

The danger is in reliance on the mere presence of unprotected elements. *Williams*, 895 F.3d at 1138 (Nguyen, J, dissenting) ("the Gayes' expert . . . cherry-

picked brief snippets to opine that a 'constellation' of individually unprotectable elements in both pieces of music made them substantially similar."). No one would contend, for example, that the book *Catcher in the Rye* copies the book *War and Peace* because their opening paragraphs both combine the unprotected elements of the first-person speaker addressing another person, the words "if you" and "know," and the word "I" followed by a word beginning with "w." Yet, that is exactly what has been happening in cases claiming infringement of music copyrights.

The IP Law Professors advocate limiting protection for musical works, especially 1909 Act works, to lyrics and melody, as was previously the practice. IP Professors Brief at 11-19. They and other Amici raise that if the Court allows selection-and-arrangement theories for musical works, it is imperative that the Court confirm the requirements that (1) the unprotected elements not just be combined in a work but selected and arranged in an original way, (2) the unprotected elements be sufficiently numerous, and (3) the selections and arrangements be virtually identical. Contrary to plaintiff's Responses, the Amici are absolutely correct that this Court's en banc confirmation of these requirements is critical to providing certainty and ensuring that copyright does not stifle creativity, and also absolutely correct that plaintiff failed to satisfy these requirements.

### (1) The Amici Are Correct that there Must Be an Original Selection and Arrangement, Not Just a Combination

The Supreme Court has addressed the issue and confirmed that the mere presence or combination of unprotected elements is not enough to establish a protected selection and arrangement; rather the unprotected elements must have been selected and arranged in an original way. *Feist*, 499 U.S. at 345, 349 ("Common sense tells us that 100 uncopyrightable facts do not magically change their status when gathered together in one place . . . . The only conceivable expression is the manner in which the compiler has selected and arranged the facts."). This Court also has recognized that "it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection. Our case law suggests, and we hold today, that a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).

Yet, litigants—including plaintiff—have relied on language in this Court's decisions to argue successfully that infringement can be found when two musical works combine some of the same unprotected elements. *Williams*, 895 F.3d at 1119-20 ("a substantial similarity can be found in a combination of elements, even if those elements are individually unprotected" (quoting *Swirsky*, 376 F.3d at 848));

*Three Boys*, 212 F.3d at 485 (affirmed where plaintiff's expert "testified that the two songs shared a combination of five unprotectible elements"). The Amici are correct that it is essential the Court confirm that the mere fact two musical works include the same public domain elements is insufficient to establish a copyright infringement claim absent evidence of copying an original selection and arrangement of elements. Songwriters Brief (Dkt. Entry 118-2) at 5-7, 9-11, 20-21; Musicologists Brief (Dkt. Entry 107-2) at 3-4, 5-6, 7, 18-20; U.S. Brief (Dkt. Entry 129) at 20-23.

Plaintiff tries to avoid this Court's confirmation of the requirements for a selection-and-arrangement claim by arguing that the Musicologists are defense-oriented and somehow have a financial interest in the outcome of this case. Pltf's Response to IP Professors Brief & Musicologists at 5. But the Musicologists are not the only Amici who urge that the Circuit's decisions on selection-and-arrangement require clarification. Songwriters Brief at 5-9, 20-21; U.S. Brief at 20-24; IP Professors Brief at 19-25; RIAA & NMPA Brief (Dkt. Entry 120-2) at 11-14. Also, plaintiff's attempt to tar the Musicologists ignores that at least some of them, if not all, have represented plaintiffs in music infringement cases. Indeed, Prof. Walser was the plaintiff's expert in *Swirsky*, 376 F.3d at 845, and Dr. Eskelin was the plaintiff's expert in *Three Boys*, 212 F.3d at 485, two cases upon which plaintiff heavily relies.

**(2)  The Amici Are Correct that the Trial Evidence Does Not Support Copying of a Protected Selection and Arrangement**

Plaintiff argues that the Musicologists' Brief reflects a factual dispute with his retained trial expert and ignores the evidence plaintiff claims supports a selection-and-arrangement theory.  Pltf's Response to IP Professors & Musicologists Briefs at 6-7, 12-17.  But rather than disputing the presence of the claimed commonalities, the Musicologists explain—as scholars of music who are not being paid—why the claimed commonalities are not musicologically significant and also identify the risks if those commonalities are deemed sufficient to satisfy the extrinsic test.

Further, the Amici are correct.  At trial, plaintiff's expert relied on unprotected elements present in the first two measures of *Stairway to Heaven* and *Taurus*, but he never claimed those elements were selected and arranged in the same way in both compositions.  In addition, the evidence is that the unprotected elements were selected and arranged very differently.

Plaintiff's expert testified that both *Stairway to Heaven* and *Taurus* include a descending chromatic scale and a commonplace chord sequence with the chords arpeggiated or "broken" into their constituent pitches.  AOB at 18-19.

As for the descending chromatic scale, it is associated with very different melodies in *Stairway to Heaven* and *Taurus*.  AOB at 11.  Conceding that fact, plaintiff repeats his expert's trial testimony that none of the prior art cited by

8

defendants includes a descending chromatic scale ending on F rather than E, which his expert characterized as a "unique" use of that scale. Pltf's Response to IP Professors & Musicologists Briefs at 13. Yet that testimony, and plaintiff's argument, is directly contradicted by the very exhibit that plaintiff's own expert prepared and relied upon. Plaintiff's exhibit shows that the descending chromatic scale in *Cry Me a River* ends on F before ascending to G, that *How Insensitive* ends on F before going to B-flat, and that *What Are You Doing the Rest of Your Life* ends on F before going to D. Exhibit 501-0001 (Dkt. Entry 39 at 56) (Addendum at 26); IV–ER–981:20-982:1, 982:23-983:9; V–ER–991:23-992:10. Additional prior art with a descending chromatic scale ending on F rather than E includes *Summer Rain*, *More*, *The Meaning of the Blues*, *Night and Day*, and *One Note Samba*. V–ER–994:3-997:8; AOB at 24-25.

As for the associated chords, each chord is broken into its constituent pitches and each of those chords' pitches are arranged very differently in *Stairway to Heaven* and *Taurus*. For example, both compositions, which are in the key of A minor, predictably include the A minor chord, which is comprised of the pitches A, C, and E. In *Stairway to Heaven*, that chord is broken so that its pitches are in the sequence A, C, E, and up to A, while in *Taurus*, that chord's pitches are in the sequence A, E, and down to C. AOB at 25.

Plaintiff's expert also testified that in both compositions there are three "pairs" of pitches—A to B, B to C, and C to F#—including in the *Stairway to Heaven* melody that defendants' expert described as the most creative and memorable part of *Stairway to Heaven*'s introduction. But plaintiff's expert admitted that these "pairs" are commonplace, that the "pairs" are preceded and followed by different pitches in *Stairway to Heaven* and *Taurus*, and that the melodies in which those "pairs" appear are different in *Stairway to Heaven* and *Taurus*. AOB at 19-20; *see, also* V–ER–1005:14-1010:22. Plaintiff's own trial exhibit confirms that his expert simply cherry-picked pitches from very different music:



Exhibit 506 (Dkt. Entry 39 at 62). Indeed, another of plaintiff's exhibits shows that in order to claim the last "pair," plaintiff's expert cherry-picked C and F# pitches that are in *Taurus*' bass clef and an octave apart in *Stairway to Heaven* and *Taurus*. Exhibit 2705 (Dkt. Entry 39 at 86) (Addendum at 27); V–ER–1010:10-22.

Plaintiff raises that his expert claimed both works have the "rhythm of steady 8th note beats, . . . ." Pltf's Response to IP Professors & Musicologists Briefs at 14; IV–ER–780:2-9 (the "rhythms are exactly the same in both of these passages"). But the rhythms in *Stairway to Heaven* and *Taurus* are not simply a series of 8th notes and are different. AOB at 11; IV–ER–952:1-957:14, 958:23-959:5.

Plaintiff's expert also testified that the same six pitches—that is, tones without regard to their duration—appear in the first two measures of *Stairway to Heaven* and *Taurus*. This Court has recognized that even an identical sequence of pitches in two compositions is not a meaningful similarity because the pitches can be played "a number of different ways, none of them being substantially similar to each other." *Swirsky*, 376 F.3d at 848 n. 13. Yet plaintiff's expert admitted that the pitches in *Stairway to Heaven* and *Taurus* are arranged in a very different sequence: A-B-C-A-E-C/B-A-B in *Stairway to Heaven*, but C-E-A-B-E-C-B in *Taurus*. AOB at 20.

The evidence at trial, including the testimony of plaintiff's expert, confirms that the public domain elements in *Stairway to Heaven* are selected and arranged very differently from *Taurus*. As a result, the Amici are absolutely correct that the evidence does not support a selection-and-arrangement theory. The Amici also are correct that a contrary ruling would extend protection to unprotectable elements and severely inhibit the use of public domain elements.

### (3) The Amici Are Correct that Virtual Identity Is Required and Is Absent Here

The Amici also concur that a plaintiff asserting a claim based on the selection and arrangement of unprotected elements is properly required to establish virtual identity rather than substantial similarity. IP Professors Brief at 20-25; U.S. Brief at 22-24; Songwriters Brief at 7-9; RIAA & NMPA Brief at 12-14; Defs' Petition at 15-17. In response, plaintiff argues that the selection-and-arrangement standard should be different if the works are musical works. Pltf's Response to IP Professors & Musicologists Briefs at 20-25. However, even under a substantial similarity standard, the judgment is properly affirmed because the jury—instructed that an original work may include public domain elements as long as there is some minimal creativity (Defs' Petition at 2-3)—found that *Stairway to Heaven* and *Taurus* are not substantially similar under the extrinsic test.

Further, plaintiff's argument for a different selection-and-arrangement standard for musical works confuses the nature of the work and the nature of the claimed similarity. The issue is not whether there are a great number of ways to arrange notes to create a musical work, but whether there are a limited number of ways to use a public domain descending chromatic scale in two measures of music. Even counting flats and sharps, there are only twelve notes in the chromatic scale, only some combinations are pleasing to the ear, and as a practical matter there are

12

only so many notes that can fit in two measures of popular music. As a result, there are only so many ways a composer can employ a descending chromatic scale in a brief bit of music. *Williams*, 895 F.3d at 1144 (Nguyen, J., dissenting) ("In assessing the similarity of two pieces of music, it's important to keep in mind 'the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music.'") (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988)).

Virtual identity is the appropriate standard for claims based on the selection and arrangement of unprotected elements in a piece of music. Allowing an infringement claim based merely on substantial similarity between two works, each using public domain elements in the narrow confines of two measures, would overextend copyright and trespass on the freedom to use public domain elements.

**3.**     <u>**The Amici Also Are Correct that the *Taurus* Sheet Music is the Work Protected by the Copyright on which Plaintiff Sues**</u>

     **(a)**     **Plaintiff Still Cites No Case that Copyright in the Deposited Copy of a Work Protects Other Versions of that Work**

Plaintiff claims that no authority supports the Amici's position that the deposit copy is the copyrighted work. Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 7. But for over 130 years courts have recognized, and our copyright laws have provided, that the deposit copy accompanying the registration

of a copyright is the copyrighted work. *See below* at 17-18; Defs' Response to Pltf's Petition (Dkt. Entry 84) at 3-5.

Plaintiff still has not cited a single case adopting his theory that federal copyright protects not only the work in which copyright is registered but also other versions of that work. *Cf.* 17 U.S.C. § 7 (1909 Act) (new versions of a preexisting work do not change the scope of protection afforded the preexisting work); 17 U.S.C. § 103(b) (same). Indeed, the cases he cites confirm that copyright is in the work in which copyright is claimed. *Three Boys*, 212 F.3d at 486-87 (argument that incomplete sheet music was deposited with registration failed because deposit copy included allegedly copied music); *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 272, 276 (6th Cir. 2009) (copyright obtained under the Copyright Act of 1976 by fixation in a phonorecord is limited to the composition in that recording; subsequent versions in sheet music form were not the copyrighted work); Defs' Response to Pltf's Petition at 5-6; AOB at 45-46; Warner Chappell Reply Brief (Dkt. Entry 51) at 8-9.

### (b)     Plaintiff's Argument that the 1909 Act Federalized Common Law Copyright Is Frivolous

Plaintiff argues that the Copyright Office and other Amici misunderstand that state common law copyright protected a musical composition from creation and that this state protection was then turned into a federal copyright upon compliance with

the 1909 Act.  Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 7-11.  However, the Supreme Court has repeatedly confirmed that the copyright obtained under federal copyright law is not an extension or federalization of any extinguished state law protection.  *Eldred v. Ashcroft*, 537 U.S. 186, 230–31 (2003) (1790 Act "creat[ed] new federal rights that supplanted the diverse state rights that previously existed.  It did not extend or attach to any of those pre-existing state and common-law rights . . . ."); *Film Corp. v. Doyal,* 286 U.S. 123, 127 (1932) (1909 Act "did not sanction an existing right but created a new one."); *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663–64 (1834) ("This right [in copyright] . . . does not exist at common law—it originated, if at all, under the acts of congress.").  This Court also has confirmed that the 1909 Act "does not protect common law copyrights . . . ."  *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231, 1233 (9th Cir. 1998).

Plaintiff's argument that federal copyright federalized state common law protection also makes no sense.  A federal copyright law that protects what a state decides to protect would cede to the states Congress' power to enact copyright laws, including the power to "reduce[ ]" or "increase[ ] protection."  *Eldred*, 537 U.S. at 230–31.  Such a federal law also would exceed Congress' constitutional power to enact copyright laws protecting the "Writings" of "Authors," Article I, § 8, cl. 8, by providing federal copyright protection to, for example, the bare ideas, "without

delineation, or other graphical representation," once protected in California. *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 788-89, 256 P.2d 947, 955-56 (1953), quoting Cal. Civ. Code § 980 (amended 1947); M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 2.02[B][1] (2019) ("The constitutional requirement that a work be fixed in tangible form in order to constitute a writing is not, of course, applicable to common law copyright"). Because most states did not provide common law copyright protection (*Goldstein v. California*, 412 U.S. 546, 558 (1973)), plaintiff's argument that federal copyright law federalized whatever protection a state's common law provided also would mean that federal copyright law applies only in a minority of states.

Neither is plaintiff helped by his claim that some recordings of Spirit's performances of *Taurus* predate Hollenbeck Music's 1967 registration of copyright in *Taurus*. Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 14. If so, any common law rights in the composition embodied in those recordings were extinguished by Hollenbeck Music's registration of copyright after Wolfe transferred all rights in his compositions to Hollenbeck Music. AOB at 7-8; U.S. Brief at 17-18; *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996) (1909 Act registration of copyright in unpublished work ended state common law protection).

16

**(c)     The Copyright Office's Views as to the Historical Interpretation of Copyright Law Mandate Rejection of Plaintiff's Theory**

Plaintiff argues that the Copyright Office's views and its historical practices set out in the U.S.'s Brief have no weight. Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 15. However, "the Register has the authority to interpret the copyright laws and [ ] its interpretations are entitled to judicial deference if reasonable." *Batjac,* 160 F.3d at 1230 (quoting *Marascalco v. Fantasy, Inc.,* 953 F.2d 469, 473 (9th Cir. 1991)). The Copyright Office's views are not only reasonable, they are mandated by the statutory language and prior case law. U.S. Brief at 2-5, 10-14; Defs' Response to Pltf's Petition at 3-7; *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,* 139 S. Ct. 881, 889 (2019) (registration of a copyright turns on whether "the material deposited constitutes copyrightable subject matter" (quoting 17 U.S.C. § 410(a))).

Further, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Marks v. Crunch San Diego, LLC,* 904 F.3d 1041, 1052 (9th Cir. 2018) (quoting *Lorillard v. Pons,* 434 U.S. 575, 580 (1978)). The Copyright Acts of 1790 and 1831 each required the deposit of the work in which copyright was claimed. AOB at 100-03. Prior to the 1909 Act, the Supreme Court confirmed that the deposit copy is the copyrighted work. *White-Smith Music Pub. Co. v. Apollo*

*Co.*, 209 U.S. 1, 15-16, 17 (1908) (federal copyright law "has provided for the making and filing of a tangible thing, against the publication and duplication of which it is the purpose of the statute to protect the composer"); *Merrell v. Tice*, 104 U.S. 557, 561 (1881) (deposit copies enable others "to ascertain precisely what was the subject of copyright"); *Caliga v. Inter Ocean Newspaper Co.*, 215 U.S. 182, 189-90 (1909) (applying 1831 Act, copyright limited to copy deposited with first registration). Congress reenacted that principle in the 1909 Act by requiring that, with exceptions for unwieldly items, the applicant deposit a "complete copy" of the unpublished work in which copyright was claimed. 17 U.S.C. § 12 (1909 Act). Congress also reenacted that principle in the 1976 Act by continuing to require, with similar inapplicable exceptions, deposit of a "complete copy" of the work in which copyright is claimed. 17 U.S.C. § 408(b)(1).

Congress also was aware of the Copyright Office's interpretation of the 1909 Act, including that "protection [in an unpublished musical composition] extends only to the material actually deposited." COMPENDIUM OF COPYRIGHT OFFICE PRACTICES 2-183 (1st ed. 1973), also reproduced in U.S. Brief at 45. Importantly, Congress never legislated a change to that interpretation.

Neither is there merit to plaintiff's argument that for over a century the Copyright Office has confused copyright protection and copyright registration. Plaintiff first relies on his theory that federal copyright federalizes common law

18

protection in the deposited work and all versions of it. Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 15-16. But that theory is untenable. *See above* at 14-16. He then relies on the statement in *Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014)—a case he has never previously cited below or before this Court—that "[a] deposit copy does not necessarily limit the copyrightable work itself." Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 16 (quoting *Brownstein*, 742 F.3d at 66). But *Brownstein* did not involve a copyright obtained by registration and deposit under the 1909 Act and, moreover, is not even an infringement action.

Instead, the issue in *Brownstein* was whether the defendant's registration of copyrights expressly in one 1993 work (the "EDS") put the plaintiff on notice that the defendant claimed sole ownership of 1994 computer programs (the "ETHN") that were included in one of the defendant's deposit copies. The court concluded that the defendant's deposit was not an adverse claim of sole ownership in the ETHN because the defendant's registration only claimed copyright in the EDS, and the defendant testified she included the ETHN in the deposit only as "an example of how the EDS would be implemented, not to claim ownership of [the] programs." 742 F.3d at 58-60, 66-67. *Brownstein* merely recognized that the registration in that case claimed copyright in less than the entirety of an accompanying deposit. That happens every day when, for example, a book publisher registers copyright in a

19

compilation of short stories while disclaiming copyright in the short stories themselves. And that is entirely different from plaintiff's view that the registered copyright he sued upon protects material not present in the deposit copy.

**(d)    The Amici Confirm the Prejudice of Plaintiff's Attempt to Rely on Studio and Bootleg Recordings of Different Versions of *Taurus***

Citing the principle that inaccuracies in a registration do not invalidate a registration absent prejudice, plaintiff argues that the "error" of the *Taurus* deposit copy should be overlooked for lack of prejudice. Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 11. But plaintiff has never claimed, and certainly never presented any evidence at trial, that the *Taurus* deposit copy was not in fact what Hollenbeck Music intended to deposit when it registered the copyright in the *Taurus* musical composition in 1967. AOB at 8. Indeed, the *Taurus* deposit copy is signed "B. Hansen 1967 Rev.," indicating it was revised before being deposited with the Copyright Office. Exhibit 2058 (Dkt. Entry 38 at 16).

Further, the Amici raise that playing recordings of Spirit performing versions of *Taurus* at trial would have caused confusion because of, *e.g.*, timbre—the tone or "color" of musical instruments—and the fact that *Stairway to Heaven* and the studio recording of *Taurus* include acoustic guitars finger-picking a prominent descending chromatic scale, potentially resulting in the mistaken impression that the musical compositions being played are similar in a significant way. Musicologists Brief at

20

6-7, citing Jamie Lund, *An Empirical Examination of the Lay Listener Test in Music Composition Copyright Infringement*, 11 Va. Sports Ent. L.J. 137, 140, 175 (2012) (While 86.4% of subjects found the two musical compositions in *Swirsky* substantially similar when played with the same performance elements, 84.8% found the exact same musical compositions not substantially similar when played with different performance elements.).

Remarkably, plaintiff claims that there are no performance elements in the recordings of Spirit performing *Taurus*. Pltf's proposed Response to U.S., Songwriters, & RIAA & NMPA Briefs at 14. But the recordings' performance elements include everything from the key and tempo in which the compositions were played to the timbre of the instruments and the producer's addition of effects and choices in mixing the recorded sounds.

Plaintiff sued on the copyright obtained in 1967 by depositing the *Taurus* sheet music as a complete copy of the musical composition in which copyright was claimed. Under settled law and practice for over 130 years, that deposit copy is the copyrighted work.

**4.** **Plaintiff Fails to Respond to the Amici's Argument for Abandonment of the Inverse Ratio Rule**

Plaintiff fails to respond to the Amici's argument that the Court should join other Circuits in abandoning the illogical and confusing inverse ratio rule. IP Professors Brief at 2-11; *see, also* Defs' Petition at 17-18.

**5.** **Conclusion**

It is respectfully submitted that the Amici's supporting affirmance of the judgment of non-infringement are correct and that judgment should be affirmed.

Dated: September 9, 2019                    Respectfully submitted,

                    _____ /s/ Peter J. Anderson _____
                    Peter J. Anderson, Esq.
                    DAVIS WRIGHT TREMAINE LLP

                    Helene M. Freeman, Esq.
                    PHILLIPS NIZER LLP

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,036 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief also complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point type size in Times New Roman type style.


 Dated: September 9, 2019                    _____ /s/ Peter J. Anderson_____

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this Petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System on September 9, 2019.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

Dated: September 9, 2019 _____/s/ Peter J. Anderson_____

# **<u>ADDENDUM</u>**

**CASE NO.**

Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust

**VS.** Led Zeppelin *et al.*

**PLAINTIFF'S EXHIBIT** _____ 501

**DATE** _____ **IDEN.**

**DATE** _____ **EVID.**

**BY** _____

Deputy Clerk

AO-388

## CHROMATIC LINES (Data derived from Ferrara reports)

**Taurus** [Ferrara 2/10/16 Mus Ex 1, Attachment B p. 2]

A    G#    G    F#    F           D A

**Stairway** [Ferrara 2/10/16 Mus Ex 1, Attachment B p. 2

A    G#    G    F#    F           G A

## "OTHER ART" CITED BY FERRARA

**Dido's Lament** (all six chromatic pitches) [Ferrara 2/10/16, Mus Ex 2, Attachment B p. 6; Visual Exhibit D]

A    G#    G    F#    F     ⬇ ⋯➔ A

**Michelle** [Ferrara 2/10/16 Mus Ex 14 Attachment D p.8]

A    G#    G    F#    F     ⬇   A (major)

**Walkin' My Baby Back Home** (trombone part) [Ferrara 2/10/16 Mus Ex 6, Attachment B p. 14]

A    G#    G    F#    F     ⬇➔ A

**It Don't Mean a Thing (If It Ain't Got That Swing)** [Ferrara 2/10/16 Visual Exhibit H]

A    G#    G    F#    F     ⬇ ⋯➔ A

**Chim Chim Cher-ee** [Ferrara 2/10/16 Mus Ex 4, Attachment B p. 10]

A    G#    G    F#    F     ⬇   D#   ⬇ ⋯➔ A

A    G#    G    F#    F     ⬇➔ A

**Cry Me a River** [Ferrara 2/10/16 Mus Ex 13, Attachment D p. 8]

A    G#    G    F#    F    G C   ⬇ ⋯➔ A    G#    G    G#    F ⬇ ⋯➔ A

**How Insensitive** [Ferrara 2/10/16 Mus Ex 5, Attachment B p. 12; Visual Exhibit F]

A    G#    G    F#    F    Bb   B  ⬇ ⋯➔ A

**To Catch a Shad** [Ferrara 6/1/16 Audio Exhibit 3; Mus Ex 1, p.9]

A    G#    G    F#    F    ⬇ ⋯➔ A  ⬇➔A

**What Are You Doing the Rest of Your Life** [Ferrara 2/10/16 Visual Exhibit L]

A    G#    G    F#    F    D   B  ⬇ ⋯➔ A

3.    The four-measure chord progression in "Taurus" (identified in Musical

Example 1 by chord symbols placed above the measures

times in Section A1 and iterated one time in Section A2.

progression in "Stairway" is also identified by chord symbol

measures in Musical Example 1, and is iterated two time

times in Verse 1, and one time in the Interlude.  Starting

four-measure chord progression in "Stairway", the additic

notes that alter the harmony as compared with the first it

acoustic guitar alone through measure 3.

CASE NO.     15-cv-3462-RGK-AGR
Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust

VS.   Led Zeppelin et al.

                                    2705
PLAINTIFF'S EXHIBIT _____

DATE _____  IDEN.

DATE _____  EVID.

BY _____
                              Deputy Clerk

**MUSICAL EXAMPLE 1**

Four-measure chord progressions

Top two lines = Section A in "Taurus" with note values halved

Lower two lines = Measures 1–4 in "Stairway"



4.    The four-measure chord progressions in "Taurus" and "Stairway" are

charted immediately below.[2]  Notably, the chord progression in the second half of the

---

[2]    Chord symbols without a slash ("/") after a letter are in "root" position in which the
name of the chord is the lowest note. (The lowest note of a chord is sometimes termed
the "bass" note although this does *not* have to actually be played on a bass.) Chords
symbols with a slash ("/") are *not* in "root" position.  Instead, the lowest note is the note

**EXHIBIT 1**
**23**

